Exhibit A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State number, and address):* | FOR COURT USE ONLY |
|---|---|
| Adam John Mackintosh<br>10923 Progress Court<br>Rancho Cordova, CA 95670<br><br>TELEPHONE NO.: 6509694664 FAX NO.:<br>ATTORNEY FOR *(Name)*: In Pro Per | **FILED**<br>**Superior Court Of California, Sacramento**<br>**07/24/2019**<br>mwilliams8<br>**By**_____ **, Deputy**<br>**Case Number:**<br>**34-2019-00261236** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 720 9th St
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: Gordon D. Schaber County Courthouse

CASE NAME:
Mackintosh -vs- Lyft

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ✔ **Unlimited** (Amount demanded exceeds $25,000) | ☐ **Limited** (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ✔ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ✔ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ✔ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ✔ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ✔ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✔ monetary b. ✔ nonmonetary; declaratory or injunctive relief c. ✔ punitive
4. Number of causes of action *(specify):* 6
5. This case ☐ is ✔ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 07/15/2019

Adam John Mackintosh
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Lyft, Inc.; Uber Technologies Inc.; Uber Health, LLC, AH Capital Management, LLC, [Additional Parties Attachment Form is Attached]

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Adam John Mackintosh

**FILED/ENDORSED**

AUG - 2 2019

By: ___E. Medina___
Deputy Clerk

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Gordon D. Schaber Sacramento County | CASE NUMBER:<br>*(Número del Caso):*<br>34–2019–00261236-CU-BC-GD |
|---|---|

720 9th St, Sacramento, CA 95814

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Adam John Mackintosh, 10923 Progress CT Rancho Cordova, CA 95670, (650) 969-4664

| DATE: ~~07/31/2019~~ 8/2/19<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adapted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

RECEIVED
AUG - 2 2019
CIVIL

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mackintosh —vs— Lyft Inc | 34–2019–00261236-CU-BC-GD |

## INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff  ☑ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

Better Business Bureaus, Inc.; Benchmark Capital Partners VII, LP; Benchmark Capital Management Co. VII, LLC; Ben Horowitz; John Zimmer; Logan Green; Josef Arvin Acebedo; Louis Darnell Pritchett; Jerry Wang; Amy Biddle; Matt Cohler; and Does 1 - 500, inclusive

Page 1 of 1

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

FILED/ENDORSED

AUG 15 2019

By: _R. San Miguel_
Deputy Clerk

1  Adam John Mackintosh
   legal@ihughealth.com
2  10923 Progress Court.,
3  Rancho Cordova, CA 95670

4       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

5              **COUNTY OF SACRAMENTO**

6  Adam John Mackintosh, Individually,        Case Name: Mackintosh –vs– Lyft Inc
   and On Behalf of All Others Similarly
7  Situated,                                   Case No.: 34–2019–00261236–CU–BC–GDS

8             Plaintiff,                        **AUTHORIZATION TO**
                                               **ELECTRONICALLY COMMUNICATE**
9        vs.                                    **WITH ADAM JOHN MACKINTOSH.**

10 Lyft, Inc., Uber Technologies Inc., Uber    Details:
   Health, LLC, AH Capital Management,
11 LLC, Better Business Bureaus, Inc.,         Judge: The Honorable
   Benchmark Capital Partners VII, LP,         Kevin Culhane, Judge of the Superior Court
12 Benchmark Capital Management Co.
   VII, LLC, Gap, Inc. Corporations            Place:
13                                             Gordon D. Schaber County Courthouse
14 Ben Horowitz, John Zimmer, Logan            720 Ninth Street, Sacramento, CA 95814
15 Green, Josef Arvin Acebedo, Louis
   Darnell Pritchett, Jerry Wang, Amy          Department: 23
16 Biddle, Matt Cohler, and                    Time: 08:30 AM
17 Does 1–500,
   Individuals                                 Date Action filed:  July, 4, 2019
18
                                               Date set for case management conference:
19            Defendants.                      January, 30, 2020

20

21           **1.  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

22 1.     PLEASE TAKE NOTICE that on August 2, 2019, or as soon after that date as the matter

23 can be heard, Plaintiff authorizes all Defendants to communicate electronically by

24 electronic mail ("email") to legal@ihughealth.com.

25
26 2.     All service documents are to be sent to the aforementioned email address, per Cal. Rules
27 of Court, rule 2.251, (1) Electronic service may be established by consent of the parties in

28
Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 1 -

RECEIVED
AUG 15 2019
CIVIL

1  an action. A party indicates that the party agrees to accept electronic service by: (A)

2  Serving a notice on all parties that the party accepts electronic service and filing the notice

3  with the court. The notice must include the electronic service address at which the party

4  agrees to accept service; or

5

6  (B) Electronically filing any document with the court. The act of electronic filing is

7  evidence that the party agrees to accept service at the electronic service address the party

8  has furnished to the court under rule 2.256(a)(4). This subparagraph (B) does not apply to

9  self-represented parties; they must affirmatively consent to electronic service under

10  subparagraph (A). (2) A party that has consented to electronic service under (1) and has

11  used an electronic filing service provider to serve and file documents in a case consents to

12  service on that electronic filing service provider as the designated agent for service for the

13  party in the case, until such time as the party designates a different agent for service.

14

15  3.   Notwithstanding, Plaintiff respectfully requests this Electronic Communication

16  Authorization be made part of the record herein, to assist in a just, proper and speedy

17  outcome. Furthermore, Plaintiff requests that all Defendants make their Electronic

18  Communication Authorization part of the record herein to assist in a speedy outcome.

19

20

21

22

23  **Adam John Mackintosh,**

24  */s/ Adam John Mackintosh //*

25  */d/ 08/12/2019 //*

26

27  Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

28
Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 2 -



FILED/ENDORSED

AUG 14 2019

By: _____ B. SUTTON _____
Deputy Clerk

1   Adam John Mackintosh
legal@ihughealth.com
2   10923 Progress Court.,
Rancho Cordova, CA 95670
3

4   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

5   **COUNTY OF SACRAMENTO**

6   Adam John Mackintosh, Individually,
and On Behalf of All Others Similarly
7   Situated,

8              Plaintiff,

9      vs.

10  Lyft, Inc., Uber Technologies Inc., Uber
Health, LLC, AH Capital Management,
11  LLC, Better Business Bureaus, Inc.,
Benchmark Capital Partners VII, LP,
12  Benchmark Capital Management Co.
VII, LLC, Gap, Inc. Corporations
13

14  Ben Horowitz, John Zimmer, Logan
15  Green, Josef Arvin Acebedo, Louis
Darnell Pritchett, Jerry Wang, Amy
16  Biddle, Matt Cohler, and
17  Does 1–500,
Individuals
18

19             Defendants.

Case Name: Mackintosh –vs– Lyft Inc

Case No.: 34–2019–00261236-CU-BC-GDS

**3,000 WITNESSES AND OR SUSPECTS
LIST DECLARATION OF ADAM
JOHN MACKINTOSH**

Details:

Judge: The Honorable
Kevin Culhane, Judge of the Superior Court

Place:
Gordon D. Schaber County Courthouse
720 Ninth Street, Sacramento, CA 95814

Department: 23
Time: 08:30 AM

Date Action filed:  July, 4, 2019

Date set for case management conference:
January, 30, 2020

20

21  **1.  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

22  1.    PLEASE TAKE NOTICE that on August 2, 2019, or as soon after that date as the matter

23        can be heard, in the event Plaintiff and Defendants settlement proceedings continue to fail,

24        Plaintiff is readying for trial, in particular, Plaintiff and other undisclosed parties possess a

25        list of approximately **3,000 individual Uber and Lyft Drivers, and iHug Customers**

26

27        who were contacted by Defendants, Josef Arvin Acebedo, Louis Darnell Pritchett,

28        Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.

Malcolm Russell, Thomas Michael Kim and other Lyft and Uber drivers who infiltrated iHug while Defendants were in the heat of Intentional Interference with Contractual Relations, and Tortious Interference with Actual Economic Advantage, Corporate Sabotage, Slander, Theft of Corporate Secrets, Hacking, Defamation of Character, Corporate Espionage, and other Local, State and Federal Violations. The Driver and iHug Customer List will be made available to Defendants during a discovery and trial period.

2.    Plaintiff possesses admissible audio evidence that Defendants slandered and defamed Plaintiff, who received instructions to stop iHug from scaling, resulting in the termination of the Memorandum of Understanding, that allowed Plaintiff to execute on his $1,200,000,000,000 trillion-dollar healthcare opportunity.

3.    The audio, video, email, text messages, witness lists and other permissible evidence are securely backed up, both physically and virtually with multiple parties who agreed to confidentiality. Said evidence is genuine and authentic in its original essence, and ready to be exhibited before the Honorable Kevin Culhane, Judge of the Superior Court.

4.    Notwithstanding, Plaintiff respectfully requests this Declaration be made part of the record herein, to assist in a just, proper and speedy outcome.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

*/d/ 08/10/2019 //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.



FILED/ENDORSED

SEP - 6 2019

By: _____R. San Miguel_____
Deputy Clerk

1
2
3

Adam John Mackintosh
legal@ihughealth.com
10923 Progress Court.,
Rancho Cordova, CA 95670

4
5
6

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SACRAMENTO

7 | Adam John Mackintosh, Individually,
8 | and On Behalf of All Others Similarly
   | Situated,

9 |                                                    Case Name: Mackintosh –vs– Lyft Inc

10 |              Plaintiff,                            Case No.: 34–2019–00261236-CU-BC-GDS

11 |        vs.                                         **PROOF OF SERVICE OF SUMMONS

12 |                                                    TO DEFENDANTS, DECLARATION

13 | Lyft, Inc., Uber Technologies Inc., Uber          OF DILIGENCE, AND DELIVERY

    | Health, LLC, AH Capital Management,              CONFIRMATION**

14 | LLC, Better Business Bureaus, Inc.,

    | Benchmark Capital Partners VII, LP,              Details:

15 | Benchmark Capital Management Co.

    | VII, LLC.                                        Judge: The Honorable

16 | Corporations                                     Kevin Culhane, Judge of the Superior Court

17 | Ben Horowitz, John Zimmer, Logan                 Place:

18 | Green, Josef Arvin Acebedo, Louis                Gordon D. Schaber County Courthouse

    | Darnell Pritchett, Jerry Wang, Amy               720 Ninth Street, Sacramento, CA 95814

19 | Biddle, Matt Cohler, and

    | Does 1–500,                                      Department: 23

20 | Individuals                                       Time: 08:30 AM

21 |                                                    Date Action filed:  July, 4, 2019

22 |              Defendants.                           Date set for case management conference:

                                                       January, 30, 2020
23
24
25
26
27
28

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.

# Table of Contents

1.   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD** ............................3

2.   **EACH DEFENDANT WAS SERVED WITH DILIGENCE** .................................4

    2A. Amy Biddle ...........................................................................................4

    2B. AH Capital Management, LLC ...........................................................4

    2C. Lyft, Inc. .............................................................................................5

    2D. Uber Technologies Inc. .......................................................................5

    2E. Matt Cohler .........................................................................................5

    2F. Benchmark Capital Management Co. VII, LLC ...................................6

    2G. Benchmark Capital Partners VII, LP .................................................6

    2H. Better Business Bureaus, Inc. .............................................................6

    2I. Ben Horowitz .......................................................................................7

    2J. Josef Arvin Acebedo .............................................................................7

    2K. Jerry Wang ..........................................................................................8

    2L. Uber Health, LLC ...............................................................................8

    2M. Louis Darnell Pritchett ......................................................................8

    2N. John Zimmer .......................................................................................9

    2O. Logan Green ........................................................................................9

3.   **PROOF OF SERVICE OF SUMMONS, SERVICE BY FIRST-CLASS MAIL**

    **EXHIBITS BY PERSONAL SERVICE AND SUBSTITUTED SERVICE** ....................10

4.   **DELIVERY CONFIRMATION** ............................................................................11

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 2 -

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

1.     Adam John Mackintosh, ("Plaintiff"), individually and on behalf of all other persons similarly situated, by this undersigned declaration served proof of service of summons to all Defendants using S & R Services and Local Sheriff's Departments.

2.     Each Defendant was served per California Rules of Court CCP § 415.10, Rule 3.110 (b) Service of complaint, and the MINIMUM REQUIREMENTS on the NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER TO APPEAR, signed by the Honorable Kevin Culhane, Judge of the Superior Court, in particular, "Served all parties named in the complaint within 60 days after the summons has been issued." Each Defendant received the following documents:

1.  Summons

2.  Complaint

3.  Notice of Case Management Conference and Order to Appear

4.  Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendants

5.  Ex Parte Application for Permanent Injunction

6.  Alternative Dispute (ADR) Package

7.  Program Case Notice

8.  Notice and Order of Complex Case Determination.

3.     The nature in which Defendants were served, was in person and/or substituted through a California registered and bonded process servers and Sheriff's Authorized Agents, and served by First-Class Mail through persons over 18 years of age, not party to this action, who mailed the documents in paragraph 3 addressed to Defendants using forms POS-030, POS-030 P, POS-030 D.

Adam John Mackintosh—vs ---Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 3 -

## EACH DEFENDANT WAS SERVED WITH DILIGENCE

4.      Summons, Complaint, Notice of Case Management Conference and Order to Appear, Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendants, Ex Parte Application for Permanent Injunction, Alternative Dispute (ADR) Package, Program Case Notice, and Notice and Order of Complex Case Determination as follows:

2A. Defendant, Amy Biddle was served by P. Yuen of the Sacramento County Sheriff's Department, Civil Bureau, on August 12, 2019 at 7:49AM at 3317 I Street, Sacramento, CA 95816, and sub-served by persons over 18 years of age, not party to this action, Sharon Grosselin, and Richard Maki by first-class mail, in a sealed envelope with the United States Postal Service addressed to Amy Biddle at 3317 I Street, Sacramento, CA 95826 with the postage prepaid. Amy Biddle has been successfully served with all required documents with diligence.

2B. Defendant, AH Capital Management, LLC. was served by substituted service by Carlos Castro, Independent Contractor of S & R Services, and a registered California Process Server, registration number 1142, on August 13, 2019 at 11:55AM at 2865 Sandhill Rd., #101, San Mateo, CA 94025, and served by first class mail by persons over 18 years of age, not party to this action, Sharon Grosselin, and Richard Maki by first-class mail, in a sealed envelope with the United States Postal Service addressed to AH Capital Management, LLC at 2865 Sandhill Rd., #101, San Mateo, CA 94025 with the postage prepaid. AH Capital Management, LLC has been successfully served with all required documents with

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 4 -

1  diligence.

2      2C. Defendant, Lyft, Inc. was served by Jose Juan Soriano,

3  Independent Contract and a registered California Process Server, registration number

4  2014182718, on August 14, 2019 at 1:57PM at CT Corporation System, a Registered Agent at

5

6  818 W. 7th St. #930, Los Angeles, CA 90017, and served by first class mail by persons over 18

7  years of age, not party to this action, Richard Maki by first-class mail, in a sealed envelope with

8  the United States Postal Service addressed to Lyft, Inc. with postage prepaid. Lyft Inc. has been

9

10  successfully served with all proper documents with diligence.

11      2D. Defendant, Uber Technologies Inc. was served by Jose Juan

12  Soriano, Independent Contractor of S & R Services and a registered California Process Server,

13  registration number 2014182718, on August 14, 2019 at 1:57PM at CT Corporation System, a

14

15  Registered Agent at 818 W. 7th St. #930, Los Angeles, CA 90017, and served by first class mail

16  by persons over 18 years of age, not party to this action, Richard Maki by first-class mail, in a

17  sealed envelope with the United States Postal Service addressed to Uber Technologies, Inc. with

18  postage prepaid. Uber Technologies, Inc. has been successfully served with all proper

19

20  documents with diligence.

21      2E. Defendant, Matt Cohler was served by substituted service by Andy

22  Esquer, Independent Contractor of S & R Services, and a registered California Process Server,

23  registration number 1009, on August 15, 2019 at 4:05PM at 988 Market Street, San Francisco,

24

25  CA 94102, and served by first class mail by persons over 18 years of age, not party to this

26  action, Sharon Grosselin, and Richard Maki by first-class mail, in a sealed envelope with the

27

28

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 5 -

1   United States Postal Service addressed to Matt Cohler at 988 Market Street, San Francisco, CA

2   94102 with the postage prepaid. Matt Cohler has been successfully served with all required

3   documents with diligence.

4

5      2F. Defendant, Benchmark Capital Management Co. Vll, LLC was

6   served by substituted service by Andy Esquer, Independent Contractor of S & R Services, and a

7   registered California Process Server, registration number 1009, on August 15, 2019 at 4:05PM

8   at 988 Market Street, San Francisco, CA 94102, and served by first class mail by persons over

9

10  18 years of age, not party to this action, Sharon Grosselin, and Richard Maki by first-class

11  mail, in a sealed envelope with the United States Postal Service addressed to Benchmark Capital

12  Management Co. Vll, LLC at 988 Market Street, San Francisco, CA 94102 with the postage

13  prepaid. Benchmark Capital Management Co. Vll, LLC has been successfully served with all

14

15  required documents with diligence.

16     2G. Defendant, Benchmark Capital Partners Vll, LP was served by

17  substituted service by Andy Esquer, Independent Contractor of S & R Services, and a registered

18  California Process Server, registration number 1009, on August 15, 2019 at 4:05PM at 988

19

20  Market Street, San Francisco, CA 94102, and served by first class mail by persons over 18 years

21  of age, not party to this action, Sharon Grosselin, and Richard Maki by first-class mail, in a

22  sealed envelope with the United States Postal Service addressed to Benchmark Capital Partners

23  Vll, LP at 988 Market Street, San Francisco, CA 94102 with the postage prepaid. Benchmark

24

25  Capital Partners Vll, LP has been successfully served with all required documents with

26  diligence.

27

28

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 6 -

2H. Defendant, Better Business Bureaus, Inc. was served by J. Gordon of the Sacramento County Sheriff's Department, Civil Bureau, on August 16, 2019 at 10:10AM at 10399 Old Placerville Rd., Sacramento, CA 95827, and served by first-class mail by persons over 18 years of age, not party to this action, Sharon Grosselin, in a sealed envelope with the United States Postal Service addressed to Better Business Bureaus at 10399 Old Placerville Rd., Sacramento, CA 95827 with postage prepaid. Better Business Bureaus, Inc. has been successfully served with all required documents with diligence.

2I. Defendant, Ben Horowitz was served by substituted service by Carlos Castro, Independent Contractor of S & R Services, and a registered California Process Server, registration number 1142, on August 16, 2019 at 11:25PM at 2865 Sandhill Rd., #101, San Mateo, CA 94025, and served by first class mail by persons over 18 years of age, not party to this action, Sharon Grosselin, and Richard Maki by first-class mail, in a sealed envelope with the United States Postal Service addressed to Ben Horowitz at 2865 Sandhill Rd., #101, San Mateo, CA 94025 with the postage prepaid. Ben Horowitz refused to be served, and instructed his staff to decline any and all legal documents. Ben Horowitz has been successfully served with all required documents with diligence.

2J. Defendant, Josef Arvin Acebedo was served by J. Gordon of the Sacramento County Sheriff's Department, Civil Bureau, on August 19, 2019 at 7:30AM at 6339 Lochinvar Way, Sacramento, CA 95823, and served by first-class mail by persons over 18 years of age, not party to this action, Sharon Grosselin, and Richard Maki by first-class mail, in a sealed envelope with the United States Postal Service addressed to Josef Arvin Acebedo at 6339

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 7 -

Lochinvar Way, Sacramento, CA 95823 with postage prepaid. Josef Arvin Acebedo has been successfully served with all required documents with diligence.

2K. Defendant, Jerry Wang was served by substituted service by Robert Hall, Independent Contractor of S & R Services, and a registered California Process Server, registration number 6932, on August 19, 2019 at 10:30AM at 582 Mateo St. Los Angeles, California 90013, and served by first class mail by persons over 18 years of age, not party to this action, Sharon Grosselin, and Richard Maki by first-class mail, in a sealed envelope with the United States Postal Service addressed to Jerry Wang at 582 Mateo St. Los Angeles, California 90013, and his last known post office box 994 Cupertino, CA 95014 with the postage prepaid. Jerry Wang has been successfully served with all required documents with diligence.

2L. Defendant, Uber Health, LLC was served by substituted service by Andy Esquer, Independent Contractor of S & R Services, and a registered California Process Server, registration number 1009, on August 27, 2019 at 11:20AM at 1455 Market St. #400 San Francisco, CA 94103, and served by first class mail by persons over 18 years of age, not party to this action, Sharon Grosselin, and Richard Maki by first-class mail, in a sealed envelope with the United States Postal Service addressed to Uber Health, LLC at 1455 Market St. #400 San Francisco, CA 94103 with the postage prepaid. Uber Health, LLC has been successfully served with all required documents with diligence.

2M. Defendant, Louis Darnell Pritchett was served by K. Ferreira, Deputy of the Placer County Sheriff's Division, Civil Bureau, on August 27, 2019 at 12:53PM at

1   100 Westlake Ct. Roseville, CA 95747, and served by first-class mail by persons over 18 years of

2   age, not party to this action, Sharon Grosselin, and Richard Maki by first-class mail, in a sealed

3   envelope with the United States Postal Service addressed to Louis Darnel Pritchett at 100

4   Westlake Ct. Roseville, Ca 95747 with postage prepaid. Louis Darnell Pritchett has been

5

6   successfully served with all required documents with diligence.

7           2N. Defendant, John Zimmer was served by substitute service by Andy

8   Esquer, Independent Contractor of S & R Services, and a registered California Process Server,

9

10  registration number 1009, on August 29, 2019 at 9:45AM at 185 Berry St., Ste. 5000, San

11  Francisco, California 94107, and served by first class mail by persons over 18 years of age, not

12  party to this action, Sharon Grosselin, and Richard Maki by first-class mail, in a sealed

13  envelope with the United States Postal Service addressed to John Zimmer at 185 Berry St., Ste.

14

15  5000, San Francisco, California 94107 with the postage prepaid. John Zimmer has been

16  successfully served with all required documents with diligence.

17           2O. Defendant, Logan Green was served by substituted service by

18  Andy Esquer, Independent Contractor of S & R Services, and a registered California Process

19

20  Server, registration number 1009, on August 29, 2019 at 9:45AM at 185 Berry St., Ste. 5000,

21  San Francisco, California 94107, and served by first class mail by persons over 18 years of age,

22  not party to this action, Sharon Grosselin, and Richard Maki by first-class mail, in a sealed

23  envelope with the United States Postal Service addressed to Logan Green at 185 Berry St., Ste.

24

25  5000, San Francisco, California 94107 with the postage prepaid. Logan Green has been

26  successfully served with all required documents with diligence.

27

28

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 9 -

**PROOF OF SERVICE OF SUMMONS, SERVICE BY FIRST-CLASS MAIL EXHIBITS BY**

**PERSONAL SERVICE AND SUBSTITUTED SERVICE**

5.     Plaintiff has submitted to the honorable court original proofs of service of summons for Matt Cohler, Benchmark Capital Partners VII, LP, Benchmark Capital Management Co. VII, LLC, and Ben Horowitz.

6.     Plaintiff has submitted to the honorable courts copied proofs of service of summons for Lyft, Inc., Uber Technologies Inc., Uber Health, LLC, AH Capital Management, LLC, Better Business Bureaus, Inc., John Zimmer, Logan Green, Josef Arvin Acebedo, Louis Darnell Pritchett, Jerry Wang, and Amy Biddle. S & R Services and the Sacramento and Placer County Sheriff's Departments, Civil Division sent the originals by United States Postal Services mailing system. While in transit, some of the originals were lost. Plaintiff has since requested originals and will present the originals at the Case Management Conference if the Honorable Kevin Culhane, Judge of the Superior Court requests review of said documents.

7.     Plaintiff has submitted original forms of proof of service by first-class mail-civil POS-030, attachment to proof of service by first-class mail-civil persons served POS-030(P), attachment to proof of service by first-class mail-civil documents served POS-030(D), see Exhibit 1 – 57 attached hereto.

8.     The original forms of proof of service of summons were served by first-class mail by Sharon Grosselin, and Richard Maki by first-class mail, in a sealed envelope with the United States Postal Service addressed to each of the Defendants to ensure all diligence was performed as required.

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 10 -

1

# DELIVERY CONFIRMATION

2

1.      Pictured below Exhibit 58, AH Capital Management, LLC was served by U.S. Mail

3

to their current and active place of business.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



21

22

23

24

25

26

27

28

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 11 -

1

2.    Pictured below Exhibit 59, Ben Horowitz was served by U.S. Mail to his current

2    and active place of business.

3



4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.

3.    Pictured below Exhibit 60, Jerry Wang was served by U.S. Mail to his last known post office box where he received tens of thousands of dollars from Plaintiff.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 13 -

1  4. Pictured below Exhibit 61, Louis Darnell Pritchett was served by U.S. Mail to his

2 current and active place of residence.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 14 -

5.   Pictured below Exhibit 62, Matt Cohler was served by U.S. Mail to his current and active place of business.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 15 -

1

2

6.     Pictured below Exhibit 62, Benchmark Capital Management Co. Vll, LLC was served by U.S. Mail to their current and active place of business.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 16 -

7.   Pictured below Exhibit 63, Benchmark Capital Partners VII, LP was served by U.S. Mail to their current and active place of business.



8.      Pictured below Exhibit 64, Jerry Wang was served by U.S. Mail to his current and

last known place of business, according to his active company website,

http://teamlaserbeam.com.

## Shipment delivered   Inbox   ☆

Pitney Bowes  Aug 24
to me ⌄

SendPro™      Powered by **pitney** bowes

## Shipment delivered

This shipment has been sent using SendPro™.

TRACKING NUMBER
USPS  9405509898643047144185

DELIVERED ON
Saturday, August 24, 2019

| | |
|---|---|
| Delivered on | Aug 24, 2019 11:04:00 AM |
| Delivery Location | 582 Mateo St |
| Shipped on | Wednesday, August 21, 2019 |

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 18 -

9.    Pictured below Exhibit 65, John Zimmer was served by U.S. Mail to his current and last known place of business, according to his company website: http://lyft.com



10. Pictured below Exhibit 66, Logan Green was served by U.S. Mail to his current and last known place of business, according to his company website: http://lyft.com



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 20 -

11. Pictured below Exhibit 67, Uber Health, LLC was served by U.S. Mail to their current and active place of business, according to their company website https://www.uber.com/legal/uberhealth/us/

SendPro™        Powered by **pitney bowes** 

## Shipment delivered

This shipment has been sent using SendPro™.

TRACKING NUMBER
USPS  9405509898643047150834

DELIVERED ON
Monday, August 26, 2019

Delivered on      Aug 26, 2019 2:39:00 PM
Delivery Location 1455 Market St, Ste 400
Shipped on        Tuesday, August 27, 2019

12. Signed and executed on September, 4, 2019 in Sacramento, California.

_Signature of Declarant_

**Adam John Mackintosh,**

Adam John Mackintosh (In Pro Per)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 21 -

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Adam John Mackintosh<br>PO BOX 1581<br>RANCHO CORDOVA, CA 95741<br><br>TELEPHONE NO. (650) 969-4664          FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: legal@ihughealth.com<br>ATTORNEY FOR *(Name)*: | **FILED/ENDORSED**<br><br>SEP - 6 2019<br><br>By: ___ R. CADDICK ___<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 720 Ninth Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: GORDON D. SCHABER COUNTY COURTHOUSE

PETITIONER/PLAINTIFF:
    Adam John Mackintosh

RESPONDENT/DEFENDANT:
    Amy Biddle [See Attached POS-030(P)]

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER:<br>34–2019–00261236-CU-BC-GDS |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
    10923 Progress Ct

3. On *(date)* 08/27/2019          I mailed from *(city and state)*: Rancho Cordova, California
the following **documents** *(specify)*:

    Notice and Order of Complex Case Determination

    ☑ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)*
    (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one)*:
    a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
    b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this
        business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is
        placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in
        a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
    a. **Name** of person served: Amy Biddle [See Attached POS-030(P)]
    b. **Address** of person served:

       3317 I Street, Sacramento, CA 95826 [See Attached POS-030(P)]

    ☑ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service*
    *by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 08/27/2019

Richard Maki
_____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)

▶ _____
(SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]
**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**
Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov

POS-030(P)

| SHORT TITLE: Mackintosh –vs– Lyft Inc | CASE NUMBER:<br>34–2019–00261236-CU-BC-GDS |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| Amy Biddle | 3317 I Street<br>Sacramento, CA 95826 |
| Benchmark Capital Management Co. VII, LLC | 988 MARKET ST<br>SAN FRANCISCO CA 94102-4002 |
| Matt Cohler | 988 MARKET ST<br>SAN FRANCISCO CA 94102-4002 |
| Benchmark Capital Partners VII, LP | 988 MARKET ST<br>SAN FRANCISCO CA 94102-4002 |
| Uber Health, LLC | 1455 Market St #400<br>San Francisco, CA 94103 |
| Logan Green | 185 Berry Street, Suite 5000<br>San Francisco, California 94107 |
| John Zimmer | 185 Berry Street, Suite 5000<br>San Francisco, California 94107 |
| Louis Darnell Pritchett | 100 WESTLAKE CT<br>ROSEVILLE CA 95747-4965 |
| Jerry Wang | PO BOX 994<br>Cupertino, CA 95014 |
| Jerry Wang | 582 Mateo Street<br>Los Angeles, Ca 90013 |
| Josef Arvin Acebedo | 6339 Lochinvar Way<br>Sacramento, California 95823 |
| AH Capital Management, LLC | 2865 Sand Hill Rd #101<br>Menlo Park, CA 94025 |
| Ben Horowitz | 2865 Sand Hill Rd #101<br>Menlo Park, CA 94025 |

**POS-030(P)**

| SHORT TITLE: Mackintosh –vs– Lyft Inc | CASE NUMBER:<br>34–2019–00261236-CU-BC-GDS |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| Uber Technologies, Inc. | 818 West Seventh Street Suite 930<br>Los Angeles, California 90017 |
| Lyft, Inc. | 818 West Seventh Street Suite 930<br>Los Angeles, California 90017 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Form Approved for Optional Use
Judicial Council of California
POS-030(P) [New January 1, 2005]

**ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL
(PERSONS SERVED)
(Proof of Service)**

Page 3 of 4

**POS-030(D)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mackintosh –vs– Lyft Inc | 34–2019–00261236-CU-BC-GDS |

**ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL  (DOCUMENTS SERVED)**

*(This Attachment is for use with form POS-030)*

The documents that were personally served by first-class mail are as follows *(describe each document specifically):*

AUTHORIZATION TO ELECTRONICALLY COMMUNICATE WITH ADAM JOHN MACKINTOSH

3,000 WITNESSES AND OR SUSPECTS LIST DECLARATION OF ADAM JOHN MACKINTOSH

NOTICE AND ORDER OF COMPLEX CASE DETERMINATION

Form Approved for Optional Use
Judicial Council of California
POS-030(D) [New January 1, 2005]

**ATTACHMENT TO PROOF OF SERVICE BY
FIRST-CLASS MAIL—CIVIL (DOCUMENTS SERVED)**
**(Proof of Service)**

Page 4 of 4

**POS-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br><br>ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT.   RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.: | FAX NO.: | E-MAIL ADDRESS *(Optional)*: legal@hughealth.com<br>ATTORNEY FOR *(Name)*: In Pro Per | **FOR COURT USE ONLY**<br><br>**FILED/ENDORSED**<br><br>SEP - 6 2019<br><br>By: _____ R. CADDICK _____<br>Deputy Clerk |

| | |
|---|---|
| **SACRAMENTO COUNTY SUPERIOR COURT** | |
| STREET ADDRESS: 3341 POWER INN ROAD | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: SACRAMENTO, CA 95826 | |
| BRANCH NAME: | |

| | |
|---|---|
| PLAINTIFF: ADAM JOHN MACINTOSH | CASE NUMBER: |
| DEFENDANT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents)*: Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction

3. a. Party served *(specify name of party as shown on documents served)*:
   **LOGAN GREEN**

   b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

4. Address where the party was served: **185 BERRY ST., STE. 5000**
   **SAN FRANCISCO, CA 94107**

5. I served the party *(check proper box)*
   a. ☐ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: (2) at *(time)*:
   b. ☑ by substituted service. On *(date)*: 8/29/2019 at *(time)*: 9:45 AM I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:
      **"JOHN DOE" (refused to give name) - SECURITY / PERSON IN CHARGE**
      Age: 30-35 Weight: 155 Hair: Black Sex: Male Height: 6'10" Eyes: Race: Black
      (1) ☑ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.
      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
         *(date)*: from *(city)*: or ☑ a declaration of mailing is attached.
      (5) ☑ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS010-1/27945

| PETITIONER: ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| RESPONDENT: LYFT, INC., et al. | 34-2019-00261238-CU-BC-GD |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*            *(2) from (city):*

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☑ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☐ On behalf of *(specify):*
   under the following Code of Civil Procedure section:

     ☐ 416.10 (corporation)            ☐ 415.95 (business organization, form unknown)
     ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
     ☐ 416.30 (joint stock company/association)    ☐ 416.70 (ward or conservatee)
     ☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)
     ☐ 416.50 (public entity)            ☐ 415.46 (occupant)
                              ☐ other:

7. Person who served papers
a. Name: **ANDY ESQUER - S & R Services**
b. Address: **901 Sneath Lane, Suite 115  San Bruno, CA 94066**
c. Telephone number: **(650) 794-1923**
d. The fee for service was: $ **50.00**
e. I am:

   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☑ registered California process server:
     (i) ☐ owner      ☐ employee    ☑ independent contractor.
     (ii) Registration No.: **1009**
     (iii) County: **San Francisco**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **9/3/2019**

**S & R Services**
**901 Sneath Lane, Suite 115**
**San Bruno, CA 94066**
**www.served-u.com**

_____  ► _____
   **ANDY ESQUER**                 (SIGNATURE)
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT.  RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.:  | FAX NO.: | E-MAIL ADDRESS *(Optional):* legal@thughealth.com<br>ATTORNEY FOR *(Name):* In Pro Per | |

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD

MAILING ADDRESS:

CITY AND ZIP CODE: SACRAMENTO, CA 95826

BRANCH NAME:

| PLAINTIFF/PETITIONER:  ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  LYFT, INC., et al. | 34-2019-00261238-CU-BC-GD |

| DECLARATION OF DILIGENCE | Ref. No. or File No.: |
|---|---|

I, ANDY ESQUER , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity; LOGAN GREEN as follows:

Documents:

    Summons; Complaint; Alternative Dispute (ADR) package; Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction;

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 8/15/2019 | 12:15 PM | Business | PER SECURITY, NO LEGAL DOCUMENTS ARE ACCEPTED HAVE TO LOOK UP SECRETARY OF STATE AND SERVE ALL LEGAL DOCUMETNS THERE. REFUSE TO CONFIRM EMPLOYMENT WITH LYFT. - ANDY ESQUER<br>185 BERRY ST., STE. 5000,  SAN FRANCISCO, CA 94107 |
| 8/28/2019 | 1:00 PM | Business | SECURITY REFUSED ME ACCESS, STATED ALL LEGAL DOCUMENTS NEED TO BE SERVED TO THE REGISTERED AGENT.  REFUSED TO CALL UPSTAIRS FOR SOMEONE TO COME DOWN. - ANDY ESQUER<br>185 BERRY ST., STE. 5000,  SAN FRANCISCO, CA 94107 |
| 8/29/2019 | 9:45 AM | Business | SECURITY REFUSED ME ACCESS, NOR CALL ANYONE FOR THE COMPANY TO COME DOWN. STATED LEGAL DOCUMENTS NEED TO BE SERVED TO THE REGISTERED AGENT OF THE COMPANY. I WAS ADVISED BY THE CLIENT TO DROP SERVE DOCUMENTS. SECURITY REFUSED TO ACCEPT SERVICE, I ANNOUNCED SERVICE AND LEFT IT ON THE DESK IN FRONT OF THE SECURITY. - ANDY ESQUER<br>185 BERRY ST., STE. 5000,  SAN FRANCISCO, CA 94107 |
| 8/29/2019 | 9:45 AM | Business | SUBSTITUTED SERVICE on: LOGAN GREEN; 185 BERRY ST., STE. 5000, SAN FRANCISCO, CA 94107; by serving: "JOHN DOE" (refused to give name) - SECURITY / PERSON IN CHARGE, Black Male 30-35 155 Black 5'10" . |

Fee for Service: **$ 50.00**

    County:  San Francisco
    Registration No.:  **1009**
**S & R Services**
**901 Sneath Lane, Suite 115**
**San Bruno, CA 94066**
**(650) 794-1923**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on September 3, 2019.

Signature: _____

    ANDY ESQUER

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: 27945

**S & R Services**

901 Sneath Lane, Suite 115

San Bruno, CA 94066

Phone: (650) 794-1923   Fax: (650) 989-4182

Continued from Proof of Service

**CLIENT:**  ADAM JOHN MACKINTOSH

**CLIENT FILE #:**                                              **DATE:**  September 3, 2019

**SUBJECT:**  LOGAN GREEN

**SERVED:**  "JOHN DOE" (refused to give name) - SECURITY / PERSON IN CHARGE

Summons; Complaint; Alternative Dispute (ADR) package; Notice of
Case Management Conference and Order to Appear; Immediate Relief and
Gesture of Good Faith to Re-Engage in Settlement After Full Denial
of Settlement by Defendnats; Program Case Notice; Ex Parte
Application for Permanent Injunction;



POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

ADAM JOHN MACKINTOSH
10923 PROGRESS CT.   RANCHO CORDOVA, CA 95670

TELEPHONE NO.: | FAX NO. | E-MAIL ADDRESS *(Optional)*: legal@ihughealth.com
ATTORNEY FOR *(Name)*: In Pro Per

FILED/ENDORSED

SEP - 6 2019

By: _____ R. CADDICK _____
Deputy Clerk

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD

MAILING ADDRESS:

CITY AND ZIP CODE: SACRAMENTO, CA 95826

BRANCH NAME:

| PLAINTIFF:  ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT:  LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

---

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. ☑ Summons

   b. ☑ Complaint

   c. ☑ Alternative Dispute Resolution (ADR) package

   d. ☐ Civil Case Cover Sheet

   e. ☐ Cross-complaint

   f. ☑ other *(specify documents)*: Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction

3. a. Party served *(specify name of party as shown on documents served)*:

   **JOHN ZIMMER**

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

4. Address where the party was served:  **185 BERRY ST., STE. 5000**
                                        **SAN FRANCISCO, CA 94107**

5. I served the party *(check proper box)*

   a. ☐ by personal service.  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:     (2) at *(time)*:

   b. ☑ by substituted service.  On *(date)*: 8/29/2019  at *(time)*: 9:45 AM  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:
     **"JOHN DOE" (refused to give name) - SECURITY / PERSON IN CHARGE**
         **Age: 30-35 Weight: 165 Hair: Black Sex: Male Height: 5'10" Eyes:  Race: Black**

     (1) ☑ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

     (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

     (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

     (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
       *(date)*:     from *(city)*:             or ☑ a declaration of mailing is attached.

     (5) ☑ I attach a  declaration of diligence stating actions taken first to attempt personal service.

---

Page 1 of 2

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>POS010-1/27946 |
|---|---|---|

| PETITIONER: ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| RESPONDENT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                      **(2) from** *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☑ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☐ On behalf of *(specify):*

    under the following Code of Civil Procedure section:

        ☐ 416.10 (corporation)             ☐ 415.95 (business organization, form unknown)

        ☑ 416.20 (defunct corporation)       ☐ 416.60 (minor)

        ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)

        ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)

        ☐ 416.50 (public entity)           ☐ 415.46 (occupant)

                                ☐ other:

7. Person who served papers
a. Name: **ANDY ESQUER - S & R Services**
b. Address: **901 Sneath Lane, Suite 115  San Bruno, CA 94066**
c. Telephone number: **(650) 794-1923**
d. The fee for service was: **$ 40.00**
e. I am:

    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑ registered California process server:
        (i) ☐ owner      ☐ employee    ☑ independent contractor.
        (ii) Registration No.: **1009**
        (iii) County: **San Francisco**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **9/3/2019**

**S & R Services**
**901 Sneath Lane, Suite 115**
**San Bruno, CA 94066**
**www.served-u.com**

**ANDY ESQUER**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

►             (SIGNATURE)

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

ADAM JOHN MACKINTOSH
10923 PROGRESS CT.   RANCHO CORDOVA, CA 95670

TELEPHONE NO.: | FAX NO. | E-MAIL ADDRESS (Optional): legal@ihughealth.com
ATTORNEY FOR (Name): In Pro Per:

FOR COURT USE ONLY

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD

MAILING ADDRESS:

CITY AND ZIP CODE: SACRAMENTO, CA 95826

BRANCH NAME:

| PLAINTIFF/PETITIONER:  ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |
| **DECLARATION OF DILIGENCE** | Ref. No. or File No.: |

I, ANDY ESQUER , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: JOHN ZIMMER as follows:

Documents:

Summons; Complaint; Alternative Dispute Resolution (ADR) package; Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage In Settlement After Full Denial of Settlement by Defendants; Program Case Notice; Ex Parte Application for Permanent Injunction;

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 8/15/2019 | 12:15 PM | Business | PER SECURITY, NO LEGAL DOCUMENTS ARE ACCEPTED HAVE TO LOOK UP SECRETARY OF STATE AND SERVE ALL LEGAL DOCUMETNS THERE. REFUSE TO CONFIRM EMPLOYMENT WITH LYFT. - ANDY ESQUER<br>185 BERRY ST., STE. 5000,  SAN FRANCISCO, CA 94107 |
| 8/28/2019 | 1:00 PM | Business | SECURITY REFUSED ME ACCESS, STATED ALL LEGAL DOCUMENTS NEED TO BE SERVED TO THE REGISTERED AGENT.  REFUSED TO CALL UPSTAIRS FOR SOMEONE TO COME DOWN. - ANDY ESQUER<br>185 BERRY ST., STE. 5000,  SAN FRANCISCO, CA 94107 |
| 8/29/2019 | 9:45 AM | Business | SECURITY REFUSED ME ACCESS, NOR CALL ANYONE FOR THE COMPANY TO COME DOWN. STATED LEGAL DOCUMENTS NEED TO BE SERVED TO THE REGISTERED AGENT OF THE COMPANY.  I WAS ADVISED BY THE CLIENT TO DROP SERVE DOCUMENTS. SECURITY REFUSED TO ACCEPT SERVICE, I ANNOUNCED SERVICE AND LEFT IT ON THE DESK IN FRONT OF THE SECURITY. - ANDY ESQUER<br>185 BERRY ST., STE. 5000,  SAN FRANCISCO, CA 94107 |
| 8/29/2019 | 9:45 AM | Business | SUBSTITUTED SERVICE on: JOHN ZIMMER; 185 BERRY ST., STE. 5000, SAN FRANCISCO, CA 94107; by serving: "JOHN DOE" (refused to give name) - SECURITY / PERSON IN CHARGE, Black Male 30-35 155 Black 5'10" . |

Fee for Service: $ 40.00
County:  San Francisco
Registration No.:  1009
S & R Services
901 Sneath Lane, Suite 115
San Bruno, CA 94066
(650) 794-1923

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on September 3, 2019.

Signature: _____

ANDY ESQUER

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: 27946

**POS-030**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Adam John Mackintosh<br>PO BOX 1581<br>RANCHO CORDOVA, CA 95741<br><br>TELEPHONE NO. (650) 969-4664   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional)* legal@ihughealth.com<br>ATTORNEY FOR *(Name):* | **FILED/ENDORSED**<br><br>SEP - 6 2019<br><br>By: _____ R. CADDICK<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
  STREET ADDRESS: 720 Ninth Street
  MAILING ADDRESS:
  CITY AND ZIP CODE Sacramento, CA 95814
  BRANCH NAME GORDON D. SCHABER COUNTY COURTHOUSE

PETITIONER/PLAINTIFF: Adam John Mackintosh

RESPONDENT/DEFENDANT: Josef Arvin Acebedo

| **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL** | CASE NUMBER:<br>34-2019-00261236-CU-BC-GDS |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   14614 Huntington Rd
   Madura CA 93636

3. On *(date)* 08/21/2019   I mailed from *(city and state):* Rancho Cordova, California
   the following **documents** *(specify):*

   Alternative Dispute (ADR) package, and Program Case Notice

   ☑ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)*
   (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served: Josef Arvin Acebedo
   b. **Address** of person served:

      6339 Lochinvar Way
      Sacramento, California 95823

   ☑ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 08/21/2019

Sharon Grossein

_____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)

_____
(SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use<br>Judicial Council of California<br>POS-030 [New January 1, 2005]     **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**<br>(Proof of Service)     Code of Civil Procedure, §§ 1013, 1013a<br>www.courtinfo.ca.gov

**POS-030(P)**

| SHORT TITLE: Mackintosh –vs– Lyft Inc | CASE NUMBER:<br>34–2019–00261236-CU-BC-GDS |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| Josef Arvin Acebedo | 6339 Lochinvar Way<br>Sacramento, California 95823 |
| Amy Biddle | 3317 I Street<br>Sacramento, CA 95816 |
| Better Business Bureaus, Inc. | 10399 Old Placerville Rd,<br>Sacramento, CA 95827 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Form Approved for Optional Use
Judicial Council of California
POS-030(P) [New January 1, 2005]

**ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL
(PERSONS SERVED)
(Proof of Service)**

Page 2 of 3

**POS-030(D)**

| SHORT TITLE:<br>Mackintosh –vs– Lyft Inc | CASE NUMBER:<br>34–2019–00261236-CU-BC-GDS |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (DOCUMENTS SERVED)

*(This Attachment is for use with form POS-030)*

**The documents that were personally served by first-class mail are as follows (describe each document specifically):**

Alternative Dispute (ADR) package

Program Case Notice

Form Approved for Optional Use
Judicial Council of California
POS-030(D) [New January 1, 2005]

**ATTACHMENT TO PROOF OF SERVICE BY
FIRST-CLASS MAIL—CIVIL (DOCUMENTS SERVED)
(Proof of Service)**

Page 3 of 3

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

**Adam John Mackintosh**
**PO BOX 1581**
**RANCHO CORDOVA, CA 95741**

TELEPHONE NO. (650) 969-4664        FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)* legal@ihughealth.com
ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Sacramento
STREET ADDRESS: 720 Ninth Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: GORDON D. SCHABER COUNTY COURTHOUSE

**FILED/ENDORSED**

**SEP - 6 2019**

By: R. CADDICK
Deputy Clerk

PETITIONER/PLAINTIFF:
    **Adam John Mackintosh**

RESPONDENT/DEFENDANT:
    **AH Capital Management, LLC**

| **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL** | CASE NUMBER: 34-2019-00261236-CU-BC-GDS |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:

    14614 Huntington Rd. Madera CA 93636.

3. On *(date)* 08/17/2019        I mailed from *(city and state)*: Rancho Cordova, California the following **documents** *(specify)*:

    Summons, Complaint, Notice of Case Management Conference and Order to Appear, Immediate Relief and Gesture of Good Faith to Re-Engage In Settlement After Full Denial of Settlement by Defendants

    ☑ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one)*:
    a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
    b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
    a. **Name** of person served: AH Capital Management, LLC
    b. **Address** of person served:

        2865 San Hill Road, Suite 101
        Menlo Park, CA 94025-7022

    ☑ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 08/17/2019

_Sharon Grosselin_                              ▶          _[signature]_
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)                (SIGNATURE OF PERSON COMPLETING THIS FORM)

| Form Approved for Optional Use Judicial Council of California POS-030 [New January 1, 2005] | **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL** **(Proof of Service)** | Code of Civil Procedure, §§ 1013, 1013a www.courtinfo.ca.gov |
|---|---|---|

POS-030(P)

| SHORT TITLE: Mackintosh –vs– Lyft Inc | CASE NUMBER:<br>34–2019–00261236-CU-BC-GDS |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| AH Capital Management, LLC | 2865 San Hill Road, Suite 101<br>Menlo Park, CA 94025-7022 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Form Approved for Optional Use
Judicial Council of California
POS-030(P) [New January 1, 2005]
**ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL
(PERSONS SERVED)
(Proof of Service)**
Page 2 of 3

**POS-030(D)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mackintosh –vs– Lyft Inc | 34–2019–00261236-CU-BC-GDS |

### ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (DOCUMENTS SERVED)
*(This Attachment is for use with form POS-030)*

The documents that were personally served by first-class mail are as follows *(describe each document specifically):*

Summons

Complaint

Alternative Dispute (ADR) package

Notice of Case Management Conference and Order to Appear

Immediate Relief and Gesture of Good Faith to Re-Engage In Settlement After Full Denial of Settlement by Defendants

Program Case Notice

Ex Parte Application for Permanent Injunction

Form Approved for Optional Use
Judicial Council of California
POS-030(D) [New January 1, 2005]

**ATTACHMENT TO PROOF OF SERVICE BY
FIRST-CLASS MAIL—CIVIL (DOCUMENTS SERVED)**
(Proof of Service)

Page 3 of 3

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Adam John Mackintosh<br>PO BOX 1581<br>RANCHO CORDOVA, CA 95741 | |

TELEPHONE NO.(650) 969-4664    FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)* legal@ihughealth.com
ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 720 Ninth Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: GORDON D. SCHABER COUNTY COURTHOUSE

**FILED/ENDORSED**
SEP - 6 2019
By: R. CADDICK
Deputy Clerk

PETITIONER/PLAINTIFF:
    Adam John Mackintosh

RESPONDENT/DEFENDANT:
    Ben Horowitz

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER:<br>34–2019–00261236-CU-BC-GDS |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is: 14614 Huntington Rd Madera CA 93636

3. On *(date)* 08/17/2019    I mailed from *(city and state)*: Rancho Cordova, California
   the following **documents** *(specify)*:

   Summons, Complaint, Notice of Case Management Conference and Order to Appear, Immediate Relief and Gesture of Good Faith to Re-Engage In Settlement After Full Denial of Settlement by Defendants

   ☑ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one)*:
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served: Ben Horowitz
   b. **Address** of person served:

   2865 San Hill Road, Suite 101
   Menlo Park, CA 94025-7022

   ☑ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 08/17/2019

Shanon Grosselin
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)    ▶    (SIGNATURE OF PERSON COMPLETING THIS FORM)

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-030 [New January 1, 2005] | **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**<br>**(Proof of Service)** | Code of Civil Procedure, §§ 1013, 1013a<br>www.courtinfo.ca.gov |
|---|---|---|

POS-030(P)

| SHORT TITLE: Mackintosh –vs– Lyft Inc | CASE NUMBER: 34–2019–00261236-CU-BC-GDS |
| --- | --- |

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
| --- | --- |
| Ben Horowitz | 2865 San Hill Road, Suite 101 Menlo Park, CA 94025-7022 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

POS-030(D)

| SHORT TITLE:<br>Mackintosh –vs– Lyft Inc | CASE NUMBER:<br>34–2019–00261236-CU-BC-GDS |
| --- | --- |

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL  (DOCUMENTS SERVED)

*(This Attachment is for use with form POS-030)*

**The documents that were personally served by first-class mail are as follows** *(describe each document specifically):*

Summons

Complaint

Alternative Dispute (ADR) package

Notice of Case Management Conference and Order to Appear

Immediate Relief and Gesture of Good Faith to Re-Engage In Settlement After Full Denial of Settlement by  Defendants

Program Case Notice

Ex Parte Application for Permanent Injunction

**ATTACHMENT TO PROOF OF SERVICE BY<br>FIRST-CLASS MAIL—CIVIL (DOCUMENTS SERVED)<br>(Proof of Service)**

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
ADAM JOHN MACKINTOSH
10923 PROGRESS CT.   RANCHO CORDOVA, CA 95670

TELEPHONE NO.: | FAX NO. | E-MAIL ADDRESS (Optional): legal@ihughealth.com
ATTORNEY FOR (Name): In Pro Per.

FOR COURT USE ONLY

**FILED/ENDORSED**

SEP - 6 2019

By: _____ R. CADDICK
Deputy Clerk

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD

MAILING ADDRESS:

CITY AND ZIP CODE: SACRAMENTO, CA 95826

BRANCH NAME:

PLAINTIFF:  ADAM JOHN MACINTOSH

DEFENDANT: LYFT, INC., et al.

CASE NUMBER:
34-2019-00261236-CU-BC-GD

**PROOF OF SERVICE OF SUMMONS**

Ref. No. or File No.:

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* **Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction**

3. a. Party served *(specify name of party as shown on documents served):*
   **BEN HOROWITZ**

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served: **2865 SANDHILL RD., #101**
   **SAN MATEO, CA 94025**

5. I served the party *(check proper box)*

   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*   (2) at *(time):*

   b. ☑ **by substituted service.** On *(date):* 8/16/2019 at *(time):* 11:25 PM I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
   **ANNA JABLONSKI - EXECUTIVE ASSISTANT / PERSON IN CHARGE**

   Age: 40's Weight: 180 Hair: Black Sex: Female Height: Sitting Eyes: Race: White

   (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
   *(date):*   from *(city):*                                   or ☑ a declaration of mailing is attached.

   (5) ☑ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

**POS010-1/27952**

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                              **(2)** from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)           ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)   ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)            ☐ 415.46 (occupant)
                                  ☐ other:

7. **Person who served papers**
  a. Name: **Carlos Castro - S & R Services**
  b. Address: **903 Sneath Lane, Suite 227  San Bruno, CA 94066**
  c. Telephone number: **(650) 794-1923**
  d. **The fee** for service was: **$ 40.00**
  e. I am:

    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑ registered California process server:
      (i) ☐ owner    ☐ employee    ☑ independent contractor.
      (ii) Registration No.: **1142**
      (iii) County: **San Francisco**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **8/16/2019**



**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**www.served-u.com**



_____
      **Carlos Castro**
  (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶   *Carlos Castro*                                                      (SIGNATURE)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT.   RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.: \| FAX NO. \| E-MAIL ADDRESS *(Optional)*: legal@ihughealth.com<br>ATTORNEY FOR *(Name)*: In Pro Per: | |

| SACRAMENTO COUNTY SUPERIOR COURT | |
|---|---|
| STREET ADDRESS: 3341 POWER INN ROAD | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: SACRAMENTO, CA 95826 | |
| BRANCH NAME: | |

| PLAINTIFF/PETITIONER:  ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

| DECLARATION OF DILIGENCE | Ref. No. or File No.: |
|---|---|

I, Carlos Castro , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: BEN HOROWITZ as follows:
Documents:

**Summons; Complaint; Alternative Dispute (ADR) package; Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction;**

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 8/13/2019 | 11:00 AM | Business | PER "JANE DOE"/RECEPTIONIST, SUBJECT IS NOT IN AND REFUSED TO GIVE HER NAME OR STATE WHEN SUBJECT WILL BE AVAILABLE, ONLY SAID THAT THEY WILL NOT ACCEPT ANY DOCUMENTS. - Carlos Castro<br>2865 SANDHILL RD., #101,  SAN MATEO, CA 94025 |
| 8/15/2019 | 1:20 PM | Business | PER FRONT DESK, SUBJECT IS NOT IN RIGHT NOW. - Carlos Castro<br>2865 SANDHILL RD., #101,  SAN MATEO, CA 94025 |
| 8/16/2019 | 11:25 PM | Business | SUBSTITUTED SERVICE on: BEN HOROWITZ; 2865 SANDHILL RD., #101, SAN MATEO, CA 94025; by serving: ANNA JABLONSKI - EXECUTIVE ASSISTANT / PERSON IN CHARGE, White Female 40's 180 Black Sitting . |

Fee for Service: **$ 40.00**



County:  **San Francisco**
Registration No.:  **1142**
**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**(650) 794-1923**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 16, 2019.



Signature: _____
                    **Carlos Castro**

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: 27952

**S & R Services**
903 Sneath Lane, Suite 227
San Bruno, CA 94066
Phone: (650) 794-1923   Fax: (650) 989-4182

Continued from Proof of Service

**CLIENT:**  ADAM JOHN MACKINTOSH

**CLIENT FILE #:**                                         **DATE:**  August 16, 2019

**SUBJECT:**  BEN HOROWITZ

**SERVED:**  ANNA JABLONSKI - EXECUTIVE ASSISTANT / PERSON IN CHARGE

Summons; Complaint; Alternative Dispute (ADR) package; Notice of
Case Management Conference and Order to Appear; Immediate Relief and
Gesture of Good Faith to Re-Engage in Settlement After Full Denial
of Settlement by Defendnats; Program Case Notice; Ex Parte
Application for Permanent Injunction;

POS-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address)*:

ADAM JOHN MACKINTOSH
10923 PROGRESS CT.   RANCHO CORDOVA, CA 95670

TELEPHONE NO.:  | FAX NO. :  | E-MAIL ADDRESS *(Optional)*: legal@ihughealth.com
ATTORNEY FOR *(Name)*: In Pro Per:

FOR COURT USE ONLY

**FILED/ENDORSED**

SEP - 6 2019

By: _____ R. CADDICK _____
Deputy Clerk

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD

MAILING ADDRESS:

CITY AND ZIP CODE: SACRAMENTO, CA 95826

BRANCH NAME:

| | |
|---|---|
| PLAINTIFF:  ADAM JOHN MACINTOSH | CASE NUMBER: |
| DEFENDANT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents)*: Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction

3. a. Party served *(specify name of party as shown on documents served)*:
   **AH CAPITAL MANAGEMENT LLC**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

4. Address where the party was served: **2865 SANDHILL RD., #101
   SAN MATEO, CA 94025**

5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:     (2) at *(time)*:

   b. ☑ **by substituted service.** On *(date)*: 8/13/2019 at *(time)*: 11:55 AM I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:
   **"JANE DOE" (refused to give her name) - RECEPTIONIST / PERSON IN CHARGE**
   Age: 35 Weight: 110 Hair: Black Sex: Female Height: 5'2" Eyes:  Race: Asian

      (1) ☑ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
      *(date)*:    from *(city)*:                              or ☑ a declaration of mailing is attached.

      (5) ☑ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/27951

| PETITIONER: ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| RESPONDENT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*

   (2) from *(city):*

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   a. ☐ as an individual defendant.

   b. ☐ as the person sued under the fictitious name of *(specify):*

   c. ☐ as occupant.

   d. ☑ On behalf of *(specify):* **AH CAPITAL MANAGEMENT LLC**
      under the following Code of Civil Procedure section:

|  |  |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☑ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
|  | ☐ other: |

7. **Person who served papers**

   a. Name: **Carlos Castro - S & R Services**

   b. Address: **903 Sneath Lane, Suite 227  San Bruno, CA 94066**

   c. Telephone number: **(650) 794-1923**

   d. The fee for service was: $ **50.00**

   e. I am:

      (1) ☐ not a registered California process server.

      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

      (3) ☑ registered California process server:

         (i) ☐ owner      ☐ employee      ☑ independent contractor.

         (ii) Registration No.: **1142**

         (iii) County: **San Francisco**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **8/15/2019**

**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**www.served-u.com**

_____
**Carlos Castro**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE)

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*<br><br>ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT.  RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.:  | FAX NO  | E-MAIL ADDRESS *(Optional)*: legal@ihughealth.com<br>ATTORNEY FOR *(Name)*: In Pro Per: | FOR COURT USE ONLY |

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD

MAILING ADDRESS:

CITY AND ZIP CODE: SACRAMENTO, CA 95826

BRANCH NAME:

| | |
|---|---|
| PLAINTIFF/PETITIONER:  ADAM JOHN MACINTOSH<br><br>DEFENDANT/RESPONDENT: LYFT, INC., et al. | CASE NUMBER:<br>34-2019-00261236-CU-BC-GD |
| **DECLARATION OF DILIGENCE** | Ref No. or File No.: |

I, Carlos Castro , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: AH CAPITAL MANAGEMENT LLC as follows:
Documents:

Summons; Complaint; Alternative Dispute (ADR) package; Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction;

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 8/13/2019 | 11:55 AM | Business | PER RECEPTIONIST, BEN HOROWITZ IS NOT IN. REFUSED TO GIVE HER NAME OR ACCEPT DOCUMENTS FOR THE COMPANY. I ANNOUNCED SERVICE AND LEFT IT ON HER DESK. SUBSTITUTE SERVICE TO "JANE DOE" (refused to give name). - Carlos Castro<br>2865 SANDHILL RD., #101,  SAN MATEO, CA 94025 |
| 8/13/2019 | 11:55 AM | Business | SUBSTITUTED SERVICE on: AH CAPITAL MANAGEMENT LLC; 2865 SANDHILL RD., #101, SAN MATEO, CA 94025; by serving: "JANE DOE" (refused to give her name) - RECEPTIONIST / PERSON IN CHARGE, Asian Female 35 110 Black 5'2" . |

Fee for Service: **$ 50.00**
County: **San Francisco**
Registration No.: **1142**
**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**(650) 794-1923**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 15, 2019.

Signature: _Carlos Castro_

Carlos Castro

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: 27951

**POS-030**



| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Adam John Mackintosh<br>PO BOX 1581<br>RANCHO CORDOVA, CA 95741<br><br>TELEPHONE NO.(650) 969-4664          FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:legal@ihughealth.com<br>ATTORNEY FOR *(Name)*: | **FILED/ENDORSED**<br><br>SEP - 6 2019<br><br>By:_____<br>J. CADDICK<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS:720 Ninth Street
MAILING ADDRESS:
CITY AND ZIP CODE:Sacramento, CA 95814
BRANCH NAME:GORDON D. SCHABER COUNTY COURTHOUSE

| PETITIONER/PLAINTIFF:      Adam John Mackintosh | |
|---|---|
| RESPONDENT/DEFENDANT:      Benchmark Capital Management Co. VII, LLC | |

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER:<br>34-2019-00261236-CU-BC-GDS |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1.  I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2.  My residence or business address is:
    14614 Huntington Rd
    Madera CA 95636

3.  On *(date)*08/21/2019      I mailed from *(city and state)*:Rancho Cordova, California
    the following **documents** *(specify)*:

    Summons, Complaint, Notice of Case Management Conference and Order to Appear, Immediate Relief and
    Gesture of Good Faith to Re-Engage In Settlement After Full Denial of Settlement by Defendants

    ☑ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)*
    (form POS-030(D)).

4.  I served the documents by enclosing them in an envelope and *(check one)*:
    a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
    b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this
       business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is
       placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in
       a sealed envelope with postage fully prepaid.

5.  The envelope was addressed and mailed as follows:
    a. **Name** of person served: Benchmark Capital Management Co. VII, LLC
    b. **Address** of person served:

    988 MARKET ST
    SAN FRANCISCO CA 94102-4002

    ☑ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service
    by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:08/21/2019

Sharon Gosselin                                            ▶

_____                           _____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)        (SIGNATURE OF PERSON COMPLETING THIS FORM)

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-030 [New January 1, 2005] | **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**<br>**(Proof of Service)** | Code of Civil Procedure, §§ 1013, 1013a<br>www.courtinfo.ca.gov |
|---|---|---|

POS-030(P)

| SHORT TITLE: Mackintosh –vs– Lyft Inc | CASE NUMBER:<br>34–2019–00261236-CU-BC-GDS |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| Benchmark Capital Management Co. VII, LLC | 988 MARKET ST<br>SAN FRANCISCO CA 94102-4002 |
| Matt Cohler | 988 MARKET ST<br>SAN FRANCISCO CA 94102-4002 |
| Benchmark Capital Partners VII, LP | 988 MARKET ST<br>SAN FRANCISCO CA 94102-4002 |
| Uber Health, LLC | 1455 Market St #400<br>San Francisco, CA 94103 |
| Logan Green | 185 Berry Street, Suite 5000<br>San Francisco, California 94107 |
| John Zimmer | 185 Berry Street, Suite 5000<br>San Francisco, California 94107 |
| Louis Darnell Pritchett | 100 WESTLAKE CT<br>ROSEVILLE CA 95747-4965 |
| Jerry Wang | PO BOX 994<br>Cupertino, CA 95014 |
| Jerry Wang | 582 Mateo Street<br>Los Angeles, Ca 90013 |
|  |  |
|  |  |
|  |  |
|  |  |

POS-030(D)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mackintosh –vs– Lyft Inc | 34–2019–00261236-CU-BC-GDS |

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL  (DOCUMENTS SERVED)

*(This Attachment is for use with form POS-030)*

The documents that were personally served by first-class mail are as follows *(describe each document specifically)*:

Summons

Complaint

Alternative Dispute (ADR) package

Notice of Case Management Conference and Order to Appear

Immediate Relief and Gesture of Good Faith to Re-Engage In Settlement After Full Denial of Settlement by  Defendants

Program Case Notice

Ex Parte Application for Permanent Injunction

**ATTACHMENT TO PROOF OF SERVICE BY
FIRST-CLASS MAIL—CIVIL (DOCUMENTS SERVED)**
(Proof of Service)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT.  RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.: │ FAX NO. │ E-MAIL ADDRESS *(Optional):* legal@ihughealth.com<br>ATTORNEY FOR *(Name):* In Pro Per. | **FILED/ENDORSED**<br><br>SEP - 6 2019<br><br>By: _____ R. CADDICK _____<br>Deputy Clerk |

SACRAMENTO COUNTY SUPERIOR COURT

STREET ADDRESS: 3341 POWER INN ROAD

MAILING ADDRESS:

CITY AND ZIP CODE: SACRAMENTO, CA 95826

BRANCH NAME:

| PLAINTIFF: ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* **Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction**
3. a. Party served *(specify name of party as shown on documents served):*
   **BENCHMARK CAPITAL MANAGEMENT CO. VII, LLC**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **ANDY RACHLEFF - CO-FOUNDER**

4. Address where the party was served: **988 MARKET ST.**
   **SAN FRANCISCO, CA 94102**

5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*   (2) at *(time):*

   b. ☑ **by substituted service.** On *(date):* 8/15/2019 at *(time):* 4:05 PM I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
   **TIMOTHY IVANOV - MANAGER / PERSON IN CHARGE**
   **Age: 45-50 Weight: 220 Hair: Balding Sex: Male Height: 5'10" Eyes: White Race: White**

   (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
   *(date):* from *(city):*                     or ☑ a declaration of mailing is attached.

   (5) ☑ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

**POS010-1/27955**



c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                      (2) *from (city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of *(specify):* **BENCHMARK CAPITAL MANAGEMENT CO. VII, LLC**

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☑ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

    a. Name: **Andy Esquer - S & R Services**

    b. Address: **903 Sneath Lane, Suite 227  San Bruno, CA 94066**

    c. Telephone number: **(650) 794-1923**

    d. The fee for service was: **$ 50.00**

    e. I am:

        (1) ☐ not a registered California process server.

        (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

        (3) ☑ registered California process server:

            (i) ☐ owner    ☐ employee    ☑ independent contractor.

            (ii) Registration No.: **1009**

            (iii) County:  **San Francisco**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **8/19/2019**

**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**www.served-u.com**

<u>**Andy Esquer**</u>
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶

(SIGNATURE)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT.  RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.:  \| FAX NO.  \| E-MAIL ADDRESS *(Optional)*: legal@ihughealth.com<br>ATTORNEY FOR *(Name)*: In Pro Per. | |

| SACRAMENTO COUNTY SUPERIOR COURT | |
|---|---|
| STREET ADDRESS: 3341 POWER INN ROAD | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: SACRAMENTO, CA 95826 | |
| BRANCH NAME: | |

| PLAINTIFF/PETITIONER:  ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

| DECLARATION OF DILIGENCE | Ref. No. or File No.: |
|---|---|

I, Andy Esquer , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: BENCHMARK CAPITAL MANAGEMENT CO. VII, LLC as follows:
Documents:

**Summons; Complaint; Alternative Dispute (ADR) package; Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction;**

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 8/13/2019 | 5:00 PM | Business | NO ANSWER WHEN SECURITY CALLED UPSTAIRS. - Andy Esquer<br>988 MARKET ST.,  SAN FRANCISCO, CA 94102 |
| 8/14/2019 | 7:50 AM | Business | NO ANSWER WHEN SECURITY CALLED UPSTAIRS. - Andy Esquer<br>988 MARKET ST.,  SAN FRANCISCO, CA 94102 |
| 8/15/2019 | 4:05 PM | Business | SUBSTITUTED SERVICE on: BENCHMARK CAPITAL<br>MANAGEMENT CO. VII, LLC; 988 MARKET ST., SAN FRANCISCO,<br>CA 94102; by serving: TIMOTHY IVANOV - MANAGER / PERSON IN<br>CHARGE, White Male 45-50 220 Balding 5'10" . |

Fee for Service: **$ 50.00**

County: **San Francisco**
Registration No.: **1009**
**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**(650) 794-1923**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 19, 2019.

Signature: _____
**Andy Esquer**

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: 27955

**S & R Services**
903 Sneath Lane, Suite 227
San Bruno, CA 94066
Phone: (650) 794-1923   Fax: (650) 989-4182

Continued from Proof of Service

**CLIENT:** ADAM JOHN MACKINTOSH

**CLIENT FILE #:**                                    **DATE:** August 19, 2019

**SUBJECT:** BENCHMARK CAPITAL MANAGEMENT CO. VII, LLC

**SERVED:** TIMOTHY IVANOV - MANAGER / PERSON IN CHARGE

Summons; Complaint; Alternative Dispute (ADR) package; Notice of
Case Management Conference and Order to Appear; Immediate Relief and
Gesture of Good Faith to Re-Engage in Settlement After Full Denial
of Settlement by Defendnats; Program Case Notice; Ex Parte
Application for Permanent Injunction;



| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

ADAM JOHN MACKINTOSH
10923 PROGRESS CT.   RANCHO CORDOVA, CA 95670

TELEPHONE NO.: | FAX NO. | E-MAIL ADDRESS *(Optional):* legal@ihughealth.com
ATTORNEY FOR *(Name):* In Pro Per:

**FILED/ENDORSED**

SEP - 6 2019

By: _____ R. CADDICK _____
Deputy Clerk

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD

MAILING ADDRESS:

CITY AND ZIP CODE: SACRAMENTO, CA 95826

BRANCH NAME:

PLAINTIFF: ADAM JOHN MACINTOSH

DEFENDANT: LYFT, INC., et al.

CASE NUMBER:

34-2019-00261236-CU-BC-GD

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:

   a. ☑ Summons

   b. ☑ Complaint

   c. ☑ Alternative Dispute Resolution (ADR) package

   d. ☐ Civil Case Cover Sheet

   e. ☐ Cross-complaint

   f. ☑ other *(specify documents):* **Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction**

3. a. Party served *(specify name of party as shown on documents served):*
   **BENCHMARK CAPITAL PARTNERS VII, LP**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **ANDY RACHLEFF - CO-FOUNDER**

4. Address where the party was served: **988 MARKET ST.**
   **SAN FRANCISCO, CA 94102**

5. I served the party *(check proper box)*

   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*     (2) at *(time):*

   b. ☑ **by substituted service.** On *(date):* 8/15/2019  at  *(time):* 4:05 PM  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
   **TIMOTHY IVANOV - MANAGER / PERSON IN CHARGE**

   **Age: 45-50 Weight: 220 Hair: Balding Sex: Male Height: 5'10" Eyes: Race: White**

   (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
   *(date):*  from *(city):*                                    or ☑ a declaration of mailing is attached.

   (5) ☑ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>**POS010-1/27956** |
|---|---|---|

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                *(2) from (city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) *(Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of *(specify):* **BENCHMARK CAPITAL MANAGEMENT CO. VII, LLC**

    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)            ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)        ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
    ☑ 416.40 (association or partnership)      ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)             ☐ 415.46 (occupant)
                                 ☐ other:

7. **Person who served papers**

    a. Name: **Andy Esquer - S & R Services**

    b. Address: **903 Sneath Lane, Suite 227  San Bruno, CA 94066**

    c. Telephone number: **(650) 794-1923,**

    d. **The fee** for service was: **$ 40.00**

    e. I am:

        (1) ☐ not a registered California process server.

        (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

        (3) ☑ registered California process server:

            (i) ☐ owner   ☐ employee    ☑ independent contractor.

            (ii) Registration No.: **1009**

            (iii) County: **San Francisco**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **8/19/2019**



**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**www.served-u.com**



       **Andy Esquer**                        ▶
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)            (SIGNATURE)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT. RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.: \| FAX NO. \| E-MAIL ADDRESS *(Optional)*: legal@ihughealth.com<br>ATTORNEY FOR *(Name)*: In Pro Per. | |

| | |
|---|---|
| **SACRAMENTO COUNTY SUPERIOR COURT**<br>STREET ADDRESS: 3341 POWER INN ROAD<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: SACRAMENTO, CA 95826<br>BRANCH NAME: | |

| PLAINTIFF/PETITIONER: ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

| DECLARATION OF DILIGENCE | Ref. No. or File No.: |
|---|---|

I, Andy Esquer , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: BENCHMARK CAPITAL PARTNERS VII, LP as follows:
Documents:

Summons; Complaint; Alternative Dispute (ADR) package; Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction;

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 8/13/2019 | 5:00 PM | Business | NO ANSWER WHEN SECURITY CALLED UPSTAIRS. - Andy Esquer<br>988 MARKET ST., SAN FRANCISCO, CA 94102 |
| 8/14/2019 | 7:50 AM | Business | NO ANSWER WHEN SECURITY CALLED UPSTAIRS. - Andy Esquer<br>988 MARKET ST., SAN FRANCISCO, CA 94102 |
| 8/15/2019 | 4:05 PM | Business | SUBSTITUTED SERVICE on: BENCHMARK CAPITAL PARTNERS<br>VII, LP; 988 MARKET ST., SAN FRANCISCO, CA 94102; by serving:<br>TIMOTHY IVANOV - MANAGER / PERSON IN CHARGE, White Male<br>45-50 220 Balding 5'10" . |

Fee for Service: **$ 40.00**



County: **San Francisco**
Registration No.: **1009**
**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**(650) 794-1923**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 19, 2019.

Signature: _____
**Andy Esquer**

## AFFIDAVIT OF REASONABLE DILIGENCE

Order#: 27956

**S & R Services**
903 Sneath Lane, Suite 227
San Bruno, CA 94066
Phone: (650) 794-1923   Fax: (650) 989-4182

Continued from Proof of Service

**CLIENT:**   ADAM JOHN MACKINTOSH

**CLIENT FILE #:**                                                          **DATE:**   August 19, 2019

**SUBJECT:**   BENCHMARK CAPITAL PARTNERS VII, LP

**SERVED:**   TIMOTHY IVANOV - MANAGER / PERSON IN CHARGE

Summons; Complaint; Alternative Dispute (ADR) package; Notice of
Case Management Conference and Order to Appear; Immediate Relief and
Gesture of Good Faith to Re-Engage in Settlement After Full Denial
of Settlement by Defendnats; Program Case Notice; Ex Parte
Application for Permanent Injunction;



POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):

ADAM JOHN MACKINTOSH
10923 PROGRESS CT.  RANCHO CORDOVA, CA 95670

TELEPHONE NO.:  | FAX NO. | E-MAIL ADDRESS (Optional): legal@ihughealth.com
ATTORNEY FOR (Name): In Pro Per

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD
MAILING ADDRESS:
CITY AND ZIP CODE: SACRAMENTO, CA 95826
BRANCH NAME:

PLAINTIFF: ADAM JOHN MACINTOSH

DEFENDANT: LYFT, INC., et al.

**FILED/ENDORSED**

SEP - 6 2019

By: ____R. CADDICK____
Deputy Clerk

CASE NUMBER:
34-2019-00261236-CU-BC-GD

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:

   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* **Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction**

3. a. Party served *(specify name of party as shown on documents served):*
   **MATT COHLER**

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:  **988 MARKET ST.
   SAN FRANCISCO, CA 94102**

5. I served the party *(check proper box)*

   a. ☐ **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*    (2) at *(time):*

   b. ☑ **by substituted service.**  On *(date):* **8/15/2019**  at *(time):* **4:05 PM** I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
   **TIMOTHY IVANOV - MANAGER / PERSON IN CHARGE**
   Age: 45-50 Weight: 220 Hair: Balding Sex: Male Height: 5'10" Eyes:  Race: White

   (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*    from *(city):*    or ☑ a declaration of mailing is attached.

   (5) ☑ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/27957

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date)*:              (2) from *(city)*:

   (3)☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

   (4)☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section)*:

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☑ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify)*:

c. ☐ as occupant.

d. ☐ On behalf of *(specify)*:

   under the following Code of Civil Procedure section:

   ☐ 416.10 (corporation)          ☐ 415.95 (business organization, form unknown)

   ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)

   ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)

   ☐ 416.40 (association or partnership)   ☐ 416.90 (authorized person)

   ☐ 416.50 (public entity)           ☐ 415.46 (occupant)

                                 ☐ other:

7. **Person who served papers**

a. Name: **Andy Esquer - S & R Services**

b. Address: **903 Sneath Lane, Suite 227 San Bruno, CA 94066**

c. Telephone number: **(650) 794-1923**

d. **The fee** for service was: **$ 30.00**

e. I am:

   (1) ☐ not a registered California process server.

   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

   (3) ☑ registered California process server:

      (i) ☐ owner     ☐ employee   ☑ independent contractor.

      (ii) Registration No.: **1009**

      (iii) County: **San Francisco**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **8/19/2019**

**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**www.served-u.com**

**Andy Esquer**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶            (SIGNATURE)

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

ADAM JOHN MACKINTOSH
10923 PROGRESS CT.  RANCHO CORDOVA, CA 95670

TELEPHONE NO.: | FAX NO. | E-MAIL ADDRESS (Optional): legal@nughealth.com
ATTORNEY FOR (Name): In Pro Per

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD
MAILING ADDRESS:
CITY AND ZIP CODE: SACRAMENTO, CA 95826
BRANCH NAME:

PLAINTIFF/PETITIONER:  ADAM JOHN MACINTOSH

DEFENDANT/RESPONDENT:  LYFT, INC., et al.

CASE NUMBER:
34-2019-00261236-CU-BC-GD

| **DECLARATION OF DILIGENCE** | Ref. No. or File No.: |

I, Andy Esquer , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: MATT COHLER as follows:
Documents:

Summons; Complaint; Alternative Dispute (ADR) package; Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction;

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|------|------|----------|---------|
| 8/13/2019 | 5:00 PM | Business | NO ANSWER WHEN SECURITY CALLED UPSTAIRS. - Andy Esquer 988 MARKET ST.,  SAN FRANCISCO, CA 94102 |
| 8/14/2019 | 7:50 AM | Business | NO ANSWER WHEN SECURITY CALLED UPSTAIRS. - Andy Esquer 988 MARKET ST.,  SAN FRANCISCO, CA 94102 |
| 8/15/2019 | 4:05 PM | Business | SUBSTITUTED SERVICE on: MATT COHLER; 988 MARKET ST., SAN FRANCISCO, CA 94102; by serving: TIMOTHY IVANOV - MANAGER / PERSON IN CHARGE, White Male 45-50 220 Balding 5'10" |

**\*\*RESIDENCE ADDRESS IS UNKNOWN\*\***

Fee for Service: **$ 30.00**
County:  **San Francisco**
Registration No.:  **1009**
**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**(650) 794-1923**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 19, 2019.

Signature: _____
Andy Esquer

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: 27957

**S & R Services**
903 Sneath Lane, Suite 227
San Bruno, CA 94066
Phone: (650) 794-1923   Fax: (650) 989-4182

Continued from Proof of Service

**CLIENT:** ADAM JOHN MACKINTOSH

**CLIENT FILE #:**                                    **DATE:**  August 19, 2019

**SUBJECT:** MATT COHLER

**SERVED:** TIMOTHY IVANOV - MANAGER / PERSON IN CHARGE

Summons; Complaint; Alternative Dispute (ADR) package; Notice of
Case Management Conference and Order to Appear; Immediate Relief and
Gesture of Good Faith to Re-Engage in Settlement After Full Denial
of Settlement by Defendnats; Program Case Notice; Ex Parte
Application for Permanent Injunction;



POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ADAM JOHN MACKINTOSH
10923 PROGRESS CT.  RANCHO CORDOVA, CA 95670

TELEPHONE NO.: | FAX NO. |E-MAIL ADDRESS (Optional): legal@hughealth.com
ATTORNEY FOR (Name): In Pro Per

**SACRAMENTO COUNTY SUPERIOR COURT**
STREET ADDRESS 3341 POWER INN ROAD
MAILING ADDRESS
CITY AND ZIP CODE: SACRAMENTO, CA 95826
BRANCH NAME

**FILED/ENDORSED**

**SEP - 6 2019**

By: _____ R. CADDICK
Deputy Clerk

PLAINTIFF: ADAM JOHN MACINTOSH

DEFENDANT: LYFT, INC., et al.

CASE NUMBER
34-2018-00261236-CU-BC-GD

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No. |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* **Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction**

3. a. Party served *(specify name of party as shown on documents served):*
   **LYFT, INC.**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **ALBERT DAMONTE - SOP INTAKE SPECIALIST**
   **Age: 27 Weight: 170 Hair: Brown Sex: Male Height: 5'9" Eyes: Race: Hispanic**

4. Address where the party was served: **CT CORPORATION SYSTEM - REGISTERED AGENT**
   **818 W 7th St #930**
   **LOS ANGELES, CA 90017**

5. I served the party *(check proper box)*
   a. ☑ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 8/14/2019   (2) at *(time):* 1:57 PM
   b. ☐ by substituted service. On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):* or ☐ a declaration of mailing is attached.
      (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/27821

| PETITIONER: ADAM JOHN MACINTOSH | CASE NUMBER: |
| RESPONDENT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                        (2) *from (city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of *(specify):* **LYFT, INC.**
    under the following Code of Civil Procedure section:

    ☑ 416.10 (corporation)            ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)              ☐ 415.46 (occupant)
                                   ☐ other:

7. **Person who served papers**
    a. Name: **JOSE JUAN SORIANO - S & R Services**
    b. Address: **903 Sneath Lane, Suite 227  San Bruno, CA 94066**
    c. Telephone number: **(650) 794-1923**
    d. The fee for service was: **$ 60.00**
    e. I am:

        (1) ☐ not a registered California process server.
        (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
        (3) ☑ registered California process server:
            (i) ☐ owner      ☐ employee      ☑ independent contractor.
            (ii) Registration No.: **2014182718**
            (iii) County: **LOS ANGELES**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **8/16/2019**
**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**www.served-u.com**

<u>**JOSE JUAN SORIANO**</u>
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)             (SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT.  RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.: | FAX NO. | E-MAIL ADDRESS *(Optional)*: legal@ihughealth.com<br>ATTORNEY FOR *(Name)*: In Pro Per: | **FILED/ENDORSED**<br><br>SEP - 6 2019<br><br>By: ___R. San Miguel___<br>Deputy Clerk |

SACRAMENTO COUNTY SUPERIOR COURT

    STREET ADDRESS: 3341 POWER INN ROAD

    MAILING ADDRESS:

    CITY AND ZIP CODE: SACRAMENTO, CA 95826

    BRANCH NAME:

| PLAINTIFF: ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

  a. ☑ Summons

  b. ☑ Complaint

  c. ☑ Alternative Dispute Resolution (ADR) package

  d. ☐ Civil Case Cover Sheet

  e. ☐ Cross-complaint

  f. ☑ other *(specify documents)*: **Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendants; Program Case Notice; Ex Parte Application for Permanent Injunction**

3. a. Party served *(specify name of party as shown on documents served)*:

    **UBER HEALTH LLC**

  b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

    **DARA KHOSROWSHAHI - CEO**

4. Address where the party was served: **1455 MARKET ST., #400**
                                         **SAN FRANCISCO, CA 94103**

5. I served the party *(check proper box)*

  a. ☐ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:    (2) at *(time)*:

  b. ☑ by substituted service. On *(date)*: 8/27/2019 at *(time)*: 11:20 AM I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:
    **"JOHN DOE" (refused to give name) - SECURITY / PERSON IN CHARGE**
        Age: 50-55 Weight: 130 Hair: Black Sex: Male Height: 5'4" Eyes: Glasses Race: Philipino

    (1) ☑ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

    (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

    (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

    (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
    *(date)*:    from *(city)*:    or ☑ a declaration of mailing is attached.

    (5) ☑ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>POS010-1/27953 |
|---|---|---|

| PETITIONER: ADAM JOHN MACINTOSH | CASE NUMBER: |
| RESPONDENT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*

   (2) *from (city):*

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☑ On behalf of *(specify):* **UBER HEALTH LLC**

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☑ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

  a. Name: **Andy Esquer - S & R Services**

  b. Address: **901 Sneath Lane, Suite 115  San Bruno, CA 94066**

  c. Telephone number: **(650) 794-1923**

  d. The fee for service was: $ **50.00**

  e. I am:

   (1) ☐ not a registered California process server.

   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

   (3) ☑ registered California process server:

    (i) ☐ owner ☐ employee ☑ independent contractor.

    (ii) Registration No.: **1009**

    (iii) County: **San Francisco**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **8/28/2019**

**S & R Services**
**901 Sneath Lane, Suite 115**
**San Bruno, CA 94066**
**www.served-u.com**

_____
**Andy Esquer**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE)

POS-010 [Rev January 1, 2007]  **PROOF OF SERVICE OF SUMMONS**

Page 2 of 2
POS-010/27953

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT. RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.: | FAX NO. | E-MAIL ADDRESS *(Optional)*: legal@thughealth.com<br>ATTORNEY FOR *(Name)*: In Pro Per: | |

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD

MAILING ADDRESS:

CITY AND ZIP CODE: SACRAMENTO, CA 95826

BRANCH NAME:

| PLAINTIFF/PETITIONER: ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: LYFT, INC., et al: | 34-2019-00261236-CU-BC-GD |

| **DECLARATION OF DILIGENCE** | Ref. No. or File No.: |
|---|---|

I, Andy Esquer , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: UBER HEALTH LLC as follows:

Documents:

Summons; Complaint; Alternative Dispute (ADR) package; Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendnats; Program Case Notice; Ex Parte Application for Permanent Injunction;

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 8/15/2019 | 11:45 AM | Business | PER SECURITY, UBER DOES NOT ACCEPT ANY LEGAL DOCUMENTS. STATED ALL LEGAL DOCUMENTS FOR UBER GETS SERVED IN LOS ANGELES TO THEIR REGISTERED AGENT. - Andy Esquer<br>1455 MARKET ST., #400, SAN FRANCISCO, CA 94103 |
| 8/27/2019 | 11:20 AM | Business | DENIED ACCESS BY SECURITY. WOULD NOT CALL UPSTAIRS FOR ANYONE TO COME DOWN, STATED ALL LEGAL DOCUMENTS NEEDED TO BE SERVED TO THE REGISTERED AGENT. I WAS ADVISED TO DROP SERVE DOCUMENTS. SECURITY REFUSED TO GIVE HIS NAME, DOCUMENTS WERE DROP SERVED TO THE SECURITY, LEFT ON THE DESK IN HIS PRESENCE. - Andy Esquer<br>1455 MARKET ST., #400, SAN FRANCISCO, CA 94103 |
| 8/27/2019 | 11:20 AM | Business | SUBSTITUTED SERVICE on: UBER HEALTH LLC; 1455 MARKET ST., #400, SAN FRANCISCO, CA 94103; by serving: "JOHN DOE" (refused to give name) - SECURITY / PERSON IN CHARGE, Philipino Male 50-55 130 Black 5'4" Glasses. |

Fee for Service: **$ 50.00**



County: **San Francisco**
Registration No.: **1009**
**S & R Services**
**901 Sneath Lane, Suite 115**
**San Bruno, CA 94066**
**(650) 794-1923**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 28, 2019.



Signature: _____

Andy Esquer

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: 27953

**S & R Services**

901 Sneath Lane, Suite 115

San Bruno, CA 94066

Phone: (650) 794-1923   Fax: (650) 989-4182

Continued from Proof of Service

**CLIENT:**  ADAM JOHN MACKINTOSH

**CLIENT FILE #:**                                              **DATE:**  August 28, 2019

**SUBJECT:**  UBER HEALTH LLC

**SERVED:**  "JOHN DOE" (refused to give name) - SECURITY / PERSON IN CHARGE

Summons; Complaint; Alternative Dispute (ADR) package; Notice of
Case Management Conference and Order to Appear; Immediate Relief and
Gesture of Good Faith to Re-Engage in Settlement After Full Denial
of Settlement by Defendnats; Program Case Notice; Ex Parte
Application for Permanent Injunction;



POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ADAM JOHN MACKINTOSH
10923 PROGRESS CT.  RANCHO CORDOVA, CA 95670

TELEPHONE NO.: | FAX NO. | E-MAIL ADDRESS (Optional): legal@lhughealth.com
ATTORNEY FOR (Name): In Pro Per.

**SACRAMENTO COUNTY SUPERIOR COURT**
STREET ADDRESS 3341 POWER INN ROAD
MAILING ADDRESS
CITY AND ZIP CODE SACRAMENTO, CA 95826
BRANCH NAME

FILED/ENDORSED

'SEP - 6 2019

By: _____ R. San Miguel
Deputy Clerk

PLAINTIFF: ADAM JOHN MACINTOSH

DEFENDANT: LYFT, INC., et al.

| CASE NUMBER |
|---|
| 34-2019-00251236-CU-BC-GD |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents):* **Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendants; Program Case Notice; Ex Parte Application for Permanent Injunction**

3. a. Party served *(specify name of party as shown on documents served):*
   **UBER TECHNOLOGIES, INC.**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **ALBERT DAMONTE - SOP INTAKE SPECIALIST**
   **Age: 27 Weight: 170 Hair: Brown Sex: Male Height: 5'9" Eyes: Race: Hispanic**

4. Address where the party was served: **CT CORPORATION SYSTEM - REGISTERED AGENT**
   **818 W 7th St #930**
   **LOS ANGELES, CA 90017**

5. I served the party *(check proper box)*
   a. ☑ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 8/14/2019   (2) at *(time):* 1:57 PM

   b. ☐ by substituted service. On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):* or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

| PETITIONER: ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| RESPONDENT: LYFT, INC., et al. | 34-2019-00261238-CU-BC-GD |

c. ☐ by mail and acknowledgment of receipt of service. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ by other means *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☑ On behalf of *(specify):* **UBER TECHNOLOGIES, INC.**

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☑ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. Person who served papers

  a. Name:  **JOSE JUAN SORIANO - S & R Services**

  b. Address:  **903 Sneath Lane, Suite 227  San Bruno, CA 94066**

  c. Telephone number:  **(650) 794-1923**

  d. The fee for service was: **$ 60.00**

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☑ registered California process server:

      (i) ☐ owner      ☐ employee      ☑ independent contractor.

      (ii) Registration No.:  **2014182718**

      (iii) County:  **LOS ANGELES**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  8/16/2019

**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**www.served-u.com**

      **JOSE JUAN SORIANO**
    (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)          (SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT.   RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.:   I FAX NO.  I E-MAIL ADDRESS *(Optional)*: legal@hughealth.com<br>ATTORNEY FOR *(Name)*: In Pro Per: | **FILED/ENDORSED**<br><br>**SEP - 6 2019**<br><br>By:    R. San Miguel<br>Deputy Clerk |

| SACRAMENTO COUNTY SUPERIOR COURT | |
|---|---|
| STREET ADDRESS: 3341 POWER INN ROAD | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: SACRAMENTO, CA 95826 | |
| BRANCH NAME: | |

| PLAINTIFF:  ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT:  LYFT, INC., et al. | 34-2019-00261238-CU-BC-GD |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents)*: **Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendants; Program Case Notice; Ex Parte Application for Permanent Injunction**

3. a. Party served *(specify name of party as shown on documents served)*:
   **JERRY WANG**

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

4. Address where the party was served:  **582 MATEO STREET**
   **LOS ANGELES, CA 90013**

5. I served the party *(check proper box)*
   a. ☐ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:    (2) at *(time)*:

   b. ☑ by substituted service. On *(date)*: 8/19/2019  at  *(time)*: 10:30 AM  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:
   **"JOHN DOE" (refused to give name) - MANAGER / PERSON IN CHARGE**
   Age: 30's Hair: 160 Hair: Pink Sex: Male Height: 5'10" Eyes:  Race: White
   (1) ☑ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
   (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
   (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
   *(date)*:  from *(city)*:                                or ☑ a declaration of mailing is attached.
   (5) ☑ I attach a declaration of diligence stating actions taken first to attempt personal service.

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>POS010-1/27936 |
|---|---|---|

| PETITIONER: ADAM JOHN MACINTOSH | CASE NUMBER: |
| --- | --- |
| RESPONDENT: LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

  (1) on *(date):*          (2) from *(city):*

  (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

  (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*


  ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
     under the following Code of Civil Procedure section:

  ☐ 416.10 (corporation)                    ☐ 415.95 (business organization, form unknown)
  ☐ 416.20 (defunct corporation)            ☐ 416.60 (minor)
  ☐ 416.30 (joint stock company/association) ☐ 416.70 (ward or conservatee)
  ☐ 416.40 (association or partnership)      ☐ 416.90 (authorized person)
  ☐ 416.50 (public entity)                   ☐ 415.46 (occupant)
                                             ☐ other:

7. **Person who served papers**

  a. Name: **ROBERT HALL - S & R Services**
  b. Address: **903 Sneath Lane, Suite 227  San Bruno, CA 94066**
  c. Telephone number: **(650) 794-1923**
  d. The fee for service was: **$ 65.00**
  e. I am:

    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑ registered California process server:
       (i) ☐ owner  ☐ employee  ☑ independent contractor.
       (ii) Registration No.: **6832**
       (iii) County: **LOS ANGELES**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
  or
9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **8/21/2019**

**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**www.served-u.com**

_____
**ROBERT HALL**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

(SIGNATURE)

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address) | FOR COURT USE ONLY |
|---|---|
| ADAM JOHN MACKINTOSH<br>10923 PROGRESS CT.   RANCHO CORDOVA, CA 95670<br><br>TELEPHONE NO.:   I FAX NO.   I E-MAIL ADDRESS (Optional): legal@hughealth.com<br>ATTORNEY FOR (Name): In Pro Per. | |

**SACRAMENTO COUNTY SUPERIOR COURT**

STREET ADDRESS: 3341 POWER INN ROAD

MAILING ADDRESS:

CITY AND ZIP CODE: SACRAMENTO, CA 95826

BRANCH NAME:

| PLAINTIFF/PETITIONER:  ADAM JOHN MACINTOSH | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  LYFT, INC., et al. | 34-2019-00261236-CU-BC-GD |

| DECLARATION OF DILIGENCE | Ref. No. or File No.: |
|---|---|

I, ROBERT HALL , declare: I am a Registered Process Server and was retained to serve process in the above-referenced matter on the following person or entity: JERRY WANG as follows:

Documents:

    **Summons; Complaint; Alternative Dispute (ADR) package; Notice of Case Management Conference and Order to Appear; Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendants; Program Case Notice; Ex Parte Application for Permanent Injunction;**

I attempted personal service on the following dates and times with the following results:

| Date | Time | Location | Results |
|---|---|---|---|
| 8/15/2019 | 9:10 AM | Business | PER MANAGEMENT, SUBJECT IS UNKNOWN. - ROBERT HALL<br>582 MATEO STREET,  LOS ANGELES, CA 90013 |
| 8/16/2019 | 1:08 PM | Business | NO ONE KNOWS WHO JERRY IS.  SHOWED HIS PHOTO AND<br>THEY SHOOK THEIR HEADS NO. - ROBERT HALL<br>582 MATEO STREET,  LOS ANGELES, CA 90013 |
| 8/17/2019 | 4:30 PM | Business | PER MANAGEMENT, SUBJECT IS NOT KNOWN. - ROBERT HALL<br>582 MATEO STREET,  LOS ANGELES, CA 90013 |
| 8/19/2019 | 10:30 AM | Business | PER "JOHN DOE" / MANAGER, THERE IS NO ONE HERE BY THIS<br>NAME.  REFUSED TO ACCEPT DOCUMENTS, DROP SERVED ON<br>MANAGER. - ROBERT HALL<br>582 MATEO STREET,  LOS ANGELES, CA 90013 |
| 8/19/2019 | 10:30 AM | Business | SUBSTITUTED SERVICE on: JERRY WANG; 582 MATEO STREET,<br>LOS ANGELES, CA 90013; by serving: "JOHN DOE" (refused to give<br>name) - MANAGER / PERSON IN CHARGE, White Male 30's 160<br>Pink 5'10". |

**RESIDENCE ADDRESS IS UNKNOWN**

Fee for Service: $ 65.00
County:  **LOS ANGELES**
Registration No.:  6932
**S & R Services**
**903 Sneath Lane, Suite 227**
**San Bruno, CA 94066**
**(650) 794-1923**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 21, 2019.

Signature: _____
    ROBERT HALL

**AFFIDAVIT OF REASONABLE DILIGENCE**

Order#: 27836



ATTORNEY (Name and Address):

Adam John Mackintosh
10923 Progress Court
Rancho Cordova, CA  95670

E-MAIL:

ATTORNEY FOR:  in Propria Persona

NAME OF COURT: JUDICIAL DISTRICT or BRANCH COURT, IF ANY:

Sacramento County Superior Court
720 9th St.
Sacramento, CA  95814
Sacramento

FOR COURT USE ONLY

**FILED/ENDORSED**

SEP - 6 2019

By: _____ R. San Miguel
              Deputy Clerk

PLAINTIFF:

Adam John Mackintosh

DEFENDANT:

Lyft, Inc., et al

COURT CASE NO.:

34-2019-00261236-CU-BC-GDS

DUPLICATE **Proof of Service - Summons**

LEVYING OFFICER FILE NO.:

2019001455

1. At the time of the service I was at least 18 years of age and not a party to this action.

2. I served copies of the:

   f. other (specify documents):  Complaint, Notice of Case Management Conference and Order to Appear, Summons

3. a. Party served:     **Louis Darnell Pritchett**

4. Address where party was served:     **100 Westlake Court**
                                        **Roseville, CA  95747**

5. I served the party:

   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of the process for the party (1) on: 08/27/2019 (2) at: 12:53 PM.

6. The Notice to the Person Served (on summons) was completed as follows:
   a. as an individual defendant.

7. Person who served papers:

   a. Name:  K Ferreira, Deputy
   b. Address:  Placer Co. Sheriff's Civil Division 2929 Richardson Dr.   Auburn, CA  95603
   c. Telephone Number:   (530) 889-7885
   d. The fee for service was:  $40.00

9. I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Tuesday, August 27, 2019

Hearing:  <No Information>

Remarks:

Sheriff's Authorized Agent
DEVON BELL, Placer County Sheriff-Coroner-Marshal

Judicial Council form POS-010                          **Original**                                           0/97703

| ATTORNEY (Name and Address): | SSN: | FOR COURT USE ONLY |
|---|---|---|
| Adam John Mackintosh<br>10923 Progress Ct<br>Rancho Cordova, CA 95670-6667<br><br>EMAIL: legal@ihughealth.com<br>ATTORNEY FOR: In Propria Persona | | **FILED/ENDORSED**<br><br>SEP - 6 2019<br><br>By: _____ R. San Miguel _____<br>Deputy Clerk |

| NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY: |
|---|
| Sacramento Co. Superior Court-720<br>720 9th St<br>Sacramento, CA 95814 |

| PLAINTIFF:<br>Adam John Mackintosh | COURT CASE NO:<br>34-2019-00261236-CU-BC-GD |
|---|---|
| DEFENDANT:<br>Lyft, Inc.; Uber Technologies Inc.; Uber Health, LLC; AH Cap | |
| **Amended Proof of Service of Summons** | LEVYING OFFICER FILE NO:<br>2019023904 |

1. At the time of the service I was at least 18 years of age and not a party to this action.

2. I served copies of the:

   f. other *(specify documents)*:
   Complaint, Ex Parte Application for Permanent Injunction, Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendants, Notice of Case Management Conference and Order to Appear, Summons

3. a. Party Served *(specify name of party as shown on documents served)*:

   **Amy Biddle**

4. Address where party was served: **3317 I Street**
   **(East Sacramento)**
   **Sacramento, CA 95816**

5. I served the party:

   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: 08/12/2019 at: 7:49 AM.

7. Person who served the papers

   a. Name: P. Yuen

   b. Address: Sheriff's Civil Bureau, 3341 Power Inn Road, #313, Sacramento, CA 95826-3889

   c. Telephone number: (916) 875-2665

   d. The fee for the service was: $40.00

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: Monday, August 26, 2019          by: _____

Sheriff's Authorized Agent

Scott R. Jones, Sheriff

Original
(c) CountySuite Sheriff, Teleosoft, Inc.

| ATTORNEY (Name and Address): | SBN: | FOR COURT USE ONLY |
|---|---|---|
| **Adam John Mackintosh** 10923 Progress Ct Rancho Cordova, CA 95670-5667 | | |

EMAIL: **legal@lhughealth.com**

ATTORNEY FOR: **In Propria Persona**

NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:

**Sacramento Co. Superior Court-720**
**720 9th St**
**Sacramento, CA 95814**

**FILED/ENDORSED**

**SEP - 6 2019**

By: _____R. San Miguel_____
Deputy Clerk

PLAINTIFF:

**Adam John Mackintosh**

DEFENDANT:

**Lyft, Inc.; Uber Technologies Inc.; Uber Health, LLC; AH Cap**

COURT CASE NO.:

**34-2019-00261236-CU-BC-GD**

### Proof of Service of Summons

LEVYING OFFICER FILE NO.:

**2019023904**

1. At the time of the service I was at least 18 years of age and not a party to this action.

2. I served copies of the:

    f. other *(specify documents)*:

      Complaint, Ex Parte Application for Permanent Injunction, Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendants (x2), Notice of Case Management Conference and Order to Appear, Summons

3. a. Party Served *(specify name of party as shown on documents served)*:

           **Better Business Bureaus, Inc.**

    b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

           **Lynn Conner/CEO**

4. Address where party was served:

           **c/o CEO Lynn Conner**
           **10399 Old Placerville Rd**
           **Sacramento, CA 95827**

5. I served the party:

    a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: 08/16/2019 at: 10:10 AM.

7. Person who served the papers

    a. Name: J. Gordon

    b. Address: Sheriff's Civil Bureau, 3341 Power Inn Road, #313, Sacramento, CA 95826-3889

    c. Telephone number: (916) 875-2665

    d. The fee for the service was: $40.00

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  Friday, August 23, 2019

by: _____

Sheriff's Authorized Agent
Scott R. Jones, Sheriff

Judicial Council Form POS-010

Original

(c) County/State Sheriff, Teleosoft, Inc.

| ATTORNEY (Name and Address): | SBN: | FOR COURT USE ONLY |
|---|---|---|
| **Adam John Mackintosh**<br>**10923 Progress Ct**<br>**Rancho Cordova, CA 95670-5687**<br><br>EMAIL: legal@lhughealth.com<br>ATTORNEY FOR: **In Propria Persona** | | |

NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:

**Sacramento Co. Superior Court-720**
**720 9th St**
**Sacramento, CA 95814**

**FILED/ENDORSED**

SEP - 6 2019

By: ____R. San Miguel____
Deputy Clerk

| PLAINTIFF:<br>**Adam John Mackintosh** | COURT CASE NO: |
|---|---|
| DEFENDANT:<br>**Lyft, Inc.; Uber Technologies Inc.; Uber Health, LLC; AH Cap** | **34-2019-00261236-CU-BC-GD** |
| **Proof of Service of Summons** | LEVYING OFFICER FILE NO:<br>**2019023904** |

1. At the time of the service I was at least 18 years of age and not a party to this action.

2. I served copies of the:

   f. other *(specify documents):*
   Complaint, Ex Parte Application for Permanent Injunction, Immediate Relief and Gesture of Good Faith to Re-Engage in Settlement After Full Denial of Settlement by Defendants (x2), Notice of Case Management Conference and Order to Appear, Summons

3. a. Party Served *(specify name of party as shown on documents served):*

   **Josef Arvin Acebedo**

4. Address where party was served:    **6339 Lochinvar Way**
   **Sacramento, CA 95823**

5. I served the party:

   a. by personal service.  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: 08/19/2019 at: 7:30 AM.

6. the "Notice to the Person Served" (on the summons) was completed as follows:

   a. as an individual defendant.

7. Person who served the papers

   a. Name: J. Gordon

   b. Address: Sheriff's Civil Bureau, 3341 Power Inn Road, #313, Sacramento, CA 95826-3889

   c. Telephone number: (916) 875-2665

   d. The fee for the service was: $40.00

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  Friday, August 23, 2019          by: _____

Sheriff's Authorized Agent
Scott R. Jones, Sheriff



1  Adam John Mackintosh
   legal@ihughealth.com
2  10923 Progress Court.,
3  Rancho Cordova, CA 95670

FILED/ENDORSED

AUG - 2 2019

By: _____  E. Medina
Deputy Clerk

4

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

5

## COUNTY OF SACRAMENTO

6

7  Adam John Mackintosh, Individually,
   and On Behalf of All Others Similarly
8  Situated,

9                    Plaintiff,
10

11             vs.

12  Lyft, Inc., Uber Technologies Inc., Uber
13  Health, LLC, AH Capital Management,
    LLC, Better Business Bureaus, Inc.,
14  Benchmark Capital Partners VII, LP,
15  Benchmark Capital Management Co.
    VII, LLC,
16  Corporations

17  Ben Horowitz, John Zimmer, Logan
18  Green, Josef Arvin Acebedo, Louis
    Darnell Pritchett, Jerry Wang, Amy
19  Biddle, Matt Cohler, and
    Does 1–500,
20  Individuals

21

22                 Defendants.

23

24

25

26

27

28

Case Name: Mackintosh –vs– Lyft Inc

Case No.: 34–2019–00261236-CU-BC-GDS

**COMPLAINT FOR:**

**1. Unfair Competition in Violation of California Business and Professional Code §17200 et seq. Endangering Life in Healthcare**

**2. Economic Espionage 18 U.S. Code § 1831 (1)**

**3. Violations of Unjust Enrichment in Trade Secret Misappropriation California Civil Code – CIV § 3426**

**DEMAND FOR JURY TRIAL**

Details:

Judge: The Honorable
Kevin Culhane, Judge of the Superior Court

Place:
Gordon D. Schaber County Courthouse
720 Ninth Street, Sacramento, CA 95814

Department: 23
Time: 08:30 AM

Date Action filed:  July, 4, 2019

Date set for case management conference:
January, 30, 2020

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 1 -

RECEIVED
AUG - 2 2019
CIVIL

## COMPLAINT FOR CONTINUED:

**4. Intentional Interference with Contractual Relations, and Tortious Interference with Actual Economic Advantage.**

**5. Violations of Intellectual Property California Civil Code § § 3426-3426.11**

**6. Violations of Defamation, and Slander, California Civil Code § 45**

**7. Violation of The Economic Espionage Act of 1996**

**8. Violation of California Uniform Trade Secret Act California Civil Code § § 3426-3426.11**

**9. Violation of Defense of Trade Secrets Act**

**10. Violations of California Code, Insurance Code – INS § 1871.4**

**11. Violations of the Conspiracy to Defraud the United States 923. 18 U.S.C. § 371**

**12. Violations of Reckless Endangerment of Life California Code, Civil Code – CIV § 1714**

**13. Violations of Unauthorized Computer Access and Fraud California Penal Code 502(c)**

**14. Violations of California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), California Penal Code § 502 of Corporate Espionage 18 U.S.C. § 1832 (a), (5), (b)**

**15. Violation of Securities Act of 1933**

**16. Violations of The United States Department of Health and Human Services Civil Rights Laws and Regulations**

**17. Violation of the Consumer Protection Act ("CPA")**

**18. Violation of Federal Trade Commission Act ("FTCA") Anticompetitive Practices**

**19. Violations of The Centers for Medicare and Medicaid Services Accessibility & Nondiscrimination for Individuals, with Disabilities, and ADA**

**20. Violations of Civil Rights for Individuals and Advocates**

**21. Violation of the California Penal Code Section 140 PC: Threatening a Witness**

**22. Violations of the U.S. Code § 1512: Tampering with a Witness**

**23. Violations of the Foreign Corrupt Practices Act (FCPA) – 15 U.S.C § 78dd-2**

**24. Violation of the Electronic Communication Privacy Act**

**25. Violation of The California Invasion of Privacy Act**

**26. Violation of Grand Theft Embezzlement Penal Code 487, Penal Code 503 PC**

**27. Violation of Money Laundering Penal Code Section 186.10 PC**

**28. Violations of Wire Fraud Panel Code Section 1343**

**29. Breach of Contracts and other violations upon further investigation**

# Table of Contents

1.    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD** .......................................**18**

2.    **JURISDICTION AND VENUE** .......................................................................................**20**

3.    **PARTIES** ............................................................................................................................**20**

4.    **INTRODUCTION** .............................................................................................................**24**

5.    **CASE LAW ANALYSIS ESTABLISHES MERIT FOR THIS COMPLAINT** .............**26**

6.    **FACTUAL ALLEGATIONS** ..............................................................................................**35**

A. Alleged Death Threats By Defendants ThreatOps Team At Pre-Launch ...............................36

       A1. Defendants ThreatOps Team Compromise iHug's Software Developer ...............38

       A2. Plaintiff Alleges Defendants ThreatOps Team Threatens His Life .......................38

B. The Secret Insurance Scheme that Unlawfully Suppresses Competition

   and Lured in Plaintiff ..............................................................................................................42

       B1. The Aftermath of Defendants Insurance Scheme ..................................................50

       B2. The Competition Suppression Begins ....................................................................57

       B3. Uber Orders Its Legal Team and ThreatOps to Engage Again ..............................79

       B4. Plaintiff Defends iHug and Healthcare Patients ....................................................82

C. The Ultimate Motive and Betrayal ......................................................................................109

D. Defendants **Attack First Launch Date** - Software ............................................................112

       D1. A Silicon Valley Scheme Exists .........................................................................116

E. Total Disregard for The Law ...............................................................................................160

F. Defendants **Attack Second Launch Date** – Drivers ..........................................................171

       F1. Defendants Choke Off iHug's Investments, and Operating Cash .......................173

G. Conspiracy, And Concerted Actions to Wrongfully Imprison Plaintiff ...............................181

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 3 -

G1. **First Attempt to Wrongfully Imprison Plaintiff** - Grand Theft Auto .............182

    G1A. The BBB Conspires To Cover Up Defendants Wrongdoing................188

    G1B. The BBB Infringes on Our First Amendment (Amendment I) to

    the United States Constitution by Controlling and Suppressing People's

    Voices and Opinions .....................................................................................204

    G1C. Plaintiff Proves The BBB Controls Their Website

    With Prejudice ..............................................................................................206

    G1D. An Investigation Reveals The Truth ....................................................207

G2. **Second Attempt to Wrongfully Imprison Plaintiff** – Investor Fraud..............214

G3. Uber, Lyft and Andreessen Attacks

Put Plaintiff's Wife in the Hospital, Who Underwent Surgery ..................................229

G4. The Securities Act of 1933 Violation Investigations...........................................242

    G4A. Basic Math Calculations .......................................................................243

G5. **Third Attempt to Wrongfully Imprison Plaintiff** –

Wage Theft and Stolen Vehicle ...............................................................................246

H. Defendants **Attack Third Launch Date** – Personally Attacking Plaintiff and His Wife.....261

    H1. Plaintiff Alleges Defendants Used Psychological Warfare Tactics

    on Plaintiff and His Wife Pre-IPO .............................................................262

    H2. **Fourth Attempt to Wrongfully Imprison Plaintiff** –

    Receiving Stolen Property ...........................................................................266

    H3. **Fifth Attempt to Wrongfully Imprison Plaintiff** – Assault..............272

I. Once is a Chance, Twice is a Coincidence, Three Time is Theft............................290

J. The Real $1.2 Trillion-Dollar Opportunity ..........................................................299

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 4 -

K. The Cover Up, Odd Behavior, Continued Attacks and Stalking ........................................... 304

    K1. Manipulating Numbers ........................................................................ 305

    K2. Lyft Pointing The Finger and Blame Shifting ....................................... 309

    K3. Confiscating and Wiping Phones ......................................................... 312

    K4. Hacking and Destroying Plaintiff's Evidence ...................................... 315

    K5. Plaintiff and His Wife Delete Uber and Lyft App, Defendants

    Then Use IMEI and GPS Call Tracing Methods ....................................... 316

    K6. Attorneys Leak Plaintiff's Complaint To Defendants ......................... 318

    K7. Defendants Continue Running, Evading and Using False Identities .................. 323

    K8. Joe Creates an Accent and Claims He Moved Out of State to Evade Court ........ 325

    K9. Defendants Immediately Start Covering Up Using The Media .......................... 326

    K10. Defendants Continue to Attempt to Trace and Locate Plaintiff

    and His Wife ........................................................................................ 327

    K11. Defendants' Drivers Attempt to Hack iHug's Email Systems to Delete

    Any and All Evidence ........................................................................... 329

    K12. Insurance Agent Becomes a Whistleblower Sending a Cryptic Message that

    Plaintiff and His Wife are Facing More Attacks ..................................... 330

    K13. Manipulating Investigations and Evidence ....................................... 331

    K14. Plaintiff Sends Physical Copy of Settlement Demand, Defendants

    and Board Members Run ....................................................................... 332

    K15. Potential Bankruptcy Fraud ............................................................ 347

    K16. It's Alleged Dara Will Exit Uber, After Facing Plaintiff's Lawsuit

    and the Scandal Caused by Defendants and Does ................................... 348

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 5 -

K16A. Uber's CEO, Dara, Values Money Over a Woman's Life..................350

K17. Uber Executives and Board Members Run with Profits Made from Plaintiff's

$1.2 Trillion Healthcare Opportunity – Matt Cohler ..................................................351

K18. Second Uber Board Member Runs After Receiving Plaintiff's

Settlement Demand – Arianna Huffington ..................................................353

K19. Deleting Evidence of Infiltration of Competition by Defendants......................354

K20. Cutting Ties with People with Knowledge of Wrongdoing...............................355

K21. Defendants Begin to Eliminate the Referral Programs That Were

Used to Suppress Competition..................................................357

K22. Lyft Infiltrated Uber to Intercept Plaintiff's Revolutionary Healthcare Vehicle

Designs That Would Provide the World's Safest Ride................................................359

K23. Defendants Destroy More Evidence ..................................................365

K24. Continued Attacks and Stalking..................................................367

K25. Wheelchair Accessibility Cover Up – Fake Public Relations.............................368

K26. Helping the Blind to Cover Up – Fake Public Relations ...................................369

K27. Immigration Cover Up – Fake Public Relations..................................................370

K28. Suppressing iHug from Taking Cancer Patients to Chemotherapy Cover

Up – Fake Public Relations..................................................371

K29. Helping Children with Disabilities Cover Up – Fake Public Relations.............372

K30. Lyft Stands for Immigration Cover Up – Fake Public Relations........................373

K31. Part of the Insurance Scheme Cover Up – Still Active......................................374

K32. Plaintiff Receives Fake Apple Calls Days After His Complaint

was Processed with the Superior Court of California, Sacramento County ...............375

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 6 -

L. Lyft Insurance Fraud Leaves Tax Payers Footing the Bill .................................................... 376

M. Influencing Government to Commit Unfair Competition ...................................................... 380

N. Shedding Some Light for Investors ...................................................................................... 384

O. Defendants' Actions Endanger Life While Making Inconsistent And

False Claims in Healthcare ......................................................................................................... 386

P. Defendants Eradicated iHug's Service While Endangering Life ........................................... 393

Q. America and the World Needed iHug, The Safest and

First Ever Rideshare for Healthcare ........................................................................................... 402

R. The Major Differentiator and Motive to Eradicate iHug From Healthcare ........................... 404

S. iHug's Consistent and Genuine Efforts in Healthcare ............................................................ 407

T. A Window Into the Workings of Anti-Trust Violations ......................................................... 410

U. The Aftermath of Defendants Actions Causing Suicidal Thoughts ....................................... 411

V. Alanna's Fans Report Her Missing While She Was

Under Corporate Attack By Defendants ..................................................................................... 414

W. Alanna, Plaintiff's Wife, is a Public Figure and Role-Model ............................................... 416

X. Adam is a Public Figure and Role-Model .............................................................................. 418

7.      **INJUNCTIVE RELIEF BY WAY OF SUPREME LAW OF THE LAND** ................... **428**

Y. Causes of Action Count 1 – 11 ............................................................................................... 434

      1. Count – Unfair Competition Practices That Endangers Consumer Life ................ 434

      2. Count – Computer Data Access and Fraud Act ("CDAFA") ................................. 436

      3. Count – Unjust Enrichment Without Legal Entitlement ........................................ 438

      4. Count – Misrepresentation, Fraudulent Inducement and Cyber-Corporate Sabotage

         Through Espionage .................................................................................................. 441

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 7 -

5. Count – Defamation, Slander, Libel ...................................................................445

6. Count – Intentional Tortious Interference with Actual Economic Advantage .......447

7. Count – Intentional Tortious Interference with Contracts and

Prospective Economic Advantage ............................................................................450

8. Count – Interference with Exercise of Civil Rights.................................................451

9. Count – Intentional Infliction of Emotional Distress (IIED)

Causing the Inducement of Suicidal Thoughts ..........................................................457

10. Count – Negligent Interference with Prospective Economic Relationships.........460

11. Count – Civil Conspiracy....................................................................................461

12. Count – Liability for Punitive Damages ..............................................................462

Z. Injunctions ...............................................................................................................464

1. Temporarily Revoking Defendants from Healthcare

to Prevent Future Violations .....................................................................................464

2. Revoking Defendants Apps from Apple App Store – Consumer Violations

to Prevent Future Violations .....................................................................................464

3. Revoking Defendants Apps from Google Play Store – Consumer Violations

to Prevent Future Violations .....................................................................................464

4. Revoking Autonomous Vehicles in Healthcare to Prevent Future Violations .......464

5. Permanent Closure of Hubs and Satellite Offices to Prevent Future Violations ....464

6. Royalty Payments for Theft of Corporate Secrets to Prevent Future Violations....470

7. Royalty Payments for Grocery and Pharmacy Services to Prevent

Future Violations ......................................................................................................470

Adam John Mackintosh—vs–-Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 8 -

8. Order to Pay iHug All Past, Current and Future Revenues to Prevent Future

Violations .......................................................................................................470

9. Order Defendants to Publically Apologize to Prevent Future Violations...............470

10. Order an Investigation for Insurance Scheme to Prevent Future Violations .......470

11. Permanently Revoke Defendants Employee Involvement

with Government to Prevent Future Violations .........................................471

12. Permanently Halt of Defendants Referral, Incentive and Councils

to Prevent Future Violations .......................................................................471

13. Permanently Revoke All Communication from Between Drivers and Defendants

Employees to Prevent Future Violations ...................................................471

14. Order All Parties and Does to Dissolve Online Groups to Prevent Future

Violations .......................................................................................................471

15. Order Defendants to Work With iHug to Prevent Endangerment of Life

In Healthcare to Prevent Future Violations ...............................................471

16. Permanent Restraining Orders ............................................................................471

17. Permanent Revoking All Shares Allocated to Defendants SEC Violations

to Punish and Deter.......................................................................................472

8.     **PUNITIVE DAMAGES** .......................................................................................**474**

9.     **\$1.2 TRILLION-DOLLAR HEALTHCARE OPPORTUNITY**

    **AND CONTRACT DAMAGES** ........................................................................**477**

10.    **LOSS OF ENJOYMENT OF LIFE, PAIN AND SUFFERING DAMAGES** ................**492**

11.    **INVESTOR AND TEAM MEMBER DAMAGES** ...........................................**493**

12.    **JURY DEMAND** ....................................................................................................**495**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 9 -

13.    **PLAINTIFF'S PRAYER AND DECLARATION FOR INJUNCTION** ........................ **496**

14.    **PRAYER FOR RELIEF** ..................................................................................... **497**

15.    **EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER** .......... **500**

    15A. MEMORANDUM OF POINTS AND AUTHORITIES ................................................504

    15B. INTRODUCTION...........................................................................................504

    15C. FACTUAL BACKGROUND ..........................................................................506

        **SUB-A.** Plaintiff and His Company..............................................................506

        **SUB-B.** Joe, Louis, Jerry, Nicole and Does Hiring and Confidential Agreement............509

        **SUB-C.** Documents misappropriated and retained by Defendants are Proprietary,

        Confidential, and Critical to Plaintiff's Future and the success of his Company, iHug...511

        **SUB-D.** Documents retained by Defendants are Proprietary, Confidential, and Critical to

        Plaintiff's Future and the success of his company iHug.....................................515

            •   Marketing and Product Plans................................................................515

            •   Medical Drone Delivery of Prescription and Other Medical Durable Products...516

            •   Financial Information............................................................................519

            •   Customer Lists and Data........................................................................519

        **SUB-E.** Defendants Evolved Their Business and Profits With Plaintiff's Intellectual

        Property, Corporate Secrets, Patent Books.......................................................519

**ARGUMENT** ......................................................................................................**520**

        **SUB-F.** Legal Standard for Injunctive Relief...................................................520

        **SUB-G.** The Confidentiality Agreement Provides for Injunctive Relief .........................520

        **SUB-H.** Defendants Possessed, Extracted, and Destroyed Plaintiff's Confidential, and

        Proprietary Corporate Secrets that Evolved Defendants Business into Profitability........522

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 10 -

**SUB-I.** Courts Regularly Grant Injunctive Relief Under These Circumstances ..............523

**SUB-J.** The Other Requirements for Injunctive Relief Are Met......................................524

    1.     The Balance of Hardships Weighs Decidedly in Plaintiff's Favor...........524

    2.     Plaintiff Has a Reasonable Probability of Prevailing on the Merits .........528

    3.     Healthcare Patients, Plaintiff, and iHug Will Suffer Irreparable Harm if an

            Injunction Is Not Issued .............................................................529

**CONCLUSION** ...............................................................................................................**529**

**16.    PREEMPTIVE MOTION TO STRIKE 1: TO PREVENT LOSS OF LIFE .................530**

    1. Infringing On Our God Given Right to Life..........................................531

    2. Infringing On Our Right to Privacy ....................................................534

    3. Infringing On Our Right to Freedom ...................................................535

**17.    PREEMPTIVE MOTION TO STRIKE 2: TO PREVENT LOSS OF LIFE .................537**

    1. Infringement on Our Pursuit of Happiness – Declaration of Independence...........539

**18.    PREEMPTIVE MOTION TO STRIKE 3: MOTION TO STRIKE – DAMAGE**

**RIGHTS**...........................................................................................................**542**

**19.    PREEMPTIVE MOTION TO STRIKE 4: PROTECTING DRIVERS**..........................**545**

    1. Using, Tricking and Exploiting Gig Drivers..........................................545

**20.    PREEMPTIVE MOTION TO STRIKE 5: TO FREE DRIVERS ...................................547**

    1. Suppressing Drivers Freedom of Speech and

    Right to Peacefully Assemble.....................................................................548

    2. Controlling the Outcome of The AB5 and Similar

    Bills Through Trickery and Arbitration.....................................................549

    3. Corporate Attorneys Influence Drivers..................................................552

Adam John Mackintosh—vs–-Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 11 -

4. Uber and Lyft Bribe and Control Drivers ................................................ 554

**21.  PREEMPTIVE MOTION TO STRIKE 6: MOTION TO STRIKE CONCEALMENT,**

**AND REDACTION** ................................................................................ 555

**22.  PREEMPTIVE MOTION TO STRIKE 7: MOTION TO STRIKE INSURANCE**

**SCHEME REMOVAL** ............................................................................ 557

**23.  PREEMPTIVE MOTION TO STRIKE 8: MOTION TO STRIKE**

**WRONGFUL IMPRISONMENT ATTEMPT OF**

**A WHISTLE BLOWER** .......................................................................... 559

**24.  PREEMPTIVE MOTION TO STRIKE 9: MOTION TO STRIKE ALLEGED**

**SECURITIES AND EXCHANGE COMMISSION OMISSIONS** .................. 561

**25.  PREEMPTIVE MOTION TO STRIKE 10: MOTION TO STRIKE**

**LYFT INSURANCE FRAUD LEAVES TAX PAYERS FOOTING THE BILL** .......... 562

**26.  PREEMPTIVE MOTION TO STRIKE 11: MOTION TO STRIKE**

**UNQUALIFIED DRIVERS RISK LIVES IN HEALTHCARE** ..................... 564

**27.  PREEMPTIVE MOTION TO STRIKE 12: MOTION TO STRIKE**

**DEFENDANTS ARE EQUALLY AND UNJUSTLY ENRICHED** ................. 567

**28.  PREEMPTIVE MOTION TO STRIKE 13: MOTION TO STRIKE**

**ALLEGED COVER UP OF WRONGDOING TO INVESTORS**

**AND THE SECURITIES AND EXCHANGE COMMISSION** ...................... 570

**29.  PREEMPTIVE MOTION TO STRIKE 14: MOTION TO STRIKE**

**UNFAIRLY TIMED LAWSUIT STRIKING FULL**

**ENTITLEMENT AND RIGHTS TO DAMAGES** ......................................... 572

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 12 -

30. **PREEMPTIVE MOTION TO STRIKE 15: MOTION TO STRIKE DEFENDANTS PETITION FOR BANKRUPTCY AND AUTOMATIC STAY**......................................**574**

31. **PREEMPTIVE MOTION TO STRIKE 16: MOTION TO STRIKE ALL SECTIONS AND SUBSECTIONS HEREIN** ...........................................................................**575**

32. **PLAINTIFF'S GENUINE ATTEMPT TO SETTLE BEFORE COURT**.......................**576**

33. **DECLARATION OF ALANNA MACKINTOSH, IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION**...............................................**591**

34. **PLAINTIFF'S WIFE PRAYS TO AN HONORABLE JUDGE FOR RELIEF**.............**608**

35. **JACOBS LETTER SUBSTANTIATES PLAINTIFF'S COMPLAINT, PLAINTIFF'S COMPLAINT AND EVIDENCE SUBSTANTIATES JACOBS LETTER**....................**616**

36. **UBER HAS NOT LEARNED THEIR LESSON, REPEATING HISTORY -  CAUSING DEATH, INCREASING MORTALITY RATES AND HARMING INNOCENT LIVES IN HEALTHCARE, INCLUDING PLAINTIFF'S WIFE** ..............................................**653**

37. **EVIDENCE UBER AND LYFT ENDANGER LIFE IN HEALTHCARE** ...................**655**

38. **CEASE AND DESIST FROM ALL ENGAGEMENT** .....................................**657**

39. **EX PARTE APPLICATION FOR PERMANENT INJUNCTION ORDER AND ORDER TO SHOW CAUSE** ...........................................................................**659**

40. **MOTION TO COMPEL SACRAMENTO DISTRICT ATTORNEY, FBI, SEC, DOJ AND OTHER GOVERNMENT ENTITIES FOR INVESTIGATION POST JUDGEMENT FOR ADDITIONAL CAUSES OF ACTION 13 - 19**..............................**724**

–END TABLE OF CONTENTS–

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 13 -

# Sub-Table of Contents For Permanent Injunction

15AA. MEMORANDUM OF POINTS AND AUTHORITIES ...........................................663

15BA. INTRODUCTION...........................................................................................663

15BAA. GROUNDS FOR PERMANENT INJUNCTION POST-JUDGEMENT..........665

15CA. FACTUAL BACKGROUND ................................................................................685

SUB-AA. Plaintiff and His Company..............................................................685

SUB-BA. Uber, Joe, Louis, Jerry, Nicole and Does Hiring and

Confidentiality Agreement, and Mutual Non-Disclosure Documents..............................693

SUB-CA. Documents misappropriated and retained by Defendants are Proprietary,

Confidential, and Critical to Plaintiff's Future and the success of his Company, iHug...696

SUB-DA. Documents retained by Defendants are Proprietary, Confidential, and

Critical to Plaintiff Future and the success of his company iHug...............................700

- Marketing and Product Plans .............................................................701

- Medical Drone Delivery of Prescription and Other Medical Durable Products...701

- Financial Information...........................................................................707

- Customer Lists and Data......................................................................707

SUB-EA. Defendants Evolved Their Business and Profits With Plaintiff's Intellectual

Property, Corporate Secrets, Patent Books.......................................................707

ARGUMENT ...........................................................................................................708

SUB-FA. Legal Standard for Injunctive Relief...................................................708

SUB-GA. The Confidentiality Agreement Provides for Injunctive Relief........................708

SUB-HA. The Mutual Non-Disclosure Agreement Provides for Injunctive Relief.........710

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 14 -

**SUB-IA.** Defendants Possessed, Extracted, and Destroyed Plaintiff's Confidential, and

Proprietary Corporate Secrets that Evolved Defendants Business into Profitability........714

**SUB-JA.** Courts Regularly Grant Injunctive Relief Under These Circumstances...........715

**SUB-KA.** The Other Requirements for Injunctive Relief Are Met...................................716

    4.     The Balance of Hardships Weighs Decidedly in Plaintiff's Favor...........716

    5.     Plaintiff Has a Reasonable Probability of Prevailing on the Merits.........721

    6.     Healthcare Patients, Plaintiff, and iHug Will Suffer Irreparable Harm if an

        Injunction Is Not Issued ..........................................................................721

**CONCLUSION** ..............................................................................................................721

–END SUB-TABLE OF CONTENTS–

Adam John Mackintosh––vs––Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 15 -

# Table Of Authorities And Statutes For Ex Parte Application For Restraining Order and Preliminary Injunction and Permanent Injunction Post-Judgement

*Robbins v. Superior Court,*

  38 Cal. 3d 199 (1985) ...........................................................................520 & 708

*IT Corp. v. County of Imperial,*

  19 3S Cal, 3d G3, 109 (1983) ...............................................................520 & 708

*Heckmann v. Ahmanson,*

  168 Cal. App. 3d 119 (1985) ...............................................................520 & 708

*Hunt v. Superior Court,*

  21 Cal. 4th 984 (1999) ........................................................................520 & 708

*Martin Marietta Materials, Inc. v. Vulcan Materials Co.,*

  56 A.3d 1072 (Del. Ch. 2012)..............................................................520 & 708

*Ajaxo Inc. v. E.\*Trade Group Inc.,*

  135: Cal. App. 440.21, (2005) .............................................................522 & 714

*Courtesy Temp. Serv., Inc. v. Camacho,*

  222 Cal. App. 3d 1278 (1990) .............................................................522 & 714

*Greenly v. Cooper,*

  77 Cal. App. 3d 382 (1978) .................................................................522 & 714

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung,*

  13 2001 U.S. Dist. LEXIS 3248 (C.D. Cal. Feb. 2, 2001)....................522 & 714

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 16 -

*W. Directories, Inc. v. Golden Guide Directories, Inc.,*

   2009 U.S. Dist. LEXIS 52023 (N.D. Cal. June 8, 2009) ....................................................522 & 714

*ReadyLink Healthcare v. Cotton,*

   16 126 Cal. App. 4th 1006 (2005) ...................................................................................522 & 714

*Morgan v. Veach,*

   59 Cal. App. 2d G82 (1943)............................................................................................524 & 717

## STATUTES

Cal, Civ. Code § 526(2) .....................................................................................................520 & 708

Cal. Civ., Code § 3517.......................................................................................................528 & 721

–END TABLE OF AUTHORITIES AND STATUTES FOR EX PARTE

APPLICATION FOR RESTRAINING ORDER AND PRELIMINARY

INJUNCTION AND PERMANENT INJUNCTION POST-JUDGEMENT–

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 17 -

## 1. **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Adam John Mackintosh, ("Plaintiff"), individually and on behalf of all other persons similarly situated, by this undersigned Complaint, alleges the following against Defendants, on information and belief based upon, *inter alia*, through an investigation conducted by himself with little resource, which include the following but not limited to:

1. Direct evidence Defendants were giving Drivers instruction to commit acts that gave rise to this Complaint;

2. Conference calls between Defendants;

3. Electronic communications from Defendants;

4. Photographs of Defendants;

5. Unauthorized logins from Uber and Lyft Headquarters and Hubs;

6. Email and text communications from Insurance Agents and Defendants;

7. Interviews, news articles and press releases;

8. Audio and video evidence of Defendants;

9. Forensic behavioral data;

10. Forensic geo-location data;

11. Network and proxy evidence;

12. Google search histories;

13. Social media profiles and postings;

14. United States Securities and Exchange Commission ("SEC") filing for Uber;

15. United States Securities and Exchange Commission ("SEC") filing for Lyft;

16. Andreessen Horowitz business operational practices;

17. Bureau of Transportation Statistics;

18. Signed non-disclosure agreements;

19. Signed non-compete agreements;

20. Signed contingent employee agreements;

21. Signed confidentiality agreements;

22. Signed advisory board agreements;

23. Electronic communication from Attorneys;

24. Proceeding cases;

25. Case law analysis;

26. Written testimonial evidence;

27. Drivers blogs admitting Defendants involvement in iHug;

28. Termination of employment reasons;

29. Cease and desists;

30. Court server declaration;

31. Defendants refusal of order to go to court;

32. Witness and Police Officers' statements and declarations.

Certain exhibited pieces of evidence herein were down-sized to comply with the California

Rules of Court. Certain, exhibits were shadowed to assist the reader in understanding of the fact.

Plaintiff affirms the essence of the evidence is preserved in its original and genuine state. The

evidence is stored in multiple secured physical, and encrypted virtual locations.

All evidence is known by select parties who are under confidentiality agreements for

Whistleblower protection. The evidence will be available to the presiding Honorable Judge and, a

Grand Jury at trial.

For all table of contents, titles, descriptions, and claims stated herein, Plaintiff expressly

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 19 -

disclaims any all allegations that could be construed as alleging fraud, or intentional, or reckless misconduct, until proven through a preponderance of evidence in all proceeding paragraphs of this Complaint, including all stored and genuine exhibits for a fair, and speedy trial.

## 2.   JURISDICTION AND VENUE

The Superior Court of California, County of Sacramento has general personal jurisdiction over Defendants Lyft, Inc., Uber Technologies Inc., Uber Health, LLC, AH Capital Management, LLC DBA Andreessen Horowitz, Better Business Bureaus, Inc. DBA BBB, Benchmark Capital Partners VII, LP, Benchmark Capital Management Co. VII, LLC, Matt Cohler, Josef Arvin Acebedo, Louis Darnell Pritchett, Jerry Wang, and potential Does, individuals and corporations.

Venue is proper in this county under California Code of Civil Procedure §395.5 as a majority of the events and omissions giving rise to the claims alleged herein occurred in this county.

## 3.   PARTIES

At all times relevant to this action, Plaintiff, Adam John Mackintosh, was a resident of the Sacramento County, California and a Citizen of the State of California.

Upon information and belief, Defendants, Lyft, Inc., Uber Technologies, Inc., and Uber Health, LLC, Benchmark Capital Partners VII, LP, Benchmark Capital Management Co. VII, LLC are Delaware corporations with Corporate Headquarters and primary place of business in the San Francisco, California area at all times relevant to this action.

Upon information and belief, Defendant, Better Business Bureaus, Inc. DBA BBB is a Delaware corporations with Corporate Headquarters and primary place of business in the Arlington County, Virginia area at all times relevant to this action.

Upon information and belief, Defendant, AH Capital Management, LLC DBA Andreessen Horowitz, is a Delaware corporation with Corporate Headquarters and primary place of business in Menlo Park, California area at all times relevant to this action.

Upon information and belief, Defendants, Josef Arvin Acebedo, Louis Darnell Pritchett, Jerry Wang, and Does were residents of Sacramento County, Placer County, and Santa Clara County, and citizens of the State of California.

Defendant, Benchmark Capital Partners VII, LP, Benchmark Capital Management Co. VII, LLC is an early-stage venture investing in mobile, marketplaces, social, and infrastructure and enterprise software. Some notable investments are Twitter, GrubHub, Uber, Zillow, Upwork, Zendesk, Instagram and others.

Defendant, The Better Business Bureau ("BBB"), founded in 1912, is a private, nonprofit organization whose self-described mission is to focus on advancing marketplace trust, consisting of 106 independently incorporated local BBB organizations in the United States and Canada, coordinated under the Council of Better Business Bureaus ("CBBB") in Arlington, Virginia.

Defendant, Lyft is a major rideshare operator, transporting one-million passengers a day throughout the United States in approximately 30 states.

iHug, Plaintiff's damaged Company that halted operation as a result of Defendants actions as describe in all proceeding paragraphs of this complaint, was a transportation referral Company in healthcare, launched in Sacramento, California, operated in approximately 5 cities.

iHug, Plaintiff's new Company, is currently under attack by Defendants. iHug is a transportation-as-a-service software Company, offering software throughout the United States in approximately 3,200 cities.

Defendant, Uber is a major rideshare operator, transporting fifteen-million passengers a day world-wide, offering services in over 600 cities.

Defendant, Matt Cohler ("Matt"), is a partner at Benchmark Capital Partners, who's invested in Uber.

Defendant, Andreessen Horowitz ("Andreessen"), is a world-renowned investment venture

firm who's invested in Lyft.

Defendant, John Zimmer ("John"), is, and was at the time of Lyft's IPO, Lyft's Co-Founder, President and Vice Chairman of its Board of Directors.

Defendant, Logan Green ("Logan"), is, and was at the time of Lyft's IPO, Lyft's Co-Founder, Chief Executive Officer ("CEO"), and a member of its Board of Directors.

Defendant, Ben Horowitz ("Ben"), is, and was at the time of Lyft's IPO, a member of Lyft's Board of Directors, business partner and investor.

Defendant, Louis Darnell Pritchett ("Louis"), is believed to be an employee, and/or third party vendor, and Ambassador of Lyft and Uber. He is also an "independent driver," in a business relationship with Lyft and Uber. He is iHug's former Lead Ambassador, in charge of recruiting drivers.

Defendant, Josef Arvin Acebedo ("Joe"), is believed to be an employee, and/or third party vendor, and Ambassador of Lyft and Uber. He is also an "independent driver," in a business relationship with Lyft and Uber. He is iHug's former Chief Operating Officer ("COO".)

Defendant, Jerry Wang ("Jerry"), is a "self-proclaimed" software developer and entrepreneur who meets with Andreessen and other venture firms. He is iHug's former Software Developer. Plaintiff alleges on information and belief that:

A. each Defendant acted in all matters relevant to this action as the agent of the other Defendants, and carried out joint covert attacks; and

B. the acts and omissions of each Defendant are legally attributable to the other Defendants. All allegations made in all proceeding paragraphs of this Complaint are not limited and made based on direct evidence, circumstantial evidence, relationship evidence, forensic evidence, common sense, feasibility, plausibility, and reasonable belief.

Reasonable belief is based on the following but not limited to, direct evidence admitting

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

Defendants were giving instruction to commit all allegations stated in all proceeding paragraphs of this Complaint, direct evidence, circumstantial evidence, forensic evidence, medical analysis, financial analysis, and witness testimony.

This Complaint was written in such a way, anyone who reads it, will understand the genuine story of the assassination of iHug's healthcare transportation operation by the Defendants.

The decisions to plot, covertly operate, aid and abed, contribute and execute on plans to assassinate iHug's transportation operation, that was actively opening up access to wheelchair bound patients, the disabled, and children, is appalling.

After careful examination by the Plaintiff, he discovered Defendants true inherent nature in which they operate during the day in healthcare, increases the mortality rates of innocent and terminally-ill patients, which is leading to the progression hereditary disease, and potential death in our society. This behavior is completely un-American, and unlawful.

Plaintiff respectfully asserts, the allegations made herein and throughout all proceeding paragraphs of this Complaint are not 'hyperbolic,' or 'speculative,' nor are they attempts to assassinate Defendants' character for cash, a past argument made by Defendants Legal Counsel, as read by Plaintiff as he was reviewing case law in preparation to prosecute the Defendants.

Plaintiff has serious concern over the lives of innocent victims. Defendants have misappropriated Plaintiff's corporate secrets. Defendants failed to execute properly using Plaintiff's corporate secrets, thus growing improperly in healthcare causing more harm than good.

We must act now, and diligently move to temporarily remove Defendants from operating in healthcare based on the proven inherent corporate practices by Defendants, while in the heat of competition, endangering lives, which calls for a swift federal investigation and reasonable regulations.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 23 -

## 4. INTRODUCTION

1.     This action is seeking the following but not limited to injunction, trebling damages, punitive damages, pain and suffering damages, and disgorgement of unjust enrichment, obtained by Defendants without legal entitlement, who are synonymously monopolizing transportation, creating a duopoly, fueled by an insurance scheme, using investor cash that unlawfully suppresses competition.

2.     Plaintiff is entitled to all injunctive and equitable relief based on evidence he possesses in multiple secured physical and virtual locations, and exhibited evidence in each proceeding paragraph of this Complaint.

3.     Defendants wrongfully targeted Plaintiff, the pioneer of the first ever, "Rideshare for Healthcare" in the United States. The safest transportation option that was CPR and Basic Life Support Certified for the healthcare system, a world-class operation that was in its infancy.

4.     While the Plaintiff quietly and respectfully executed on his $1,200,000,000,000 trillion-dollar healthcare opportunity, so he could one day deploy a new digital Ai healthcare system that was gifted to him by God, to give to the world through, iHug, he was harmed by Defendants.

5.     The new digital Ai healthcare system is calculated to be worth over $25,800,000,000,000 Trillion-Dollars. This immediately placed a target on Plaintiff's back after Defendants were provided intelligence on such valuable intellectual property.

6.     iHug was silently infiltrated by Defendants in a covert, militaristic operation, as similarly described in a written letter by *Richard Jacobs ("Jacobs")*, a former Uber employee and United States Defense Intelligence Agency Officer, see Jacobs letter in the case *Waymo–vs–Uber–Case#3:17-cv-00939-WHA*. Jacobs disclosed Defendants internal departments, including but not limited to, Threat Operations (ThreatOps), Global Intelligence (Intel), and Strategic Services Groups (SSG), where they were instructed to infiltrate and suppress competition.

7.     Uber ended up settling with Waymo, despite Defendants Legal Counsel arguing

Jacobs was exaggerating. Plaintiff believes there was truth to Jacob's letter, hence, why it was settled.

8.      Defendants manipulate and incentivize its Drivers, who have "common motive to collude," to infiltrate iHug through deceptive business practices and fraud, tortiously interfering with iHug's contractual relations, while Defendants endanger life through their inherent culture, maliciously and unlawfully suppressing iHug. As a result of Defendants' willful actions, Defendants left an aftermath of damages, permanently inflicting emotional damages on Plaintiff's Wife, causing her to want to commit suicide, who had to undergo surgery from the severe stress levels caused by Defendants willful and malicious actions who intended to harm Plaintiff, his Wife, and iHug.

9.      Defendants' willful and incendiary attacks halted iHug's transportation operation, causing irreparable damages. Defendants' actions are so egregious and out of control, not only do Defendants use Drivers to intentionally cause irreparable damages, it's alleged Defendants also used ride request algorithms before their initial public offering ("IPO"), to book millions of "fake" rides, defrauding consumers, drivers, government-funded health insurance companies, investors, inflating Defendants' valuation and market share, in order to receive a higher-valued share price, unlawfully enriching themselves with billions of dollars in cash, defrauding The United States Government.

10.      Based on the horrendous acts of the Defendants, Defendants must be dealt with the same way every wrongdoer is dealt with, and hold the wrongdoer fully accountable for their misconduct in a manner which effectively deters the wrongdoers from again committing such heinous acts against anyone, ever again. As a common rule of law, in a civil lawsuit, punishment and deterrence is found in awarding monies damages to the victim and target of the wrongdoer(s).

11.      In order to fully compensate Plaintiff, and others similarly situated for damages, and to punish, deter, and teach Defendants a lesson that will never be forgotten, this action seeks damages in excess of Twenty-Three Billion One Hundred Eighty Million Nine Hundred Ten Thousand Dollars ($23,180,910,000.00.)

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

## 5.  CASE LAW ANALYSIS ESTABLISHES MERIT FOR THIS COMPLAINT

12.     In the case *Lyft–vs–Travis VanderZanden–Case# CGC-14-542554*: John Zimmer, Co-Founder of Lyft, acknowledges, **under penalty of perjury**, that Lyft's former Chief Operating Officer ("COO"), VanderZanden, loaded Lyft's internal systems onto his personal devices, containing thousands of artifacts (files and folders), including a significant number of Lyft's most sensitive and competitive documentation, while allegedly leaking them to Uber.

13.     Whereas in this Complaint, iHug's former Chief Operations Officer ("COO"), Joe, as well as, Louis, and Does, committed the same detrimental actions against iHug, causing immeasurable and indefinite damages. Pictured below, assertions from the aforementioned case:

> 9.     The forensic evidence collected from VanderZanden's Lyft-issued computer following his resignation also makes clear that he took a number of these steps to transfer Lyft information to his personal files in anticipation of his resignation.  In any case, regardless of his intent, VanderZanden's possession of Lyft confidential information post-employment breached his Confidentiality Agreement.  That agreement bars him from possessing, post-employment, any Lyft confidential and proprietary information, and prohibits him from using or disclosing such information to anyone.

14.     Defendants' Legal Counsel, Latham & Watkins, LLP, continued to accurately describe VanderZanden's actions, stating, "Computer forensic evidence establishes that in the months and days before he announced his resignation and departed Lyft" VanderZanden misappropriated thousands of internal artifacts onto his personal devices, "including a significant number of Lyft's most sensitive documents."

15.     Whereas in this Complaint, iHug's former COO, Joe, as well as Louis, and Does, misappropriated "thousands of iHug's internal artifacts, containing highly sensitive documents," including but not limited to, partnership details, corporate materials, corporate trade secrets, pitch

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 26 -

decks, and Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his

$25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars, before and after

departing iHug.

16.     Joe, Louis and Does, provided login details to Defendants to gather internal

intelligence, permanently inflicting harm on iHug, its partnership, Plaintiff and healthcare patients,

causing immeasurable and indefinite damages.

17.     Pictured below and on the next page atop, assertions from the VanderZanden case,

providing precedence:

---

23      8.     Computer forensic evidence establishes that in the months and days before he

24      announced his resignation and departed Lyft, VanderZanden synchronized his personal Dropbox

25      account to his Lyft laptop, revealing that his personal Dropbox account contained more than

26      98,000 artifacts (files and folders), including a significant number of Lyft's most sensitive

27      documents. At all times during his employment, VanderZanden had access to a Lyft Dropbox

28      account, which was available for all of his work-related needs, so there would be no legitimate

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                    2           COMPLAINT FOR BREACH OF
                                                CONFIDENTIALITY AGREEMENT AND
                                                BREACH OF FIDUCIARY DUTY

---

1     business reason for him to place these sensitive documents in his personal account. The

2     documents found in his personal Dropbox account included Lyft's historic and future financial

3     information, strategic planning materials like marketing plans and product plans, customer lists

4     and data, international growth documents, and private personnel information. Forensic evidence

5     also establishes that VanderZanden systematically uploaded confidential and proprietary Lyft

6     documents to his personal Dropbox account, and backed up his work emails and contacts to, on

7     information and belief, his personal computer and his iPhone. VanderZanden possessed these

8     documents post-employment on at least his personal Dropbox account, and on information and

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 27 -

> 1  business reason for him to place these sensitive documents in his personal account. The
> 2  documents found in his personal Dropbox account included Lyft's historic and future financial
> 3  information, strategic planning materials like marketing plans and product plans, customer lists
> 4  and data, international growth documents, and private personnel information. Forensic evidence
> 5  also establishes that VanderZanden systematically uploaded confidential and proprietary Lyft
> 6  documents to his personal Dropbox account, and backed up his work emails and contacts to, on
> 7  information and belief, his personal computer and his iPhone. VanderZanden possessed these
> 8  documents post-employment on at least his personal Dropbox account, and on information and
> 9  belief, his personal computer and iPhone. VanderZanden, notably, can still access his personal
> 10 Dropbox account, and the proprietary and confidential documents therein, from any computer in
> 11 the world simply by providing his login credentials. VanderZanden's Lyft Dropbox account was
> 12 shut down by the Company promptly after his resignation.

18.     In the case *Lyft–vs–Travis Vanderzanden–Case# CGC-14-542554,* Lyft's former COO, VanderZanden, breached his confidentiality agreement in numerous other ways, "including by soliciting and attempting to solicit numerous Lyft employees to leave Lyft."

19.     Whereas in this Complaint, iHug's former COO, Joe, as well as Louis and Does, did in fact solicit numerous members of the iHug team to join Defendants and leave iHug.

20.     Even more outrageous, Defendants instructed iHug's former COO, Joe, as well as Louis and Does, to form an alliance against Plaintiff, using iHug's team members, investors, drivers and customers by slandering Plaintiff.

21.     The False and Defamatory Accusations and its Gist against Plaintiff are defamatory per se, as they are libelous on their face without resort to additional facts, and as clearly demonstrated here. Plaintiff was wrongfully accused of stealing millions of dollars from investors, and grand theft auto, in order to build a case against Plaintiff to wrongfully imprison him. Pictured on the next page atop, an assertion from the case, establishing precedence and merit for this Complaint.

9    12.    VanderZanden breached the Confidentiality Agreement in numerous other ways

10    as well, including by soliciting and attempting to solicit numerous Lyft employees to leave Lyft.

22.    In the case *Lyft–vs–Travis Vanderzanden–Case# CGC-14-542554*, "forensic

evidence" collected from Lyft's computer systems, establishes that VanderZanden "took a number of

steps to transfer Lyft information to his personal files in anticipation of his resignation." Pictured

below, an assertion from the case.

---

13    9.    The forensic evidence collected from VanderZanden's Lyft-issued computer

14    following his resignation also makes clear that he took a number of these steps to transfer Lyft

15    information to his personal files in anticipation of his resignation. In any case, regardless of his

16    intent, VanderZanden's possession of Lyft confidential information post-employment breached

17    his Confidentiality Agreement. That agreement bars him from possessing, post-employment,

18    any Lyft confidential and proprietary information, and prohibits him from using or disclosing

19    such information to anyone.

20    10.    VanderZanden's Confidentiality Agreement also required him to certify, by a

21    Termination Certification, that he honored and would continue to honor his responsibilities under

22    the Confidentiality Agreement. VanderZanden has ignored Lyft's repeated requests that he sign

23    the Termination Certification verifying that he no longer possesses, and will not use, Lyft

24    confidential information. VanderZanden and Uber have steadfastly ignored repeated requests to

25    return confidential and proprietary Lyft information VanderZanden possessed post-employment.

26    Uber's counsel maintained that VanderZanden "has no Lyft proprietary information in his

27    possession – not now, not when he started at Uber, and not since he left Lyft."

28    11.    Rather than turn his phone over to Lyft to ensure the return of all confidential

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

3

COMPLAINT FOR BREACH OF
CONFIDENTIALITY AGREEMENT AND
BREACH OF FIDUCIARY DUTY

---

23.    Whereas in this Complaint, "forensic evidence" collected from iHug's computer

systems, in fact establishes that Joe, Louis, and Does "took a number of steps to transfer iHug

information" in anticipation of their resignation. Regardless of their intent, Joe, Louis and Does

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life. Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act. Trade Secret Misappropriation, Unjust Enrichment.
- 29 -

possession of iHug confidential information post-contingent employment, breached their

confidentiality agreements, similarly stated by Defendants' Legal Counsel Latham Watkins, LLP,

"regardless of his intent, VanderZanden's possession of Lyft confidential information post-

employment, breached his Confidentiality Agreements."

24.     John **declares under penalty of perjury**, his concern of his "former COO" meeting

with a competitor, after misappropriating Lyft's "highly confidential information."

25.     Whereas in this Complaint, iHug's "former COO," Joe, as well as Louis and Does

misappropriated iHug's "highly confidential information," including but not limited to, iHug's

competitive advantages, intellectual property, patent ideas and other artifacts, including Plaintiff's

$1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar

new digital Ai healthcare system particulars, where photographic evidence then establishes they met

with Lyft CEO, John Zimmer, a main competitor to iHug, breaching all fiduciary duty and

contractual agreements. Pictured below, an assertion from the aforementioned case proving

Defendants acted with prior knowledge of the type of wrongdoing and willful intention:

> 10      4.      Based on VanderZanden's text messages, in which he indicates that senior
>
> 11   personnel at Uber Technologies, Inc. ("Uber") wanted to meet with him the week of August 18,
>
> 12   2014, I believed that VanderZanden would have discussions with Uber.
>
> 13      5.      I was concerned about any discussions VanderZanden might have with Uber,
>
> 14   given that VanderZanden had been a Lyft senior executive (Chief Operating Officer), had
>
> 15   already announced his resignation, and Uber was Lyft's primary competitor.
>
> 16      6.      I have read the Declaration of Travis VanderZanden in Support of Opposition to
>
> 17   Lyft's Motion for Sanctions Pursuant to Code of Civil Procedure 128.7, dated July 17, 2015. I
>
> 18   understand that it is VanderZanden's opinion that his expected conversations with Uber on
>
> 19   August 18, 2014 would have been unrelated to his potential employment at Uber. I was
>
> 20   concerned about VanderZanden having any discussions with Uber, on any topic. My concern

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 30 -

26.     In the case *Waymo–vs–Uber–Case#3:17-cv-00939-WHA*: Richard Jacobs ("Jacobs"), a former United States Agency Officer, joined Uber's Global Intelligence Department, after serving two consecutive battle assignments in Iraq, supporting Special Operations Forces.

27.     Jacobs was "hired for his unique mix of geopolitical and threat intelligence, overseas experience, and his ability to scale an intelligence program." Jacobs admitted and described in his own written testimony, the identical allegations argued herein, including but not limited to, gathering of intelligence, misappropriating corporate trade secrets, using "third-party vendors" to obtain unauthorized information, violations of the Sarbanes-Oxley Act of 2002, bribing local, state and federal officials, valuation inflation, illegal hacking and computer fraud and abuse.

28.     Plaintiff affirms, Defendants continue to use "third-party vendors," to unlawfully misappropriate competitor trade secrets, gather artifacts and intelligence from competitors, including but not limited to, corporate secrets, corporate materials, and business plans.

29.     Plaintiff further argues it is common knowledge to the world, that Uber and Lyft operate synonymously. Analysts regularly call Uber and Lyft a "duopoly," as they launch similar programs, features, and services at the same time, substantiating they share corporate trade secrets to unlawfully monopolize, suppress competition, and maintain an unlawful competitive advantage.

30.     In the case, *Mary Mccloskey–vs–Lyft–Case# CGC-19-575475*: it's asserted that Lyft's S1 SEC Filing states Lyft's "main ridesharing competition in the United States and Canada include Uber, Gett (Juno), and Via."

31.     Whereas in this Complaint, before Defendant's IPO filing, Louis asked Plaintiff on multiple occasions to provide any and all intel on Via as he, "heard they were coming to Sacramento," substantiating his role is to gather intelligence for Defendants on competitors by any means, including breaching fiduciary duty through fraud.

32.     Defendants aforementioned and outlined corporate conduct in all proceeding

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 31 -

paragraphs of this Complaint, is the epitome of Defendants relationship and culture with its Employees, Drivers, Third-Party Vendors and others who work in symphony with Defendants.

33.     In an interview with Bloomberg: *Lyft Co-Founder John Zimmer on Growth and #DeleteUber Campaign*, at 1:43 minutes into the interview, John alleges his main competitor, Uber, incentivized Drivers not to drive for his business.

34.     Whereas in this Complaint, the Lyft and Uber drivers who were strategically recruited by Joe, Louis and Does, were incentivized by Defendants not to drive for Plaintiff's Company on launch day.

35.     Even more scandalous, Joe, Louis and Does turned drivers against Plaintiff and iHug, subsequently cancelling rides and making themselves unavailable for innocent and terminally-ill healthcare patients.

36.     Digital evidence establishes Defendants gathered details of iHug's partnership launch dates, where they ensured drivers would be sabotaged, and cancel and/or make themselves unavailable for dialysis, cancer, and other terminally-ill patients.

37.     Plaintiff conducted a SWOT Analysis (Strengths, Weaknesses, Opportunities, and Threats), and cross-referenced it with scientific and medical analysis. It revealed, and irrefutably proves, Defendants willful conduct and culture, consequently increases mortality rates throughout the United States. This decreases life expectancy of innocent healthcare patients, progressing their hereditary disease, who are unknowingly being harmed by Defendants every time they are cancelled on. Defendants are solely focused on greed and "winning," as John boldly states in an interview with Bloomberg: *Lyft Co-Founder John Zimmer on Growth and #DeleteUber Campaign.*

38.     In the case Wright–*vs*–Lyft, Inc., Case# 94162-9, and *Antonio Tecson, et al., vs. Lyft, Inc.,– Case# 18-cv-06782-YGR,* the court concluded that a Consumer Protection Act "(CPA)" claimant must establish five elements in order to prove a Defendant is in violation of the CPA:

(1) an unfair or deceptive act or practice;

(2) in trade or commerce;

(3) that affects the public interest;

(4) injury to plaintiff's Company or property, and

(5) causation.

39. Whereas throughout this Complaint, Defendants have clearly met all five elements established by the courts.

40. In the Class-Action case: *ARA AYRES and JUDITH SMITH, individuals–vs–Lyft, Inc., Case# RG18896443*: Ayres and Smith argues, "Lyft exercises substantial control over drivers incentivizing drivers to drive for Lyft, and to drive at particular times, however, it appears to do nothing to incentivize drivers to drive wheelchair accessible lifts."

41. Whereas in this Complaint, Defendants maliciously timed and incentivized drivers at particular times, including Plaintiff's launch date, to willfully obstruct and suppressed Plaintiff's first ever on-demand wheelchair app. Defendants actions to deprive wheelchair accessibility for wheelchair-bound patients, violates The Centers for Medicare and Medicaid Services Accessibility & Non-discrimination for Individuals, with Disabilities, and the American Disability Act ("ADA").

42. To substantiate the above-mentioned allegations, Defendants are facing an influx of lawsuits, and complaints regarding wheelchair discrimination, lack of accessibility for wheelchair-bound and disabled Americans, by the following but not limited to individuals and entities, while Defendants are disgracefully suppressing iHug, who can solve many of these issues and complaints:

A. Disability Rights Associations

B. Americans with Disabilities Act - Rebecca Bond, Chief, Disability

Rights Section, (202) ▮▮▮▮▮▮▮▮A@usdoj.gov

C. Jessie Lorenz, ED of Independent Living Resource Center of SF

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 33 -

D. Ilanit Harounsheily

E. Judith Smith, founder of Axis Dance Company

F. Independent Living Resource Centers claiming Defendants violate:

G. Kelley Simoneaux

H. Heidi Case of D.C.

I. Stuart Seaborn, one of the DRA attorneys

J. Equal Rights Center

K. Berkeley's Disability Rights Advocates

L. Ruth Lowenkron, Director of the Disability Justice Program at New York Lawyers for the Public Interest

M. United Spinal Association

N. Access Living of Metropolitan Chicago

O. Taxi and Limousine Commission

P. Melissa Riess, a staff attorney with Disability Rights Advocates

Q. Unruh Civil Rights Act

R. California Disabled Persons Act

S. City of San Francisco

T. New York City

U. Judith Smith, Disability rights supporters of San Francisco, California.

V. The Disability Rights Advocates

W. Dorene Giacopini

X. New York Disability Advocates

Y. New York City Human Rights Law

Z. United States Commerce Department

Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 34 -

## 6. FACTUAL ALLEGATIONS

43.     Lyft is a major rideshare operator, transporting one-million passengers a day throughout the United States in approximately 30 states.

44.     Plaintiff's Company, iHug, halted operation as a result of Defendants actions, as described in all proceeding paragraphs of this Complaint, was a transportation referral Company in healthcare, launched in Sacramento, California, and operated in approximately five counties.

45.     iHug Software, Plaintiff's new Company, is a transportation-as-a-service software Company, offering software throughout the United States in approximately 3,200 cities.

46.     Uber is a major rideshare operator, transporting fifteen-million passengers a day world-wide, offering services in over 600 cities.

47.     Andreessen Horowitz, is a Silicon Valley investment firm who's invested in Lyft.

48.     iHug, was embarking on one of the largest paradigm shifts ever witnessed in healthcare, truly combining healthcare and transportation, raising the stakes in Silicon Valley.

49.     Plaintiff invested over a decade researching, developing and protecting his proprietary and sensitive information related to his Company, including but not limited to, strategies, products and service offerings, healthcare API's, mobile rider app, mobile driver app, which gives life to the following but not limited to: artifacts detailing iHug's execution strategies, healthcare technologies, product plans, marketing plans, historical financial information, future financial information, forecasts, customer data, driver data, personnel information and Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars, including other highly valuable artifacts.

50.     Plaintiff took every reasonable measure to protect his proprietary information with numerous commercially reasonable policies and practices, including requiring: without limit, all contingent employees, volunteers, officers, investors, board members, and independent contractors to

sign iHug's non-disclosure agreements, and confidentiality agreements.

51.     Everyone who entered the iHug office signed the non-disclosure and confidentiality agreements before proceeding past the reception desk.

52.     Joe, Louis, Jerry and Does would not have been, and could not have been, brought into iHug, without signing the confidentiality and non-disclosure agreements.

## A. ALLEGED DEATH THREATS BY DEFENDANTS

## THREATOPS TEAM AT PRE-LAUNCH

53.     In 2015, after Plaintiff spent years developing iHug while homeless, living in his trailer, coding the iHug healthcare app during the cold winters and hot summers. He completed the iHug healthcare app and readied it for launch.

54.     Plaintiff launched iHug in early 2016 in the non-emergency medical transportation industry, away from Uber and Lyft's taxi industry. The non-emergency medical transportation industry is an antiquated and inefficient transportation industry for healthcare. Plaintiff knew he was first to market in the non-emergency medical transportation industry using his "Rideshare for Healthcare" model. Whereas the Rideshare for Taxi model would cause harm if applied in healthcare. Plaintiff's Rideshare for Healthcare model was an on-demand wheelchair and sedan, CPR, Basic Life Support Certified, healthcare provider driven transportation platform.

55.     Plaintiff knew if he applied the "Rideshare Model," in the healthcare transportation industry, he would have the highest success rate in helping healthcare patients. A promise he made to his grandmother, who missed medical appointments due to lack of transportation, having to juggle bus stop scheduling and her medical appointment times. She passed away from a stroke as a result of the lack of transportation, health insurance, and medical preventative care and advice.

56.     Plaintiff also knew the software was just one side his business, Plaintiff had to sign contracts in healthcare to grow. He started posting new software developer openings for iHug.

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 36 -

57.   On July 29, 2016, Plaintiff hired Chris, who lived in Los Angeles, California. Plaintiff drove to him and used the Uber and Lyft apps in Los Angeles, California to get around with Chris.

58.   Chris signed iHug's non-disclosure, and then received all of iHug's code through Github, a repository based system to hold code base. Pictured below, iHug's new Developer working with Plaintiff. Pictured below in the middle, Plaintiff's trailer and bed he spent years developing iHug and slept in. Pictured below on the bottom, iHug's healthcare app.








## A1. Defendants ThreatOps Team Compromise iHug's Software Developer

59.     On November 14, 2016, *4 months later*, after receiving all of Plaintiff's software and corporate secrets, the developer was compromised by Defendants as they used Hell Programs to track the software developers home, and phone details using Uber and Lyft's apps. The developer changed, and started acting erratic, over charging Plaintiff and sabotaged the software.

60.     The relationship eroded, and iHug's software was placed on a public repository on Github so Defendants can grab the code base as described in Jacobs letter, in the *Waymo–vs–Uber– Case#3:17-cv-00939-WHA, as described by Jacobs:*

*Strategic Services Group (SSG) is Responsible for human intelligence (HUMINT), a collection through Uber in-house personnel or outside vendors.*

*This team supports the Intel, Investigations, and Marketplace Analytics teams. It also receives confidential assignments from its manager(s). In addition, Uber's senior executives (A-team) task SSG with assignments.*

*Mr. Jacobs testified, he learned of an internal organization that gathered trade secrets, code and other information about its competitors. It was called the "marketplace analytics team," according to the letter, which had been redacted by Uber.*

*The group frequented the code-sharing site GitHub, searching for private material that may have been accidentally revealed by competitors.*

## A2. Plaintiff Alleges Defendants ThreatOps Team Threatens His Life

61.     On November 19, 2016, *4 days later*, as Plaintiff continued seeking a software developer, he received an email from a new "software developer," ("suspect") asking Plaintiff to call him. The phone number provided was a San Francisco, California based phone number.

62.     When Plaintiff called, the suspect asked Plaintiff for his first and last name and started interrogating Plaintiff. When Plaintiff redirected the conversation to focus on the suspects software

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 38 -

experience, the suspect threatened to kill Plaintiff if he continued looking for a software developer.

Plaintiff immediately contacted authorities to report it and the details were forwarded to local Police

Departments.

63.   Pictured below on the left, Plaintiff reporting the incident, giving his statement on the

conversation. Pictured below on the right, Plaintiff's concern was forwarded on to local Police.





64.   On November 26, 2016, *7 days after* Plaintiff's life was threatened, Chris sent

Adam John Mackintosh—vs-—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 39 -

Plaintiff's team members a slanderous email claiming Plaintiff was a con-artist. Most of the team members disbanded from iHug. It's alleged, established, and substantiated, this tactic is used by Defendants ThreatOps Team to damage competitors. Pictured below, the software developer slanders Plaintiff to his entire team, as the Developer was threatened and compromised, a similar tactic used by Defendants as described herein and all proceeding paragraphs of this Complaint. Chris exposed Plaintiff's code to iHug's healthcare app on Github, causing irreparable damages. This allowed Defendants to acquire iHug's developing codebase and other commercially competitive details.



65.    God gifted Plaintiff with iHug, it is Plaintiff calling. So, Plaintiff continued pursuing iHug, a revolutionary new, "Rideshare for Healthcare," model, giving iHug a 5 to 10-year head start on Lyft and Uber in the market.

66.    Plaintiff integrated 911 features in the app, subscriptions, in-home care and other

exciting new services Uber and Lyft could not, did not, and currently do not offer.

67. Pictured below, Plaintiff's features of his earlier versions of his healthcare transportation app, not limited to iMed Services through Apple's Cloud service. A revolutionary way to receive healthcare on-demand.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 41 -

## B. THE SECRET INSURANCE SCHEME THAT

## UNLAWFULLY SUPRESSES COMPETITION AND LURED IN PLAINTIFF

68.     The Plaintiff and competitors alike, are lured into Defendants' deceptive insurance scheme, using a constructed insurance policy that was designed to unfairly suppress competition.

69.     James River Insurance is the primary issuer that blocks all of Defendants competitors.

70.     To further suppress competition, Defendants pushed for regulation, forcing competitors to purchase a policy in order to operate, where competitors are automatically denied for being "too small."

71.     This has allowed Defendants to grow their transportation network operation, with little to no competition, monopolizing the transportation network industry.

72.     Not only do Defendants suppress competition while working with James River Insurance to deny competitors policies, Defendants orchestrate its Drivers in symphony with Insurance Agents ("Agents") using its brand power and cash incentive, violating California Department of Insurance Code, in particular, Deceptive Sales Practices, in order to misappropriate highly competitive artifacts, including trade secrets, and misappropriate Transportation Network Company ("TNC") drivers to unjustly enrich Defendants.

73.     After Plaintiff reversed-engineered the insurance scheme, the following and factual key points surfaced, indicating it was engineered from day one, to unfairly suppress competition:

(1) James River Insurance controls issuance of $1,000,000 million-dollar master TNC policy, restricting and denying a majority of common competitors to Uber and Lyft;

(2) Defendants pay James River Insurance hundreds of millions of dollars in order for Defendants to "operate," excluding competition, where James River Insurance fights not to pay for insurance claims to Drivers. In particular, Plaintiff had an Agent admit to in front of witnesses, her TNC Drivers on Lyft and Uber were denied

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 42 -

coverage when it should have been afforded;

(3) A new TNC competitor starts their own business and contacts an Agent for a TNC policy;

(4) Agent connects new TNC owner to Defendants' Drivers to infiltrate TNC through fraud;

(5) Agent falsely promises a TNC policy;

(6) Agent obtains TNC business plan and hands it off to the Defendants' Drivers;

(7) Defendants' Drivers reveal and hand off the business plans to Defendants in covert operations;

(8) Agent denies policy as TNC is too small, requiring 3,500 riders per week to qualify;

(9) Agent and the Drivers misappropriate the new TNC driver contact details;

(10) Drivers receive cash incentive from Defendants to recruit new TNC drivers onto Defendants' platform;

(11) Agents earn cash per rideshare gap policy sold to the new TNC drivers who are under Defendant's $1,000,000 million-dollar master policy;

(12) Competition is and continues to be suppressed in the United States.

74.    A quick online search, clearly proves businesses, and drivers are denied coverage consistently from James River Insurance an alleged shell company, in particular the Better Business Bureau ("BBB") and Yelp have over 80 complaints, for no call back, and denial of coverage.

75.    The scheme exists, involving multiple Insurance Agencies, Independent Agents, and Independent Drivers, as one whistle blew to Plaintiff.

76.    The Agents and Drivers receive cash incentive from Defendants to act unlawfully, who have "common motive to collude," using deceptive business practices and fraud.

77.    This scheme has caused irreparable and immeasurable amounts of damages to Plaintiff and his Company, iHug, and competitors throughout The United States.

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 43 -

78. Pictured below on the left is Joe, a Lyft and Uber Ambassador, third-party vendor, Driver and left-hand man to John, Co-Founder of Lyft. He was introduced to Plaintiff by Agent.

79. Pictured below on the right is Louis, a Lyft and Uber Ambassador, third-party vendor, Driver and right-hand man to John, Co-Founder of Lyft. He was introduced to Plaintiff by Joe.

80. These individuals are tasked with assignments from Uber and Lyft Senior Executives, and frequently engages in fraud and theft, in order to obtain, unauthorized data and information, see particulars in case: *Waymo–vs–Uber–Case#3:17-cv-00939-WHA, as described by Jacobs: Strategic Services Group (SSG) is Responsible for human intelligence (HUMINT), a collection through Uber in-house personnel or outside vendors. This team supports the Intel, Investigations, and Marketplace Analytics teams. It also receives confidential assignments from its manager(s). In addition, Uber's senior executives (A-team) task SSG with assignments.*

 

*Joe on the left.*         *Louis on the right, with Lyft Co-Founder, John.*

 

LYFT AND FARMERS INSURANCE

81.     Pictured below on the left, Plaintiff confirms, Joe and Louis signed and confirmed they had no conflicting interest with Defendants before involving them in iHug. This text message substantiates Ambassadors are under control by Uber and Lyft.

82.     Pictured below on the right, Joe has access to Agents' systems, including Facebook.

83.     Joe uses Agents' systems to intercept competitor's business plans handing them off to Defendants, and using competitor's driver lists to recruit them onto Defendants' platform in order to receive cash incentive. Unlawfully growing Defendants platform.

Brilliant! You don't think I'll get in trouble with lyft right?

You're stepping down as ambassador right? So you're just a contracted driver. You're not employed. So I don't see a problem.

True. I'm no longer a Ambassador lol

The uber thing is old news...they were planning that some time ago already

Weird. My phone is not letting me comment as myself but as "Rideshare Lady" on Facebook lol

84.     Pictured below, "Agent" receives Plaintiff's business plan for "insurance purposes." It's alleged, Joe had access to Agent's email systems and unlawfully extracted iHug's plans, leaking them to Defendants.

Thank you for this information . Do you have copy of your company business plan ? They do require this unfortunately like if you are applying for a bank loan.

Patricia ▉▉▉
Farmers Insurance
▉▉▉farmersagent.com
http://www.farmersagent.com



FARMERS
INSURANCE

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 45 -

85.   Pictured below, Agent provides a fictitious policy to lure Plaintiff into Defendants insurance scheme.

| Farmers Insurance | |
|---|---|
| **RE:**   Krazy Ride Technology | |
| **INSURER:**   James River Insurance Company | |
| **EFFECTIVE DATES:**   2/1/2016   to | |
| **COVERAGE TYPE** | **LIMIT** |
| Commercial Auto Liability - Symbol 10 | $1,000,000 CSL |

86.   It's alleged, the Agent had prior knowledge that Plaintiff's Company was **"too small,"** and planned to subsequently deny a TNC Master Policy months later.

87.   The following months allowed enough time for Defendants and its Drivers to infiltrate and misappropriate corporate secrets and other competitive details.

88.   The TNC Master Policy is controlled by James River Insurance, a supplier of TNC policy to Defendants. Its alleged James River Insurance colludes with Defendants.

89.   Pictured below, Agent used Farmers Insurance brand name and trust to mislead Plaintiff in order to misappropriate Plaintiff's driver lists, handing them to Defendants Drivers.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 46 -

90.     Defendants Drivers, in particular, Joe and Does then recruit the misappropriated competitor Driver details, and on board the Drivers onto Defendants' platform to receive cash incentive.

91.     The drivers are then put on Defendants' $1,000,000 million-dollar master policy.

92.     This allows the Agent to receive cash incentive and payments for selling a "Rideshare Gap Policy" insurance premiums to add Drivers to Defendants Master TNC Auto Policy, unjustly and unlawfully growing Defendants platform, suppressing competition.

93.     Plaintiff asserts, the common business owner who starts his or her own rideshare TNC company, is <u>suppressed by the insurance scheme, that solely benefits Defendants,</u> as it's impossible for any startup to process 3,500 rides per week, which is required for James River Insurance to provide a policy, thus suppressing competitors.

94.     Pictured on the next page, Agent received an email from a James River Insurance "broker," after Plaintiff waited *7 months* for a response, where he was eventually denied.

95.     The *7-month* time-frame was intentional, so that Joe, Louis and Does were able to misappropriate iHug's corporate material, customers, drivers, systems and trade secrets.

///

///

///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 47 -

**Folder: Inbox**  ⋯ >> **Message 1 of 683 (**

↩ Reply ▾   ↪ Forward ▾   🗑 Delete   📁 Move ▾   ⊘ Spam   🖨 Print   ▦ Show Headers   More ▾   ✖ Close

**Subject:** RE: RE: rideshare commercial policy IHug  [Allow Subject]
**Date:** 12:48 PM PST, 11/08/17  [Save to eCMS]
**From:** Karen ████████ @crcins.com>  [Add to Contacts] [Block Sender] [Allow Sender]
**To:** Patricia ████████ farmersagent.com>

Patricia

*Hired + NON owned # 8+ # 9*
*Auto policy*

I spoke with the broker here and the risk was declined by the markets as it was too small.

Regret the markets would not be willing to reopen their files

Thank you for the opportunity.

Karen Prescott, CIC CRIS ARM | Account Executive – Dallas (Walnut Hill) | CRC Insurance Services Inc.

████████ @crcins.com  |  website: www.crcins.com

**PLEASE NOTE MY EM**██████████████████

*sent*

*(Small size)*

**From:** Patricia ████████
**Sent:** Wednesday, November 08, 2017 2:22 PM
**To:** Karen ████████
**Subject:** Fwd: RE: rideshare commercial policy IHug

*month*
*3500 per week*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 48 -

96.     Pictured below, unbeknown to Plaintiff, another Agent already knew Louis, and Juan, who is a Lyft driver, and Louis' partner, substantiating the insurance scheme exists, that unlawfully suppressed competition, allowing Defendants to monopolize transportation.

97.     Louis, Joe and Does work with Agents to misappropriate drivers, customers and competitive material to unjustly enrich Defendants, in particular, iHug, which has caused irreparable damages, exposing Defendants to class-action lawsuits from small businesses across The United States who were damaged by Defendants as described herein.

 **Kyle** @statefarm.com>
to Adam, Joe, Juan, me ▾

**Sounds good... looks like I know a couple of your team members already (Hi Juan and Louis!)**

98.     Pictured below, Lyft Executives from Headquarters ("H.Q.") Agents and Drivers.

 

Kyle Middleton - State Farm Insurance •••
Agent
Like This Page

Fun and lively Q&A session with Lyft drivers hearing updates from HQ. Thanks Louis Pritchett



## B1. The Aftermath of Defendants Insurance Scheme

99.   Pictured below, and the proceeding pages, the results of the insurance scheme:



**Christopher C**
★★★★★                                                                03/16/2019

This company needs to be investigated and pay the people they have screwed over. An absolute fraudulent criminal company that rideshare companies use to pass the buck for responsibilities. They really hurt me financially and I was just trying to make extra income after two heart surgeries.



**Duane W**
★★★★★                                             09/26/2018

I was involved in a hit and run over two weeks ago, while driving an **** passenger. Unfortunately, I was forced to file my claim through James River Insurance. Not only did they attempt to tell me that the damages were below the $**** deductible, they attempted to find any way to delay me getting my car repaired. The representatives that I spoke to never had the right information. The manager and assistant managers don't seem to understand the value of providing adequate customer service as well. They are truly an all around joke. Now I can see why they are such a joke within the rideshare community.



**Sterling G.**
★★★★★                                             09/30/2017

$1k deductible for **** ****** insurance? Ridiculous!!!



**Thomas T.**
★★★★★                                             06/16/2017

My stationary car was hit by an **** driver who was insured by the James River Insurance Company (JRIC). Not only was liability found to be merely 50% despite photographic evidence to the contrary, it took a month of my repeatedly calling and sending emails for the JRIC adjuster to arrive at her decision, during some portion of which I was misidentified as the partner driver rather than the claimant - a fact which I only happened to find out by chance when I called JRIC in order to figure out a way of avoiding using their claim submitting app, the EULA of which stipulates that the app company is entitled to access, record and use personal data including phone telemetry, ******** data, and other egregious and unnecessary invasions of privacy. The end result of all these issues was that I did not feel JRIC acted in good faith, and I got the distinct impression that if I had not been so proactive my claim would have been either ignored or confused to the point that pursuing it would have been either very difficult or impossible. The only way my experience could have been worse is if the liability were found to be even less reflective of the actual events of the accident.



**Brian**
★★★★★                                             05/26/2017

Worst insurance company ever. Only insurance company willing to cover uber.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 50 -

## Better Business Bureau®

Join/Apply | Consumer Login

**Find**   What are you looking for?   ✕    **Near**   Sacramento, CA



**Obinna O.**
★★★★★
01/25/2017

I was in a wreck, James River(via their staff: Deja J******) called me that they're a contractor to another party and try to pressure me to settle for less and intentionally withheld information to condition me to close the case and I refused repeatedly. They went as far as colluding(anti-trust law). Very bad insurance company. Bad faith insurance.



**Joshua C.**
★★★★★
01/17/2017

Worst insurance situation of my life. I was stalled out, my claim was not being followed through on by anybody at James River consistently during the whole process. I was tossed around like hot potatoes from person to person and still left with a long wait. I was being told they did not even know the whereabouts of my car at certain points, and it has been 34 days since my claim started, and my cars is still not fixed, or delivered to the shop name that I provided over 2 weeks ago. I have a $1,300+ bill from **** ****** due to the neglect I've experienced in getting my situation resolved. I work for ****, and I won't be any longer after this experience. A 63 billion $ business such as **** should have ***** **** insurance, not the swindlers and stallers Known as James River Insurance company. If I can legitimately file a lawsuit for negligence and *********, I surely will. If you are dealing with James River, STAY ON THERE HEAD THE WHOLE TIME YOUR CLAIM IS BEING DEALT WITH, THE MINUTE YOU LET UP IS THE MINUTE THEY GET BACK TO DOING NOTHING TO HANDLE YOUR CLAIM. THESE PEOPLE ****. I mean every single thing I just typed to the fullest. **** DRIVERS BEWARE!!!!!!! They don't care about you or your car, and if your in a situation like mine don't expect them to care at all.



**J. J.**
★★★★★
09/15/2016

This company is terrible the worst customer service in their claims department, they never answer the phones & it typically took 1-2 days to respond to emails/voice mails. It's taking them almost 2 months to settle my claim..... which I'm still dealing with.



**J. B.**
★★★★★
08/10/2016

Horrible. I was hit by someone insured by James river insurance co. on my wedding week! Timothy B******* was the guy to over see my case. Took forever to answer my wife, waited for weeks to answer back. It wasn't until I kept calling and calling that I heard back from him, not answering phone calls, not returning phone calls, or voicemail, or emails. I went through to speak with his supervisor but she never answered back. After fighting so much to be heard out my situation was mediocrity solved. Unprofessional and definitely not customer friendly.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life. Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 51 -



**Eli D.**
Richmond, VA
13 friends
6 reviews
1 photo

⭐⭐⭐⭐⭐ 11/21/2018

this insurance company is a Joke! do not use them if you can avoid it. All of their insurance adjusters for the east coast are in Arizona, so you wont be able to talk to them until 10:30 in the morning.

I have never dealt with a more infuriating company in my life!

Cindy S. and 3 others voted for this review

Useful 4    Funny    Cool

**Kei D.**
Pasadena, CA
40 friends
1 review

⭐⭐⭐⭐⭐ 4/4/2019

THE. WORST.
No one wants to help. My claim/case has been passed to 6 persons now but no one can still help to approve and have my repair shop start the work. My car has been sitting unrepaired for THREE WHOLE WEEKS NOW.

Byron B. voted for this review

Useful 1    Funny    Cool

**C C.**
Las Vegas, NV
0 friends
12 reviews

⭐⭐⭐⭐⭐ 3/16/2019

This insurance company needs to be investigated by the authorities and forced to pay people they have screwed over. Absolutely a criminal fraudulent company.

Byron B. and 3 others voted for this review

Useful 4    Funny    Cool

**Emmanuel C.**
Poway, CA
129 friends
7 reviews

⭐⭐⭐⭐⭐ 4/10/2019

Thisbcompany has no full coverage. They dont cover a full coverage for the accident. I had an accident and they did not want to help with 75% of the cost! Please uber! Change your insurance!

Was this review ...?

Useful    Funny    Cool

**Andres S.**
Anaheim, CA
691 friends
123 reviews
78 photos

⭐⭐⭐⭐⭐ 2/20/2019

This company is a complete joke. I'm really sorry if you're involved in an accident, and have to deal with them. The customer service lady who I called was trash.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 52 -

**Carlos H.**
Lawndale, CA
36 friends
91 reviews
123 photos

⭐⭐⭐⭐⭐ 1/10/2018

**\*\*\*JAMES RIVER INS. NOT ACTING IN GOOD FAITH\*\*\***

I was hit by another uber driver on 12/27/2017.. I have pictures, audio of other driver, video from my dash cam, etc.

My side of the James river agent said based on all evidence I was not at fault.

The other James river agent for the other uber driver side said I was at 50% fault which is not the truth.

Many problems dealing with JAMES RIVER INSURANCE... THEY PLAY GAMES ..AT ONE Point I had to speak with a supervisor of (WHITNEY JOSEPH) the other claims person WHO IS ( LAURIE THOMAS) THIS SUPERVISOR LAURIE WAS EXTREMELY rude, unprofessional, and disrespectful. When I asked her for the name of her supervisor she refused... when I asked her for her supervisors phone number  she replied "my supervisor does not talk to drivers"

This call happened today 1/10/2018 at about 12:45 pm pacific time... I later called and spoke with a JENNIFER who gave me the name of that supervisors supervisor of " NANCY BETHSOLV" I HAVE LEFT HER A MESSAGE TO CALL ME BACK.

The other James river agent handling the other drivers side went from:  stating that her insured and passengers stated my car ran into hers.. after I produced video she changed to now it looks like I sped up and that's why she hit me.

I went as far as asking her to get a signed afidavid under penalty of perjury from the other driver and I would do the same...But she said no.

I WILL BE CONTACTING THE INSURANCE COMMISSIONER IN REGARDS TO JAMES RIVER INSURANCE COMPANY BUSINESS PRACTICES.

After all the proof.. THEY want to play the 50/50 game in hopes that I just give up. WOW I CAN NOT BELIEVE THIS COMPANY IS STILL OPERATING.

**Louis S. and 32 others voted for this review**



👍 Useful 31    😊 Funny 2    😐 Cool

**Kasem S.**
Norwalk, CA
4 friends
4 reviews



⭐⭐⭐⭐⭐ 5/21/2018

James River Insurance is the worst insurance company ever. I called and emailed my adjuster, this guy never call or email me back. I tried to called the other person who works for this company, but they don't wanna talk to me. They said " You have to call and speak to your adjuster only, then they transferred my call to my adjuster and nobody answer a call. I have never seen an insurance company work like this.

**Carlos H. and 10 others voted for this review**

👍 Useful 11    😊 Funny    😐 Cool

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 53 -



**Rob M.**
Glendale, CA
2 friends
93 reviews
27 photos

⭐⭐⭐⭐⭐ 7/11/2017

Here we go I was not surprised see all Negative Comments, This ruthless creatures Do Not Answer Your Calls contacted them 100x times(No Joke) they do not return your call. They are full of BS, Not to give ur exact estimate for your coverage I think I can gather a team to prevent this scam, negative, unprofessional, nonessential company to shut down! Please anyone who had issue with them contact me on yelp lets take this BS out of our city worthless piss of *****!

Cano S. and 35 others voted for this review

Useful 34 | Funny 4 | Cool 1

**Luke S.**
Chicago, IL
268 friends
34 reviews
4 photos

⭐⭐⭐⭐⭐ 2/15/2018

A morally bankrupt and criminally irresponsible company. I was struck by an UBER driver who admitted fault w/ a passenger in the vehicle while I was on my bicycle. I nearly died, smashed my head into the concrete. Driver admitted fault in front of the police, the passenger and 7+witnesses and these criminals are still denying the claim.

Cano S. and 20 others voted for this review

Useful 17 | Funny 3 | Cool 1

**Christopher L.**
Reisterstown, MD
122 friends
2 reviews

⭐⭐⭐⭐⭐ 3/23/2018

My vehicle is in the process of being repaired after it was hit from behind while I was driving in the vehicle. The other driver took off and left me to deal with this insurance company directly. My claims examiner, Jordan Tiamson, has been amazing and very responsive. So far they have cut two checks to the business that is doing the repair work to my truck. He has gone to extra mile to speak with witness's and have my deductible reduced from $1,000 to $250 because I was not at fault and the other driver fled the scene. I'm glad Jordan has been my examiner as he has made this horrible experience a lot more tolerable.

Teo G. and 14 others voted for this review

Useful 7 | Funny 8 | Cool

**Hana S.**
San Carlos, CA
0 friends
11 reviews
19 photos

⭐⭐⭐⭐⭐ 12/11/2018

If I could give this company a zero for customer service I would. Spoke to one of their reps, Jessica Yazzie, and she was absolutely terrible. I felt like I was talking to a high school girl who had the worst attitude. After trying to get in contact with her for a week via phone calls and emails and even calling her back up number with no response back, I finally get a hold of her. I'm already frustrated bc one of their drivers hit me a month ago and this has been dragging so when she tells me my claim hasn't even been finalized yet I of course get upset. SHE HANGS UP ON ME and has the nerve to chuckle about it and say when I'm calm I can call her back. Are you kidding me!? It goes on after I call back again but this is absolute terrible customer service and I hope this girl goes to some kind of behavioral school to get her act together, or grow up. She needs to be taken off the phone completely

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Brandon E.**
New Lenox, IL
♦♦ 81 friends
⬛ 27 reviews
📷 2 photos

 6/6/2017

My wife and I were in a crash while riding with Uber. I immediately reported the incident and a few days later a rep. from James River Ins. called to get details and whatnot. It seemed easy enough. She assured me they would be paying for any medical bills we incurred (my wife needs PT).

Everything was going well until our case was transferred over to their PIP department. I completed the paperwork the requested of me and called with questions. Our rep. has not returned one phone call or email (dating back to May 22nd). The supervisor hasn't returned a call or email. I called the supervisor's supervisor, but I'm not getting my hopes up.

They seem to play the "waiting game" hoping you'll give up. I'm a stubborn son-of-a-gun, so I can wait. Fortunately, we have the finances to cover up front costs, but for those who do not, the actions of James River Ins. are downright shameful.

I'm sure Uber utilizes their services because they were the lowest bidder, but unfortunately the poor practices of James River Ins. reflect directly upon Uber.

Cindy S. and 35 others voted for this review

⊗ Useful 35     ☺ Funny     ⊜ Cool 1

**Michelle P.**
Riverside, IL
♦♦ 37 friends
⬛ 30 reviews

⭐⭐⭐⭐⭐ 5/30/2017

I was in an accident with an Uber driver, which was his fault. He wrote on the police report that he had Allstate insurance, but when they found out he was on the clock for Uber when the accident happened, they said we would have to go through James River. What a nightmare.

First of all, they talked me into using their online app to document the damage. Big mistake. The app does not give you clear instructions about how to take pictures of the car, and if you can't find good lighting, the pictures do not clearly show all the damage. However, once you start the process, you can't start over. You can't delete any photos you take or stop the process and wait to finish another day when the lighting or location are better. Needless to say, the pictures did not capture the damage accurately.

The estimate we got from them was extremely low. We got estimates from 5 other insurance companies/body shops, and the James River quote was much lower than anyone else's by nearly $1,000. When I spoke to them about this, they said that they would cut us a check for the estimate amount to pay the body shop, and if that wasn't enough money, the shop could apply for supplemental money to cover the repairs. Yeah right. Our body shop said they've had a terrible time getting supplemental money from them for other repairs and would prefer not to work with them at all.

We've now filed with our own insurance company, but it will be a real pain for them to recoup our deductible from James River. At this point, we will never be able to get our car fixed.

Two lessons learned here: 1) try not to get into an accident with an Uber/Lyft driver, and 2) file a claim through your own insurance company, NOT James River.

 **Tony M.**
Lancaster, CA
👥 91 friends
📷 127 reviews
📷 2 photos

⭐⭐⭐⭐⭐ 12/31/2017

This is the Insurance Company used for UBER drivers that are involved in an accident. They will drag their feet to handle your claim so they can pay less for your car if its totaled. They will also low ball you with really low figures so they can pay less. If the accident is your fault as an UBER driver they will not pay any Medical Expenses, you will be on your own. Yes its true, this Insurance Company is not in the business to Pay Claims.

**Barbara W. and 14 others voted for this review**

 Useful 15     Funny    😊 Cool

---

 **Faraz P.**
Torrance, CA
👥 17 friends
📷 58 reviews
📷 1 photo

⭐⭐⭐⭐⭐ 4/10/2017

So I have to put this review up again because someone at James River insurance got my original post taken down. So here goes again. This is literally the worst insurance company in this country. They refuse to answer phone calls in a timely manner, and that includes the managers. They literally gave us no explanation on why we were at fault, (which our primary insurance and every other opinion we have gotten says it wasn't our fault) and they literally made the decision out of thin air. After calling for 3 days, we finally got ahold of Nathan Carrol, and he informed us that we were at fault, and literally shot down every question we had by saying his decision was final. That's it. Seriously, if you can avoid working with this insurance agency, you will be better off

-25/5 stars

**Nicholas F. and 25 others voted for this review**

 Useful 25     Funny 1    😊 Cool

---

 **Jamie G.**
Los Angeles, CA
👥 0 friends
📷 4 reviews

⭐⭐⭐⭐⭐ 8/21/2018

I was hit by an Uber driver back in Nov or 2017. The initial damages of my vehicle were not that much but when I tried to trade it in I found that there was in fact structural damage which caused a significant loss. I decided to pay a professional appraiser company to assess my vehicle and mailed in my demand to this insurance company. Their response was not even close. I am now going on a month of dealing with this and plan to write to the california insurance adjustor to see if they can help. This company is awful and does not care about your losses. They will put you through the ringer to attempt not to pay out.

**Cynthia A. and 4 others voted for this review**

 Useful 4     Funny 1    😊 Cool

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 56 -

## B2. The Competition Suppression Begins

100. Pictured below, and on the proceeding pages, Plaintiff chooses to launch iHug services exclusively on the Apple platform in 2016. Apple has the world's safest and most secure ecosystem, a perfect match for healthcare. Even after the death threats, and slanderous activity by Defendants ThreatOps Teams, after iHug launches, Defendants attempt to wrongfully imprison Plaintiff, and rob the American people of iHug's Official Rideshare for Healthcare Platform, a CPR and Basic Life Support certified rideshare. Plaintiff inspired thousands of people in Sacramento, California to help build iHug.

101. Pictured below and on the proceeding pages are snapshots of iHug's advertisements to execute his $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system in the future.








Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

# (i)Hug

## *Non-Emergency Care Rides*®
### "Safe, Courteous, On-Time and Clean"

**No Application Required**
**On-Demand Rides**

Also Available:
## Wheelchair Accessible Vans

- Periodontics
- Appointments
- Dialysis
- Chemotherapy
- Assisted Living
- Urgent Care
- Home Care
- Family Events
- Plastic Surgery
- Behavioral
- Memory Care
- Skilled Nursing
- Veterans

- Post-Surgery
- Prenatal
- Physical Therapy
- Colonoscopy
- Rehabilitation
- Discharges
- Medical Testing
- Religious Services
- Chiropractor
- Vision Appointments
- Prevention Screening
- Independent Living
- Seniors

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 59 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 60 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.



# Hug

## Wheelchair & Sedan Rides
### We connect you with a trusted transportation community

**ihugfamily.com**

| Book Online | Companionship | Book In-App |
| --- | --- | --- |
| Track your driver, book anytime, go anywhere. | It's simple, add wait hours one way/round trip. | It's as easy as 1, 2, 3. Download, book, ride. |

### Apple just approved iHug! The first ever wheelchair app.

- Medical Check-Up
- Dialysis & Rx Pick-Up
- Grocery Shopping
- Hospital Discharge
- Family Events
- Physical Therapy

Book a ride Online
ihugnow.com

Download on the App Store
ihugapp.com

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 63 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen. Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 64 -

A New Digital
Healthcare System

Seamless, On-Demand, Safe

Adam John Mackintosh—vs-–Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 65 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 66 -



Adam John Mackintosh—vs-–Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 67 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 68 -

102.  Pictured below and on the proceeding pages, you will see a community rally

together, in particular, **Plaintiff's Wife, who was happy, cheerful, energetic and full of life**, posing

in photos with everyone, who believed in iHug, a Company America and the world needed, it

was a safer rideshare than Uber and Lyft, and was tailored for healthcare.



## MAKING A DIFFERENCE IN OUR COMMUNITY! —

Life is precious, so we believe the dearest gift we can give anyone is robust healthcare. Celebrating people and their life, that is who we are. Helping people live healthier, live happier and live longer, that is what we do.

Adam John Mackintosh —vs— Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 69 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 70 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
-72-



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.



Adam John Mackintosh—vs-—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 74 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.



Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 77 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 78 -

**B3. Uber Orders Its Legal Team and ThreatOps To Engage Again**

103. Pictured below, while in the heat of unlawful anticompetitive tactics, Defendants continuously deleted Plaintiff's advertisements, unfairly competing and burning iHug's operational cash and investments.

| Removed | display | repost | We are the UBER for Healthcare - Earn Extra Cash $24-$70/hr!! | lax - ant healthcare receipt | 11 Apr 2017 15:12 |
| Removed | display | repost | We are the UBER for Healthcare - Earn Extra Cash $24-$70/hr!! | lax - lgb healthcare receipt | 11 Apr 2017 15:04 |
| Removed | display | repost | We are the UBER for Healthcare - Earn Extra Cash $24-$70/hr!! | lax - sgv healthcare receipt | 11 Apr 2017 14:58 |
| Removed | display | repost | We are the UBER for Healthcare - Earn Extra Cash $24-$70/hr!! | lax - lac healthcare receipt | 11 Apr 2017 14:51 |
| Removed | display | repost | We are the UBER for Healthcare - Earn Extra Cash $24-$70/hr!! | lax - sfv healthcare receipt | 11 Apr 2017 14:45 |
| Removed | display | repost | We are the UBER for healthcare! Earn extra cash! | sac healthcare receipt | 27 Dec 2016 16:22 |

104. Defendants had motive, as iHug was outcompeting Defendants using his "rideshare for healthcare model," offering a premium and superior service to Defendants taxi service, as iHug paid drivers 5x more than Defendants, the drivers were CPR and first-aid certified, background checks were performed twice a year, and the patient experience was trusted by healthcare leaders.

105. Plaintiff's Company, iHug, began transporting patients to Kaiser Permanente, Eskaton Village, Brookdale Senior Living, and other care organizations, who preferred iHug's premium service over Defendants taxi services.

106. Pictured on the next page and proceeding pages, is a fax from Uber Headquarters, to iHug, ordering cease and Desist, and iHug's legal defense.

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 79 -

06/07/2017 ████████          1415████████          → 1800609████          ☐ 1

# Fax *sent via* ████*fax.com*

**From**                              **To**
Uber IP Enforcement                   Legal Department

**Number of pages**
3

**Message**
Dear Legal Department,

Please see attached and respond to
████████@uber.com by June 15, 2017 indicating that
you have complied with our requests.

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 80 -

1415■■■■■                             → 1800■■■■■

# UBER

Uber Technologies, Inc.
■■■■■
San Francisco, CA ■■■■■
■■■■■@■■■■■

**June 7, 2017**

VIA Fax: (80■■■■■

VIA Email: ■■■■■

**Re: ihugpartner.com | Unauthorized Use of Uber Trademarks**

■■■■■

Uber Technologies, Inc. ("Uber") has recently been made aware of ihugpartner.com and, in particular, your use of Uber's trademarks to market your services. Specifically, you have been taking out Craigslist ads that market your business by stating "We are the Uber for Healthcare". See attached. As you know, Uber owns the popular Uber app, which enables authorized users to request on-demand services, including transportation services from independent third-party transportation providers.

In addition to owning and operating the Uber app, Uber owns several trademarks and service marks, including, but not limited to UBER. UBER is the subject of U.S. trademark registration no. 3977893. As a trademark holder, Uber has a duty to police and stop unauthorized uses of its trademarks. While we are flattered that you have chosen to use Uber's trademarks in relation to your unaffiliated services, Uber has not authorized such use and hereby requests that you remove any use of Uber's trademarks from your marketing, advertisements or elsewhere, and refrain from future use of the same.

Please respond to this message by **June 15, 2017** indicating that you have complied with our requests. If you have any questions, please feel free to reach out to the email address listed above.

Regards,

Uber Trademarks Team

---

## B4. Plaintiff Defends iHug and Healthcare Patients

107.    Pictured below, Plaintiff composed a rebuttal letter to protect iHug.

Uber *Technologies, Inc., 1455 Market Street, San Francisco, CA 94103*

*RE: Denial of frivolous claims and affirmative statement of iHug's rights*

*Dear Uber Trademarks Team, this letter is in response to your Unauthorized Use of*

*Uber Trademarks letter sent on behalf of iHug.*

**Denial of Uber's Claims**

*iHug denies each and every allegation set forth in your Unauthorized Use of Uber*

*Trademarks letter, including:*

*Specifically, you have been taking out craigslist ads that market your business by*

*stating "We are the Uber for Healthcare."*

**Affirmative Statements of iHug:**

*The following factors demonstrate iHug's use of the mark "the Uber for" does not*

*infringe or dilute Uber's mark Uber.*

*After a brief search on Google, the phrase "the Uber for," has become ambiguous*

*throughout the world in today's society.*

*The phrase "the Uber for," has many meanings and when people refer to "the Uber*

*for," they're not referring to the Uber brand, they are referring to an on-demand platform,*

*which has been adopted by millions of companies across the planet.*

*After speaking with local city, state and Government agencies, including investors*

*and businesses about iHug over the years, people almost always say, "Oh, this is like "the*

*Uber for Health Care," and/or, "this is just like Uber," without any prompt or mention of*

*Uber in the conversation.*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 82 -

*Furthermore, iHug is targeting the healthcare industry transportation sectors. We were not founded in the same competitive market as Uber, who's competing in the general taxi transportation market.*

*So, by Uber attempting to transition into the health care transportation sectors, Uber is crossing industry lines, an obvious mismatch of service and healthcare patient safety, whereas iHug holds precedence as providing safe transportation, responsibly. So, there may be indirect competition.*

*In addition, it is not illegal to compare ourselves to any competitor in the advertising context, so long it is not untruthful, disparaging, misleading, or confusing to the public. Additionally, we understand that the use of a competitor's trademark cannot lead the public to believe that the company is endorsing us which in this case we are referring to, "the Uber for," as a way of describing the same type of platform, not the same brand and/or company. This transitions into an additional trademark law. Courts have held that the use of a trademark where there is no attempt to capitalize on consumer confusion or the commercial cache of a certain brand would be acceptable. For example, a court found permissible AOL's effort to market to AARP membership with the following advertisement: "If you danced to the Beatles, cruised in a Thunderbird, or tuned into Dick Clark, you have earned . . . 100 hours free [Internet service on AOL]." Clark and Olive Enterprises, Inc. v. America Online Inc., 2000 WL 33535712 (C.D. Cal. 2000)*

*The premise for our argument is that we are marketing and/or advertising to medical providers, not, ordinary people and/or ordinary drivers.*

*These are people who are in the medical field, who have graduated from a university and/or trade college to provide non-emergency transportation and/or emergency transportation*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 83 -

*along with more services we will launch in the future.*

*There's a distinct difference that can be argued in the court of law, as to who we are marketing to and that we are marketing to different classes if you will, of people. We've attached proof both exhibit B for your review, that demonstrates we are still being approached by drivers through our ads who are with Uber and Lyft, as they are medical providers and see that iHug offers both services all-in-one if you will. In addition to their interest, the ad is new and does not refer to any company other than our brand name iHug, pay and the opportunity.*

*There is no confusion whatsoever.*

*We've attached proof exhibit C for your review, that demonstrates millions of people are seeing examples of the phrase, "the Uber for," that's been published by news organizations, blogs, tech organizations and others.*

*This further proves the phrase, "the Uber for," has become so ambiguous it's not confusing any brand and/or marks as almost always they are referring to the platform Uber uses and that platform has become ubiquitous throughout the world.*

**Similarity of Mark***: iHug asserts that our mark, iHug, is not similar enough to Uber to cause confusion. While the marks are not similar in any respects, they differ in the following ways:*

*a.   Consumers refer to iHug and have first to mind healthcare.*

*b.   Consumers refer to Uber and have first to mind taxi.*

*c.   Uber describes its mark as: (4) Standard Character Mark*

*d.   iHug describes its service mark as: The mark consists of the stylized wording "IHUG" with a lower case "I" inside a circle to the left of "Hug".*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 84 -

*e.   We assert that for the above reasons iHug is distinct from Uber.*

**Similarity of Goods/Similarity of Trade Channels:** *Uber is in the business of general transportation. iHug, however, is in the business of non-emergency and emergency transportation in the health care industry.*

*As our mark iHug is used in connection with such different markets and goods and services than those connected to Uber, consumers will not be confused as to the source of the sectors, goods and services in connection with either of our marks.*

**Consumer Care in Making a Purchasing Decision:** *Due to the expense and importance of iHug's and/or Uber's goods and services a consumer will take great care in choosing (our/your) product.*

*As a result, consumers will be less likely to be confused by the concurrent use of iHug and Uber as Uber is in the general transportation industry and iHug is targeting medical transportation which is a completely different sector.*

*This factor weighs in iHug's favor.*

**iHug's Intent:** *iHug vehemently denies that we made any attempt to misappropriate Uber's good will or to cause consumer confusion.*

**Dilution Claim:** *Additionally, iHug, asserts that Uber does not have grounds for a dilution claim. In order to succeed on a dilution claim, the plaintiff must show that their mark "is widely recognized by the general public of the United States and throughout the world per exhibit C.*

*Additionally, the mark iHug will not dilute Uber because the marks are distinct from each other, as noted above (if "Similarity of Mark." If Uber decides to take any litigious action (e.g., filing of any federal lawsuit, communication with the USPTO,*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 85 -

*proceedings under the UDRP, etc.), iHug demands that Uber include a copy, in its entirety, this letter and exhibits. In addition, iHug, further demands that if Uber takes any litigious steps that Uber provide proper service or a copy of such correspondence.*

**Conclusion***: For these reasons and others, iHug, has its own distinctive mark that does not dilute or otherwise infringe upon Uber's trademark. And, any claims to copyright infringement are denied based upon use of common jargon and expressions in the industry.*

108.   Pictured on the proceeding pages, you will see an overwhelming amount of articles and businesses who use "Uber for," making it ambiguous.

109.   Substantiating Uber and Lyft had their cross-hairs on iHug, while attacking in iHug and competitors alike in a militaristic flanking maneuver, allowing the monopolization of the transportation industry.

110.   The claim was frivolous and used to intimidate iHug, as iHug was first to market with Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity.

///

///

///

///

///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 86 -

The 'Uber for experiments' group Science Exchange raises $25M

by Bret Adams | Mar 24, 2016 7:43am

Science Exchange founder and CEO Elizabeth Iorns

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 87 -



**Uber for Fourth of July? Legislation expected Monday**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 88 -

# This Australian Startup Is The Uber For Freelancers





James Glancott, CONTRIBUTOR
... FULL BIO ∨



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 89 -

# Homee app is the Uber for finding a handyman

Don't Waste Your Money.

Adam John Mackintosh—vs—Lyft. Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 90 -







Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 91 -



## GoGoGrandparent: The Uber for the Older

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 92 -



**Tom Valenti**
CONTRIBUTOR

*Tom Valenti is the founding partner of [unclear]*

You should walk away from anyone who says there can be an "Uber for healthcare." It is the equivalent of someone saying they have a bridge to sell you." Or, more precisely, it shows a complete lack of understanding for how healthcare works and how positive health outcomes are actually achieved.

## Why do we keep hearing "Uber for healthcare"?

Generally, when one says "Uber for X,Y, or Z," what one really means is making something easy and convenient. Uber is an incredibly convenient service. "On-demand" services like Uber and Netflix have reached mainstream status, while entrepreneurs are cranking out new on-demand businesses for nearly every type of goods or service that touches our lives.

Today, I can watch more than 15,000 different streaming titles on Netflix while my personal chauffeur from Uber drives me around. The Jetsons could never do that!

Meanwhile, with healthcare, we have a very outdated and inconvenient system. We need to call a doctor 2 weeks in advance for an appointment, wait 30 minutes in a waiting room and then talk to a doctor for only 15 minutes while he types away on a laptop, only occasionally making eye contact with us. And, all of this for a huge cost that is growing at an unsustainable rate.

Thus, the U.S. healthcare system seems like the antithesis of easy and convenient. To us Average Joes who must deal with this unending frustration, we are begging to have healthcare "Uberized."

## Think different

Unfortunately, our desire to Uberize healthcare demonstrates a hole in our overall thinking.

What do I mean?

Uber and Netflix are successful because they have streamlined the time it takes to get a job done. Say you need a ride to the airport — no need to find a neighbor to drive you or hail a cab, just pull out your phone and someone will pick you up. In a sense, the friction or pain necessary to complete a transaction is removed.

On-demand services like these work great for individual transactions.

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 93 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 94 -

## 05 Medicast: Uber for doctors



When a medical concern comes you usually want an answer as fa possible. Instead of turning to G for advice or scheduling an appointment with your doctor d even weeks later, you can try M -- an on-demand service for real doctors willing to come to you. you make a request through the doctor will call you back within minutes to find out more about symptoms and will arrive within

Photo's /Gi ? livva Girn ? Getty Images.

hours. The service is pricey at $200 to $250 per visit not including additional but for emergency situations, it's certainly a useful option to have. More »

## 06 Washio: Uber for laundry and dry cleaning



Doing your own laundry and going out of your way to get to the dry cleaners can be a pain sometimes. Washio wants to simplify these basic household chores for you with its app that brings you someone to pick up your laundry and then drop it off back to you when it's done. Just tap your device to request a pickup any day of the week, make your service selections, and place your order. You'll

Photo's ousiOut magas/ Getty Images

get premium quality cleaning and save time by not having to do it yourself. More »

## 07 Seamless: Uber for local restaurant food



A lot of restaurants offer their o delivery services, but Seamless simplifies it by giving you more through all the local restaurant they've partnered with to bring fast delivery when you order th the app. Browse through menus reviews from thousands of rest for discovering new places or d your usual favorite cuisine. You even get right down to the deta

colorful photos: meal time specials and filter sorting before making your choi making your payment. More »

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 95 -

## 08   KangaDo: Uber for childcare



If you have kids, then you know how stressful it can be to juggle family and life at the same time. A service called KangaDo seeks to bring some relief your way through its app, which lets parents find carpool rides for their kids, set up childcare services, make playdates or just request help from someone willing to offer. You can chat instantly with trusted parents and caregivers who are interested in the same thing you are. Just post a request, and you'll receive a notification when someone accepts. More »

## 09   Plowz & Mowz: Uber for snow removal and lawn mowing





Whatever the season, yard work always has to be done if you own property. Plowz & Mowz wants to do it for you by letting you order on-demand snow removal or lawn mowing services from its convenient app. You can set a time and get a top-rated local professional to your house and get it done. Leaf removal is also an option in addition to the other customizable tasks you want done. Simply pay through the app, and patiently wait for a plow or mower to arrive. More »

**10   Canary: Uber for cannabis**

10 of 12



HatiDark/Getty Images

Perhaps one of the strangest and most controversial types of service that have sprouted from the "Uber for everything" trend is cannabis delivery. Canary is just one of the new startups offering it among a few others that have tried to make it happen. Currently in beta to use in the Seattle area, the app first asks you to snap a photo of your ID and medical cannabis authorization through the app first. After being verified, you can order flowers, edibles, concentrates and more from the vendor of your choice. Complete your order, and then track your delivery through the app as it makes its way to your door. More »

Adam John Mackintosh—-vs—-Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 97 -

# A Chicago Tech Startup Hopes to Be the "Uber For Race Photos"

**FlashFrame used amateur photographers at the Chicago Marathon to provide runners with a $6.99 photo option.**

By [author]

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 98 -

# Can Stuffstr become the Uber for stuff?

First thoughts
Thursday, August 11, 2016 - 2:11am





Lee Kaudys
Adjunct faculty, corporate sustainability University of Minnesota



1. BUY YOUR STUFF



2. USE AND/OR MAINTAIN IT



3. SWIPE TO GIVE

Recently, I wrote a post for Sustainable Brands where, among other things, I mused about the circular economy, touching on its generational aspects and also the notion that makers of things really don't have a good handle on what happens to their products in the post-purchase phase. Coincidentally, shortly after the post appeared, I was asked to test a new data platform created by Seattle-based IT corp Stuffstr that touched on these themes.

The experience brought me back to some work I was involved in roughly seven years ago when I was working on sustainability at Best Buy. It made me realize how little progress we've made in the intervening time. At the same time, I believe we're on the cusp of some fundamental, radical changes in societal consumption patterns that finally may tip the balance towards a more sustainable future.

**Trending**


The 2017 GreenBiz 30 Under 30


Hydrogen fuel finds a home in Hawaii


Lighting as a Service illuminates a path to corporate innovation


The blueprint to a low-carbon construction industry


Why sustainability reporting is all over the map





**04 Push for Pizza: Uber for pizza**

Photo © Fuse / Getty Images

Pizza is already one of the most common things you can have delivered to you, and while many restaurants offer online ordering options, Push for Pizza claims to be the absolute easiest way to order pizza. Its app is simple and intuitive to use for picking a local pizzeria near you, building your pizza with any toppings you want, entering your address and completing your payment. You don't even have to tip the delivery guy when he gets there. More »

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 100 -



# Is this increasingly popular teaching job the Uber for teachers?

BY KARINA GEDDY, REBECCA CRUTCHFIELD, AND SARAH GREGG
May 3rd, 2017

Three educators share their experiences teaching English to Chinese students on their own schedules and from their own homes.

Adam John Mackintosh—vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 101 -



## Pittsburgh Group Aims To Be The 'Uber Of Food Recovery'

January 10, 2017    By Kara Holsopple, The Allegheny Front

A nonprofit in Pittsburgh is pioneering what it's calling the "Uber of food recovery" — a new app that keeps excess food out of dumpsters and puts it into the hands of people in need. Kara Holsopple from *Here & Now* contributor **The Allegheny Front** reports.

*This segment aired on February 3, 2017.*

**Related:**

- The Allegheny Front: This Pittsburgh Group Is Pioneering The 'Uber Of Food Recovery'

Join the discussion

Adam John Mackintosh—-vs—-Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 102 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 103 -

# California's 'Uber For Weed' Plans Massive Expansion

Eaze, a medical marijuana delivery service, just raised millions in new funding. Now it's looking to expand the map of weed delivery destinations



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 104 -

# HOW GEOFORCE IS HELPING BUILD THE "UBER FOR THE OILFIELD"

Home » Blog » About Geoforce » Blog » How Geoforce is Helping Build the "Uber for the Oilfield"

Posted on March 30, 2017 by NATHAN HARKEY



A recent Houston Chronicle article reports on a rush in the Permian Basin to become the "Uber for the Oilfield". Being a native of West Texas that has spent heavily invested in operational technologies used in the Permian for over a decade, it truly got me thinking.

We've all been pulled into an infamous 'Corporate Planning Session' to discuss an upcoming systems integration project. When drawing up (what if) ideas, it can be easy to get far ahead of reality and what will actually work in the field. When designing new software or hardware, the list of variables seems to grow by the day, and integration partners are suddenly critical to everyone's success.



## Subscribe to our mailing list



Subscribe

## Recent Posts

- Employee Spotlight: Dan Schneidmiller
- Made Easy: How Was How Geoforce Service Verification Prevents "No Start / No Start" Dropouts
- Keep Abreast Geoforce: Appreciates the Internet of Things
- How Geoforce is Helping Build the "Uber for the Oilfield"
- Employee Spotlight: Kleter Biekiendorn

## Archives

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 105 -

**"I was meant to do this": The man behind the Uber-for-women startup talks female empowerment**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 106 -

111.   Not only did Uber threaten iHug with legal action, Uber suppresses businesses that describe themselves as the "Uber for" Women Empowerment, the "Uber for" Cannabis Companies used for chronic diseases, and other important businesses.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 107 -

112. Pictured below on the left, Uber attached an exhibit of iHug's "baby

advertisement," receiving an in-home health checkup by a registered nurse.

113. Pictured below on the right, Defendants delete the baby advertisement to

suppress competition.

 

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 108 -

## C. THE ULTIMATE MOTIVE AND BETRAYAL

114. After Plaintiff was lured into Defendants insurance scheme, he was introduced to Joe, who signed a nondisclosure, affirming he had no conflicting relationships.

115. Joe immediately began asking an astronomical amount of questions about iHug, suggesting he worked in operations as the Chief Operating Officer. During this time, Plaintiff fell in love, and **married in secret**, as his life was threatened at one point for starting and pursuing iHug. As well as, Jerry sabotaging iHug's software, and other fiery arrows that were being shot at Plaintiff.

116. Joe fabricated situations that would gain Plaintiff's trust, using his major skillset and educational background in sociology, even going to such lengths as offering to be at the Plaintiff's wedding as his best man. Only Joe, and Martha, Plaintiff's friend of 10 years knew they married.

117. Plaintiff eventually, through a course of human nature, opened up to Joe showing him corporate secrets, future business plans, highly valuable and world shifting ideas in healthcare.

118. Pictured below, Plaintiff, Joe, and Plaintiff's Wife, Alanna.

 

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 109 -

119.    After Joe learned about Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, which was only one extension of his greater digital Ai healthcare system, ran on artificial intelligence ("Ai"), **Joe contacted Defendants, placing even a bigger target on Plaintiff's back, unbeknown to Plaintiff, betraying Plaintiff's trust.**

120.    Plaintiff secretly stored the particulars of his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system in his trailer. Plaintiff made every effort beyond the protection of an originally manufactured equipment (OEM) trailer door lock, to secure his highly secretive six patent books relating to his digital Ai healthcare system.

121.    Plaintiff welded and constructed a **military grade locking system to protect his corporate secrets**. The military grade locking system consisted of:

- 1" inch stainless steel plated locking system on his trailer door.

- 1" inch steel plate was held together by 6 stainless steel bolts

- 6 self-locking nuts, fused together with LOCTITE® Thread locker

- 1" inch stainless steel latch

- A maximum-security lock, with tough-cut octagonal boron-carbide shackle stainless steel, making it extremely difficult for any common criminal to break into.

122.    As described in the proceeding section, video evidence establishes Plaintiff's trailer was broken into.

123.    Plaintiff used to be homeless, living in the trailer where he founded iHug, where he stored all his patent books, thumb drives, sketch books, and note books.

124.    Plaintiff was the only person with access to the trailer.

125.    Joe was the only other person who knew where the particulars of the $25,800,000,000,000 trillion-dollar new digital Ai healthcare system was located.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 110 -

126.    Pictured below, Plaintiff's custom "military grade" locking system.

Maximum security lock                                    1" inch thick steel plating and bolts.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 111 -

## D. DEFENDANTS ATTACK FIRST LAUNCH DATE - SOFTWARE

127.    Pictured below, Plaintiff's Wife draws out an indisputable timeline outlining a few of the attacks on Plaintiff and iHug. Where iHug was silently infiltrated, compromising all internal systems, corporate secrets, business plans, and trade secrets, that allowed Defendants to unlawfully inflate their valuation, prior to Defendants' IPO:



128.    On April 13, 2017, after Plaintiff was lured into the insurance scheme, where an Agent introduced Joe to Plaintiff. Joe joined iHug and learned about Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars.

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 112 -

129.    On June, 26, 2017, *less than 2 months after* Joe colluded with Louis, John, Jerry and Does, a secret Facebook Group was created, unbeknownst to Plaintiff. Defendants' secret Facebook group allowed Joe, Louis and Does to post, "driving in San Francisco, California," at specific dates and times, making Uber and Lyft Executives aware when to meet in person, to covertly operate, handing them their burner phones that were loaded with iHug's internal systems.

130.    Pictured below, the Facebook group creation date.



131.    Pictured below, James Diaz Panis, "James," a Lyft Employee, was invited to the group *1 day after* the creation date, that was supposedly <u>only for "Lyft and Uber drivers."</u>



132.    Pictured below, another Lyft employee, Marcus D Weemes, "Marcus," an Operations Specialist at Lyft, was added to the group *the same day* as James. Several other hand-selected executives from Lyft and Uber are also members of the "driver only" group.




---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 113 -

133.   On July 4, 2017, *less than 6 days later*, after Plaintiff announced iHug's launch

date on Facebook, Jerry spoiled Plaintiff's launch day by sabotaging the software.



iHug 🔍 Adam H

**Page**    Inbox    Appointments    Notifications    Insights    Publishing Tools    More ▾

👍 Liked ▾    🔊 Following ▾    ➔ Share    •••



🛈 **iHug**
Published by Adam John ⋯ · July 2, 2017 · 🌐                        •••

A MESSAGE FROM OUR FOUNDER:

Dear iHug Family,

I want to personally thank you for your unconditional love and support. I would also like to thank our team, our board, our interns, and our providers here at iHug. We've all put a piece of our creativity, our hearts and our time into iHug. iHug is an extension of ourselves. Our team has been burning the midnight oil for years, and it's been an experience of a lifetime.

We believe we've created something truly special, something that has the potential to change the world forever. It's a tool for your health--something that anyone can use, anywhere--and for the first time in history, technology will empower us all to have an intimate relationship with our health. When you can touch people's lives through technology, the possibilities are endless. We saw it happen with Apple, and it's what makes iHug so special. It's like nothing you've experience.

I am honored to announce our official launch date for the iHug iOS App is July 4, 2017, a date that calls to mind our pursuit of happiness, because without our health, we can't pursue our dreams. iHug will deliver health care to everyone, anywhere.

We are launching on the Apple App Store, we encourage you to join the Apple Upgrade Program if you don't have an Apple product, and purchase or upgrade. You may also use your iPad or iPod Touch.

Thank you all for your time, and together, lets put another dent in the universe, and make Steve Jobs proud.

With Love,

Adam

Apple Upgrade Program Link:
https://www.apple.com/shop/iphone/iphone-upgrade-program

iHug App Link:
https://itunes.apple.com/us/app/ihug-partner/id1165836620...

**iHug**
@ihugfamily

Home

About

Photos

Videos

Posts

Community

Reviews

Services



Manage Promotions

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 114 -





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 115 -

### D1. A Silicon Valley Scheme Exists

134.    Pictured below, Plaintiff's Wife sketched out the scheme as Plaintiff gathered enough evidence to substantiate the theory based on all proceeding paragraphs of this Complaint.



135.    On July 20, 2017, **16 days after** Jerry sabotaged iHug's Software, Jerry continued to betray Plaintiff, who met with Andreessen to receive further instructions, unbeknownst to Plaintiff, breaching fiduciary duty, causing irreparable damages, as Andreessen was investor in Lyft, iHug's competitor. It's alleged, Andreessen has instructed Jerry for years to sabotage startups, in particular, iHug. By misappropriating Plaintiff's operational cash, sabotaging his partnerships and software, while gaining corporate secrets in order to cripple iHug.

136.    When Plaintiff asked Jerry why he was at Andreessen, Jerry stated he was "pitching other projects," and stated he made new "friends," whereas in fact, he already had a relationship with

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 116 -

1
2
3
4
5

Andreesen, and sent this text to Plaintiff to cover. Proving the Silicon Valley scheme exists. A similar behavioral pattern displayed in the proceeding sections of this Complaint, in particular, when John met with Tahoe, who then said, "My friend is asking about iHug." Jerry met with Andreessen when he had access to Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity.

6
7

137.    Only *14 days later* after Jerry's wrongdoing, he displayed very unusual behavior at an event iHug participated in, supporting Seniors with Alzheimer's Disease.

8
9

138.    Pictured below on the left and right, Jerry sent a text message to Plaintiff and attached photographic evidence of his presence at the Andreessen office.

10
11
12
13
14
15
16
17
18
19
20




21
22
23

139.    Pictured below, Lyft Co-Founder, Logan with Lyft's Director, Investor and Co Founder of Andreessen, Ben, who owns 15 million Lyft shares.

24
25
26
27
28



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 117 -

140. On September 15, 2017, after Jerry met with Andreessen, he made it a priority to suddenly be at the iHug office. He displayed guilty and odd behaviors when photos and videos were being taken of team members.

141. Pictured below on the left, a photo of Jerry hiding his face at a golf tournament iHug participated in, benefiting seniors with Alzheimer's. Pictured below on the right, a photo of Joe and Jerry communicating while they thought they were not on camera.



142. On September 15, 2017, *the same day,* pictured below, video screenshots of Jerry continuing to hide his face, while everyone was asked to smile and wave. Plaintiff also caught Jerry taking photos of corporate material late at night at the iHug office, *the same week*.



Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 118 -

143.    Pictured below, a different angle, *a few seconds later*, Jerry still hid his face.



144.    Video evidence: https://www.dropbox.com/s/ly5548a1jj90bjp/IMG_1274.MOV?dl=0

145.    Pictured below, on September 1, 2017, *2 weeks prior,* a group photo taken outside iHug's office. The iHug Drivers, Plaintiff's Wife, and Does holding iHug's decal. Jerry was the only one that <u>refused to hold an iHug decal</u>, as he was aware of his wrongdoing.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 119 -

146. Plaintiff alleges Jerry colludes with Andreessen, who instructs Jerry to target competitors to its current investments. Jerry then infiltrates the startup, misappropriates their investments, and corporate secrets, while sabotaging the software, crippling the startup. Jerry then hands of the corporate secrets and knowledge to Andreessen, who then uses the misappropriated corporate secrets received by Jerry to inflate the valuations of their current investments, unjustly enriching themselves without legal entitlement, destroying young entrepreneurs' dreams and lives, who could've positively impacted the world. Pictured below, the scheme exists.




147. Pictured below and on the proceeding pages, are screenshots of some of the startups that Jerry infiltrated and crippled. Each company's software was sabotaged.

```
://ihug-backend.herokuapp.com/keystone/signin
```

Application error

An error occurred in the application and your page could not be
served. If you are the application owner, check your logs for details.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 120 -







Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 121 -



## This site can't be reached

**www.3weeksmvp.com**'s server IP address could not be found.

DNS_PROBE_FINISHED_NXDOMAIN

Reload



## This site can't be reached

**www.ar-world.co**'s server IP address could not be found.

DNS_PROBE_FINISHED_NXDOMAIN

Reload

## Your connection is not private

Attackers might be trying to steal your information from **www.valleywag.com** (for example, passwords, messages, or credit cards). Learn more

NET::ERR_CERT_COMMON_NAME_INVALID

☑ Help improve Safe Browsing by sending some system information and page content to Google. Privacy policy

Advanced

Back to safety

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.



148. Pictured below, Empathy Transportation Services ("Empathy") website and local non-emergency medical transportation company that was infiltrated by Defendants. Plaintiff substantiates this allegation in this Complaint, in the proceeding paragraphs.

Adam John Mackintosh—vs—-Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 123 -

149.    It's alleged Jerry also intentionally targets victims through online forums (Craigslist, AngelList, Email, Telegram, etc.) as "points of compromise," where, startups publically post their software requirements to build their businesses.

150.    Jerry engages in manipulative and misleading statements to defraud startups and their investors, as Jerry knows startups receive an abundance of cash. Jerry appears to have a fraudulent scheme that methodically defrauds victims through trickery.

151.    Pictured below, Jerry tells Plaintiff to turn off Craigslist and switch to email.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 124 -

152.    Pictured below, screenshots from a video conference call between Plaintiff

and Jerry, where he smirked, and smiled several times in "criminal fashion," every time Plaintiff

mentioned iHug could fail because of the software. Jerry also admits to using Zendesk to ***draft*** tickets

of software issues that he can view, substantiating the proceeding allegations regarding Defendants

Zendesk scheme, where Zendesk is used a tool to misappropriate corporate trade secrets without a

trace.





Adam John Mackintosh — vs. — Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 125 -

153.    Plaintiff cites the following case law in support of this Complaint relating to Jerry:

154.    *United States v. Briscoe, 65 F.3d 576, 583 (7th Cir. 1995) (citing United States v. Ames Sintering Co., 927 F.2d 232, 234 (6th Cir. 1990) (per curiam)); United States v. Frey, 42 F.3d 795, 797 (3d Cir. 1994)* (wire fraud is identical to mail fraud statute except that it speaks of communications transmitted by wire);

155.    *United States v. Profit, 49 F.3d 404, 406 n. 1 (8th Cir.)* (the four essential elements of the crime of wire fraud are: (1) that the voluntarily and intentionally devised or participated in a scheme to defraud another out of money; (2) that it did so with the intent to defraud; (3) that it was reasonably foreseeable that interstate wire communications would be used; and (4) that interstate wire communications were in fact used)

156.    *United States v. Hanson, 41 F.3d 580, 583 (10th Cir. 1994)* (two elements comprise the crime of wire fraud: (1) a scheme or artifice to defraud; and (2) use of interstate wire communication to facilitate that scheme);

157.    *United States v. Faulkner, 17 F.3d 745, 771 (5th Cir. 1994)* (essential elements of wire fraud are: (1) a scheme to defraud and (2) the use of, or causing the use of, interstate wire communications to execute the scheme)

158.    *United States v. Cassiere, 4 F.3d 1006 (1st Cir. 1993)* (to prove wire fraud government must show (1) scheme to defraud by means of trickery, (2) knowing and willful participation in scheme with intent to defraud, and (3) use of interstate wire communications in furtherance of scheme);

159.    *United States v. Maxwell, 920 F.2d 1028, 1035* (D.C. Cir. 1990) ("Wire fraud requires proof of (1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme.").

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 126 -

160.    Photographic, financial and circumstantial evidence, establishes Jerry successfully carried out Andreessen's instructions, who misappropriated approximately $80,000 dollars in cash from Plaintiff, iHug and its investors. Pictured below, and on the proceeding pages, receipts, wire transfers and deposits paid to Jerry by Plaintiff for iHug's software that was never completed and sabotaged.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 127 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen. Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 129 -

1     161.    Pictured below, Jerry reveals brand new furniture, and the million-dollar

2 neighborhood he allegedly lives in.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 130 -

162.    Pictured below on the left, Jerry misrepresents himself on LinkedIn as an

"entrepreneur," whereas it's substantiated, his "job" is to sabotage startups and unlawfully

misappropriates cash, and unjustly enriches Defendants, who have no legal entitlement.

163.    Pictured below on the right, Jerry sends Plaintiff a text message, claiming he is being

sued for $20,000 dollars, and he needs to pay or he has to attend court. He pressures Plaintiff for

more cash, where he uses that cash to pay off his previous "victim," **in order to evade the law, while**

**continuing to sabotage Plaintiff's software, and others.**



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 131 -

164.   Pictured below you will see Richard's website, 70MillionJobs. Jerry is attempting to defraud another victim while misappropriating iHug's investment, sabotaging software and misappropriating Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 132 -

165.    Pictured below, while Jerry was sabotaging iHug's software, and misappropriating approximately $80,000 from iHug, he targets another victim, attempting to misappropriate $100,000.



From: Richard [        ] 70millionjobs.com> (Add as Preferred Sender) @
Date: Mon, Aug 28, 2017 9:12 am
To: iHug [        ] @ihug.healthcare>

On Fri, Aug 25, 2017 at 2:40 PM, iHug Healthcare [        ] ihug.healthcare> wrote:
Hello Richard, my name is Jerry.

I'm a currently freelance consultant/producer/developer here in Cupertino. I've been working in the tech/internet industry since winning a web design contest at 13 back in 1997.

I dev in full stack web and iOS and chat bots. From ideation to design to Python to Javascript to deployment to maintenance. Prior I've worked at companies like Apple, Google, various startups in between, and now helping startups get up and running.

Prior to that I served as marine combat engineer.

The mission resonates deeply with me as my brother is one of the 70 million. Recovering from a criminal offense on his record, my family and I went through the process understanding how discriminating and intimidating and limiting that was.

I've built job board sites before, have digital marketing experience, can serve as tech lead to get things done.

I'm based in Cupertino, worked in SF and Oakland/Berkeley. Back in the bay area next week and we can set up a coffee/call.

Best,
Jerry

All together, in experience, it's a 6 months project with 3 devs (contract best instead of FTE until it's possible to make 2yr commitment to them) for a budget of $100,000 for the 6 months.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 133 -

166.    After Ben received Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity from Jerry on July 20, 2017, its alleged Ben needed more details on ways to inflate his vested interest in Lyft who had an upcoming IPO.

167.    On July 31, 2017 at 12:50AM, *11 days after* Jerry met with Andreessen, Joe logged into an iHug's Zendesk systems to "test different methods" to misappropriate iHug's competitive and corporate trade secrets, averting a digital footprint.

168.    Joe was able to successfully draft a Zendesk ticket and attach a file, one of many "ThreatOps," tactics used by Defendants in the past, to remain covert while misappropriating competitive details and intelligence, without a trace.

169.    See case *Waymo–vs–Uber–Case#3:17-cv-00939-WHA, further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley by attempting to "shroud" them with attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client 3 See https://www.wickr.com/security. 6 Case 3:17-cv-00939-WHA Document 2401-1 Filed 12/15/17 Page 6 of 37 privilege" on documents, they would be immune from discovery.*

170.    Joe's method to use "draft" features to misappropriate corporate secrets worked, breaching his fiduciary duty and non-disclosure agreements, in particular:

"*Recipient acknowledges, that monetary damages may not be a sufficient remedy for damages resulting from the unauthorized disclosure of Confidential Information, and that the Company shall be entitled without waiving any other rights or remedies, to seek such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction. In the event any third-party, who has direct or indirect connection with Recipient involved in monetary damages that are a result of continuing to disclose unauthorized Confidential Information,*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 134 -

*the Company the full rights and entitlement to seek such injunctive or equitable relief as may*

*be deemed proper by a court of competent jurisdiction.*"

171.    Pictured below on the left, Joe admits Lyft also uses Zendesk, a system Jerry setup for iHug. Pictured below on the right, Joe drafted a new Zendesk ticket at 12:50AM in the morning, allowing the misappropriation of Plaintiff's corporate secrets.

| | |
|---|---|
| and a great day, Josef!<br><br>All the best,<br><br>Joey<br>Lyft Support Representative<br><br>This email is a service from Lyft. Delivered by **Zendesk**<br><br>Look who else uses Zendesk | **Mobile App User**<br>Jul 31, 00:50 MST<br><br>This comment has been flagged.<br>test user goes here<br>Attachment(s)<br>Attachment_2017–07–31T( |

172.    On July 31, 2017, at 1:33PM, ***after staying up all night***, Joe inadvertently sends Plaintiff a text message stating, "Your not gonna believe this!!!!!!! But I'll tell you in person. Lol," after "testing methods," to misappropriate Plaintiff's corporate secrets.

173.    The text was intended for Louis, who was hosting a Lyft meeting that evening, comprised of Lyft and Uber Employees, including Tahoe Mike, ("Tahoe").

174.    It's believed Joe was excited to tell Louis his "test methods" worked, using a "Zendesk ticket draft," in order to misappropriate iHug's new $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars.

175.    Pictured on the next page atop on the left, Joe's text message.

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 135 -

176.    Pictured below in the middle and right, snapshots from the meeting.

  

177.    On August 1, 2017 at 4:04PM, *the same day*, Joe sent Louis, a Roseville, California resident, iHug's admin login details to Zendesk.

178.    A login was detected from a "new device" in Roseville, California.

179.    At 4:09PM, *5 minutes after* the first unauthorized login, geolocation evidence establishes a login from another "new device" in San Jose, California. iHug had no team members in San Jose, California.

180.    Pictured below on the left and right, Zendesk alerts Plaintiff "new devices" logged in from Roseville and San Jose, California.

| | |
|---|---|
| **Sent:** 8/1/17 4:04 pm<br>**To:** ⬛⬛ihug.⬛ | **Sent:** 8/1/17 4:09 pm<br>**To:** ⬛⬛@i⬛⬛ |
| **Zendesk sign-in detected from a new device** | **Zendesk sign-in detected from a new device** |
| **Hi iHug Partners,**<br><br>It looks like you signed into your Zendesk account using a new device on Aug 1 at 16:04:<br><br>• **Location:** Roseville, United States<br>• **IP:** ⬛⬛ | **Hi iHug Partners,**<br><br>It looks like you signed into your Zendesk account using a new device on Aug 1 at 16:09:<br><br>• **Location:** United States<br>• **IP:** ⬛⬛ |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 136 -

181.    Pictured below, forensic network and geolocation evidence establishes the unauthorized login was made within a few miles from Defendant's "satellite offices" in San Jose, California. Plaintiff alleges Defendants strategically use satellite offices or "hubs" in a military fashion, to covertly operate.

| Geolocation data ████████████████████████ 1) |  |  |  |
|---|---|---|---|
| **IP Address** | **Country** | **Region** | **City** |
| ████████ | **United States** ▓ | **California** | **San Jose** |

182.    Defendants used "non-attributable" hardware and software, in which intelligence collection operations were in full effect, as outlined in Jacobs letter in a case *Waymo–vs–Uber*.

183.    This act caused iHug irreparable damages, allowing Defendants, who are large, fully-scaled corporations to start mobilizing, using iHug's competitive ideas, plans, secrets and other materials, suppressing iHug, unjustly enriching Defendants without legal entitlement.

184.    On August 1, 2017 04:17PM, *8 minutes after* the unauthorized logins from Roseville and San Jose, California, Joe asked Plaintiff for Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity.

185.    On August 1, 2017 04:20PM, *3 minutes later*, Plaintiff sent Joe the $1,200,000,000,000 trillion-dollar healthcare opportunity.

186.    After Joe received the $1,200,000,000,000 trillion-dollar healthcare opportunity, through email, he downloaded the file and then drafted a new Zendesk ticket, much like a "Google email draft," attaching Plaintiff's healthcare opportunity.

187.    Joe then closes Zendesk, allowing Lyft, Uber and Andreessen Executives to access his draft and download Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity.

188.    Defendants who were already logged in from remote locations *minutes prior*, were

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 137 -

able to swiftly navigate to Joe's drafted ticket, and download Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, clicking discard draft, averting any digital footprint of Defendants ever receiving the $1,200,000,000,000 trillion-dollar healthcare opportunity. This substantiates Plaintiff's allegations herein, in particular, Defendants have violated the Trade Secrets Act of 2016, and Economic Espionage Act, specifically:

189.    The Economic Espionage Act of 1996, as amended by the 2016 Defend Trade Secrets Act, makes it unlawful to misappropriate and steal trade secrets. Defend Trade Secrets Act, Pub. L. 11 4- 153, § 2(b)(l), 130 Stat. 376 (2016). This statute is extra-territorial in scope. "Trade secrets" under the Economic Espionage Act, as amended, is broadly defined and includes "all forms and types of financial, business, ... technical, economic, or engineering information, including patterns, plans, compilations, methods, techniques, processes, procedures, programs, or codes," if the owner

> (1) has taken reasonable measures to keep such information secret and
>
> (2) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

190.    "Misappropriation" includes but is not limited to "the acquisition of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means." It also includes the disclosure or use of a trade secret of another without express or implied consent by a person who:

> (1) had used improper means to acquire knowledge of the trade secret or
>
> (2) had reason to know that the knowledge of the trade secret was derived from a person who had used improper means to acquire the trade secret or from a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 138 -

limit the use of the trade secret.

191.   "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a duty to 10 Case 3:17-cv-00939-WHA Document 2401-1 Filed 12/15/17 Page 10 of 37 maintain secrecy, or espionage through electronic or other means."

192.   These definitions hew closely to other trade secrets laws, including the California Uniform Trade Secrets Act. Cal. Civ. Code § 3426, et seq. One is liable if, among other things, one:

> (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret;
>
> (2) without authorization copies, duplicates, downloads or uploads a trade secret; or
>
> (3) attempts or conspires with one or more persons to commit engage in such conduct.

193.   Like the Uniform Trade Secret Act, the California Uniform Trade Secrets Act prohibits "misappropriation" of trade secrets and provides certain remedies. In addition, California law also allows for penalties for stealing trade secrets…

Cal. Civ. Code § 3426, et seq; Cal. Penal Code §§ 499c, 502.

194.   Pictured below on the left, Joe admits the "Lyft team" calls him directly, during late hours of the night. Pictured below on the right, a text message from Joe asking for the pitch deck, that entailed details of Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 139 -

195.  Pictured below, an email to Joe from Plaintiff containing the

$1,200,000,000,000 trillion-dollar healthcare opportunity.



196.  Pictured below, one of many slides contained in Plaintiff's

$1,200,000,000,000 trillion-dollar healthcare opportunity.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 140 -

197.     On August 2, 2017, at 12:35PM, ***the next day***, Tahoe meets with John at a Lyft Hub. In a calculated effort to remain covert, it's alleged John instructed Tahoe and Joe to message each other about iHug for the first time, in order to conceal Joe's involvement in misappropriating Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity to John, Lyft, and Does ***the night prior***. This similar behavioral pattern was made when Jerry met with Andreessen, in a cover up.

198.     Pictured below on the left, Tahoe messages Joe, while meeting with John, his "friend," at a Lyft "Hub." Pictured below on the right, all parties mentioned herein are factually associated.




199.     Pictured below, Tahoe and "his friend," John at the Lyft "Hub."



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 141 -

200. On August 2, 2017, at 12:46PM, *ten minutes later*, in a premeditated effort to conceal any wrongdoing, Joe texts Plaintiff that Lyft Headquarters just noticed iHug for the first time, covering up the fact that he misappropriated iHug's corporate secrets *hours prior*.

201. Pictured below on the left, Joe sent Plaintiff a text message stating he is taking the "day off" from iHug on August 2, 2017 *the same day* Tahoe Mike was meeting with "his friend" John. Pictured below on the right, Joe's text to Plaintiff. It's alleged, during this time, Joe was on airplane mode, hiding his internet protocol and geolocation to remain covert, while with John.




202. In an act to further entrench a cover up, and conceal John's involvement, its alleged Tahoe posted the meeting with John *the next day* on August 3, 2017, stating, "Met john today."

203. Photographic and circumstantial evidence, indefensibly establishes, another Lyft employee revealed the meeting actually took place at the same Lyft "hub" on August 2, 2017, further proving the "friend" he was asking for, was John.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 142 -

204.    Pictured below on the left, Tahoe strategically posts he met John on August 3, 2017.

Whereas, photographic evidence establishes, James posts he and Tahoe Mike met John on August 2,

2017, the *same day* Joe took off from iHug as pictured below on the right.





205.    Pictured below on the left, the photo took place on August 2, 2017 not August 3, 2017.

Pictured below on the right, Louis with James, a connected party to John.





206.    Not only does Louis work in concert with Lyft Executives while engaging in unlawful

conduct, he also meets with Uber Executives, where recordings are prohibited.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 143 -

207. Plaintiff argues, the secret insurance scheme, and its Drivers, have allowed Uber and Lyft to suppress competition, while giving instruction to their "Ambassadors," in order to continue their monopolization of the TNC industry.

208. Pictured below on left, Uber's Public Affairs Manager, Austin Heyworth, ("Austin") LinkedIn Profile. Pictured below on the right, Louis meeting with Austin.



**Austin Heyworth** • 2nd
Public Affairs Manager at Uber
Uber • UC Davis
Sacramento, California Area • 500+ 



209. Pictured below on the left, Louis hosts a meeting with Uber Executives and Drivers. Pictured below on the right, all recordings are prohibited, which raises suspicion.



**Louis Pritchett** is with Paula Harris-Walton
Admin · October 8, 2018
Uber In The house, hurry come as you are.



👍 Like          💬 Com

more comments
**Dan Sifu** Someone record his audio
Like · Reply · 30w
**Louis Pritchett** ⚫ No, you needed to be there

210. On September 1, 2017, *1 month later*, Joe and Jerry continue to engage in corporate sabotage, causing irreparable damages to iHug. Jerry and Joe asked Plaintiff to attend iHug's important meeting with Chief Innovation Officer ("CIO") of the City of Sacramento. The meeting was to ensure the City of Sacramento would utilize iHug's new transportation platform.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 144 -

211.    Unbeknown to Plaintiff, Joe and Jerry intentionally sabotaged the meeting by declaring iHug's software was not ready to transport riders, while Joe repeatedly did not answer questions the CIO asked. Pictured below, Plaintiff's proud email to the CIO, outlining the partnership with the City of Sacramento. After the meeting, the CIO never responded to Plaintiff.



Good Evening Mr. Louis,

I hope our team successfully conveyed our SaaS Software-As-A-Service platform to assist you in addressing the Mayor's initiatives. As you know it's been proven that by using SaaS On-Demand platforming, much like Uber/Lyft (Taxi Industry) through mobile application and/or web interface, transportation costs drop significantly. We're using that same proven concept to open up access for curb-to-curb NEMT (Non-emergency medical transportation) and WAV (wheelchair accessibility van) rides (Healthcare Industry).

I believe iHug can alleviate the bottlenecking and monetary losses the City of Sacramento is having to face by contracting with us. We can address multiple areas of transportation and bottlenecking such as Paratransit, County Hospitals, the Sacramento Fire Department, 911, 311, and other entity transportation service requests.

If you could send us an MOU (Memorandum of Understanding) that iHug is willing to develop software to orchestrate scheduling and automation of transportation as a contractor to the City of Sacramento for Paratransit, County Hospitals, the Sacramento Fire Department, 911, 311, and other entity transportation service requests. This can be our first step together. Then we can meet with the stake holders and leaders in those areas in an effort to accomplish the mobility initiative.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 145 -

| | Reply | Reply to All | Forward | Delete | Purge | Mark as Spam | Move to Folder ☑ | Move |
| | | | | | | | More Actions ☑ | Apply |

**Search Results**
(Options) (Edit Search Parameters)    Display  **40** ☑    324 Messages    Page **1** ☑ of 9  ›

| ✔ | Folder | Fr | Subject | Date | ▼ | Size |
|---|--------|----|---------|------|---|------|
| ☑ | Inbox | / | Re: i... | 09/01/2017 5:52 pm | | 12 k |

**Preview** | Reply | Reply to All | Forward | Delete | Print | ☒

Lastly, if there's a possibility that we can obtain a larger office space through the City of Sacramento and/or affiliate as an incubator space. We can form a collaborative relationship with you and the Mayor where we can tackle the first initiative (mobility) through iHug's on-demand virtual fleet. At that point, iHug can lead the charge in creating a digital-hub in Sacramento to attract great technology and talent for economic growth which will enable us to address and accomplish at least 5 out of the remaining 7 initiatives.

I look forward to your reply.

With Gratitude,

Adam John | *Founder, Chairman and Chief Executive Officer*
P: 650.▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮thcare

*"The things we think are hard to do in life, are just hard to start."*

**CONFIDENTIALITY NOTICE:**
*The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 146 -

212.    Pictured below, photographic evidence of Joe and Jerry with the CIO, Louis Stewart, ("Louis 2"). Plaintiff's Wife attended the meeting with Plaintiff's VP of Strategy and Governance. She observed Joe and Jerry, as she knew Jerry was misappropriating from iHug. She made them take a photo as evidence of their presence at the meeting.



213.    On September 10, 2017, *9 days later*, Plaintiff and his Wife discovered forced entry and damages to his trailer. The military grade lock was cut, establishing it was a planned attack. Plaintiff stored books of drafted patents of his $25,800,000,000,000 trillion-dollar new digital healthcare Ai system particulars, and execution plans and other strategies in the trailer.

214.    Joe knew Plaintiff used to live in his trailer for months at a time, coding the iHug app, storing artifacts relating to iHug, see *Waymo–vs–Uber–Case#3:17-cv-00939-WHA*, in particular, unlawful gathering of corporate secrets.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 147 -

215.     Video, and direct circumstantial evidence substantiates Plaintiff was under corporate attack, in particular, there was forced entry into Plaintiff's trailer. Pictured below on the left, an image from the video, establishes the thumb drives, sketch books, note books, and in particular, Plaintiff's patent books relating to his $25,800,000,000,000 trillion-dollar digital Ai healthcare system plans were misappropriated, leaving parts of the shelf empty.

216.     Pictured below on the right, Plaintiff's Wife pointed to the broken latch, proving forced entry. Indisputable video, circumstantial and direct evidence substantiates Defendants violated The Economic Espionage Act of 1996, the 2016 Defend Trade Secrets Act and California Uniform Trade Secrets Act. Cal. Civ. Code §3426, et seq., and violation under federal law 18 U.S.C. § 1832.

 

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 148 -

217. On September 22, 2017, at 1:44PM, *12 days later*, Plaintiff's Wife noticed an

unusual lady in the bushes outside iHug's office. She appeared to be wearing a "homeless outfit" but

looked clean cut and had an iPhone. Plaintiff asked his Wife to take photos. After the unknown

suspect noticed photos being taken, she ran to a vehicle and sped off.




Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 149 -

218.    ***Within the same month,*** Plaintiff's Wife was chased down an alleyway on her way home. She managed to get into the house, locking the gate behind her, putting her in tears after explaining her experience to her husband, the Plaintiff. Plaintiff and his Wife felt extremely threatened. Plaintiff loaded his legally purchased firearm thereafter to protect his Wife.

219.    ***Within the same month,*** an unknown suspect loitered outside Plaintiff's home, in a dark alley, as pictured below.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 150 -

220.    On October 5, 2017, *1 month after* Plaintiff's corporate artifacts were misappropriated from his trailer, Joe and Darren organized to meet Jerry in San Francisco, to receive a "tech update." Plaintiff asserts they colluded to misappropriate Plaintiff's $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars to Defendants, handing off the stolen artifacts from Plaintiff's trailer.

221.    Pictured below, Joe's text message to Plaintiff confirming his "tech update" meeting with Darren and Jerry.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 151 -

222.    On October 6, 2017, *1 day later,* an <u>unauthorized device login was made from Uber Headquarters, in San Francisco, California.</u> Pictured below, unarguable geolocation evidence, establishes an unauthorized login to iHug's systems, within a 200-foot radius from Uber's H.Q.



223.    Pictured below, Zendesk sent Plaintiff internet protocol identification, establishing the login within a 200-foot radius from Uber's Headquarters, where more corporate secrets were stolen.

**Zendesk sign-in detected from a new device**

**Hi iHug Partners,**

**It looks like you signed into your Zendesk account using a new device on Oct 6 at 15:23:**

- **Location: United States**
- **IP:** ▓▓▓▓▓▓▓

Geolocation data ▓▓▓▓▓▓▓ API, real-time)

| IP Address | Country | Region | City |
|---|---|---|---|
| ▓▓▓▓▓ | United States 🏳 | California | San Francisco |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 152 -

224.    On October 16, 2017 at 11:16PM, *10 days after* Uber's unauthorized login, iHug's Acting Chief Financial Officer, Darren Gacicia, ("Darren") <u>intentionally</u> emailed Plaintiff's updated $1,200,000,000,000 trillion-dollar healthcare opportunity, and execution strategies to Ben at Andreessen, <u>intentionally</u> removing his email confidentiality clause, **shortly before departing iHug**.

225.    Darren breached fiduciary duty, violating his non-disclosure, and contingency employment agreement as he sent Plaintiff's healthcare opportunity to one of Lyft's largest investors.

226.    Plaintiff vehemently asserts Darren is an astute, and highly educated former Vice President of Equity Research at Morgan Stanley, the most prestigious investment bank in the world.

227.    Plaintiff asserts Darren is too intelligent to "accidently" remove the confidentiality disclosure in his email signature, inadvertently sending Ben at Andreessen, Plaintiff's $1,200,000,000,000 trillion-dollar execution strategy and pitch deck, after Plaintiff specifically instructed Darren to research each venture capital firm before engaging in conversation.

228.    Plaintiff asserts Defendants, in particular, Ben, John, and Does, used tactics described in the case *Waymo–vs–Uber–Case#3:17-cv-00939-WHA,* in particular, unlawful intelligence gathering, containing corporate trade secrets.

229.    Pictured below, Andreessen "**makes a killing**" in Lyft IPO.



**Marc Andreessen (L) and Ben Horowitz**
Photograph by Bryce Duffy

# 9 big things: In Lyft IPO, a16z makes a killing

By Kevin Dowd
March 31, 2019

It's official: The Grand VC-Backed IPO Procession of 2019 has begun. And it's begun with a bang. After pricing its offering late Thursday at $72 per share, Lyft saw its stock climb even higher on Friday, closing its first day of trading on the NASDAQ at $78.29 per share.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 153 -

230.     After Ben's unlawful actions, he then signed Lyft's SEC S1 filing containing

Plaintiff's disguised $1,200,000,000,000 trillion-dollar healthcare opportunity. Plaintiff alleges Ben

used his corporate secrets he received from Jerry, Joe, Louis, and Darren to *inflate the ultimate*

*valuation of Lyft*, omitting it from the United States Securities and Exchange Commission, see

*Waymo–vs–Uber–Case#3:17-cv-00939-WHA*, in particular, "*not only was Uber able to obtain trade*

*secrets, but used the data it obtained to inflate the ultimate valuation of Uber.*"

231.     Lyft vaguely mentions any healthcare plans in its S1 SEC filing, where in fact, Vice

President of Lyft Business, Gyre Renwick, states non-emergency medical transportation has become

a large part of their business. Plaintiff asserts these omissions have led to several class-action lawsuits

from Lyft investors.

232.     Plaintiff alleges these omissions in the SEC S1 filing were intentional, in order to veer

away from any self-incriminating admittance of guilt, by releasing evolved plans that resembled

Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity giving rise to the ultimate motive

to falsely imprison Plaintiff.

233.     Plaintiff further argues in the event Defendants and Does announce any particulars of

Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, it's a clear violation of The

Economic Espionage Act of 1996.

234.     Defendants willfully and with prior knowledge of its wrongdoing, caused an

insurmountable amount of irreparable damage to iHug.

235.     The covert collusion enabled, Defendants and Does to unjustly enrich themselves

without legal entitlement, earning billions of dollars post-IPO, and billions of dollars in revenue using

Plaintiff's copyrighted, corporate material, corporate trade secrets, financials, business plans, and

other proprietary and confidential information.

236.     These actions are clear violations, and these entities and individuals are liable if,

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 154 -

among other things:

one (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret;

two (2) without authorization copies, duplicates, downloads or uploads a trade secret; or three (3) attempts or conspires with one or more persons to commit engage in such conduct.

237.    Like the Uniform Trade Secret Act, the California Uniform Trade Secrets Act prohibits "misappropriation" of trade secrets and provides certain remedies.

238.    In addition, California law also allows for penalties for stealing trade secrets, Cal. Civ. Code § 3426, et seq; Cal. Penal Code §§ 499c, 502.

239.    Pictured below, Darren's email to Ben, where the confidentiality email clause was purposefully removed.

From: **Darren** (███████████████████th.com>
Date: Mon, Oct 16, 2017 at 11:16 PM
Subject: iHug Healthcare - Seeking $5-10MM Investment
To: ███a16z.com

Hi Ben,

My name is Darren, I am the acting CFO and an Advisory Board member of iHug. We hope you may consider a capital

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 155 -

240.    On May 22, 2018, pictured below on the left and right, Joe continues to violate his

cease and desist, continuing to communicate with Darren.



241.    On August 29, 2017, Darren signs a non-disclosure, approximately **45 days prior** to

intentionally sending Ben, Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and

his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 156 -

242.     Pictured below, a snippet from Darren's non-disclosure agreement, excluding Ben, Defendants from using Plaintiff's $1,200,000,000,000 trillion-dollar opportunity.

(c) Recipient acknowledges that monetary damages may not be a sufficient remedy for damages resulting from the unauthorized disclosure of Confidential Information and that the Company shall be entitled, without waiving any other rights or remedies, to seek such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction. In the event any third-party who has direct or indirect connection with Recipient involved in monetary damages that are a result of continuing to disclose unauthorized Confidential Information, the Company shall have the full rights and entitlement to seek such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction.

4. Miscellaneous

(a) All Confidential Information and Confidential Materials are and shall remain the sole and exclusive property of the Company. By disclosing information to Recipient, the Company does not grant any express or implied right to Recipient to or under the Company patents, copyrights, trademarks, or trade secret information. Any information that's given, disclosed, communicated or otherwise expressed by Recipient that shape, enhance, evolves or otherwise shall remain the sole and exclusive property of the Company.

243.     On October 19, 2017, *3 days after* Ben received Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity and execution strategy, Lyft announced a $1,000,000,000 billion-dollar funding round led by Google's CapitalG. Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity increased Lyft's valuation from $7,500,000,000 billion-dollars to $11,000,000,00 billion-dollars, eventually **turning Andreessen's $60,000,000 million-dollar investment in Lyft, into a $1,300,000,000 billion-dollar return post-IPO.**

244.     Pictured on the next page atop on the left, Ben joined Lyft's board in 2016, who had the most to gain from Lyft's valuation.

245.     Pictured on the next page atop on the right, CapitalG lead Lyft's $1,000,000,000 billion-dollar round. Plaintiff alleges Ben, John and Logan, used Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity to evolve Lyft and Uber's organic growth, through a secret pact.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 157 -



**NOVEMBER 7, 2016**

**Andreessen Horowitz Co-Founder Ben Horowitz Joins Lyft Board of Directors**



OCTOBER 19, 2017

**Alphabet's CapitalG Leads $1 Billion Round in Lyft**

246.     On October 22, 2017, *4 days after* Ben received Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and *3 days after* Lyft announce a $1,000,000,000 billion-dollar financing round, text message and circumstantial evidence establishes, Joe was in San Francisco meeting with Defendants. Joe was instructed by Defendants to gather any and all execution strategies, flyers, post cards relating to the $1,200,000,000,000 trillion-dollar healthcare opportunity.

247.     Joe had inside knowledge that Plaintiff found a healthcare partner to execute on his $1,200,000,000,000 trillion-dollar healthcare opportunity. The new healthcare partnership was <u>an imminent threat to Uber, and a Lyft/AMR/Sutter partnership, as they had previously pitched the same healthcare partner and **failed.**</u>

248.     The healthcare partner had previously <u>declined Uber and Lyft as they were not safe enough for healthcare.</u> Whereas Plaintiff's Company, iHug, recruited and trained CPR, and Basic Life Support Certified medical providers who had a compassion for healthcare patients.

249.     On October 27, 2017, *5 days after* Joe was in San Francisco, he asked for iHug's confidential, internal corporate material related to an upcoming healthcare partnership.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 158 -

250.   Pictured below, Joe's text message asking for corporate material to share with Defendants, so Defendants can continue to mobilize using iHug's corporate secrets and intelligence.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 159 -

251.    On October 27, 2017, *the same day*, Joe had Louis, John's right-hand man, join iHug and signed iHug's non-disclosure, confidentiality agreements and other legal documents <u>where he purposefully omitted his involvement with John, Lyft and Uber to assist Joe in strategically misappropriating the execution strategies involving the new healthcare partnership, establishing iHug was an imminent to Defendants giving Defendants more motive to act unlawful.</u>

### E. TOTAL DISREGARD FOR THE LAW

252.    On October 27, 2017, *8 days after* Ben and Lyft announced a $1,000,000,000 billion-dollar financing round led by CapitalG, Joe introduced Louis to Plaintiff, using a cover up story, that Louis could recruit thousands of drivers for iHug.

253.    Louis, Joe and Does signed the following but not limited to, advisory board, non-compete, confidentiality, non-disclosure, contingent employment and other types of legally binding agreements with iHug and did not disclose any conflicting relationships of competing companies.

254.    Pictured below is one of many signed contracts by Louis Joe, Jerry and Does.



255.    Louis, Joe and Does were given an iHug email to communicate during their relationship with iHug. Separate from email access, iHug's internal systems were only loaded onto iHug's corporate iPads and iMac's, to be used at iHug's office.

256.    There was no legitimate business reason for Louis, Joe, Jerry and Does to load iHug's internal systems onto their personal phones, and/or Defendant supplied burner phones and/or devices.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 160 -

257. **Louis, purposely omitted the fact that he knew John personally**. Louis then gained access to highly confidential and competitively sensitive commercial information, containing thousands of artifacts (files, folders, emails, and other data), in particular, Louis was shown iHug's flyers and other confidential details relating to the new healthcare partner, that allowed Plaintiff to execute on this $1,200,000,000,000 trillion-dollar healthcare opportunity.

258. In an act of Corporate Espionage 18 U.S.C. § 1832 (a), (5), (b) and sabotage, Joe, Louis and Does, breached fiduciary duty to iHug, by recruiting iHug's drivers onto Defendants' platform, in order to receive cash incentive from Defendants to stop driving for iHug.

259. Louis and Does also met with John, and other executives in private, while in possession of iHug's internal systems, containing artifacts that were loaded onto their personal devices and/or Defendant supplied burner phones, unbeknownst to Plaintiff.

260. Case law analysis sets precedence by John in a case, see *Lyft–vs–Travis Vanderzanden–Case# CGC-14-542554*, where John **declares under penalty of perjury,** his concern of his "former COO" meeting with a competitor, after misappropriating Lyft's **"highly confidential information."**

261. Pictured below, an assertion from the case, where John was "concerned" about any discussions between a competitor and his COO. Whereas, in this case, Louis had a direct relationship with Lyft's Co-Founder, John, and Joe, who was the COO of iHug.

| | |
|---|---|
| 10 | 4. Based on VanderZanden's text messages, in which he indicates that senior |
| 11 | personnel at Uber Technologies, Inc. ("Uber") wanted to meet with him the week of August 18, |
| 12 | 2014, I believed that VanderZanden would have discussions with Uber. |
| 13 | 5. I was concerned about any discussions VanderZanden might have with Uber, |
| 14 | given that VanderZanden had been a Lyft senior executive (Chief Operating Officer), had |
| 15 | already announced his resignation, and Uber was Lyft's primary competitor. |

262. Defendants obvious disregard for the law has caused and will continue to cause

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act; Trade Secret Misappropriation, Unjust Enrichment.

- 161 -

irreparable damages to iHug and any future growth.

263. Pictured below, Louis states, "I'm in," to a recipient named "Lyft," while colluding with Joe and Does.



264. Plaintiff possesses direct testimonial admittance from an Uber and Lyft driver, establishing Defendants gave instruction to Joe, Louis, Drivers and Does, further substantiating any and all allegations made in all proceeding paragraphs.

265. Pictured below, Louis extracted iHug's drivers to recruit onto Defendants platform, substantiating the insurance scheme exists, breaching his fiduciary duty to iHug. Joe, Louis and Does then deleted emails, spreadsheets, forwarding mechanisms, and other related communication evidence that establishes allegations herein, a clear violation of the *The Sarbanes-Oxley Act of 2002*.



266. The actions described herein, are a clear violation of *The Sarbanes-Oxley Act of 2002*, which states "that whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 162 -

influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title." *Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 802, 116 Stat. 745, 800 (2002)*. Codified at 18 U.S.C. § 1519, this provision applies to private companies and has a broad reach that is not limited to commenced litigation. Section 1519 "covers conduct intended to impede any federal investigation or proceeding including one not even on the verge of commencement." Yates v. United States, – U.S. --, 135 S.Ct. 1074, 1087 (2015) (emphasis added).

267.     Similarly, California Rule of Professional Conduct 5-2320 prohibits members of the bar from suppressing evidence that the member or the member's client has a legal obligation to produce.

268.     Louis admitted to iHug team members he didn't possess an iPhone, the only platform iHug uses for its app. Pictured below, unbeknownst to Plaintiff, he suddenly asked iHug's VP of I.T. to load iHug's internal systems onto his "new iPhone X and new iPad 2017," offering a bribe.

269.     Affirming Louis loaded iHug's internal systems onto at least four devices supplied by Defendants. A burner phone is defined as "**an untraceable device,**" using disposable SIM cards.

 **Louis Pritchett** <louis@ih...   Sat, Dec 2, 2017, 9:02 AM   
to me

Hi Jim can we get together again cuz I have my new iPhone X and new iPad 2017 and would like your help on loading it. Your lunch is on me. Are you going to be in the office Monday or Tuesday? Let me know and I'll be there. Okay thank you very much for your support.
Louis Pritchett

Sent from my iPhone

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 163 -

270.     Pictured below, Louis began learning iHug's internal systems with the intention of allowing Defendants to unlawfully gather Plaintiff's intelligence.



271.     In an act of flagrant unfair competition practices, Defendants instructed Louis, Joe and Does to "recruit" their own "independent" Uber and Lyft Drivers to drive for iHug, and competitors alike.

272.     This enables Defendants to push a button at their Headquarters to send Drivers cash incentive to cancel on competitor ride requests, using guarantee pay, and large cash bonuses, in order to successfully suppress competition, tortiously interfering with competitor's transportation contracts.

273.     Pictured below, testimonial and electronic text evidence establishes Defendants tortiously interfere with competition through incentive.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 164 -

274.   Pictured below, testimonial and electronic text evidence establishes Defendants tortiously interfere with competition through incentive.



275.   Pictured below, Louis, John's right-hand man, has heavy influence over drivers. Where it's alleged he slandered Plaintiff while colluding with Joe, and Does to cancel rides on terminally-ill healthcare patients, where Drivers are not fully aware of the gravity of their actions that are induced by Defendants inherit anticompetitive practices, and culture.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 165 -

276.    Pictured below, there were only a few times photographs were taken of Louis inside the iHug office, as Joe prohibited anyone from video recording Louis inside iHug's office.

 

277.    Pictured below, Louis and Joe colluding while in the act of corporate espionage in iHug's office, substantiating they had access to all iHug's internal systems.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 166 -

278.   On December 12, 2017, *2 days before* Louis met with Lyft Executives, unbeknownst to Plaintiff, Louis pressured everyone at iHug's office for details and intel on the upcoming healthcare partnership that would allow Plaintiff to execute on his $1,200,000,000,000 trillion-dollar healthcare opportunity, an **imminent threat to Uber and an established Lyft/Sutter/AMR partnership.**

279.   Louis was also pressuring Plaintiff for intel on the $1,200,000,000,000 trillion-dollar healthcare opportunity and execution strategies.

280.   December 13, 2017, *1 day later,* Plaintiff accomplished a major milestone for iHug, signing a memorandum of understanding with its new partner. This partnership enabled Plaintiff and iHug to execute on his $1,200,000,000,000 trillion-dollar healthcare opportunity. Pictured below, a snapshot of Plaintiff's new partnership, that would allow iHug to scale nationwide.



**Memorandum of Understanding**

**THIS AGREEMENT,** is made this 13 day of December, 2017, by and between

iHug Healthcare

(hereinafter referred to as "iHug");

**RECITALS**

**WHEREAS,** iHug is a healthcare company providing a software application to request transportation, organize demand and create efficiency through software to connect transportation

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 167 -

281.   On December 14, 2017, *1 day later,* Louis and Juan breached their signed non-compete, non-disclosure, contingency employment agreements and other legal documents by meeting with Lyft Executives, where Louis had loaded iHug's internal systems onto his personal devices *12 days prior.*

282.   Louis received an award for his **"outstanding dedication to the Lyft movement."** It was an exclusive event, excluding a majority of Drivers.




283.   Pictured below on the left, social media and photographic evidence reveals Louis' award from Lyft, where he met Lyft executes, sharing iHug's internal systems on his portable devices. Pictured on the right, a Driver complains not all Drivers were invited.




Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 168 -

284. December 16, 2017, *2 days later,* Juan who had attended the Lyft event with Louis, rushed into iHug's office asking to speak with Plaintiff immediately, where witnesses were present. He admitted Louis was "spying," on iHug, stating, "I'm not okay with it." He paced back and forth in distress. After Plaintiff walked Juan outside to speak in private, Joe rushed outside advising Plaintiff, he'll "handle it," in order to conceal testimonial evidence.

285. Joe advised Plaintiff *later that day*, Juan just wanted to know "what his position will be" at iHug. A statement that was made with actual knowledge of its falsity and a reckless disregard for the truth, as Juan's statement was contradictory to Joe's statement, and Juan's behavior did not match the statement that he just wanted to know his new title and position at iHug, a clear violation of the U.S. Code § 1512: Tampering with a Witness.

286. Witness tampering occurs when someone attempts to cause a person to testify falsely, withhold testimony or information, or be absent from any proceeding to which the witness has been summoned, in particular, you don't have to be a party to the civil action to be held liable.

287. In the United States, witness tampering in federal cases is defined by statute at 18 U.S.C. § 1512, which defines it as "tampering with a witness, victim, or an informant."

288. This was yet another attempt to cover up Defendants and its Drivers unlawful actions compromising its own drivers, and using third-party vendors.

289. Pictured on the next page, you will see Joe, Malcolm, and Does who routinely meet with Drivers to appear casual, whereas indisputable evidence exhibited herein, prove their actions are willful and damaging to anyone competing with Defendants.

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 169 -




290.    Pictured below on the left and right, a photo of Louis, with Joe, Malcolm and Does in the background.




Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 170 -

**F. DEFENDANTS ATTACK SECOND LAUNCH DATE - DRIVERS**

291.     On January 10, 2018, Plaintiff executed on his $1,200,000,000,000 trillion-dollar healthcare opportunity with a strategic and seasoned healthcare partner in Sacramento, California.

292.     Plaintiff asserts Defendants maliciously launched a series of incendiary and strategically timed attacks on iHug's official launch date January 10, 2018 tortiously interfering.

293.     Pictured below, Plaintiff's Wife wrote out Defendants' actions, and the damages and dangers of their malicious acts as she lived through, and **witnessed everything**.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 171 -

294.    Pictured below, Plaintiff's Wife wrote out indisputable events in a timeline, outlining what she could fit on the page, the attacks from Defendants throughout 2018.

295.    After iHug was forced to halt operations as a result of Defendants actions, <u>Defendants then began attacking Plaintiff and his Wife personally.</u>

296.    Its alleged Defendants orchestrate its Drivers in symphony with PsychOps within its ThreatOps Teams, and attorneys to <u>frame Plaintiff of Grand Theft Auto, Assault, Investment Fraud, and Possession of Stolen Property</u> as described in the proceeding pages of this Complaint. This would allow Defendants to freely run with Plaintiff's misappropriated $1,200,000,000,000.00 trillion-dollar healthcare opportunity, while Plaintiff wrongfully sits in prison.

297.    Even more vile, Defendants instructed Joe, Louis, and Does to <u>interfere with Plaintiff's Wife's' immigration process, to deport her, attempting to kill Plaintiff and his Wife's love.</u>



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 172 -

## F1. Defendants Choke Off iHug's Investments, and Operating Cash

298. On November 5, 2017, after Jerry misappropriated approximately $80,000 from iHug, who never delivered software, who sabotaged iHug's first July 4, 2017 launch date. Plaintiff needed to raise more cash to keep iHug in operation.

299. Joe pressured Plaintiff to be involved in the investment process. He asked to be carbon copied on emails, and requested the contact information of the investors. After Plaintiff would pitch investors and shared his vision, the investors were enthusiastic and excited to invest, calling it, "***The Uber for Healthcare***." ***Days later***, after Plaintiff pitched investors, they were threatened by Defendants, an Uber tactic described by Ben of Lyft during a Bloomberg interview, claiming the "Benchmark Guys" would call and threaten investors. The investors pulled out from investing in iHug. This was a repeating pattern, forcing Plaintiff to find cash elsewhere.

300. During these events, Joe was instructing Uber and Lyft drivers, compromised team members and others to purposely violate parking ordinances. After receiving multiple tickets, they would burden Plaintiff and pressure him to pay for the parking tickets, causing undue financial loss.

301. During these events, Joe pressured Plaintiff for $1,000 dollar, and another $3,000 dollars. After a team member moved in with Joe, she began asking Plaintiff for cash, she took $1,000 dollars. During these events, Joe misappropriated an additional $1,000 from Plaintiff.

302. During these events, Joe started sabotaging a new software developer who was paid $25,000 by Plaintiff, while Plaintiff was negotiating a new healthcare partnership to grow iHug into new counties and nationwide.

303. During these events, Joe sabotaged Plaintiff's Landlord, claiming he was a fraud, causing the Landlord to raise rent month after month to drive Plaintiff, and iHug off the property as Plaintiff couldn't afford it. A similar and repeating pattern as described herein, where Landlords were sabotaged to drive Plaintiff off the properties and cause undue duress, in an attempt to halt iHug.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act: Trade Secret Misappropriation, Unjust Enrichment.
173

304.     Plaintiff looked to what little personal belongings he had left in his life, and made the decision to sell his trailer. Whereas after his trailer was sold, his truck was stolen.

305.     After Plaintiff and his Wife posted multiple ads to sell the trailer, they found a buyer. Plaintiff was happy he could invest the little cash he received from the sale of his trailer back into iHug. This would allow him to continue fulfilling his God given mission, to help ease the pain and suffering in healthcare, and offer lifesaving transportation, a service Plaintiff's Grandmother did not have access to causing her to have a stroke and later pass away. Plaintiff promised his grandmother and Uncle, who were the only two people who really loved him and built a relationship in his life, he would do something great for people so they wouldn't suffer like Plaintiff's Grandmother and Uncle did. Pictured on the next page, Plaintiff's Uncle who passed away due to Healthcare Malpractice after having a heart attack.

306.     Pictured below, Plaintiff's Wife took a photo of Plaintiff after he raised cash for iHug. Plaintiff was very happy. Shortly after the sale, Joe asked Plaintiff for another $1,000.

See video evidence: https://youtu.be/qeMWrG2VmXo



Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 174 -

307.    Pictured below, Plaintiff's Uncle who suffered a massive heart attack. He later passed away due to Healthcare Malpractice. Plaintiff also cared for his Grandmother when he was a teenager after she had a massive stroke, who was paralyzed on one side of her body. He gave her insulin, fed her through a feeding tube, and checked her vitals daily. She later passed away.



308.    Plaintiff promised both his Uncle and Grandmother, he would do something great for people, in particular, in healthcare, as they suffered health conditions that could have been prevented, and managed better through technology.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 175 -

309. On January 4, 2018, *5 days before* iHug's new launch date Louis notifies Defendants to meet in San Francisco, in a very "VanderZanden-like fashion," see case *Lyft–vs–VanderZanden.*

310. Pictured below, an assertion from the case, describing VanderZanden, "took a number of steps to transfer Lyft information…in anticipation of his resignation."

| 13 | 9. The forensic evidence collected from VanderZanden's Lyft-issued computer |
|----|---|
| 14 | following his resignation also makes clear that he took a number of these steps to transfer Lyft |
| 15 | information to his personal files in anticipation of his resignation. In any case, regardless of his |
| 16 | intent, VanderZanden's possession of Lyft confidential information post-employment breached |
| 17 | his Confidentiality Agreement. That agreement bars him from possessing, post-employment, |
| 18 | any Lyft confidential and proprietary information, and prohibits him from using or disclosing |

311. Whereas, in this Complaint, Defendants "took a number of steps" to transfer iHug's information onto a "***personal MacBook Air***," "in anticipation of their resignation" from iHug.

312. Plaintiff believes Defendants handed Louis, Joe and Does a "***personal MacBook air***" to load all of iHug's operational systems, containing thousands of artifacts.

313. Pictured below, Louis' notifies Defendants to meet in San Francisco, *5 days before iHug's launch,* through his secret Facebook group, code for Uber and Lyft to meet with Louis.



**Louis Pritchett**
Admin · January 4, 2018

I'm going to San Francisco
Friday morning, watch out
Da Prez will be making new
#ZoneDollars for the New Year.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 176 -

314.    On January 10, 2018 at 11:10am, on iHug's launch day, after Louis handed Joe the *"personal MacBook Air,"* circumstantial and electronic communications establish Joe asking iHug's VP of I.T., Jim, to load all iHug's operational systems onto the device.



315.    Pictured below an assertion from the case, John describes, ***under penalty of perjury***, "I was concerned about VanderZanden having any discussions with Uber…he possessed highly confidential Lyft information and planned to talk with Lyft's competitor."

| | |
|---|---|
| 19 | August 18, 2014 would have been unrelated to his potential employment at Uber. I was |
| 20 | concerned about VanderZanden having any discussions with Uber, on any topic. My concern |
| 21 | was that he possessed highly confidential Lyft information, and planned to talk with Lyft's |
| 22 | primary competitor. Regardless of the subject matter or context of such discussions, I believed it |

316.    Whereas, in this Complaint, Plaintiff was, "concerned about Joe, Louis and Does having any discussions with Uber and Lyft…they possessed highly confidential iHug information, and planned to talk with iHug's primary competitors," during iHug's launch week.

317.    After iHug's VP of I.T. loaded iHug's internal systems on Defendants supplied *"personal MacBook air,"* Joe was in the vicinity of Uber and Lyft's headquarters in San Francisco, California, nearly every day of iHug's launch week, substantiated by Joe's text messages.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 177 -

318.   Pictured below, the text messages from Joe indicating he was in San Francisco.




319.   Joe exposed Plaintiff's intellectual property to Defendants, not limited to the following, iHug's internal systems, technologies, healthcare API and web portal, driver app and other corporate systems, and artifacts pertaining to Plaintiff $1,200,000,000,000 trillion-dollar healthcare opportunity, prior to Lyft and Uber's IPO.

320.   ***Twelve months after*** Joe misappropriated Plaintiff's corporate secrets and execution strategies of Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, Defendants revenue growth **spiked to 95%,** to $776,000,000 million dollars per quarter, from $397,200,000 million dollars per quarter, a year prior, substantiating Defendants have and continue to unjustly enrich themselves without legal entitlement, at the detriment of Plaintiff corporate secrets.

| | Fiscal 2018 Q1 | Fiscal 2019 Q1 | year-over-year change |
|---|---|---|---|
| Active Riders (in millions) | 14.0 | 20.5 | 46% |
| Revenue per Active Rider | $28.27 | $37.86 | 34% |
| Revenue (in millions) | $397 | $776 | 95% |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 178 -

321.    On January 10, 2018 at 1:39PM, before Joe hands Defendants the "***personal MacBook Air***," computer forensic analysis reveals Joe, unbeknownst to Plaintiff, created a draft email listing all of Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity execution strategies with Plaintiff's new healthcare partner allowing Defendants to suppress Plaintiff's Company, iHug.

322.    Pictured below, is an assertion from case *Waymo–vs–Uber–Case#3:17-cv-00939-WHA*, where former Uber employee states the team was instructed to "mark communications as draft" in order to be "immune from discovery," along with other tactical measures and actions.

> Further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley by attempting to "shroud" them with attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client privilege" on documents, they would be immune from discovery. What Clark failed to teach the team, however, is that there is no attorney-client privilege, no "seal of secrecy," if the communications were made for the purpose of enabling the commission of a crime or fraud. *U.S.*

323.    Whereas, in this Complaint, Joe "drafts" an email for Defendants with the intent to be "immune from discovery," **the exact same method Uber used previously,** see case *Waymo–vs–Uber–Case#3:17-cv-00939-WHA*.

| | |
|---|---|
| **Created at:** | **Wed, Jan 10, 2018 at 1:39 PM (Delivered** |
| **From:** | Joe ███████████ ihughealth.com> |
| **To:** | |
| **Subject:** | **AlphaOne** |
| **SPF:** | ████████████ Learn more |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 179 -

324.    Pictured below, *less than 2 hours later,* a new unauthorized device signs into Joe's

iHug email account, navigating to the "drafted" email, containing Plaintiff's

$1,200,000,000,000 trillion-dollar healthcare opportunity execution strategies, and more damaging

iHug's new healthcare partnership details, while remaining covert and "immune from discovery."



325.    Pictured below, one small snippet of a section in Joe's drafted email containing

Plaintiff's $1,200,000,000,000 trillion-dollar execution strategies.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 180 -

## G. CONSPIRACY, AND CONCERTED ACTIONS

## TO WRONGFULLY IMPRISON PLAINTIFF

326.   Pictured below, Plaintiff's Wife sketches out the indisputable facts, events and reasons Defendants, and Does are attempting to wrongfully imprison Plaintiff.



327.   Plaintiff asserts that in order for Defendants to freely utilize Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and run with his $25,800,000,000,000.00 trillion-dollar new digital Ai healthcare system particulars, Defendants attempt to wrongfully imprison him as he's a Whistleblower to multiple schemes that exist.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 181 -

**G1. First Attempt to Wrongfully Imprison Plaintiff - Grand Theft Auto**

328.     After Joe, Louis and Does gathered all execution strategies of Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity for Defendants, and exited iHug, they began to execute Defendants' plans, to "frame" Plaintiff for Grand Theft Auto forcing him onto the Uber and Lyft app so they can expose Plaintiff and his Wife to the Hell Programs.

329.     Joe was instructed to sell Plaintiff a vehicle, and then report it as stolen to police.

330.     This was a vile attempt to falsely imprison Plaintiff, as a criminal has little to no credibility, and this would allow Defendants to claim and freely execute on his $1,200,000,000,000 trillion-dollar healthcare opportunity pre-IPO.

331.     Even more vile, Defendants planned to force Plaintiff to use the Uber and Lyft apps, after Joe, Louis and Does deprived Plaintiff of his vehicle and were no longer involved with Plaintiff. Uber and Lyft could then enable their Hell Programs, on Plaintiff, invading his privacy, tracking his location and gaining access to his personal device to gather further intelligence without the involvement of human elements (Joe, Louis and Does), remaining convert and untraceable.

332.     Pictured below, in an interview with Rebecca Jarvis ("Rebecca"), John discusses the #DitchTheCar initiative in an interview, asking all American's to use the Lyft app.



Lyft wants to pay users to give up their car

---

Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 182 -

333.   Pictured below, is a bill of sale from Joe to Plaintiff, in a legal purchase of the vehicle.

CUT ON LINE AND SAVE FOR YOUR RECORDS

## BILL OF SALE
A Public Service Agency

### VEHICLE/VESSEL DESCRIPTION

| IDENTIFICATION NUMBER | YEAR MODEL | MAKE | LICENSE PLATE/CF # | MOTORCYCLE ENGINE # |
|---|---|---|---|---|
| WB▮ | 2005 | BMW | ▮ | |

I/We Joseph Acebedo _____ sell, transfer, and deliver the above vehicle/vessel
(PRINT SELLER'S NAME(S))

to Adam Mackintosh _____ on [01] [16] [2 0 1 8] for the amount of $ 500.00
(PRINT BUYER'S NAME(S))                MO  DAY  YR                          (SELLING PRICE)

If this was a gift, indicate relationship: _____ (e.g., parents, spouse, friend, etc.)   $ _____
(GIFT VALUE)

### SELLER

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| PRINT NAME Joseph Acebedo | SIGNATURE X ▮ | DATE 01/16/2018 | DL, ID OR DEALER # ▮ |
|---|---|---|---|
| PRINT NAME | SIGNATURE | DATE | DL, ID OR DEALER # |

334.   Pictured below, to frame Plaintiff of Grand Theft Auto, Joe wrote and signed a

promissory note using trickery. Whereas, Joe never transferred the title to the Plaintiff as promised,

and then reported the vehicle stolen to law enforcement to wrongfully arrest Plaintiff.

Please drive vehicle so it can pass smog check

once it clears the mileage please call me so I can

transfer the title.

1/17/2018

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 183 -

338.   Plaintiff proves his innocence, as he received a bill of sale from Joe, signed a

vehicle sale contract, and paid Joe thousands of dollars, substantiating he never committed Grand

Theft Auto. Pictured below, a few of many Venmo payments made by Plaintiff to Joe for the vehicle.













Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 185 -

339.     Plaintiff vehemently argues a common dominator exists, Joe engaged in manipulative and misleading statements to defraud Plaintiff, much like Jerry, who are under the instruction of Lyft, Uber and Andreessen to cripple iHug, and harm Plaintiff, in order to wrongfully imprison Plaintiff so Defendants can synonymously run with his $1,200,000,000,000 trillion-dollar healthcare opportunity pre-IPO, unjustly enriching themselves without legal entitlement, and covering up wrongdoing.

| **venmo** | **venmo** | **venmo** |
|---|---|---|
| You paid Joe Ace | You paid Joe Ace | You paid Joe Ace |
| 19 our of 160 car payments. | 21 of 160 of car payments. | 20 of 160 of car payments. |
| Transfer Date and Amount: | Transfer Date and Amount: | Transfer Date and Amount: |
| Feb 28, 2018 PST · 🔒  - $50.00 | Apr 02, 2018 PDT · 🔒  - $50.00 | Apr 02, 2018 PDT · 🔒  - $50.00 |
| Like    Comment | Like    Comment | Like    Comment |
| 51.50, including a $1.50 fee, was your credit card, and will appear as | your debit card, and will appear as on your card's billing statement. | your debit card, and will appear as on your card's billing statement. |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 186 -

340. Pictured below, Joe continued to cause undue financial harm on Plaintiff, carrying out his malicious instructions by Defendants by draining Plaintiff of his personal cash, and iHug investments for months.



341. Not only did Joe, Louis and Does slander Plaintiff privately to everyone they knew, as established in the aforementioned Sheriff's report, that Plaintiff, "does a lot of fraud stuff." Defendants, started to slander Plaintiff's reputation on a nationwide scale, **publicly**.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 187 -

## G1A. The BBB Conspires To Cover Up Defendants Wrongdoing

342.   On March 14, 2019 at 8:29PM, Plaintiff sent a settlement demand to Joe, Louis and Does for damages. The only person who did not open his email while others opened it several times, was Louis.

343.   This appears to be a strategic move and perhaps a result of being coached by Lyft's legal team as he frequently visits Lyft H.Q.

344.   Pictured below, Plaintiff's email to Joe, Louis and Does on March 14, 2018, substantiating Joe, Louis and Does received the email.

Sent on 14 Mar 2019, 20:29 pm

| Email | Opens |
|---|---|
| joe█ | 39 |
| loui█ | 0 |
| way█████████l.com | 1 |
| tmi█ | 2 |
| em█████████mail.com | 6 |
| eja█████████.com | 1 |
| mal█████████gmail.com | 2 |
| joe█████████com | 2 |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 188 -

345.    On March 16, 2019 *two days later*, unbeknownst to Plaintiff, the BBB, sent iHug an email to an inactive catch all inbox regarding a customer review, where in fact the review was False and Defamatory Accusations against Plaintiff, and iHug. The inbox is inactive, as a result Plaintiff was completely unaware of the unlawful publication.

346.    The email and inbox is only used for verification of accounts for iHug.

347.    Plaintiff alleges Defendants used the BBB site, in particular the customer review system, as a podium to the world, who freely posted False and Defamatory Accusations and its Gist against Plaintiff, and iHug for the world to see.

348.    The BBB website allows anyone to intentionally and unlawfully post any and all False and Defamatory Accusations and its Gist, causing damages to small business owner's reputation and their livelihoods. Whereas the BBB blocks genuine and authentic reviews as proven in the proceeding paragraphs and photos.

349.    The BBB receives hundreds of millions of visitors to its website a year.

350.    The BBB created an unauthorized BBB profile, which they "communicated and allowed" False and Defamatory Accusations and its Gist, giving those groundless accusations an insurmountable amount of credibility, defaming Plaintiff's already severely damaged reputation with permanence caused by Defendants willful and malicious acts.

351.    As a result of the BBB's willful "corporate practices," to dismiss Plaintiff's request to remove the unauthorized profile the BBB created, his personal and business reputation was damaged with permanence.

352.    Not only did the BBB create an unauthorized BBB profile for iHug, the profile was then used to plant complaints that were created by Defendants, to paint Plaintiff into a fraud. In particular, a complaint by a medical provider was posted on May 26, 2017, claiming iHug allowed an "insurance agent," to use her email she submitted to iHug. She signed up to be a medical provider

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 189 -

1  and Driver for iHug. Plaintiff specifically advised the insurance Agent not to contact his Drivers until

2  she received notification of a master TNC policy. Unbeknown to Plaintiff, the Agent was part of the

3  insurance scheme and contacted the medical providers without permission, causing said complaints,

4  allowed by the BBB without any investigation whatsoever.

5

6      353.    This generated the complaint, allowed by the BBB. Plaintiff realleges the BBB

7  website fuels hate, slander and destruction of small businesses if any wrongdoer wants to cause

8  damage as described herein, further substantiating Plaintiff's allegations.

9

10  **Complaint Type:** Problems with Product/Service    **Status:** Resolved ⑦

11                                                                                    **05/26/2017**



12  I purchased the iHug start up kit for $186.61 in order to make nursing house calls. It took 8
weeks to get the kit. When the kit arrived it had a $12 bag, a $7 stethoscope, a $12 blood

13  pressure kit, a zip lock baggie with 10 pairs of plastic gloves (about $1 worth), a free mouth
guard from CPR training class, and 10 alcohol wipes. I asked for a refund and iHug

14  refused.

15

16  **Customer Response**                                                     **06/23/2017**

Consumer states:

17  Yes, They refunded the fuller price for the medical kit.As far as them

18  rectifying the situation with me no. I do have a comment to include. They
released my phone number and email information to a insurance company.

19  As a medical professional it does seem like the company is legitimate.

20                              **Collapse Complaint Details ^**

21

22      354.    Not only did the BBB create an unauthorized BBB profile for iHug, the profile was

23  then used to plant complaints that were created by Defendants, to paint Plaintiff into a fraud. In

24  particular, a complaint was published and authorized by the BBB, by an Uber driver who was

25  introduced to Plaintiff by an investor, who was a Lyft driver. Plaintiff alleges Uber and Lyft paid

26  Drivers "incentive," to "invest in competitors." This created two results, a positive and negative:

27      (1) The positive – Uber and Lyft were able to receive competitor investor intel after their

28

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 190 -

driver invested in the startup using the cash provided by Uber and Lyft through the Lyft and Uber apps. This gave Uber and Lyft a live feed of the startups growth. Uber and Lyft could then anticipate when to activate different levels of ThreatOps, who engage in unlawful and anticompetitive suppression tactics as described herein and throughout all proceeding paragraphs of this Complaint.

(2) The negative – The "investment cash," was given to drivers by Uber and Lyft through an "incentive program" directly through the Uber and Lyft app, labeled as "driver pay."

355.    Plaintiff realleges, this is the very reason Lyft refuses to provide their investors with driver pay information. This gave Lyft and potentially Uber enough time to "self-audit," to cover up the numbers. This resulted in multiple class-action lawsuits from Lyft investors, which are proceeding on August 6, 2019.

356.    As a result, Plaintiff had the Uber driver sign a legal document protecting iHug and Plaintiff. He also suspended the software as the Driver was in breach by colluding with Defendants.

357.    To the ordinary person who visits the BBB website, the Complaint appears that Plaintiff is doing business unethically and conducting fraudulent business practices, when in fact, the Defendants successfully used the BBB as a podium to paint Plaintiff as a fraud based on fabricated situations by Defendants.

358.    The Uber driver was then instructed by Defendants to use the BBB as a podium to slander Plaintiff claiming he took thousands of dollars, blocked his software and signed an unfair legal document. When in fact, if the BBB conducted an investigation, the truth would reveal:

1.  This happened during a time, when Plaintiff was on guard, as an unknown private investigator showed up armed at Plaintiff and his Wife's residence, who would not identify himself, causing Plaintiff to arm himself with his legally purchased firearm to protect his Wife.

2.  This happened during a time, Joe was slandering Plaintiff of grand theft auto, and

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 191 -

3. hired an employment attorney. Where in fact, the Attorney demanded Joe hold equity in Plaintiff's new Company, iHug's Rideshare Software. This would allow Joe to continue giving Defendants live intel on Plaintiff, and iHug.

4. This happened during a time, Joe was slander Plaintiff to iHug investors.

5. This happened during a time, Joe was colluding with Shahla, an iHug investor to use her resources with the DOJ, FBI and others to deport Plaintiff's Wife.

6. This happened during a time, Plaintiff's vehicle was broken into.

7. This happened during a time, Plaintiff's vehicle was stolen shortly after.

8. This happened during a time, Plaintiff's investors were calling him, stating Joe, was claiming Plaintiff stole millions.

9. This happened during a time, Joe, his Wife Ejay, and Does called iHug's landlord, claiming Plaintiff and his Wife, were sleeping in the office, attempting to shut down iHug, where in fact, Plaintiff had to close the office. The Complaint states, "I went to the office where I sign up with ihug healthcare, and they was no longer at." This was a result of Joe, Louis, Malcolm and Does slandering Plaintiff to the Landlord **yet again**.

10. This happened during a time, Plaintiff drove his Wife to an endometriosis surgeon to evaluate her severe medical condition as a result of all actions described herein and throughout all proceeding paragraphs of this Complaint.

11. This happened during a time, Lyft and Uber planted a mole, Nicole, who was leaking iHug's corporate secrets.

12. This happened during a time, Plaintiff's vehicle was stolen, and he was forced to use the Uber and Lyft app that exposed Plaintiff to Hell Programs.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 192 -

13. This happened during a time, Plaintiff's employment was jeopardized after Joe stole Plaintiff's vehicle, leaving Plaintiff with no transportation to his job.

14. This happened during a time, Plaintiff closed down iHug's transportation operation.

359. To the outside consumer, the complaint paints Plaintiff into a man he is not. The reckless corporate conduct by the BBB allowed such slander, and defamation of character in its complaint system, without a proper investigation, caused and continues to cause severe personal and business reputational damages since May 5, 2017, as the BBB refuses to delete the false complaints.

360. Pictured below is the complaint from the Uber driver. After reading all allegations herein, you will see the complaint in a different light. The complaint is one sided, and caused damages to Plaintiff and iHug's reputation, as investors, team members and others were being directed to the BBB by Defendants, who continued to slander Plaintiff based on False Accusations and its Gist.

---

**Complaint Type:** Problems with Product/Service    **Status:** Resolved ⑦

02/07/2019



i purchased transportation software that include a booking portal to help run my medical transportation business from ihug healthcare;on May 21, 2018 i paid ihug healthcare 5,000 and on May 26, 2018 i paid ihug healthcare 5,000 for a total of 10,000.In May 2018 the booking portal was working good, The software went down in AUGUST, **** **** the Owner of ihug healthcare would not turn on my booking portal until i sign a very unfair agreement on AUGUST 28, 2018. And still he refuse to turn on my booking portal.i tried calling,texting,and e-mail, No respond.I went to the office where i signup with ihug healthcare, and they was know longer at **** ********** *** **** ***** *** *********** ** ***** ************



**Customer Response**                                      02/15/2019

Consumer states: "They turned my portal back on"

**Collapse Complaint Details** ⌃

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 193 -

361.   Plaintiff asserts the following in this Complaint to affirm the BBB has a flawed and controlled review system that allows millions of small business owners to be adversely effected.

362.   The BBB "business practices" and "sales methods" allow anyone to make defamatory statements, which are libelous on their face without resort to additional facts on their website, which is communicated using the power of the BBB brand, even without merit, giving an insurmountable amount of credibility to any outrageous, false and defamatory statements made about an individual and/or business. A completely unacceptable corporate practice by a 100-year-old corporation.

363.   The BBB globally communicated False and Defamatory Accusations and its Gist that Plaintiff "took thousands of dollars and then closed iHug's office" where it's been indisputably proven Plaintiff was forced to close down iHug office.

364.   The BBB globally communicated False and Defamatory Accusations and its Gist that Plaintiff "forced a consumer to sign unfair legal documents," where it's been indisputably proven Plaintiff was on guard, and protecting iHug, who had the Uber driver sign a legal document that protect iHug in the event he was a mole.

365.   The BBB globally communicated False and Defamatory Accusations and its Gist that Plaintiff provided Insurance Agents medical providers details, where it's been indisputably proven Plaintiff did not give the Agent permission to contact the medical providers until a TNC Master insurance policy was granted.

366.   The BBB globally communicated False and Defamatory Accusations and its Gist that Plaintiff shuts off software, where it's been indisputable proven, Plaintiff suspended the Uber drivers software as a result of the unlawful conduct as described herein and through all proceeding paragraphs of this Complaint.

367.   The BBB globally communicated False and Defamatory Accusations and its Gist that Plaintiff refused a refund, where it's indisputably proven after Plaintiff learned about the Complaint,

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 194 -

from an iHug Team Member who was colluding with Joe, he ordered an immediate refund. Unbeknown to Plaintiff, a complaint was posted on the BBB, on an unauthorized BBB profile.

368.    The BBB globally communicated False and Defamatory Accusations and its Gist that Plaintiff "lies," where it's been indisputably proven Plaintiff has been under corporate attack for fulfilling his God given gift and calling for our world, while being accused of being a fraud. A tactic used by Defendants to break down his mental morale, effecting Plaintiff, his Wife, and iHug.

369.    The BBB globally communicated False and Defamatory Accusations and its Gist that Plaintiff's business, iHug, "doesn't exist."

370.    The BBB globally communicated False and Defamatory Accusations and its Gist that Plaintiff is a "fraud," where its proven per section, H1 of this Complaint, Defendants used psychological warfare tactics on Plaintiff and his Wife pre-IPO, a mechanism was to call Plaintiff and his Wife a fraud to breakdown their mental morale.

371.    The BBB globally communicated False and Defamatory Accusations and its Gist that Plaintiff "makes individuals invest their 401ks and savings," where's its proven herein, Defendants sabotaged iHug, ruining investor cash, and destroyed iHug's transportation operation.

372.    The BBB globally communicated False and Defamatory Accusations and its Gist Plaintiff forced investors to invest their 401k, when in fact, each investor was aware of the risks of investing, standard in the investment world. Where in fact, the BBB could not, and cannot produce any evidence proving Plaintiff forced any investor to invest their 401k. Plaintiff alleges the Defendants instructed its Drivers, Third Party Vendors and other culprits to slander Plaintiff on the BBB website as it's allowed, in the event Plaintiff was seeking an investment for the new iHug software and investors perform a due diligence, it would cause the investor to say no, suppressing iHug **yet again**.

373.    The BBB globally communicated False and Defamatory Accusations and its Gist that

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 195 -

Plaintiff is a "snake," where in fact, Plaintiff is a good-hearted business man who's been under corporate attack for years, see section 6. Factual Allegations, and section X Plaintiff is a public figure and role-model.

374. The BBB globally communicated False and Defamatory Accusations and its Gist that Plaintiff creates "false profiles to make it seem like he had a team of execs and a company," where in fact, Plaintiff had each and every party sign an NDA, who were listed on iHug's website in form of a profile. These individuals were sabotaged by Defendants, through slander in private. The BBB's website allowed the Defendants to turn the incendiary damages they inflicted on Plaintiff, his Wife and iHug, to turn radioactive causing irreversible damages with permanence.

375. Even more outrageous, the CEO of the BBB Northern California, Lynn Conner, ("Lynn") failed to resolve the matter with Plaintiff, who "*blame shifted*," and order a cover up by deleting the customer review. When in fact, if the BBB stood by their website, corporate process and do not control the voice of the American people, it would have not deleted the customer review.

376. Lyft then nonchalantly disregarded Plaintiff's serious concerns the BBB was reckless in their software architecture, and seemingly unfairly controls people's voice. It was discovered later, BBB deleted evidence, in an attempt to cover up the wrongdoing.

377. The flawed and controlled software architecture allows anyone to slander others, using the power and ironclad credibility of the BBB's name, giving the False and Defamatory Accusations and its Gist an insurmountable amount of trustworthiness, a dangerous and wholly unfair business practice, including violations of the Federal Trade Commission regulations as it relates to consumer protection.

378. It's still unknown who gave the BBB permission to create an iHug, profile "without," Plaintiff's "written authorization."

379. Plaintiff has demanded on multiple occasions, BBB produce a signed agreement,

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 196 -

allowing the BBB to create a profile for his Company, iHug. The document has yet to be produced as it does not exist, giving truth and merit to Plaintiff's allegations herein. Further providing the BBB has a flawed, controlled and reckless system that harms small businesses on a large scale.

380. Plaintiff's Company, iHug, is a private business, and should remain so, as per Plaintiff's request, supported by Lisa Weintraub Schifferle ("Lisa"), Attorney, in the Division of Consumer and Business Education at the Federal Trade Commission:

https://www.consumer.ftc.gov/blog/2015/08/want-privacy-tell-us-about-it

381. The BBB's willful rejection to honor Plaintiff's informal request to delete the unauthorized BBB profile for iHug while on the phone with a BBB sales executive, the BBB has "aided and abetted" individual(s), as well as allowing "anonymous entities," Defendants, to post Unprivileged and False Accusations causing permanent reputational damages on an incurring daily basis without investigation, due diligence and/or other vetting methods to confirm the merit of each statement since May 5, 2017.

382. It has become evident the BBB has "willfully kept the unauthorized profile live" and "without written permission," after Plaintiff's informal requests, in order to build its business with willful disregard of Plaintiff's request.

383. The actions of the BBB were made in an effort to "earn a profit," on the BBB profile at the detriment of Plaintiff's reputation and credibility based on "internal sales practices," and corporate practices. Plaintiff is one victim, whereas there may be hundreds of thousands and potentially millions of business owners who were and are currently being adversely effected by this corporate practice.

384. Even more appalling, after the CEO of the BBB, Lynn, she dismissed Plaintiff's concerns and the damage he sustained, Plaintiff then received notification from Weintraub Tobin of Sacramento was retained by the BBB, where the primary focus was Plaintiff's "500" page complaint.

Adam John Mackintosh---vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 197 -

385. This was appalling to the Plaintiff, as James Kachmar, ("James") of Weintraub Tobin had a duty to his client, the BBB, to resolve and mitigate any legal exposure. Whereas James ignored Plaintiff's second deadline to settle, and multiple demands to remove the unauthorized profile.

386. Plaintiff alleges, James of Weintraub Tobin asked about Plaintiff's "500" page Complaint, as it would allow him to ask the BBB for even more cash as a retainer based on the size of the Complaint.

387. Plaintiff is still appalled the firm was focused on the size of the case, and how much cash they can make through a litigation process, paid for by the BBB. This seems contrary the American Bar Association, Model Rules of Professional Conduct, in particular:

**PREAMBLE: A LAWYER'S RESPONSIBILITIES**, in particular:

[2] As a representative of clients, a lawyer performs various functions. As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. As negotiator, **a lawyer seeks a result advantageous to the client** but consistent with requirements of honest dealings with others. As an evaluator, a lawyer acts by examining a client's legal affairs and reporting about them to the client or to others.

388. The critical decision James made for the BBB to proceed into a litigation process has caused his client even more legal exposure that will adversely affect the BBB financially.

389. While James was miss-stepping around the Plaintiff, the BBB still continues to globally communicate False and Defamatory Accusations and its Gist to "beware of all his ways of doing business," referring to Plaintiff. Where it's indisputably proven herein, Plaintiff was taking an onslaught of corporate attacks, while trying to build iHug, in order to help those in need in healthcare.

390. As one of the world's leading business advocates, the BBB knew, but ignored the importance of investigating any and all wrongdoing, and in this case, the incendiary damages caused

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben; and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 198 -

by Defendants through False Accusations against Plaintiff prior and after the BBB's willful publication of such False and damaging Gist.

391.    The BBB negligently allowed False and Defamatory Accusations and its Gist by failing to conduct a reasonable investigation prior to publication, and willfully made the publications.

392.    The BBB negligently allowed a publication of False and Defamatory Accusations and Gist by Defendants, which are libelous on their face without resort to additional facts. Furthermore, the Defendants submitted the review putting Plaintiff's name in-lieu of their own, to post False and Defamatory Accusations and its Gist, further proving the BBB website and platform is flawed, and the BBB is acting recklessly by allowing such unlawful conduct to take place.

393.    Plaintiff is appalled that a 100-year-old corporation, the BBB, is acting in this manner, as they are, and should be held to the highest level of business conduct and ethics, including consequences for their willful actions.

394.    The BBB negligently created a system that publishes False and Defamatory Accusations and its Gist in derogation of accepted principles of a consumer and business advocate, including by failing to have a vetting mechanism that provides appropriate investigative process before allowing the publication of False and Defamatory Accusations for the world to see.

395.    As the natural and foreseeable consequence of the BBB's actions, the BBB knew and intended for any statement, including any False and Defamatory Accusations and its Gist without a vetting process, would be individually republished by 10's of thousands of search engines across the globe subjecting Plaintiff and his Company, iHug, to public hatred, contempt, scorn, obloquy, and shame ruining his business reputation and future.

396.    *Case–and–Point*, the Yellowpages.com is a United States-based web site operated by YP Holdings that provides listings for local businesses, which are used by nearly 60 million consumers each month in the U.S. As a result of BBB's willful action and/or inaction, the

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 199 -

False and Defamatory Accusations and its Gist False was linked to YP.com. Exposing Plaintiff, and

iHug to even more public hatred, contempt, scorn, obloquy, and shame ruining his business

reputation and future operations.

yellowpages.com/rocklin-ca/mip/ihug-537054911?lid=537054911

**BUSINESS DETAILS**     **GALLERY**     **REVIEWS**

pdf, doc, ppt, xls, txt.

➤ Visit Website

The Officia

**General Info**

| **BBB Rating and Accreditation Information may be delayed up to a week.** |

l Rideshare for Healthcare. We offer on-demand care rides. 888) 736-9788 to book.

| | |
|---|---|
| **BBB Rating** | A |
| **Hours** | Regular Hours<br>Mon - Fri:    9:00 am - 5:00 pm |
| **Services/Products** | • Long Distance Transportation<br>• Wheelchair Accessible Van Transportation<br>• All-Age-Care Rides®<br>• Non-Emergency Medical Transport<br>• Transportation |
| **Payment method** | Mastercard, Amex, Visa, Discover |
| **Other Link** | https://jcinihug.com |
| **Categories** | Transportation Providers, Airport Transportation, Assisted Living & Elder Care Services, Dialysis Services, Disability Services, Medical Centers, Public Transportation, Special Needs Transportation, Taxis, Transportation Consultants, Transportation Services, Wheelchairs |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 200 -

397. On March 16, 2019 *the same day*, the False and Defamatory Accusations and its Gist was published, the BBB sent iHug an email to an inactive inbox, requesting verification of the post, before the publication was made live.

398. The inactive email is used to collect all communication from business accounts. An account Joe, Louis, and Does are fully aware exists.



## What Happens Next?

Once you've verified your review, we will send it to the business and they will have an option to respond. Your review, along with a potential business response will be posted within 3 to 10 business days.

Thank you again for sharing your experience with BBB.

399. On March 19, 2019, *3 days later*, the BBB sent iHug an email **confirming the post won't be published unless verification is made** to the inactive email, unbeknownst to Plaintiff.

400. **The BBB then publishes** the False and Defamatory Accusations and its Gist for the world to see, turning the incendiary damages caused by Defendants to turn radioactive. This willful act caused even more irreversible damages to Plaintiff, his Wife, and iHug who were under corporate attack by Defendants, who are attempting to wrongfully imprison Plaintiff so they can run with Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity.

401. Plaintiff alleges the BBB's website allows such behavior, or the BBB conspired with the Defendants, who allowed such unlawful act.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 201 -

402.    Plaintiff has been denied on multiple occasions by the BBB, to provide him with the IP address(es) of the person(s) and/or entities that created such false accusations.

403.    Pictured below and on the proceeding pages, emails confirming the False and Defamatory Accusations and its Gist won't be published, if it's not verified. Where Plaintiff never received notification of such unlawful activity to his active corporate email.

404.    The link was never clicked by anyone, yet the False and Defamatory Accusations and Gist was willfully and freely published by the BBB for the world to see.



# BBB - Required verification reminder 🖨 🔗
# for your customer review Inbox×

**Better Business Bureau** <inf…   Tue, Mar 19, 1:03 AM   ☆  ↩  ⋮
to me ▾

**BBB**® Serving Northeast California

REMINDER: You are required to verify your customer review to complete the process. If you do not verify your review, we will not post it or notify the business.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 202 -

For security and validation purposes, please verify your submission by clicking on the link below.

**https://www.bbb.org/sacramento/consumer/verify/2357556/3548a435b3/**

After verification, if your review meets BBB guidelines, we will contact the business to notify them of the review. Whether or not the business responds we will post the review within 10 days or less.

If you have filed a complaint against the business using BBB complaint services, or if you are not a customer of the business, please understand that your review will not be posted.

Thank you,

405.    On March 16, 2019, the publication was already made *2 day after* Defendants received Plaintiff's settlement demand. Further proving the BBB website is flawed, controlled and causes incendiary damages to small businesses across America as it fails to investigate reviews.

## Customer Reviews

**1 Customer Reviews**

**What do you think? Share your review.**
How BBB Processes Complaints and Reviews



**Most Recent Customer Review**



Adam
★★★★★                                           03/16/2019

Fraud! Fraud! Fraud! Making individuals invest their 401ks and savings and disappearing on them. CEO-Adam G***** goes by many aliases, beware of all his ways of doing business. He is a snake. A liar who uses false profiles to make it seem like he had a team of execs and a company. The company doesn't exist. It's all a lie.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 203 -

**G1B. The BBB Infringes on Our First Amendment (Amendment I) to the United States**

**Constitution by Controlling and Suppressing People's Voices and Opinions**

406.   After an email exchange between Plaintiff and the BBB's Attorney, Mr. Kachmar, Plaintiff attempted to post his genuine and authentic opinion of the law firm Weintraub Tobin of Sacramento. Plaintiff was blocked for mentioning the BBB.

407.   Whereas, direct electronic and circumstantial evidence establishes, BBB allows anyone to post slanderous gist, causing small business owners and their business reputation to be harmed with permanence, quite the contrary.

408.   This is completely unacceptable, and even hypocritical.

409.   If the BBB wants to lead by example, the BBB should have their own BBB profile page where small businesses can post their reviews of the BBB.

410.   A BBB profile does not exist, proving the BBB fails to lead by example. Pictured on the next page, Plaintiff attempted to post his genuine and authentic opinion of Weintraub Tobin of Sacramento, who was blocked by the BBB.

411.   The error stated, "Your review contains what appears to be confidential information."

412.   Plaintiff alleges the BBB has already updated their website to cover up, or they filter the use of the BBB name, violating Our First Amendment (Amendment I) to the United States Constitution.

413.   Secondly, the False and Defamatory Accusations and Gist the Defendants posted on the BBB website, was internally approved. As the very mention of 401k is considered confidential information. Plaintiff asserts something is very wrong here, and a a result of all Defendants actions described herein, each Defendants must be punished to the fullest extent allowable by Law, including monetary sanctions, in order to punish, deter, and teach Defendants a lesson they will never forget for such unlawful and willful acts.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 204 -

# Better Business Bureau®

Join/Apply | Consumer Login

**Find**   What are you looking for?   ✕      **Near**   Sacramento, CA

Home > California > Sacramento > Lawyers > Weintraub Tobin > Customer Reviews

**Customer Reviews**

# Weintraub Tobin

## 0 Customer Reviews

Sort By   Date

**What do you think? Add your review.**



10 word minimum.

James Kachmar of Weintraub Tobin, who's representing the BBB, willfully chose the litigation process, instead of resolving the matter through a settlement process.

Mr. Kachmar chose the litigation route as he's aware the BBB is valued at over 208 billion dollars, and it's more lucrative to his firm.

Do not hire this firm, they only focus on the size of your case, and how much cash they can get, and not on the merit of your Complaint.

☑   I agree to the Customer Review Terms and Conditions

! Your review contains what appears to be confidential information

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 205 -

**G1C. Plaintiff Proves The BBB Controls Their Website With Prejudice**

414.  Pictured below, Lyft's at 1 star, where **the rating is A+**.



415.  Pictured below, Uber's at 1 star, where **the rating is F**.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

## G1D. An Investigation Reveals The Truth

416.    The BBB did not conduct a proper investigation before publishing the False and

Defamatory Accusations and its Gist for the world to see, turning the incendiary damages caused by

Defendants to turn radioactive, causing irreversible damages to Plaintiff, his Wife, and iHug.

417.    A false and defamatory statement of and concerning Plaintiff was also published by

Defendants on March 16, 2019 before a proper investigation had been conducted by the BBB.

418.    Plaintiff's Company, iHug, has testimonials from Seniors and healthcare patients

which accurately reflected iHug's services. These testimonials indisputable prove iHug was in

operation, and a legitimate transportation operation, contrary to BBB affirming Plaintiff's "Company

does not exist."

419.    If the BBB would have conducted a thorough investigation, the BBB would have

concluded that Plaintiff's Company, iHug's website contained a Board of Advisors, Investors and

Team Members, who were genuinely involved, who signed NDA's and other legal documents

proving there was a real team and board of advisors. Quite the contrary to the False and Defamatory

Accusations and its Gist posted by the BBB affirming Plaintiff "created fake profiles."

420.    If the BBB would have conducted a thorough investigation, the BBB would have

concluded that Plaintiff's Company signed a contract with a new healthcare partner which allowed

transportation for healthcare patients and seniors. Indisputably proving iHug was a real transportation

operation, quite the contrary to the False and Defamatory Accusations and its Gist posted by the BBB

affirming Plaintiff "Company doesn't exist."

421.    Plaintiff reasserts and incorporates each and every allegation herein as if fully restated

herein, that the BBB allowing, and encourages reckless and intentional Defamation and Slanderous

conduct without proper tertiary layers, and investigations before allowing the publication of false and

defamatory statements of and concerning, Plaintiff, and possibly other small businesses, which would

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 207 -

1  constitute a "class-action lawsuit," where damages would astronomically multiply.

2      422.   Upon any investigation and the responsibility of the BBB, it would have found the

3  review and other statements are without merit, in particular, Plaintiff "created false profiles of execs."

4      423.   Hap Klopp offered mentorship to Plaintiff who had a profile on iHug's website. Hap

5  wanted to help condition Plaintiff to become a great visionary, using the gift God bestowed upon him

6  to use for the people.

7      424.   For 25 years, Kenneth (Hap) Klopp, who holds an MBA from Stanford University,

8  was the President of the North Face, a firm that created the standard for innovation and quality in the

9  outdoors, mountaineering, backpacking and skiing industries.

10      425.   Plaintiff met with Hap Klopp on multiple occasions for investment and mentorship,

11  proving profiles on iHug's website are genuine and authentic, quite the contrary to the False and

12  Defamatory Accusations and its Gist posted by the BBB affirming Plaintiff "creates false profiles."

---

Found in Adam's iHug Corporate Email Inbox

**Hap Klopp**        9/14/17 
To: Adam John        Details

Bill Gates was once asked what his role
was at Microsoft. His response was
interesting. He said, "My role is to have
the vision and constantly articulate it."
Sounds like what should be at the heart
of every CEO's job description.


      Keep up the good work,  Hap

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 208 -

426. Pictured below, Hap and the Plaintiff before Defendants slandered Plaintiff.

# Our Team





**Adam**

Founder, Chief Executive Officer
and Chairman of the Board

**Hap**

Former Board Member, Mentor
and Founder of The North Face

427. Pictured below, Hap endorsed Plaintiff the LinkedIn.

" Adam is one of the most diligent businessmen
that I have had the pleasure to deal with. His
follow through is second to none and his
ability to listen and incorporate ideas from
others really sets him apart from other
businessmen.

 **Hap Klopp**
Advisor at GoFind.ai
Nov 3, 2017, Hap was senior to Adam but didn't
manage directly

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 209 -

428.    Furthermore, based on the sheer size of the "global influence," of the BBB, amassing hundreds of millions of people to use the bbb.org site every day, caused Plaintiff and iHug, direct, assumed and irreparable damages on a daily basis since 2017 to present. The very fact that the BBB allowed Defendants to spread False and Defamatory Accusations and its Gist to hundreds of millions of people is reckless and unacceptable.

429.    The BBB, is an organization the world holds to the highest level of standards, including the highest level of accountability, as the BBB willfully put itself in a position to lead by example and to always do the right thing, influencing hundreds of millions of people and small businesses every day.

430.    The BBB continues to refuse the removal of the un-authorized BBB profile for Plaintiff's Company, iHug.

431.    Plaintiff demanded the removal on multiple occasions dating back to 2017 when Defendants started fabricating situations that would strike up complaints against Plaintiff's Company, iHug, causing litigation procedures and attempt to wrongfully imprison Plaintiff for investor fraud.

432.    These False and Defamatory Accusations and its Gist against Plaintiff's Company, iHug, and the Plaintiff are defamatory per se, as they are libelous on their face without resort to additional facts, and as clearly demonstrated herein, Plaintiff was subjected to public hatred, contempt, scorn, obloquy, and shame. Including Plaintiff losing his local and global mentors to help him grow as a businessman, so iHug has a great leader that will enrich everyone's life in healthcare.

433.    Pictured on the next page, after the Defendants slandered Plaintiff to his investors, claiming Plaintiff stole millions, Plaintiff lost his mentor, Hap and many others. Even more scandalous, Defendants wanted to ensure Plaintiff's reputation would remain damaged, Defendants used the BBB's site, in particular the customer review system, as a podium, to freely post False and Defamatory Accusations and its Gist against Plaintiff and iHug with knowledge of its falsity, so

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 210 -

that any investor can verify the false accusations, causing even more incendiary damages.

**Before the** slander and defamation of character:

| Subject: | Re: iHug Update |
| --- | --- |
| **From:** | Hap Klopp ⬛⬛⬛attglobal.net>   (Add as Preferred Sender) ✪ |
| **Date:** | Sat, Sep 09, 2017 8:34 am |
| **To:** | Adam John <adam@ihug⬛⬛⬛ |

Thanks for the update.  Sounds like wonderful, positive progress.  I look forward to seeing the numbers and seeing who will be the right investor(s) for you.
Best Regards,  Hap

> On Sep 8, 2017, at 9:37 PM, Adam John <adam@ihug⬛⬛⬛ wrote:
>
> Hap—
>
> We are almost done with our pro-forma. I will have the new deck with live numbers ready for you to review by Tuesday. I'll also send you what we need to get started as far as resources go. Hopefully a VC is willing to invest their own money who sees the vision and understands the numbers.

**After the** slander and defamation of character:



| | Search Results > Message Detail | | | Print | | Ne |
| --- | --- | --- | --- | --- | --- | --- |

Entire thread

| Subject: | Request |
| --- | --- |
| **From:** | Hap Klopp⬛⬛⬛ ✪ |
| **Date:** | Tue, Apr 17, 2018 9:16 am |
| **To:** | Adam <adam@ihug. |

Adam—
It was called to my attention that you still have my name on your website and materials as an advisor. Since I am no longer filling that role I would respectfully request that you remove any reference to me. Can you please do so and confirm to me. I hope that your enterprise continues to grow and positively evolve.
Best Regards, Hap Klopp

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 211 -

434.   Furthermore, the sheer size and global influence of the BBB, has given an insurmountable amount of credibility to the False and Defamatory Accusations and its Gist for the world to see, turning the incendiary damages caused by Defendants to turn radioactive, causing irreversible damages to Plaintiff, his Wife, and iHug

435.   As a direct and proximate result of the False and Defamatory Accusations and its Gist Plaintiff, his Wife, iHug suffers severe damages.

436.   The publication of the False and Defamatory Accusations directly and proximately caused substantial and permanent damage to Plaintiff, his Wife, and iHug.

437.   The False and Defamatory Accusations were republished by third-parties and members of the mainstream and social media mob of other bullies, which was reasonably foreseeable.

438.   The False and Defamatory Accusations against Plaintiff, his Wife, and iHug are defamatory per se, as they are libelous on their face without resort to additional facts, and as clearly demonstrated here, Plaintiff was subjected to public hatred, contempt, scorn, obloquy, and shame.

439.   As a direct and proximate result of the False and Defamatory Accusations Plaintiff is forced to live his life in a constant state of concern over his safety and the safety of his Wife.

440.   The BBB should be held equally accountable as Lyft, Uber, Andreessen, Defendants and Does, especially a corporation that's been established for well over 100 years.

441.   Plaintiff further argues, The BBB should be dealt with and held fully accountable for its wrongdoing in a manner which effectively deters the BBB from again causing incendiary damages to anyone ever again. In a civil lawsuit, punishment and deterrence is found in awarding money damages to the victim and target of the False and Defamatory Accusations and its Gist.

442.   Plaintiff is entitled to an award of punitive damages to punish the BBB and to deter it from repeating such egregiously unlawful misconduct in the future.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 212 -

443.   Pictured below, Defendants continue their unlawful rounds of posting yet more false and defamatory accusation, posting it to Plaintiff's Driver App in the Apple App Store.

444.   Plaintiff's new Driver App, ranks #1, above Uber, Lyft and all other nationwide competitors.

445.   Defendants falsely claimed iHug "is fake and they charge money."

446.   This was a willful and malicious attempt to de-rank iHug so Uber and Lyft can rank higher, suppressing iHug **yet again**.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 213 -

### G2. Second Attempt to Wrongfully Imprison Plaintiff – Investor Fraud

447. Shortly after Joe, Louis and Does resigned from iHug, its alleged they publically met with Lyft Co-Founder, John to receive further instructions.




448. Joe, Louis and Does were instructed to call iHug's investors, partners, team members, drivers, customers and other affiliates, where they stated, Plaintiff, "stole Joe's vehicle" and stole "millions of dollars from investors." This started to disintegrate Plaintiff and iHug's reputation.

449. Pictured below, *1 month later*, everyone asks to be disassociated, including drivers.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 214 -

450.    Pictured below, Joshua Moore, ("Josh") who's friends with Joe, Louis and Does, who's associated with an AMR/Lyft/Sutter Health partnership, began slandering Plaintiff throughout the healthcare transportation industry, causing severe reputational damages after Plaintiff sent him a text hoping he was onto bigger things in business.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 215 -

451.    Pictured below on the left, an iHug investor, Shahla, agrees, Jerry misappropriated her investment of $75,000. Pictured below on the right, after Joe, Louis and Does contacted and manipulated Shahla, she suddenly threatens Plaintiff and his Wife, using "FBI" and "Immigration Customs Enforcement," to wrongfully arrest Plaintiff and deport his Wife back to Australia.



452.    Plaintiff and his Wife never disclosed to Shahla they married, substantiating Shahla is colluding with Joe, Louis and Does, as Joe was Plaintiff's "best man" at the wedding, who's also familiar with the immigration process.

453.    Shahla then went on to alert the authorities, based on the false information provided by Defendants, in an attempt to harm Plaintiff and deport his Wife from The United States of America.

454.    On June 11, 2019 at 8:30AM, two Immigration Agents (Officer Henderson) in the fraud department, unexpectedly visited Plaintiff's residence. Plaintiff and his Wife's immigration attorney was not present but stated later that it is "highly unusual and rare."

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 216 -

455.    Nearly 80% of the interview from Immigration Agents was related to iHug, investor fraud, profitability, patents, launch dates and other specifics, unrelated to the immigration process.

456.    Plaintiff continued executing on his $1,200,000,000,000 trillion-dollar healthcare opportunity as he had a duty to investors. Rides increased month over month, including long distant rides.

457.    iHug's new partner had 35 years of experience in healthcare began to connect iHug with Brookdale, Eskaton, Dignity Health, Sutter Outpatient Facilities, Atria Senior Living, Golden Pond, Kaiser Permanente, Water Leaf, Greenhaven estates and other skilled nursing facilities and assisted living facilities that use Lyft, Uber and AMR, who preferred iHug's premium rideshare for healthcare service over Defendants taxi service.

458.    This gave Defendants an extreme amount of motive to unlawfully stop iHug, and Plaintiff, establishing all allegations stated herein, was orchestrated by Defendants.

459.    Pictured on the next page atop, a snippet of the inflow of transactions and ride requests from the partnership.

///

///

///

///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 217 -

| Amount | Currency | Status | | ID | | Email | Date |
|---|---|---|---|---|---|---|---|
| $52.00 | USD | Succeeded ✓ | | 50GXCIR0ubFh9icbK | | .com | 2018/02/28 22:39:04 | ⋯ |
| $82.00 | USD | Succeeded ✓ | | 50GXCIR0uLBEPCPeS | | .com | 2018/02/28 19:05:42 | ⋯ |
| $65.00 | USD | Succeeded ✓ | | K50GXCIR0uWNtO2EQT | | ahoo.com | 2018/02/28 18:10:23 | ⋯ |
| $40.00 | USD | Succeeded ✓ | | 0GXCIR0uoGjXGD4A | | ail.com | 2018/02/28 17:29:02 | ⋯ |
| $40.00 | USD | Succeeded ✓ | | 0GXCIR0uKUCuBdrm | | ail.com | 2018/02/28 17:28:05 | ⋯ |
| $40.00 | USD | Refunded ↩ | | 0GXCIR0uHreZU086 | | ail.com | 2018/02/28 17:19:50 | ⋯ |
| $52.00 | USD | Succeeded ✓ | | 0GXCIR0usUbjX16z | | .com | 2018/02/28 13:41:09 | ⋯ |
| $65.00 | USD | Succeeded ✓ | | K50GXCIR0urHkPFnq2 | | t.net | 2018/02/27 12:01:56 | ⋯ |
| $5.00 | USD | Succeeded ✓ | | GXCIR0uylePLFdl | | lth.com | 2018/02/27 00:00:00 | ⋯ |
| $107.00 | USD | Succeeded ✓ | | 50GXCIR0uyKTpQKZR | | .com | 2018/02/26 22:01:32 | ⋯ |
| $50.00 | USD | Succeeded ✓ | | 50GXCIR0uiwasLZWE | | .com | 2018/02/26 21:41:31 | ⋯ |
| $26.00 | USD | Succeeded ✓ | | 50GXCIR0uMnbNWqzB | | .com | 2018/02/26 21:18:35 | ⋯ |
| $25.00 | USD | Succeeded ✓ | | 0GXCIR0uEUtJ6SDv | | .com | 2018/02/25 23:51:37 | ⋯ |
| $40.00 | USD | Succeeded ✓ | | 0GXCIR0uaBAO5ZbI | | ail.com | 2018/02/25 18:20:30 | ⋯ |
| $40.00 | USD | Disputed ⊘ | | ByO5FK50GXCIR0u195jQ9U4 | | lth.com | 2018/02/22 09:42:17 | ⋯ |
| $65.00 | USD | Succeeded ✓ | | 0GXCIR0uywbZkGy8 | | t.net | 2018/02/20 13:09:36 | ⋯ |
| $82.00 | USD | Succeeded ✓ | | 0GXCIR0u7mvK1lQC | | | 2018/02/18 18:22:13 | ⋯ |
| $41.00 | USD | Succeeded ✓ | | 0GXCIR0u3qt3PTk6 | | | 2018/02/15 16:44:13 | ⋯ |
| $40.00 | USD | Succeeded ✓ | | 50GXCIR0ukp0B2mDi | | .com | 2018/02/15 14:03:38 | ⋯ |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 218 -

460.    Pictured below, a long-distance ride receipt, where the patient received an extra level of service, with a driver who's CPR certified. A premium rideshare service healthcare executives preferred over Defendant's taxi service that could save a life if needed.



461.    Pictured below, a medium-distance ride receipt where the patient received an extra level of service, with a driver who's CPR certified. A premium rideshare service healthcare executives preferred over Defendant's taxi service that could save a life if needed.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 219 -

462.     Pictured below, one of many payments from assisted living facilities who didn't have

a suitable transportation option prior to iHug. Facilities preferred iHug's service over Defendants taxi

service, as iHug had CPR and Basic Life Support Certified Drivers and healthcare professionals, who

transported Dialysis, Cancer, Alzheimer patients and other healthcare patients alike.

463.     Drivers also preferred iHug service over Defendants Taxi service, as iHug paid its

Drivers over 100 times more than Defendants.



464.     iHug started to take market share from Defendants, as Facilities preferred iHug's

service over Defendants' taxi service.

465.     Brookdale Senior Living, a well-renown senior living community with over 1,000

retirement communities in the United States, signed up to use iHug's services.

466.     Pictured on the next page atop, are a few of many Facilities signing up to use iHug's

services over Defendants taxi service.

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 220 -



467.    Even more groundbreaking, iHug's partner also received an email from nationwide

health facilities, including but not limited to, Kaiser Permanente and Eskaton's COO to setup iHug's

portal to use their services over Defendants taxi service. Eskaton exists solely to fulfill its mission of

enhancing the quality of life of seniors. iHug's service embodies the vision of Eskaton, and more

importantly, all other healthcare organizations as iHug's Drivers could save a life if needed, that

required each Driver to be CPR certified, clean background, and hold a first aid kit in their vehicle.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 221 -

468. As the natural and foreseeable consequences of Defendants actions, Defendants knew their unlawful actions would cause irreparable damages to iHug, Plaintiff, his Wife, and Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, as well as his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system, which could have had a positive impact on the world.

469. Defendants relentlessly continued attacking Plaintiff's partnership, using outrageous anticompetitive taxi-industry tactics, including using **burner phones and interfering with ride requests and server stability, while using fake credit cards to create fake ride requests.**

470. Pictured below on the left, Lyft claims Uber used burner phones and fake credit cards to unfairly compete.

471. Pictured below on the right, a source claims Lyft Headquarters booked rides from fake rider accounts, where the corporate card zip codes led back to Lyft Headquarters.

## Uber Gave Contractors Burner Phones And Credit Cards To Create Fake Lyft Accounts And Recruit Drivers

Earlier this month, Lyft and Uber got into a war of words over shady recruitment processes and anticompetitive tactics used in the literal "street fight" over drivers in markets that

accounts. Of the cancellations, many were made before Uber's cancellation fee kicked-in.

A source claims that these rides were all paid for by two corporate credit cards with the same ZIP code in San Francisco's Mission District, where Lyft's headquarters are located. Of those trips, at least 300 were requests for Uber's high-end Select cars, with the aim of recruiting for Lyft Premier.

472. Whereas in this Complaint, before, during and after iHug's launch week, Defendants instructed Joe to book fake ride requests, using fake credit cards, as pictured below.



| | | |
|---|---|---|
| | USD Default | 65 |
| Type | Bank account | |
| Created | 2018/01/09 15:58 | |
| Origin | 🇺🇸 United States | |
| Fingerprint | | |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 222 -

473.    Pictured below, Joe books fake ride requests, tortiously interfering with iHug's

operations, in an attempt to crash iHug's server and API, in a "cyber-attack method."

| AMOUNT | | DESCRIPTION | | CUSTOMER | | DATE |
|---|---|---|---|---|---|---|
| $40.00 | USD | (Failed ✗) | ch_1Bl | FcW | joe | ol.com | Jan 17, 2018, 8:08 PM |
| $40.00 | USD | (Failed ✗) | ch_1Bl | Mh9 | joe | ol.com | Jan 17, 2018, 8:08 PM |
| $40.00 | USD | (Failed ✗) | ch_1Bl | 1TY | joe | ol.com | Jan 17, 2018, 8:08 PM |
| $40.00 | USD | (Failed ✗) | ch_1Bl | bTT | joe | ol.com | Jan 17, 2018, 7:46 PM |
| $40.00 | USD | (Failed ✗) | ch_1Bl | zyT | joe | ol.com | Jan 17, 2018, 7:46 PM |
| $40.00 | USD | (Failed ✗) | ch_1Bl | Q4U | joe | ol.com | Jan 17, 2018, 7:46 PM |
| $40.00 | USD | (Failed ✗) | ch_1Blgh5 | | joeac | com | Jan 18, 2018, 8:56 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blgh5 | | joeac | com | Jan 18, 2018, 8:56 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blgh5 | | joeac | com | Jan 18, 2018, 8:56 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blgh1 | | joeac | com | Jan 18, 2018, 8:56 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blgh1 | | joeac | com | Jan 18, 2018, 8:56 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blgh1 | | joeac | com | Jan 18, 2018, 8:56 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blcn4 | | joeac | com | Jan 18, 2018, 4:46 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blcn4 | | joeac | com | Jan 18, 2018, 4:46 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blcn4 | | joeac | com | Jan 18, 2018, 4:46 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blcmv | | joeac | com | Jan 18, 2018, 4:46 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blcmv | | joeac | com | Jan 18, 2018, 4:46 AM |
| $40.00 | USD | (Failed ✗) | ch_1Blcmv | | joeac | com | Jan 18, 2018, 4:46 AM |

474.    Even more outrageous, Defendants instructed Joe to grant them access, so they expose

iHug to a data breach, leaking iHug's entire healthcare API, which contained iHug's architecture,

highly confidential database rules, parameters and features, all Driver details including but not

limited to full names, addresses and other highly confidential contact details.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 223 -

475.   Pictured below, on January 18, 2018, at 3:13PM, while in the heat of tortious interference, Joe reset his password, allowing Defendants access.

476.   Plaintiff was immediately notified of multiple password changes and unrecognized device logins. Plaintiff and his VP of I.T. immediately blocked all access to his Healthcare API, to spoil the attempted breach.



477.   Plaintiff vehemently argues, this is a tactic that has been used by Defendants in the past. These types of unlawful anticompetitive tactics carried out by Defendants are putting people's identities, and safety at risk. Plaintiff speaks for all American's and the United States, this behavior is unacceptable. Plaintiff maintains, this is a clear violation of HIPPA laws. Plaintiff believes these actions support his *ex parte* application for injunction, removing Defendants from healthcare. Pictured below, an article outlining Defendants "*blame shifting*" the data breach, it's disgraceful.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 224 -

478.    On February 2, 2018, at 2:26PM, *15 days later,* Malcolm, and Does were

colluding with Joe, unbeknown to Plaintiff, after Joe's failed attempts to breach iHug's data.

Malcolm shared internal customer and driver lists with Joe, breaching confidentiality, and non-

disclosure Agreements, violating their fiduciary duty, compromising healthcare patients, under the

direction of Defendants. Pictured below, Joe confirms he received the lists.



479.    On February 26, 2019, Joe was instructed to continue in unlawful anticompetitive

tactics, where he hacked into iHug's systems after being blocked by Plaintiff and his VP of I.T.

480.    Google search history establishes, at 3:17AM, unbeknown to Plaintiff, Joe searched

how to hack into iMac computers at the iHug office. Plaintiff also noticed the keyboard and mouse at

his office desk had been moved.





---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 225 -

481.  Illegal **Hacking in violation of Computer Fraud and Abuse Act:**

The Computer Fraud and Abuse Act (CFAA) outlaws accessing certain computers or computer systems without authorization or in excess of authorization, with the intent to defraud.

**18 U.S.C. §1030(a)(4), (e)(2) says:**

(a) Whoever... (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any year period... shall be punished as provided in subsection (c) of this section.... (e) As used in this section... (2) the term 'protected computer' means a computer (B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States. (Emphasis added.) Accordingly, the CFAA has extraterritorial reach.

482.  California Penal Code Section 502 bars similar behavior. Part I makes it illegal to knowingly access and without permission, alter or use any data or computer system or network, to devise or carry out a plan to defraud, deceive, or extort, or to wrongfully control or obtain money, property, or data.

483.  Part 2 makes it illegal to knowingly access and without permission, take or use data from a computer or network, or take any supporting documentation, whether internal or external to a computer or network.

484.  Part 3 makes it illegal to knowingly and without permission use computer services or

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 226 -

cause them to be used.

485.    Part 5 makes it illegal to cause a disruption in service to an authorized user. Part 6 makes it illegal to knowingly and without permission help someone else access a computer in a manner that violates this law.

486.    Part 7 makes it illegal to knowingly and without permission access or cause to be accessed any computer, computer system, or computer network.

487.    As exhibited in all proceeding paragraphs herein, Joe, Louis, Ben, Jerry, John, and Does were aware and willfully engaged in many instances, where computer hacking tactics, and/or unauthorized logins took place.

488.    Wherein multiple instances within this Complaint, username and passwords are given with the intent to unlawfully access iHug's internal systems, where misappropriation of trade secrets occurred, conduct that violates the laws discussed in all proceeding paragraphs of this Complaint.

489.    Defendants intent in accessing iHug's internal systems was to unjustly enrich themselves without legal entitlement, in order to inflate their valuation pre-IPO, which has sprawled up multiple class-action lawsuits by investors and the United States Securities and Exchange commission has questioned Defendants behavior.

490.    On March 7, 2018, at approximately 10:19AM, *9 days later,* Defendants instructed Thomas Michael Kim, "Mike Kim" to steal iHug's partnership materials.

491.    The 2017 – 2018 material consisted of Grocery and Pharmacy transportation. The same services Lyft, and Uber launched in 2019.

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 227 -

492. Pictured below, Plaintiff caught Mike Kim attempting to steal iHug's confidential

corporate material from iHug's office. Plaintiff took a photo for evidence at Mike Kim's desk.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 228 -

### G3. Uber, Lyft and Andreessen Attacks

### Put Plaintiff's Wife in the Hospital, Who Underwent Surgery

493.    Plaintiff vehemently defends his Wife! Arguing Uber, Lyft and Andreessen orchestrated vile and malicious attacks while working in symphony with Joe, Louis, and Does to carry out the attacks on him for **years**.

494.    The attacks caused devastating damages to Plaintiff's Wife. *"Metaphorically"* speaking, *"Plaintiff tucked his Wife behind his back,"* to *"shield her"* from the onslaught of continued brute force attacks, the magnitude of the attacks reverberated through him into his innocent Wife's body.

495.    The willful attempt to falsely imprison Plaintiff, attempting to take him away from his Wife, caused his Wife to have multiple mental break downs, escalating and intensifying her emotions, while weakening her mental state, adversely effected her physical condition.

496.    Plaintiff's Wife was born with a hereditary condition called, endometriosis.

497.    Endometriosis has no cure, and flares up with increased stress levels.

498.    Trusted medical advice from the world's most prestigious medical school, establishes Endometriosis destroys internal organs of women who have the condition.

499.    Increased stress levels can dramatically increase the progression of the damage causing unbearable pain.

500.    Pictured below and on the next page, Harvard Health Publishing, outlining the basic understanding of Endometriosis:



Harvard Health Publishing
**HARVARD MEDICAL SCHOOL**
*Trusted advice for a healthier life*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 229 -

## Harvard Health Publishing
**HARVARD MEDICAL SCHOOL**
*Trusted advice for a healthier life*

## Symptoms

Many women with endometriosis do not have any symptoms from it. Those who have symptoms may experience:

- Severe discomfort, usually with heavy flow, during menstrual periods
- Pain in the pelvis or abdomen, usually just before or during menstruation, but sometimes throughout the month
- Backache
- Pain during or immediately after sexual intercourse
- Vaginal spotting before menstruation begins
- Bowel symptoms, such as:
  - Painful bowel movements
  - Diarrhea
  - Constipation
  - Rarely, blood in the stool
- Painful urination, or, rarely, blood in the urine
- Infertility or repeated miscarriages

---

### Conservative surgical treatments

During laparoscopy, your doctor will destroy small areas of extra endometrial tissue that are implanted outside the uterus. He may burn them away or use a laser to vaporize them. Your doctor also may trim away tissue that is displacing your pelvic organs. These procedures often can be done during a diagnostic laparoscopy session.



---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

501.   Pictured below, Plaintiff's Wife in severe pain at iHug's office, crying on the floor in private, in Plaintiff's office while Joe, Louis, and Does were threatening them, and attempting to take possession of the vehicle. The stress levels flared up her symptoms, causing progressive internal organ destruction.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 231 -

502.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the proceeding paragraphs of this Complaint as though fully set forth herein, asserts the following:

503.    On June 20, 2018, factual and circumstantial evidence, medical research and analysis, studies by the American Physiological Society, and forensic evidence establishes and substantiates Defendants actions induced Plaintiff's Wife into life threatening stress levels, causing her endometriosis to **severely flare up**. The pain ran down to her **lower abdomen, rectum, vagina and lower back.** Her body physically reacted to the severely high stress levels.

504.    Endometeosis has been established to cause scar tissue, *"scar tissue may cause pelvic pain and make it hard for a woman to get pregnant."* Plaintiff's Wife sustained severe uterous, rectum and stomach pain, causing her to cry uncontrollably, week after week, causing severe emotional damages as a result of Defendants willful attacks on Plaintiff for his $1,200,000,000,000 trillion-dollar healthcare opportunity, where in fact, it belonged to the people in healthcare who need it, who are suffering, not for Defendants used it to inflate their valuation for greed.

505.    Plaintiff cared for his Wife, while she was bedridden for days at a time. There was nothing the Plaintiff could do, even with his background in medicine, in particular, Stanford Medicine course studies. Plaintiff bought his Wife CBD oil to help alleviate the pain. He also bought her aspirin, pain killers, and sat by her side. He did everything to keep her mind off the pain.

506.    His Wife's condition continued worsening as she knew they were under corporate attack by Uber, Lyft and Andreessen, using Joe, Louis, and Does.

507.    The condition progressed to such a critical point, Plaintiff's Wife cried aloud, "I can't take the pain, I just want to stab myself in the stomach, STOP THE PAIN, please help! Babe it HURTS SO BAD PLEASE," while curling up in a fetus position in their bed, grabing her body from the pain. The love for his Wife caused Plaintiff to break down, holding her until she fell asleep

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 232 -

out of pure mental, emotional and physical exhaustion from the pain, while the endometriosis ate away at her internal organs causing irreparable bodily injury. This enraged Plaintiff. His first and only love was being destroyed inside as a result of the attacks. After Plaintiff ensured his Wife was resting, Plaintiff coded out a new software that would combat Defendants rideshare platform with minimal effort so he could rechannel his energy and focus on psychoanalyzing Defendants to anticipate, protect and engage in a legal prosecution.

508.    Plaintiff contacted a local Palo Alto, California endometriosis surgeon for help.

509.    The stress, mental anguish and undue duress caused his Wife's flare ups to be so severe, her endometriosis grew scar tissue on her muscles, causing adenomyosis. This caused severe menstrual cramps in her lower abdominal, causing unbearable and painful pressure and bloating.

510.    Adenomyosis is a condition in which the inner lining of the uterus (the endometrium) breaks through the muscle wall of the uterus (the myometrium). Adenomyosis can cause menstrual cramps, lower abdominal pressure, and bloating before menstrual periods and can result in heavy periods.

511.    As lectured by Keith Isaacson, M.D. at an event for the Endometriosis Foundation of America, speaking on the relationship between Adenomyosis and fertility, "That is a great question, because all our patients in the past had treatments in which they could not get pregnant. They were either placed on a Mirena IUD or they were given an endometrial ablation or they had a **hysterectomy**." Pictured below, an illustration of Plaintiff's uterus on the right, after the attacks.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 233 -

512.    The pain is descibed as, repeatedly scraping sand paper on an open wound, causing severe, and unbearable pain.

513.    The medical surgeon promised Plaintiff he would do his best to cut as much scar tissue from his Wife's uterus and stomach area.

514.    Plaintiff's Wife underwent surgery.

515.    After the surgery, while Plaintiff's Wife was in recovery, the medical surgeon sat with the Plaintiff. The surgeon broke the news that he had to diagnose Plaintiff's Wife with stage 4 endometriosis.

516.    This falls into the category 4 of endometriosis, the highest stage of endometriosis, which is defined as: Deep infiltrating endometriosis, the endometriosis is present outside the pelvic region as well, and may have implanted in distant organs like the **heart, lung, and brain**. Even more devasating, the surgeon stated, the scar tissue grew on Plaintiff's Wife's rib cage from the severe flare ups. Plaintiff was deeply hurt as he put his head down to cry causing his heart to physically hurt.

517.    This struck up a fire in Plaintiff to prosecute Defendants for their heinous actions.

518.    After the surgery, Plaintiff cared for his Wife to recovery.

519.    Pictured below, a factual article from WebMD, substatiating the suffering from the pain, causes women to want to take their own lives.



WebMD  SUBSCRIBE

Pain Management > News >

## Chronic Pain May Drive Some to Suicide

By Robert Preidt

*HealthDay Reporter*

MONDAY, Sept. 10, 2018 (HealthDay News) -- Suffering debilitating pain every day may be so unbearable that some decide to take their own lives, new research suggests.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 234 -

520.   Plaintiff vehemelty argues the attacks from Defendants completely contributed to his Wife's severe flare ups. Whereas before the attacks she never had severe flares ups, and never had one thought of committing suicide. She did quite the opposite, she helped save women, and children from committing suicide through her YouTube Channel as a Social Media Influencer.

521.   Pictured below, Plaintiff's Wife recoverying in bed after surgery.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 235 -

522.    Plaintiff's Wife will forever be scarred emotionally, mentally and physically from the vile attacks by the Defendants. She has forever lost her innocence. Plaintiff decides he will seek justice for his Wife, and for the innocent dialysis, cancer and other terminally-ill people in healthcare who are unknownly being harmed by Defendants anticompetitive practices, especially those who are deprived of iHug's CPR and First Aid Certified Rideshare for Healthcare platform he founded. A vision God gifted to him for the people.

523.    Plaintiff calls for Lyft's Co-Founders and Uber's CEO to step down. Plaintiff calls on his fellow American's who work in Government to shakedown Defendants for these heinous acts.

524.    Pictured below, Plaintiff's Wife's stomach after undergoing surgery, where multiple incision were made cutting out scar tissue from all areas of her lower mid-section of her body.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 236 -

525.    Pictured below, Judy, an iHug Cancer patient who used iHug's service to attend her chemo treatments and check ups at Sutter. She states, "I would recommend this to anybody, this is a wonderful way to get home, to get to your doctor, they are very good drivers, and they are very safe and do everything good, and I sit in a wheelchair so they are very helpful, and I would recommend them to everyone in the city who need a ride." Whereas, Judy will never be able use iHug's service as a result of Defendants ferocious attacks on iHug, causing irreparable damages, and closure of iHug.



Video Testimonial 1: https://www.dropbox.com/s/0uq3bi5b9kt3pd2/IMG_2587.mov?dl=0

Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 237 -

526.     On July 23, 2018, *30 days later*, after Plaintiff and his recovering Wife were harrassed by a man claiming to be a private investigator who had a firearm, <u>John personally came to Sacramento to ensure iHug ceased operation</u>, as Joe, Louis and Does had been unsuccessful thus far, where Plaintiff was able to fight for possession of his vehicle, staying away from Uber and Lyft apps.

527.     Pictured below, John visited Louis' Driver group in Sacramento, California.

 

528.     On July 30, 2018, *7 days later*, after Joe and Louis met with John, on July 23, 2018, Joe hired an attorney, who sent Plaintiff a demand letter. The strategic and calculated attack by Defendants, would achieve the following but not limited to:

   (1) An employment attorney would cause undue financial damages to Plaintiff, and

       his Wife in order to halt iHug's operations.

   (2) An employment attorney would require Plaintiff to provide Joe's legal documents

       for review. Joe would then hand those legal documents off to Defendants, so

       Defendants can order legal teams to start protecting Defendants from the collusion.

   (3) The hired employment attorney caused irreparable damages by contacting iHug's

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 238 -

investors and personnel, including iHug's partner, stating Plaintiff stole Joe's car,

a claim Joe knew was false, in order to tortiously interfere with Plaintiff's

$1,200,000,000,000 trillion-dollar healthcare opportunity, and his

$25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars,

halting iHug's operation.

(4) Joe's attorney demanded Joe hold equity in Plaintiff's new company, legally

requiring Plaintiff to disclose details to Joe, where Joe would leak them to

Defendants.

529.    These were mere attempts to wrongfully imprison Plaintiff through a litigation

process, which involved contacting iHug's investors, partners, customers, and other affiliated parties,

claiming false allegations.

530.    The termination of iHug's partnership, would allow Defendants to freely claim

Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity on IPO day.

531.    Plaintiff vehemently argues the evidence presented herein, establishes the very

allegations brought against him, were intentionally fabricated by Defendants causing undue duress

while Joe, Louis and Does, continued causing irreparable damages.

532.    Pictured below, Joe's attorney emailed Plaintiff in July.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 239 -

533.   Pictured below, on August 23, 2018, *30 days later*, Defendants actions caused the termination of iHug's healthcare partnership, allowing Defendants to claim Plaintiff's $1,200,000,000,000 healthcare opportunity as their own, disguising it from a healthcare opportunity, to household income expenditure per SEC Filing Statements.



534.   Pictured below, on March 28, 2019, *1 day before*, IPO, Defendants claim Plaintiff's $1,200,000,000,000 healthcare opportunity, disguising it as a household expenditure.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 240 -

535.   After the onslaught of ferocious attacks on Plaintiff and iHug, Plaintiff was forced to close iHug's transportation services. Defendants unlawfully robbed Plaintiff of his once-in-a-lifetime opportunity to build something truly special for our loved ones, seniors and healthcare patients. Plaintiff had a mission to leave something special behind in his name that would help generations to come, much like his role-model, Steve Jobs. Pictured below, John and Louis celebrate.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 241 -

**G4. The Securities Act of 1933 Violation Investigations**

536.    After Joe, iHug's COO, Jerry, iHug's Software Developer, and Darren, iHug's CFO betrayed Plaintiff, misappropriating Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, Defendants immediately disguised Plaintiff's $1,2000,000,000,000 trillion-dollar healthcare opportunity as "household transportation expenditure," sending such fabricated statistical reports to the Bureau of Transportation Statistics to post *3 months prior* to IPO. Defendants $1,200,000,000,000 trillion-dollar **explanation**.

## Bureau of Transportation Statistics

- **Transportation accounted for $1.2 trillion (9.2 percent) of total national household spending (including spending on behalf of households such as**

Plaintiff's misappropriated $1,200,000,000,000 trillion healthcare **opportunity**.

# (i) iHug 10 Year Expansion Plan

Converted Rideshare
$307B by 2030

$355B by 2020

$248B by 2020

$22B by 2040

$355B by 2040

**$1.2B Trillion Dollars**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 242 -

## G4A. Basic Math Calculations

537. Lyft Claims $1.2 Trillion-Dollar Household Vehicle Expenditure:

538. Per U.S. Census Bureau, there are 127,590,000 households in the United States, multiplied by $9,000 per John Zimmer and Logan Green, equals $1,148,310,000,000 trillion-dollars.

---

In 2018, there were about 127.59 million **households** in the United States. According to the **U.S.** Census Bureau, a **household** consists of all the people who occupy a housing unit.

• **U.S.: Number of households 1960-2018 | Statista**
https://www.statista.com/statistics/183635/number-of-households-in-the-us/

---

539. Per U.S. Census Bureau there are 1.97 light vehicles per U.S. Household multiplied by $9,000 per John Zimmer and Logan Green, equals $17,730 cost per household, times 127,590,000 households per U.S. Census Bureau equals $2,262,000,000,000 trillion-dollars.

---

On **average**, there are 1.97 light **vehicles per** U.S. **household**. According to the U.S. Census Bureau, the percentage of **households** without a car or light truck came to 8.6 percent in 2017, meaning that over 90 percent of **households** had at least one light **vehicle** at their disposal in that same year. May 7, 2019



---

540. Plaintiff argues no equation equals $1,200,000,000,000 trillion-dollars as described by Lyft's Chief Financial Officer, Brian Roberts, Lyft's Co-Founder John Zimmer, Lyft's Co-Founder Logan Green, which was signed off to the United States Securities and Exchange Commission by Ben Horowitz.

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 243 -

541.    After the SEC scrutinizes Uber and Lyft for filing draft registration statements, or

S1s, confidentially with the SEC on the same day, December 6, 2018, Defendants immediately

accelerate their plans to cover up the real $1,200,000,000,000 trillion-dollar healthcare opportunity,

and attempt to wrongfully imprison Plaintiff to keep him silent.

---

**☰  *MarketWatch***                                                    Sign Up • Log In    Q

**Lyft Inc. and Uber Technologies Inc. say they are business rivals, but the U.S. Securities and Exchange Commission had a lot more comments on Uber's business before both companies went public this year, in particular focusing on the ride-hailing leader's adjusted financial numbers.**

---

542.    Based on the willful acts alleged herein, under the discretion of the Courts, a parallel

proceedings may ensue, involving a criminal prosecution, see *United States v. Kordel, 397 U.S. 1*

*(1970)*:

"The Supreme Court stated that "[I]t would stultify enforcement of federal law to require a

government agency . . . invariably to choose either to forgo recommendation of a criminal

prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a

criminal trial," supported by the following statues, the Sherman Act, 15 U.S.C. §§1-3, 15, 15(a)

(1988) (antitrust); the Securities Act of 1933, 15 U.S.C. §77t (1988);

543.    Defendants attempt to wrongfully imprison Plaintiff, as he was the only man who had

power to claim the opportunity, as he was the founder of the opportunity, and could contact the SEC

to report the unlawful misappropriation of the real $1,200,000,000,000 trillion-dollar opportunity.

544.    Pictured on the next page, Plaintiff's Wife wrote out indisputable events in a timeline,

outlining the attacks on Plaintiff and sabotage, including making Plaintiff and his Wife homeless.

---

Adam John Mackintosh —vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 244 -

2018 - 2019 (pre IPO)

Going IPO - Cover up

*Lyft/Uber under investigation - attacks begin.

Investor warns Adam of wage theft.
Dec 21

Gap gives Adam 2nd "bonus check"
Jan 31

Amy calls police on Adam for assault. Mar 1  (sabotage)

Gap gives Adam 1st "bonus check"

Feb 1
Gap tries to get Adam to order 3rd "bonus check"

Adam sends settlement demand.

Dec 6, 2018     Dec 11     Dec 22     Mar 14

Lyft files for IPO

Uber files for IPO (sabotage)

Adam's car stolen (sabotage)
Dec 18
Joe goes overseas

Dec 23
Louis goes to Gap he's HR (sabotage)

Dec 31
Car recovered by police.
Joe had it.

Feb 18
Car parked @ Gap/Breaks down on way home. (sabotage)

Mar 29
Lyft go IPO, Adam's settlement demand expires.

Fake $1.2 trillion, John/Logan rehearse fake $1.2 trillion opportunity in interviews

Lyft/Uber under investigation

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

### G5. Third Attempt To Wrongfully Imprison Plaintiff – Wage Theft and Stolen Vehicle

545. After Plaintiff was slandered, and robbed of his healthcare partnership by Defendants willful tortious interferce, Plaintiff sustained irreparable damages.

546. As a result of Defendants orchestration, working in symphony with Louis, Joe and Does, Plaintiff was forced to close iHug's transportation services. iHug was supressed by Uber and Lyft from continuing to offer wheelchair accessibiliy, and medical rides to cancer, dialysis and other terminally ill patients.

547. Plaintiff started working at an employer on October 12, 2018 and unbeknown to Plaintiff, Louis also worked at the same employer. Plaintiff had to pay medical bills for his Wife's surgery, and other expenses he incurred, while under corporate attack and undue duress. **Plaintiff knew Louis was recruiting Drivers at the new employer, on boarding them Defendants platform while receiving cash incentive. It's Uber and Lyft's culture, to prey on low income Drivers and control them.** When Louis saw Plaintiff, he panicked and speed down the hall.

548. Louis gave Joe Plaintiff's place of employment, as he and Plaintiff's Wife were the only individuals who knew of Plaintiff's place of employment.

549. On December 10, 2018, Plaintiff's vehicle was stolen by Joe. Joe used a spare key he claimed didn't exist at the time of sale, see Plaintiff's Wife's declaration in case *#19SC02789 Mackintosh–vs–Acebedo, she witnessed Joe stating, there's only one key.*

550. Pictured on the next page, you will see Plaintiff's Wife's electronically filed Declaration at the Superior Court of California, County of Sacramento, confirming she witnessed Plaintiff and Joe's conversation regarding the sale of the vehicle, and the status of the keys. **Under penalty of perjury**, Plaintiff's Wife states:

551. "I witnessed Josef, ("Joe") stating to Adam, ("Plaintiff") there was only one key for the vehicle."

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 246 -

ELECTRONICALLY
FILED
Superior Court of California
County of Sacramento
Small Claims Division

DECLARATION

-I witnessed Josef stating to Adam there was only one key for the vehicle.
-I witnessed Josef and his wife intentionally withholding the vehicle title from Adam.

-I witnessed Josef stating to Adam there was only one key for the vehicle.
-I witnessed Josef and his wife intentionally withholding the vehicle title from Adam.

552.    This was a calculated effort to force Plaintiff to use Defendants' ridesharing apps,

Uber and Lyft, so Defendants could use the Hell Program on Plaintiff, invading all privacy and

whereabouts between Plaintiff and his Wife, or Plaintiff would lose his job for lack of transportation

and poor attendance.

553.    Even more wicked and intentional, after Plaintiff and Louis bumped shoulders while at

the employer, Louis asked Plaintiff, "How's your wife?" This enraged Plaintiff even more, as he

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 247 -

knew Defendants were attacking his Wife personally. Plaintiff never disclosed his marriage to Louis, proving collusion with Joe and Does to deport Plaintiff's Wife. Pictured below, Plaintiff's receipts confirming he was forced to use the Uber and Lyft apps, exposing him to the Hell Programs.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 248 -

554.    On December 21, 2018, *11 days later*, as pictured below, weeks after Louis found out Plaintiff worked at the same place of employment, a former iHug investor sent Plaintiff an article. The article claims an employee was sentenced to prison for wage theft from his employer. Plaintiff took the message as a warning. This was the same Whistleblower Driver who drew out Uber and Lyft's internal operations that unlawfully obtains corporate secrets. Pictured below, the whistleblower's text message, warning Plaintiff he was going to be under more corporate attacks by Uber, Lyft, Benmarch, and Andreesseen who were planning to wrongfully imprison him for wage theft pre-IPO.




Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 249 -

555.   On or around December 23, 2018, *2 days later,* Plaintiff saw Louis walking into Human Resources, ("HR"). It's alleged Defendants were colluding to falsely imprison Plaintiff for wage theft with the help of the employer.

556.   On December 28, 2018, *5 days later*, Plaintiff received his <u>first sign-on "bonus check"</u> from the employer.

557.   On January 31, 2019, *33 days later,* Plaintiff was paid an unsolicited <u>second, duplicate "bonus check"</u> from the employer by direct deposit, not giving Plaintiff a chance to shred a check or return the funds to the employer. It was later called an "accounting error," after Plaintiff documented the deposit and started an HR process.

558.   On February 1, 2019, *1 day later,* Plaintiff was called to his employers HR Department and was instructed to call the accounting department to order a <u>third, duplicate "bonus check."</u> Pictured below, the intentional over-payment from the employer to Plaintiff.

This is to advise you that you have been overpaid for your sign-on bonus; one was paid on 12/28/18 and a duplicate on 1/31/19. The specific amount of the overpayment is outlined below. To resolve this error, please send a check or money order (*made out to ▮▮▮ Inc.*) for the amount shown below (in the **Total Repayment Due** box) to:



| Gross Amount Owed | Taxes | Deductions | Total Repayment Due |
|---|---|---|---|
| $200.00 | $81.76 | .00 | $118.24 |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 250 -

559.    Pictured below and on the next page, On February 1, 2019, Plaintiff documented his presence while in HR, where he was instructed to re-order a third, duplicate "bonus check." Where Plaintiff immediately corrected the accounting department, stating he was already paid a bonus check, and working to pay the overpayment back, and didn't need another, spoiling the planned attack. After HR realized Plaintiff fended off the setup, the Employer violated California Labr Code Section 1102.05, harrassing Plaintiff, accelerating him to final warnings attempting a termination.






Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 251 -





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 252 -

560.   After Joe unlawfully took possession of the vehicle from Plaintiff on December 10, 2018, its alleged Defendants were alerted by an informant within the Police Department, that Plaintiff had reported the vehicle stolen.

561.   Defendants then tamper with the vehicle engine before Plaintiff recovers it. Joe then takes an "overseas vacation" giving his friend permission to use the stolen vehicle.

562.   Pictured below, Joe took a "vacation" *7 days after* the vehicle was stolen, framing his friend with possession of a stolen vehicle. This would prevent Joe from being arrested for driving a stolen vehicle, as an investigation would lead back to Defendants.



46 likes

visionaryOne #family #vacay #philippines

View all 2 comments

18 DECEMBER 2018

563.   While Joe was on "vacation," Joe's plan worked. His friend was pulled over in Elk Grove, California, putting his friend's life at risk, with one wrong move, as he was pulled over at gun point by the Sacramento Sheriffs.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 253 -

564.   After Plaintiff was able to retrieve his stolen vehicle, the engine completely malfunctioned and stopped working.

565.   Pictured below, a screenshot of Plaintiff documented evidence of the tampered with vehicle. Plaintiff strategically parked his vehicle under video surveillance cameras at his employer's offices. When Plaintiff asked for video surveillance evidence from his employer for the day the vehicle stopped working, corporate security states the camera did not work that day.

Video Evidence: https://www.dropbox.com/s/scu8kfifajqjv5w/car_sabotaged.MOV?dl=0

Video Evidence: https://www.dropbox.com/s/zgfojlx1cy5ihia/IMG_0801.MOV?dl=0

 

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 254 -

566.    Pictured below, the vehicle stopped working. Leaving Plaintiff with no transportation.

Forcing Plaintiff to use the Uber and Lyft app, exposing him to the Hell Programs.






567.    The entire, orchestrated event, was part of Uber and Lyft's plan to force Plaintiff to

use the Uber and Lyft apps, exposing him to the Hell Programs. This enabled Defendants to

unlawfully violate his privacy, listening in on all competitive ideas of Plaintiff as Joe, Louis and Does

were no longer in his Life, and there was no other way for Defendants to gain intelligence.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 255 -

568. In a report by the Sacramento Sheriff's Department, it is established that the suspect who was in possession of the vehicle, borrowed the vehicle from Joe, substantiating Joe, Louis and Does unlawfully took possession of the vehicle, forcing Plaintiff to use Uber and Lyft's apps in order to expose Plaintiff to the Hell Programs. The only way Plaintiff could obtain part of the Police Report, was to legally request a copy from Geico.

569. The report also establishes Joe, Louis and Does were slandering Plaintiff, ruining Plaintiff's life, causing his friends and family to stay away from Plaintiff. This was an effort to force Plaintiff to quit his dreams of changing the world for the better as he was inspired by Steve Jobs, and others. This was also an attempt to falsely imprison Plaintiff so Defendants can claim the $1,200,000,000,000 trillion-dollar healthcare opportunity as their own without Plaintiff filing this Complaint to claim damages and take back his vision that was gifted to him by God for the people.

| HIST | SECT | SUB | SACRAMENTO SHERIFF'S DEPARTMENT CONTINUATION REPORT | PAGE | REPORT NUMBER |
| --- | --- | --- | --- | --- | --- |
| | | | | | 2018- |
| LOCATION OF INCIDENT | | | NTO, CA 95823 | DATE 12/30/2018 | DAY OF WEEK Sun | TIME 23:36 - 23:44 |

AUTHORITY/SECTION
PC 496D(A) - Poss Stolen Veh/Ves/Etc
COMPLAINANT/VICTIM (LIST FIRST VICTIM IF MORE THAN ONE)
Adam

**2350 Hours, 12/30/2018 (Sunday): I, Deputy B.** ▉▉▉▉▉▉**1), spoke with Gamalier** ▉▉▉▉**(S1) who related the following in summary:**

Yes. I understand my Miranda rights and I want to speak with you about what is going on. The car is not stolen. The car belongs to my friend Josef (Josef ▉▉▉▉▉O/M). I live here with him that's why I pulled into the driveway. Josef is currently out if the country with his wife right now. He should be returning back home in a week. Josef allowed me to use his car while he is gone.

The guy (Adam ▉▉▉▉/V1) who reported the car stolen does a lot of fraud stuff. Adam was business partners with Josef for a long time but not anymore. When they broke off their business relationship, Adam stole the car and hid it from Josef for about two years. Josef got the car back not too long ago. Josef and Adam have been going to civil court about the business assets and the car.

You can call Josef to confirm what I am telling you. Josef's mother is inside of the house too. She can tell you I'm not lying.

**End of Statement**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 256 -

570.   To further establish a preponderance of evidence that Joe, Louis and Does were under instruction to tortiously interfere and slander Plaintiff's reputation, a suspect Plaintiff had never met, stated to the arresting Sherriff's Officer, "The guy ("Plaintiff") who reported the car stolen does a lot of fraud stuff... he stole the car and hid it from Josef ("Joe")... Josef got the car back not too long ago."

571.   Even more concerning, Plaintiff hasn't been able to press charges, see case *Waymo vs–Uber–Case#3:17-cv-00939-WHA*, a former Uber employee states that Defendants have previously "targeted government officials...work with local networks of contacts that have connection to police." Pictured on below, an assertion from the Uber employee, claiming the allegations herein, under penalty of perjury.

████████████████████████████████) Jacobs believes that violations of the ████ took place and would likely be shown through discoverable evidence. Jacobs was aware that Uber was targeting government officials in order to learn:

- who might be compelled to end costly enforcement activities or partner with Uber to unblock the market;

- what local network of contacts has connections to police and regulatory authorities;

- what political leaders may be persuaded to stop any opposition; and

- if senior political officials would be willing to push a ride-sharing agenda through the city or national government.

572.   Whereas in this Complaint, Defendants instruct Joe, Louis and Does to proactively build relationships with local law enforcement, enabling Defendants to request favors at any time, in particular, pictured on the proceeding paragraphs, Plaintiff argues Defendants are controlling law enforcement to suppress his voice, while Defendants continue attacking Plaintiff without being able to defend himself, creating the perfect situation to wrongfully arrest him.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 257 -

1
2

573.   Plaintiff has tried to call the investigating officer regarding the theft of his vehicle over 30 times, to press charges, with no response.

3
4
5
6

574.   Pictured below and atop on the next page, are screenshots from Plaintiff's cellphone provider, proving Plaintiff attempted to press charges for ***three-months***, with no response from the Sacramento Sherriff's Department.

7
8

# Detail for Adam ▓▓▓▓▓▓▓–4664

9

# Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. |
|---|---|---|---|---|---|---|---|
| 3/27 | 3:12P | 877–▓ | Peak | PlanAllow | Rancho COR CA | Toll–Free CL | 18 |
| 3/27 | 4:13P | 650–▓ | Peak | PlanAllow | Rancho COR CA | San Mateo CA | 2 |
| 3/28 | 7:34P | 916–▓ | Peak | PlanAllow | Rancho COR CA | Sacramento CA | 1 |
| 2/13 | 3:17P | 916–87▓5115 | Peak | PlanAllow | Sacramento CA | Sacramento CA | 3 |
| 2/13 | 3:39P | 650–▓ | Peak | M2MAllow | Sacramento CA | Incoming CL | 3 |
| 2/13 | 3:42P | 916–87▓5115 | Peak | PlanAllow | Sacramento CA | Sacramento CA | 2 |
| 2/13 | 3:43P | 916–▓ | Peak | PlanAllow | Sacramento CA | Sacramento CA | 6 |
| 2/13 | 3:54P | 916–▓ | Peak | PlanAllow | Sacramento CA | Sacramento CA | 3 |
| 2/13 | 4:05P | 916–87▓5522 | Peak | PlanAllow | Sacramento CA | Sacramento CA | 1 |
| 2/25 | 1:06P | 916–87▓–5115 | Peak | PlanAllow | Sacramento CA | Sacramento CA | 5 |
| 2/25 | 1:09P | 916–4▓00 | Peak | PlanAllow,CallWait | Sacramento CA | Incoming CL | 2 |
| 2/28 | 11:43A | 916–87▓–5522 | Peak | PlanAllow | Sacramento CA | Sacramento CA | 2 |
| 1/09 | 2:54P | 916–87▓–5115 | Peak | PlanAllow | Rocklin CA | Sacramento CA | 4 |
| 1/14 | 7:31P | 916–87▓–5115 | Peak | PlanAllow | Rocklin CA | Sacramento CA | 5 |
| 1/21 | 5:34P | 916–87▓–5115 | Peak | PlanAllow | Roseville CA | Sacramento CA | 2 |
| 1/24 | 1:07A | 916–87▓–5115 | Off–Peak | N&W | Sacramento CA | Sacramento CA | 7 |
| 12/11 | 6:35A | 916–87▓–5115 | Peak | PlanAllow | Sacramento CA | Sacramento CA | 3 |
| 12/12 | 11:43P | 916–87▓–5115 | Off–Peak | N&W | Sacramento CA | Sacramento CA | 1 |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 258 -

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 12/14 | 6:14P | 916–87█–5115 | Peak | PlanAllow | | Roseville CA | Sacramento CA | 1 |
| 12/14 | 6:15P | 916–87█–5115 | Peak | PlanAllow | | Roseville CA | Sacramento CA | 3 |
| 12/14 | 6:17P | 916–87█–5115 | Peak | PlanAllow | | Roseville CA | Sacramento CA | 1 |
| 12/14 | 6:17P | 916–87█–5115 | Peak | PlanAllow | | Citrus Hei CA | Sacramento CA | 1 |
| 12/14 | 6:19P | 916–87█–5115 | Peak | PlanAllow | | Citrus Hei CA | Sacramento CA | 4 |
| 12/14 | 6:23P | 916–87█–5114 | Peak | PlanAllow | | Sacramento CA | Sacramento CA | 1 |
| 12/31 | 2:27P | 916–87█–5115 | Peak | PlanAllow | | Sacramento CA | Sacramento CA | 9 |
| 12/31 | 4:54P | 916–87██5383 | Peak | PlanAllow | | Sacramento CA | Sacramento CA | 1 |

575.   Defendants pay for dinners, and provide perks, gifts, and other "incentive," to the Police Chief and other police officers.

576.   Pictured below, Louis takes a photo with a local police officer.



**Louis Pritchett**
Admin · August 11, 2017 · Sacramento, CA

"In the Zone" members you'll be glad to know that I have met the New Police Chief Daniel Hahn and I'm looking forward to having him come out to one of our group meetings soon.
By the way he did say he will look into it for us.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 259 -

577.   Pictured below, plain clothed police officers, including the Chief of Police are

attending Louis' meetup group, in which Defendants pay for the dinner that evening.



578.   Pictured below, Louis' closed group has current and retired police officers and other

members of law enforcement.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 260 -

## H. DEFENDANTS ATTACK THIRD LAUNCH DATE -

### PERSONALLY ATTACKING PLAINTIFF AND HIS WIFE

579.    After Plaintiff's transportation operation was sabotaged, he was devastated.

Plaintiff knew Uber and Lyft were operating in healthcare irresponsibly. The vehicles aren't

compliant and Defendants lacked wheelchair accessibility. Plaintiff still wanted to provide a safe

healthcare rideshare option, a promise he made to his grandmother before she passed in his younger

years, the only loving person he had in his life. Pictured below, Plaintiff's new business, allows

Drivers to operate their own business much like an Uber and Lyft platform.



Hug

# Start Your Own Rideshare Business Like Uber and Lyft!

Set your own pay rate, and invite your own riders.

Instant Access

OUR CLOUD BASED SOFTWARE RUNS ON REACTJS

Here are a few companies who also use the ReactJS technology:

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 261 -

580. Pictured below, Plaintiff's new software climbed to #3 out of 11,300,000 million

websites on Google for the keywords, "Rideshare Software," where Uber and Lyft were nowhere in

sight.

581. iHug's driver app climbed to #1 in the entire Apple App Store, shooting to over

67,000 impressions, outcompeting Uber and Lyft's driver apps.



**H1. Plaintiff Alleges Defendants Used Psychological Warfare Tactics**

**on Plaintiff and his Wife Pre-IPO**

582. As described by Jacobs in his testimony, see case *Waymo–vs–Uber–Case#3:17-cv*

*00939-WHA* in 2017. Uber has created a "military-like operation," including but not limited to Global

Intelligence (Intel) Teams, Threat Operations (ThreatOps) Teams, Strategic Services Group (SSG)

Teams, Human Intelligence Collection (HUMINT) Teams, Marketplace Analytics (MA) Teams, and

Counter Intelligence Teams. Plaintiff alleges Uber has a "PsychOps Team," ("Secret Agents") within

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 262 -

its ThreatOps team, that engages in Psychological Warfare tactics on competition that show

resilience. On the actual battlefield, psychological warfare is used to obtain confessions, information,

surrender, or defection by breaking the morale of enemy fighters.

583. Plaintiff alleges Uber's PsychOps team is ran by a few elite ex-CIA field operatives,

as Jacobs confirmed in his testimony, Uber hires elite ex-CIA field operatives, see case *Waymo–vs–*

*Uber–Case#3:17-cv00939-WHA*. The two phases described below is a text book psychological

warfare tactic to break down the ***morale*** of Plaintiff and his Wife.

584. **Phase 1**: The elite ex-CIA operatives instruct Joe, Louis and Does to slander Plaintiff

of fraud, in particular, Joe called all iHug investors, claiming Plaintiff stole millions of dollars. Louis

met in person with iHug Drivers claiming Plaintiff is a fraud.

585. **Result 1**: This sets in motion multiple investigations, and litigations.

Attorneys then contact Plaintiff, claiming he's a fraud, and his actions can easily be federal securities

violations.

586. **Phase 2**: After months of Plaintiff and his Wife "hearing" from "friends, family,

investors, and Attorneys" they are "frauds," and "con artists," the elite ex-CIA operatives use

Defendants Hell Programs, geo-matching Plaintiff's Wife's Lyft and Uber accounts, to her friend's

accounts, who also use the Uber and Lyft app.

587. It's alleged the elite ex-CIA operative field agent then contacts and threatens

Plaintiff's Wife's friends, in particular, Shelly, who uses Lyft and Uber, and controls her.

588. The elite ex-CIA operative field agent instructs Shelly to tell Plaintiff's Wife to tell

her husband, the Plaintiff, to watch the #FyreFest Netflix documentary.

589. The intention to have Plaintiff and his Wife watch the Netflix production, is to induce

them into a state of panic, questioning the accusations of fraud, and create false self-doubt.

590. This maneuver is a despicable and vile tactic to break down Plaintiff and his Wife

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 263 -

mentally. His Wife broke down into tears again, as Defendants tactics eroded her ***morale***.

591.   **Result 2**: https://www.dropbox.com/s/cqprkh6llcxma9i/enoughisenough.mov?dl=0

Plaintiff's Wife mentally breaks down again, causing severe emotional distress and mental anguish.

Plaintiff's Wife **endometriosis flares up** from the stress, causing severe pain, **again**. This caused

Plaintiff's Wife to want to commit suicide from the pain of her endometriosis, and the continued

stress of feeling like her husband, the Plaintiff was going to be falsely arrested for fraud.

592.   Pictured below on the left and right, text messages between Shelly and

Plaintiff's Wife confirming the trending of #FyreFest.




Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 264 -

593.    Pictured below on the left and right, an email exchange between Plaintiff and one of his investors Attorneys. Plaintiff was fending off the Attorneys claims he committed securities fraud, when in fact, it was a private transaction, and the investment made was sabotaged by Defendants through all violations listed herein. Plaintiff has yet to receive a Complaint from this attorney. This substantiates Defendants are engaging in psychological warfare tactics and using them on innocent civilians.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 265 -

## H2. Fourth Attempt to Wrongfully Imprison Plaintiff – Receiving Stolen Property

594.    Plaintiff sought out Sales Executives to help sell his new Rideshare Software.

595.    Plaintiff alleges, Nicole Berryman ("Nicole") was a mole planted by Defendants, much like Joe, Louis and Does.

596.    Nicole boasted that she personally knew "high level" Uber and Lyft Executives, as she used to run Defendants Driver background checks.

597.    Nicole's behavior mimicked Joe, Louis and Does, asking Plaintiff an insurmountable amount of questions unrelated to the sales process, including but not limited to, Plaintiff's intellectual property, pitch decks, future projections, and business execution strategies.

598.    While Defendants were attempting to falsely imprison Plaintiff of grand theft auto, investor fraud, and wage theft, they executed on a fourth attempt to frame Plaintiff of receiving stolen property. Nicole sends Plaintiff, unsolicited "books of business," she unlawfully extracted from her employer, "stolen property," before she resigned from her employer.

599.    The books of business contained thousands of corporate customers. This was another attempt by Defendants, to frame Plaintiff for "possession of stolen property." Plaintiff kept Nicole's email for record, and never contacted or used the corporate customers.

600.    This substantiates Defendants are continuing to wrongfully prosecute Plaintiff in order to wrongfully imprison him, so they can claim and utilize Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity that belongs to the people, not the Defendants.

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 266 -

601.    Pictured below, Nicole's email to Plaintiff containing the unsolicited corporate customers.



Hey Adam,

Here are the 3 books of business that you can look over and distribute. As mentioned, there are accounts in here that are not healthcare related that will need to be removed before distribution.

I have a few more books that I can pull when we run through these accounts and make progress. I've held on to some larger accounts for yourself and I to work. Let me know what these look like first and it's something that you want to use.

Best regards,

Nicole

3 Attachments

X  NSE 3.xlsx          X  NSE 2.xlsx          X  NSE 1.xlsx

602.    Plaintiff begins to execute on another extension of his $25,800,000,000,000 trillion dollar digital Ai healthcare system, in particular, a revolutionary new healthcare vehicle.

603.    Beyond the protection afforded by the confidentiality agreement, Plaintiff took further steps to ensure the security of his proprietary information, in particular, he had Nicole sign a strict non-disclosure agreement before proceeding with the disclosure of his intellectual property.

604.    In the same unlawful fashion as Louis, Joe, and Does, Nicole suddenly misappropriates Plaintiff's intellectual property, by giving Defendants her login details, exposing Plaintiff's new sketches, schematics, and descriptions of a patent pending revolutionary healthcare vehicle, that's poised to provide the "world's safest healthcare ride."

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 267 -

605.   Pictured below, one of iHug's slides, with plans to partner with Waymo, a self

driving technology development company, Apple and Tesla.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 268 -

606.    Pictured below, one of iHug's slides from an expansion plan of Plaintiff's $25,800,000,000,000 trillion-dollar new digital Ai healthcare system, a new revolutionary healthcare vehicle is patent pending.



**World Class Design**

*From a physics, mechanical, practical, operational, engineering and design aspect, iHug's IP will deliver the safest ride in the world.*

607.    After Nicole learned Plaintiff wanted to pitch Uber and Lyft, Lyft instructed Dan Trigub ("Dan") to suddenly "resign" from Lyft's healthcare team, and join Uber's healthcare team, to sabotage the potential partnership with Uber. Whereas case law analysis, see case *Lyft–vs–Travis VanderZanden–Case# CGC-14-542554,* establishes John, **declares under penalty of perjury**, had serious concerns regarding his former employee, leaving to work with Uber. Whereas John had no objection to Dan leaving for a similar position at Uber, substantiating he was planted by Lyft. Pictured below, an assertion from case, *Lyft–vs–Travis VanderZanden–Case# CGC-14-542554.*

| 13 | 5.      I was concerned about any discussions VanderZanden might have with Uber, |
| 14 | given that VanderZanden had been a Lyft senior executive (Chief Operating Officer), had |
| 15 | already announced his resignation, and Uber was Lyft's primary competitor. |

608.    Whereas, in this case, Lyft refused to sign a non-disclosure Agreement with iHug, as it would expose them to liability for the misappropriation of Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and shift liability from Nicole to Lyft, substantiating Plaintiff's

Adam John Mackintosh –vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 269 -

allegations stated throughout all proceeding paragraphs of this Complaint.

609.    After Dan signed the NDA with iHug on behalf of Uber, it set legal grounds to hold Uber solely liable for any breach, whereas Lyft refused to sign the NDA so they would not be held liable. Dan would then leak details to John, Ben, Logan, and other Lyft Executives.

610.    On February 19, 2019, Plaintiff and Nicole pitched Dan regarding Plaintiff's intellectual property execution strategies. While in the heat of corporate espionage, Plaintiff alleges Dan allowed Lyft Executives to listen in on the call. It was stated that in the event Uber partners with iHug, and utilizes iHug's intellectual property it would unravel all current healthcare partnerships of Lyft, as healthcare Executives want the safest and most compliant transportation option possible.

611.    Pictured below, one slide from Plaintiff's intellectual property slide deck.



**The partner who utilizes the I.P. will start to undo all competitor healthcare partnerships and absorb NEMT cash contracts.**

**Government and insurance providers want the safest and lowest liability ride option available for their customers.**



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 270 -

612.    Indisputable circumstantial evidence establishes Lyft used Nicole, Dan and Hell

Programs to suppress iHug, allowing Lyft partners with Waymo ahead of iHug, to block Plaintiff

from partnering, as it would unravel Uber and Lyft's partnership in healthcare.

 

# Waymo and Lyft partner to scale self-driving robotaxi service in Phoenix

**Kirsten Korosec** @kirstenkorosec / 2 months ago



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 271 -

### H3. Fifth Attempt to Wrongfully Imprison Plaintiff – Assault

613.   On December 6, 2018, *4 days before*, Plaintiff's Vehicle is stolen, Uber and Lyft are investigated by the SEC for filing in private *the same day*. Uber, Lyft and Andreesen scramble to cover up. Plaintiff was a primary target, as he was the pioneer of the $1,200,000,000,000 trillion-dollar healthcare opportunity.

614.   March 2, 2019 at approximately 2:00AM, *10 days after,* Defendants learned Plaintiff possessed intellectual property that could unravel their healthcare partnerships if he partnered with Apple, Waymo, or Tesla, and *27 days from IPO*, Lyft maliciously used the Hell Programs to track Plaintiff and his Wife's whereabouts.

615.   While under corporate attack, undue duress, and mental anguish, Plaintiff and his Wife moved in with a friend, Amy Biddle ("Amy") a Dignity Health Executive.

616.   **Absolutely nobody knew the whereabouts of Plaintiff and his Wife**, with the exception of a small circle of friends, who had **no connection** with Defendants.

617.   After Plaintiff and his Wife spend a month with Amy, and the circle of friends by going to events, and trying to live a normal life while under corporate attack.

618.   Plaintiff and his Wife do kind things for Amy, being polite and good roommates, including building newly purchased furniture for Amy.

619.   Pictured on the next page on the left, Plaintiff making sure he's not too loud while Amy slept. Plaintiff was investigating Defendants prior cases, complaints, and scandals. Plaintiff also wrote patents, drafted up more schematics for his revolutionary new healthcare vehicle.

620.   Pictured on the next page on the right, Plaintiff spent all night building Amy's Armoire. Plaintiff and his Wife wanted to surprise Amy for allowing them to be roommates as a result of Defendants harassing them at their home using Hell Programs. Plaintiff and his Wife did nothing but show Amy, love, kindness and friendship.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 272 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 273 -

621.    Pictured below, the group of friends before Uber's ThreatOps, PsychOps, and/or

Benchmark Guys, called and threatened the group of friends after using Hell Programs on Plaintiff to

find the location of his Wife. Pictured below from left to right, Amy, Plaintiff, Michelle, Plaintiff's

Wife, Shawn, and Chelsea. All who were compromised through the Lyft and Uber apps.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 274 -

622.   Plaintiff's roommate suddenly started acting erratic, and violent. A similar behavior to Joe. Plaintiff alleges, Defendants used Hell Programs, geo-matching Plaintiff's Wife to her roommates Lyft Account, allowing Lyft access to Amy's account details.

623.   Plaintiff alleges Uber's ThreatOps, PsychOps, and/or Benchmark Guys then threaten Amy, forcing her to cause undue financial harm on Plaintiff, forcing Plaintiff and his Wife into the streets.

624.   This would prevent Plaintiff from executing on his intellectual property with Apple, Waymo or Tesla. This occurred after Joe sabotaged the vehicle, leaving Plaintiff with no transportation, and no place to live.

625.   Its substantiated the Hell Programs exist and violates human privacy, and even more concerning, **National Security**.

626.   Pictured below, the roommate suddenly states rent is increasing after Plaintiff and his Wife agreed on the rent amount, in an attempt to misappropriate cash, a similar pattern to Joe.



iMessage
Monday 2:46 PM

Amy

Hi roomies! So I have some bad news. Just got off the phone with my landlord. He wants to raise the rent for you two to move in with

a dog. He would like an extra $300/month. He's not asking for any pet deposit. I told him I needed to talk it over with you two. I didn't want to tell him you already moved in so he doesn't know that part yet. This would be effective on 3/1. I only signed a 6 month lease with month to month terms after so that is why he is able to charge the extra. I would like for you

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 275 -,

627.   Pictured below, Amy unlawfully signs for an attorney and/or Landlord to force

Plaintiff and his Wife into the streets, a clear violation of California Penal Code 470 PC – Forgery.

deductions from the deposit and a refund of any remaining amount. [California Civil Code Section
1950.5]

If you fail to vacate and deliver possession of the rental property by the specified date above, legal
proceedings will be initiated against you to regain possession of the premises and to recover any past
rent owed, and possibly costs, attorney's fees and damages in the amount of up to $600. A judgment
against you will appear on your credit report for seven years.

Signed:

_____          _8/16/2019_
Owner/Manager/Attorney for Landlord          Date

628.   Pictured below, *1 day later*, Amy attempted to have FedEx retract the illegal

document.

deductions from the deposit and a refund of any remaining amount. [California Civil Code Section
1950.5]

If you fail to vacate and deliver possession of the rental property by the specified date above, legal
proceedings will be initiated against you to regain possession of the premises and to recover any past
rent owed, and possibly costs, attorney's fees and damages in the amount of up to $600. A judgment
against you will appear on your credit report for seven years.

Signed:

_____          _____
Owner/Manager/Attorney for Landlord          Date

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 276 -

629.     In yet another vile attempt to wrongfully arrest and imprison Plaintiff, deport his Wife, and ruin iHug so the Defendants can run with Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity pre-IPO, the same roommate who was compromised, alleged Plaintiff assaulted her at the house, in the same hour she was not home.

630.     Plaintiff, his Wife and a friend were home peacefully that same hour, no charges were pressed, police escorted the roommate off the property that night after she showed up an hour after she claimed the assault took place.

631.     Plaintiff and his Wife have saved photographic evidence, and even law enforcement testimony, indisputably proving the assault never took place.

632.     Whereas Plaintiff was behind his computer helping his friend build his business website for a limousine and mobile app. Continuing to establish as a matter of fact, Plaintiff's good will and business acumen always aims to empower others by helping his friend with his website.

633.     On March 1, 2019 at approximately 11:10PM, Plaintiff returned Jesse call. The call lasted approximately 7 minutes. Jesse needed Plaintiff to update his website and talk about a mobile app that he would like Plaintiff to develop. Pictured below, Plaintiff's friend of 10 years calls Plaintiff. Plaintiff returns his call to scheduling a meeting to edit his friends' website.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 277 -

634.    On March 1, 2019 at approximately 11:21PM, *11 minutes later*, Jesse approached the property, where Plaintiff greeted him. They proceeded to Plaintiff's room where his Wife was sitting in bed messaging her friends peacefully.

635.    Plaintiff proceeded to log into his iMac. They chatted and discussed a new mobile app Plaintiff was to design for Jesse until approximately 11:34PM, *approximately 13 minutes later*.

636.    At approximately 11:35PM, *1 minute later*, Plaintiff pulled up his email to find the edit requests from Jesse.

637.    Plaintiff was sitting at his desk, eating cereal, while editing Jesse's website, while his Wife was on her iPhone still trying to stay connected to friends despite the corporate attack's.

638.    Jesse was sitting next to Plaintiff, while Plaintiff peacefully looked up code for HTML form submissions, logging into AWS, etc. to update the website, etc.,

639.    *Within an hour*, Jesse said he was going to take a quick nap while Plaintiff worked on his website as he had a long day and had to drive home later. Jesse fell back, and napped peacefully. Plaintiff's Wife made Plaintiff smile and took a photo to cheer him up, despite the onslaught of attacks he was sustaining, while fighting back for his Wife, and for the people in healthcare.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 278 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

640.    Plaintiff's Wife and her friend at the time, who was later compromised by Defendants, were messaging each other while she sat in bed peacefully in the same room as Plaintiff, and Plaintiff's friend who was napping on the bed. Around this time is when the compromised roommate claimed Plaintiff violated her. Electronic, circumstantial, and direct evidence establishes Plaintiff is innocent of these corporate attacks, that were meant to arrest him that night if his Wife and his friend Jesse were not with him. Plaintiff was innocently and peacefully coding a new app and website for his friend, so his friend can provide a limousine experience to Sacramento residents.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 279 -

641. Pictured below, Plaintiff's Wife insisted Plaintiff take screenshots of his computer history and time stamps proving Plaintiff was peacefully working within Amazon Web Services uploading new edited files for his business friend who owns a limousine wine tour company, during the alleged assault.



642. Time stamps of website history of Plaintiff behind his iMac on AWS, and surfing the websites, during the same time the roommate claimed Plaintiff assaulted her.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 280 -

643.    Pictured below and on the next page, more time stamps of website history of Plaintiff

behind his iMac on AWS, during the time the roommate claimed Plaintiff violated her.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 281 -



Search history

## Yesterday - Friday, March 1, 2019

| | | | | |
|---|---|---|---|---|
| ☐ | 11:52 PM | 123 | Form Editor - | com |
| ☐ | 11:52 PM | 123 | New Form - 1 | m |
| ☐ | 11:52 PM | 123 | Form Editor - | com |
| ☐ | 11:49 PM | 123 | Form Editor - | com |
| ☐ | 11:49 PM | 123 | Create a form | mbuilder.com |
| ☐ | 11:48 PM | 123 | 123FormBuild | el   www.123formbuilder.com |
| ☐ | 11:48 PM | 123 | Email Form - | FormBuilder   www.123formbuilder.com |
| ☐ | 11:47 PM | G | custom email | le.com |
| ☐ | 11:47 PM | ❁ | HTML Forms | .com |
| ☐ | 11:47 PM | Q | HTML Form T | |
| ☐ | 11:47 PM | 123 | Free Simple H | FormBuilder   www.123formbuilder.com |
| ☐ | 11:47 PM | | Sacramento V | and Fun Wine Tours   file: |
| ☐ | 11:38 PM | | Sacramento V | and Fun Wine Tours   sac |
| ☐ | 11:36 PM | ⓘ | Social Media | m   www.indeed.com |
| ☐ | 11:36 PM | M | Action Requir | ghealth.com - iHug Mail   mail.google.com |
| ☐ | 11:36 PM | M | Inbox (42) - a | google.com |
| ☐ | 11:35 PM | M | Re: Wine Tou | - iHug Mail   mail.google.com |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
282

644.    On March 2, 2019 at approximately 1:25AM, *1 hour later*, Plaintiff finished the work. He then walked Jesse outside the front door. While they were standing in the front door way of the Property, the roommate approached the Property. She walked past Jesse and Plaintiff through the front door and into her room according to Plaintiff's Wife who heard her close the bedroom door down the hall. While the roommate walked passed the Plaintiff and Jesse, no interaction took place between anyone.

645.    After Jesse left, Plaintiff proceeded to his bedroom after locking the front door. While Plaintiff continued packing, as the **roommate was forcing Plaintiff and his Wife into the streets**, Plaintiff Wife heard a banging on the front door. Plaintiff looked out the front window and saw two police officers. They began speaking with the roommate.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 283 -

646.    On March 2, 2019 at approximately 1:40AM, *15 minutes later*, Officer Fremgem knocked on Plaintiff's bedroom door stating, "Sacramento Police Department, open up." Plaintiff proceeded to unlock the bedroom door cooperating with the officer's request to open the door.

647.    Officer Fremgem, badge #1003, asked Plaintiff and his Wife if they knew why he is at the Property. They respectfully answered, "we have no idea." Officer Fremgem stated the roommate claimed there was some sort of argument going on tonight, and asked if Plaintiff grabbed or pushed the roommate tonight, further stating she claimed Plaintiff grabbed and pushed her. Plaintiff gave his statement, "*I have been sitting here on my iMac the whole night. My friend just left, I didn't even talk to the roommate. She just walked to her room. **She seriously said that**?*"

648.    After Officer Fremgem's professional evaluation of the situation, and after listening to both sides of the story, he turns to Plaintiff's Wife and states "We're not doing anything about him (referring to Plaintiff). Officer Freegmen's statement:

https://www.dropbox.com/s/rp9uetvwuim2a58/March22019_1_36AM_roommate_called_police

649.    Pictured below, the roommate completely changed and betrayed Plaintiff's Wife, while slandering them to a circle of friends, claiming similar allegation Joe, Louis and Does made. There is no relationship between the circle of friends and Joe, Louis and Does, substantiating a common dominator, Defendants PsychOps team, or similar operation at Defendants H.Q. exists.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 284 -

650. **Before Defendants used Hell Programs** to threaten the circle of friends of Plaintiff and his Wife, claiming they are frauds and con artists:



651. **After Defendants used Hell Programs**, threatening Plaintiff's Wife's friends turning them, and using them as tools in a series of corporate attacks.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 285 -

652.    Defendants compromised the roommate to force Plaintiff's Wife into the street while Plaintiff was away working. The roommate brought her ex-boyfriend to threaten Plaintiff's Wife. Voice evidence of Plaintiff's Wife after being threatened, she broke down **yet again**:

https://www.dropbox.com/s/ng6ugl6q569i3xv/alanna_crying_acts_by_defendants.mp3?dl=0

653.    Pictured below, Plaintiff's Wife was emotionally drained, and didn't want to take a picture, Plaintiff took a picture to show the Honorable Judge the damages Defendants are inflicting on his Wife to tamper and threaten a witness, a clear violation of 18 U.S. Code § 1510. Obstruction of criminal investigations (a) Whoever willfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator shall be fined under this title, or imprisoned not more than five years, or both. Its alleged Defendants engaged in vile attacks pre-IPO as **Plaintiff's Wife is a witness**, and they were attempting to cover up all the wrongdoing.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 286 -

654.    Plaintiff still cannot obtain a Police report to press charges against the roommate for reporting a false crime to police officers. As similar case to the Grand Theft Auto case, where police are not responding, and Plaintiff cannot obtain copies of the police report to press charges.

655.    Police were called multiple times, while Plaintiff and his Wife were under corporate attack from Defendants, attempting to wrongfully imprison Plaintiff so Defendants can run with Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars pre-IPO.

656.    The healthcare opportunity consisted of patent books of a future that would leap civilization into the automation era, out of the technological era, enriching every human life.

657.    Pictured below, the numerous times Plaintiff's Wife had to call the police as she and her husband were ferociously under corporate attack, before Defendants IPO to wrongfully imprison Plaintiff and deport his Wife and run with Plaintiff's corporate secrets.

  

  

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 287 -

658.    In yet another act of corporate espionage using the Hell Programs, Plaintiff privately disclosed to his Wife and the compromised friend, he wanted to partner with Kim Kardashian to promote iHug's services.

659.    Approximately *3 months later*, Lyft announces a partnership with Kim Kardashian, ("Kim"), establishing Defendants used the Hell Programs to infiltrate another friend of Plaintiff's Wife.

660.    Pictured below, Lyft and Kim partner.



**POLITICS**   06/13/2019 05:28 pm ET | Updated 2 days ago

# Kim Kardashian Announces Lyft Ride-Share Program To Reduce Recidivism

Kim K. was back at the White House on Thursday as she continues her criminal justice reform efforts.

**AP**

661.    While Plaintiff and his Wife were under duress and corporate attack, Defendants, Joe, Louis, and Does move onto their next victim, gathering intel to suppress competition in healthcare transportation, while receiving cash incentive from Defendants.

662.    Pictured on the next page atop on the left, Joe states Empathy is a small company, only months old, proving Joe routinely infiltrates, and sabotages Defendants competition.

663.    Substantiating Joe, Jerry, Louis and Does prey on startups to suppress competition for Defendants.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 288 -

664.    Pictured below on the right, Joe was named VP of Operations at Empathy Transportation, a competitor to Defendants.

665.    Plaintiff argues, there are tens of thousands of Defendant drivers who conduct themselves in this manner, who are paid incentive from Defendants.

 

666.    Pictured below Joe, Thomas, Malcolm, is Louis posting a 5 start review on Empathy's Facebook page to gain their trust, establishing Joe, Louis, Jerry and Does prey on startups to suppress competition for Defendants.







Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 289 -

### I. ONCE IS CHANCE, TWICE IS A COINCIDENCE, THREE TIMES IS THEFT

667.    Pictured below on the left, grocery and pharmacy rides in iHug's 2014 developing healthcare opportunity, launched in 2017.

668.    Pictured below on the right, Defendants announced the same service in 2019 after tortiously inferring with iHug's partnership that delivered and helped seniors shop for groceries, and offered prescription pick-ups.



services that support their overall health—whether that's a grocery store, pharmacy, or a community event—is a good investment, [especially] for MA plans who are trying to maintain the health of their membership. Those are conversations that, quite frankly, I'm excited to have.

**HL:** Can you explain how this grocery access program came to be and where it is going?

**Callahan:** Lyft is strong at getting patients to medical appointments, but we made an announcement right around HIMSS in February, that we were expanding to get people into other types of services or programs that support their health. There's about 23 million





≡ **lyft** BLOG

DECEMBER 10, 2018

# Announcing Lyft's Grocery Access Program

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 290 -

669.    Pictured below on the left and right, a healthcare API outlined in Plaintiff's 2012 business plans, patent books, and executed in 2017. Plaintiff invented software (API) truly connecting healthcare and transportation.

670.    After Ben received Plaintiff's pitch deck and execution strategies on the $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars, Lyft copies iHug's API in 2018. This API has allowed Lyft and Uber to double it's billion-dollar run rate in healthcare.




**Admin Panel**          **Ai Backend API**

 

 

**lyft**

MARCH 5, 2018

**Revolutionizing Patient Transportation with Lyft Concierge API**

**Uber Health** ☰

**API partnerships**

Leverage the Uber Health API to facilitate on-demand transportation for health care rides. If you're interested in using the API to drive healthcare innovation forward, please reach out.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 291 -

671. Pictured below on the left, iHug's "VIP Rides" service for healthcare in 2016. Pictured below on the right, Defendant starts offering its Drivers a similarly named service "VIP healthcare ride" in 2018.



672. Pictured below on the left, iHug's 911 emergency button located on the top right of its app in 2017. Lyft and Uber launch the same app feature in 2018 – 2019.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 292 -

673.    Pictured below, Plaintiff's transportation and other service subscription structures in one of his patent books, and a private email, regarding a reloadable-subscription plan for transportation in 2017. Lyft and Uber launch subscription plans in late 2018, a similar service.

> e.   Reoccurring subscription structure for medical offices, doctors and other medical services.
>      i.   Variable yearly charge of $10,000

- We're looking into the reloadable card, I know this would be a great play for our partnership.



**Adam John**

Founder, CEO and
Chairman of the Board
http://ihug.healthcare



# Uber and Lyft unveiled new subscription plans. But are they really worth the money?

## Two weeks after Lyft, Uber rolled out its own deal where riders pay a monthly fee for consistently lower fares.

By Aditi Shrikant | aditi@vox.com | Updated Oct 31, 2018, 12:34pm EDT

674.    Pictured on the next page atop on the left, Plaintiff launched a "healthcare portal" in late 2017. On the next page atop on the right, Defendants add "healthcare feature" in its portal late 2018. Defendant's also changed the button name to "new request," an extremely important factor outlined in Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 293 -

$25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars. Defendants then add an iHug portal feature, "driver notes," to its own portal.

 

675.  Pictured below on the left and right, Lyft steals iHug's add driver notes idea.

 

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 294 -

676.    Pictured below, Joe compiled Plaintiff's ideas in 2018 regarding Medical/Medicare to increase revenue for iHug to reinvest in healthcare. Pictured below in the middle, Lyft received Plaintiff's intelligence through Joe, and "hails" Medicare advantage as next profitable ride in mid-2019, pictured below on the bottom, Lyft Executive Omar proclaims Lyft as the first national ridesharing company to bring on-demand transportation to millions of medicare.

> Medicare wont pay below EMT services
> Medical wont pay below wheelchair levels
> Care Plus official point of contact system
> Insurance documentation for medical/Medicare



# Forbes  🔍

# Lyft Hails Medicare Advantage As Next Profitable Ride

**Bruce Japsen** Senior Contributor ⓘ
Healthcare
*I write about healthcare business and policy*



 **Omar Nagji** • 2nd    •••
Head of Healthcare Partnerships at Lyft
14h

Thanks to our amazing partners, Lyft is officially the first national ridesharing company to bring on-demand transportation to millions of Medicaid beneficiaries as an enrolled provider. Truly amazing!!
**https://lft.to/2ZOEnWB**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 295 -

677. Pictured below, Plaintiff privately pitched his Wife and a friend, regarding plans to partner with Kim, and her family to help promote iHug.

678. Plaintiff alleges Defendants were using the Hell Programs, in order to suppress iHug.

679. Approximately *90 days later*, Lyft announces a Lyft Ride-Share Program to reduce recidivism, ahead of iHug, unlawfully suppressing iHug **yet again**.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 296 -

680.   Pictured below, Plaintiff's confidential, proprietary and non-public corporate secrets in 2017 and prior, Plaintiff was executing on home delivery of prescriptions to seniors who have no transportation, lowering costs and increasing healthcare out comes. On July 31, 2019, Uber launches the same service growing its operation in healthcare, which is hidden under Uber Health, LLC.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 297 -

681.    Pictured below, Plaintiff's confidential, proprietary and non-public corporate secrets in 2017 and prior, Plaintiff was executing on telehealth and in-home care and diagnosis, lowering costs and increasing healthcare out comes. On July 31, 2019, Uber announces strategically after receiving Plaintiff's settlement demand, setting itself up to argue, Uber's "service," is direly needed, and would harm people if halted by injunction.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 298 -

## J. THE REAL $1.2 TRILLION-DOLLAR OPPORTUNITY

Forensic computer evidence establishes, on many occasions, multiple versions of Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity was misappropriated by Defendants.

682.    Unbeknown to Plaintiff, Joe sent an email to a "**Brian**," and one email to a "**Robert**," providing details of Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity. Pictured below on the left, Lyft's CFO, "Brian Roberts" LinkedIn profile, whose name matches the two emails sent using proxy servers to masked the internet protocols and received origins using a virtual private network.



683.    In another act of corporate espionage, Defendants received intelligence that Plaintiff pitched McKesson Ventures, a venture arm of McKesson Corporation, who is the largest healthcare organization in The United States of America.

684.    Megan Callahan, ("Megan") was hired at Lyft *8 months after* Plaintiff pitched McKesson Ventures, where it's alleged she will be used to leverage McKesson's contracts, to connect Defendants to tens of thousands of healthcare providers, in order to continue executing on Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars.

685.    Plaintiff believes, Defendants are also leveraging Megan's connection to McKesson, to deploy an **"evolved version of Plaintiff's misappropriated $25,800,000,000,000.00 Trillion-Dollar New Digital Ai Healthcare System Plans in the future,"** unjustly enriching Defendants.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 299 -

686.   **Megan conveniently has a specific expertise in preparation for "anti-trust suits," in healthcare, where Defendants can easily, and preemptively prepare for Plaintiff's lawsuit.**

687.   Megan picked up where Defendants left off, and started to implement new features as described in Plaintiff's misappropriated $1,200,000,000,000 trillion-dollar healthcare opportunity, where in fact, parts of iHug's business plan, processes and ideas have emerged on Defendants platform.

688.   Pictured below, Megan's LinkedIn profile, and expertise.



689.   Pictured below, much like the, "***Trump Train***," movement that elected President Donald J. Trump. Louis posts on Facebook, tagging Joe in an image "***On the Train***."



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 300 -

690.     It's alleged Defendants had financial motive to commit fraud as described herein and all proceeding paragraphs. The immense pressure from its investors, forced Defendants to act in desperation, inflating its growth, and revenue projections, in order to execute an IPO to stay in business. Defendants continue to bleed billions of dollars with no alternative pathway to profitability.

691.     Through Defendants culture and deceptive business practices, the Drivers misappropriated Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars details. ***Months later***, Gyre Renwick, ("Gyre") VP of Business at Lyft, outlines elements from iHug's business plan.







Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 301 -

692.    After Defendants and its executives acquire the "knowledge" of Plaintiff's

misappropriated $1,200,000,000,000 trillion-dollar healthcare opportunity, and his

$25,800,000,000,000 trillion-dollar new digital Ai healthcare system, Defendants overhyped its IPO,

proclaiming a "$1,200,000,000,000 trillion-dollar opportunity," the exact same financial figure as

Plaintiff's misappropriated $1,200,000,000,000 trillion-dollar healthcare opportunity.

693.    The Defendants stated in an interview with Bloomberg, "We are in the very early

phases of capturing this large opportunity."

694.    The statistic's source that's referenced in the Lyft SEC S1 filing was only posted

online December 28, 2018, a *few months prior* to an IPO.

695.    These odd events have resulted in multiple class-action lawsuits regarding securities

Litigation against Defendants, alleging Defendants, overhyped its IPO and omitted facts, violating the

Securities Act of 1933.



696.    As confirmed by a Goldman Sachs Analyst, Defendants ridesharing market will only

grow to $285,000,000,000 billion-dollars by 2030 world-wide, with competitors that already own

nearly 70% of the market.

697.    Plaintiff alleges Defendants are diluting key financial data on payouts to Drivers,

in order to cover up payments made to Joe, Louis and Does who used it to invest in startups to gain

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 302 -

investment details, corporate secrets and carry out unlawful and covert operations against Plaintiff and competitors alike. John stated in an interview, our "Driver community has enabled us to be at this point." Bloomberg's Emily Chang asked Lyft Co-Founders on the day of their IPO, "You are giving [all] drivers stock bonuses, right? That's kind of unusual." Logan Green responded, "Yeah, we are giving a cash bonus," for the referral program. A confusing and disconnected answer.

698.    Plaintiff re-alleges cash bonuses were used to dilute the large bonuses, and cash payouts to Joe, Louis, and Does who committed unlawful conduct.



**Lyft will no longer provide information on total revenue generated that would help determine how much drivers were taking home, says it is 'to avoid investor confusion'**

699.    Lyft CFO, Brian Roberts, who regularly meets with Drivers in a secret room at Lyft Headquarters, stated in Lyft's Q1 Earnings Call to investors, "**we are day one of a $1.2 trillion market opportunity**," where it's not a new opportunity, the ridesharing industry is capped at $285,000,000,000 billion by 2030 according to analysts.

700.    Plaintiff argues Brian Roberts unlawfully received Plaintiff's stolen $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars.



**Lyft, Inc (LYFT) Q1 2019 Earnings Call Transcript**

**Brian Roberts** -- *Chief Financial Officer*

So just to follow-up in terms of the question on the path to profitability, we are day one of a $1.2 trillion market opportunity. We just announced a

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 303 -

## K. THE COVER UP, ODD BEHAVIOR, CONTINUED ATTACKS AND STALKING

701.    To lay the foundation for these very serious allegations made herein, and in all proceeding paragraphs of this Complaint, Plaintiff's Wife sketches out a timeline of cover up operations, after her husband, the Plaintiff sends a settlement demand to Defendants for damages.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 304 -

### K1. Manipulating Numbers



702.     On October 12, 2016, John, in an interview with Jim Cramer of Mad Money, and more recently an interview with CBS This Morning, Gayle King, John affirms, "Every year in the United States, $2,000,000,000,000 trillion-dollars is spent on car ownership," an accurate claim, based on 244,000,000 million vehicles in The United States in 2015, multiplied by "$9,000 dollars in annual costs," according to John, totaling $2,100,000,000,000 trillion-dollars.

703.     After Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars was misappropriated by Defendants, **the Defendants manipulated the numbers, with knowledge of its falsity.**

704.     On March 29, 2019, Lyft Co-Founders, John and Logan during IPO, claimed they are targeting a "new $1,200,000,000,000 trillion-dollar opportunity," contradictory to their statistic in 2016 and more recently in 2018.

705.     This has caused a chain of events, including numerous class-action lawsuits from Lyft

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 305 -

investors, who claim Lyft omitted facts and falsified statements within the SEC S1 filing, including market share statistics, claiming Lyft owned 39% market share, contradictory of Uber's SEC S1 filing, substantiating the fraudulent activity of booking fake rides manipulated its market share.

706.    In order to obfuscate the true "$1,200,000,000,000 trillion-dollar opportunity," on December 28, 2018, *less than 3 months* prior to Defendants' IPO, The Bureau of Transportation Statistics ("BTS") suddenly releases a $1,200,000,000,000 trillion-dollar "Household Transportation Expenditure" report, the same source from Lyft's S1 filing.

707.    In an act to conceal the truth that Defendants had already executed on Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity. Plaintiff asserts Defendants provided false data to the United States Government.

708.    This was a calculated effort to cover up, in the event Plaintiff files a Complaint to claim his $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars and damages.

709.    The BTS report included the exact same figure as Plaintiff's misappropriated $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars, in order to disguise their wrongdoing.

710.    Pictured below, a screenshot of the $1,200,000,000,000 trillion-dollar "Household Transportation Expenditures" statistic located on the BTS website, in the exact Lyft brand color as shown below on the right, Lyft's official logo.

**BTS Statics on the BTS website chart in Lyft brand colors**          **Lyft Logo**




711.    Pictured on the next page atop, a fabricated statement from the BTS website, the

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 306 -

report was updated only *3 months prior* to Defendant's IPO.

712.   Even more outrageous, in an act to cover up, Defendants begin to remove Defendants' employees from any involvement at the Portland Bureau of Transportation.



# Bureau of Transportation Statistics

Search

Topics and Geography       Statistical Products and Data       National Transportation Library

Transportation Economic Trends

Previous Publications

Transportation expenditures accounted for $1.2 trillion (9.2 percent) of PCE in 2017, making transportation the fourth largest spending category (excluding "other expenditures") after healthcare, housing, and food (figure 6-1). Transportation expenditures increased 54.6

Updated: Friday, December 28, 2018

713.   Wherein a case *McCloskey–vs– Lyft, Inc. et al, case number CGC-19-575475*, on page 17, line 27, number 66, claims, "The Registration Statement contained pages and pages of numerous generalized possible "Risk Factors" that might occur and "[i]n case" they did actually occur, then Lyft's financial condition and results of operation "could be materially and adversely affected."

714.   Plaintiff alleges, Lyft is fully aware of iHug, having colluded with Uber to execute on Plaintiff's misappropriated $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars, API and other features, doubling its revenue in *less than 12 months*.

715.   Placed in a vertical timeline below and on the proceeding pages, factual activity throughout 2019, after Plaintiff's Complaint was leaked to Defendants, and Plaintiff sends Joe, Louis and Does a settlement demand for damages as a result of violations stated herein, proving Defendants received Plaintiff's Complaint:

716.   On March 14, 2019, Plaintiff sent a settlement demand to Louis, Joe and Does.

717.   Computer, network, tracing and forensic evidence established Louis was the only

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 307 -

1 party that did not open the email. Louis has a personal relationship with John.

2     718.   Plaintiff alleges Louis was under instruction by Defendants and its Legal Counsel not

3 to open the email, to mitigate any connection to Defendants.

4     719.   Pictured below, Plaintiff's settlement demand was sent to Joe, Louis and

5 other parties involved and who contributed to all wrongdoing as described herein and through all

6 proceeding paragraphs of this Complaint.



Sent on 14 Mar 2019, 20:29 pm

| Email | Opens |
|---|---|
| joe | 39 |
| loui | 0 |
| way...l.com | 1 |
| tmi | 2 |
| em...mail.com | 6 |
| eja...com | 1 |
| mal...gmail.com | 2 |
| joe...com | 2 |

    720.   On March 15, *1 day later*, Louis, tells Drivers, Lyft H.Q. is coming to his private

meetup group.

    721.   Lyft Headquarters instruct Louis to set a meeting with Drivers, in order to cover up

any traces of Defendant's wrongdoing. Pictured on the next page atop, Louis calls for a meeting.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 308 -



722.    On March 18, *3 days later*, Nicole text messages Plaintiff after months of no communication.

723.    On March 23, *5 days later*, Plaintiff notifies iHug investors Joe was under investigation.

724.    On March 27, *4 days later*, Nicole texted Plaintiff asking to "talk."

### K2. Lyft Pointing the Finger and Blame Shifting

725.    After Lyft's Legal Counsel unlawfully reviewed Plaintiff's settlement demand involving Joe, Louis and Does, Ben attempts to "blame shift" to cover up any wrongdoing from Lyft and himself. It also appeared **Ben does not know the difference between right and wrong**, labeling "highly illegal activity," as "types of competition tactics."

726.    On March 29, 2019, Lyft goes IPO.

727.    In an interview on March 29, 2019, *the same day* Plaintiff's settlement demand

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 309 -

expires, Ben willfully admitted and outlined "Uber tactics" that were set out to "destroy" Lyft. Ben

actually outlined how Defendants attacked Plaintiff, iHug and his investors. Ben, informally testifies

the following:

728.   "Uber" used "highly illegal tactics."

729.   "Uber, of course, stole the original Lyft idea."

730.   "Uber went as far as, when Lyft was raising money, they would call investors and

threaten them. Literally, you'll never do business in this town again."

731.   Ben then retracted his original statement that Uber stole Lyft's original idea and

claimed Uber, "copied us, you don't steal things like that in business," "confused."



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 310 -

732.    On March 29, *__the same day__*, Plaintiff's demand was unlawfully opened 13 times by

Defendants Legal Counsel, post-IPO, as pictured below.

**2019-03-29**

20:44 **opened** your email settlement for compensation enclosed

20:12 **opened** your email settlement for compensation enclosed

20:12 **opened** your email settlement for compensation enclosed

20:12 **opened** your email settlement for compensation enclosed

20:12 **opened** your email settlement for compensation enclosed

20:12 **opened** your email settlement for compensation enclosed

20:11 **opened** your email settlement for compensation enclosed

20:11 **opened** your email settlement for compensation enclosed

16:24 **opened** your email settlement for compensation enclosed

16:14 **opened** your email settlement for compensation enclosed

16:13 **opened** your email settlement for compensation enclosed

16:11 **opened** your email settlement for compensation enclosed

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 311 -

### K3. Confiscating and Wiping Phones

733.    On April 4, *6 days after Lyft's IPO,* Lyft Headquarters sets another meeting

with Drivers, where Plaintiff alleges it was to conceal evidence and witness tamper.



734.    On April 8, *9 days later*, after demand expired, Lyft H.Q. calls for another meeting

with Drivers.

735.    On April 11, *3 days later*, Nicole messages Plaintiff through text asking to "talk."

736.    On April 12, *1 days later*, on, Divinity suddenly leaves Lyft, an employee involved

with Louis, Joe, Does, cutting ties, *"cutting ties."*

737.    On April 15, *3 days later*, Lyft Employee, Divinity cancelled on Louis meeting, as she

had already resigned. Plaintiff alleges Divinity was forced to leave Lyft, *"cutting ties."*

738.    On April 16, *1 day later,* Louis displays erratic behavior as several

Drivers did not attend the previous meeting. Plaintiff alleges Lyft Executives planned to "reset"

Drivers phones and other electronic devices to remove corporate secrets collected from competitors,

and/or any and all evidence tracing back to Defendants wrongdoing. Whereas in this Complaint, this

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 312 -

tactic was used by Joe in a multiple text messages to Plaintiff, as pictured below on the right.




739.    On April 16, ***the same day***, Plaintiff sends an investor who claimed he was a fraud who colluded with Joe, Louis and Does, a video of Plaintiff's Wife breaking down crying from damages, stating he will be taking legal action.

740.    April 18, ***2 days later***, Nicole text messages Plaintiff asking why her email was not working when she stopped her involvement after an Uber meeting in February.

741.    April 22, ***4 days later***, an investor who admitted Joe claimed Plaintiff was stealing millions of dollars retracted his statement claiming in a frantic manner.

742.    April 24, ***2 days later***, Lyft Employee, Divinity announces she is leaving Lyft, who

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 313 -

has since deleted her announcement and all evidence on her social media profile, as pictured below.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 314 -

## K4. Hacking and Destroying Plaintiff's Evidence

743.    May 2, *14 days later*, pictured below on the left and right, at approximately 3:35PM, Plaintiff's iCloud was hacked. Plaintiff was scrolling through Joe's messages to gather evidence for this Complaint. The iPhone pop-up states, "Your Apple ID and phone number are now being used for FaceTime on a new Mac." Plaintiff has always stayed signed in to his existing iMac. This was a successful hack into Plaintiff's iCloud and Facetime Account, where the culprit started deleting evidence relating to Defendants.

744.    Pictured below, Plaintiff's 27" iMac was an already registered Device, the unknown Admin's Mac was a hacker's profile to delete Plaintiff's evidence against Defendants. Plaintiff removes the device from his account attempting to thwart the attack.




Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 315 -

### K5. Plaintiff and His Wife Delete Uber and Lyft App, Defendants

### Then Use IMEI and GPS Call Tracing Methods.

### Plaintiff asserts the new California bill, AB5 would prevent

### such behavior of stalking as described herein, making it a crime.

Done  🔒 google.com        Ↄ

The Boston Globe                    SUBSCRIBE

## Baker seeks more oversight of Uber and Lyft

**By  Aidan Ryan** Globe Correspondent, July 10, 2019, 1:27 p.m.





Governor Charlie Baker. (AP/FILE)

Governor Charlie Baker Wednesday called
for stricter oversight of the ride-hailing
industry, proposing to toughen penalties
on drivers who stalk customers or falsify



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 316 -

745.    May 3, *1 day later*, after Plaintiff and his Wife delete the Uber and Lyft app,

paralyzing Defendants ability to use their Hell Programs to track and invade the privacy of Plaintiff

and his Wife, a call originated from Singapore, attempting to track Plaintiff and his Wife. Plaintiff

has never received a call from this location in his life, and has no affiliations in Singapore.



746.    May 6, *3 days later*, a former iHug driver, and current Uber and Lyft driver calls

Plaintiff on his phone. Plaintiff forwarded the call to voicemail. The driver frantically stated, "Adam

hi this is Diane Goode ("Diane"), I need you to call me back I've been trying to reach you and unable

to drive over there so please call me back thanks bye-bye..." Plaintiff asserts he hasn't spoken with

this Driver since being forced to close down iHug's transportation operation in 2018.

> **Greeting**     **Voicemail**     Edit
>
> **Dianne** ▓▓▓▓▓▓ **iHug ICC**
> phone
> May 6, 2019 at 3:47 PM
>
> Transcription Beta
> "Adam hi this is Diane good I need you to
>   call me back I've been trying to reach you
>   then unable to drive over there so please
>   call me thanks bye-bye..."

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 317 -

## K6. Attorneys Leak Plaintiff's Complaint to Defendants

747.    Plaintiff is appalled Defendants use investor cash to pay off local Sacramento, California Attorneys to provide details of anything relating to an iHug Complaint regarding Lyft and Uber.

748.    On May 9, 2019, *3 days after* an Uber, and Lyft driver calls Plaintiff, Plaintiff contacted James J. Banks ("James") for legal representation against Defendants, James oddly responded, no conflict with Tesla and Lyft. Whereas Plaintiff never mentioned Tesla. This substantiate Uber's involvement with Lyft in this Complaint. The attorney confirmed no conflict, and requested the Complaint.

749.    Pictured below the email:

James J. Banks                                                                         May 9, 2019 at 12:01 PM

RE: i                          d

To:  Adam John

Siri found new contact info in this email: James J. Banks jl                                    add to Contacts...

John, I should of read your email more carefully: If at this point you need a settlement demand letter sent, we would be happy accomplish that for you, if you would like. I (mistakenly it seems) thought you wanted to immediately file a lawsuit and I start trial in a few weeks. The perils of modern modes of communication. . .

We have no conflicts with either Lyft or Tesla. Coincidentally, the opposing party in my upcoming trial is Tesla. I am available to discuss if you would like. All the best, jjb

James .
BANK
901 F S
Sacran                    814-2403
(916) 3
(916) 3
http://

CONFIDENTIALITY NOTICE - PRIVILEGED AND CONFIDENTIAL

This communication constitutes an electronic communication within the meaning of the Electronic Communication Privacy Act, 18 U.S.C. 2510. This communication and any accompanying document(s) are confidential and privileged. They are intended for the sole use of the addressee. If you receive this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon the communication is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the attorney-client privilege as in this communication or otherwise. If you have received this communication in error, please contact me at the above Internet address or telephone number. Thank you.

750.    Pictured on the next page atop, and below, a screenshot of the five-person firm, and email tracing activity substantiating the email was opened 28 times within seconds. Electronic

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 318 -

Forensic evidence establishes the email was forwarded to Uber and Lyft, for review to anticipate the lawsuit, in order to cover up.

751. This also allowed Defendants to determine the areas of law the Complaint will stand on, in order to hire Attorneys who are conditioned for that specific area of law, to unfairly defend Defendant against Plaintiff's allegations, suppressing Plaintiff **yet again**.

752. Circumstantial evidence establishes Lyft is on a hiring spree, listing 18 new legal positions, in particular, not limited to Counsel for Litigation and Risk, and Healthcare Compliance.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 319 -

753.    Pictured below, the activity from Defendants Legal Counsel, as Plaintiff's Complaint was leaked to Defendants, a similar pattern to Joe, Louis and Does.

**Activity**

2019-07-01

21:26 **opened** your email re: uber and lyft complaint

2019-06-05

18:21 **opened** your email re: uber and lyft complaint

18:05 **opened** your email re: uber and lyft complaint

17:01 **clicked** on the link in your email re: uber and lyft complaint

17:00 **clicked** on the link in your email re: uber and lyft complaint

17:00 **clicked** on the link in your email re: uber and lyft complaint

17:00 **clicked** on the link in your email re: uber and lyft complaint

17:00 **opened** your email re: uber and lyft complaint

15:49 **opened** your email re: uber and lyft complaint

15:48 **opened** your email re: uber and lyft complaint

15:24 **opened** your email re: uber and lyft complaint

15:24 **opened** your email re: uber and lyft complaint

15:18 **clicked** on the link in your email re: uber and lyft complaint

15:12 **clicked** on the link in your email re: uber and lyft complaint

15:10 **clicked** on the link in your email re: uber and lyft complaint

15:09 **clicked** on the link in your email re: uber and lyft complaint

15:08 **clicked** on the link in your email re: uber and lyft complaint

15:08 **clicked** on the link in your email re: uber and lyft complaint

14:58 **opened** your email re: uber and lyft complaint

14:57 **clicked** on the link in your email re: uber and lyft complaint

14:56 **clicked** on the link in your email re: uber and lyft complaint

14:38 **clicked** on the link in your email re: uber and lyft complaint

14:38 **opened** your email re: uber and lyft complaint

14:37 **opened** your email re: uber and lyft complaint

14:37 **opened** your email re: uber and lyft complaint

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 320 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14:30 **opened** your email re: uber and lyft complaint

14:30 **opened** your email re: uber and lyft complaint

14:30 **clicked** on the link in your email re: uber and lyft complaint

14:30 **clicked** on the link in your email re: uber and lyft complaint

14:30 **opened** your email re: uber and lyft complaint

14:08 **opened** your email re: uber and lyft complaint

14:03 **opened** your email re: uber and lyft complaint

14:03 **opened** your email re: uber and lyft complaint

13:59 **clicked** on the link in your email re: uber and lyft complaint

13:59 **clicked** on the link in your email re: uber and lyft complaint

13:59 **clicked** on the link in your email re: uber and lyft complaint

13:59 **opened** your email re: uber and lyft complaint

13:32 **opened** your email re: uber and lyft complaint

13:29 **opened** your email re: uber and lyft complaint

13:29 **opened** your email re: uber and lyft complaint

13:22 **clicked** on the link in your email re: uber and lyft complaint

13:22 **clicked** on the link in your email re: uber and lyft complaint

13:20 **clicked** on the link in your email re: uber and lyft complaint

13:20 **clicked** on the link in your email re: uber and lyft complaint

13:19 **opened** your email re: uber and lyft complaint

13:19 **opened** your email re: uber and lyft complaint

13:19 **opened** your email re: uber and lyft complaint

12:57 **opened** your email re: uber and lyft complaint

12:57 **opened** your email re: uber and lyft complaint

11:57 **your email re: uber and lyft complaint was sent**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 321 -

754.    May 9, *3 days later*, the Whistleblower who met with Plaintiff in private calls Plaintiff and leaves a 3-minute voice message with no message. He was driving for Lyft and Uber as you can hear a passenger in the background. It's still unclear why he called.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 322 -

## K7. Defendants Continue Running, Evading and Using False Identities

755.    On May 10, 2019, Uber goes IPO.

756.    On May 10, 2019, *the same day*, After Joe tipped off John, Logan, Ben and Does that Plaintiff is claiming corporate espionage, cyber-hacking, and tortious interference, Ben has refused to accept court documents as he thinks it's Plaintiff's Complaint.

757.    Ben has also refused to identify himself. Pictured below and on the next page, confirmation from person serving Ben, that Ben is refusing service and failing to identify himself to check if it's Plaintiff's Complaint.



| Day | Date | Time | Location | Results |
|-----|------|------|----------|---------|
| Fri | 05/10/19 | 2:10pm | Business | The receptionist called up to Suite 101 and shortly thereafter a man came to the lobby to speak with me. He looked at the documents and said that they were aware of the lawsuit and have spoken to the attorney named on the documents. He said that he told the filing attorney the documents need to be served in SF through his authorized representative. The man refused to provide his name or any further details. Attempt made by: Carlos E. Castro. Attempt at: Andreessen Horowitz 2865 Sand Hill Rd. # 101 Menlo Park, CA 94025. |
| Mon | 05/13/19 | 1:05pm | Business | Per the lobby receptionist the subject is not in at this time. She can not provide any information on when he might be in the office. Attempt made by: Carlos E. Castro. Attempt at: Andreessen Horowitz 2865 Sand Hill Rd. # 101 Menlo Park, CA 94025. |
| Thu | 05/23/19 | 3:00pm | | Stop service per Mr. Jaconette, they are working with his counsel to accept via NOA. Attempt made by: Janis Dingman. |
| Mon | 06/24/19 | 10:00am | | Per Mr. Jaconette's office, counsel for Mr. Horowitz have not returned the NOA so please proceed with substituted service. Attempt made by: Janis Dingman. |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 323 -

| Day | Date | Time | Location | Results |
|---|---|---|---|---|
| Tue | 06/25/19 | 11:18am | Business | I spoke with two receptionists at the office, both said that Mr. Horowitz is not available at this time and both refused to accept service or provide their names. I announced service and left the documents on the desk. Attempt made by: Carlos E. Castro. Attempt at: Andreessen Horowitz 2865 Sand Hill Rd. # 101 Menlo Park, CA 94025. |
| Tue | 06/25/19 | 11:20am | Business | Substituted Service on: Ben Horowitz Business - Andreessen Horowitz 2865 Sand Hill Rd. # 101 Menlo Park, CA 94025 by leaving a copy of the document(s) with: Jane Doe, Receptionist, Asian, Female, 32-37 Years Old, Black Hair, 140 Pounds, Sitting. Served by: Carlos E. Castro |

758. May 11, *2 days later*, a former iHug driver, and current Uber and Lyft driver calls Plaintiff's Wife.



759. May 14, *3 days later*, Nicole asked if iHug was still in operation, and *"cuts ties."*

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 324 -

## K8. Joe Creates an Accent and Claims

## He Moved Out of State to Evade Court

760. On May 16, 2019, *6 days after* Ben is refusing service, Joe was served regarding an unrelated case. Joe refused the court documents as he believed it was Plaintiff's Complaint, regarding hacking, corporate espionage and other violations.

761. Even more outrageous, Joe used an accent, and falsely stated he moved out of state in order to evade the law, with knowledge of his wrongdoing. Social media accounts establish Joe's kids are still attending school in Sacramento, California, substantiating Joe is on the run for his wrongdoing with Defendants. Pictured below, Proof of Service of Summons.



JOSEF ACEBEDO, Who tried to refuse service by refusing to take documents and did not state reason for refusal, with identity confirmed by subject saying yes when named, a black-haired Hispanic male approx. 35-45 years of age, 5'8"-5'10" tall and weighing 140-160 lbs with an accent.

---

Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 325 -

## K9. Defendants Immediately Start Covering Up Using The Media

762.    May 17, *1 day later*, after Plaintiff shared part of his Complaint with law firms in San

Francisco, as he was seeking representation, Plaintiff alleges after Lyft and Uber found out they are

endangering dialysis patients lives through their taxi anti-competitive tactics in healthcare, Lyft

begins to launch stories involving drivers saving patients' lives.



Lyft Driver Saves Elderly Woman Who Fell In Tub

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 326 -

### K10. Defendants Continue to Attempt

### to Trace and Locate Plaintiff and His Wife

763.    May 21, *4 days later*, While Plaintiff was writing his Complaint, the driver, Diane called again, this time she didn't leave a message.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 327 -

764.    May 23, *2 days later*, another former iHug driver, and current Uber and Lyft driver sends Plaintiff's Wife a text message. Plaintiff and his Wife have not spoken to the Driver since early 2018. Defendants instructed Drivers to call Plaintiff Wife, to try and prove no emotional damages.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 328 -

### K11. Defendants' Drivers Attempt to Hack

### iHug's Email System to Delete Any and All Evidence

765. May 25, *2 days later*, While Plaintiff was writing his Complaint, a culprit attempted to access iHug's internal emailing system which gives access to iHug's internal details. Plaintiff immediately performed an IP trace, where it was determined the culprit attempted to login 5 miles from Big Bear Diner, a restaurant John, Louis, Joe, and Does meet. The login was attempted using David Tilton's ("David") email, a former iHug driver who's best friends with Louis, and John.

766. Pictured below on the left, Google alerts of failed attempt. Pictured below on the right, Louis wearing a black Lyft jacket who had access to iHug's internal systems as seen herein, and David in the middle, wearing a white shirt. Photographic, network, and circumstantial evidence establishes Defendants are still attempting to delete emails, spreadsheets, and other evidence which substantiates their involvement at iHug.





767. June 11, *18 days later*, Immigration fraud agents perform, bed check.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 329 -

768.   June 17, **_6 days later,_** Joe stalked Plaintiff and his Wife.

769.   June 24, **_7 days later_**, Joe louis and Does are seen together for the first time at his private group.

### K12. Insurance Agent Becomes Whistleblower Sending a Cryptic Message

### That Plaintiff and his Wife are Facing More Attacks

770.   July 9, **_15 days later_**, an insurance Agent that is part of the insurance scheme called Plaintiff, and cryptically warned Plaintiff and his Wife, attacks were coming but they would be guarded by God, stating, "*The joy of the Lord will guard your heart in Christ. They enemy may try but the joy will be like a shield that destroys the fiery darts that fly towards you. You may walk through many challenges but the God of Peace will be with you. Surrender to Him.*" Pictured below, her text message to the Plaintiff, she had not messaged Plaintiff since September, 21, 2017, over a year and a half later.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 330 -

## K13. Manipulating Investigations and Evidence

771.   Historical, circumstantial, electronic, behavioral nature, and forensic evidence establishes Defendants instructed Louis not to open any emails from iHug, or the Plaintiff. Joe's email was review by Lyft and Uber's Legal Counsel. It's substantiated Lyft, Uber and/or its Legal Counsel advises all parties who received the initial demand for damages to avoid all communications as Defendants are under investigation. Pictured below, emails opened the first time were not opened the second time, example, [**1st email**, Joe opened 39 times | **2nd email**, Joe opened 0 times].



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 331 -

## K14. Plaintiff Sends Physical Copy of Settlement

## Demand, Defendants and Board Members Run

772.    Plaintiff's Wife drew out the willful actions by Defendants in a timeline for the month of July, 2019, after Defendants receive Plaintiff's settlement demand. Pictured below, you will see the beginnings of the Defendants willful actions.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 332 -

773.   July 10, 2019, *1 day later*, Plaintiff sends Defendants settlement demand email.

| | RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST | 12 recipients | 50.00% opened | 0.00% clicked |
|---|---|---|---|---|
| | Regular · 9 hours ago  View report | | | |

HIGHLY CONFIDENTIAL SETTLEMENT DEMAND FOR CONFIDENTIAL SETTLEMENT PURPOSES ONLY CALIFORNIA EVIDENCE CODE SECTION 1154

**IMPORTANT: ALL COMMUNICATION WITH ADAM MUST BE IN WRITING TO L████████TH.COM**

**ALL PARTIES HAVE UNTIL JULY 12, 2019 BY 5:00PM PST TO CONFIRM ACCEPTANCE OR DENIAL OF THIS SETTLEMENT DEMAND THROUGH EMAIL AT ████████████.COM;**

**IN THE EVENT ALL PARTIES CHOOSE TO SETTLE, ALL PARTIES HAVE UNTIL JULY 19, 2019 BY 5:00PM PST TO SUBMIT DETAILS OF THEIR SETTLEMENT OFFER TO ADAM;**

**ALL PARTIES HAVE UNTIL JULY 23, 2019 BY 5:00PM PST TO FINALIZE PAYMENT TO ADAM.**

This settlement demand letter was signed on July 4, 2019, by Adam Mackintosh.

All parties have until July 12, 2019 at 5:00 P.M. P.S.T. to respond with their decision to settle.

If any party fails to respond by July 12, 2019 at 5:00 PM PST., it will be considered a denial of settlement demand for all parties and all offers and confidentiality will expire on by July 12, 2019 at 5:00 PM PST. Adam will then have any and all rights to remedy the damages to the fullest extent necessary.

THE TIME LIMIT SET HEREIN TO RESPOND, IS FAIR, REASONABLE AND FIRM, BASED ON ALL DAMAGES SUSTAINED.


See attached settlement demand link:

legal demand

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 333 -

774.    July 10, *the same day,* Logan unsubscribes from Plaintiff's settlement demand email to remove any future evidence that may prove investors allegations, see *McCloskey–vs– Lyft, Inc. et al, case number CGC-19-575475, the allegations state: "The Registration Statement and Prospectus incorporated therein (collectively, the "Registration Statement") issued in connection with the IPO contained materially incorrect or misleading statements and/or omitted material information that was required to be disclosed."* Plaintiff further alleges, the actions taken by Logan herein, is described in a *Waymo–vs–Uber–Case#3:17-cv-00939-WHA,* in particular, a former Uber employee and United States Defense Intelligence Agency Officer, states, *"Jacobs then became aware that Uber, primarily through Clark and Henley, had implemented a sophisticated strategy to destroy, conceal, cover up, and falsify records or documents with the intent to impeded or obstruct government investigations as well as discovery obligations in pending and future litigations. Besides violating 18 U.S.C. § 1519, this conduct constitutes an ethical violation. Jacobs further states,* ***storing data on non-attributable devices, Uber believed it would avoid detection and never be subject to legal discovery."*** Pictured below, Logan unsubscribes to prevent further evidence on Lyft's systems.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

775.    July 10, *the same day,* after Logan unsubscribed to Plaintiff's emails regarding a legal demand for damages, Plaintiff directly sends the demand letter through email to all Defendants so Defendants can't unsubscribe and "get" Plaintiff on a legal technicality.

| | | | |
|---|---|---|---|
| ☐ ☆ To: MrJoeacebedo | RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST - HIGHLY CONFI... | Jul 10 |
| ☐ ☆ To: joeacebedo | RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST - HIGHLY CONFI... | Jul 10 |
| ☐ ☆ To: jerrywang | RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST - HIGHLY CONFI... | Jul 10 |
| ☐ ☆ To: dara | RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST - HIGHLY CONFI... | Jul 10 |
| ☐ ☆ To: jerrywang | RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST - HIGHLY CONFI... | Jul 10 |
| ☐ ☆ To: legal 2 | Inbox RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST - HIGHLY ... | Jul 10 |
| ☐ ☆ To: dara | RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST - HIGHLY CONFI... | Jul 10 |
| ☐ ☆ To: ben | RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST - HIGHLY CONFI... | Jul 10 |
| ☐ ☆ To: logan | RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST - HIGHLY CONFI... | Jul 10 |
| ☐ ☆ To: John | RE: Legal Demand - Expires July 12, 2019 at 5:00PM PST - HIGHLY CONFI... | Jul 10 |

776.    July 10, *the same day,* After Plaintiff sees Logan unsubscribe from the email, and disregards a very serious matter, Plaintiff and his Wife print, seal and mail the settlement demands to Defendants H.Q., and Joe, Louis and Jerry's last known addresses.

777.    Defendant and his Wife wanted to show the Honorable Judge, who will preside over the Complaint, to see they made every good faith effort to settle, despite the vile attacks over a year and a half, while endangering lives in healthcare for greed.

778.    Pictured on the next page atop, photographic evidence establishes Plaintiff sent off all demand letters to Defendants in physical artifact form to ensure they receive it, read it and acknowledge it before court if they refuse to settle.

Adam John Mackintosh--vs--Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 335 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 336 -

779.    Pictured below, Plaintiff showing good-faith efforts to settle, inserting this cover sheet in the sealed envelopes mailed by FedEx.

An email was sent to you on July 10, 2019 at 5:22PM PST. That email demand expired July 12, 2019 at 5:00PM.

I am giving you one last chance to settle this matter. I am providing you with a grace period to show an Honorable Judge, I, Adam John Mackintosh, is in good-faith attempting to settle before court.

This grace period expires on July 19, 2019

**Adam John Mackintosh,**

/s/ Adam John Mackintosh //
Signed and Date 07/10/2019 at 8:40PM

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 337 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 338 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 339 -

780.    Pictured below and on the proceeding pages, the settlement demands were sent in
physical form, giving Defendants definitive notification and no excuse for not responding.



Adam John Mackintosh--vs--Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 340 -

FedEx

███████ 1945 ✎

# Delivered
## Tuesday 7/16/2019 at 12:09 pm

**DELIVERED**

Signature not required

**GET STATUS UPDATES**
**OBTAIN PROOF OF DELIVERY**

**FROM**
RANCHO CORDOVA, CA US
**TO**
ROSEVILLE, CA US

Adam John Mackintosh—vs—Lyft, Uber. Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 341 -

FedEx    Shipping ⌄   Tracking ⌄   Printing Services ⌄   Locations ⌄   Support ⌄        Sign In ⓐ    🔍

**Travel History**              **Shipment Facts**

                                                                        Local Scan Time    ⌄

Monday , 7/15/2019

| | | | |
|---|---|---|---|
| | 3:18 pm | CUPERTINO, CA | Ready for recipient pickup |
| | | | Package available for pickup at FedEx OnSite: WALGREENS, ▮▮▮▮▮▮▮ R RD |
| | 3:04 pm | SUNNYVALE, CA | At local FedEx facility |
| | | | Tendered at FedEx OnSite |
| | 2:39 pm | SUNNYVALE, CA | Delivery exception |
| | | | FedEx redirected your package to a nearby FedEx location |
| | 2:39 pm | SUNNYVALE, CA | Delivery exception |
| | | | Customer not available or business closed - Access is controlled by customer |
| | 8:15 am | SUNNYVALE, CA | On FedEx vehicle for delivery |
| | 7:25 am | SUNNYVALE, CA | At local FedEx facility |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

- 342 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 343 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FedEx**   Sign In   

**TRACK ANOTHER SHIPMENT**

█████ 6402 ✎

# Delivered
# Monday 7/15/2019 at 9:19 am

●————————●————————●————————✓

**DELIVERED**

Signed for by: D.WILLIAMS

**GET STATUS UPDATES**
**OBTAIN PROOF OF DELIVERY**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 344 -

781.   *After Joe, Ben, and Logan* refuse any contact, Jerry also refused the legal demand

from Plaintiff for damages, **Plaintiff readies for trial.**



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 345 -

782.   On July 12, 2019, *3 days before,* Uber, Lyft, John, Logan, Ben, Louis, and Jerry

are scheduled to receive the settlement demand, Joe received it first.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 346 -

### K15. Potential Bankruptcy Fraud

783.    On July 13, 2019, *1 day after* Joe alerted Defendants, it's alleged they consult with a Bankruptcy Litigation Attorney in Delaware, John T. Dorsey, ("John 2"). John 2 signed up to Plaintiff's software, in particular, "John 2 works closely with clients and co-counsel to find practical, business oriented solutions to difficult cases. When resolution short of trial is not possible, John carefully manages litigation costs and brings refined skills to the courtroom in order to achieve the best possible results for clients." John 2 violated iHug's Terms of Service. Its alleged Defendants are seeking bankruptcy to avoid paying Plaintiff's damages.



784.    Pictured below, John 2 signs up to Plaintiff's rideshare software, Plaintiff blocks the sign up, and refunds John 2, kicking him out of the software system for Drivers.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 347 -

## K16. It's Alleged Dara Will Exit Uber, After Facing

### Plaintiff's Lawsuit and The Scandal Caused by Defendants and Does

785.    On July 22, 2019, *9 days after*, Defendants Bankruptcy Attorney signs up for

iHug's Software, and *1 day before* expiration of Plaintiff's settlement demand, it's

alleged Dara Khosrowshahi ("Dara") met with Uber's Board of Directors on multiple

occasions. The board has since discussed Plaintiff's damages and allegations outlined on his

settlement demand, and have started to prepare for Plaintiff's upcoming lawsuit.

786.    *The same day*, Dara suddenly acquired 629,722 ownership of Uber Securities,

valued at approximately $28,035,223.44. Plaintiff alleges, Dara will soon step down as CEO,

after taking the blame for Uber's wrongdoing.

787.    Pictured below, Uber files Dara's Statement of Changes with the SEC. Pictured

on the next page, Dara receives new Uber Securities.

| Quarterly Reports | **SEC filings** | | | |
|---|---|---|---|---|
| **2019** ⌄ | **Filing type** ⌄ | **Filing description** | **Download/View** → | |
| 7/24/19 | 4 | Statement of Changes in Beneficial Ownership KHOSROWSHAHI DARA | PDF  DOC  XLS | |
| 7/24/19 | 8-K | Current report filing | PDF  DOC  XLS | |
| 7/24/19 | 8-K | Current report filing | PDF  DOC  XLS | |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 348 -

# FORM 4

[ ] Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934 or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL
OMB Number: 3235-0287
Estimated average burden hours per response...0.5

| 1. Name and Address of Reporting Person | 2. Issuer Name and Ticker or Trading Symbol |
|---|---|
| KHOSROWSHAHI DARA | Uber Technologies, Inc [ UBER ] |
| (Last) (First) (Middle) | 3. Date of Earliest Transaction (MM/DD/YYYY) |
| 1455 MARKET STREET, 4TH FLOOR | 7/22/2019 |
| (Street) | 4. If Amendment, Date Original Filed (MM/DD/YYYY) |
| SAN FRANCISCO, CA 94103 | |
| (City) (State) (Zip) | |

5. Relationship of Reporting Person(s) to Issuer (Check all applicable)

| X Director | 10% Owner |
|---|---|
| X Officer (give title below) | Other (specify below) |

Chief Executive Officer

6. Individual or Joint/Group Filing (Check Applicable Line)

X Form filed by One Reporting Person
Form filed by More than One Reporting Person

### Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Trans. Date | 2A. Deemed Execution Date, if any | 3. Trans. Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 7/22/2019 | | A [1] | V | 629722.00 | A | $0.00 | 1280939.00 | D | |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 349 -

### K16A. Uber's CEO, Dara, Values

### Money Over a Women's Life

788.    Plaintiff vehemently argues Dara failed Uber, and failed the American people. Not only did Dara, and Uber's Board of Directors ignore Plaintiff's settlement demand, they collectively ignored the fact that Plaintiff argues the Defendants are endangering life in healthcare.

789.    Dara and Uber's legal team failed to contact Plaintiff to discuss the matter in more detail. This seems to be a typical cultural behavior as described by Dara in an interview at Stanford University Graduate School, stating, "I need a silver bullet machine gun to take out my competition."

790.    Plaintiff maintains, Dara also proclaims in his "Moving Uber Forward" video, "One of our core values is to always do the right thing," and "when there are times when we fall short, we commit to being open, take responsibility for problem, and fix it," "you got my word." Whereas in this Complaint, Dara does the following:

791.    Dara did not do the right thing by ignoring Plaintiff's settlement demand.

792.    Dara was not transparent, who met with Uber's board of directors in private.

793.    Dara did fall short, and did not take responsibility to fix the problem.

794.    Dara did not keep his word as promised in his video.

795.    Lastly, and even more disgraceful, Dara took $28,000,000 million dollars in new Uber securities within days of receiving Plaintiff's settlement demand, while ignoring Plaintiff's concerns involving the endangerment of Life in healthcare. Plaintiff's settlement demand even included visuals to express the extent of the damages. Such behavior and disregard for life is willful and reckless. **It's completely un-American.**

Adam John Mackintosh —vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 350 -

## K17. Uber Executives and Board Members Run with Profits Made from

## Plaintiff's $1.2 Trillon Healthcare Opportunity – Matt Cohler

796.     On July 23, 2019, *1 day after* Dara received Uber securities, and *the day of* Plaintiff's settlement demand expiration date, Uber's Board Member, Matt, General Partner at Venture Capital Benchmark, requests to resign from Uber, as he is aware of everyone's wrongdoing, including his own, as alleged by Ben in an interview with Bloomberg.

797.     Matt's Venture Capital Firm, Benchmark, invested in Zendesk, a system that was used to misappropriate Plaintiff's trade secrets. Ben who's a Board Member at Lyft, claimed Uber and "the Benchmark guys" called investors to threaten them. Whereas it's proven based on audio evidence, Plaintiff's investors were threatened not to invest in iHug, choking off iHug's capital to grow while iHug was being sabotaged.

798.     Pictured below and on the next page, Uber files with the United States Securities and Exchange Commission, advising two board members who are suddenly resigning.



TechCrunch
Uber loses Arianna Huffington and Benchmark's Matt Cohler as board members – TechCrunch
Uber has lost two of its board members today. Arianna Huffington, CEO at Thrive Global, and Benchmark General Partner Matt Cohler's resignations from the board went into effect today, according to two Uber filings with the SEC. "Given Thrive's growth, it has become clear to me that I wi... (51 kB) ▾

Adam John Mackintosh —vs— Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 351 -

799.   On July 24, 2019, *1 day after* Plaintiff's settlement demand expires, Uber files with the SEC, regarding Matt's resignation from Uber.

---

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# FORM 8-K

---

### CURRENT REPORT
### Pursuant to Section 13 or 15(d)
### of the Securities Exchange Act of 1934

**Date of Report (Date of earliest event reported): July 24, 2019**

---

# UBER TECHNOLOGIES, INC.
### (Exact name of registrant as specified in its charter)

---

| **Delaware** | **001-38902** | **45-2647441** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Commission File Number) | (I.R.S. Employer Identification No.) |

**1455 Market Street, 4th Floor**
**San Francisco, California 94103**
(Address of principal executive offices, including zip code)

**(415) 612-8582**
(Registrant's telephone number, including area code)

**Not Applicable**
(Former name or former address, if changed since last report)

---

**Item 5.02 Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers**

On July 23, 2019, Matt Cohler informed the Company of his intention to resign as a member of its board of directors, effective as of July 24, 2019.

In a note to the Board regarding Mr. Cohler's departure, Dr. Sugar stated: "Matt and Benchmark's immeasurable contributions have helped make Uber the company it is today. We wish them continued success as they nurture the next generation of world-changing companies."

Mr. Cohler stated: "My partners at Benchmark and I have had the privilege of being part of the Uber journey since the Series A nearly a decade ago. I'm thrilled with the company's position, excited for the road ahead, and extend my deepest thanks to all of Uber's past and present employees, directors, drivers, and customers."

Mr. Cohler's resignation was not the result of any disagreement between Mr. Cohler and the Company, its management, board of directors or any committee thereof, or with respect to any matter relating to the Company's operations, policies or practices.

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 352 -

**K18. Second Uber Board Member Runs After Receiving Plaintiff's**

**Settlement Demand – Arianna Huffington**

806.     On July 24, 2019, *the same day* Uber files with the SEC, Arianna Huffington

resigns from Uber as she is aware of Uber's wrongdoing. Travis Kalanick ("Travis") remains on

Uber's Board of Directors.



Arianna Huffington, pictured here with former Uber CEO Travis Kalanick, is leaving the board of directors. Kalanick remains a board member. © 2016 BLOOMBERG FINANCE LP

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 353 -

### K19. Deleting Evidence of Infiltration of Competition by Defendants

800.    In order to cover up any wrongdoing, after receiving Plaintiff's demand letter, Louis, Joe, Jerry, and Does shut down Empathy Transportation Services website. The website contained photos of them infiltrating Empathy, the same fashion they did at iHug and competitors alike.

801.    This substantiates all allegations in all proceeding paragraphs.

**Before demand letter was sent.**                    **After the demand letter was sent.**



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 354 -

## K20. Cutting Ties with People with Knowledge of Wrongdoing

802.    After Plaintiff sends a demand letter outlining corporate espionage, sabotage, cyber

hacking and causing severe emotional damages that nearly led Plaintiff's Wife to suicide, Defendants

start to "let people go," who were integrally involved, in particular Divinity, who metaphorically

speaking, had "*Lyft in her blood*," who worked directly with Joe, Louis and Does, as well as cross-

functional partners in product, engineering, government relations, legal, marketing and operation.

803.    Divinity had knowledge of the misappropriation of corporate secrets, handling burner

phones, infiltrating competition, intelligence gathering from competition, controlling compromised

Drivers. Defendants were trying to eliminate the mole who they thought was leaking info to Plaintiff.

804.    Pictured below, Divinity worked closely with top executives at Lyft. She adored Lyft,

and had no reason to leave suddenly.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 355 -

805.    Divinity worked closely with John, Louis, Lyft's CFO Brian, and Does. After the settlement demand letter was read by Defendants Legal Counsel, Divinity shockingly, and suddenly departed Lyft. Pictured below, demonstrates just how much she loved Lyft.

  

806.    Pictured below, before and after Defendants received Plaintiff's settlement demand involving corporate espionage, hacking, misappropriation of corporate secrets, Defendants cut ties.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 356 -

## K21. Defendants Begin to Eliminate the Referral Programs

## That Were Used to Suppress Competition

807.    To continue establishing a preponderance of evidence, Plaintiff asserts the

Insurance Scheme outlined in section A, titled, "The Secret Insurance Scheme that Unlawfully

Suppresses Competition," is proven based on recent events as described herein.

808.    Plaintiff argues Defendants use investor cash to incentivize its Drivers to

mislead competitors, using Lyft and Uber's brand power, in order to infiltrate, and extract

competitor Drivers. Defendants Drivers then use promotional codes to receive cash incentive

when the new competitor's drivers are on-boarded to Lyft and Uber's platform.

809.    Plaintiff asserts this creates a **parabolic growth and financial loss**, as described by

CNBC interviewer Andrew Ross Sorkin, ("Andrew"), where Logan then states, "We're going

after a $1,200,000,000,000 trillion-dollar opportunity." Plaintiff maintains Defendants are using

his $1,200,000,000,000 trillion-dollar healthcare opportunity, placing Defendants on a pathway

to profitability, unjustly enriching themselves.



810.    Pictured on the next page atop, Defendants start deleting the incentive program

mid-July 2019, one element of the insurance scheme.

811.    You can no longer log in to receive cash incentive when onboarding competitor's

drivers.

Adam John Mackintosh —vs— Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 357 -



812.    Pictured below, a very unusual amount of activity and changes to Lyft's websites and software logins. Plaintiff alleges Defendants are using knowledge from Plaintiff's Complaint to cover up, "creating activity," i.e. deletions, changes, concealment.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 358 -

## K22. Lyft Infiltrated Uber to Intercept Plaintiff's

## Revolutionary Healthcare Vehicle Designs

## That Would Provide the World's Safest Ride

813.   To continue establishing a preponderance of evidence that Defendants infiltrated Plaintiff's Company, iHug. While in the heat of corporate espionage pre-IPO, Plaintiff disclosed to Nicole, who was a mole for Lyft, that Uber and Lyft's fleet is not safe for healthcare, and unfit. After Nicole learned Plaintiff is pitching Uber regarding his intellectual property and patent pending healthcare vehicle, Dan suddenly resigns from Lyft, and joins Uber's healthcare team, to intercept Plaintiff's IP details to unjustly enrich Lyft.

814.   Pictured below, Plaintiff sends Dan, and his Boss a recap email of the benefits of the IP. It's discovered, Dan's boss resigned *1 month later*. The attachment consisted of IP.

 **Adam John** <adam@ihughealth....    Feb 19, 2019, 1:17 PM   ☆      ⋮

to trigub, bcc: Aaron ▾

Hi Dan,

Thanks for your time today. Here is a re-cap.

Overview of meeting:

- Uber will convert NEMT into Rideshare ($300 billion cash contracts and private pay).
- Migrate Uber out of a thin-margin company to a **high margin net profit and cash-flow** business.
- Uber will not own vehicles.
- Uber will not train drivers.
- Vehicles will be leased to Uber drivers, making WAV truly on-demand without heavy investment in MV Transportation and other partnerships.
- IP can be used in multiple markets (ie. NEMT, public transit, UberEats, catering/deliveries).
- IP will allow Uber competitive differentiation over competitors (eg. Lyft) **for the first time.**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 359 -

815.    Pictured below, slides from Plaintiff's new revolutionary healthcare vehicle.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 360 -

# Industry Experts



"Sutter had major complaints about the safety and compliance measures of vehicles and drivers throughout my employment at Sutter Health."

**— Daryn Kumar, Former Chief Executive Officer**

"iHug's IP will definitely solve deep vehicle compliance issues and driver safety habits in NEMT, something that Logisticare fails to meet, costing them millions."

**— Jose Millan, Former Logisticare Director of Network Development**



## Current Fleet Problems

Lift and ramp vehicles drive injury, generate expensive lawsuits, increase liability for providers, decrease transportation options and availability, drives up transportation costs, increases expenditure for operators, and creates countless compliance issues and new regulation.

"When is comes to medical transportation, the status quo just won't do."
**Aaron Crowell, Head of Uber Health, Uber**

"Uber is aiming to increase efficiency, enhance the experience, and increase equity and accessibility."
**David Reich, Head of Uber Transit, Uber**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 361 -



# IP features and benefits

## Patient Safety

Design will dramatically reduce injury risk:

- *Trip and fall*
- *Slip and fall*
- *Tip and fall*
- *Back, hand, arm*

## Low – No Liability

Design eliminates ramps, and lifts, removing the following risks:

- *Flawed wheelchair ramp injuries*
- *Injuries caused by defective lifts*
- *Injury from wheelchair push start*
- *Driver back injury*

## Increase Value

Design will offer efficient operation:

- *One-touch WAV button*
- *Premium pay and loyalty*
- *Private pay contracts*
- *Saves 15 minutes of valuable time*

**The partner who utilizes the I.P. will start to undo all competitor healthcare partnerships and absorb NEMT cash contracts.**

**Government and insurance providers want the safest and lowest liability ride option available for their customers.**

816.   To further establish a preponderance of evidence, Lyft was not on the Uber call with Nicole and Dan as he was employed by Uber who signed a non-disclosure with iHug. Lyft suddenly starts to mobilize and ensure compliance, proving they were receiving intel on iHug.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 362 -

817.   ***Within 14 days*** of Plaintiff confronting Dan that <u>Uber's fleet of vehicles are not safe, or compliant for healthcare</u>, John, Logan and other Lyft Executives suddenly made an appearance at their Lyft inspection locations. An employee claims they were interrogating him regarding "how the process works," with particular focus on "<u>vehicle safety and compliance.</u>" Substantiating **<u>Lyft and Uber work together, to suppress competition as a duopoly</u>**, as Lyft were not on the call, **<u>also, proving Defendants are unfit for healthcare, as they are not aware of "their own" vehicle inspection and safety process, as confirmed by the Lyft inspector in the video log ("Vlog") below.</u>**

818.   On February 16, 2019, a Lyft Inspector appears frantic in his Vlog, stating seven or more Lyft executives, including the CEO of Lyft showed, where he states, "I've never been judged so much in my life."



**MEETING'S WITH LYFT CEO**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 363 -





Video link: https://www.dropbox.com/s/8lusb93zpste4b1/Meeting_with_Lyft_CEO.mp4?dl=0

Adam John Mackintosh-–vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 364 -

## K23. Defendants Destroy More Evidence

819.    Case law analysis establishes precedence such behavior exists, see assertion below in a case *Lyft–vs–Travis VanderZanden–Case# CGC-14-542554*. Similar to VanderZander, Joe sells the MacBook Air to destroy any trace of evidence. Pictured below an assertion from the case, regarding Lyft's COO sells his device, soon after resigning from Lyft and leaving to a competitor.

| | |
|---|---|
| 25 | return confidential and proprietary Lyft information VanderZanden possessed post-employment. |
| 26 | Uber's counsel maintained that VanderZanden "has no Lyft proprietary information in his |
| 27 | possession – not now, not when he started at Uber, and not since he left Lyft." |
| 28 | 11.    Rather than turn his phone over to Lyft to ensure the return of all confidential |

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

COMPLAINT FOR BREACH OF
CONFIDENTIALITY AGREEMENT AND
BREACH OF FIDUCIARY DUTY

| | |
|---|---|
| 1 | information, VanderZanden purportedly sold his iPhone on www.gazelle.com soon after his |
| 2 | resignation. Uber's counsel claimed that VanderZanden "has no reason to believe there was any |
| 3 | Lyft proprietary data on the phone at any time," a claim which is contradicted by the allegations |
| 4 | herein and the fact that, as a high-ranking Lyft employee, he certainly would have had Lyft |
| 5 | proprietary information on his iPhone during the term of his employment.  Neither |
| 6 | VanderZanden nor Uber explained why VanderZanden chose to sell his phone in the first |
| 7 | instance.  An odd thing for a high-net worth individual to do, it was likely to cover his tracks and |
| 8 | dispose of evidence of his misdeeds. |

820.    Whereas in this Complaint, after Joe resigned from iHug, he was instructed to sell the MacBook Air he used to load iHug's internal systems and corporate artifacts onto, completely destroying any trace of evidence leading back to Defendants.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 365 -

821.   Pictured below, Joe selling the MacBook Air.



822.   Pictured below, Joe asked iHug's VP of I.T. to load all systems onto his

MacBook Air after giving Defendants access, causing irreparable damages.



**Joe Acebedo** ‹          .com›
to me

Hey Jim, when will you be in? Need help with my personal MacBook Air to upload Trello,Hangouts etc....

Wed, Jan 10, 2018, 11:10 AM ☆

Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 366 -

### K24. Continued Attacks and Stalking

807.    On July 17, 2019, *3 days after* Plaintiff sent Joe a court declaration that his Wife is a whistle-blower, Plaintiff's attorney states the attorney-client privilege is over, and states "I have your green card," but I feel uneasy mailing it, to come in, where he has always mailed documents. This was an attempt to force Plaintiff and his Wife to use the Uber and Lyft app, or physically follow and track where they live without the attorney providing address details. This is yet another attempt to compromise Plaintiff and his Wife's new roommate to make them homeless, and harm them.





https://www.dropbox.com/s/7bq9cduf5at3ysj/plaintiffs_wife_former_immigration_attorney_nervous.

m4a?dl=0

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 367 -

### K25. Wheelchair Accessibility Cover Up – Fake Public Relations

823.    Plaintiff is appalled Defendants unlawfully obtained his Complaint. Defendants are now unfairly attempting to cover up their wrongdoing and changing course, giving Plaintiff an unfair legal standing. Plaintiff vehemently argues, despite Defendants effort to cover up, the reality is Defendants are still too dangerous to operate in healthcare as outlined in Plaintiff's *ex parte* application.

824.    Plaintiff respectfully maintains, based on his quick investigation, and evidence presented herein and preserved in his possession, Plaintiff wouldn't be surprised if Defendants "bribe" innocent patients who have been harmed to say "Lyft and Uber are great services, I need them to get to my medical appointments," whereas before Uber and Lyft, healthcare non-emergency operators were managing the industry the best they could.

825.    Pictured below you will see Lyft's initial stance before they acquired Plaintiff's Complaint, and after they received it in order to cover up.

**Before Lyft saw Plaintiff's Complaint**          **After Lyft saw Plaintiff's Complaint**





---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 368 -

### K26. Helping The Blind to Cover Up – Fake Public Relations

826.    Plaintiff is appalled Defendants unlawfully obtained his Complaint. Defendants are now unfairly attempting to cover up their wrongdoing and changing course, giving Plaintiff an unfair legal standing. Plaintiff vehemently argues, despite Defendants effort to cover up, the reality is Defendants are still too dangerous.

827.    Pictured below, Lyft creates new stories that attempt to touch people's hearts to cover up its wrongdoing.



JULY 8, 2019

## Lyft, Aptiv, and the National Federation of the Blind Partner to Provide Rides to Blind and Low Vision Passengers

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 369 -

## K27. Immigration Cover Up – Fake Public Relations

828.     Plaintiff is appalled Defendants unlawfully obtained his Complaint. Defendants are now unfairly attempting to cover up their wrongdoing and changing course, posting insincere stories to appear innocent. Plaintiff vehemently argues Defendants are attempting to cover up their wrongdoing, whereas Joe, Louis, Does were instructed to claim Plaintiff and his Wife are engaged in fraud to deport her, in particular, Louis asked Plaintiff, "How's your Wife," where Plaintiff never disclosed to Louis he married. Its proven Defendants caused Plaintiff's Wife to want to commit suicide by threat to deport her, attempting to wrongfully imprisoning Plaintiff, causing her severe emotional stress, mental anguish, and flare ups that harmed her body progressing her endometriosis.

Plaintiff Wife crying uncontrollably as she was being threatened to be deported.

Logan's hypocritical statement who unsubscribed from settlement for Plaintiff's Wife's damages.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 370 -

## K28. Suppressing iHug from Taking Cancer Patients

## to Chemotherapy Cover Up – Fake Public Relations

829.    Plaintiff is appalled Defendants unlawfully obtained his Complaint. Defendants are now unfairly attempting to cover up their wrongdoing and changing course, using fabricated public relation stories relating to their wrongdoing. Plaintiff vehemently argues Defendants are attempting to cover up their wrongdoing. Defendants destroyed iHug's transportation operation that transported iHug's cancer and dialysis patients, whereas after Defendants received Plaintiff's Complaint, Defendants are posting fake public relations articles and posts to appear innocent.




Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 371 -

## K29. Helping Children with Disabilities

### Cover Up – Fake Public Relations

830.   On July 17, 2019, *months after* Defendants unlawfully received Plaintiff

Complaint, they cover up the fact that Defendants ordered the assassination of iHug's

wheelchair on-demand app and transportation operation. Whereas, iHug, embodies the very

notion to hold others up, give people healthcare tools so they can control their healthcare,

empower people with disabilities, and encourage love throughout the world.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 372 -

### K30. Lyft Stands For Immigration Cover Up – Fake Public Relations

831.   On July 18, 2019, *months after* Defendants unlawfully received Plaintiff

Complaint, they cover up the fact that they ordered the deportation of Plaintiff's Wife by

slandering Plaintiff and his Wife as being con-artists and frauds, a False and Defamatory

Accusation based on all evidence presented herein and throughout all proceeding paragraphs of

this Complaint.



Lyft ✔ @lyft · Jul 18

"This is a country made of immigrants, people who have arrived at this nation for better or worse. For opportunity, for a future for their families. At the end of the day, that's what we sought out for here and that's what we're going to find." - Abdi, Lyft Driver, Minneapolis

5K views    1:12 / 2:11

💬 31    ↻ 30    ♡ 110    ⬆

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 373 -

### K31. Part of The Insurance Scheme Cover Up – Still Active

832.    On July 26, 2019, *weeks after* Defendants claim their referral program is discontinued, a program that pays drivers cash to recruit other drivers from competition or by any means possible, **still exists**. A complete waste of investor and operational cash, as well as encouraging unlawful activities for those drivers who cross an ethical line, doing anything to earn $500, $700, and even $1,000 bonuses. This is the very reason Uber and Lyft's platform has risen to nearly 4,000,000 million drivers, and heavy billion dollar losses.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 374 -

## K32. Plaintiff Receives Fake Apple Calls Days After His Complaint

## Was Processed with the Superior Court of California, Sacramento County

833.    On July 27, 2019, *1 day after* Plaintiff's Complaint was filed with the Sacramento

Superior Court, Sacramento County, and *2 days after* Defendants Board Members run,

Plaintiff receives non-stop calls from a San Mateo, California number, in particular, a voice

recording system claiming to be Apple, stating Plaintiff's iCloud account has been breached.

834.    Pictured below, Plaintiff call history.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 375 -

## L. Lyft Insurance Fraud Leaves Tax Payers Footing the Bill

835.    News investigations on Lyft and an interview with John substantiates, and gives merit

to this Complaint, in particular, Plaintiff argues not only was iHug irreparably damaged by

Defendants willful actions, he theorizes Defendants use software algorithms to "book millions of fake

rides," pre-IPO, allowing the inflation of share prices, hence why they plummeted post-IPO.

836.    In an investigative report by NBC4 I-TEAM, a Lyft account belonging to Robert

Williams, ("Robert,") was "hacked."

837.    Multiple rides were booked for months without his knowledge. The rides were

canceled by the Drivers each time, and then billed to Inland Empire Health Plan, ("IEHP") in

California, funded by California Department of Healthcare Services.

838.    Plaintiff maintains Defendants use "ride request algorithms" from its Headquarters,

prompting millions of fake ride requests across the United States, in order to manipulate revenues,

ride requests and growth, prior to an IPO.

839.    This inflated their valuation, defrauding investors, and exposed a "fabricated 39%

market share" Robert, and other rider accounts were deleted by Lyft, as described in an interview

with CBS This Morning, where John, called for a "self-imposed audit."



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 376 -

840.    In an interview with CBS This Morning, Gayle King, ("Gayle") an interviewer, states, "something that struck me interesting, you all just ordered an internal audit last year, a self-imposed internal audit. What were you looking for, why'd you do that?"

841.    In the interview, John makes a scripted statement, claiming the self-imposed audit was involving "equal pay," making little to no sense for a self-imposed audit.

842.    Plaintiff argues this annual self-audit is calculated, allowing Defendants to adjust, delete, hide and remove "fake ride requests" and "market share margin of error" that was created by the fake ride bookings, and software algorithms that billed IEHP and other insurance plans, funded by the California Department of Healthcare Services, as described in Roberts testimony with NBC4 I-TEAM, see *Waymo—vs—Uber Case#3:17-cv-00939-WHA,* in particular, concealment and Destruction of Records.

843.    Plaintiff agrees with Roberts' sentiment, these fraudulent activities are potentially happening on a larger scale across the United States.



CBS THIS MORNING    GETTING A LYFT
RIDESHARE PRESIDENT ON UBER, DRIVERLESS TECH & COMPANY'S SUCCESS

Lyft president on self-driving cars, what sets them apart from Uber          Up next          AUTOPLAY

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 377 -

# Lyft Insurance Fraud Leaves Tax Payers Footing the Bill

"My biggest concern is that this is happening to other people, and IEHP is getting defrauded on a large scale"
- Randy Mac



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 378 -

844.    A Lyft driver states IEHP rides were being booked, whereas all of a sudden, they

stopped for unknown reasons.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 379 -

## M. INFLUENCING GOVERNMENT TO COMMIT UNFAIR COMPETITION

845.   Plaintiff alleges Defendants engage in espionage and corporate sabotage, using Jason King, "Jason," a Regulatory Program Specialist at the Portland Bureau of Transportation, and others to interrogate iHug and cause undue financial harm, suppressing competition.

846.   Jason stated "someone made him aware of iHug," threatening to fine iHug for violations of Portland, Oregon (PCC) Chapter 16.40, Sections 16.40.930 to 16.40.950 if iHug intended or operates in Portland, Oregon, see case *Waymo—vs—Uber—Case#3:17-cv-00939-WHA, in particular the following:*

> • Jacobs believes that violations of the Foreign Corrupt Practices Act (FCPA) took place and would likely be shown through discoverable evidence. Jacobs was aware that Uber was targeting government officials in order to learn:
>
> • who might be compelled to end costly enforcement activities or partner with Uber to unblock the market;
>
> • what local network of contacts has connections to police and regulatory authorities;
>
> • **what political leaders may be persuaded to stop any opposition**; and
>
> • if senior political officials would be willing to push a ride-sharing agenda through the city or national government.

847.   Lyft's Todd Kelsay, "Todd," and Uber's Caleb Weaver, "Caleb," sit on the Portland Bureau of Transportation Private For-Hire Transportation Advisory Committee.

848.   Jason, a <u>United States Public Servant, fraudulently impersonated a wheelchair bound patient</u>, violating iHug's terms of use, by booking a fake ride, using iHug's software, in order to suppress competition. Plaintiff refunded the charge, and kicked Jason out of the software for Drivers.

849.   Where Jason, under the guidance of Todd and Caleb's advice, used Government resource to interfere with competition.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 380 -

1

850.   Plaintiff argues if Uber and Lyft use their brand power and investor cash to exercise

2

power to control individuals and/or entities, the actions of Uber and Lyft described herein support all

3

claims made in all proceeding paragraphs of this Complaint.

4

851.   Plaintiff sent a rebuttal, evoking Jason to respond. Pictured below, the Roster for the

5

2019 Advisory Committee.

6

7

8

9

10



**PBOT**

PORTLAND BUREAU OF TRANSPORTATION
1120 SW Fifth Avenue, Suite 800  Portland, OR 97204   503.823.5185
Fax 503.823.7576   TTY 503.823.6868 · www.portlandoregon.gov/transportation
Dan Saltzman Commissioner   Leah Treat Director

**Roster: Private For-Hire Transportation Advisory Committee**

11

| POSITION | APPOINTMENT | AFFILIATION | TELEPHONE | EMAIL |
|---|---|---|---|---|
| PBOT (non-voting member) | Mark Williams | PFHT Program Manager | 503- | @portlandoregon.gov |
| Riding Public | Mike Greenfield, Chair | Retired State of Oregon Executive | 503- | @me.com |
| Tourism Industry | Mario Maroon | Travel Portland | | @travelportland.com |
| Transportation Network Company (TNC) | Todd Kelsay | Lyft | | @lyft.com |

12

13

14

15

852.   Pictured below, Jason's email attempting to cause undue financial damage to iHug, a

16

similar pattern to Joe, Louis, and Does, the common denominator is Uber and Lyft.

17

18

19

20

21

22

23

24

25

26

27

28

To Whom It May Concern,

It has been brought to our attention that your company may be conducting business or
planning to conduct business as a Private for-Hire Transportation company within the
City of Portland.

Picking up passengers within the city limits of Portland makes you subject to Portland
City Code (PCC) Chapter 16.40 Private For-Hire Transportation Regulations.

This violates the following regulation within Portland City Code (PCC): Chapter 16.40

A.   Company Permit Requirements. No person or entity shall conduct business as a
Company in the City of Portland without a valid, current permit issued by the City under
Chapter 16.40. Failure to comply with this Subsection A. is a Class A violation subject to
penalties provided in Sections 16.40.930 to 16.40.950.

Please note that the civil penalty for violations of this nature begin at $1,250.

Contact our office at 503          or visit our website at:
com immediately to learn how you may obtain valid City of Portland permits.

Regards,

**Jason**        Regulatory Program Specialist

Portland Bureau of Transportation

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 381 -

853.   Pictured below, iHug responds to Jason's email.

Jason,

We appreciate your email and thank you for reaching out to our organization. We wholeheartedly support the City of Portland Oregon. We are a company of the People, by the People, and for the People.

In that same sentiment, we are legally obligated to informally request the identity of the disclosing party that filed the complaint with the City of Portland Oregon against iHug. Similarly, we are requesting the full name, and/or organization who's affiliated/non-affiliated to you and/or your organization who made you aware of iHug. We ask that you provide any and all details that may be relevant, and/or the official complaint itself.

Finally, we respectfully refute any and all alleged violations. The tone and threat of penalty without exhibited evidence argued in your email is very concerning to our organization, especially if this same tone is taken with small businesses within your state.

In the event the City of Portland Oregon finds that iHug has violated any such Portland City Codes (PCC), and/or any proceeding sub-sections within the provision of the PPC as argued in your email, we kindly ask that you provide us with the vehicle identification numbers, license plate numbers, year, make, model, and names of drivers found to be in violation, if any.

- Picking up passengers within the city limits of Portland makes you subject to Portland City Code (PCC) Chapter 16.40 Private For-Hire Transportation Regulations.

- This violates the following regulation within Portland City Code (PCC): Chapter 16.40 - Portland City Code (PCC) Chapter 16.40 Private For-Hire Transportation Regulations A. Company Permit Requirements.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 382 -

854.   Pictured below, iHug's email to Jason continued.

> We will await your response identifying the individual(s) and/or parties who brought iHug to your attention, and/or filed a complaint. We accept PDF formatted files.
>
> Kind regards,,
>
> In-House Legal Department
> iHug
> ███████.com
>
> INTERNET EMAIL CONFIDENTIALITY: Privileged/Confidential information may be contained in this message. The information in this email is intended for the named recipient(s) only. If you are not the addressee indicated in this message or responsible for delivery of the message to such person, you may not disclose, copy or deliver this message to anyone.
>
> If you have received this email in error, kindly notify the sender immediately by replying to this email and destroy this message immediately afterward. Opinions, conclusions and other information in this message that do not relate to the official business of iHug shall be understood as neither given nor endorsed by iHug.

855.   Pictured below, Jason forwarded iHug's response to Defendants, where it was opened 30 times, a similar pattern to Joe. Jason failed to answer iHug's request on "who" informed Jason.

856.   Plaintiff argues, if Jason had a genuine concern, Jason's duty to serve the public fell short. It's believed Jason was informed by Defendants in order to fine, harass, suppress and cause financial harm on Plaintiff, and iHug, a similar pattern to Joe, the roommate, Louis and Does.

857.   Plaintiff argues Uber and Lyft executives who sit on the Portland Bureau of Transportation influenced Government Officials in order to continue their monopoly of the TNC industry, including accepting statistical reporting to cover up any wrongdoing to the SEC.

| | | |
|---|---|---|
| King, Jason <Jason████████n.gov> | Thu, May 30, 7:46 AM (8 days ago) | ☆ ↩ ⋮ |
| to me ▾ | | |

Thank you for your response. Please forward any and all legal inquiries to our City Attorney. https://www.portlandoregon.gov/attorney/

| Email. | Opens |
|---|---|
| ma███████oregon.gov | 3 |
| jas███████.gov. | 30 |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 383 -

## N. SHEDDING SOME LIGHT FOR INVESTORS

858.    On October 12, 2016, John, in an interview with Jim Cramer of Mad Money, and more recently an interview with CBS This Morning, Gayle King, John affirms, "Every year in the United States, $2,000,000,000,000 trillion-dollars is spent on car ownership," an accurate claim, based on 244,000,000 million vehicles in The United States in 2015, multiplied by "$9,000 dollars in annual costs," according to John, totaling $2,100,000,000,000 trillion-dollars.

859.    After Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity was Misappropriated, **the number changed**.

860.    On March 29, 2019, Lyft Co-Founders, John and Logan during IPO, claimed they are targeting a "**new** $1,200,000,000,000 trillion-dollar opportunity," contradictory to their statistic in 2016 and more recently in 2019.

861.    This has caused a chain of events, including numerous class-action lawsuits from Lyft investors, who claim Lyft omitted facts and falsified statements within the SEC S1 filing, including market share statistics, claiming Lyft owned 39% market share, contradictory of Uber's SEC S1 filing, substantiating the fraudulent activity of booking fake rides manipulated its market share.

862.    In order to obfuscate the true "$1,200,000,000,000 trillion-dollar opportunity," on December 28, 2018, *less than 90 days* prior to Defendants' IPO, The Bureau of Transportation Statistics ("BTS") suddenly releases a $1,200,000,000,000 trillion-dollar "Household Transportation Expenditure" report, the same source from Lyft's S1 filing.

863.    In an act to conceal the truth that Defendants had already executed on Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, Plaintiff asserts Defendants provided false data to the United States Government.

864.    This was a calculated effort to cover up, in the event Plaintiff files a Complaint to claim his $1,200,000,000,000 trillion-dollar healthcare opportunity and damages.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 384 -

865.    The BTS report included the exact same figure as Plaintiff's misappropriated

$1,200,000,000,000 trillion-dollar healthcare opportunity, in order to disguise their wrongdoing.

866.    Pictured below, a screenshot of the $1,200,000,000,000 trillion-dollar "Household

Transportation Expenditures" statistic located on the BTS website, in the exact Lyft brand color as

shown below on the right, Lyft's official logo.

**BTS Statics on the BTW website**                    **Lyft Logo**

                    

867.    Pictured below from the BTS website, the report was updated only ***3 months prior***

to Defendant's IPO. Even more outrageous, in an act to cover up, Defendants begin to remove

Defendants' employees from any involvement at the Portland Bureau of Transportation.

**Bureau of Transportation Statistics**                    Sea

Topics and Geography          Statistical Products and Data          National Transportation Library

Transportation Economic Trends

Previous Publications

[1] The latest version of PCE includes data revisions going back to 2000. Dollar amounts in TET 2018 will therefore differ from dollar amounts in TET 2017.

[2] The percentages in this chapter are calculated using unrounded data and may therefore differ from percentages calculated using the rounded figures presented in this chapter.

[3] For more information on travel behavior and demographics, please see U.S. Department of Transportation Federal Highway Administration, *Summary of Travel Trends: 2017 National Household Travel Survey,* available at
https://nhts.ornl.gov/assets/2017_nhts_summary_travel_trends.pdf.

[4] Operating costs in TET 2018 are not comparable to operating costs in earlier editions because AAA revised its methodology in 2017.

Updated: Friday, December 28, 2018

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 385 -

868. Wherein a case *McCloskey–vs– Lyft, Inc. et al, case number CGC-19-575475*, on page 17, line 27, number 66, claims, "The Registration Statement contained pages and pages of numerous generalized possible "Risk Factors" that might occur and "[i]n case" they did actually occur, then Lyft's financial condition and results of operation "could be materially and adversely affected." Those statements were false or misleading and omitted material information, a clear violation of SEC rules and regulations, a conviction for securities fraud can involve significant penalties for anyone involved.

869. Securities fraud can be punished with civil penalties, such as fines or license restrictions. Plaintiff alleges, Lyft is fully aware of iHug, having colluded with Uber to execute on Plaintiff's misappropriated $1,200,000,000,000 trillion-dollar healthcare opportunity synonymously, including profiting from Plaintiff's API and features, doubling its revenue in *less than 9 months*.

## O. DEFENDANTS' ACTIONS ENDANGER LIFE WHILE MAKING

## INCONSISTENT AND FALSE CLAIMS IN HEALTHCARE

870. Defendants continue to be sued for wheelchair accessibility discrimination.

871. Whilst Defendants spent years, and millions of dollars eradicating iHug with malice, attacking Plaintiff, attempting to deport his Wife, while depriving patients of iHug's on-demand wheelchair transportation.

872. Lyft spokeswoman, Lauren Alexander, said the company, "is committed to ensuring that those who need rides most are able to get them.

873. We think about accessibility broadly and know that many who were previously underserved by transit and taxis are now able to rely on Lyft."

874. Pictured on the next page atop and below, Lyft and Uber facing class-action lawsuits for disability discrimination, whereas it disgracefully claims it's, "not in the transportation business," to avoid regulation.

Adam John Mackintosh––vs––Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 386 -

# ≡ The Daily Dot

# Lyft says it's 'not in the transportation business' avoid complying with disability law

Samira Sadeque—2019-05-04 02:36 pm | Last updated 2019-05-04 02:44 pm



///

CRIME & COURTS                                        MONDAY, APRIL 1, 2019

## Lyft, Uber face class-action lawsuits for disability discrimination



---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 387 -

875.   Pictured below, one of Defendants Drivers takes off, discriminating against a

Wheelchair-Bound rider. **Whereas iHug's Rideshare for Healthcare would have assisted him.**



7 ON YOUR SIDE

# Uber driver sees passenger in wheelchair, takes off

RIDESHARE DENIAL
CONCORD

EMBED    MORE VIDEOS ▶

On-demand ridesharing is becoming the new normal way to get around — but not for everyone. Passengers with disabilities say they are left in the dust by Uber and Lyft. A world-class wheelchair bodybuilder tells his crushing story.

 By Michael Finney and Renee Koury

Wednesday, May 1, 2019

CONCORD, Calif. (KGO) -- On-demand ridesharing has become the new normal way to get around — but not for everyone. Disability advocates say Uber and Lyft have left millions of passengers in the dust -- without equal access to rides.

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 388 -

1    876.    Pictured below, a Lyft driver, admits he received a VIP health care ride in 2018, a

2  similar service to iHug's VIP ride service in 2017.



afrojoe5000  18 points  ·  11 months ago

I cancelled on an old woman earlier this week. The username was
Aaron but when I showed up it was an old woman in a wheelchair
that I had a month before. She needs help out of the chair and
then into the car. I put all her groceries and wheelchair in the
trunk and then drove her 1.5 miles back to her house and
repeated all these steps. The whole trip was at least 20 minutes
and I was not tipped. I rated her 3 stars because I never wanted
to do that again. Clearly all the other local drivers did the same
so someone made a new account for her. We aren't medical
professionals, Lyft!

Share   Report   Save

rideshare_dude  9 points  ·  11 months ago

I canceled one of these VIP health care riders today, then
got two more ping from the same address, all within 5
minutes. Absolute joke.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 389 -

877.   Pictured below, the same Lyft driver, admits Lyft is using iHug's healthcare API to book rides with healthcare facilities.

878.   Plaintiff further argues, Lyft and Uber have misappropriated Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars and suppressed iHug's Rideshare for Healthcare, a platform that put medically certified drivers on the road who were fit, trained, and suited for healthcare, whereas Lyft and Uber drivers endanger life in healthcare, every day, increasing mortality rates as they are untrained in the medical field.

---

Wyndelin77  6 points  ·  11 months ago

transported a man who couldn't stand, had to put his (filthy) wheelchair in the trunk, he groaned & screamed over every bump (except when he forgot to). Gave him 2 stars. Have put hand sanitizer & gloves in my car in case that happens again. I'm no longer a nurses aide & shouldn't have to do that!

Share   Report   Save

OneStarMe  1 point  ·  11 months ago

how the hell did she not tip you. its bs. if she called the regular service i bet it would of costed her 150 200 bucks move a chair groceries. next time do me a favor 1 star the bitch. one day hopefully i grow to be old and i will at least tip 5 bucks. i say hopefully reason why my health sucks.

Share   Report   Save

⬆ rideshare_dude 🖉 3 points  ·  11 months ago
⬇ Because these people are not ordering the ride through the Lyft app. The medical providers are ordering the ride through an app built using the Lyft API The rider doesn't have the ability to tip outside of cash, and they're usually too hopped up on drugs to realize what's going on.

---

Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 390 -

879.    Pictured below, the same Lyft driver, admits most local ordinances "REQUIRE" the drivers to have a current CPR certifications.

880.    Whereas iHug's Rideshare for Healthcare required its Drivers to train for Basic Life Support and CPR certifications, providing a safe transportation option in healthcare.

881.    Whereas Plaintiff argues Defendants are operating unlawfully in healthcare, improperly executing on Plaintiff's healthcare opportunity.

---

**rideshare_dude** 🗝  2 points  ·  11 months ago  ·  *edited 11 months ago*
No, you may not stop me right there. NEMT = non emergency medical transport.

Non emergency medical patients include any transportation of a non emergency medical patient, to and from hospitals, hospices, surgery centers, dental offices, doctor's offices, clinics, rehab centers, dialysis centers... basically anywhere medical care is provided. These passengers can also be picked up and dropped off from the airport. These rides can be set up by the medical facility or provider, or even insurance company.

And, as I said, most local ordinances REQUIRE the driver to have a current CPR certification.

The problem is that these medical providers and "NEMT companies" are using Lyft to cut costs by foregoing the requirements of getting business licenses, wheelchair accessible vehicles, million dollar insurance policies, workers compensation, and paying for CPR certifications and other training for their drivers.

There's a reason NEMT providers are regulated. Because elderly, sick, and disabled passengers outside the care of trained professionals is a severe risk.

**Share   Report   Save**

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 391 -

882.     Pictured below, an Uber and Lyft driver cancels on healthcare patients, endangering

life and recovery of healthcare patients.

Serrano12  1 point  ·  11 months ago
I don't do hospital pickups anymore. Two times now I've had hospital staff
use their accounts to order rides for wheelchair-ridden elderly folks. Both
times, the pax were not at the indicated pickup spot. I called and the staff
were like oh, they must be at the west, or east entrance then. The pax were
nice folks but getting them and their med bags and wheelchairs in the car,
then out again was too much of a hassle for min fare.

**Share   Report   Save**

Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 392 -

## P. DEFENDANTS ERRADICATED IHUG'S SERVICE WHILE ENDANGERING LIFE

883. A healthcare provider who drove for Defendants, made the switch from Defendants platform to drive for iHug. She provided long-distant rides, that gave a level of care and service, Defendants do not provide.

884. The Driver helped transport a healthcare patient who has dementia. She covered the patient with a blanket to ensure she felt safe. She fed her, stopped frequently, and helped the patient to the restroom. She also used lift and pivot maneuvers while transporting the patient safely handling the patient.

885. While the patient was being driven home from an assisted living facility, the memory care patient was reminded of fond childhood memories on the journey, making it magical for her.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 393 -

886. iHug's Official Rideshare for Healthcare was a service Plaintiff selflessly sacrificed to build while homeless, sleeping in his trailer, and on floors. A service Plaintiff brought to life to help others. A service Defendants eradicated through unfair competition practices, malice and greed.

887. Pictured below, Plaintiff's trailer, and his PC he coded iHug on during cold winters and hot summers 18 hours a day. iHug was for the people who are vulnerable and ill in healthcare.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 394 -

888.    The egregious and deceptive practices, false and misleading statements in healthcare, including unfair taxi competitive tactics committed by Defendants, "cash and bonuses to drivers not to drive for its competition," recklessly and disgracefully endangers the lives of terminally-ill patients, **medically increasing patient mortality rates,** when their appointments are missed.

889.    Every Driver who's incentivized not to drive for a competitor, violates The United States Department of Health and Human Services Civil Rights laws and regulations, and CMS Accessibility & Nondiscrimination for Individuals with Disabilities, and Civil Rights for Individuals and Advocates.

890.    The Drivers who intentionally canceled on dialysis, cancer, and other healthcare patients, who colluded with Joe, Louis, and Does increased patient mortality rates, and may have caused a fatality, if Plaintiff didn't save the patients by driving the patients himself.

891.    Plaintiff profusely refutes Defendants reckless and unfair taxi competitive tactics, as iHug was in Healthcare, not the Taxi industry. iHug was a safe and mature rideshare option that patients loved and felt safe using.

892.    Pictured below on the left, Plaintiff drove Vivian to her DaVita dialysis appointment, who was intentionally canceled on by Defendants and its Drivers who were tortiously interfering with iHug's operation, pictured on the right, a Facebook post outlining dangers of missed appointments.



 **Judith Montgomery**
Wish I knew about this sooner. Had a friend and neighbor died night before last.
3 hours ago · Like · Reply · Message

 **iHug**
Judith - Oh gosh, we are so sorry to hear that. We send our deepest condolences through this hard time.

We are providing this service to prevent this problem. Over 3 million people in America missed doctor's appointments last year due to having no transportation option.

We are healthcare for everyone, anywhere 

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 395 -

893.    Plaintiff vehemently argues Defendants are too reckless to compete in healthcare based on their inherent culture, as they actively engage in unfair, aggressive methods and deceptive business practices that consequently endanger lives in healthcare throughout the United States of America.

894.    Direct and conclusive evidence establishes one of many drivers who canceled on a dialysis patient for iHug while in the act of tortious interference with Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, is party to Defendants and the Drivers, including Louis, John's right-hand man, Joe and Does.

895.    Even more disgraceful and vile, after Defendants successfully incentivized the Drivers not to drive for iHug, and slandered Plaintiff to the Drivers so they did not drive for Plaintiff, cancelling on healthcare patients, while endangering life, **the Drivers were instructed to commit grand theft auto** to stop Plaintiff from driving the dialysis, and other terminally-ill patients to their required medical appointments when the Drivers were cancelling and/or unavailable to drive the patient.

896.    This aggressive method increased mortality rates in healthcare, endangered life, and legally exposed iHug, and Plaintiff to a lawsuit if the dialysis patient passed away due to a missed appointment as a result of Defendants incentive program to stop Drivers from Driving for its competitors and theft of Plaintiff's vehicle.

897.    For dialysis patients, if a dialysis treatment is missed, the blood toxin levels could reach a point where they make the patient very unwell and could potentially be fatal.

898.    **Plaintiff argues the Defendants willful actions have increased mortality rates, and if allowed to continue to operate in healthcare, the inherent competitive practices will inevitably cause fatalities if they haven't already.**

899.    Plaintiff asserts he has testimonial evidence from a Former Chief Executive Officer of

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 396 -

Of the largest non-profit hospital in Northern California, inferring **Defendants are operating in Healthcare without proper insurance licensing.**

900.   As a result of Defendants actions, Defendants are in violation of the Federal Trade Commission Act ("FTCA") Anticompetitive Practices, in particular, Defendants are attempting to achieve a monopoly position by "aggressive methods," where Defendants endangered healthcare patients' lives, violating the Consumer Protection Act ("CPA").

901.   Pictured below, a Lyft driver admitting to cancelling on medical patients, endangering life. The patient that was cancelled on could have had a terminal illness, increasing their mortality rate.

902.   Plaintiff vehemently argues on behalf of this patient below who was canceled on, Vivian and others, Defendants are too reckless and dangerous to operate in healthcare.

903.   iHug was tailored and fit for healthcare, who had CPR and Basic Life Support Certified healthcare professionals, who could act in case of an emergency while transporting patients.

904.   Pictured on the next page atop, another Lyft and Uber Driver admits Defendants are endangering life, violating multiple health codes, and jeopardizing innocent Drivers who have no control over the service they provide.

> ⬆
> **33**
> ⬇
> Posted by u/rideshare_dude 11 months ago
>
> **Lyft "partnership" with Medical Providers makes you a non emergency transportation provider. And you are most likely breaking the law if you transport one of these patients.**
>
> Most local ordinances require NEMT personnel to have a valid CPR certification from the American Red Cross to transport medical patients.
>
> Good job Lyft, make criminals out of your drivers.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 397 -

1    905.    Pictured below, another Lyft and Uber Driver admitting they are not medical

2  professionals.

> afrojoe5000  19 points  ·  11 months ago
>
> I cancelled on an old woman earlier this week. The username was Aaron but
> when I showed up it was an old woman in a wheelchair that I had a month
> before. She needs help out of the chair and then into the car. I put all her
> groceries and wheelchair in the trunk and then drove her 1.5 miles back to her
> house and repeated all these steps. The whole trip was at least 20 minutes and
> I was not tipped. I rated her 3 stars because I never wanted to do that again.
> Clearly all the other local drivers did the same so someone made a new
> account for her. We aren't medical professionals, Lyft.
>
> **Share  Report  Save**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 398 -

906.   Pictured below, while Defendants are in the heat of unfair taxi competitive tactics, and unlawful anti-competition practices, a Lyft driver receives a call from Uber, asking her to cancel on a healthcare patient to receive a $30 gift card. The driver then cancels on the healthcare patient and receives a $5-dollar ride cancel fee. The patient is left abandoned and helpless. **This is un-American.**

 **Patricia Rodriguez**
 Conversation Starter · October 23, 2017 · Sacramento

I got a ping near ucd hospital. Pull over to location and call pax. No answer. The I get a call from pax. Wrong. It was someone claiming to be Uber and to cancel my ride and I will get a $30 gc. Nope. I hang up. They called me back 6 times. Wait out my 5min. Cancel & collect my fee. Then notify Uber via email & phone call. Not that anything will come of it. I did t give any info b/c I hung up on the caller when they said just follow my instructions. **Remember: Uber doesn't call the drivers and don't give out sensitive information**

I'm goin to change my info anyway just in case

 13

👍 Like                          💬 Comment

907.   Pictured below, a Lyft driver requested a healthcare ride, and was canceled on.

 **Kristy Lee** ▸ **IN THE ZONE [LYFT UBER]**
March 10, 2018 at 2:27 AM · Roseville · 🌐

Okay seriously pissed. Called a uber for a ride home from Sutter Hospital he ends up being one of our team and he cancelled on me. Not cool at all. Now I have no ride home.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 399 -

908.   Pictured below, its alleged the Lyft/AMR/Sutter "**exclusive**" partnership are

defrauding the United States Government by using billing codes for expensive NEMT transportation,

while then booking a $5 Uber or Lyft ride, in particular, Sutter, as per *California State General*

*Attorney–vs–Sutter Health* for overinflating costs. As confirmed by an AMR executive who admitted

to iHug, AMR bills between $1,200 to $12,000 for an ambulance transport, instead of a $75 local

transportation due to **Sutter's exclusive partnership with AMR**, excluding competition, limiting

transportation availability. Forcing innocent healthcare patients to suffer while they wait.



**Avan Curran The fucked up part is that the folks calling you are
the actual "medical transportation". They collect fat insurance
payouts to give those rides, but instead of hiring employees
they're just calling an Uber or Lyft for the client.**

Like · Reply · 27w

909.   John, Co-Founder of Lyft, willfully admitted and outlined "Uber tactics" that were

"destroying" his business "Lyft".

910.   Whereas, in this Complaint, the same tactics were used on iHug by Defendants,

causing irreparable damages, and endangered innocent lives in healthcare.

911.   John informally testifies to Bloomberg:

- "Uber" used $3 billion-dollars to "destroy" his business, stating "it

was scary…you know, [having] someone attacking the business."

- John alleges Uber was, "incentivizing drivers not to drive on [their]

platform."

- John further states, Lyft, "intends to win…we are very competitive."

912.   Whereas in this Complaint, Defendants used the same unlawful tactics on iHug, taking

it to a level, which consequently endangers lives in healthcare, increases mortality

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 400 -

rates, and decreasing life expectancy of innocent victims, as they "intend to win."

913. Defendants used their capital raises to commit vile offenses against iHug and Plaintiff, substantiating all allegations herein.

914. Plaintiff vehemently argues, Defendants' culture and inherent competition practices are extremely unfit for healthcare and will inevitably lead to death and pain and suffering.

915. Video evidence: https://www.dropbox.com/s/ytqwls2vofnzw14/admittance.mp4?dl=0



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 401 -

## Q. AMERICA AND THE WORLD NEEDED IHUG,

### THE SAFEST AND FIRST EVER RIDESHARE FOR HEALTHCARE

916.    iHug, was the first to create the Official Rideshare for Healthcare, setting the bar higher than any rideshare option available in the world. Giving the Defendants textbook motive to unlawfully stop iHug at all costs.

917.    Recruiting providers who had medical backgrounds, who are CPR and Basic Life Support Certified, who were in the process of training for Lift Movement and Memory Impairment to handle seniors with weak bodies and patients who had memory loss, a matured rideshare option, giving Defendants motive to stop iHug from competing.

918.    Pictured below, Deborah on the right in healthcare scrubs, a Registered Nurse, and driver for iHug, assisted in transporting iHug's patient, Beatrice on the right, an 86-year-old, wheelchair-bound patient. Beatrice states iHug's driver stayed with her the whole time.

919.    Whereas the Lyft and Uber Drivers get a $5 cancellation fee, and never "stay" with a patient, endangering life when the patient has no means of transportation to their medical appointment. Video testimony by one of iHug's patient, located: https://youtu.be/ylQn1K_Yqwl



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.

920.    Pictured below, Bobby, a 90-year-old patient of iHug. Louis who infiltrated iHug, who reports to John, took a ride with iHug for the "experience," to report intel back to Defendants Headquarters in San Francisco.

921.    After the experience. Louis knew iHug was vital for healthcare patients, whereas Louis executed on his instruction to wrongfully imprison Plaintiff in order to stop iHug, depriving safe rides for Bobby, Beatrice and others to their medical appointments.



**Thank you Louis for all your help**

922.    Video testimony by one of iHug's patient:

https://www.facebook.com/watch/?v=1337757959684435

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 403 -

## R. THE MAJOR DIFFERNTIATOR AND MOTIVE

## TO ERADICATE IHUG FROM HEALTHARE

923.    Lyft drivers are untrained for healthcare.



924.    Whilst a majority of Plaintiff's drivers were Registered Nurses, Medical Assistants, Home Health Aids, Holistic Nurses, and other medical professionals who are employed by Kaiser Permanente, Dignity Health and other healthcare providers, who are CPR, Basic Life Support Certified, AED Certified, who have a healthcare background, who were in the process of being trained by Plaintiff's partner on Lift Movement and Memory Impairment handling for seniors who have frail bodies and seniors who have little motor function who need the extra care and love.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 404 -

925. Pictured below, Tom, iHug's partner, talking to iHug's Drivers on new facilities they were rolling out. Plaintiff had begun something truly special, not only did Plaintiff create a differentiator from competition with blue scrubs, he also had each Independent Certified Provider complete Basic Life Support Certification, CPR Certification and sold them starter kits in case of an accident in the car to include a CPR mouthpiece.

926. This was putting more lifesaving drivers on the road, **a genuine representation of iHug's efforts to build the world's first, Rideshare for Healthcare.**



927. Pictured below, iHug's drivers who switched from Uber and Lyft, who are healthcare aids, certified nursing assistants. Both who are CPR and Basic Life Support Certified.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 405 -

928.    Pictured below, iHug's drivers who are, Basic Life Support Certified.



929.    Pictured below, Plaintiff recruiting healthcare graduates to offer them an opportunity
to help transport seniors to and from their medical appointment, grocery shop and in-home care.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 406 -

## S. IHUG'S CONSISTENT AND GENUINE EFFORTS IN HEALTHCARE

930.    Even after the assassination attempts on Plaintiff's character and attacks on iHug by Defendants and its drivers, Plaintiff continued, establishing a new business model, never giving up, accomplished a major milestone. A UC Davis student, once a track and field star, sustained a spinal injury one summer.

931.    The student wanted to book an on-demand ride like everyone else who uses Uber and Lyft. However, he's wheelchair bound, a service not offered in Sacramento, CA by Defendants.

932.    The UC Davis resident found iHug on the Apple App Store. He signed up and in minutes booked his very first on-demand wheelchair ride in Sacramento with iHug.

933.    The rider was celebrating his birthday in Downtown Sacramento, at a local pub. The rider finally felt transportation freedom made possible by iHug.

  



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 407 -

934.    He was able to book an on-demand wheelchair ride. Whereas Defendants do not offer

the service in Sacramento, California. iHug outcompeted Defendants with bravado for the people.




935.    Pictured below, while Plaintiff was being attacked by the Drivers, he launches a new

platform, an on-demand wheelchair transportation and healthcare app on the Apple Store.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 408 -

936.     Whereas Defendants continue to claim, it's not a transportation company, excluding Uber and Lyft from healthcare and disability laws and regulations, in order to obfuscate, in mere attempts to evade responsibility, in a long history of such evasion.

937.     Whereas Plaintiff's Company alleviates the stresses, pain and suffering, and isolation for wheelchair bound patients, putting more medically certified and lifesaving drivers on the road with his business model, whilst Defendants continue its incendiary attacks on iHug, in desperation to stop iHug, while simultaneously developing new features and entering into new markets using Plaintiff's misappropriated $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars.

938.     Pictured below, Uber and Lyft's businesses are leaving an aftermath of damages in healthcare.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 409 -

## T. A WINDOW INTO THE WORKINGS OF ANTI-TRUST VIOLATIONS

939.   **Monopolization in Healthcare** – one or more persons or companies totally dominates an economic market. Plaintiff has direct testimonial evidence, Lyft and Sutter plan to cut out AMR once "Lyft is able" in an act of monopolization, where Lyft has infiltrated AMR, iHug and other competitors.

940.   **Unfair Competition** – an attempt to gain unfair competitive advantage through false, fraudulent, or unethical conduct. Where Plaintiff has various evidence types, proving the Drivers and Defendants misappropriated Plaintiff's corporate secrets unjustly enriching itself.

941.   **Price Fixing** – an agreement among competitors to raise, fix, or otherwise maintain the price at which their goods or services are sold. Plaintiff argues Defendants are synonymous, sending each other a 274-page memo on ride prices. Defendants suppressed iHug which paid drivers 200 times more than other competitors.



DAC meeting with Lyft Co-founder / President John Zimmer

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 410 -

## U. THE AFTERMATH OF DEFENDANTS ACTIONS CAUSING SUICIDAL THOUGHTS

942. The aftermath of Defendants, Joe, Louis and Does actions left the Plaintiff under scrutiny from his investors, as they were manipulated by the Drivers, under Defendants direction, claiming Plaintiff took their investment, shut down iHug intentionally, and disappeared with their investment. These statements were made with falsity, whereas Defendants sabotaged iHug.

943. Joe, Louis, and Does made these False and Defamatory Accusations and its Gist against Plaintiff, which are defamatory per se, as they are libelous on their face without resort to additional facts, and as clearly demonstrated herein.

944. As a result of Defendants communicating the False and Defamatory Accusations and Gist that Plaintiff is a fraud, tainted investors by the slanderous accusations causing irreparable damages.

945. As a direct and proximate result of the False and Defamatory Accusations and its Gist, Plaintiff suffers and will continue to suffer damages.

946. Even more dangerous, and malicious, Plaintiff's Wife, continues to have mental break downs and thoughts to give up her life as a result of the sustained attacks over the years.

947. Plaintiff's Wife is now a target, as she's lived through each and every attack by Defendants, Joe, Louis, the Drivers and Does, making her a **key witness**. It has caused her complete emotional distress, mental anguish, panic attacks, anxiety, uncontrollable crying and consistent breakdowns, causing irreparable bodily harm. She has lost a sense of her innocence from the attacks and even more damaging, **loss of purpose, as her fans are everything to her.**

948. **Her fans have become seriously concerned with her wellbeing as a result of Defendants and its Drivers actions as described in all proceeding paragraphs of this Complaint**.

949. She continues receiving fan mail asking how she is, why she hasn't posted new videos, effecting people's lives as Plaintiff's Wife helps people with anxiety, suicidal thoughts and

Adam John Mackintosh—vs—Lyft, Uber, Andreessen; Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 411 -

loneliness.

950.   Plaintiff's Wife stopped posting videos on YouTube, for fear of Defendants, Louis, Joe, and Does finding out where she lived and her whereabouts.

951.   More recently the Drivers have calculated, and are currently executing plans to deport Plaintiff's Wife back to Australia through false accusations, in an act of witness tampering, in the event a trial date is set.

952.   These actions have caused her mental anguish, emotional distress and financial harm, potentially losing her marriage and green card, as she's still in the immigration process with the Plaintiff.

953.   Plaintiff's Wife came to America to visit Plaintiff, who she had been in communication with daily. After learning about iHug, she knew iHug is needed throughout America as she's heard the American healthcare system needs improvement.

954.   After multiple hits from Defendants and its Drivers, she's been permanently scarred, where her enjoyment of life turned into thoughts of suicide. The Plaintiff has had to talk her through the situations.

955.   Plaintiff vehemently refutes every willful action taken by Defendants and its Drivers in desperation of losing market share to iHug.

956.   The actions taken by Defendants are mere attempts to silence Plaintiff's Wife, attack Plaintiff personally to stop iHug from competing, in order to gain an unfair competitive advantage, causing Plaintiff's Wife even more emotional distress and mental anguish, as she knew her husband, the Plaintiff devoted nearly six years of his life into iHug, sleeping on floors and sacrificing.

957.   At one point, Plaintiff's Wife tells him, she doesn't want to live anymore, after Joe, Louis, the Drivers and Does colluded in grand theft auto, taking Plaintiff's vehicle, causing mental anguish and undue duress jeopardizing his personal income.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 412 -

958.   Pictured below, Plaintiff's Wife, a **YouTube Star and Social Media Influencer,**

"Awesome Alanna" with **26,000,000 million active views and over 100,000 fans** after the malicious

attacks, causing near death damages, where Plaintiff had to save her and stop her from taking her life.

 

 

959.   Evidence damages 1 Plaintiff Wife crying uncontrollably:

https://www.dropbox.com/s/cqprkh6llcxma9i/enoughisenough.mov?dl=0

960.   Evidence damages 2 Plaintiff's Wife crying stating the Plaintiff was just trying to do

the right thing for people while being slander, attacked and falsely accused of crimes:

https://www.dropbox.com/s/n6cl5od3wcf39fa/enough.mov?dl=0

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 413 -

## V. ALANNA'S FANS REPORT HER MISSING WHILE SHE

## WAS UNDER CORPORATE ATTACK BY DEFENDANTS

961.    Plaintiff's Wife, ("Alanna") is a public figure, and as a result of Defendants

attack, she stopped making YouTube videos. Her fans are still very concerned for her wellbeing.

962.    Pictured below is an email from a very concerned fan of Alanna.

---

**From:** Nabir <▮▮▮▮▮▮.com>
**Date:** December 22, 2018 at 10:54:08 AM PST
**To:** ▮▮▮▮▮▮▮▮▮▮▮mail.com
**Subject: Crazy story about your disappearance**

During your hiatus, I read this story on the BBC about an unidentified victim and thought the police sketch looked a lot like you:

https://www.bbc.com/▮▮▮▮▮▮▮▮▮▮

I mean, "a lot" is relative here, it's a sketch and they're always hideous and way off. She also matched the description. Reddish hair, good teeth and so on.

I actually contacted the authorities, just in case. I'm so sorry if they got in touch with you or your family. But... also, pretty hilarious, if you think about it. I thought this could be a topic for a video or at least it could make you laugh.

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 414 -

963. Pictured below is the BBC story, and a sketch that looks like Alanna.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 415 -

## W. ALANNA, PLAINTIFF'S WIFE, IS A PUBLIC FIGURE AND ROLE-MODEL

964.    Plaintiff's Wife, ("Alanna") is a public figure for the purposes of this Complaint, having lived her life in front of the public eye.

965.    Prior to April 2018, Alanna had high fame in the **YouTube community at large, with over 26,000,000 million active viewers, and over 100,000 fans**.

966.    Alanna was paid by Disney and Makers Studios, to promote Marvel and others businesses, giving her celebrity among millions of fans.

967.    Alanna always inserts herself in the public eye for good.

968.    Helping those who are personally struggling, and even saved a young woman from committing suicide with her relatability.

969.    Pictured below, you will see Alanna in her element on YouTube, at events, selling products through her YouTube channel and being funny, raw, charismatic, energetic, smart and a huge story teller where millions of fans view her videos.

  

 

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 416 -

970.   Pictured below you will see Alanna helps people from committing suicide, and has saved children and adults from committing suicide through her YouTube Videos. **Whereas in this case, Defendants have nearly caused her to commit suicide.**





**notsoslimshady394 has made a comment on Draw My Life - AwesomeAlanna**

To reply to this comment click here. To see all comments on this video click here.

I loved this video, Alanna! I'm 14 and I fight with my mom alot too, and I struggle with depression and suicidal thoughts. I just want to thank you SO much for making this video<3 I guess its just comforting to know that people have gone th... more

**Awesome Alanna,**
You were mentioned in a Tweet!

**Awesome Shannon:)**
@shannlovescats
**@awesome_alanna hello.... I feel like.... Suicide..... Can you help me........... :/ please.....? I really do need you Alanna......**

971.   Pictured below, fans are still messaging Alanna with concern, as Alanna has stopped making YouTube videos for fear of Defendants, Joe, Louis and Does finding out where she and the Plaintiff live for fear of their safety.




**kashii_jepsz** commented:
@awesomealanna I miss your YouTube channel it made me really happy 😊 I have some very bad anxiety and some mental issues and your videos literally made me laugh ...I'm not even kidding they made me laugh through the darkest times of night and I miss you ... I've watched all your videos and can recreate them by heart ... I miss you and wish I see new videos 😊 I love you x 😊 but I'm happy your social media is always active 17h

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 417 -

## X. ADAM IS A PUBLIC FIGURE AND ROLE-MODEL

972.    Plaintiff ("Adam,") is a public figure for the purposes of this Complaint, having lived his entire life in front of the public eye.

973.    When looking at the entire body of Adam's life. At the core of his belief system, Adam gives selflessly at every chance he can, it's the only thing he excels at.

974.    He's helped millions of people in need, through various local, national and global non-profits to include but not limited to the Sacramento Food Bank and Family Services, an organization that helps families make ends meet, provides services such as free clothing for children, women and men, adult education, parent education, youth education, immigration legal services, refugee resettlement services, and others.

975.    Pictured below, Adam speaking to thousands of people at a charity event televised by Fox 40.



976.    Pictured on the next page atop, you will see Adam being a kind-hearted father figure and role model to Allison, his ex-fiancé daughter.

977.    Through Adam's teachings, Allison understood the importance of giving back,

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 418 -

Adam gave Allison $500 cash to donate to Sacramento Food Bank and Family Services.









Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 419 -

978.   Pictured below, an intimate conversation with Adam's ex-fiancé. *Adam's teachings* to have Allison donate $500 made an impact on Allison, *4 years later*, she continues giving back and donates to Loaves and Fishes of Sacramento for their yearly stocking drive for the homeless. A magical moment for Adam.



979.   Pictured on the next page atop, Adam feeding our homeless near the iHug office,

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 420 -

bringing them water, and food. Plaintiff's Wife records it against his wishes. Adam doesn't like to take credit for his good deeds.

  

980.   Pictured below, you will see Adam leading a toy drive on Christmas, on multiple occasions to help Toys-for-Tots a United States Marine Organization for kids.

   

981.   Pictured below, you will see Adam's friend, a San Francisco native who trusted Adam. She was working to connect Adam to billionaire investors based purely on Adam's reputation, and trust including Mark Cuban, Richard Branson, Chris Sacca, and Travis Kalanick of Uber.

> **Yay!!!**
>
> **I've been contacting my peeps.**
>
>  **Printed it all out and will send to you. I'm so exhausted but excited!**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 421 -

982.    Pictured below, Adam's friend provided Plaintiff with Mark Cubans email to contact him for an investment, she was also attempting to connect Adam with world leaders for investment.







983.    Pictured on the next page atop, you will see what it took Adam to build up his reputation, and build iHug, after years of selfless devotion, putting others first.

984.    He slept on his friend's couches, and floors. He sold his cargo trailer he slept in, to invest the cash into iHug, and slept on his office floor to reinvest the extra cash into iHug, to make iHug profitable to help people in healthcare.

985.    Adam's actions and decisions to build the world first Rideshare for Healthcare platform is a true testament to his character, and when looking at the entire body of Adam's life, his efforts are genuine and for the people. As a result, God gave Adam the vision to change

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 422 -

the world in healthcare, giving everyone access, anywhere.

 

  

986.    Pictured below you will see Adam receiving one of many professional endorsements. A good friend, Sara was cheering Adam on to reform healthcare.

**Sara**
Senior Events & Marketing Director

May 2, 2017, Adam worked with Sara [redacted] in the same group

Adam is one of the hardest workers I know. Couple that with his passion to reform healthcare, and he is all but unstoppable! Over the past year, I have watched him grow iHug Healthcare and have seen the many many hours he puts in to ensure every feature and welcome message is perfect. His positive energy makes him a joy to work with and I have no doubt it is only up from here for Adam!

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 423 -

987.     To indisputably prove Plaintiff is a selfless man who puts people before himself,

after Joe asked Plaintiff for help regarding his son's low grades and no participation in class,

Plaintiff offered his help. ***Months later***, Jaren's teacher, Jennifer, made him Governor of the

Week. Pictured below, a text message conversation proving Plaintiff empowered Joe's son to

think for himself, and help others with great ideas.





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 424 -

988.   To unarguably prove that Plaintiff and his Wife are innocent victims and

only want to love and build a future for the people, pictured below on the left, Plaintiff's Wife

watched after Joe's daughter, Cezzie. Pictured below on the right, Plaintiff took Cezzie, and

Joe's two sons to school, while Joe was in San Francisco leaking iHug details to Defendants,

unbeknown to Plaintiff. Defendants' actions against Plaintiff and his Wife are atrocious.

Plaintiff respectfully prays to God, and an Honorable Judge to rightfully serve justice.




Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 425 -

989.    A man who was betrayed and robbed of iHug's launch day on July 4, 2017, and every subsequent launch thereafter; A man who nearly lost his first and only love; Who was mentally tortured by the use of psychological warfare tactics by Defendants; Who lost everything, including family, friends, his reputation, his company, his home, and vehicle; Who was gifted with iHug by God to save and enrich human life, empowering people with a new digital Ai healthcare system, was harmed by five major corporations, all for greed. By the power of God, Plaintiff will not be silenced, he will persevere, and he will be raised up by the hands of God to ensure he delivers what God intended him to build for the people of the world.

990.    Pictured below, as Plaintiff was forced to write his own Complaint, he quickly had to learn basic principles of law. His brief work in law brought to surface unbelievable wrongdoing. Plaintiff realized Uber, Lyft, Andreessen, Benchmark, and the BBB are harming innocent people, business owners, and patients in healthcare, and after seeing the vile attacks to wrongfully imprison him, he broke down from the gravity of the damage he's sustained since 2015 to present. Plaintiff's loving Wife broke down while recording her husband to show an Honorable Judge the damages. Plaintiff respectfully prays that the Court grant all relief that the Court deems just and proper, including equitable relief, in particular, injunctive relief.

 

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 426 -

991. Pictured below, Plaintiff couldn't help himself from the pain. After years, of defending, after years, of fighting back, and competing to build iHug, attempting to help more and more patients in healthcare, the principals of Law, gave Plaintiff a glimpse of the damages. He was genuinely and deeply hurt from the damages.

992. Plaintiff stands resolute, and will continue building his case to prosecute the Defendants to the fullest extent of the Law, for all wrongdoing described herein and throughout all proceeding paragraphs of his Complaint.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 427 -

## 7.  INJUNCTIVE RELIEF BY WAY OF SUPREME LAW OF THE LAND

In order to fully compensate Plaintiff, his Wife, and iHug, for damages and to punish, deter, and teach Defendants a lesson they will never forget, this action seeks the following but not limited to, temporary and permanent injunctive relief, granting of his TRO, punitive damages, compensatory damages, general damages, and residual royalty earnings on all future revenue that resemble any of Plaintiff's corporate secrets, intellectual property, processes, methods, concepts, ideas, business plans, and other corporate material, stock ownership in Defendants publically traded companies and a board seat to ensure life is never threatened again, while working to help everyone benefit.

952.   The United States Supreme Court requires four factors to have been met in order to grant injunctive relief:

(1) Plaintiff continues to sustain damages while under competition suppression by Defendants, more specifically, using Government officials to fine and threaten Plaintiff.

(2) The Drivers under Defendants instructions continue defaming Plaintiff to investors, business partners, friends, family and the public.

(3) Plaintiff's Company, iHug, continues its loss of market share in healthcare.

953.   Endangerment of life in healthcare, particularly, Defendant's inherent culture and corporate practices continue use of unfair taxi competition tactics, incentivizing drivers not to drive for each other, who then cancel on dialysis, and other terminally-ill patients in healthcare while methodically engaging in competition 24/7/365.

954.   Wheelchair bound patients will continue to suffer hardship as a result of Defendant's existence in Healthcare, and the continued suppression of iHug.

955.   As affirmed by the United States Supreme Court, the Supreme Law of the Land,

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 428 -

Plaintiff argues the Drivers have violated advisory, non-compete, confidentiality, non-disclosure, contingent employment and other types of legally binding agreements.

956. Testimonial and direct evidence establishes the Drivers acted on behalf of Defendants, who are in a business relationship with Defendants, under constructive trust and brand power, while Defendants' attorneys preemptively write EULA's to skirt gray area law, in anticipation of Defendants being held responsible for acting unlawfully through its Drivers, evading the law while unjustly enriching itself and suppressing competition at the detriment of the Plaintiff, his Wife, iHug, and investors and more importantly innocent terminally-ill people in healthcare.

957. The Drivers signed advisory, non-compete, confidentiality, non-disclosure, contingent employment and other types of legally binding agreements with Plaintiff, and iHug, with the intention of not performing and violating fiduciary duty, in order to unjustly enrich Defendants, without legal entitlement, while receiving cash incentive from Defendants.

958. Provisions within multiple legal documents Defendants signed, grant any and all extraordinary and injunctive relief as outlined in Plaintiff's *Ex Parte's* application and as described below:

959. **(f) Remedies.** I acknowledge and agree that violation of this Agreement by me may cause the Company irreparable harm, and therefore agree that the Company will be entitled to seek extraordinary relief in court, including but not limited to temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security and in addition to and without prejudice to any other rights or remedies that the Company may have for a breach of this

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 429 -

Agreement.

960. **3.6 Injunctive Relief,** party acknowledges and agrees, that in the event of a breach, or threatened breach of this agreement, by a Party, Company will suffer irreparable harm, and will therefore be entitled to injunctive relief to enforce this agreement.

961. **(c) Voluntary Execution.** I certify and acknowledge that I have carefully read all of the provisions of this Agreement and that I understand and will fully and faithfully comply with such provisions.

962. **Miscellaneous: 4a.** All confidential information and Confidential Materials, are and shall remain the sole and exclusive property of the Company.

By disclosing information to Recipient, the Company does not grant any expressed or implied right to Recipient to or under the Company patents, copyrights, trademarks, or trade secret information. Any information that's given, disclosed, communicated or otherwise expressed by Recipient that shape, enhance, evolves or otherwise, shall remain the sole and exclusive property of the Company.

963. **Injunctive Relief.** You hereby acknowledge, (1) that the Company will suffer irreparable harm if you breach your obligations under this agreement; and (2) that monetary damages will be inadequate to compensate the Company for such a breach. Therefore, if you breach any of such provisions, then the Company shall be entitled to injunctive relief, in addition to any other remedies at law or equity, to enforce such provision." Case law establishes, Plaintiff has every right to motion the court for injunctive relief, wherein a case, *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics Am., 2018 WL 3358927 (Fed. Cir. 2018),* the Uniform Trade Secrets Act (UTSA), adopted by nearly all states, and the federal Defend Trade

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 430 -

Secrets Act (DTSA), provide plaintiffs with several possible monetary remedies for misappropriation of his corporate secrets.

964. A plaintiff can recover its actual loss caused by the misappropriation (i.e. loss damages) plus the unjust enrichment gained by the defendant to the extent that this unjust enrichment is not taken into account in computing actual loss (i.e. disgorgement damages).

965. Alternatively, and in lieu of loss damages or disgorgement damages, a plaintiff may be entitled to receive "a reasonable royalty" on sales made by the defendant of the product incorporating the trade secret. Separately, a plaintiff may also be entitled to non-monetary damages, like an injunction.

966. Disgorgement is an equitable remedy used to prevent unjust enrichment by requiring a defendant to give up any profits it made as a result of illegal or wrongful acts.

967. Disgorgement does not require that the plaintiff have suffered any damages at all, rather, disgorgement is a tool used to prevent a defendant from benefitting from its illegal actions.

968. Disgorgement can include not only the defendant's profits but also cost savings realized from its illegal use of the plaintiff's trade secret. For example, theft of trade secrets often allows competitors to take short-cuts to market.

969. Whereas in this Complaint, Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity and corporate secrets are considered a trade secret as it was:

   (1) not known outside of the particular business entity;

   (2) known only by employees and others involved in the business;

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 431 -

(3) subject to reasonable measures to guard the secrecy of the information;

(4) valuable; and (5) difficult for any party to properly acquire the trade secrets,

are typically protected by nondisclosure agreements (NDAs), whereas NDA's

were signed in this Complaint.

970. California is one of the many states that have adopted the Uniform Trade Secrets

Act.

971. California's trade secret law can be found at Cal. Civil Code § § 3426-3426.11.

972. Whereas in this Complaint, Defendants have met all elements that violate the

Uniform Trade Secrets Act, which refers to the theft of trade secrets as

misappropriation.

973. Under California law, "misappropriation" refers to the acquisition of a trade

secret by someone who knows or has reason to know that the trade secret was

acquired by improper means -- theft, bribery, misrepresentation, breach or

inducement of a breach of duty to maintain secrecy. It also includes the disclosure or

use of a trade secret without consent by someone who used improper means to

acquire knowledge of the trade secret – for example, an ex-employee who spills

Company secrets to a rival.

974. Wherein this Complaint, Louis, Joe, Darren, Jerry and Does leaked iHug's

corporate secrets to its rival Lyft and Uber executives and affiliated parties, Does.

975. A victim of trade secret theft can also seek financial compensation that measures

the actual loss attributed to the theft or the profits (or "unjust enrichment")

acquired by the trade secret thief. In egregious situations, a California court can

award punitive damages up to twice the amount of any award.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 432 -

976. Attorney fees will also be awarded in egregious (willful and malicious) situations or if a claim is brought in bad faith.

977. In addition to California's rules regarding trade secrets, certain federal rules also apply in California. As per, The Economic Espionage Act of 1996, a "trade secret" is similar to that of the Uniform Trade Secrets Act.

978. A private party can still sue for trade secret theft under the Economic Espionage Act. Whereas all NDA's established Defendants cover all attorney's fees, costs, and other expenses to remedy such breach of fiduciary duty.

979. Plaintiff reasserts and incorporates by reference all proceeding paragraphs as if fully restated herein.

980. The Drivers under the instruction of Defendants violated all signed legal agreements, ignoring multiple cease and desist warnings, and maliciously continued to cause irreparable damages, including but not limited to, tortious interference of iHug's partnership with actual economic advantage, misappropriated corporate secrets which include Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars, while endangering lives through unfair competitive tactics.

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 433 -

## Y. CAUSES OF ACTION

## COUNT 1

## UNFAIR COMPETITION PRACTICES THAT ENDANGERS CONSUMER LIFE

### (Unfair Competition in Violation of California Business and Professional Code §17200 et seq.)

### By Plaintiff and On Behalf of All Others Similarly Situated

981.   Plaintiffs' incorporate by reference all preceding and subsequent paragraphs here, as though fully set forth in this First Cause of Action:

982.   This claim is based upon sections 17203 and 17204 of the California Business and Professions Code to obtain restitution, disgorgement, declaratory and injunctive relief, and all other remedies available for violations of section 17200 of the Business and Professions Code, the California Unfair Competition Act, endangering the lives of dialysis, cancer and other terminally-ill patients in the healthcare industry.

983.   The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice.

984.   A business act or practice is "unfair" under the California Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

985.   The conduct complained of herein, including but not limited to business acts and practices, violates Business and Professions Code section 17200. The business acts

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 434 -

and practices alleged herein display Defendants' committed, common, continuous, and continuing course of conduct constituting unfair competition by unfair, unlawful, and-or fraudulent business acts and practices within the meaning of section 17200, et seq. as described herein, and are unfair to consumers in the State of California within the meaning of section 17200.

986. Each named Plaintiff, and all others similarly situated has suffered actual injury in the form of at least one type of injury described herein, losing money or property as a result of unfair competition as described above, including Defendants' unlawful, unfair, or fraudulent business acts and practices.

987. The gravity of the harm to Plaintiff, his Wife, iHug and its investors resulting from these unfair acts and practices outweighs any conceivable justifications or motives of Defendants for engaging in such deceptive acts and practices.

988. By committing the acts and practices alleged herein, Defendants engaged in, and continue to engage in, unfair business practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, et seq., and Plaintiff, his Wife, iHug and its investors continue to suffer harm from these actions.

989. Therefore, Plaintiff is entitled to injunctive relief prohibiting the continuation of such business acts, practices and participation in healthcare.

990. Plaintiff, asks the Court to order Defendants to pay restitution to Plaintiff, his Wife, iHug and its investors in the amount of their losses based on violations of the UCL, to pay attorney's fees and costs, and to enjoin Defendants from continuing to violate the UCL as alleged herein, in particular, Defendants participation in healthcare.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Infringement on Our God Given Right to Life, Declaration of Independence, Bill of Rights, and Civil
Rights, American Disability Act, Trade Secret Misappropriation, Unjust Enrichment.
- 435 -

# COUNT 2

## COMPUTER DATA ACCESS AND FRAUD ACT ("CDAFA")

### (California Penal Code § 502)

### By Plaintiff and On Behalf of All Others Similarly Situated

991.   Plaintiff, herein incorporates by reference all the foregoing paragraphs as though fully set forth herein:

992.   The California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, "expand[s] the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Id. § 502(a).

993.   Plaintiff alleges Defendants and its Drivers work in concert violating subdivisions (c)(1)-(3), (5), and (7). In particular, parroting the language of the subsections, Plaintiff conclusorily alleges that Defendants, the Drivers and Does:

994.   Knowingly accessed and without permission used data, and electronic devices including but not limited iPhones, iPads, iMacs, Burner Phones through computer networks, in order to wrongfully obtain iHug's corporate secrets, pitch decks, business plans, property, or data, contrary to Cal. Penal Code § 502(c)(1).

995.   Knowingly and willfully accessed and without permission took, copied, and made use of data from electronic devices including but not limited iPhones, iPads, iMacs, Burner Phones through computer networks, in order to wrongfully obtain iHug's corporate secrets, pitch decks, business

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 436 -

plans, property, or data, contrary to Cal. Penal Code § 502(c)(2)

996. Knowingly and without permission disrupted or caused the disruption of computer services or denied or caused the denial of computer services to an authorized user of a computer, computer system, or computer network, contrary to Cal. Penal Code § 502(c)(5).

997. Knowingly and without permission provided or assisted in providing a means of accessing a computer, computer system, or computer network in violation of Cal. Penal Code § 502, contrary to Cal. Penal Code § 502(c)(7).

998. As a result of said actions against Plaintiff, his Wife, iHug and its investors has caused an insurmountable and incendiary damages.

///
///
///
///
///
///
///
///
///
///
///
///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 437 -

## COUNT 3

## UNJUST ENRICHMENT WITHOUT LEGAL ENTITLEMENT

### (California Code, Civil Code – CIV § 3426.3)

#### By Plaintiff and On Behalf of All Others Similarly Situated

999.   Plaintiff, herein incorporates by reference all the foregoing paragraphs as though fully set forth herein:

1000.   Because of the misconduct described herein, Defendants have been unjustly enriched at the detriment of Plaintiff, and iHug.

1001.   Defendants have been unjustly enriched at the detriment of Plaintiff, and iHug, while incentivizing the Drivers to misappropriate iHug drivers and rider details in order to grow Defendants synonymous and monopolized transportation network companies.

1002.   Defendants unjustly enriched themselves, in particular Ben, who's under investigation along with Defendants, without legal entitlement, through Joe, Louis and Does who are under investigation along with Defendants, who misappropriated corporate secrets, business plans, corporate materials, partnership details pertaining to Plaintiff's $25,800,000,000,000.00 Trillion-Dollar New Digital Ai Healthcare System particulars, and his $1,200,000,000,000 trillion-dollar healthcare opportunity, and partnership contract that were profitable in a clear violation of the:

1003.   Defend Trade Secrets Act of 2016 (DTSA) 18 U.S.C. § 1836, et seq, see *Mike's Train House v. Lionel L.L.C., 472 F.3d 398 (6th Cir. 2006); Avery*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 438 -

*Dennison Corp. v. Four Pillars Entertainment Co., 45 Fed. Appx. 479 (6th Cir. 2002)* and other civil codes.

1004. Violations of California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), California Penal Code § 502 of Corporate Espionage 18 U.S.C. § 1832 (a), (5), (b)

1005. Violations of Unauthorized Computer Access and Fraud California Penal Code 502(c)

1006. Violation of California Uniform Trade Secret Act California Civil Code §§ 3426-3426.11

1007. Violation of Defense of Trade Secrets Act

1008. Violation of The Economic Espionage Act of 1996

1009. Economic Espionage 18 U.S. Code § 1831 (1)

1010. 4. Intentional Interference with Contractual Relations, and Tortious Interference with Actual Economic Advantage.

1011. Violations of Unjust Enrichment in Trade Secret Misappropriation California Civil Code – CIV § 3426

1012. Joe, Louis and Does misappropriated corporate secrets pertaining to Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars, allowing Defendants to unfairly compete, and unjustly enrich themselves at the detriment of Plaintiff, causing serious injury and damage creating more bottle necks in healthcare, while endangering life on a daily

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 439 -

1013.  basis, increasing mortality rates, which will inevitably cause deaths.

1014.  Plaintiff is entitled to extraordinary relief including injunction and all monetary damage compensation.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 440 -

### COUNT 4

### MISREPRESENTATION, FRAUDULENT INDUCEMENT AND CYBER-CORPORATE SABOTAGE THROUGH ESPIONAGE (California Civil Code §§ 2223, 2224, California Code, Penal Code – PEN § 502, Violation of Uniform Trade Secrets Act Cal. Civil Code § § 3426-3426.11.)

### By Plaintiff and On Behalf of All Others Similarly Situated

1015.  Plaintiff, herein incorporates by reference all the foregoing paragraphs as though fully set forth herein:

1016.  Due to the misconduct described herein, Defendants' claimed its Ambassador Programs are "phasing out" and or "discontinued" in order to allow Defendants to continue misleading competitors, and the general public of the Ambassador Programs, stating the programs are "phasing out" and "no longer accepting responses" in order to obfuscate. Whereas, the programs are in full effect, where Drivers are still infiltrating competitors while receiving incentive through the referral programs.

1017.  Pictured on the next page atop, is electronic evidence, indisputably proving Defendants misled competitors and the general public by falsely claiming the Ambassador programs are "phasing out." Pictured on the next page in the middle, site is taken down after Defendants unlawfully received Plaintiff's Complaint, and the updated version on the next page below, proving a cover up through misrepresentation.

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 441 -

1018.   Before Defendants unlawfully received Plaintiff's Complaint.



1019.   Defendants then take down the website to edit.

1020.   Defendants cover up by adding the referral program is now phasing out.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 442 -

1021.  This enabled Joe, Louis and Does to make false representations and statements, that they are no longer Lyft Ambassadors, and Uber Brand Ambassadors, rather Independent Contractors, in order to infiltrate iHug with the intention of spying, misappropriating corporate trade secrets, competitive material and tortiously interfering with iHug's partnerships.

1022.  This behavior is an extension of Defendants grassroots and genuine culture, in particular, John Zimmer, Co-Founder, and CEO of Lyft, in a YouTube video, after an individual asks about Lyft's cease and desists from competitors, John states, "We got so many. I don't know where they are anymore. We have a 25-person Government Relations Team...they probably have them stored somewhere. There's a big map we use to surround the cease and desists with." Showing no regard for the law, ignoring competitor's requests, and setting the tone for all Lyft employees, instilling this behavior into their culture.



Video evidence:

https://www.dropbox.com/s/w0esvu4z1zizlul/Be_Fearless_Startups_tips_from_the_Co-Founder_of_Lyft_%20Lyft_President_John%20Zimmer.mp4?dl=0

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 443 -

1023. In the same malicious act, Joe, Louis and Does then sabotaged iHug on all facets under the instruction from Defendants, attacking Plaintiff's investor relationships, to sabotaging Plaintiff's software, misappropriating iHug's investment cash, evoking undue duress on Plaintiff, and his Wife, while attempting to deport her back to Australia to hurt Plaintiff, and other malicious behaviors causing severe and intentional harm.

1024. Joe, Louis and Does use the brand power of Uber and Lyft, while making false representations to competition that they are no longer Ambassadors, in order to unlawfully infiltrate all competitors, while being incentivized, in order to suppress competition, fueling Lyft and Uber's synonymous TNC monopolization.

1025. All Defendants mentioned herein, including Does have been unjustly enriched through misrepresentation at the detriment of Plaintiff, receiving hefty cash payouts for their actions. Whereas in 2019, Lyft refused to disclose Driver payouts, in order to cover up the wrongdoing.

///
///
///
///
///
///
///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 444 -

## COUNT 5

## DEFAMATION, SLANDER, LIBEL

### (California Civil Code § 45)

### By Plaintiff and On Behalf of All Others Similarly Situated

1026.  Plaintiff, herein incorporates by reference all the foregoing paragraphs as though fully set forth herein:

1027.  It's alleged Defendants and its Drivers are currently building a prosecution case against Plaintiff using the fabricated and false allegations of fraud, in a continued effort to defame Plaintiff's character and falsely imprison him, whereby if Defendants file a complaint regarding fraud, and/or instantly presents a prosecution counter lawsuit for fraud or anything alike against Plaintiff, using Plaintiff's investors, drivers, and former team members against him, it will prove allegations presented herein.

1028.  Defendants and its Drivers published False and Defamatory Accusations and its Gist negligently and with actual knowledge of falsity or a reckless disregard for the truth to one of the world's largest and leading business networks, in order to advance Defendants and its Drivers who received stock, cash payouts, and other perks, AKA bribes.

1029.  The negligence and actual malice of Defendants is demonstrated by their utter and knowing disregard for the truth.

1030.  Under instruction, Defendants Drivers collective conduct, demonstrates a purposeful avoidance of the truth and the publication of the false and

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 445 -

defamatory accusations with actual knowledge of falsity.

1031.  Defendants Drivers continued to publish its False and Defamatory Accusations and its Gist with actual knowledge of falsity on the Apple App store review system, in an attempt to de-rank Plaintiff's App, which ranks #1 over Lyft, and Uber by abusing Apple's review system in an act of tortious interference of revenue growth of Plaintiff's new business.

1032.  Defendants and its Drivers negligently and recklessly published False and Defamatory Accusations in derogation of accepted competition practices, and code of business ethics of Uber, and Lyft.

1033.  The False and Defamatory Accusations and its Gist against Plaintiff are defamatory per se, as they are libelous on their face without resort to additional facts, clearly demonstrated in all proceeding paragraphs.

///

///

///

///

///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 446 -

## COUNT 6

## INTENTIONAL TORTIOUS INTERFERENCE WITH

## ACTUAL ECONOMIC ADVANTAGE

### (Unfair Competition in Violation of California

### Business and Professional Code §17200 et seq.)

### By Plaintiff and On Behalf of All Others Similarly Situated

1034. Plaintiff, herein incorporates by reference all the foregoing paragraphs as though fully set forth herein:

1035. Plaintiff had a valid contract with his new healthcare partner that gave iHug exclusive rights to consumers across the nation, including but not limited to Brookdale Senior Living, Kaiser Permanente, Dignity Health, and other prominent healthcare organizations.

1036. By committing the acts and practices alleged herein, Defendants engaged in, tortious interference by misappropriating Plaintiff's partnership details in order to anticipate dates to bribe, "incentivize and or spread false accusations about Plaintiff," to drivers so they would cancel on healthcare patients, increasing mortality rates by 30% [2, 5], and causing Plaintiff's partner to terminate the partnership.

1037. The Drivers colluded with Defendants, creating a scheme to corrupt Plaintiff and the partnership, successfully interfering with the contract. Stating iHug changed their name, inducing iHug's partner to terminate the contract.

1038. The Drivers misappropriated Plaintiff's riders, and driver details in order to

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 447 -

poach and manipulate them, while receiving incentive to do so, causing

irreparable damages to iHug, Plaintiff, and its investors.

1039.   Plaintiff maintains his allegations are substantiated, which encompass a variety

of unlawful business practices, and tortious interference, that wrongful

obstruction of an existing business relationship with a contractual economic

advantage to the Plaintiff, and his Company, iHug was committed.

1040.   Where it's established as a matter of fact, that Plaintiff's Company, iHug, had a

valid contractual business relationship;

1041.   The Plaintiff's competitor, Defendants, knew of the business relationship by way

of Joe, Louis, Jerry and Does;

1042.   The competitor, Defendants, deliberately instructed Joe, Louis and Does to take

action to disrupt the contract and induced the termination the relationship

Plaintiff had with iHug's partner.

1043.   Plaintiff further argues Defendants instructed Louis, Joe and Does to defame

Plaintiff to his partner, and misrepresented iHug in order to cause the

termination of iHug's $1,200,000,000,000 trillion-dollar healthcare opportunity

through contract.

1044.   Plaintiff further asserts Defendants instructed Louis, Joe and Does to hire an

employment attorney, so that the attorneys firm would call all parties involved

with iHug to falsely claim Plaintiff stole a vehicle and millions of dollars from

investors, evoking a baseless litigation process causing all parties involved with

iHug to terminate their relationship which had an economic

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 448 -

advantage, causing irreparable monetary damages.

1045.   Defendants lacked legal justification for the interference, and the interference resulted in commercial and economic harm, in particular, indefinite lost profits, entitling Plaintiff to damages, see Shafir v. Steele, 431 Mass. 365 (2000).

**2.** *Leggat JE Jr, Orzol SM, Hulbert-Shearon TE, et al. (1998). Noncompliance in hemodialysis: predictors and survival analysis. Am J Kidney Dis. 32:139-145.*

**5.** *Saran R, Bragg-Gresham JL, Rayner HC, et al. (2003).*

*Nonadherence in hemodialysis: associations with mortality, hospitalization, and practice patterns in the DOPPS. Kidney Int.64:254-262.*

///

///

///

///

///

///

///

///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 449 -

## COUNT 7

## INTENTIONAL TORTIOUS INTERFERENCE

## WITH CONTRACTS AND PROSPECTIVE ECONOMIC ADVANTAGE

### (Unfair Competition in Violation of California

### Business and Professional Code §17200 et seq.)

### By Plaintiff and On Behalf of All Others Similarly Situated

1046.  Plaintiff, herein incorporates by reference all the foregoing paragraphs as
though fully set forth herein:

1047.  Plaintiff had a valid contract with his new healthcare partner, where the contract
and/or reasonable expectations of entering into new contracts with nationwide
partners, with the following healthcare organizations but not limited to
Brookdale Senior Living, Kaiser Permanente, Dignity Health, and other
prominent healthcare organizations as these customers needed Plaintiff's
Company, iHug's services.

1048.  Defendants have full knowledge of Plaintiff's contract and reasonable
expectations of future contracts with similar customers.

1049.  Defendants intentionally induced Louis, Joe, and Does to cause
termination of the contract.

1050.  Defendants lacked legal justification for the interference, and the interference
resulted in commercial and economic harm, in particular, indefinite lost profits,
entitling Plaintiff to damages, see Shafir v. Steele, 431 Mass. 365
(2000).

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 450 -

## COUNT 8

## INTERFERENCE WITH EXERCISE OF CIVIL RIGHTS

## VIOLATION OF CAL. CIV. 52.1 § AGAINST ALL DEFENDANTS

### By Plaintiff and On Behalf of All Others Similarly Situated

1051.   Plaintiff argues Defendants actions against his Wife were extreme and

outrageous. It was so extreme, it exceeded all bounds of that usually tolerated in a civilized

community." (Cervantez v. J.C. Penney Co. (1979) 24 Cal.3d 579, 593). The infliction of

emotional and mental anguish, intimidation, threats and use of militaristic psychological

warfare tactics caused Plaintiff's Wife to want to commit suicide, locking herself in the

bathroom of their home, where Plaintiff had to break down the door and hold her, while

she cried uncontrollably.

1052.   Civ. Code § 52.1, the Bane Act, provides that it is unlawful to interfere with the

exercise or enjoyment of any rights under the Constitution and laws of this state and

the United States by use or attempted use of threats, intimidation or coercion.

1053.   Cal. Civ. Code § 43 guarantees the right of every person the right of protection from

bodily restraint or harm and personal insult.

1054.   As alleged in the proceeding paragraphs of this Complaint, Defendants intentionally

interfered with or attempted to interfere with Plaintiff and his Wife's clearly

established rights guaranteed under the United States and California laws, including

but not limited to Plaintiff and his Wife's right of protection from battery, assault,

false imprisonment, by threats, intimidation, and coercion.

1055.   Defendants conspired, aided or incited each other to threaten, intimidate and

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 451 -

coerce Plaintiff and his Wife by, among many things, the following but not limited to:

1056.   Joe induced Plaintiff and his Wife to move in with him temporarily, so that he could strategically kick them out and force them into the street while Plaintiff was building his Company, iHug.

1057.   Plaintiff and his Wife were forced into the streets to sleep in their car that was later stolen by Defendants.

1058.   Defendants collusion using the Hell Programs and private investigators, tracked down Plaintiff and his Wife. Defendants then compromised her friend, calling Plaintiff a fraud in order to wrongfully imprison him.

1059.   Defendants collusion using the Hell Programs and private investigators, tracked down Plaintiff and his Wife. Defendants then compromised her friend, calling the Sacramento Police Department, alleging Plaintiff assaulted her, in order to wrongfully arrest and imprison him.

1060.   Defendants collusion using the Hell Programs and private investigators, tracked down Plaintiff and his Wife. Defendants then compromised her friend, stating Plaintiff and his Wife were frauds, scam artists and criminals.

1061.   Defendants colluded to rally Plaintiff's investors against him, to build a wrongful case based on false accusations, in order to wrongfully arrest and imprison him, so Defendants can run with his $1,200,000,000,000 trillion-dollar healthcare opportunity and plans, while he would innocently and unlawfully sit in prison.

1062.   Defendants attempted to deprive Plaintiff of a vehicle that was sold to him by

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 452 -

Joe, so Plaintiff would not be able to drive his patients to their medical appointments, as Plaintiff was left with no choice as his Drivers were being incentivized and sabotaged by Defendants. This also exposed Plaintiff of legal liability for the death of his patients, where in the event a dialysis treatment is missed, it causes blood toxin levels to increase, leading to death. This caused extreme mental anguish on Plaintiff's Wife.

1063. Defendants ordered a private investigator to threaten Plaintiff and his Wife, while exposing a firearm without properly identifying himself. This caused severe mental anguish on Plaintiff's Wife, forcing Plaintiff to arm himself to protect his Wife and himself from danger. The sight and thought of the firearm caused even more fear on Plaintiff's Wife, as firearms are not common to obtain in Australia, causing Plaintiff's Wife severe stress and worry for their lives.

1064. Defendants deprived Plaintiff and his Wife of transportation on several occasions, forcing Plaintiff and his Wife to use the Uber and Lyft app, exposing them to Hell Programs. As Plaintiff's vehicles were broken into, stolen and sabotaged beyond repair by Defendants actions, this caused severe stress and worry for their lives.

1065. Plaintiff and his Wife had to endure an unfair and tough immigration process, which is still pending. Plaintiff had to read a five-year prison penalty declaration in front of a video camera, and their interview was recorded and reviewed by fraud officers. Plaintiff and his Wife's immigration process was moved to a "fraud case," which entailed fraud officers showing up at their home, asking

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 453 -

specific questions about Plaintiff's Company, iHug. The agent asked about

investors, potential loans, employees, business operation details and the

misappropriation of corporate secrets by Defendants. This process caused undue

duress on Plaintiff and his Wife. His Wife was worried every day at the thought

of being deported as a result of Defendants' actions.

1066.   Plaintiff further argues he and his Wife have been effected, losing enjoyment of

life, pain and suffering as a result of Defendants willful actions including

but not limited to:

1067.   Both Plaintiff and his Wife have sustained incendiary damages causing loss of

enjoyment of life, having to defend each unprovoked attack on them personally;

1068.   Loss of employment, Plaintiff gave up an opportunity to work with Google to

build iHug;

1069.   Loss of ability to perform at his current employer, having to prepare all cases.

1070.   Plaintiff's Wife, a YouTube Star in Australia, and Social Media Influencer, with

26,000,000 million views and 100,000 fans, stopped making YouTube videos for

safety reasons;

1071.   Plaintiff and his Wife's sleep pattern is unhealthy, typically waking up 4-5 times a

night due to stress;

1072.   Plaintiff and his Wife cannot leave their home without feeling paranoid, as

Defendants have exposed them to Hell Programs to track their whereabouts.

Whereas after Defendants tracked Plaintiff and his Wife, Plaintiff was nearly,

falsely arrested, as his Wife's friend was compromised by Defendants who falsely

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 454 -

accused Plaintiff of assault to Police. Whereas, the Police Officer stated he would not arrest Plaintiff based on the situation at hand;

1073.  Plaintiff and his Wife have stopped communicating with their friends to remain safe;

1074.  Plaintiff and his Wife are in constant depression;

1075.  Plaintiff and his Wife suffer from anxiety and panic attacks;

1076.  Plaintiff and his Wife's social life, hobbies and other pleasurable activities have halted;

1077.  They have complete inability to attend social events;

1078.  Diminished quality of life (generally), including social life;

1079.  Diminished ability to engage with family and friends;

1080.  Plaintiff's Wife has lost her bubbly personality, and no longer trusts people upon first meet;

1081.  As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, and through all proceeding paragraphs the Complaint, Plaintiff and his Wife have suffered severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety;

1082.  As a direct and proximate result of Defendants' unlawful conduct as alleged

1083.  Hereinabove and through all proceeding paragraphs of this Complaint, Plaintiff and his Wife have suffered economic harm and other consequential damages;

1084.  The aforementioned conduct by Defendants were willful, wanton, and malicious. At all relevant times, each Defendant acted with conscious disregard of Plaintiff

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 455 -

and his Wife's rights and feelings. Each Defendant also acted with the knowledge of or with the reckless disregard for the fact that his or her conduct was certain to cause injury and/or humiliation to the Plaintiff and his Wife;

1085.  Plaintiff is further informed and believes that each Defendant intended to cause fear, physical injury and/or pain and suffering to the Plaintiff and his Wife. Plaintiff avers Defendants have met all elements to constitute their actions as willful:

1. Defendants actions were extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress;

2. the Plaintiff and his Wife suffered and continue to suffer severe or extreme emotional distress; and

3. actual and proximate causation of the emotional distress by the Defendants are outrageous conduct," see Cervantez v. J.C. Penney Co. (1979) 24 Cal. By Virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary damages from Defendants.

///
///
///
///
///
///
///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 456 -

## COUNT 9

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

## CAUSING THE INDUCEMENT OF SUICIDAL THOUGHTS

### By Plaintiff and On Behalf of All Others Similarly Situated

1086. Plaintiff reasserts and incorporates by reference each and every allegation contained hereinabove and through all proceeding paragraphs of this Complaint, and incorporates the same herein as though fully set forth herein.

1087. Plaintiff argues Defendants actions against his Wife were vile.

1088. Each Defendant colluded and conspired and/or aided and abetted the other to hold Plaintiff's Wife emotionally hostage, tormenting her emotionally, tormenting her mentally, causing her to emotionally break down on a weekly basis. This led to her endometriosis to flare up, inducing her to want to commit suicide from the severe pain, and induced her into surgery, where it was learned, the damage was so severe, scar tissue grew on **her heart, lungs and brain.**

1089. It reached a point Plaintiff had to record and document what was happening as his intuition alerted him, he and his Wife were under serious corporate attack, it was no longer competition, it was despicable, greedy and evil.

1090. Each Defendant conspired to deprive Plaintiff and his Wife of their love for each other, in particular, at one point, Joe, Veronica, Louis, and Does attempted to turn Plaintiff and Plaintiff's Wife on each other, to break up their marriage after Joe leaked the marriage. Defendants knew Plaintiff's Wife was witnessing each and every action stated in all proceeding paragraphs of this Complaint.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 457 -

1091.  Plaintiff's Wife became a target after Joe spread the word Plaintiff married.

1092.  This was a mere attempt to force Plaintiff to give up on iHug, so Defendants

can run with his $1,200,000,000.000 trillion-dollar healthcare opportunity, and

$25,800,000,000,000 trillion-dollar digital Ai healthcare system that will

change the world through Ai. The actions taken by Defendants caused

immeasurable and incendiary damages on Plaintiff's Wife, as well as

the Plaintiff as he's dedicated his life to iHug for the People.

1093.  Plaintiff argues iHug is an extension of a God given vision to enrich the

world and move people into a healthier future so people can live longer, live

healthier, and live happier, one of iHug's core mission statements. These actions

taken by Defendants against his Wife to stop Plaintiff and iHug are

unconscionable.

1094.  Defendants' conduct was extreme and outrageous. Defendants acted with

reckless disregard for Plaintiff and his Wife's right and feelings, and with

deliberate indifference to the certainty that Plaintiff would suffer emotional

distress.

1095.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered

and will continue to suffer severe mental anguish, humiliation, pain, severe

emotional distress.

1096.  The general and special damages suffered by Plaintiff and his Wife as a

proximate result of the wrongful actions of the Defendants described above was

performed with conscious disregard for Plaintiff and his Wife's rights

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 458 -

and feelings.

1097.  As a result, Plaintiff is entitled to punitive or exemplary damages from all

Defendants.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 459 -

## COUNT 10

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE

## ECONOMIC RELATIONSHIPS

### By Plaintiff and On Behalf of All Others Similarly Situated

1098.  Plaintiff reasserts and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

1099.  Plaintiff was engaged in an economic relationship with a healthcare partnership which was likely to result in economic benefits to Plaintiff beyond those economic benefits contained in the Agreement.

1100.  Defendants knew of Plaintiff's economic relationship with a new healthcare partnership through Joe, Jerry, Louis and Does.

1101.  Defendants knew or should have known that this relationship would be disrupted if they failed to act with reasonable care.

1102.  Defendants engaged in wrongful conduct through their tortious interference with Plaintiff's contractual relationship with a new healthcare partnership.

1103.  Defendants' wrongful conduct disrupted Plaintiff's economic relationship with a new healthcare partnership.

1104.  Defendants' wrongful conduct was a substantial factor in causing Plaintiff to suffer damages in an amount in excess $1,200,000,000,000 trillion-dollars.

1105.  As a result, Plaintiff is entitled to punitive or exemplary damages from all Defendants.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 460 -

# COUNT 11

## CIVIL CONSPIRACY

### (California Code, Civil Code - CIV § 1714.10)

#### By Plaintiff and On Behalf of All Others Similarly Situated

1106.  Plaintiff reasserts and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein:

1107.  Defendants have combined for unlawful purposes.

1108.  Specifically, colluded and have combined to tortiously interfere with Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity and business and harmed competition, which is in clear violation of federal and state antitrust laws.

1109.  Plaintiff and his Company, iHug were irreparably damages, and will continue to suffer injury, as a result of the unlawful conspiracy.

///
///
///
///
///
///
///
///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 461 -

# COUNT 12

## LIABILITY FOR PUNITIVE DAMAGES

### (California Civil Code § 3294)

**By Plaintiff and On Behalf of All Others Similarly Situated**

1110.   Plaintiff realleges and incorporates herein by reference each and every

allegation set forth above, California Civil Code 3294 allows:

(a) In an action for the breach of an obligation not arising from contract,

where it is proven by clear and convincing evidence that the defendant has

been guilty of oppression, fraud, or malice, the plaintiff, in addition to the

actual damages, may recover damages for the sake of example and by way of

punishing the defendant.

(c) As used in this section, the following definitions shall apply:

1. "Malice" means conduct which is intended by the defendant to

cause injury to the plaintiff or despicable conduct which is carried on

by the defendant with a willful and conscious disregard of the rights or

safety of others.

2. "Oppression" means despicable conduct that subjects a person to

cruel and unjust hardship in conscious disregard of that person's

rights.

3. "Fraud" means an intentional misrepresentation, deceit, or

concealment of a material fact known to the defendant with the

intention on the part of the defendant of thereby depriving a person of

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 462 -

property or legal rights or otherwise causing injury.

1111. The acts and omissions of Defendants with respect to the following but not limited to:

1.  Intentional sabotage

2.  Tortious interference

3.  Emotional infliction damages

4.  Mental anguish inducing suicide thoughts and attempts

5.  Misappropriation of Plaintiff's healthcare opportunities

6.  Competition suppression

7.  Disregard for the law

8.  Eradicating iHug from healthcare

9.  Anti-trust violations

10. Unjust enrichment

11. Corporate cyber-espionage

12. Corporate cyber-sabotage

13. Defamation of character

14. Slander, Libel

15. Civil conspiracy, and Negligence

16. Grand Theft Auto

17. Attempt to wrongfully imprison Plaintiff

1112. Plaintiff is entitled to extraordinary and absolute maximum award of punitive damages allowed by the law.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 463 -

## Z. INJUNCTIONS:

1113.   Based on the *Ex Parte* Application, its content, and the factual evidence presented herein, and direct evidence of admittance from a Driver that Defendants gave instruction as described herein, Plaintiff motions the court for the following but not limited to injunctions:

1. Plaintiff motions the court for injunction, temporarily revoking Defendants from participating in healthcare, until the United States Department of Health and Human Services and the Federal Bureau of Investigations completes an extensive and thorough review of Defendants actions, practices and business dealings in healthcare.

2. Plaintiff motions the court for injunction, temporarily revoking Defendants apps from the Apple App Store for violation of privacy and other consumer rights, in order to prevent further violations.

3. Plaintiff motions the court for injunction, temporarily revoking Defendants apps from the Google Play Store for violation of privacy and other consumer rights, in order to prevent further violations.

4. Plaintiff motions the court for injunction, temporarily revoking Defendant's autonomous projects in healthcare, to prevent endangerment of life, injury, and future violations.

5. Plaintiff motions the court for injunction, ordering permanent closure of all Uber and Lyft Hubs, and/or satellite offices and other "military fashion operating bases," to prevent future violations. These "hubs" operate unlawfully.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 464 -

*Case-and-point* – <u>Plaintiff had every Uber, Lyft and Independent Driver sign a non-disclosure before accessing the iHug Driver App in 2017 and 2018</u>. iHug's Driver App integrated a **911 feature for safety in 2018**.

**In 2019, Uber and Lyft launched a 911 feature** at the same time, after Defendants thought iHug closed down, substantiating Lyft and Uber operate synonymously and unjustly enrich themselves equally and unlawfully.

Plaintiff theorizes Uber and Lyft use its Drivers and Third-Party Vendors like neurons in a brain, acquiring and transmitting competitor trade secret data to Defendants at a rate that's too fast for competitors to act or defend, unjustly enriching Defendants, suppressing competition.

Pictured below is a flow chart as to how Uber and Lyft misappropriate trade secrets. Pictured on the proceeding pages, Lyft and Uber hubs expansions.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 465 -





Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 466 -



A rendering of Lyft's future driver resource hub | Lyft

Earlier today, Lyft announced a $100 million investment in expanding its network of driver hubs in major U.S. cities, including the addition of 30 more locations.

These hubs, 15 of which are currently located in major U.S. cities, function as service centers and community spaces for drivers. They feature facilities for low-cost oil changes, basic vehicle maintenance, charging facilities for electric vehicles, and serviced car washes, as well as communal areas for drivers to meet, host skill-sharing meetups, and use "career-focused educational resources." And yes, there's also coffee.

The company's investment will also expand operating hours for the hubs, from 35 to 40 hours a week to more than 70 hours per week.

In many ways, Lyft and its competitor Uber, the ride-hailing companies that control the vast majority of the U.S. market, are successful. They've raised billions, changed urban transportation, collectively employ millions of drivers, and have become indispensable to many riders.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 467 -

Business > **Real Estate** · News

# Uber creates big Silicon Valley hub with downtown Sunnyvale lease

Uber leases enough Sunnyvale space for up to 1,900 workers

 



Two downtown Sunnyvale office buildings along South Mathilda Avenue that Uber has leased. Uber has struck a deal for a major Silicon Valley expansion with a big lease in downtown Sunnyvale that gives the tech company enough office space for up to 1,900 workers near a Caltrain station.

By **GEORGE AVALOS** | gavalos@bayareanewsgroup.com | Bay Area News Group
PUBLISHED: June 17, 2019 at 6:00 am | UPDATED: June 18, 2019 at 4:16 am

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 469 -

6. Plaintiff motions the court for injunction, ordering Defendants to pay iHug for all previous and future revenue from Defendants' (Multimodal) Concierge Healthcare API that was copied from iHug's corporate secrets and development material, to prevent further revenue loss of iHug that's unjustly enriching Defendants on a per second basis.

7. Plaintiff motions the court for injunction, ordering Defendants to pay iHug for all revenue on Grocery and Pharmacy services and rides that was copied from iHug corporate secrets and developing material during an active partnership with iHug's healthcare partner, to prevent further revenue loss of iHug and enrichment to Defendants.

8. Plaintiff motions the court for injunction, ordering Defendants to pay iHug for all revenue on current, in development and future features, products and services that resemble iHug's corporate trade secrets, intellectual property, processes, methods and other schematics.

9. Plaintiff motions the court for injunction, ordering Defendants to publicly apologize for their wrongdoing in healthcare, and under the supervision of a select Healthcare committee of the United States of American, comply with all reasonable requests to ensure Defendants are lifting up iHug, so iHug will ensure Defendants endangerment of life never happens again.

10. Plaintiff motions the court for injunction, ordering an investigation of Defendants' $1,000,000 million-dollar auto-policy and gap insurance provisions, to prevent future violations.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 470 -

11. Plaintiff motions the court for injunction, permanently revoking Defendants, Employees and any affiliated party to serve on any Local, State or Government Transportation boards, to prevent future violations.

12. Plaintiff motions the court for injunction, permanently halting the Lyft and Uber Referral Program, the Lyft Ambassador Program, the Uber Brand Ambassador Program, Lyft Driver Advisory Council and any other incentive programs, to prevent future violations.

13. Plaintiff motions the court for injunction, demanding all Uber and Lyft employees halt any and all direct and/or indirect communication with independent contractors, to prevent future violations.

14. Plaintiff motions the court for injunction, demanding any Lyft and Uber employee, independent contractor and any other affiliated party to immediately turn over their private Facebook groups, Alignable groups, LinkedIn groups, and any other online forums to the United States Federal Bureau of Investigations for a full and comprehensive review, to prevent future violations.

15. Plaintiff motions the court for injunction, demanding Lyft and Uber's CEO and Executive teams to work with iHug, to save lives, and work together to eliminate the endangerment of life that's currently happening through anticompetitive tactics. Allow iHug to re-engineer rideshare for healthcare so everyone can benefit from it as it's for the People, not for greed.

16. Plaintiff motions the court for injunction, place a permanent restraining order against individual Defendants, and all parties herein to protect Plaintiff and his

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 471 -

Wife, with the exception of Uber and Lyft corporations to work together to prevent any endangerment of life, in particular, integrate iHug's API into Plaintiff's misappropriated healthcare portal, allowing iHug to lead the way in healthcare, properly executing on the "Rideshare for Healthcare," model to prevent endangerment of life and provide the world's safest rides.

17. Plaintiff motions the court for injunction, permanently revoking all shares that were allocated to Defendants, in particular but not limited to, Andreessen Horowitz, Ben Horowitz, John Zimmer, Logan Green, as their actions were willful, unlawfully tactful, and fully aware of the wrongdoing, in which they filed an SEC S1 statement, in particular, adding Limitation of Liability and Indemnification of Officers and Directors to protect them against wrongdoing pre-and-post IPO:

"We expect to adopt an amended and restated certificate of incorporation, which will become effective immediately prior to the completion of this offering, and which will contain provisions that limit the liability of our directors for monetary damages to the fullest extent permitted by the Delaware General Corporation Law.

Consequently, our directors will not be personally liable to us or our stockholders for monetary damages for any breach of fiduciary duties as directors, except liability for the following:

1. any breach of their duty of loyalty to our company or our stockholders;

2. any act or omission not in good faith or that involves intentional

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 472 -

misconduct or a knowing violation of law;

3. unlawful payments of dividends or unlawful stock repurchases or

redemptions as provided in Section 174 of the Delaware General

Corporation Law; or

4. any transaction from which they derived an improper personal

benefit."

1114.   Whereas in this Complaint, its alleged Defendants preemptively omitted facts of

this Complaint to insurance agents, in order to purchase insurance policies, and

other protection plans to payout for damages resulting from Defendants actions,

who have knowledge of their wrongdoing, violating each of the aforementioned

four beaches, legally exposing Defendants personally to legal liability.

1115.   Plaintiff further argues life is more important than greed and winning, as stated

by Defendants.

1116.   We cannot put a price on people's lives by offering $5 to cancel on innocent

people who are in healthcare if they aren't out by the curve within 5 minutes, it's

unethical, greedy, un-American and vile.

1117.   The $5 cancel fee endangers patients' lives in healthcare, as they miss their

medical appointments per cancelled ride. If it's a dialysis patient, the blood

toxins increase dramatically, making the innocent patient ill, and may lead to

death if a blood transfusion is not made.

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 473 -

## 8.  PUNITIVE DAMAGES

1118.   The conduct of Defendants, and its Drivers described in all proceeding paragraphs of this Complaint are outrageous.

1119.   Defendants conduct, demonstrates a reckless disregard for the law, citizens, and conscious disregard for people who are suffering in healthcare.

1120.   The acts and omissions described above, herein, and throughout all proceeding paragraphs of this Complaint were willful and performed with actual and implied malice.

1121.   Punitive and exemplary damages are therefore appropriate and should be imposed in this instance.

1122.   Reckless and tortious interference with iHug's contractual relationship in healthcare.

1123.   Misappropriation of Plaintiff's $1,200,000,000.00 trillion-dollar healthcare opportunity, in order to unjustly enrich Defendants with no legal entitlement.

1124.   Misappropriation of Plaintiff's $25,800,000,000,000.00 Trillion-Dollar New Digital Ai healthcare system particulars, in order to unjustly enrich Defendants with no legal entitlement.

1125.   Endangered dialysis, cancer and other terminally-ill patients' lives in reckless taxi anticompetitive tactics used against other small startups, in order to suppress competition.

1126.   The False and Defamatory Accusations and its Gist made against Plaintiff were republished by third-parties and members of the business community, which was reasonably foreseeable.

1127.   The publication of the False and Defamatory Accusations and its Gist directly and

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 474 -

1    proximately caused substantial and permanent damage to Plaintiff, and iHug.

2    1128.   The False and Defamatory Accusations and its Gist against Plaintiff are defamatory

3    per se, as they are libelous on their face without resort to additional facts, and as

4

5    clearly demonstrated here, Plaintiff was subjected to public hatred, contempt, scorn,

6    obloquy, and shame.

7    1129.   As a direct and proximate result of the False and Defamatory Accusations and its

8    Gist, Plaintiff and his Wife have suffered permanent harm to their reputation.

9    1130.   As a direct and proximate result of the False and Defamatory Accusations and its Gist

10

11    Plaintiff and his Wife will suffer and will continue to suffer severe emotional distress,

12    in particular, Plaintiff's Wife lost her innocence and girlie spirit as a result by

13    Defendants actions, breaking her down to the point of wanting to take her own life,

14    whereas before the attacks she helped save others' lives through her YouTube

15    Channel. The actions taken by Defendants are despicable and felonious.

16    1131.   As a direct and proximate result of the False and Defamatory Accusations and its Gist

17

18    Plaintiff is forced to live his life in a constant state of concern over his safety and the

19    safety of his Wife, particularly, Defendant and its Drivers are attempting to deport

20    Plaintiff's Wife back to Australia to hurt and cause emotional injury to Plaintiff.

21    1132.   Defendants published its False and Defamatory Accusations and its Gist with actual

22    malice and common law malice, thereby entitling Plaintiff to an award of punitive

23

24    damages.

25    1133.   Defendants and its Drivers conduct were outrageous and willful, demonstrating that

26    entire want of care that raises a conscious indifference to consequences.

27    1134.   In *Buckner v. Varner*, the court defined gross negligence as "a conscious neglect of

28
Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 475 -

duty or a callous indifference to consequences" or "such entire want of care as would raise a presumption of a conscious indifference to consequences." *Thrasher v. Riverbend Stables* established that a plaintiff cannot prove a claim of gross negligence without first demonstrating that the defendant engaged in conduct that amounts to ordinary negligence.

1135. *Gross v. Nashville Gas Co., 608 S.W.2d 860 (Tenn. Ct. App. 1980)* cited three conditions plaintiffs can use to establish the presence of gross negligence, specifically:

1. 'such entire want of care as would raise a presumption of conscious indifference to consequences,' or;

2. a 'heedless and reckless disregard for another's rights,' or;

3. 'utter unconcern for the safety of others.'

1136. Plaintiff is entitled to an award of punitive damages to punish Defendants and to deter them from repeating such egregiously unlawful misconduct in the future, teaching them a lesson they will never forget.

///
///
///
///
///
///
///
///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 476 -

## 9.  $1.2 TRILLION-DOLLAR HEALTHCARE
## OPPORTUNITY AND CONTRACT DAMAGES

1137.  Plaintiff is entitled to extraordinary damages in court, as Defendants strategically timed tortious interference tactics on Plaintiff's launch day on multiple occasions, where Plaintiff began executing on his proprietary $1,200,000,000,000 trillion-dollar healthcare opportunity, through a signed contract.

1138.  Plaintiff asserts, billionaire investor, Hap Klopp ("Hap") was connecting him to large investments, whereas after Defendants egregious and reckless actions, Hap stopped all communication with the Plaintiff.

1139.  Hap's business partner stated iHug could easily hit $1,000,000,000 billion-dollars in revenue through the initial, five county launch.

1140.  Plaintiff was first to the healthcare transportation market using his "rideshare for healthcare" model. A profitable, confidential and proprietary model, which Lyft Co-Founder, Logan Green claims is a "once-in-a-generation shift" opportunity.

1141.  As a direct and proximate result of Defendants tortious interference, and misappropriation of corporate secrets, it has caused substantial and permanent damages to Plaintiff, and iHug, in an effort to claim the $1,200,000,000,000 trillion-dollar healthcare opportunity as their own, while intentionally omitting the facts of this Complaint to investors.

1142.  On October 12, 2016, and in several other interviews pre-IPO, John proclaimed that Lyft was targeting the car-ownership market, stating, **"Every year in the United States, $2,000,000,000,000 trillion-dollars is spent on car ownership."**

1143.  Whereas, per Lyft's S1 SEC filing, its alleged John, Logan and Ben, purposefully

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 477 -

1   manipulated the statistic and stated, "<u>U.S. consumers spend over $1.2 trillion on</u>

2   <u>transportation annually</u>," the exact dollar amount as Plaintiff's misappropriated

3   <u>$1,200,000,000,000 trillion-dollar healthcare opportunity as its alleged the number</u>

4   <u>pitched to investors.</u>

5

6   1144.   Pictured below, the statistic found in Lyft's S1 SEC filing for IPO.

---

**Transportation is a Massive Market Opportunity**

Transportation is a massive market. In 2017, transportation was the second largest household e
large as healthcare and three times as large as entertainment.12

Our market opportunity today includes transportation spend in the United States and Canada. I
on transportation were approximately $1.2 trillion in 2017.13 We believe that Lyft currently
market, and we intend to further extend our offerings to capture more of this opportunity in the
incremental opportunity to address transportation spend by businesses and organizations.

---

7 INRIX, Inc., INRIX Global Traffic Scorecard 2017, February 2018.
8 Shoup; see the section titled "Industry, Market and Other Data."
9 U.S. Department of Transportation, or DOT, Commuters by Mode 1989-2016.
10 DOT, Contemporary Approaches to Parking Pricing: A Primer, February 2017.
11 Bankrate, LLC, The 10 Most Affordable Cities for Buying a Car, June 2017.
12 BLS; see the section titled "Industry, Market and Other Data."
13 BLS; see the section titled "Industry, Market and Other Data."

---

1145.   Additionally, Lyft CFO, Brian Roberts, stated post-IPO, Lyft is on "**day one of a**

**$1.2 trillion market opportunity.**"

1146.   When in fact, Lyft was **already targeting** the "car ownership market," valued at

$2,448,000,000,000 trillion-dollars, **substantiating the $1,200,000,000,000**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 478 -

**trillion-dollar "new opportunity" belongs to Plaintiff it is extremely profitable, whereas Defendants car ownership market is not, substantiating Defendants are violating The Securities Act of 1933, as a result, Plaintiff prays for treble damages based on all actions taken against him and his Wife as described throughout this Complaint.**

1147. Pictured below, Brian Roberts, Lyft's CFO states, "we are day one of a $1.2 trillion market opportunity.



> **The Motley Fool.**
>
> **Lyft, Inc (LYFT) Q1 2019 Earnings Call Transcript**
>
> **Brian Roberts** -- *Chief Financial Officer*
>
> So just to follow-up in terms of the question on the path to profitability, we are day one of a $1.2 trillion market opportunity. We just announced a

1148. As a direct and proximate result of Defendants tortious interference, and misappropriation of Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars, and corporate secrets, Plaintiff suffered damages with permanence for the rest of his God given life.

1149. The monetary value of damages in which Plaintiff is entitled, is justified and reasonable.

1150. Plaintiff argues Defendants had financial motive to unlawfully suppress iHug, based on the pressure from investors, in order to claim Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, claiming it as their

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 479 -

own, and disguising it as a household expenditure transportation expense.

1151. Plaintiff asserts Defendants have met all elements to constitute their actions as tortious interference;

    1. An economic relationship that was likely to benefit the Plaintiff;

    2. The Defendant's knowledge of this relationship;

    3. Defendants engaged in wrongful conduct;

    4. Defendants had intent to disrupt the economic relationship, and had knowledge that disruption was likely because of their orchestrated conduct;

    5. A disruption of iHug's relationship with its partner was a result of Defendants actions;

    6. iHug, and Plaintiff sustained substantial harm; and

    7. A causal connection between the wrongful act and the harm.

1152. The Drivers of the Defendants who are in a business relationship with Defendants, under constructive trust, who have "common motive to collude," signed contingent-employee agreements with iHug, in order to infiltrate iHug to misappropriate corporate secrets.

1153. Pictured on the next page atop, one provision of the agreement, which states, "violation of this Agreement may cause the Company irreparable harm, and therefore agree that the Company will be entitled to seek extraordinary relief in court."

1154. Pictured on the next page atop, an assertion from the non-disclosure signed by Defendants, providing remedies to Plaintiff in the event any such violations took place:

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 480 -

(f) **Remedies.** I acknowledge and agree that violation of this Agreement by me may cause the Company irreparable harm, and therefore agree that the Company will be entitled to seek extraordinary relief in court, including but not limited to temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security and in addition to and without prejudice to any other rights or remedies that the Company may have for a breach of this Agreement.

1155. Pictured below, Haps email to the Plaintiff, confirming he will help with investments to fuel iHug's expansion in healthcare utilizing his proprietary healthcare opportunity.

Adam—
 Great to hear all the progress.   Because of personal reasons (a totally unbalanced portfolio with illiquid investments and a need to get my estate more organized), my financial advisor has me personally avoiding any more investments in early stage companies.  That being said, I would be happy to try to introduce you to some investors. I believe your success will be to find investors who focus on the stage you are in (early stage, pre Series A) and also the market segment you are in (tech).   VC's are generally not very good because they like to invest VC money later in the process.   The only place where that may differ is if the VC is investing their personal money for early stage.

 How much do you need to raise?  Are you going to raise it in the form of equity?  Or debt that might later be converted to Equity at some discount?  Have you looked at the S.A.F.E. investment model which is being used by a lot of start ups to do their funding? If so, what do you think of that model?
 Best,  Hap

1156. Pictured on the next page atop, Haps partner, Shawn, an astute and very successful businessman, who confirmed he had a meeting with healthcare providers who affirmed Plaintiffs' "rideshare for healthcare," model would be extremely profitable, further stating in a text message, "Wee can go to a billion easily." Plaintiff's intention was never about the value of the opportunity, rather he wanted to build the Rideshare for Healthcare that would benefit millions of American's and one day the world, possibly one day use the service himself, and future generations to come.

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 481 -

1157. Pictured below on the right, Shawn has a drink with friends, who are healthcare providers.





///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 482 -

1158.   Pictured below, a contract Plaintiff signed, that allowed him to monetize his

$1,200,000,000,000 trillion-dollar healthcare opportunity. Pictured on the proceeding

pages you will see Plaintiff and his healthcare partner signing the contract.

## Memorandum of Understanding

**THIS AGREEMENT**, is made this 12th day of March , 2018, by and between

(hereinafter referred to as "

iHug Healthcare

## RECITALS

**WHEREAS,** ████████████████████ software application to request transportation, organize demand and create efficiency through software to connect transportation providers with people desiring various levels of transportation. iHug also is a transportation network providing sedan service through independent contractors.

**WHEREAS,** ████████ is call center and contracts with various healthcare facilities and agencies throughout the greater Sacramento ████████ facilitates transportation for these various facilities.

**WHEREAS,** iH████████████████████████████ ll control requests through (Web Client Portal, Mobile Client Portal and iHug Partner App) which will then be allocated to iHug.

**WHEREAS,** ████████████████████ demand through software created and maintained by iHug (Web Client Portal, Mobile Client Portal and iHug Partner App).

**NOW, THEREFORE,** in consideration of the mutual covenants, conditions and agreements contained herein, the parties to this Agreement agree as follows:

1.      **Incorporation of Recitals.** The recitals set forth above are hereby incorporated by reference into this Agreement and made a part hereof as if set forth in their entirety.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 483 -

1159.   Pictured below, the contract continued.

> a.   Partnership Structure. ████████ ls requests through (Web Client Portal, Mobile Client Portal and iHug Partner App) which will then be allocated to iHug. ████████ will use (Web Client Portal, Mobile Client Portal and iHug Partner App) to request transportation services, while drivers will download and use iHug Partner App.
>
> 3.   **Levels of Service**
>
>   a.   Sedan Transportation
>
>   *Please refer to Appendix A for transportation rates.
>
> 4.   **Geographical Area of Operation**
>
>   a.   Partnership will include the geographical area of Sacramento, Placer, El Dorado, Yolo and San Joaquin Counties.
>
> 5.   **Hours of Operation**
>
>   a. ████████ Ambulance call center will operate 24 hours a day, 7 days a week.
>
>   b.   Transportation availability will be 24 hours a day, 7 days a week; provided by iHug (independent contractors).
>
> 6.   **Timeline of Events**
>
>   a.   Integration of beta test to include 5 Assisted Living Facilities 3/1/18
>
>   b.   Begin to integrate with all Sacramento Assisted Living Facilities 4/1/18
>
>   c.   Expand to Hospitals and Skilled Nursing Facilities 5/1/18
>
> 7.   **Billing and Compensation.**
>
>   a. ████████ es a referral fee of $1.00 when booking transportation through software (Web Client Portal, Mobile Client Portal and iHug Partner App). ████████ will receive automatic payment of $1.00 fee through iHug software.
>
>   b.   iHug will receive fees listed at the agreed upon rate per level of service listed in Appendix A for completed transport directly through iHug software.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 484 -

1160. Pictured below, the contract continued.

**APPENDIX A –**
Transportation Rates

Sedan Transportation                         $25.00 one way $50.00 round trip
                                             (flat rate within 10 miles)

Sedan with Companion                         $80 roundtrip
                                             (flat rate within 10 miles)
                                             (2 hours included)

Additional Mileage                           $2.00 per mile

Additional Companion care                    $25.00 per hour

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 485 -

1161.   Pictured below, Plaintiff signing the contract with his new healthcare partner.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 486 -

1162. Pictured below, New healthcare partner signing contract with Plaintiff.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 487 -

1163. Pictured below, a flyer Plaintiff and his new healthcare partner created.



# A Companion Service®
## We help you every step of the way.

*A sedan ride companion service that drives clients safely and on time to their medical and personal appointments.*

*You will be picked up and dropped off door through door by an ▮▮▮▮▮▮Plus or iHug Independent Certified Companion who will treat you with the respect and courtesy that you derserve.*

*We'll always open the vehicle doors, provide the neccessary assistance and ensure a safe and comfortable sedan ride.*

*Our objective is to give clients quality, value and an amazing customer experience.*

**Independent Certified Companions:**
*CPR, First Aid, Lift Movement and Memory Impairment.*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 488 -

1164.   Pictured below, a flyer Plaintiff and his new healthcare partner created.



# Sedan Rides

## A Companion Service®
We help you every step of the way.

❋ Medical Appointments      ❋ Grocery Shopping

❋ Patient Discharge         ❋ Medicine Pickup

## Independent Certified Companions:
*CPR, First Aid, Lift Movement*
*and Memory Impairment.*

## Trusted Partners

 ⓘHug 

Transportation, Placement, and Advocates.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 489 -

1165. Pictured below, quantitative and qualitative Breakdown of the monetization of

Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity.

ⒾHug                                                            Healthcare for Everyone, Anywhere®

## Sacramento Total Addressable Market (TAM)

| Customer Category | Total Patients | % | Target Ride Market | % |
|---|---|---|---|---|
| **Hospital** | 1,800 | 4% | 1,500 | 8% |
| **Senior Living Facility** | 19,000 | 43% | 6,100 | 34% |
| **Homecare** | 2,000 | 5% | 700 | 4% |
| **Dialysis** | 4,100 | 9% | 1,300 | 7% |
| **Urgent Care** | 11,600 | 26% | 3,700 | 21% |
| **Operations** | 5,500 | 13% | 4,400 | 25% |
| **Total Patients/Rides/Day** | **44,000** | **100%** | **17,700** | **100%** |

**Target Addressable Market Estimate Conservative:**
- Market share gains above 20% possible
- Enter the Medicare/Medicaid client market by navigating the system
- Assumption that only 40% of the market needs a ride may prove conservative after further discovery

Source: sheet 1.0                          www.fhug-healthcare.com                          5

| Live Counties | Details | Quantity Per Year | Total Revenue Per Year |
|---|---|---|---|
| Sacramento County, CA | 8,850 rides per day; $25 per ride | 3,230,250 | $80,756,250 |
| Sacramento County, CA | 8,850 rides per day; $80 per ride with wait hour | 3,230,250 | $258,420,000 |
| Sacramento County, CA | 17,700 rides per day; $6 mileage fee per ride | 6,460,500 | $38,763,000 |
| El Dorado County, CA | 8,850 rides per day; $25 per ride | 3,230,250 | $80,756,250 |
| El Dorado County, CA | 8,850 rides per day; $80 per ride with wait hour | 3,230,250 | $258,420,000 |
| El Dorado County, CA | 17,700 rides per day; $6 mileage fee per ride | 6,460,500 | $38,763,000 |
| Placer County, CA | 8,850 rides per day; $25 per ride | 3,230,250 | $80,756,250 |
| Placer County, CA | 8,850 rides per day; $80 per ride with wait hour | 3,230,250 | $258,420,000 |
| Placer County, CA | 17,700 rides per day; $6 mileage fee per ride | 6,460,500 | $38,763,000 |
| Yolo County, CA | 8,850 rides per day; $25 per ride | 3,230,250 | $80,756,250 |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices,
Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 490 -

| Yolo County, CA | 8,850 rides per day; $80 per ride with wait hour | 3,230,250 | $258,420,000 |
| Yolo County, CA | 17,700 rides per day; $6 mileage fee per ride | 6,460,500 | $38,763,000 |
| San Joaquin County, CA | 8,850 rides per day; $25 per ride | 3,230,250 | $80,756,250 |
| San Joaquin County, CA | 8,850 rides per day; $80 per ride with wait hour | 3,230,250 | $258,420,000 |
| San Joaquin County, CA | 17,700 rides per day; $6 mileage fee per ride | 6,460,500 | $38,763,000 |
| **Total** | | **$1,889,696,250 billion-dollars revenue per year** | |

1166.   Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity at full scale.

| Total Counties in the United States 6, 7 | Total Revenue Per Year |
| --- | --- |
| 3,242 counties | $377,939,250 million dollars (per county) |
| **Total Revenue Per Year** | **$1,225,279,048,500 ($1.2 trillion)** |

6. *"2010 Census Geographic Entity Tallies by State and Type". United States Census Bureau.*
7. *"Substantial Changes to Counties and County Equivalent Entities: 1970-Present". United States Census Bureau.*

///
///
///
///
///
///
///
///
///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 491 -

## 10. LOSS OF ENJOYMENT OF LIFE, PAIN AND SUFFERING DAMAGES

Plaintiff and his Wife have sustained damages, resulting in loss of enjoyment of life, as outlined below:

1. Loss of employment, Plaintiff gave up an opportunity to work at Google for iHug.

2. Loss of ability to perform at his current employer, having to prepare all cases, and dealing with undue duress and mental anguish.

3. Plaintiff's Wife, a YouTube Star in Australia, and Social Media Influencer, with 26,000,000 million viewers and 100,000 fans, stopped making YouTube videos for safety reasons.

4. Plaintiff and his Wife's sleep patterns are unhealthy, typically waking up 4-5 times a night due to stress.

5. Plaintiff and his Wife have gained substantial weight from depression and stress.

6. Plaintiff and his Wife cannot leave their home without feeling paranoid, due to Uber and Lyft's use of "Hell Programs having already tracked Plaintiff, where he was almost falsely arrested, as his Wife's friend was under instruction.

7. Plaintiff and his Wife have stopped communicating with their friends to remain safe.

8. Plaintiff and his Wife are in constant depression.

9. Plaintiff and his Wife suffer from anxiety and panic attacks.

10. Plaintiff and his Wife have lost their social life, hobbies and other pleasurable activities.

11. Plaintiff and his Wife are completely unable to attend social events.

12. Plaintiff and his Wife have a diminished quality of life (generally), including social life.

13. Plaintiff and his Wife have a diminished ability to engage with family and friends.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 492 -

## 11. INVESTOR AND TEAM MEMBER DAMAGES

1167.  In order to fully compensate iHug's investors, this action seeks monetary damages in the form of 200x their investment in iHug.

1168.  In order to fully compensate iHug's team for their promised salary upon capital raise, which was subverted by Defendants as described herein, and to punish, deter, and teach Defendants a lesson they will never forget, this action seeks money damages in form 30 years of salary payout:

| Investor Name | Salary Compensation (Cash) | Uber and Lyft Stock | Legally Void |
|---|---|---|---|
| ~~Shahla Qudus~~ | | $15,000,000 | Y |
| ~~Danny Trask~~ | | $960,000 | Y |
| ~~Joseph Tigner~~ | | $6,000,000 | Y |
| ~~Kristin Correa~~ | | $960,000 | Y |
| ~~Michael Ashley~~ | $5,250,000 | | Y |
| ~~Perry Ratcliff~~ | $5,250,000 | | Y |
| ~~Josef Arvin Acebedo~~ | $3,750,000 | | Y |
| ~~Thomas Michael Kim~~ | $3,000,000 | | Y |
| ~~Louis Pritchett~~ | $3,000,000 | | Y |
| ~~Darren Gacicia~~ | $6,000,000 | | Y |
| Alanna Mackintosh | | $14,000,000 | |
| Lesbia Guevara | | $4,000,000 | |
| Edward Hutchison, Jr. | | $4,000,000 | |
| Hamish Mackintosh-Keiller | | $3,000,000 | |
| Daniela Sozanski | | $2,000,000 | |
| Ethel House | | $960,000 | |
| Gary McDonald | | $960,000 | |
| Blake Young | | $960,000 | |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 493 -

| | | | |
|---|---|---|---|
| Rafael Lopez | $3,000,000 | $200,000 | |
| Jim Yeoman | $3,000,000 | | Pending |
| Jet Carreon | $3,000,000 | | Pending |
| Bernadine DeBruyn | $1,875,000 | | Pending |
| Martha Grupe | $1,875,000 | | Pending |
| **Total Exceeding** | **$12,750,000** | **$30,480,000** | |
| | | | |

////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////
////

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 494 -

## 12. JURY DEMAND

1169.   Plaintiff, on Behalf of Himself, and On Behalf of All Others Similarly Situated,

demand a trial by jury on all claims so triable.

1170.   I declare under penalty of perjury under the laws of the State of California that

the foregoing is true and correct, that I can competently testify thereto if called upon to do so.

1171.   Executed on July, 4, 2019 in Sacramento, California.


**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 495 -

## 13. PLAINTIFF'S PRAYER AND DECLARATION FOR INJUNCTION

1172.   Plaintiff declares the $1,200,000,000,000 trillion-dollar healthcare opportunity, is an extension of a proprietary **$25,800,000,000,000 Trillion-Dollar New Digital Ai Healthcare System that was gifted to him by God,** which was misappropriated by Defendants.

1173.   **Phase 1:** Integrate healthcare into transportation, $1,200,000,000,000 trillion-dollar healthcare opportunity;

1174.   **Phase 2:** Expand into healthcare, $5,000,000,000,000 trillion-dollar expansion healthcare opportunity involving variable modes, and cognitive physiology enabling Ai suggestive healthcare technologies;

1175.   **Phase 3:** Expansion into the product market, including but not limited to, shape memory and polymers, e-textile, and other healthcare wearable material integrations, healthcare units (i.e. Helicopter, vehicles, etc.,), health product ideas, health services ideas, health tool idea, health educator ideas, health insurance ideas and health companion ideas.

1176.   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, that I can competently testify thereto if called upon to do so.

1177.   Prayer for relief, injunction and royalty payments outlined in section 7, subsection Z., Section 16 – 28., and granting the *ex parte* application for a restraining order.

1178.   Executed on July, 4, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 496 -

# 14. PRAYER FOR RELIEF

1179.   WHEREFORE, after nearly a year and a half of attacks on Plaintiff and his Wife,

causing her to nearly commit suicide, Plaintiff respectfully prays:

1180.   That judgment be entered against the Defendants for trebling of all damages;

1181.   That judgment be entered against Defendants for **punitive, general, special, and**

**exemplary damages** in an amount not less than Eighteen Billion Five Hundred Ten

Million Dollars ($18,510,000,000.00).

1182.   That judgment be entered against the Defendants for **substantial compensatory damages**

in an amount not less than Four Billion Six Hundred Twenty-Seven Million Five Hundred

Thousand Dollars ($4,627,500,000.00).

1183.   That judgment be entered against Defendants for **unjust enrichment and actual loss** of

Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity not less than 20%

ownership in each company, Uber, Lyft and Andreessen in form of shares.

1184.   That judgment be entered against Defendants not less than 50% of all revenues to be paid

to Plaintiff automatically through Stripe, in order to continue to use Plaintiff's

$1,200,000,000,000 Trillion-Dollar Healthcare Opportunity, whereas if Defendants did

not use Plaintiff's $1,200,000,000,000 trillion-dollar healthcare, Defendants would not

have a path to profitability.

1185.   That judgment be entered against Defendants for **iHug's investor damages** in form of

stock, in an amount not less than Thirty Million Four Hundred and Eighty Thousand

Dollars ($30,480,000.00).

1186.   That judgment be entered against Defendants for **iHug's team wage damages**, in an

amount not less than Twelve Million Seven Hundred Fifty Thousand Dollars

($12,750,000.00).

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 497 -

1187. That judgment be entered against Jerry Wang for **monetary damages**, in an amount not less than One Hundred Eighty Thousand Dollars $180,000.

1188. That judgment be entered against Defendants, ordering a cease and desist.

1189. That judgment be entered against Defendants to desist from operating as a monopoly.

1190. That Plaintiff recover his reasonable attorneys' fees and expenses from Defendants as they signed non-disclosures that allows for such compensation;

1191. That all costs of this action be taxed to Defendants; and

1192. That the Court grant all such other and further relief that the Court deems just and proper, including equitable relief, in particular, injunctive relief.

1193. Respectfully submitted and executed on July, 4, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 498 -

1   Adam John Mackintosh
    (will seek admission *pro hac vice, in pro per*)
2   legal@ihughealth.com
    10923 Progress Court.,
3   Rancho Cordova, CA 95670

4

5               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

6                        **COUNTY OF SACRAMENTO**

7

8   Adam John Mackintosh, Individually,        Case No.: 34–2019–00261236–CU–BC–GDS
    and On Behalf of All Others Similarly
9   Situated,

10                                             **PLAINTIFF EXPARTE APPLICATION**
                                               **FOR A TEMPORARY RESTRAINING**
                 Plaintiff's,                  **ORDER AND ORDER TO SHOW CAUSE**
11                                             **REGARDING PRELIMNARY**
         vs.                                   **INJUNCTION POINTS AND**
12                                             **AUTHORITIES IN SUPPORT THEREOF**
                                               **LISTED ON THE SUB-TABLE OF**
13  Lyft, Inc., Uber Technologies Inc.,        **CONTENTS**
    Uber Health, LLC, AH Capital
14  Management, LLC, Better Business
    Bureaus, Inc.,  Corporation,               Judge: The Honorable
15  Corporations
16
    Ben Horowitz, John Zimmer, Logan
17  Green, Josef Arvin Acebedo, Louis          _____
    Darnell Pritchett, Jerry Wang, and
18  Does 10-500                                Date Action filed:  ____/____/2019
    Individuals
19                                             Date set for trial:  ____/____/2019
20

21               Defendants.                   Courtroom: _____

22

23

24

25

26

27

28

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 499 -

## 15. *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER

*PLAINTIFF EX PARTE APPLICATION FOR A*

*TRO AND OSC REGARDING PRELIMANARY INJUNCTION*

1194.   Pursuant to Sections 525, 526, and 527 of the Code of Civil Procedure, Plaintiff

hereby applies *ex parte* for a Temporary Restraining Order and Order to Show Cause why a

Preliminary Injunction should issue enjoining Defendants from competing in healthcare as their

anticompetitive taxi tactics endanger life in healthcare, and should issue enjoining Defendants from

retaining, making any use of, continuing to unjustly enrich themselves, or otherwise disclosing or

distributing confidential and proprietary information belonging to Plaintiff amongst themselves.

1195.   This Application is made on the following grounds:

(1) Plaintiff will suffer irreparable injury, if Defendants are not immediately enjoined

from retaining, and continuing to make any use of or otherwise disclosing or distributing

Plaintiff's confidential and proprietary information without a reasonable royalty allowing

Plaintiff to oversee the operation of his $1,200,000,000,000 trillion-dollar healthcare

opportunity to ensure proper execution, preventing the endangerment of life;

(2) The balance of harms tips sharply in favor of Plaintiff given the nature of this

Complaint and the injuries sustained, and that the information Defendants misappropriated

has otherwise remained confidential; And

(3) there is a high likelihood that Plaintiff will be successful in establishing that

Defendants misappropriated Plaintiff's confidential and proprietary information and in

violation of the following but not limited Intellectual Property California Civil Code § §

3426-3426.11, California Uniform Trade Secret Act California Civil Code § § 3426-

3426.11, Defense of Trade Secrets Act, California Comprehensive Computer Data Access

and Fraud Act ("CDAFA"), California Penal Code § 502 of Corporate Espionage 18

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 500 -

U.S.C. § 1832 (a), (5), (b) The California Invasion of Privacy Act, and non-disclosure, contingent employee Invention Assignment and Confidentiality Agreement and applicable law, and that Defendants' wrongful activities should be enjoined.

(4) Enjoin Defendants from operating in healthcare, and all healthcare related fields as Defendants through the natural course of their anticompetitive taxi tactics to incentivize its Drivers not to drive for the other competitor, canceling on dialysis, cancer and other terminally-ill patient's medical appointments. When this occurs, in particular, a dialysis patients blood toxins can escalate, causing the person to be very ill, and lead to a fatality. In the event a healthcare patient stops breathing, has a stroke, or heart attack, Defendants drivers are not CPR or Basic Life Support certified, much less equipped for such operation, which will have an adverse outcome and place harm on the healthcare patient in the event of such occurrence, thus endangering life in healthcare. Whereas Plaintiff's Rideshare for Healthcare model required CPR and Basic Life Support Certification, and required Drivers to carry a first aid kit in their vehicle which included a CPR mouth piece. For the reasons mentioned herein, and Plaintiff's point to put life first, outweighs any fathomable argument made by Defendants and/or their Legal Counsel.

(5) Plaintiff continues to respectfully make the point that in 1776, the United States Declaration of Independence declared that "all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. Maintaining, these innocent healthcare patients are being harmed when cancelled on, as a result of Defendants aggressive anticompetitive tactics. Thus, infringing on people's right to life. For the reasons mentioned herein, and Plaintiff's point to put life first, outweighs any fathomable argument made by Defendants.

1196.   This Application is being made *ex parte* because impermissible use, disclosure or

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 501 -

distribution of Plaintiff's confidential and proprietary information is occurring and may occur immediately.

1197.   As outlined by Plaintiff in section 16. PREEMPTIVE MOTION TO STRIKE 1: TO PREVENT LOSS OF LIFE, people's lives are infringed on if Defendants are allowed to continue to operate in healthcare.

1198.   This Application is based on the Complaint in this action; the attached Memorandum of Points and Authorities listed in the table of contents; the accompanying Declarations of the Plaintiff in Support of a Temporary Restraining Order; and such other evidence and argument as may be called to the attention of the Court at or before the *ex parte* hearing.

1199.   Pursuant to California Rule of Court 3.1204, notice of this application will be provided to Defendants through a service processor.

1200.   Pursuant to California Rule of Court 3.1202(a), Plaintiff states that he is not aware of any attorney representing Defendants, and further states that Defendants' current contact information is:

- Lyft, Inc.

  185 Berry St #5000, San Francisco, CA 94107

- Uber Technologies, Inc.

  1455 Market St #400, San Francisco, CA 94103

- AH Capital Management, LLC

  DBA Andreessen Horowitz

  2865 Sand Hill Rd #101, Menlo Park, CA 94025

- Better Business Bureaus, Inc.

  DBA BBB

  10399 Old Placerville Road

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 502 -

Sacramento, CA 95827

- The home addresses of Josef Arvin Acebedo, Jerry Wang and Louis Darnell Pritchett are to remain private as they are residents and non-business.

1201. Respectfully submitted and executed on July, 4, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 503 -

## 15A. MEMORANDUM OF POINTS AND AUTHORITIES

## 15B. INTRODUCTION

1202.   Plaintiff has direct evidence from a whistleblower, affirming Uber and Lyft use cash, brand power and other incentive to induce drivers to engage in unlawful misappropriation of proprietary and highly sensitive business information, and corporate secrets from competition that has allowed Defendants to grow at astronomical rates. *Id.* ¶ 1. *Id.*

1203.   Plaintiff has direct testimonial evidence from a Lyft and Uber driver admitting Defendants orchestrated the unlawful conduct contained in this Complaint. In particular, Joe, Louis and Does have signed a written Confidentiality, Non-Disclosure, Non-Compete, Contingent Employment Agreement and other legal Agreements which are still in full effect, confirming their commitment to protect and maintain as confidential – Plaintiff's proprietary, highly sensitive, and secretive business information. *Id.* ¶ 2.

1204.   While Plaintiff and his Wife were under duress and corporate attack, Joe announced in November of 2017, he was resigning from iHug, Plaintiff's Company, and on multiple occasions between December, 2017 to April of 2018, leading up to his exit. Plaintiff believes Joe misled him in order to continue to gather intelligence for Defendants, while exposing such intelligence to Defendants and providing confidential login details to iHug systems. Throughout this time, Joe, Louis and Does colluded in private, at meetings and in person at iHug's office and other locations. On multiple occasions Joe, Louis and Does met with Lyft, and Uber Executives, while "driving" for Defendants' platforms in San Francisco, California with iHug's internal systems loaded on their personal and burner phones, and other devices, to leak highly confidential corporate secrets to Lyft, Uber and Andreessen Executives at will. *Id.* ¶ 3. *Id.*

1205.   Joe, Louis and Does involvement with iHug required them to synchronize their corporate emails on a mobile device, giving them access to internal communication, and other

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 504 -

systems, assigned to them by iHug. After the synchronization, the devices contained thousands of

artifacts (files and folders) belonging to iHug, including but not limited to, iHug's financial,

competitive, and corporate secrets including Plaintiff's $1,200,000,000,000 trillion-dollar healthcare

opportunity. *Id.* ¶ 4. Joe Louis and Does had access to iHug's internal systems from any computer in

the world simply by providing his login credentials. Even after Plaintiff had these credentials

blocked, Joe, Louis and Does continued to obtain other login credentials and system admins login

credentials to misappropriate proprietary information and internal operations. *Id.*

1206.   Such a breach has allowed Defendants to unjustly enrich themselves pre-and-post their

initial public offering. *Id.* ¶ 5.

1207.   Plaintiff continues to see his non-public, proprietary, documented features and

services emerge on Defendants platform. *Id.* ¶ 6.

1208.   In recent events, Defendants hired a highly-experienced healthcare employee from

McKesson, who has unlimited connections in healthcare to accelerate Uber and Lyft's healthcare

growth, whereas they used Plaintiff's corporate secrets to allow such growth. *Id.* ¶ 7. *Id.*

1209.   Where it's believed, Defendants are deploying Plaintiff's corporate secrets, ideas, and

proprietary healthcare models into their existing business, evolving their business, exponentially

growing revenues, unjustly enriching themselves without legal entitlement.

1210.   Left with no other choice, Plaintiff now seeks to prevent Defendants, specifically,

Lyft, Uber, Andreessen, Ben, John, Logan, Joe, Louis, Jerry and Does from any further unauthorized

possession, use, or disclosure of Plaintiff's confidential and proprietary information and unjust

enrichment.

1211.   Plaintiff also seeks to recover the confidential and proprietary information that

Defendants retained, contrary to Joe, Louis, Jerry and Does obligations under the Confidentiality,

Non-Disclosure, Non-Compete, Contingent Employment Agreement and other legal Agreement.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 505 -

Without immediate injunctive relief, healthcare patients, Plaintiff, Plaintiff's Wife, and iHug continue to suffer irreparable harm and permanent damage to his Company. *Id.* ¶ 1 – 7 (emphasis added)

## 15C. FACTUAL BACKGROUND

### SUB-A: Plaintiff and His Company

1212.   iHug is a software provider that empowers business owners with a single point of sale, operation, logistics and tracking, using mobile based applications, headquartered in Sacramento, California.

1213.   iHug offers its software in over 3,000 cities nationwide, offering telehealth symptom checkers, insurance plans, market places, advertisement options and other highly profitable operations. *Id.* ¶ 8

1214.   Plaintiff has invested over a decade of his life in developing and protecting his confidential and proprietary information related to his product and service offerings. *Id.* ¶ 9 *Id.*

1215.   This confidential and proprietary information includes documents outlining Plaintiff's marketing and product plans, current and future financial data and projections, forecasts, customer lists and data, and personnel information. Plaintiff has always taken affirmative steps to protect this information by, among other things, requiring any and all person(s), and/or entities to sign a non-disclosure containing a confidentiality provision (or separate agreement), nondisclosure is paramount. The confidentiality provision (or separate agreement) ensures that Plaintiff and his Company, iHug's proprietary information is not revealed by any person(s), and/or entities who, especially competitors. *Id.* ¶ 10 *Id.*

1216.   All contingent employees, executives, independent contractors and board members must sign confidentiality agreements before engaging with Plaintiff and his Company, iHug. *Id.* ¶ 11 *Id.*

1217.   Beyond the protection afforded by the confidentiality agreement, Plaintiff took further

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 506 -

steps to ensure the security of his proprietary information, such as requiring all visitors to its

corporate headquarters to read and sign a non-disclosure agreement before proceeding past the

reception desk and while on-boarding to drive for iHug; requiring all employees and or independent

advisors and or investors, and others to sign iHug's sign-in sheet, and private documents which

describes in detail each party's obligations regarding conflicts of interest, technology use and

security, and protection of Plaintiff and his Company, iHug's confidential and proprietary

information; Requiring all parties to enable two-step verification for Google Apps (which iHug uses

to host its corporate email and calendar); And limiting access to iHug's storage accounts to only a

select few parties involved at iHug. *Id.* ¶ 12 *Id.*

1218.   Plaintiff also made every physical effort beyond the protection of an originally

manufactured equipment (OEM) trailer door lock, to secure his highly secretive six patent books

relating to his digital Ai healthcare system.

1219.   Plaintiff spent two days welding and constructing a military grade locking system

containing the following steel elements making it nearly impossible for any common criminal to

break into:

- 1" inch stainless steel plated locking system on his trailer door

- 1" inch steel plate on each side of the trailer door

- 6 stainless steel bolts

- 6 self-locking nuts

- LOCTITE® Thread locker

- 1" inch stainless steel latch

- A maximum-security lock, with tough-cut octagonal

  boron-carbide shackle stainless steel.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 507 -

1220.   Pictured below, Plaintiff's custom "military grade" locking system.

Maximum security lock                    1" inch thick steel plating and bolts.



*Id. Ex. A1, Ex. A2., Ex. A3, Ex. A4, Ex. A5, Ex. A6,* ¶¶ 8 – 12 (emphasis added)

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 508 -

**SUB-B: Joe, Louis, Jerry, Nicole and Does Hiring and Confidentiality Agreement**

1221. iHug contracted with and signed contingent employment Agreements with Joe, Louis and Does throughout the year from 2015 to present. All new independent contractors, advisory board members, investors, and contingent employees, signed a confidentiality agreement as a condition of any involvement with iHug and Plaintiff. *Id.* ¶ 13 *Id.*

1222. Pictured on the next two pages, Exhibit A and Exhibit B on the following two pages are the signed contingent employment Agreements by Joe, Louis and Does. Each provision protects Plaintiff's God given rights, in particular, the pursuit of Happiness, allowing him to engage in business to enrich the lives of people without unlawful obstruction:

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 509 -

1

2

3. **Confidential Information.**

(a) **Company Information.** I agree at all times during the term of my Relationship with the Company and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company to the extent necessary to perform my obligations to the Company under the Relationship, or to disclose to any person, firm, corporation or other entity without written authorization of the Board of Directors of the Company, any Confidential Information of the Company which I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Company. I understand that "Confidential Information" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, suppliers, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the Relationship), prices and costs, markets, software, developments, inventions, laboratory notebooks, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, licenses, finances, budgets or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment or created by me during the period of the Relationship, whether or not during working hours. I understand that Confidential Information includes, but is not limited to, information pertaining to any aspect of the Company's business, which is either information not known by actual or potential competitors of the Company or other third parties not under confidentiality obligations to the Company, or is otherwise proprietary information of the Company or its customers or suppliers, whether of a technical nature or otherwise. I further understand that Confidential Information does not include any of the foregoing items which has become publicly and widely known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

(b) **Prior Obligations.** I represent that my performance of all terms of this Agreement as an employee or consultant of the Company has not breached and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me prior or subsequent to the commencement of my Relationship with the Company, and I will not disclose to the Company or use any inventions, confidential or non-public proprietary information or material belonging to any current or former client or employer or any other party. I will not induce the Company to use any inventions, confidential or non-public proprietary information, or material belonging to any current or former client or employer or any other party. I acknowledge and agree that I have listed on Exhibit A all agreements (e.g., non-competition agreements, non-solicitation of customers agreements, non-solicitation of employees agreements, confidentiality agreements, inventions agreements, etc.) with a current or former employer, or any other person or entity, that may restrict my ability to accept employment with the Company or my ability as an employee or consultant to recruit or engage customers or service providers on behalf of the Company, or otherwise relate to or restrict my ability to perform my duties as an employee of the Company or any obligation I may have to the Company.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 510 -

9. **General Provisions.**

    (a) **Governing Law.** The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws.

    (b) **Entire Agreement.** This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by both parties. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.

    (c) **Severability.** If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

    (d) **Successors and Assigns.** This Agreement will be binding upon my heirs, executors, administrators and other legal representatives, and my successors and assigns, and will be for the benefit of the Company, its successors, and its assigns.

    (e) **Survival.** The provisions of this Agreement shall survive the termination of the Relationship and the assignment of this Agreement by the Company to any successor in interest or other assignee.

    (f) **Remedies.** I acknowledge and agree that violation of this Agreement by me may cause the Company irreparable harm, and therefore agree that the Company will be entitled to seek extraordinary relief in court, including but not limited to temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security and in addition to and without prejudice to any other rights or remedies that the Company may have for a breach of this Agreement.

    (g) **ADVICE OF COUNSEL.** I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

*Id. Ex. A, Ex. B.,* ¶¶ 13 – 12 (emphasis added)

**SUB-C: Documents misappropriated and retained by Defendants are Proprietary, Confidential, and Critical to Plaintiff's Future and the success of his Company, iHug.**

1223.   After Joe, Louis and Does' departure, Plaintiff sought assurance that Joe, Louis and Does had complied with their confidentiality obligations to Plaintiff and his Company, iHug. He sent multiple cease and desists, blocked access and ensured all systems were secure from Defendants. *Id.* ¶ 14 *Id.*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.

- 511 -

1224.   Plaintiff launched his new Company, iHug Software, after Defendants' tortious interference and other actions permanently damaged Plaintiff's transportation operation. He was seeking sales executives to assist him with sales. Defendants planted a mole, much like Joe, Louis and Does. Nicole used Lyft and Uber's brand power. *Id.* ¶ 15. *Id.*

1225.   Nicole proclaimed she knew "high-up" Uber and Lyft executives. She also asserted she used to run all background checks on Uber and Lyft drivers for Defendants. This nature to use Lyft and Uber's brand power, was a similar pattern to Joe, Louis and Does before they engaged in unlawful conduct to infiltrate iHug. Based on this single fact, it substantiates Joe, Louis, Jerry, Nicole, and Does were instructed to tell Plaintiff whatever he needed to hear, to get his ideas and corporate secrets.

1226.   As promising as it sounds, Plaintiff avers Nicole was planted by Defendants to use, in order to gather intelligence, using methods and practices that mimicked Joe, Jerry, Louis and Does. She infiltrated Plaintiff's new Company, iHug Software, breaching fiduciary duty, having provided login credentials to Defendants where multiple logins were made from unrecognized devices, a similar pattern to Jerry, Joe, Louis and Does. *Id.* ¶ 16. *Id.*

1227.   The forensic analysis revealed logins were made throughout The United States including but not limited to, cities spanning across San Francisco, California to Washington D.C. to New York City. *Id.* ¶ 17. *Id.*

1228.   Defendants successfully infiltrated iHug, **yet again**, extracting thousands of documents from iHug's internal systems from his new business, including but not limited to, Plaintiff's new patent-pending, revolutionary healthcare vehicle designs, that would provide the world's safest ride through physics.

1229.   Pictured on the next page Exhibit C, and on the pages following Exhibit D, and Exhibit E, are slides from Plaintiff's patent-pending slide deck. This slide deck was misappropriated

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 512 -

by Dan at Uber, and handed off to Lyft Executives.

1230.   The slide decks contained invaluable designs, partnership details and other competitive secrets, that Defendants have since started engaging in, after unlawfully obtaining Plaintiff's knowledge, business plans, corporate trade secrets, corporate secrets, secured non-public particulars, including but not limited to, invention processes, schematics using physics, design, engineering, creativity and vision, research, product plans, technical data, know-how, services, suppliers, in particular, prices and costs, markets, software, developments, formulas, technology, drawings, engineering, hardware configuration information, budgets and other business information that gives Plaintiff and his Company, iHug, a competitive advantage and path to profitability. *Id.* ¶ 18. *Id.*



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 513 -

**World Class Design**

*From a physics, mechanical, practical, operational, engineering and design aspect, iHug's IP will deliver the safest ride in the world.*

1231. The forensic analysis included a review of the Internet browser history, login session details and internet protocol details contained in Nicole's iHug email account. Google-related geolocation services, and products, including but not limited to, Google Apps, and specifically Gmail, that iHug hosts its company email, revealed the multiple logins.

1232. Pictured below are the unauthorized logins. One session reveals a login was made using a non-attributable device, meaning "masked" device details, denying Google to decipher and identify the device and user account, where Google's systems low order bit and labeling system marked it "Unknown." This was during a time Nicole had no involvement at iHug anymore, where she made herself unavailable after meeting with Uber's, Dan Trigub. Yet multiple logins were actively being made, accessing her iHug account. Substantiating Defendants were able to successfully infiltrate yet again.

**Recent activity:**

| Access Type [?]<br>(Browser, mobile, POP3, etc.) | Location (IP address) [?] | Date/Time<br>(Displayed in your time zone) |
|---|---|---|
| Browser (Chrome) Show details | * United States (CA)<br>████████████████c) | 10:15 am (0 minutes ago) |
| Browser (Chrome) Show details | United States (CA)<br>████████████████c) | 1:42 am (8 hours ago) |
| Unknown | United States (CA)<br>████████████████c) | 1:25 am (8 hours ago) |
| Browser (Chrome) Show details | United States (CA)<br>████████████5) | Apr 13 (4 days ago) |
| Unknown | United States (CA)<br>████████████5) | Apr 13 (4 days ago) |

*Id. Ex. C, Ex. D, Ex. E, ¶ ¶ 14 – 18 (emphasis added)*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 514 -

**SUB-D: Documents retained by Defendants are Proprietary, Confidential, and Critical to Plaintiff's Future and the success of his company iHug**

1233.   The documents possessed by Defendants have already caused irreparable damages, including but not limited to, grocery delivery for healthcare, Medicare and Medicaid billing, delivery and other forwarding thinking features, services and products are emerging on Defendants platform, unjustly enriching Defendants without legal entitlement. *Id.* ¶ 19. *Id.*

1234.   Plaintiff asserts as per signed non-disclosure, the following is enforceable:

*Recipient acknowledges that monetary damages may not be a sufficient remedy for damages resulting from the unauthorized disclosure of confidential information and that the Company shall be entitled, without waiving any other rights or remedies, to seek such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction. Id. ¶ 20. Id. In the event, any third-party who has direct or indirect connection with Recipient involved in monetary damages that are as result of continuing to disclose unauthorized confidential information Id. ¶ 21., the Company shall have the full rights and entitlement to seek such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction." and "All confidential information and confidential materials are and shall remain the sole and exclusive property of the Company. Id.*

*By disclosing information to Recipient, the Company does not grant any express or implied right to recipient to or under the Company patents, copyrights, trademarks, or trade secret information. Id. ¶ 22. Id. Any information that's given, disclosed, communicated or otherwise expressed by Recipient that shape, enhance, evolves or otherwise shall remain the sole and exclusive property of the Company." Id. ¶ 23. Id.*

**Marketing and Product Plans**

1235.   iHug's internal flyers, business promotional cards, and other ideas were kept in iHug's

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 515 -

office amongst iHug's team members, advisors, contractors and others who signed non-disclosures. The marketing and product materials, included the following but not limited to, medical appointment transportation, patient discharge services, grocery and shopping services, medicine pick-up and other non-existent services on rideshare platforms, that have since started to emerge on Defendants platform. *Id.* ¶ 24. *Id.*

**Medical Drone Delivery of Prescription and Other Medical Durable Products**

1236.   Plaintiff's vision of a new digital Ai healthcare system, included among other innovations that would sprawl civilization into the future, includes but not limited to, a drop-delivery system, powered by drones.

1237.   In particular, the drone would drop-deliver small prescription bottles, medical tools, products, and other lifesaving health products, that would be delivered to anyone, especially those without transportation, at little, to no cost.

1238.   Whereas Defendants omitted from their SEC S1 Filing and to investors ¶ 25. *Id.* This brilliant and extremely innovative and profitable business plan, as a result of their knowledge that the corporate secret was misappropriated from Plaintiff.

1239.   After Defendants IPO, they have since launched drone delivery services, in particular "Food Services," ¶ 26. *Id.* where Plaintiff alleges Defendants launched drones into a separate market ¶ 27. *Id.* to obfuscate.

1240.   Pictured on the next page atop, Exhibit F, is one of Plaintiff's sub-file systems, not including the stolen hard-drives from his trailer, that included drone patent ideas and other patent drafts

1241.   Pictured on the next page below, Exhibit G, Defendants are continuing to evolve their drone program, which will eventually include healthcare drop-deliveries using Plaintiff's misappropriated corporate secrets. ¶ 28. *Id.*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 516 -

1242.   Plaintiff's sub-file system:



1243.   Defendant's evolving drop service using Plaintiff's corporate secrets:



UBER AIR: Delivering Uber Eats with Drones | Uber Elevate | Uber

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
-517-

1244. Healthcare vehicles, planes, helicopters and other modes of transportation would provide transport to a variety of healthcare patients based on their health condition, in particular as an example, pregnant mothers who can't drive themselves to the hospital when going into labor, who are at least able to climb into the vehicle. ¶ 29. *Id. Id.*

1245. The vehicle would use Ai to determine geolocation, time, distance, medical conditions, biometrics and other healthcare-related data sets, that would put pregnant women and their expected babies, in safe and urgent transport at little to no cost to them. ¶ 30. *Id. Id.*

1246. As shown in Exhibit H, below on the left, is a page from Plaintiff's patent book that was misappropriated be Defendants. It outlines different types of transportation modes.

1247. As shown below in Exhibit I, Defendants Air Transportation vehicle.



Fig. 68



India

## Uber May Be Flying Air Taxis In India Soon

By Staff Reporter - September 7, 2018    👁 569    💬 0

Minister of State for Civil Aviation Jayant Sinha is optimistic about the easier air taxi operation in India in really near future because of the latest drone policy.

On Thursday, he tweeted about his optimism. This tweet came just after his meeting with a delegation from Uber. Uber is planning aerial taxi service in India.

The Minister tweeted, "Met with @Uber Elevate team. India offers an encouraging and responsive regulatory framework to solve the challenge of urban transportation. With our progressive drone policies, we want to see air taxis becoming a reality soon!"

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 518 -

HIGHLY CONFIDENTIAL AND SECRETIVE *Id.* ¶ 31. *Id.*

$25,800,000,000,000 Trillion-Dollar Healthcare Opportunity, in particular, Healthcare.

HIGHLY CONFIDENTIAL AND SECRETIVE *Id.* ¶ 32. *Id.*

$1,200,000,000,000 Trillion-Dollar Healthcare Opportunity, in particular, Transportation.

HIGHLY CONFIDENTIAL AND SECRETIVE *Id.* ¶ 33. *Id.*

**Financial Information**

1248.   Darren, iHug's acting Chief Financial Officer, who was under a non-disclosure, sent

Defendants execution strategies, as well as financial projections that outlined iHug's rapid

growth to over $1,200,000,000 billion-dollar and in excess of $1,200,000,000,000 trillion-

dollars at full scale. ¶ 34. *Id.* It entailed projected income statements, care provider's

costs, marketing, research and development, EBITDA, Cash Flow Statements, Balance

Sheets, Key Balance Sheet Statistics, Working Capital, Income Statement Assumptions,

Total Addressable Market (TAM) – Sacramento, Hospitals, Senior Living Facilities,

Homecare, Dialysis, Urgent Care and other details.

**Customer Lists and Data**

1249.   iHug's customer lists and data were extracted by Joe, Louis, Jerry and Does, from

iHug's internal systems. After the misappropriation, iHug's customers stopped engaging with iHug. –

— *Id. Ex. F, Ex. G, Ex. H, Ex. I,* ¶ ¶ 19 – 34 (emphasis added)

**SUB-E: Defendants Evolved Their Business and Profits With Plaintiff's Intellectual**

**Property, Corporate Secrets, Patent Books**

1250.   Plaintiff managed to retain one trade secret book, out of the many that were stolen

from his trailer by Defendants. Not only were Plaintiff's trade secret books stolen, Defendants

misappropriated his thumb drives, sketches, schematics and other future particulars that have and will

continue to unjustly enrich Defendants without legal entitlement. Such enrichment should be paid to

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 519 -

Plaintiff in reasonable royalty, and other forms allowed by an Honorable Judge.

## ARGUMENT

### SUB-F: Legal Standard for Injunctive Relief

1251.   An injunction may be granted "[w]hen it appears by the Complaint that the commission or continuance of some act during the litigation would produce, waste, or great or irreparable injury, to a party to the action...." Cal. Civ. Proc. Code § 526(a)(2). ¶ 35 "The law is well settled that the decision to grant a preliminary injunction rests within the sound discretion of the trial court." IT Corp. v. County of Imperial, 35 Cal. 3d 63, 69 (Cal. 1983). In exercising that discretion, courts generally consider two related questions in deciding whether to issue an injunction: 1) "are the plaintiffs likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant"; and 2) "is there a reasonable probability that the plaintiffs will prevail on the merits...." Heckmann v. Ahmanson, 168 Cal. App. 3d 119, 125 (1985); accord Hunt v. Superior Court, 21 Cal. 4th 984, 999 (1999). The court must exercise its discretion "in favor of the party most likely to be injured.... ¶ 36 If the denial of an injunction would result in great harm to the plaintiff, and the defendants would suffer little harm if it were granted, then it is an abuse of discretion to fail to grant the preliminary injunction." Robbins v. Superior Court, 38 Cal. 3d 199, 205 (1985) (internal citations omitted). A moving party need only show a reasonable probability of success. Heckmann, 168 Cal. App. 3d at 128. —— Id. ¶ 35 – 36 (emphasis added)

### SUB-G: The Confidentiality Agreement Provides for Injunctive Relief

1252.   By its terms, the Confidentiality Agreement acknowledges the need for injunctive relief See Ex. A., Ex. B. ¶ 37 The Confidentiality Agreement provides that:

> *"in the event of a — breach or threatened breach of this Agreement by Defendants the Company may suffer irreparable harm and will therefore be entitled to extraordinary relief, including injunctive relief to enforce this Agreement." Id.*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 520 -

1253.  As such, Defendants were on notice that injunctive relief would be sought and enforced if Defendants breached or threatened breach, of the Confidentiality Agreement. Moreover, Plaintiff, and his Company, iHug, specifically contracted, and gave consideration for injunctive relief, in the event Defendants breached or threatened to breach the Confidentiality Agreement ¶ 38 when it contracted Defendants. Courts have held that such a provision is sufficient to show irreparable harm and warrant injunctive relief. See, e.g., Martin Marietta Materials, Inc. v. Vulcan Materials Co., 56 A.3d 1072, 1145 (Del. Ch. 2012) ("[P]arties can agree contractually on the existence of requisite elements of a compulsory remedy, such as the existence of irreparable harm in the event of a party's breach, and... such a stipulation is typically sufficient to demonstrate irreparable harm."). ¶ 39 As set forth above, Defendants breached the Confidentiality Agreement by disclosing login credentials to Uber and Lyft, exposing proprietary and confidential information during and after their relationship with the Plaintiff, and his Company, iHug. *Id.*

1254.  Plaintiff, iHug and healthcare patients have suffered and will continue to suffer irreparable damage to life, and cause financial harm as a result of Defendants breach, if Defendants are not enjoined from using or disclosing the information immediately, and Uber and Lyft's participation in healthcare. ¶ 40

1255.  Whereas, Plaintiff argues the very existence of life and the protection of our God given right to life, outweighs any fathomable argument and pleading to the continuation of Uber and Lyft's involvement in healthcare, and continued unjust enrichment, where it's proven through medical, SWOT analysis, and forensic evidence, Defendants endanger lives in healthcare through reckless misconduct, improper licensing and insurance. Monetary damages would not provide adequate relief for healthcare Patients, Plaintiff, his Wife, and iHug because of the nature of this irreparable harm. Whereas Plaintiff maintains, Defendants have improperly executed on his "Rideshare for Healthcare" model. Injunctive relief is therefore necessary and appropriate. *Id.* ¶ 37 –

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 521 -

40 (emphasis added)

**SUB-H: Defendants Possessed, Extracted, and Destroyed Plaintiff's Confidential, and Proprietary Corporate Secrets that Evolved Defendants Business into Profitability**

1256.   The iHug documents and information Joe, Jerry, Louis, Nicole and Does possesses are confidential and proprietary. When determining whether certain information meets the definition of "proprietary" information within the terms of a contract, Courts rely on the terms of the contract itself. *See Ajaxo Inc. v. E\*Trade Group, Inc., 135 Cal. App. 4th 21, 28 (2005)* (relying on the definition of proprietary information provided in the non-disclosure at issue in the case to determine liability.) Defendants had in possession and extracted intelligence, and the vision from Plaintiff's well-guarded and physically locked down Secret Documents and Proprietary Data. ¶ 41 *Id.*

1257.   Plaintiff maintains the following equation, which will explain his reasoning as to the granting of such injunctive relief.

1258.   Each and every corporation is a "collective cybernetic organism," whereas when human intellect is acquired and entered into the corporation through computational machines, the sum of the collective effort produces products, services, and profits. A vision Steve Jobs, Steve Wozniak, Bill Gates, Larry Ellison and others have bestowed upon future generations, Plaintiff being in that future generation. Where any human with capability can input their imaginative thought into a computational machine, and on the other end, a result occurs. ¶ 42 *Id.*

1259.   Whereas, in this Complaint, iHug, Lyft, and Uber were evolving separately in parallel organically, in separate markets, Uber and Lyft in the Taxi Industry, and iHug in Healthcare Transportation, between 2016 to present. ¶ 43. Plaintiff established Uber and Lyft then crossed-lines, penetrating healthcare, while using Plaintiff's intelligence. This allowed Uber and Lyft to evolve their corporations "collective cybernetic organism" organically, while tortiously interfering with iHug's organic growth, that endangers life of healthcare patients, through misconduct, causing irreparable

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 522 -

damages to Plaintiff and his company, iHug. *Id.*

1260.   Joe, Louis, Jerry, Nicole, and Does possessed documents that fit within all categories of proprietary information and intelligence from Plaintiff, all of which are highly sensitive and critical to Plaintiff's future, his Company, iHug's future, and the future for civilization. ¶ 44 *Id.*

1261.   Moreover, any and all documents of Plaintiff, and his Company, iHug, remains confidential through Plaintiff's consistent protection efforts. They should remain protected from any further possession, use, or disclosure by Defendants. *Id.,* ¶ 42 – 44 (emphasis added) *Id.*

### SUB-I: Courts Regularly Grant Injunctive Relief Under These Circumstances

1262.   Courts regularly enjoin Defendants from maintaining, using, disclosing, or otherwise distributing misappropriated confidential and proprietary information, including unjust enrichment, and require that Defendants promptly return the information to the company and pay royalty. See, e.g., W. Directories, Inc. v. Golden Guide Directories, Inc., No. C 09-1625 CW, 2009 U.S. Dist. LEXIS 52023, at *22 (N.D. Cal. June 8, 2009) (enjoining company's founder, who later founded a competing business, from "accessing any database or other electronic file originating from a computer or served owned by [plaintiff]... or accessing any physical records originated from files owned by [plaintiff]," and requiring defendant to return all such business information to plaintiff); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung, No. CV 01-00659 CBM (RCx), 2001 U.S. Dist. LEXIS 3248, at *19-20 (C.D. Cal. Feb. 2, 2001) (enjoining former employees who copied and removed former employer's information before leaving the company from "using, disclosing, or transmitting for any purpose, including the solicitation of business or account transfers, the information contained in the records of [former employer]," and requiring "that all original records and copies and/or other reproductions thereof, in whatever form, be returned to [former employer] immediately"); Courtesy Temp. Serv., Inc. v. Camacho, 222 Cal. App. 3d 1278, 1292 (1990) (enjoining former a employees from using confidential customer lists and related information that

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 523 -

they had misappropriated from former employer); Greenly v. Cooper, 77 Cal. App. 3d 382, 385-86, 395 (1978) (enjoining defendant's former employees from "using or copying certain lists of customers obtained from plaintiff by defendants while employed by plaintiff" and "using or copying certain of plaintiffs business forms and records"); see also ReadyLink Healthcare v. Cotton, 126 Cal. App. 4th 1006, 1010-11 (2005). The relief sought through this Application is reasonable and necessary.

### SUB-J: The Other Requirements for Injunctive Relief Are Met

### 1.     The Balance of Hardships Weighs Decidedly in Plaintiff's Favor

1263.   Plaintiff, his Company iHug, and healthcare patients are being severely and irreparably harmed by Defendants, who are using Plaintiff's plans and improperly operating in healthcare.

1264.   Joe, Louis, Nicole, Jerry and Does actions to communicate directly and/or indirectly with Uber, Andreessen and Lyft, while providing login credentials into iHug's internal systems, was a real threat that harmed Plaintiff, and his Company, iHug. Defendants improperly executed on his plans, causing the endangerment of life in healthcare. Defendants should be enjoined from operating in healthcare, as it endangers life in healthcare, and continues to use, evolve and profit without legal entitlement from Plaintiff's intelligence. Patients in healthcare, Plaintiff, and his Company, iHug, will suffer risk, and severe and irreparable harm. ¶ 45 *Id.*

1265.   In contrast, any risk of harm that may be suffered by Defendants from issuance of an injunction will be extremely remote and modest, and even then, entirely of Defendants own doing. It is well established in balancing the relative hardships that the Court must ignore any harm that a Defendant has brought on themselves by their unlawful conduct. Morgan v. Veach, 59 Cal. App. 2d

1266.   Here, Defendants have no legitimate right to possess, use, or disclose Plaintiff's and

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 524 -

iHug's confidential and proprietary information.

1267. Here, Defendants have no legitimate right to continue to evolve unjustly enriching themselves, without reasonable royalty payment to Plaintiff.

1268. Moreover, Defendants are fully aware that this type of breach of the Confidentiality Agreement would necessitate immediate injunctive relief, see Exhibit J, Lyft Sues Former Employee for "Breach of Written Contract, -- Confidentiality Agreement, and Breach of Fiduciary Duty" ¶ 46 See exhibit on the next page. *Id*

1269. Pictured on the next page and proceeding page, Exhibit J shows a complaint filed by Latham & Watkins, LLC, based in San Francisco, California at 505 Montgomery Street, Suite 2000, with the Superior Court of California County of San Francisco, November 5, 2014 filed by the Clerk of the Court Mary Moran, Deputy Clerk, outlining the same allegations made herein against Defendants, Defendants claim against a former employer, substantiating Defendants have knowledge of their actions.

///

///

///

///

///

///

///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 525 -

1 | **LATHAM & WATKINS LLP**
2 | James K. Lynch, Bar No. 178600
   | 505 Montgomery Street, Suite 2000
3 | San Francisco, CA 94111-6538
   | (415) 391-0600 / (415) 395-8095 Fax
4 | *jim.lynch@lw.com*
5 | Jennifer L. Barry, Bar No. 228066
   | 12670 High Bluff Drive
6 | San Diego, CA 92130
   | (858) 523-5400 / (858) 523-5450 Fax
7 | *jennifer.barry@lw.com*
8 | John M. Pierce, Bar No. 250443
   | 355 South Grand Avenue
9 | Los Angeles, CA 90071-1560
   | (213) 485-1234 / (213) 891-8763 Fax
10 | *john.pierce@lw.com*
11 | Attorneys for Plaintiff
    | LYFT, INC.

**F I L E D**

Superior Court of California
County of San Francisco

**NOV 05 2014**

**CLERK OF THE COURT**
BY: _Mary Ann Moran_
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

# CGC-14-542554

| | |
|---|---|
| LYFT, INC., | CASE NO. |
| Plaintiff, | |
| v. | **COMPLAINT FOR:** |
| TRAVIS VANDERZANDEN and DOES 1-10, | **(1) BREACH OF WRITTEN CONTRACT -- CONFIDENTIALITY AGREEMENT; and** |
| Defendants. | **(2) BREACH OF FIDUCIARY DUTY** |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 526 -

14   6.    For a preliminary and permanent injunction enjoining VanderZanden from any
15   further breaches of fiduciary duties;

16   7.    For expedited discovery to allow Lyft to ascertain what confidential and
17   proprietary information VanderZanden has in his possession;

18   8.    For damages in an amount to be determined at trial, including: actual damages,
19   compensatory damages, incidental damages, nominal damages and exemplary damages;

20   9.    For an award of lost profits, VanderZanden's ill-gotten gains or profits,
21   disgorgement, restitution, and/or damages to be determined at trial;

22   10.   For prejudgment interest; and

23   11.   For such other relief as the Court may deem just and proper.

24   ///
25   ///
26   ///
27   ///
28   ///

LATHAM∙WATKINS⁰ᴾ
ATTORNEYS AT LAW
SAN FRANCISCO
24

CONFIDENTIALITY AGREEMENT AND
COMPLAINT FOR BREACH OF
BREACH OF FIDUCIARY DUTY

1   Dated: November 5, 2014.          LATHAM & WATKINS LLP
2                                     James K. Lynch
                                      Jennifer L. Barry
3                                     John M/Pierce

4                               By:
5                                     James K. Lynch
                                      Attorneys for Plaintiff
6                                     Lyft, Inc.
7
8

1270.   To further and respectfully lay the foundation for injunctive relief, Plaintiff asserts as a

result of Defendants knowledge of their unlawful conduct, Defendants preemptively ordered their

legal counsel to write disclaimers in their SEC S1 Filing, in anticipation of this Complaint, stating:

*If we are unable to protect our intellectual property, or if third parties are successful in*

*claiming that we are misappropriating the intellectual property of others, we may incur*

*significant expense and our business may be adversely affected.* ¶ 47

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 527 -

**Further disclaiming:** *Companies in the Internet and technology industries, and other patent and trademark holders, including [* "*non-practicing entities,* " ¶ 48 (iHug's halted operations)] *seeking to profit from royalties in connection with grants of licenses or seeking to obtain injunctions,* ¶ 49 *own large numbers of patents, copyrights, trademarks, and trade secrets and frequently enter into litigation based on allegations of infringement or other violations of intellectual property rights. We have and may in the future continue to receive notices that claim we have misappropriated, misused, or infringed upon other parties' intellectual property rights.* ¶ 50 *Furthermore, from time to time we may introduce or acquire new products, including in areas in which we historically have not operated, which could increase our exposure to patent and other intellectual property claims. In addition, we have been sued, and we may in the future be sued, for allegations of intellectual property infringement or threats of trade secret misappropriation. Id.*

**Further disclaiming:** *"For example, in February 2017, Waymo filed a lawsuit against us alleging, among other things, theft of trade secrets and patent infringement arising from our acquisition of Ottomotto LLC. In February 2018, we entered into a settlement agreement with Waymo."*

*Id. Ex. J, Ex. K* ¶ ¶ 45 – 50 (emphasis added)

2.   **Plaintiff Has a Reasonable Probability of Prevailing on the Merits**

1271.   Defendants have no basis for claiming any harm. Plaintiff and his Company, iHug have a Reasonable Probability of Prevailing on the Merits. If Defendant's wrongful actions are not enjoined, Defendants will continue to benefit from their wrongdoing, continuing to unfairly compete, using Plaintiff's competitive advantages against him, suppressing competition, that causes the reckless endangerment of life in healthcare and evolve their businesses using Plaintiff's intelligence. "No one can take advantage of his their own wrong." Civil Code § 3517. Because Plaintiff has

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 528 -

established a reasonable probability that he will prevail on each of the claims alleged in the

Complaint, Defendants wrongful actions should immediately be enjoined.

### 3. Healthcare Patients, Plaintiff, and iHug Will Suffer Irreparable Harm if an Injunction Is Not Issued.

1272.   Defendants used Plaintiff's corporate secrets to evolve their businesses. The unlawful

actions taken by Defendants, fundamentally transformed their businesses organically, which has

allowed the evolution of new ideas, business models, and a clear path to profitability.

1273.   Defendants continue to threaten to cause, and has indisputably caused, irreparable

harm to Plaintiff, and his Company, iHug.

## CONCLUSION

1274.   Notwithstanding Plaintiff's repeated actions to protect his highly secret proprietary

information and plausibly, feasible and viable futuristic digital Ai healthcare system is evident.

1275.   Defendants conduct creates the very strong inference Defendants are still unjustly

enriching themselves while attempting to deport Plaintiff's Wife and wrongfully imprison Plaintiff.

1276.   The unlawful conduct and vile actions taken against Plaintiff and his Wife, who nearly

committed suicide are grounds to respectfully request such injunction and future injunctions.

1277.   Respectfully submitted and executed on July, 4, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 529 -

## 16. PREEMPTIVE MOTION TO STRIKE 1: TO PREVENT LOSS OF LIFE

1278.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleadings to dismiss this Complaint, move to arbitration, make private, motion to conceal, and redact any part of this Complaint, and move to strike subpoena requests by Plaintiff.

1279.   Plaintiff argues that surface evidence substantiates allegations in all proceeding paragraphs of this Complaint, and justifiable should spark an investigation by The United States Government.

1280.   To establish a foundation to grant Plaintiffs move for the proceeding preemptive motion to strikes, he proclaims, no state, government, and much less a corporation, and/or individual, shall deprive any person of their God given right to life, and liberty, *see 14th Amendment | U.S. Constitution.*

1281.   Once envisioned by Thomas Jefferson and his fellow congressmen, who placed into law *the Declaration of Independence.* One line strikes a chord with the Plaintiff, and it is at the heart of the Declaration of Independence: "*When a long train of abuses and usurpations, pursuing invariably the same object evinces a design to reduce them under absolute despotism, it is their right, it is their duty, to throw off such government, and to provide new guards for their future security.*"

1282.   Plaintiff contends Defendants have much less power than Government, and by way of Defendants inherent culture, Defendants are actively infringing on American's God given right to life, liberty, and privacy.

1283.   Defendants infringements on our God given right to life, liberty and privacy, lays the foundation to grant all proceeding preemptive motions to strike.

1284.   Plaintiff is fighting for himself, his Wife, iHug, *and in spirit*, innocent healthcare patients, wheelchair bound and disabled Americans, senior citizens, drivers, entrepreneurs, the United States of America and our God given right to life, and liberty.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 530 -

## 1. INFRINGING ON OUR GOD GIVEN RIGHT TO LIFE:

1285.   Relationship, Circumstantial, Financial, Hemodialysis Adherence Measures, Medical Analysis, and Forensic evidence establishes, the inherent and anticompetitive taxi practices Defendants engage in, while in the heat of competing, (incentivizing Drivers not to drive for competition,) and pay Drivers $5 to cancel on rides, endanger lives of terminally-ill patients in healthcare, in particular dialysis patients, **creating poor adherence to hemodialysis treatments**, thus increasing toxin levels of innocent patients' blood streams, **which can lead to death.**

1286.   While Plaintiff respectfully executed on his $1,200,000,000,000 trillion-dollar healthcare opportunity that was gifted to him from God, Defendants maliciously and tortiously interfered, in particular, sabotaging iHug's Drivers so they would cancel on and make themselves unavailable for iHug patients. **These inherent and anticompetitive taxi practices endanger innocent lives in healthcare.** Pictured below on the left, Monica a driver who loved iHug, and transported terminally-ill patients, suddenly kept cancelling and making herself unavailable, after Uber, Lyft, Louis, Joe and Does, manipulated her. Pictured below on the right, Louis and Monica.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 531 -

1287.   Pictured below, as a result of the anticompetitive taxi tactics, slander, and incentive from Defendants, Drivers stop responding to patient requests for medical transportation.

1288.   Plaintiff had no option but to drive the patients himself, in particular, Vivian, who nearly missed her appointment as a result of Defendants actions. She's a dialysis patient who needs to attend her blood-transfusion appointments three times a week, **in order to stay alive**.

1289.   Even more vile, Defendants attempted to deprive Plaintiff of his vehicle, to ensure Vivian and other patients would miss their life-saving appointments. Where, months later, Defendants successfully stole Plaintiff's vehicle.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 532 -

1290.   Even more dangerous, a leaked, internal email from an Uber employee, who pled for stringent safety measures, was ignored for weeks by Uber Executives, consequently resulted in the death of a human life, **when it could have been prevented**.



**Uber Got Off the Hook for Killing a Pedestrian with its Self-Driving Car**

By Angie Schmitt  Mar 8, 2019  💬 48

1291.   In an interview with Lyft Co-Founder, John, he was asked about his own self-driving vehicle program, in light of the recent death, caused by Uber's self-driving vehicle. John showed little remorse for death of a human life, and stated, "We need zoom out and understand why companies are doing this," continuing to excuse the reckless behavior and death, using the general death rate of accidents in the United States, changing the subject, making it about Lyft and Uber. **The interviewers paused in confusion of his answer.**




---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.

1292.   Whereas in this Complaint, Plaintiff and his Wife experienced, witnessed, and documented the indisputable evidence of the wrongdoing and damages caused by Defendants.

1293.   Plaintiff believes there has to be harsh penalties to control the misconduct as described herein, to include but not limited to, no regard for the law, and people's safety, which consequently resulted in the death of a human life, and will continue to endanger American lives. Plaintiff argues these are innocent healthcare patients who are in their most vulnerable state in life. Some are wheelchair-bound and disabled, who are being deprived of accessibility in transportation. **No person, and/or corporation has the right to infringe on our God-given right to life.**

1294.   Plaintiff maintains, that any and all reasoning, arguments, case law, and other "tools of law" Defendants' Legal Counsel may utilize, as they are more conditioned than Plaintiff in Law, in order to defend against Plaintiffs' prosecution, is irrefutably outweighed by the fabric of the United States of America, and our God given right to life, and freedom.

1295.   As established in the Declaration of Independence, written and signed by our Founding Fathers, who believed whether by innate character, or the oath an Honorable Judge takes, to defend our inalienable rights provided under the Declaration of Independence, Local Laws, and State Laws, or the weight of case law, Plaintiff prays that the Honorable Judge who will preside over this Complaint will grant his motions to preemptively strike Defendants motion to dismiss, in order to shield innocent lives in healthcare from the Defendants.

## 2.  INFRINGING ON OUR RIGHT TO PRIVACY:

1296.   As proven in a case, *GONZALES v. UBER TECHNOLOGIES, INC, Case No. 17-cv-02264JSC*, and by an investigation conducted by New York's Attorney General, Eric Schneiderman, Defendants settled for unlawfully using their Hell Programs. Uber Forensic Investigator, Ward Spangenberg, **stated under penalty of perjury in a declaration, "Uber's lack of security regarding its customer data was resulting in Uber employees being able to track high profile**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 534 -

politicians, celebrities, and even personal acquaintances of Uber employees, including ex-boyfriends/girlfriends, and ex-spouses."

1297.   These types of corporate behaviors, in particular, the use of Programs, infringe on our right to privacy, which is protected by statutory law.

**3. INFRINGING ON OUR RIGHT TO FREEDOM:** Defendants' ultimate goal for their corporations, involves Americans giving up their vehicle, and use Uber or Lyft's apps. As Lyft challenges residents to give up their vehicle and use its platform, Plaintiff will substantiate through direct and circumstantial evidence, Defendants use, Hell Programs to track down his Wife to get to him. Plaintiff avers, after Americans give up their means of transportation, they give up parts of their "freedom and independence," while exposing their privacy to Uber and Lyft's Hell Programs.

1298.   Plaintiff asserts, the right to privacy refers to the concept that one's personal information is protected from private and public scrutiny.

1299.   Where, Supreme Court Justice Louis Brandeis called it "the right to be left alone." While not explicitly stated in The United States Constitution, some amendments provide some protections. The right to privacy most often is protected by statutory law. For example, the Health Information Portability and Accountability Act (HIPAA) protects a person's health information, and the Federal Trade Commission (FTC) enforces the right to privacy.

1300.   Whereas in this Complaint, the preponderance of evidence establishes Defendants violate FTC regulations. Plaintiff avers, this leads to higher security risks, theorizing, that in the event any local, state or Government official who downloads and uses the Uber or Lyft app, it will expose them to Hell Programs invading all privacy, at will by Defendants. **This may constitute as a breach of National Security**.

1301.   **This calls for swift regulation by the United States Government, separate from this Complaint, prohibiting such behavior.**

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 535 -

1302. Plaintiff argues, that any and all reasoning, arguments, case law, and other "tools of law" Defendants' Legal Counsels may utilize, as they are more conditioned than Plaintiff in Law, in order to defend against Plaintiffs' prosecution, is irrefutably outweighed by the fabric of the United States of America, and our God given right to life, and freedom. As established in the Declaration of Independence, written by our Founding Fathers, who believed whether by innate character, or the oath an Honorable Judge takes, to defend our inalienable rights provided under the Declaration of Independence, Local Laws, and State Laws, or the weight of case law, Plaintiff prays that the Honorable Judge who will preside over this Complaint will serve justice, fairly, swiftly and steadily.

1303. For all of the foregoing reasons, the Plaintiff respectfully requests that the Court issue an Order granting his motion to strike Defendants pleading to dismiss.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 536 -

## 17. PREEMPTIVE MOTION TO STRIKE 2: TO PREVENT LOSS OF LIFE

1304.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleadings to dismiss this Complaint. Plaintiff expects it will be argued by the Defendants Legal Counsel, that his negotiation and settlement process was unreasonable, claiming it as unfair. Plaintiff argues, it has become customary for Defendants Legal Counsel to motion complaints for dismissal without concern. The allegations Plaintiff seeks to make part of the record herein, were caused by Defendants egregious and inexcusable actions, which have inflicted irreparable damages on himself, his company, iHug, and more seriously, his Wife, who nearly committed suicide as a result of the Defendants incendiary attacks. Plaintiff's Wife is an Australian Native, YouTube Star and Social Media Influencer, "Awesome Alanna" with 26,000,000 million active views and over 100,000 fans whose life is ruined as pictured below, causing her near death harm.

   

Evidence damages 1: https://www.dropbox.com/s/cqprkh6llcxma9i/enoughisenough.mov?dl=0

Evidence damages 2: https://www.dropbox.com/s/n6cl5od3wcf39fa/enough.mov?dl=0

1305.   Awesome Alanna was hired by Disney to promote the Avengers, she was funny, charismatic, energetic, innocent, and a huge story teller where millions of fans view her videos.

  

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 537 -





1306.   The negotiations and settlement process established by the Plaintiff was firm, yet

lawful and fair, despite the incendiary damages that were inflicted on his Wife, and the infringement

on his pursuit of happiness, and all other violations against innocent healthcare patients, wheelchair-

bound and disabled Americans as stated herein.

1307.   Each and every allegation that gave rise to this Complaint is substantive, verifiable,

factual with reference to case law, and supported by direct testimonial and circumstantial evidence

established without a formal discovery process, in which Plaintiff will engage in.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 538 -

## 1. INFRINGEMENT ON OUR PURSUIT OF HAPPINESS – DECLARATION OF INDEPENDENCE:

1308.   In particular, Plaintiff maintains, his very purpose in life is supported by the Declaration of Independence, in particular: "*the necessity of pursuing happiness [is] the foundation of liberty. As therefore the highest perfection of intellectual nature lies in a careful and constant pursuit of true and solid happiness; so, the care of ourselves, that we mistake not imaginary for real happiness, is the necessary foundation of our liberty.*"

1309.   One of Plaintiff's greatest freedoms in life, is his pursuit of happiness.

1310.   As an American who was born into poverty, and deprived of a formal education at a young age, Plaintiff exceled at only one thing, empowering and fighting for others, which requires no education.

1311.   Rather, it only requires the will to help others, while selflessly contributing to their success, and wanting safety for those who can't protect themselves.

1312.   Plaintiff is representing himself, his Wife and others who are similarly situated in this Complaint, and *in spirit*, he is representing innocent healthcare patients who are in their most vulnerable state, wheelchair bound and disabled Americans who need wheelchair accessibility, small businesses, startups, entrepreneurs, innovators, senior citizens, drivers and the United States of America.

1313.   After the Plaintiff studied the Defendants recent growth in healthcare using his misappropriated $1,200,000,000,000 trillion-dollar healthcare opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars, Plaintiff realized the Defendants failed to execute properly, endangering lives, medically injuring innocent dialysis, cancer and other healthcare patients, on a daily basis through erratic anticompetitive tactics, and a total disregard for the law.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 539 -

1314.   By disregarding the law, Defendants have violated the Consumer Protection Act ("CPA"), and the Federal Trade Commission Act ("FTCA") Anticompetitive Practices, which is increasing mortality rates, and shortened life expectancy of terminally-ill healthcare patients, **this is completely un-American**.

1315.   A majority of the allegation made in all proceeding paragraphs of this Complaint is serious, and factually argued. Defendants must understand the gravity of their willful actions.

1316.   The $1,200,000,000,000 trillion-dollar opportunity, is part of his grand plan that was gifted to him from God, a fully digital and Ai healthcare system, to selflessly benefit the people of the world, not corporate America.

1317.   Plaintiff was in his "pursuit of happiness" to plan out how to empower every human on earth to access healthcare, instantly at low to no cost through the power of software and technology.

1318.   Plaintiff affirms the Defendants actions are made purely based on greed, power, hunger, control, and desire to dominate people's lives, a selfish, greedy and un-American desire. Plaintiff was not unreasonable in his request to settle this Complaint within 15 days. It was fair, controlled, concise and presented in a well-articulated manner.

1319.   Lastly, Plaintiff has every justification to set a reasonable 15-day settlement timeframe, as the Defendants, Joe, Louis and Jerry are running from settlement demands, and the court system to settle and face their wrongdoing, in particular, Joe created a fake accent and refused to be served.

1320.   Louis has also been instructed by Defendants Legal Counsel not to answer Plaintiff, and all other Defendants are capable of responding and negotiating a settlement.

1321.   Plaintiff maintains, that any and all reasoning, arguments, case law, and other "tools of law" Defendants' Legal Counsel may utilize, as they are more conditioned than Plaintiff in Law, in

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 540 -

order to defend against Plaintiffs' prosecution, is irrefutably outweighed by the fabric of the United States of America, and our God given right to life, and freedom.

1322.   As established in the Declaration of Independence, written and signed by our Founding Fathers, who believed whether by innate character, or the oath an Honorable Judge takes, to defend our inalienable rights provided under the Declaration of Independence, Local Laws, and State Laws, or the weight of case law, Plaintiff prays that the Honorable Judge who will preside over this Complaint will grant his motions to preemptively strike Defendants motion to dismiss, in order to shield innocent lives in healthcare from the Defendants, stop and mitigate damages to his Wife, stop and mitigate damages to his Life, prevent continued unjust enrichment that's damaging iHug, and free his guaranteed right to "life, liberty and the pursuit of happiness," as established by the Declaration of Independence.

1323.   Thus, enjoining Defendants unlawful infringement on his inalienable right to pursue happiness, protected by the Declaration of Independence, will allow Plaintiff to finally re-channel his energy and intelligence to build on iHug, a God given vision, without having to defend against the unlawful tyranny of the Defendants.

1324.   For all of the foregoing reasons, the Plaintiff respectfully request that the Court issue an Order granting his motion to strike Defendants pleading to dismiss.

///

///

///

///

///

///

///

---

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
-541 -

## 18. PREEMPTIVE MOTION TO STRIKE 3:

## MOTION TO STRIKE – DAMAGE RIGHTS

1325.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to motion to strike Plaintiff, and his Wife's right to damages.

1326.   Plaintiff and his Wife lived through every moment of the assault on them by Defendants. At one point, Plaintiff and his Wife argued to conclusion, they were "whistleblowers," and under attack. She began fearing for their lives, having multiple breakdowns. Plaintiff reassured her, America will provide "liberty and justice for all." He states, he believes in and trusts every Honorable Judge who has the power to serve justice.

1327.   Plaintiff avers each and every allegation is genuine and relevant to a timeline of events that led up to Plaintiff's Wife nearly committing suicide.

1328.   Plaintiff argues scientific, human instincts, and forensic analysis establishes, we all have a will to live. The will to live is an instinctual drive for self-preservation, this is almost always coupled with expectations for **future improvement in one's state in life**.

1329.   The timelines exhibited in this Complaint were outlined by Plaintiff's Wife, as she lived through every premeditated attack. The Plaintiff and his Wife are deeply in love, and only spent one day apart within a two-year time period since marrying. Plaintiff establishes:

1.   The thought of the Plaintiff being wrongfully imprisoned for being gifted a healthcare opportunity by God, to selflessly improve and safe lives;

2.   The thought of healthcare patients not being able to book a safe lifesaving trip to their medical appointments as a result of iHug ceasing to exist;

3.   The thought of Plaintiff losing years of his life he invested and dedicated to the people;

4.   The thought of her being deported back to Australia, losing her husband, the Plaintiff;

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 542 -

5. The thought of her being homeless and having no transportation; and

6. The thought of her having no future with the Plaintiff, were factual events, which are substantiated throughout this Complaint, orchestrated by the Defendants. The attacks on Plaintiff and his Wife were so malicious, she wanted to take her own life from the pain and suffering, and induced understanding there would be **no future improvement in her state in life**.

1330.  Based on fact, witnesses, testimonial, direct and circumstantial evidence and human instinct, it's established the Plaintiff's Wife nearly committed suicide as a result of the Defendants willful and egregious actions. The very nature of this Complaint stems from actions that were unprovoked, unconscionable, and outrageous. Their lives have been destroyed at the hands of the Defendants. Plaintiff vehemently argues without his wife, he would have had the same thought. The actions taken against Plaintiff and his Wife are un-American, and punishable.

1331.  For all of the foregoing reasons and aforementioned arguments, case and points and substantial evidence exhibited throughout all paragraphs of this Complaint, Plaintiff asserts all facts weigh in his favor, therefore the Plaintiff respectfully requests that the Court issue an Order granting his motion to strike Defendants pleading to motion to strike Plaintiff and his Wife's rights to seek the following but not limited to:

1. treble damages

2. punitive damages

3. substantial compensatory damages

4. unjust enrichment and actual damages

5. royalties in perpetuity

6. investor damages

7. wage damages; and

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 543 -

8.   injunctive relief, in order to remedy all wrongdoing, compensate for damages, and prevent death in healthcare.

1332.   Pictured below, Plaintiff's Wife, who's locked herself in her bathroom wanting to commit suicide, breaks down again as a result of Defendants actions and incendiary damages. She might be deported as a result of Defendants coordinated attacks to harm Plaintiff, and halt iHug. She grips her dress for dear life, as a result of the severe pain she's enduring.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 544 -

## 19. PREEMPTIVE MOTION TO STRIKE 4: PROTECTING DRIVERS

1333.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleadings to dismiss this Complaint. Plaintiff argues Defendants use brand power, cash, and droves of attorneys to hide behind constructive trust, established with Drivers, by tricking them to agree to their "Terms of Service," holding Defendants harmless from legal liability, while Defendants control drivers to commit unlawful acts.

1334.   It's presumed the Defendants will exercise its constructive trust with its Drivers who are in a "business relationship," to request dismissal of this Complaint, based on their "clickwrap" Terms of Service Agreements with its Drivers.

1335.   In a case *No. 16-2109 (1st Cir. 2019) Bekele–vs–Lyft Inc.,* Lyft motions the court to dismiss the case, arguing the Driver agreed to Lyft's "clickwrap" Terms of Service Agreement.

### 1.  USING, TRICKING AND EXPLOITING GIG DRIVERS:

1336.   In particular, Plaintiff further argues an offer was never made in clear plain text to the Driver. The Drivers instantly click on the "clickwrap" Terms of Service Agreement without consideration and proper competence and capacity of the law, in order to understand the Terms of Service, making the agreement invalid under California Code, Civil Code – CIV § 1670.5. In more recent events, Drivers were tricked by Defendants to "click on text," which forced them to agree to fight against the proposed law in California, AB 5, that would give Drivers more rights and better treatment, this would upend Defendants business models, giving them motive to trick Drivers.

1337.   It's further established, Defendants trick drivers to hold Defendants harmless in *Case No. CJC-19-005032, involving the following but not limited to:*

> 1.  *LaBorde v. Lyft, Inc., Superior Court of California, County of Los Angeles, Case No. BC707667*
>
> 2.  *Seifu, et al., v. Lyft, Inc., Superior Court of California, County of Los Angeles,*

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 545 -

   *i.   Case No. BC712959*

3.   *Turrieta v. Lyft, Inc., Superior Court of California, County of Los Angeles, Case No. BC714153*

4.   *Talbot, et al. v. Lyft, Inc., Superior Court of California, County of San Francisco, Case No. CGC-18-566392*

5.   *Olson, et al. v. Lyft, Inc., Superior Court of California, County of San Francisco, Case No. CGC-18-566788.*

1338.   Defendants use misleading user interfaces and fonts to trick Drivers to agree to terms without understanding each provision. Wherein the aforementioned cases, the terms of service were not available. Based on arguments made by Plaintiff, Defendants are prohibited from exercising the constructed trust it unlawfully enforced upon its Drivers through trickery, allowing Defendants to exercise all provisions in the "clickwrap" Terms of Service Agreement, including but not limited to, Representations and Warranties, Restricted Activities, Intellectual Property, Disclaimers, Indemnity, and Limitation of Liability.

1339.   Thus, Plaintiff preemptively motions the court to strike down Defendants motion to dismiss, under the premise Drivers actions are orchestrated by Defendants under constructive trust, who have "common motive to collude," inexcusably violating the following but not limited to: California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502 Consumer Protection Act ("CPA"), and the Federal Trade Commission Act ("FTCA")

1340.   Anticompetitive Practices that has led to the increase of mortality rates, and shortened life expectancy of terminally-ill dialysis, cancer and other ill patients in healthcare. Defendants will continue to deprive its Drivers of their rights to hold Defendants accountable for its manipulation and trickery inducing Drivers who are under financial duress to commit unlawful activities as proven in all proceeding paragraphs of this Complaint.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 546 -

## 20. PREEMPTIVE MOTION TO STRIKE 5: TO FREE DRIVERS

1341.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleadings to dismiss this Complaint. Plaintiff asserts, the Defendants are using constructive trust with its Drivers.

1342.   Plaintiff possesses evidence that Defendants instruct Drivers, establishing Employer/Employee relationship, see *Dynamex Operations W., Inc. v. Superior Court, 4 Cal. 5th 903, 916, 416 P.3d 1, 7 (2018).*

1343.   The California Supreme Court's recent Dynamex test holds that a hiring entity can prove that a worker is not an employee only if it meets three conditions:

"(A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact;

(B) that the worker performs work that is outside the usual course of the hiring entity's business; and

(C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." Dynamex, 4 Cal. 5th at 916–17.

1344.   Defendants will be unable to prove any of these three requirements:

1. Its Drivers are not free from direction and control;

2. Defendants Drivers are integrally involved with Defendants operations and was not separate;

3. and the Drivers were not engaged in an independently established trade.

1345.   In short, Plaintiff has established as a matter of law based on undisputed evidence that Defendants Drivers are employees under the controlling Dynamex standard.

1346.   Whereas under a handful of legal theories, courts have held employers liable for injuries their employees inflicted on coworkers, customers, or total strangers.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 547 -

1347.   Defendants might claim its Drivers are independent contractors, holding Defendants harmless, but under controlling California law, its Drivers could not have been appropriately classified as an independent contractor, and therefore an employer employee and business relationship exists.

1348.   Whereas under a legal doctrine sometimes referred to as "respondeat superior" (Latin for "Let the superior answer"), an employer is legally responsible for the actions of its employees.

## 1.   SUPRESSING DRIVERS FREEDOM OF SPEECH AND RIGHT TO PEACEFULLY ASSEMBLE:

1349.   In particular, Defendants are infringing on Drivers rights to freedom of speech, supported by the United States Constitution.

1350.   The First Amendment (Amendment I) to the United States Constitution, prevents the infringement on freedom of the press, and the right to peaceably assemble, adopted on December 15, 1791, as one of the ten amendments that constitute the Bill of Rights.

1351.   Plaintiff avers Defendants use constructive trust as one means, and in another means, in particular, "secret," Facebook groups to act as a firewall, to inhibit or prevent Drivers from rallying against Defendants, while at the same time, the Drivers were tricked into arbitration in the event an action is taken.

1352.   When Drivers start to rally in "secret," Facebook groups, the "Admins," including but limited to Louis, Jennifer Herring ("Jennifer"), Juan Orjeda Jr. ("Juan") and others, they click on the Drivers' profile, comment, video, etc., and hide, delete, block, remove and suppress their serious concern over shorting Drivers on pay, and other Driver rights.

///

///

///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 548 -

## 2. CONTROLLING THE OUTCOME OF THE AB5 AND SIMILAR BILLS THROUGH TRICKERY AND ARBITRATION:

1353.   In particular, to further establish a basis for granting Plaintiffs' preemptive motion to strike, in current events, Plaintiff argues Drivers are further being manipulated by Defendants through psychological and financial tactics to suppress the AB5 bill. The California bill, known as AB5, expands a groundbreaking California Supreme Court decision last year known as *Dynamex*.

1354.   This is damaging to Defendants potentially costing their operations hundreds of millions of dollars yearly. Defendants are intentionally taking approximately \$80 – \$92 from Drivers, paying them approximately \$15 -\$20.

1355.   Defendants want to demonstrate to Drivers how much they will make as an "Employee," on a maximum "\$15 per hour wage." This forces Drivers to vote against the AB5 bill, substantiating Defendants control Drivers through manipulation and law, so that Drivers remain independent under constructive trust, holding Defendants harmless, removing any Whistleblower rights as an "employee."

///
///
///
///
///
///
///
///
///
///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 549 -

1356.   Plaintiff asserts the idea of controlling Drivers through arbitration in order to continue to operate through misconduct is willful. It silences the voice Drivers from peacefully assembling to correct a corporation's wrongdoing, exploitation and engagement to create a "sweat worker," gig-market. Pictured below on the left and right, an Uber driver receives only $15.32, while Uber took $92.80 to stubbornly prove a point, in order to control Drivers actions.



1357.   Pictured on the next page below, you see the Plaintiff in his element. He saw Drivers were also lured into the insurance scheme, and started fighting for them. Arguing with Louis that the Drivers are being used and abused, and we need to fix the issues in the industry, in particular the insurance exposures.

1358.   After Plaintiff started to see the exposures in the insurance, he started investigating, and realized Defendants had hundreds of complaints from Drivers regarding high $2,500 deductibles and Drivers who were not covered. Even more outrageous, as Plaintiff was psychoanalyzing Uber, and performed a SWOT analysis, forensic evidence establishes Uber is misappropriating $0.05, $1.00, $10, $25, $50, and in this Complaint, $89.75, and even $100's of dollars on a large scale, amounting to hundreds of millions of dollars from Drivers to accelerate the autonomous program, killing the very jobs that helped build Uber, defrauding Drivers, removing all driver involvement.

1359.   Plaintiff argues this is why iHug's Rideshare Software is such an imminent threat to

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 550 -

1360.   Defendants, gives them motive to stop him. iHug's Rideshare Software empowers any school system, groups of mothers, college campuses, rideshare Drivers, hotels, casinos and other American establishments to sign up in minutes and build their own community based rideshare platform, removing Uber and Lyft from the equation. This allows people to use their imagination, resources, and income. It's time Uber and Lyft stop monopolizing, killing innovation, and suppressing the American people. America empowers men, women and children, we do not and will not suppress Life, Liberty and the pursuit of Happiness.

1361.   This substantiates Defendants, Louis, compromised Drivers, third-parties and other Does had motive, and were under instruction by Defendants to cause irreparable damages to the Plaintiff, his Wife, and iHug, while knowingly put Drivers, their cars, income and families at risk.

| | Adam John | Wed, Nov 8, 2017, 7:37 PM | ☆ |
| | Luois we need to fix this for drivers! | | |
| | Adam John | Wed, Nov 8, 2017, 7:38 PM | ☆ |
| | Adam John | Wed, Nov 8, 2017, 7:38 PM | ☆ |
| | These drivers are being used and abused. | | |
| | Louis Pritchett <louis████████ | Wed, Nov 8, 2017, 7:46 PM | ☆ |
| | to Adam | | |
| | Wow | | |

1362.   Plaintiff continues establishing the preponderance of evidence against Defendants, asserting Defendants Headquarters, and Corporate Attorney's control Drivers, Louis and others.

1363.   Drivers are told to rally against local, state and federal bills, who are told not to wear "Lyft" shirts, "uniforms." This is done at the detriment of the Drivers, enriching Defendants, while harming Drivers with lower pay, no benefits, improper insurance, and exploitation of the gig-worker.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 551 -

### 3. CORPORATE ATTORNEYS INFLUENCE DRIVERS:

1364.   Pictured below on the left, Lyft Headquarters gives direction to Independent Drivers stating, "NO Lyft shirts please! Clearly treating Independent Contractors like employees in California.

1365.   In particular, pictured below on the right, an Independent Driver admits to being controlled by Defendants corporate attorneys at Lyft Headquarters.

 

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 552 -

1366. Pictured below, Louis controlling an "Independent Driver" to speak in favor of Defendants. This was an effort made in concert, so Defendants can continue to synonymously monopolize the TNC industry, while lowering Driver pay.



 **Louis Pritchett** is with Paula Harris-Walton and 6 others.
O Admin · Yesterday at 1:49 PM

When you out here with Kristy Lemon you want to make #lyftLemons
Job well done
Kristy!



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.

## 4. UBER AND LYFT BRIBE AND CONTROL DRIVERS:

1367.   To further establish a preponderance of evidence, Plaintiff possesses video testimonial evidence, proving Drivers were bribed with cash by Uber and Lyft to be at the AB5 rally, to oppose the AB5 bill for Lyft and Uber.

1368.   The whistleblower, stated, "They're buying people." The man states, He's on the "Uber," roundtable. Further substantiating Uber and Lyft control drivers, who are under direction.



1369.   For all of the foregoing reasons, the Plaintiff respectfully request that the Court issue an Order granting his motion to strike Defendants pleading to dismiss the case, in particular this section involving Uber and Lyft controlling people.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 554 -

## 21. PREEMPTIVE MOTION TO STRIKE 6: MOTION TO STRIKE

## CONCEALMENT, AND REDACTION

1370.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to

motion to strike, requesting concealment and redaction of parts of this legal document, under the

premise that it should be learned by America and beyond, that we must all act in good faith on behalf

of others, lift each other up, and follow our God given inherent instincts to do the right thing.

1371.   Plaintiff further asserts there's no justifiable reason to redact or conceal any part of

this Complaint, as all proceeding pages of this Complaint are part of the genuine story about the

assassination of iHug, a God given Company that was going to enrich the world, and help save lives.

1372.   Plaintiff expects an argument will be made by Defendant's Legal Counsel, claiming

the photos, video, audio, witness details, screenshots, declarations, case law, and others evidence is

superfluous.

1373.   Plaintiff argues the exhibited evidence throughout this Complaint is genuine,

verifiable, relevant, and supports the very truth as to the willful actions taken by Defendants against

the Plaintiff, his innocent Wife, iHug, and others who are similarly situated.

1374.   Plaintiff further asserts he has the burden of proof, per evidence code section 100-260,

in which empower the Plaintiff to gather evidence by all lawful means in order to prove the very

allegations made throughout this Complaint are true.

1375.   The following evidence code give grounds to grant Plaintiff's preemptive motion to

strike Defendants' Legal Counsels motion to conceal and redact any part of this Complaint:

> 100.  Unless the provision or context otherwise requires, these definitions govern the
>
> construction of this code.
>
> 110.  "Burden of producing evidence" means the obligation of a party to introduce
>
> evidence sufficient to prove allegations in favor of one party or another's ruling.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 555 -

115. "Burden of proof" means the obligation of a party to establish by evidence a

requisite degree of belief concerning a fact in the mind of the trier of fact or the court.

1376.   The burden of proof may require a party to raise a reasonable doubt concerning the

existence or nonexistence of a fact or that he establishes the existence or nonexistence of a fact by a

preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable

doubt.

1377.   The exhibited evidence presented throughout the Complaint is genuine, factual, and

Reasonable to introduce into the Court, the very accusation by Defendants' Legal Counsel that

Plaintiff is presenting scandalous evidence, is groundless, as the very nature of the Defendants action

is scandalous. Furthermore, the Defendants actions were unprovoked, and in its entirety, unlawful.

1378.   Yet again, Plaintiff is respectfully and diligently establishing the burden of proof

herein, as he believes there's probable cause, created by Defendants financial and competitive

motives.

1379.   Lastly, every piece of evidence exhibited herein were gathered in its original

and genuine state, during the time Plaintiff, his Wife, iHug and others similarly situated were

maliciously targeted and attacked. It's reasonable, and justifiable to include such evidence.

1380.   For all of the foregoing reasons, the Plaintiff respectfully request that the Court issue

an Order granting his motion to strike Defendants pleading to the following but not limited to

redaction, and/or concealment of any and all exhibited evidenced presented in the proceeding

paragraphs of this Complaint. Pictured below, an assertion from the *Uber–Waymo* case proving such

concealment tactics are actively used by Defendants, settling to prevent investigations:

## A. Destruction and Concealment of Records Using Ephemeral Communications

Clark and Henley helped implement and directed the almost-exclusive use of ephemeral and encrypted communications software, including WickrMe (and later Wickr SCIF), to

Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 556 -

## 22. PREEMPTIVE MOTION TO STRIKE 7: MOTION TO STRIKE

## INSURANCE SCHEME REMOVAL

1381.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to motion to strike, removing section 6, subsection B, and subsection B1 – B4, the secret insurance scheme that unlawfully suppresses competition and lured in Plaintiff from this Complaint.

1382.   Plaintiff argues the Defendants' Legal Counsel will attempt to establish this section as being scandalous and superfluous, maintaining the argument, this section would disrupt the Defendants' operation that offers transportation to the general public.

1383.   Plaintiff asserts based on his discovery with little resource, and the revelation that Defendants' inherent nature, endangers lives in healthcare through reckless anticompetitive practices, paired with the fact that Defendants' master TNC insurance policy is inadequate for the general transportation market, much less the healthcare industry as confirmed by an insurance agent.

1384.   It's established the **harm and risk to life is greater, and outweighs any fathomable cause to grant Defendants' motions to strike.**

1385.   In fact, Defendants inherent nature and culture is **causing more harm than good**. Plaintiff possesses various testimonial evidence from a former healthcare CEO, who implies Defendants are operating in healthcare without proper licensing and/or insurances.

1386.   Plaintiff affirms this constitutes as anti-trust, by eliminating AMR, who has emergency medical responders, by replacing them with rideshare drivers who are not CPR certified and/or adequately qualified for healthcare, risking people's lives in the event of an emergency.

1387.   For all of the foregoing reasons, Plaintiff respectfully requests the Court issue an Order granting his motion to strike Defendants' plead to remove the insurance scheme section of this Complaint.

1388.   Pictured on the next page below, an email from the former CEO.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 557 -

1389.   This is one email of many in possession of the Plaintiff, in which substantiates premeditated and willful anti-violations are in the works.

1390.   Even more outrageous, if Defendants are successful in such anti-trust violations, it would eliminate American Medical Response ("AMR"), a 27-year-old nationwide operation, that's safe, compliant, life saving and leads America.

1391.   AMR provides and manages community-based medical transportation services, including emergency (911), non-emergency and managed transportation, fixed-wing air ambulance and disaster response.

1392.   Even more unconscionable, Defendants goal is to replace AMR and others alike, removing tens of thousands of emergency medical responders and providers who can save lives during transportation, with Defendants rideshare drivers.

1393.   Forensic evidence has established, Defendants are exponentially increasing mortality rates in healthcare, and even increasing chances of a death in the event of an emergency during transportation, by using rideshare drivers in healthcare, and not iHug's healthcare professionals using Plaintiff's Rideshare for Healthcare model.

> There was discussion about eliminating our NEMT contract with AMR and ProTransport and utilizing Lyft, once they had that component. I am guessing they are expanding and with their brand power, can do this quickly. It will be interesting to see how Lyft handles the insurance side of things, as that will be important for healthcare organizations.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 558 -

## 23. PREEMPTIVE MOTION TO STRIKE 8: MOTION TO STRIKE

## WRONGFUL IMPRISONMENT ATTEMPT OF A WHISTLE BLOWER

1394.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to motion to strike, removing section 6, subsection G, subsection G1 – G5, conspiracy, and concerted actions to wrongfully imprison Plaintiff who's a whistleblower from this Complaint.

1395.   Plaintiff argues the Defendants' Legal Counsel will attempt to establish this section as being scandalous and superfluous, maintaining the argument that this section would disrupt the Defendants' reputation, and operations that offer transportation to the general public.

1396.   Plaintiff vehemently argues Defendants' actions were orchestrated, and executed over a period of years, in an effort to wrongfully imprison him. Joe, Louis, Nicole, and Amy had no justifiable reason to engage in such heinous actions to frame Plaintiff of a crime.

1397.   **Plaintiff possesses direct evidence, instructions were coming from Defendants. Such evidence is held by multiple parties who are keeping it confidential in the event Plaintiff's Life is threatened. The evidence will come to surface.**

1398.   Plaintiff argues once Defendants learned about his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system, and $1,200,000,000,000 trillion-dollar healthcare opportunity, it created the ultimate motive for Defendants to engage in such unlawful conduct.

1399.   Additionally, once the Plaintiff discover and realize the gravity of the Defendants insurance scheme and the damages it causes on small businesses throughout The United States it was reported back to Defendants by Louis, where the attacks began to prevent Plaintiff and his Wife from Whistleblowing.

1400.   It would be the path to least resistance, as Defendants were under an extreme amount of pressure by investors, and the reality they could run out of cash and halt operation.

1401.   For all of the foregoing reasons, Plaintiff respectfully requests the Court issue an

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 559 -

1    Order granting his motion to strike Defendants' plead to remove section 6, subsection G, subsection

2    G1 – G5 conspiracy, and concerted actions to wrongfully imprison Plaintiff who can inform the SEC

3    of this Complaint.

4    ///

5    ///

6    ///

7    ///

8    ///

9    ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 560 -

## 24. PREEMPTIVE MOTION TO STRIKE 9: MOTION TO STRIKE

## ALLEGED SECURITIES AND EXCHANGE COMMISSION OMISSIONS

1402.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to

motion to strike, removing section 6, subsection J, the real $1.2 trillion-dollar opportunity at IPO

from this Complaint.

1403.   Plaintiff argues that on October 12, 2016, and in several other interviews pre-IPO,

John proclaimed that Lyft was targeting the car-ownership market, stating, **"Every year in the**

**United States, $2,000,000,000,000 trillion-dollars is spent on car ownership."**

1404.   Whereas, per Lyft's S1 SEC filing, John, Logan and Ben, purposefully manipulated

the statistic and stated, **"U.S. consumers spend over $1.2 trillion on transportation annually,"** the

exact dollar amount as Plaintiff's misappropriated $1,200,000,000,000 trillion-dollar healthcare

opportunity, and his $25,800,000,000,000 trillion-dollar new digital Ai healthcare system particulars.

1405.   Pictured below, the statistic found in Lyft's S1 SEC filing for IPO.

> on transportation were approximately $1.2 trillion in 2017.[13] We believe that Lyft currently

1406.   Lyft CFO, Brian Roberts, stated post-IPO, Lyft is on **"day one of a $1.2 trillion**

**market opportunity."** When in fact, Lyft was already targeting the "car ownership market," valued

at $2,448,000,000,000 trillion-dollars, violating The Securities Act of 1933.

> **Brian Roberts** -- *Chief Financial Officer*
>
> So just to follow-up in terms of the question on the path to profitability, we are
> day one of a $1.2 trillion market opportunity. We just announced a quarter

1407.   For all of the foregoing reasons, in particular, intentional manipulation and omissions

to the United States Security and Exchange Commission, Plaintiff respectfully requests the Court

issue an Order granting his motion to strike Defendants' plead to remove section 6, subsection J, the

real $1.2 trillion-dollar opportunity from this Complaint.

Adam John Mackintosh---vs---Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 561 -

## 25. PREEMPTIVE MOTION TO STRIKE 10: MOTION TO STRIKE

## LYFT INSURANCE FRAUD LEAVES TAX PAYERS FOOTING THE BILL

1408.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to motion to strike, removing section 6, subsection L, defrauding the people from this Complaint.

1409.   Plaintiff alleges Defendants knowingly used "ride request" algorithms Nationwide pre-IPO in order to inflate financials and other valuated metrics in order to receive a higher stock valuation post-IPO. Plaintiff reverse engineered the scheme that gives light to a reasonable belief that the allegation made herein should be investigated by the FBI, under the Whistleblower laws.

1410.   Plaintiff further asserts, an innocent man was contacted by Inland Empire Health Plan, ("IEHP") in California, funded by California Department of Healthcare Services. He was accused of booking and then canceling rides. He claimed his Lyft account was hacked, whereas there was no "credit card" added or used to book the rides.

1411.   Plaintiff proclaims the following, establishing a foundation for an investigation by the United States Government:

1.   Defendants used software to request rides using inactive/active accounts;

2.   The ride requests were made using insurance plans and other internal billable partnerships;

3.   No credit card is billed;

4.   Health insurance plans, funded by California and potentially other states were billed by Defendants;

5.   Driver receives the request to pick up the rider;

6.   Rider is unaware and fails to show;

7.   Driver cancels on ride after 5 minutes, collecting $5 as a result of the rider being unaware and creating a no show;

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 562 -

8. Driver earns $5, Defendants inflate their financials;

9. Lyft, in particular, announces a self-imposed audit, disguising it and claiming it was performed to discover "equal pay," discrepancy, see *Richard Jacobs letter in the case Waymo–vs–Uber–Case#3:17-cv-00939-WHA,* in particular, concealment/destruction of records;

10. Defendants then manipulates, conceals, deletes and adjusts internal numbers;

11. Defendants then delete the user accounts and all related evidence;

12. Defendants omits to the Securities and Exchange Commission of its conduct;

13. Defendants announces an IPO with inflated share prices;

14. All parties involved with Defendants who had equity received billions of

15. dollars in payouts.

1412.   Pictured below the media investigated, and couldn't connect the wrongdoing.



1413.   For all of the foregoing reasons, in particular, intentional manipulation and omissions to the United States Security and Exchange Commission, Plaintiff respectfully requests the Court issue an Order granting his motion to strike Defendants' plead to remove section 6, subsection L, Lyft Insurance Fraud Leaves Tax Payers Footing the Bill from this Complaint.

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 563 -

## 26. PREEMPTIVE MOTION TO STRIKE 11: MOTION TO STRIKE

## UNQUALIFIED DRIVERS RISK LIVES IN HEALTHCARE

1414.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to motion to strike, removing Plaintiff's allegations that rideshare drivers are risking people's lives in healthcare, calling the allegations groundless, outrageous and a superfluous claim in this Complaint.

1415.   Plaintiff contends his Company, iHug, was the Official Rideshare for Healthcare was eradicated by Defendants inherent nature. iHug was a mature, responsible and a full-service transportation option in healthcare.

1416.   Plaintiff vehemently argues Defendants are improperly executing on his plans, endangering life in healthcare. Plaintiff avers his drivers were healthcare background nurses, medical assistants, home aids and other professionals who purchased a starter kit from his Company, iHug to keep it in their vehicle in the event of an emergency, who were CPR and basic life support certified, ensuring iHug was putting more lifesaving "rideshare for healthcare drivers" on the road.  Plaintiff contents his Drivers were in tune with the following but no limited to:

| | |
|---|---|
| Excellent Customer Service | Passenger Assistance |
| Excellent Communication Skills For Patients | Defensive Driving – National Safety Council |
| Educated on HIPAA Privacy Requirements | Vehicle Inspection |
| Experience in Non-Emergency Medical | Collision Reporting |
| Wheelchair/Stretcher Training | Risk Management |
| Wheel Chair Safety Trained | Medic First Aid/CPR |
| Securing the Wheelchair Trained | Adult First Aid/CPR |
| Securing the Occupant Trained | Basic Plus AED |
| System Care & Maintenance | Spill Kit/Bloodborne Pathogens Training |
| Hands-On Training | Mobile Technology |

Adam John Mackintosh—vs—Lyft, Uber, Andreessen, Joe, John, Louis, Jerry, Logan, Ben, and Does
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage, Unfair Competition Practices, Tortious
Interference, Trade Secret Misappropriation, Breach of Contract, Slander and Defamation of Character.
- 564 -

1417.   Whereas Defendants Drivers are not, and much less CPR certified. This calls for immediate injunctive relief to prevent the loss of a life in the event of an emergency.

1418.   This argument paired with the fact that Defendants Drivers cancel on patients on a daily basis increasing mortality rates, while operating in healthcare without proper licensing and permits as implied by a former CEO of one of the largest non-profit hospitals in northern California.

1419.   Plaintiff argues this can be construed as reckless conduct endangering life. Which is a very serious offence, that is laid in situations where a person recklessly engages in conduct that places, or may place, another person in danger of death without lawful excuse.

1420.   Plaintiff argues, case and point, in the event a healthcare patient stops breathing while Defendants rideshare driver is transporting a patient in healthcare, the patient will be deprived of being attended by a medical certified professional who could save their life, jeopardizing life.

1421.   Plaintiff further contends these irresponsible, reckless and willful actions to engage in healthcare without having healthcare professionals transporting patients, endangers life.

1422.   Not only do Defendants engage in such egregious action, while in the heat of competition, Defendants incentivize drivers not to drive for competition in healthcare, resulting in missed medical appointments of dialysis, cancer and other terminally-ill patients, causing a 30% increase in mortality rates, Defendants are risking lives for profit.

1423.   When a dialysis patient misses an appointment, the blood toxins increase to dangerous levels, which could lead to serious illness, and even death.

1424.   For all of the foregoing reasons, in particular, the reckless behavior of endangering life in healthcare, and violations of local ordinances, insurances and lack of proper healthcare training to

Adam John Mackintosh-–vs –Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 565 -

include but not limited CPR, and First Aid certifications, Plaintiff respectfully requests the Court

issue an Order granting his motion to strike Defendants' plead to remove any and all allegations

stated herein, involving Defendants unsafe rideshare drivers in healthcare.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 566 -

## 27. PREEMPTIVE MOTION TO STRIKE 12: MOTION TO STRIKE

## DEFENDANTS ARE EQUALLY AND UNJUSTLY ENRICHED

1425.  Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to motion to strike, removing Plaintiff's right to damages for unjust enrichment and his prayers for 20% ownership in Defendants businesses in form of shares, residual revenue share of 20% paid to him directly through Stripe, reasonable royalty on any proprietary intellectual property and other damages.

1426.  Plaintiff believes Defendants Legal Counsel will argue against Plaintiff's allegations, attempting to dismiss facts that Defendants unlawfully acquired Plaintiff's intelligence in form of corporate secrets, calling the allegations **weak and groundless** at best.

1427.  Plaintiff vehemently rebuttals such predicted Defense, laying the **ground** to grant his motions using **strong and indisputable** direct written testimony from a Lyft and Uber driver, claiming as a matter fact, Defendants regularly fuel its growth on misappropriated trade secrets and investor cash.

1428.  Plaintiff further substantiates his allegations made herein using historical, financial, and case law analysis, which reveals Defendants growth is fueled by data (misappropriated corporate secrets) and investor cash (massive losses) to fuel the expansion of Defendants operations, thus creating a parabolic "growth loss statistic," in particular, the insurance scheme outlined in section 6, subsection A supports such statistic.

1429.  Plaintiff simultaneously moves to preemptively strike Defendants legal pleading to motion to strike, removing Plaintiff's allegations that relates to unjust enrichment, that Defendants are the same operation, in particular, they use their Drivers, who are an integral part of their operation

Adam John Mackintosh—-vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 567 -

by tricking Drivers, who are under constructive trust, incentivizing them to infiltrate competition under the false protection of the brand power of Uber and Lyft, while handing off corporate secrets to Defendants, holding Defendants harmless.

1430.   Plaintiff attached an exhibit on the next page, a hand written testimonial document from a Lyft and Uber driver who described Lyft and Ubers operations as using a "circle of influence," to inwardly extract corporate secrets from competition, while outwardly using the misappropriated corporate secrets as part of Defendants operations unjustly enriching itself, while suppressing Drivers from whistleblowing who are under an arbitration clause, through trickery.

1431.   All allegations made in all proceeding paragraphs of this Complaint are not limited and made based on witness written evidence, audio evidence, video evidence, direct evidence, circumstantial evidence, relationship evidence, forensic evidence, case law analysis, whistleblower testimony under penalty of perjury including the Defendants, common sense, feasibility, plausibility, and reasonable belief, Plaintiff respectfully requests the Court issue an Order granting his motion to strike Defendants' plead to remove his rights to unjust enrichment damages, and all other damages.

1432.   For all of the foregoing reasons, in particular, alleged intentional manipulation and omissions to the United States Security and Exchange Commission, Plaintiff respectfully requests the Court issue an Order granting his motion to strike Defendants' plead to remove section 6, subsection T, a window into the workings of anti-trust violations.

///

///

///

///

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 568 -

1433.   Pictured below, the whistle blower drew out the core operation of Uber and Lyft in communities. The outer layers explain how trade secrets are misappropriated, how people are influenced and bribed, and how profits are generated from such unjust enrichment without legal entitlement. You use an exponent within the circle of trust who are with Uber and Lyft, to create exponential growth. The scheme is called, "the circle of influence," which is applied to all business dealings with Uber and Lyft.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 569 -

## 28. PREEMPTIVE MOTION TO STRIKE 13: MOTION TO STRIKE
## ALLEGED COVER UP OF WRONGDOING TO INVESTORS
## AND THE SECURITIES AND EXCHANGE COMMISSION

1434.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to motion to strike, removing Plaintiff's allegations that Defendants defrauded the people by booking millions of fake rides to inflate it's share value pre-IPO.

1435.   Plaintiff argues that Lyft's CFO is using the "multiple lines of business" excuse to reveal bookings data in order to obfuscate and omit the data to investors as its alleged "**fake bookings**," exist in the data that helped fuel their valuation pre-IPO as outlined on page 506 and 507 of this Complaint, defrauding the people.

1436.   Pictured below, Lyft is under investigation for its actions, and the actions taken by its Executives and other personnel.



1437.   Pictured below, Lyft's CFO states, investors just wouldn't understand it, where's its alleged, what he really means is, investors would find the **fake ride data**.

Lyft immediately stopped presenting its "Bookings" metric when it delivered its first post-IPO quarterly earnings report. MarketWatch reported that Brian Roberts, Lyft's chief financial officer, said that investors just wouldn't be able to understand the bookings data since Lyft is expanding beyond ride-hailing into bikes and scooters.

---

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 570 -

1438.   For all of the foregoing reasons, in particular, intentional manipulation and omissions to the United States Security and Exchange Commission and investors, Plaintiff respectfully requests the Court issue an Order granting his motion to strike Defendants' plead to remove any and all pages relating to defrauding consumers, investors, and The United States Government of this Complaint.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 571 -

## 29. PREEMPTIVE MOTION TO STRIKE 14: MOTION TO STRIKE
## UNFAIRLY TIMED LAWSUIT STRIKING FULL
## ENTITLEMENT AND RIGHTS TO DAMAGES

1439.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to motion to strike, removing Plaintiff's rights to damages for unjust enrichment and his prayers for 20% ownership in Defendants businesses in form of shares, residual revenue share of 20% paid to him directly through Stripe, reasonable royalty on any proprietary intellectual property and other damages.

1440.   Plaintiff vehemently argues against Defendants defense that Plaintiff waited for Defendants IPO to file a lawsuit, as Defendants Legal Counsel will most likely argue.

1441.   Plaintiff maintains the attacks have stopped since Defendants have become publicly traded companies. Recent investigation against Defendants have given Plaintiff breathing room to draft this Complaint and start legal proceedings, respectfully asking an Honorable Judge to hear his Complaint, and decide on the appropriate actions with the powers given to them by God, The United States of America and our Founding Fathers, who set the foundation for our justice system.

1442.   Pictured below, Market Watch confers Uber and Lyft are under investigation and work synonymously.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 572 -

1443.   Pictured below, the epitome of Defendants synonymous operations.

> **Uber UBER, +0.00%  and Lyft LYFT, +3.88%** filed draft registration statements,
> or S-1s, confidentially with the SEC on the same day: Dec. 6, 2018. A federal-
> government shutdown delayed review of the documents into 2019, when Lyft's
> S-1 was publicly released first, perhaps because the SEC had a much easier time
> with its presentation: Overall, Lyft had far fewer comments in general and four
> rounds of comment letters in comparison to six for Uber.

1444.   For all of the foregoing reasons, Plaintiff respectfully requests the Court issue an

Order granting his motion to strike Defendants' plead to remove any and rights to damages from this

Complaint.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 573 -

## 30. PREEMPTIVE MOTION TO STRIKE 15: MOTION TO STRIKE

## DEFENDANTS PETITION FOR BANKRUPTCY AND AUTOMATIC STAY

1445.  Plaintiff respectfully moves to motion dismissal of Defendants future bankruptcy legal proceeding, in particular, petition for bankruptcy and automatic stay, under the premise Defendants were willful, and malicious in their actions against healthcare patients, the Plaintiff, his Wife and iHug, which has caused irreparable injury, and the reasonable belief Defendants are purposefully stalling and evading Plaintiff's settlement, and any pending litigation that will ensue.

1446.  Its alleged, Defendants immediately skipped the courts and ran to a newly appointed United States Bankruptcy Judge for the District of Delaware. For the record, Plaintiff asserts this Judge was sworn in under oath, stating the following: *"I do solemnly swear, that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as under the Constitution and laws of the United States. So help me God."* Its substantiated this particular Judge, signed up to Plaintiffs' software to investigate claims made about iHug, Plaintiff and his Wife by Defendants to the Honorable Judge. Its alleged Defendants are continuing to mislead Local, State and Government Officials, slandering Plaintiff and iHug, claiming they operate unethically, further claiming, Plaintiff and his Wife are frauds.

1447.  For all of the foregoing reasons, in particular, alleged intentional manipulation and omissions to an Honorable Judge of the District of Delaware, Plaintiff respectfully requests the Court issue an Order granting his motion to strike Defendants' plead to motion for a petition for bankruptcy and automatic stay of this Complaint.

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 574 -

## 31. PREEMPTIVE MOTION TO STRIKE 16: MOTION TO STRIKE
## ALL SECTIONS AND SUBSECTIONS HEREIN

1448.   Plaintiff respectfully moves to preemptively strike Defendants' legal pleading to motion to strike, removing any and all sections of this Complaint.

1449.   Plaintiff has legal grounds to have such motion granted based on all allegations, exhibits evidence and indisputable preponderance of evidence established herein, which proves beyond a reasonable doubt, Defendants played in part, or in whole, and engaged in wrongdoing as described herein, and in all proceeding paragraphs of this Complaint.

1450.   Plaintiff respectfully asserts the violations, table of contents, introduction statements, and all other proceeding parts the Complaint would not violate any number of evidentiary principles, nor would it violate any human rights, or rights bestowed upon any part of this Complaint.

1451.   Plaint maintains the allegations and exhibited evidence attached in this Complaint do not, in any way, establish an unfair trial by any means. The exhibited evidence and allegations made herein were established by the very actions of the Defendants.

1452.   Furthermore, the American People and the world need to know we should never engage in this type of conduct, either personally and/or through any corporation, it's completely un-American.

1453.   Plaintiff motions to strike, Defendants and/or Defendants Legal Counsel's motion to suppress and/or exclude Plaintiff's statements, exhibited evidence, substantiated scheme theories, circumstantial evidence, photographic evidence, testimonial evidence, audio, video and other exhibited evidence that has been bestowed upon him by his Wife, whistleblowers, by chance, and by God himself, acquiring said exhibited evidence directly and/or indirectly.

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 575 -

## 32. PLAINTIFF'S GENUINE ATTEMPT TO SETTLE BEFORE COURT

1454.   Pictured below, Plaintiff drafts up a fair settlement offer and sends it to Defendants, where he received no response, contradictory to Logan and John's response to a Lyft Employee whistleblowing that Lyft looked up locations of Mark Zuckerberg, and other high profile celebrities.

HIGHLY CONFIDENTIAL SETTLEMENT DEMAND

FOR CONFIDENTIAL SETTLEMENT PURPOSES ONLY

CALIFORNIA EVIDENCE CODE SECTION 1154

**IMPORTANT:**

ALL COMMUNICATION WITH ADAM MUST BE

IN WRITING TO ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮M

Adam John Mackintosh, Individually,

and On Behalf of All Others Similarly Situated,

Lyft, Inc., ("Lyft") Uber Technologies Inc. and Uber Health, LLC ("Uber") AH Capital Management, LLC and Andreesen Horowitz ("Andreesen"), Corporations,

Ben Horowitz ("Ben"), John Zimmer("John"), Logan Green("Logan"), Josef Arvin Acebedo ("Joe"), Louis Darnell Pritchett ("Louis"), Jerry Wang ("Jerry"), Individuals.

**1. TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

This letter constitutes a demand for compensation from each person or business listed herein, which is made pursuant to Sections 1152 and 1154 of the California Evidence Code. As such, this settlement cannot be used to prove the validity of an allegation or any part of it that gave rise to this settlement demand.

Adam asserts, it's in the best interest of all parties, to amicably resolve this matter outside of the Court. All communications are to be made to the above-mentioned email address.

Adam John Mackintosh, and Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.
HIGHLY CONFIDENTIAL SETTLEMENT DEMAND.
- 1 -

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 576 -

## 2. BRIEF SUMMARY OF WRONGDOING BY EACH PARTY

Adam's proprietary trade secrets, and other gathered details were misappropriated, unjustly enriching Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe, causing Adam irreparable damages to his company.

Joe, Louis, and Jerry breached their fiduciary duty, unlawfully leaking the following but not limited to, highly confidential and competitively sensitive commercial information, corporate secrets, corporate trade secrets, business plans, execution plans, login credentials to iHug's internal systems, containing thousands of artifacts (files, folders, emails, and other data), including a significant number of iHug's most sensitive and competitive artifacts causing irreparable damages, resulting in indefinite revenue loss and damages to Adam's transportation operation.

Joe and Louis were then instructed to attack Adam and his wife personally, causing emotional and mental anguish. Joe and Louis attempted to deport Adam's Wife, while slandering Adam and attempting to frame him of a crime. This was an attempt for Uber, Lyft, Andreesen, John, Ben, and Logan to unlawfully take Adam's misappropriated healthcare opportunity and unjustly enrich themselves.

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 577 -

## 4. LOSS OF ENJOYMENT OF LIFE

Adam and his Wife have sustained damages, resulting in loss of enjoyment of life, as outlined below:

1. Loss of employment; Adam gave up an opportunity to work with Google to build iHug.

2. Loss of ability to perform at his current employer, having to prepare all cases, and dealing with undue duress and mental anguish.

3. Adam's Wife, a YouTube Star in Australia, and Social Media Influencer, with 26,000,000 million viewers and 100,000 fans, stopped making YouTube videos for safety reasons.

4. Adam and his Wife's sleep patterns are unhealthy, typically waking up 4-5 times a night due to stress.

5. Adam and his Wife have gained substantial weight from depression and stress.

6. Adam and his Wife cannot leave their home without feeling paranoid, due to Uber and Lyft's use of "God Mode" having already tracked Adam, where he was almost falsely arrested, as his Wife's friend was under instruction.

7. Adam and his Wife have stopped communicating with their friends to remain safe.

8. Adam and his Wife are in constant depression.

9. Adam and his Wife suffer from anxiety and panic attacks.

10. Adam and his Wife have lost their social life, hobbies and other pleasurable activities.

11. Adam and his Wife are completely unable to attend social events.

12. Adam and his Wife have a diminished quality of life (generally), including social life.

13. Adam and his Wife have a diminished ability to engage with family and friends.

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 578 -

## 5. PAIN AND SUFFERING DAMAGES

Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joes' actions took a toll on Adam's Wife, inflicting irreparable, emotional, and mental anguish, causing her to have suicidal thoughts.

   

https://www.dropbox.com/s/ndln7p3du7jm74g/enough.mov?dl=0

https://www.dropbox.com/s/h4ntbutncn1ua2j/enoughisenough.mov?dl=0

## 6. REPAIR SUICIDAL ATTEMPTS DAMAGES

You can never put a price on life. Life is one of the most precious things in the universe, and of existence. No person should be deprived of Life, Liberty and Freedom.

Based on the willful actions taken against Plaintiff, it has caused his Wife to want to commit suicide. The damages to Plaintiff's Wife has caused her to lose her innocence in life, and this can never be undone in our lifetime. The damages were inflicted with permanence.

In order to attempt to repair such damages, Adam is demanding Uber and Lyft to place his Wife in Uber and Lyft commercials with past, current and future celebrities such as Kim Kardashian, and Demi Lovato, making Alanna the brand mascot for Lyft, and Uber, much like Flo from Progressive Insurance. This will be the beginning steps in apologizing, and attempting to heal the pain and suffering, and permanent damages caused by the actions outlined herein.

Adam John Mackintosh, and Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.
HIGHLY CONFIDENTIAL SETTLEMENT DEMAND.
- 5 -

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 579 -

## 7. INVESTOR AND TEAM MEMBER DAMAGES:

Adam is seeking monetary damages in the form of 200x his investors' investment in iHug. He's also seeking compensation for promised salary to former iHug teams members, which was subverted by Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe as described herein. Adam is demanding monetary damages in form 30 years of salary payout for each team member, as listed in Section 10.

## 8. PAYMENTS

All payments are to be paid by check or cashier's check and mailed certified through the United States Postal Service to 10923 Progress Ct, Rancho Cordova, CA 95670, made out to Adam John Mackintosh.

All royalty payments are to be paid by Uber and Lyft through Stripe's API, automatically transferring 20% of all revenue and transactions to Stripe Customer ID:, acct_1Ep3PxECg6E3vCbF in perpetuity, on Stripe's two day rolling basis.

## 9. SETTLEMENT CONTRACT

Upon satisfaction of the above-mentioned obligations outlined by each person and/or business, Adam will engage in additional and appropriate agreements.

This contract becomes fully enforceable under California Tort and Contract Law after each party, fully reads, understands, comprehends, agrees, signs and notarizes this contract, individually by a notary public who holds a valid notary public license in California.

In addition, the contract can and will be updated to favor Adam, organically with changing laws in the United States at any time in the event any provisions of this contract put him at even the slightest disadvantage, and/or lower his monetary entitlement and/or exclude him from any and all, whether partially or fully from entitlement to damages.

Adam John Mackintosh, and Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.
HIGHLY CONFIDENTIAL SETTLEMENT DEMAND.
- 6 -

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 580 -

Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe agree, any case law, mistake, omission, miss-type, and/or lack of strength of this contract, can and will be updated at any time to favor Adam, as he and his Wife are absolutely and in whole, entitled to damages. Furthermore, this signed contract along with full payment and demand from each person and/or business, will satisfy this demand.

**Monetary Damage.**

All parties agree to pay Adam in full, in the amount listed on the damages declaration section. All payments are to be made by check or cashier's check, and mailed to the address listed on the first page of this settlement demand, made out to Adam John Mackintosh.

All royalties and/or revenue shall be confirmed through deposit verification with Stripe, and will include a financial breakdown of monthly deposits through email communication.

All shares are to be outlined in form of contract and executed to brokerage accounts of each party who was harmed and owed damages.

**Non-Disparagement.**

All parties agree to sign the non-disparagement agreement attached.

**Confidentiality.**

All parties agree this document is highly confidential, and whomever receives it, reads it, and has possession of it, agrees he or she will not disclose to any party with the exception of their attorneys of record. Furthermore, all parties unequivocally agree, they will not use any ideas presented herein by Adam to settle this matter, for any purpose whatsoever.

If you are not a party to this settlement demand, and you inadvertently receive this email, you are hereby ordered to destroy all contents within this settlement demand, attached to any email system or servers immediately.

Adam John Mackintosh, and Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.
HIGHLY CONFIDENTIAL SETTLEMENT DEMAND.
- 7 -

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 581 -

If you find this settlement demand by chance on any device, and you are not named herein, and/or not legal counsel to any parties named herein, you are asked to destroy immediately, and permanently delete it from the inbox. You are never to disclose the contents of this email, and settlement demand, to any party, including your next of kin.

**Withholding Taxes.**

All payments made under this Agreement shall be subject to reduction to reflect taxes or other charges required to be withheld by law, and such reduction shall be paid by Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.

**Governing Law.**

The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws.

**Successors and Assigns.**

This Agreement will be binding upon my heirs, executors, administrators and other legal representatives, and my successors and assigns, and will be for the benefit of Adam, his Wife, and related family.

**Entire Agreement.**

This Agreement sets forth the entire agreement and understanding between Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe, and Adam relating to the subject matter herein. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective by any party, with the exception of Adam. All other parties will need to submit changes in writing, and signed by all parties.

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 582 -

**ADVICE OF COUNSEL.**

I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

**Protection of Settlement Contract.**

All parties agree that at all times during or subsequent to the Relationship with each other, all Parties will keep this matter strictly confidential and will not divulge and communicate any part of this settlement contract, except for party's own internal use, on a "need to know basis," to party's legal counsel, for an indefinite term.

All parties further agree not to cause the transmission, removal or transport of tangible embodiments of, or electronic files containing this settlement contract from its principal place of business, without prior written approval by all Parties and/or their legal counsel.

Any party may change its address for such communications by giving notice to Adam in writing to the email and/or mailing addresses as listed above, in conformity with this section. Based on the fact that Adam's Wife nearly committed suicide as a result of the conduct as described herein, Adam must be firm, lawful, and fair with the below-mentioned timeline for settlement.

**ALL PARTIES HAVE UNTIL JULY 12, 2019 BY 5:00PM PST TO CONFIRM ACCEPTANCE OR DENIAL OF THIS SETTLEMENT DEMAND THROUGH EMAIL AT LEGAL@IHUGHEALTH.COM;**

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 583 -

**IN THE EVENT ALL PARTIES CHOOSE TO SETTLE, ALL PARTIES HAVE UNTIL JULY 19, 2019 BY 5:00PM PST TO SUBMIT DETAILS OF THEIR SETTLEMENT OFFER TO ADAM;**

**ALL PARTIES HAVE UNTIL JULY 23, 2019 BY 5:00PM PST TO FINALIZE PAYMENT TO ADAM.**

This settlement demand letter was signed on July 4, 2019, by Adam.

All parties have until July 12, 2019 at 5:00 P.M. P.S.T. to respond with their decision to settle.

**If any party fails to respond by July 12, 2019 at 5:00 PM PST., it will be considered a denial of settlement demand for all parties and all offers and confidentiality will expire on July 12, 2019 at 5:00 PM PST. Adam will then have any and all rights to remedy the damages to the fullest extent necessary.**

THE TIME LIMIT SET HEREIN TO RESPOND, IS FAIR, REASONABLE AND FIRM, BASED ON ALL DAMAGES SUSTAINED.

Adam John Mackintosh, and Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.
HIGHLY CONFIDENTIAL SETTLEMENT DEMAND.
- 10 -

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 584 -

# 10. DAMAGES DECLARATION

- Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe will jointly pay the amount not less than Twenty-Three Billion One Hundred Thirty-Seven Million Five Hundred Thousand Dollars ($23,137,500,000.00) for punitive, general, special, exemplary, and substantial compensatory damages.

- Uber, Lyft, and Andreesen, will grant Adam, not less than 20% ownership in each of their companies, in form of shares at the current market rate. The type of share will be negotiated (voting or non-voting).

- Uber, and Lyft, will pay Adam, not less than 50% of all revenue generated from all operations, separate divisions, entities and other direct and/or indirect operations that produce revenue for Uber and Lyft.

- Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe will jointly pay the amount not less than Twelve Million Seven Hundred Fifty Thousand Dollars ($12,750,000.00) for damages to iHug's team wages.

- Jerry Wang will pay the amount not less than One Hundred Eighty Thousand Dollars ($180,000) for monetary damages.

- Uber, Lyft, and Andreesen will jointly pay the amount not less than Thirty Million Four Hundred and Eighty Thousand Dollars ($30,480,000.00) for iHug's investor damages in form of stock. Type of stock will be negotiated (voting or non-voting).

- Uber and Lyft agree to announce a partnership with iHug, proclaiming iHug as being the Official Rideshare for Healthcare, integrating the Uber and Lyft API into iHug's API to communicate with iHug's Rider App, Driver App and Portal. This will in turn, generate higher profit margins for all parties.

Adam John Mackintosh, and Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.
HIGHLY CONFIDENTIAL SETTLEMENT DEMAND.
- 11 -

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 585 -

- Uber, and Lyft will collaborate with Plaintiff and his Wife to work with the following but not limited to, Government, Healthcare Leaders, Automakers, and Insurance Providers, to set new standards and compliance in healthcare transportation. This will in turn, improve Uber and Lyft's fleets, and amplify safety measures throughout healthcare.

- Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis, Joe, and any direct and/or indirect affiliate party, entities and government agencies, agree to cease and desist from targeting Adam and his Wife.

- Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis, and Joe agree to cease and desist in anticompetitive and aggressive misconduct against anyone ever again, and further agrees to grow iHug's brand, utilizing Uber and Lyft's API and fleet to improve healthcare transportation and revenue for all Parties.

Full Name of Business and/or Representative of Companies Stated Herein,

Adam, and on behalf of his Wife, and others similarly situated, Executed on July, 4, 2019 in Sacramento, California.

Executed on July, _____, 2019 in

_____

_____
/s/ Signature

Adam John Mackintosh,
/s/ Adam John Mackintosh //

Adam John Mackintosh, and Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.
HIGHLY CONFIDENTIAL SETTLEMENT DEMAND.
- 12 -

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 586 -

## 11. NON-DISPARAGEMENT AGREEMENT

Each person, ("party") agrees to the following non-disparagement agreement by signing below:

No Disparagement; party agrees that at all times he is not to demean or disparage Adam John Mackintosh, and Alanna Mackintosh or any asset, company or entity he or she owns and anything related.

Any Communication Type; This means any false and/or derogatory expression, including but not limited to verbal, written, or visual, (ii) whether or not preserved in any medium now known or hereafter discovered or invented, including but not limited to audio recording of any type, written text, drawing, photograph, film, video, or electronic device, (iii) in any manner or form, including but not limited to any book, article, memoir, diary, letter, essay, speech, interview, panel or roundtable discussion, image, drawing, cartoon, radio broadcast, television broadcast, video, movie, theatrical production, Internet website, e-mail, Twitter tweet, Facebook page, or otherwise, even if fictionalized, (iv) in any language, or (v) in any country or other jurisdiction about Adam John Mackintosh, and Alanna Mackintosh. Resolution of Disputes.

Governing Law; Jurisdiction and Venue. This Agreement is deemed to have been made in the State of California, and any and all performance hereunder, breach hereof, or claims with respect to the enforceability of this agreement must be interpreted and construed pursuant to the laws of the State of California without regard to conflict of laws or rules applied in the State of California. You hereby consent to exclusive personal jurisdiction and venue in the State of California with respect to any action or proceeding brought with respect to this agreement.

Adam John Mackintosh, and Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.
HIGHLY CONFIDENTIAL SETTLEMENT DEMAND.
- 13 -

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 587 -

Arbitration; Without limiting Adam John Mackintosh, and Alanna Mackintosh's right to commence a lawsuit in a court of competent jurisdiction in the State of California, any dispute arising under or relating to this agreement may, at the sole discretion of Adam John Mackintosh, and Alanna Mackintosh, be submitted to binding arbitration in the State of California pursuant to the rules for arbitrations of the American Arbitration Association, and you hereby agree to and will not contest such submissions. Judgment upon the award rendered by an arbitrator may be entered in any court having jurisdiction.

Prevailing Party Fees; Any court judgment or arbitration award shall include an award of reasonable legal fees and costs to the prevailing party.

Interpretation and Representation by Counsel; This agreement has been drafted on behalf of the undersigned only as a convenience and may not, by reason of such action, be construed against the undersigned. Each of the parties (i) has had the opportunity to be and/or has elected not to be, represented by counsel, (ii) has reviewed each of the provisions in this agreement carefully and (iii) has negotiated or has had full opportunity to negotiate the terms of this agreement. You waive any claims that may be available at law or in equity to the effect that you did not have the opportunity to so consult with counsel.

No Waiver. Neither the failure or delay to exercise one or more rights under this agreement nor the partial exercise of any such right, will be deemed a renunciation or waiver of such rights or any part thereof or affect, in any way, this agreement or any part hereof or the right to exercise or further exercise any right under this agreement or at law or in equity.

Penalty; In the event, any party breaches any component of this Non-Disparagement agreement, Party acknowledges and agrees that it would be impractical or extremely difficult to ascertain the amount of actual damages to Adam John Mackintosh, and Alanna

Adam John Mackintosh, and Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.
HIGHLY CONFIDENTIAL SETTLEMENT DEMAND.
- 14 -

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 588 -

Mackintosh. For this reason, Party agrees that any violation of the Non-Disparagement provision of this Agreement shall result in the imposition of liquidated damages, in the amount of Five Million, U.S. Dollars ($5,000,000.00), per each occurrence, to be paid by the offender to Adam John Mackintosh, and Alanna Mackintosh, which represents the reasonable compensation based on Adam John Mackintosh, and Alanna Mackintosh's reputation, business relationships, business dealings, future deals and sale of intellectual property. All parties agree that the amount of liquidated damages is fair and reasonable and would not act as a penalty to Party.

Party agrees to Adam John Mackintosh, and Alanna Mackintosh the legal authority to be paid for any and all liquidated damages pertaining to this non-disparagement clause. Survival; This agreement will survive indefinitely.

Executed on July, _____, 2019 in _____, California.

/s/_____/

Party Signature

/n/_____/d/ July_____, 2019

Print Full Name                          Date

Adam John Mackintosh, and Uber, Lyft, Andreesen, John, Logan, Ben, Jerry, Louis and Joe.
HIGHLY CONFIDENTIAL SETTLEMENT DEMAND.
- 15 -

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 589 -

1

Adam John Mackintosh
(will seek admission *pro hac vice, in pro per*)

2

legal@ihughealth.com
10923 Progress Court.,

3

Rancho Cordova, CA 95670

4

5

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

6

## COUNTY OF SACRAMENTO

7

8

Adam John Mackintosh, Individually,
and On Behalf of All Others Similarly

9

Situated,

10

Plaintiff's,

11

vs.

12

13

Lyft, Inc., Uber Technologies Inc.,

14

Uber Health, LLC, AH Capital
Management, LLC, Better Business

15

Bureaus, Inc., Benchmark Capital
Partners VII, LP, Benchmark Capital

16

Management Co. VII, LLC,

17

Corporations

18

Ben Horowitz, John Zimmer, Logan
Green, Josef Arvin Acebedo, Louis

19

Darnell Pritchett, Jerry Wang, Amy
Biddle, Matt Cohler, and Potential

20

Does 10-500,

21

Individuals

22

23

Defendants.

24

25

26

Case No.: 34–2019–00261236–CU–BC–GDS

**DECLARATION OF ALANNA
MACKINTOSH IN SUPPORT OF
PLAINTIFF'S EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING
ORDER TO SHOW CAUSE REGARDING
PRELIMNARY INJUNCTION**

Details:

Judge: The Honorable

_____

Place:
Gordon D. Schaber County Courthouse
720 9th St.,
Sacramento, CA 95814

Courtroom: _____

Date Action filed:  July, 4, 2019

Date set for trial: ____/____/2019

27

28

Adam John Mackintosh—-vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 590 -

**33. DECLARATION OF ALANNA MACKINTOSH, IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION**

I, Alanna Mackintosh, under penalty of perjury state the following and believes it to be true and correct to the best to my knowledge:

1455.   I am in love, and happily married to Plaintiff, Adam John Mackintosh. He's a wonderful, kind-hearted man that has been attacked due to greed, and I have suffered with him.

1456.   I was interrogated at my home and video-recorded during my immigration process. I was also threatened to be deported. The entire immigration process made me feel like I could be deported from the country at any second, taking me away from my husband.

1457.   I never in my life have been attacked or witnessed anything like this. I have never had to live in fear or paranoia but I now do, due to Uber and Lyft tracking me and my husband. My friends have turned on me and my husband, claiming we are con artists, when in fact, we are innocent.

///
///
///
///
///
///
///

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 591 -

1458. Joe took me to Chipotle in the first week of August, 2017, where unbeknown to me, he had organized to meet with a Lyft employee. The Lyft employee stated that, "Lyft Headquarters are seriously talking about iHug," also stating iHug was a "red-hot topic with Lyft Executives." As I was present, Joe immediately changed the subject to stop me hearing anymore and appeared proud of the Lyft Employee's statement, which seemed odd.





Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 592 -



1459. I am a witness to Louis repeatedly standing behind iHug team member's computers and snooping around the office for information, irrelevant to his job description of "driver recruiter."

1460. I witnessed Louis pressuring Adam and iHug team members on multiple occasions for details on the upcoming healthcare partnership.

1461. I witnessed Mike, iHug's software developer after Jerry, get verbally abusive with Adam, asking for more money and stating, "I would hate to see what happens." Immediately after the threats, Adam changed all user access, blocking Mike from deleting the apps and API. Mike's behavior was completely out of the blue and happened after he stayed with Joe at his home.

1462. I witnessed Joe taking thousands of dollars in cash from Adam, where I believe it was his intention to financially harm him.

1463. Jerry also took thousands of dollars in cash from Adam and iHug and never delivered working software.

///

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 593 -

1464. Jerry would have hour-long meetings with the iHug team, resolving no issues with the software. I believe it was his intention to gain intel on iHug as I saw him lift up flyers and search around the office for information, when he had no reason to do so.

1465. I saw an iHug team member sending Jerry photos of iHug's internal systems, such as flyers, contact details, operational details and also photos of the setup at the office.

1466. I overheard a conversation with Adam and an investor, where the investor had been contacted by Joe after he left iHug. He also stated that Joe had told him that Adam had stolen his vehicle and had stolen millions of dollars from investors. Joe's statements are completely untrue, and I believe he wanted everyone to turn against Adam so iHug would fail, and Adam would eventually be investigated, stopping iHug.

1467. In Joe's house, I saw he had multiple stacks of iHug flyers, books and documents in his garage, when no iHug team members were ever meant to take material home.

1468. I found iHug's material in the back of Joe's car, when he let my husband use his car. Joe had compiled a list of notes and it was in a black folder.

1469. Joe informed me that he has "people at Headquarters" that can remove his negative driver reviews on his app with a quick phone call to them.

1470. Joe informed me that he had "tight" relationships with Lyft and Uber I.T. guys.

///

///

///

///

///

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 594 -

1471. I have seen screenshots of Joe using fake Lyft accounts when driving for Lyft, where I believe Joe and other drivers have been paid through these fake accounts and have had negative reviews removed by Lyft employees. I believe this is why Lyft didn't reveal their driver payouts to investors. You will see screenshots below of one of the accounts he used.



Adam John Mackintosh—vs—Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 595 -

1472. I saw a text from Joe to Adam, where Joe sent a photo of him watching another NEMT competitor. There was no reason for him to be watching a competitor while at iHug.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 596 -

1473.  I witnessed Joe talking to iHug's office landlords. Soon after, the landlord raised the rent, eventually telling Adam he had to move iHug. When Adam was forced to move iHug into a new office, we invited Joe to come with us to the potential J Street office location. Joe stayed behind to speak with the landlord and she changed her tune the next day and wanted nothing to do with Adam. I believe Joe was attempting to stop iHug from getting a new office to stop operation.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 597 -

1474. While Louis was meant to be recruiting drivers, he would be outside with Joe, not helping the company in any way. It seemed suspicious to the iHug team, as they commented on it a few times.

1475. I believe Shahla, one of iHug's investors, worked with Joe and Louis, who are connected with Uber and Lyft, in an effort to deport me, and personally hurt my husband, Adam. I have seen text messages threatening Adam that she would report me to the Department of Immigration, where the fraud team was then assigned to my immigration case.

1476. My immigration process to gain permanent residency was extremely stressful. I had investigating officers come to my home, to prove I was really married to Adam. I had my interview recorded and "reviewed." My attorney stated, that my case seemed rare and unusual, and said they only come to the house, if there has been a tip regarding fraud.

1477. I was witness to a false private detective intimidate both Adam and I. He had a gun, refused to show identity, looked under the car covers of Adam's vehicles and left a document with Adam, that police said was not a legal document. Police said to call again, if we saw him.

1478. I was witness to my friend and roommate using the Lyft app on a regular basis. Within 20 to 40 minutes of my roommate coming home one night, police arrived at our door stating they received a call from her, claiming my husband, Adam, assaulted her. I was with Adam the entire night and he did not do this, as he was with me and on his computer all evening, helping his friend with his website. I believe our roommate lied to police and phoned them while on her way home. Adam still cannot press charges against Amy for

Adam John Mackintosh— vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 598 -

falsely reporting a crime to police that night.

1479.  I heard one of iHug's investors state that Joe claimed Adam, "stole millions of dollars from investors." After Adam sent investors a video of me crying months later, that investor called Adam the next day and was in a state of panic, stating, "who said Joe said you stole millions?" I believe this investor was threatened to retract his statement.

1480.  I was witness to Juan barging into the iHug office in panic where he stated he wasn't okay with what Louis was doing, and asked to privately speak with Adam. Joe rushed up to "handle it" and sent Adam back to his desk to continue working. We never found out what Juan wanted to say to Adam.

1481.  I was with Adam when he found his truck window broken, and the truck broken into. The only thing stolen was iHug documents and whoever broke into the vehicle, maliciously cut all the wires, ensuring it wouldn't be drivable. Joe suddenly said he had a friend who could repair the window. I think Joe was part of the break-in, so Adam was forced to pay out more cash to fix the vehicle and the window, intentionally causing Adam financial harm.

1482.  I was with Adam when we discovered Adam's trailer had been broken into. Adam's books, paperwork and a lock box of thumb drives and hard drives were the only items missing after searching.

1483.  Adam's BMW was also broken into, where the only things taken were iHug documents and Adam's laptop bag.

///

///

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 599 -

1484.   Joe had access to all iHug computers, documents, safe codes where secretive documents were stored during his time at iHug.

1485.   Jim informed me that Joe called him, after he had left iHug and stated, "This conversation never happened." Jim seemed worried about family, as it sounded like a threat.

1486.   As Joe kept pressuring Adam for money, and the company was being sabotaged, I became extremely stressed. Joe even told people that Adam stole millions of dollars from investors, stole the vehicle, and Shahla was threatening to deport me. I couldn't stop worrying and stressing. This caused so much stress that my endometriosis flare ups were so painful and out of control, I was hospitalized multiple times from the pain, where I eventually had to have surgery.

1487.   I witnessed iHug's drivers who were with Louis and Joe, cancel on dialysis and cancer patients during iHug's launch month. Adam had to drive the patients himself and was so devastated as he knew his vision was being attacked.

1488.   Adam and I went to Home Depot and put a lock on his office door after we found his mouse and keyboard had moved and his drawers were in different positions.

1489.   When I was at the office, after Rafael went over iHug's partnership details, I saw Joe turn around and give an evil smirk. He was writing notes on his phone and his behavior made me really uncomfortable. Joe had previously told Adam he was "resigning" so we were confused as to why he showed up for the meeting that day. Mike Kim, Malcom and others were also acting very odd.

1490.   I had to sleep in the car with Adam at one point because of Joe.

1491.   Joe intentionally tried to make us homeless right after this, as the office landlord at

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 600 -

1   Sacramento Inn Way, informed Adam and I, that Joe and his Wife had called her, stating

2   we were sleeping in the office. I believe this was a direct attempt to stop iHug, as a

3   business cannot operate without an office to meet drivers.

4   ///

5   ///

6   ///

7   ///

8   ///

9   ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

28

Adam John Mackintosh—vs —-Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life; Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 601 -

1492.   I witnessed Joe sending Adam screenshots of Lyft riders, specifically women he was picking up. It was creepy.






Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 602 -

1493.   I witnessed David, Joe and other team members park in the wrong spots after Adam gave

clear instructions to park in an open spot. I believe they were intentionally getting tickets

to hurt Adam and iHug financially, as they kept asking Adam to pay for the tickets.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 603 -



Adam John Mackintosh—vs—Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangernent of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 604 -

**City of Sacramento**
**Notice of**
**Parking Violation**

### PARKING CITATION

**Issue No.**
**605899106**

| | |
|---|---|
| **Date** | **Time** |
| WED 11/01/2017 | 01:18PM |
| **Officer Name** | **Officer ID** |
| ORTEGA | 9327 |
| **Agency** | **Beat** |
| PE - SACRAMENTO | 14 |
| **Location** | |
| 2208 13TH ST | |

**Violation**
**Code: CVC 22500E**
**PARKING BLOCKING A DRIVEWAY**

| PARKING BLOCKING A DRIVEWAY | State Surcharge | Total Amount Due Now |
|---|---|---|
| $50.00 | $12.50 | $62.50 |

**Vehicle**

| License No. | State | Exp | Type |
|---|---|---|---|
| 6VBM155 | CA | 11/17 | PAS |
| **VIN** | | **Color** | |
| NV (last 4 digits) | | GRY | |
| **Make** | **Body Style** | | |
| LEXS | 4 DOOR | | |

**Remarks**
UNATT VEH PKED BLOCKING DRIVEWAY
C

CITATION MAY BE SUPPORTED BY PHOTOGRAPHS. ANY
PHOTO TAKEN IS VIEWABLE AT WWW.SACPARK.ORG

Failure to respond to 5 or more outstanding violations may result in the immobilization and/or towing of your vehicle pursuant to C.V.C. 22651.7 and/or 22651 (i), respectively. Towing, storage, and immobilization fees must be paid by the vehicle owner or person in control of the vehicle. Registration and equipment violations require proof of correction: verification by a police officer, a California Highway Patrol Officer, or by any Department of Motor Vehicle representative.

---

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 605 -

1494.   Veronica kept asking for Adam for cash, when she knew Adam had to spend it on iHug. I

believe she took $1,000.



1495.   Shortly after Joe and Ejay pressured Adam for $3,000, I told Adam this doesn't feel right,

they have money. I witnessed Joe tell Adam to write "contractor pay," on the checks,

which I found very odd, as he was on equity only.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 606 -

1496. The actions from Joe, Louis, Shahla, and others affiliated with Uber and Lyft, have caused me to have extreme stress, to the point where I thought about committing suicide.

1497. I have no doubt in my mind that Lyft, Uber, Andreessen, Joe, Louis, Jerry, Ben, John, Logan and others are behind the attacks on Adam.

**Alanna Mackintosh,**

*/s/ Alanna Mackintosh //*
*/d/ 07/17/2019 //*

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 607 -

## 34. PLAINTIFF'S WIFE PRAYS TO AN HONORABLE JUDGE FOR RELIEF

1498. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the proceeding paragraphs of this Complaint as though fully set forth herein, asserts the following:

1499. After the BBB's blatant negligence and contributory acts to allow Defendants to use the BBB's customer review system, as a podium, to freely post False and Defamatory Accusations and its Gist against Plaintiff and iHug, Plaintiff's Wife suffers mental anguish and constant worry for her husband, and her wellbeing.

1500. After the Defendants Slander Plaintiff using the BBB's customer review system as a podium, and claiming Plaintiff stolen millions, claiming he's a fraud, whereas the investor income statement only showed $240,000 with slight profits before being shut down, Plaintiff's Wife suffers mental anguish and constant worry for her husband, and her wellbeing.

1501. After the Defendants attempt to wrongfully imprison Plaintiff using millions of dollars in corporate cash, brand power, influence on local, state and Federal agencies, not allowing Plaintiff to prosecute the wrongdoers, Plaintiff's Wife suffers mental anguish and constant worry for her husband, and her wellbeing.

1502. After the Defendants attempted to deport her, and after reading the documentation from the Immigration and Customs Enforcement Agencies disclaimer that her status can change at any time, Plaintiff's Wife suffers mental anguish and constant worry for her husband, and her wellbeing.

1503. After the Defendants instructed their Drivers to call and text her, harassing her,

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 608 -

Plaintiff's Wife suffers mental anguish and constant worry for her husband, and her wellbeing.

1504.   After Defendants ruined Plaintiff's life, who's struggling, and doesn't have a car to transport them to get groceries and other basic human needs, as she fears using the Uber and Lyft app, the cheapest option, Plaintiff's Wife suffers mental anguish and constant worry for her husband, and her wellbeing.

1505.   After Plaintiff's Wife's attorney started acting nervous, asking Plaintiff and his Wife to go to his office where they can be tracked, Plaintiff's Wife suffers mental anguish and constant worry for her husband, and her wellbeing.

1506.   After Defendants have an Uber Software Developer and Driver sign up for Plaintiff's new rideshare software, in an attempt to sabotage and copy, Plaintiff's Wife suffers mental anguish and constant worry for her husband, iHug, and her wellbeing. Pictured on the next page, the Developer from Australia, a country who has little to no laws that prevent copying of software, a strategic move by Uber, and continued attacks by Defendants who will attempt to suppress iHug **yet again** through unlawful activities.

///

///

///

///

///

///

///

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 609 -



1507.   After Defendants continue to prey on Plaintiff, and iHug, Plaintiff's Wife suffers mental anguish and constant worry for her husband, iHug, and her wellbeing. Plaintiff's Wife continues to have mental break downs and constant worry. She continues to have dreams of sleeping in the car with Plaintiff when Joe kicked them out, sleeping in the office while

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 610 -

they were under corporate attack, having to undergo painful surgery to remove scar tissue, after continuing to stress, she's having severe stress levels that's causing her endometriosis to flare up **yet again**, causing even more destruction to her internal organs, and lifelong irreparable injury to her body.

1508.   Plaintiff's Wife begs and prays for an Honorable Judge to grant relief by the power of the Courts, and grant Plaintiff's injunctions, preemptive motions, and all other relief so she can start living a normal life, and stop stressing on the forthcoming corporate attacks as she and her husband, the Plaintiff were warned by a whistleblower. Pictured below, Plaintiff's Wife broke down from the pain of her endometriosis, **yet again**, **causing unbearable and excruciating internal organ pain and suffering**. Pictured on the next page, Plaintiff's Wife having to **endure the pain of scar tissue growing on her internal organs including her heart, brain and lungs as a result of the continued engagement on Plaintiff, iHug, and his Wife by Defendants, causing her severe stress, mental depression, anxiety and other mental issues**. While she was in bed crying, she Googled will endometriosis cause personality changes, what you will read is genuinely damaging.

 

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 611 -

1509.  Pictured below, Plaintiff's Wife is suffering, and will continue to suffer until an

Honorable Judge Grants Plaintiff's Ex Parte Application, Injunctions, Preemptive Motions

and all other requests, forcing Defendants to cease and desist



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 612 -

1510.   Pictured below, Plaintiff's Wife's endometriosis is destroying her personality as a result of the severe stress caused by Defendants continued unlawful actions and engagement on Plaintiff, iHug, and Plaintiff's Wife.



Adam John Mackintosh—vs ––Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 613 -

1511. Pictured below, is a normal healthy internal organ, below the picture of the healthy internal order, is a severely damaged internal organ as a result of severe stress of an endometriosis patient. Substantiating, the Defendants willful and egregious actions proven herein and through all proceeding paragraphs of this Complaint have destroyed, and will continue to destroy Plaintiff's Wife's internal organs from the severe stress. There is no cure for endometriosis, and the pain is described as having cancer with no treatment.





Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 614 -

1512. Pictured below on the left, is a normal uterus. Pictured below on the right, is a severely

damages uterus as a result of severe stress. Plaintiff vehemently asserts, action must be

taken against Defendants immediately with no leniency. Plaintiff prays for a swift, speedy

and fair trial after an intense, and proper discovery period, including usage of evidence

that arises from proceeding lawsuits against Defendants from their investors, assisted by

the FBI, SEC, DOJ and other Government Agencies. Plaintiff vehemently argues this has

to stop, action must be taken. The Defendants are literally killing Plaintiff's Wife through

their willful and felonious actions described in all proceeding paragraphs the Complaint.





Adam John Mackintosh--vs --—Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 615 -

## 35. JACOBS LETTER SUBSTANTIATES PLAINTIFF'S COMPLAINT, PLAINTIFF'S COMPLAINT AND EVIDENCE SUBSTANTIATES JACOBS LETTER

1513.   Plaintiff asserts the Honorable Judge who presided over the Waymo-vs-Uber so intelligently allowed "only" certain parts of the letter to be redacted, whereas a majority was denied in the event Uber continues to conduct itself as alleged throughout this Complaint, Plaintiff will have grounds to stand on. The Honorable Judge's work has allowed justice to fairly and freely ensue, allowing Plaintiff to piece the puzzle together throughout his Complaint using Jacobs letter as the truth has revealed itself. See Jacobs letter below, *Waymo–vs–Uber–Case#3:17-cv-00939-WHA, dated 05/05/2017.*

Re:     **Richard Jacobs v. Uber**

Dear Ms. Padilla:

During our communications last week you requested that we make our client available for an interview to assess the scope of our client's allegations and the facts supporting them. I indicated to you that we did not intend to produce our client but that we would be happy to provide additional information.

Specifically, you said that you are interested in fully investigating the conduct our client observed at Uber that he feels was illegal or improper. Even more specifically, you indicated that our client's assertions regarding destruction, spoliation and manipulation of discovery documents were of particular concern. That is because this type of conduct would be contrary to your own directives to managers and lawyers with whom you deal for purposes of litigation holds. Finally, you said that you wanted to have a clearer understanding of what happened to give rise to our client's employment-related claims.

With this understanding of what you are seeking, we provide the information below. We begin with a brief summary of Richard Jacobs' background and expertise, followed by an overview of the organizational structure relevant to understanding his experiences. This is

1

Adam John Mackintosh---vs ---Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 616 -

followed by a description of illegal conduct observed at the company or believed to be occurring. Included in this description is an identification of at least some of the civil and criminal laws believed to be violated and sufficient detail to illuminate Uber's exposure and areas needing investigation. The next section provides an overview of Jacobs' employment experience, with a focus on the disclosures he made of illegal conduct and the retaliation he experienced.

Our hope is that this information will provide the basis for addressing the illegal conduct and resolving Jacobs' claims related to his employment.

I. **Relevant Background**

A. **Richard Jacobs**

Plaintiff Richard Jacobs served as Uber's Manager of Global Intelligence from March 14, 2016, until he was unlawfully demoted on February 14, 2017, for raising objections to and refusing to participate in unlawful activity. He was constructively terminated on April 14, 2017. Jacobs primarily worked out of Uber's headquarters located at 1455 Market Street and Uber's 555 Market Street location in San Francisco, California.

After earning his Maaster of Arts degree in Latin American and Hispanic Studies at Penn, Jacobs was recruited into the Defense Intelligence Agency. There, he worked in counter-narcotics operations and studied Colombian counterdrug policy. In these early years, Jacobs spent approximately 50 percent of his time between Cartagena and Bogotá, ███████████ ███████████████████████████████. Shortly after the Iraq War began, Jacobs volunteered for two consecutive battlefield assignments in Iraq, supporting Special Operations Forces. During these assignments, ████████████████████████████

Recognized for excellence and his record of success, ████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████

2

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 617 -

Jacobs later decided to marry, change pace, and leave the demands of government service behind. He relocated to Seattle, Washington, where he was quickly able to apply his counterterrorism expertise as a consultant to the Bill & Melinda Gates Foundation.



After two years, Jacobs was recruited to Uber Technologies for his unique mix of geopolitical and threat intelligence, overseas experience, and his ability to build and scale an intelligence program. Jacobs was struck by the incredibly talented people at the company, the unmatched level of challenges and threats they faced, and energized by the opportunity to build a holistic intelligence team, across the spectrum of threat intelligence, geopolitical analysis, and strategic insights. He would go on to build capabilities to serve a constantly growing community of interest at Uber, and deliver insights to shape engagement strategies, advise business decisions, and continually protect his colleagues and the community of riders and drivers they served in cities across the globe.

**B.  Uber's Relevant Corporate Structure**

Jacobs' direct supervisor at the time of hire was Mat Henley, Uber's Director of Threat Operations (ThreatOps). Jacobs also reported to Joe Sullivan, Uber's Chief Security Officer. Jacobs additionally followed orders from Craig Clark, Uber's Legal Director for ThreatOps, who later became a direct report to Sullivan, though Clark was not a part of Jacobs' direct management chain.

This narrative describes unlawful activities within Uber's ThreatOps division, which resides at the 555 Market Street location. ThreatOps was divided into different teams, each with distinct roles. For purposes of this letter, only relevant teams are listed below:

       i.      **Global Intelligence (Intel) – Responsible for** intelligence analysis. This team serves Uber's physical security (PhySec) team and other Uber internal customers, primarily the city teams and regional policy, legal and management officials. The team's

3

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 618 -

product lines span protective intelligence, geopolitical analysis, market entry/launch, and strategic intelligence on regulatory issues, opposition, and competitive risks.[1]

  ii.  Strategic Services Group (SSG) – Responsible for human intelligence (HUMINT) collection through Uber in-house personnel or outside vendors. This team supports the Intel, Investigations, and Marketplace Analytics teams. It also receives confidential assignments from its manager Nick Gicinto. In addition, Henley, Clark, Sullivan, and Uber's senior executives (A-team) task SSG with assignments. As described below, SSG frequently engaged in fraud and theft, and employed third-party vendors to obtain unauthorized data or information.

  iii.  Investigations – Responsible for handling accusations of abuse of Uber's internal data and tools, leaks, criminal complaints, defense against aggressive competitor attacks, and other missions as assigned by Henley, Sullivan, and the Director of PhySec, Jeff Jones.

  iv.  Law Enforcement Outreach – Responsible for proactively building relationships with the law enforcement community to train them on how to interact with Uber, request data related to criminal investigations, and build productive relationships with foreign and domestic markets to support Uber's requests from law enforcement.

  v.  Marketplace Analytics (MA)[2] – Under its Senior Manager, Kevin Maher, MA exists expressly for the purpose of acquiring trade secrets, codebase, and competitive intelligence, including deriving key business metrics of supply, demand, and the function of applications from major ride-sharing competitors globally. Henley and Sullivan also task MA with assignments. MA grew rapidly during Jacobs' tenure, from only two original employees when Jacobs joined the company to at least ten.

  vi.  Counter Intelligence – in March 2017, ThreatOps formed a new "counter intelligence" team for the express purpose of identifying aggressive operations targeting Uber and to strike back at competitors.

Sections II through VI provide information about the illegal activity Jacobs observed.

---

[1] In mid-February, 2017, when Henley Henley demoted Jacobs and took away his team management responsibilities, Global Intelligence was merged with the Strategic Services Group. The new team is called "Strategic Intelligence."
[2] Formerly "Competitive Intelligence" or "COIN" team that has been in the press as of late.

4

Adam John Mackintosh—–vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 619 -

**II.    Sarbanes-Oxley Violations, Evidence Spoliation, and Other Discovery Abuses**

The Sarbanes-Oxley Act of 2002 states that

whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 802, 116 Stat. 745, 800 (2002). Codified at 18 U.S.C. § 1519, this provision applies to private companies and has a broad reach that is not limited to commenced litigation. Section 1519 "covers conduct intended to impede any federal investigation or proceeding *including one not even on the verge of commencement.*" *Yates v. United States,* —— U.S. ——, 135 S.Ct. 1074, 1087 (2015) (emphasis added). Similarly, California Rule of Professional Conduct 5-2320 prohibits members of the bar from suppressing evidence that the member or the member's client has a legal obligation to produce.

Uber has knowingly violated 18 U.S.C § 1519 and continues to do so.  Craig Clark, Uber's Legal Director for ThreatOps, and Mat Henley, Uber's Director of Threat Operations (ThreatOps), led Uber's efforts to evade current and future discovery requests, court orders, and government investigations in violation of state and federal law as well as ethical rules governing the legal profession. Clark devised training and provided advice intended to impede, obstruct, or influence the investigation of several ongoing lawsuits against Uber and in relation to or contemplation of further matters within the jurisdiction of the United States.

Early in his tenure, Jacobs advocated for a secure and encrypted centralized database to ensure confidentiality and recordkeeping but provide access to intelligence for ThreatOps personnel. He presented a draft proposal to managers Henley and Clark. However, discussions broke down immediately because they objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants. Clark emphasized that this was "exactly what we don't want to do . . . .create [a paper trail] that could later be discoverable." Clark noted the errors of past collections where Uber was forced to turn over documents. He

5

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 620 -

alluded to the lessons learned from the "Ergo Investigation" and noted that encryption alone was not enough to avoid discovery. Gicinto added his own objections, stating that while his team would be willing to share some details on collections, including sources and methods of collections on the ground in foreign countries, they were not willing to preserve the raw intelligence on Uber's network.

Jacobs then became aware that Uber, primarily through Clark and Henley, had implemented a sophisticated strategy to destroy, conceal, cover up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigation. Besides violating 18 U.S.C. § 1519, this conduct constitutes an ethical violation

## A. Destruction and Concealment of Records Using Ephemeral Communications

Clark and Henley helped implement and directed the almost-exclusive use of ephemeral and encrypted communications software, including WickrMe (and later Wickr SCIF), to communicate sensitive information within ThreatOps. Wickr Inc. is a San Francisco-based company that describes its product as a "communications platform designed to empower greater control over data security... [using] multilayers of peer-to-peer encryption."[3] Henley and Clark implemented this program of ephemeral and encrypted communications for the express purpose of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential litigation. The Wickr application uses robust encryption which prevents the information from being viewed by anyone except the intended recipient, but more importantly, programs messages to self-destruct in a matter of seconds to no longer than six days. Consequently, Uber employees cannot be compelled to produce records of their chat conversations because no record is retained. Such a policy is inherently violative of the Sarbanes-Oxley Act, 18 U.S.C. section 1519, and similar laws.

Further, Clark and Henley directly instructed Jacobs to conceal documents in violation of Sarbanes-Oxley by attempting to "shroud" them with attorney-client privilege or work product protections. Clark taught the ThreatOps team that if they marked communications as "draft," asked for a legal opinion at the beginning of an email, and simply wrote "attorney-client

---

[3] See https://www.wickr.com/security.

6

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 621 -

privilege" on documents, they would be immune from discovery. What Clark failed to teach the team, however, is that there is no attorney-client privilege, no "seal of secrecy," if the communications were made for the purpose of enabling the commission of a crime or fraud. *U.S. v. Zolin* 491 U.S. 554, 563(1989); *see also* Cal. Evid. Code § 956. For example, Clark enabled illegal activities and gave legal advice designed to impede investigations by directing the hacking of the ███████████████████████████ and by directing the destruction of evidence related to eavesdropping against opposition groups in ████████ as discussed below. Given the ongoing criminal and fraudulent activities within Uber, the crime-fraud exception to privilege applies, and all of Clark's communications in furtherance of these schemes would be fair game in discovery. His attempt to pre-emptively conceal them under attorney-client privilege is illegal, unethical, and improper.

## B. Concealment and Destruction of Records Using Non-attributable Hardware

Clark, Gicinto, and Henley acquired "non-attributable" hardware and software with which SSG and select members of ThreatOps planned and executed intelligence collection operations. Specifically, Henley and members of the MA team use computers not directly purchased by Uber that operate only on MiFi devices—so that the internet traffic would not appear to originate from an Uber network—virtual public networks (VPNs); and a distributed and non-attributable architecture of contracted Amazon Web Services (AWS) server space to conduct competitive-intelligence collections against other ride-sharing companies.

Likewise, Gicinto and the SSG team had similar non-attributable devices purchased through vendors and sub-vendors where they conducted virtual operations impersonating protesters, Uber partner-drivers, and taxi operators. SSG used the devices to store raw information collected by their operatives from politicians, regulators, law enforcement, taxi organizations, and labor unions in, at a minimum, the U.S., ████████████████████ ████████████████████████████████████████████████

By storing this data on non-attributable devices, Uber believed it would avoid detection and never be subject to legal discovery. This is because a standard preservation of evidence order typically focused on Uber work laptops, Uber networks, and Uber mobile devices. Non-attributable devices were deemed as not reasonably subsumed by any such preservation order

7

Adam John Mackintosh—vs.—Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.

- 622 -

and the team could, and did, "legally" (not so) dispose of any evidence or documentation held on these devices in the intervening period before knowledge of the devices' existence could be uncovered. Likewise, members of the ThreatOps team, notably Matt Henley, were known to use personal computers to conduct substantial Uber-related work for the purpose of evading discovery.

## C. Concealment, Cover-up, and Falsification of Records through the Abuse of Attorney-Client Privilege Designations

Clark developed training on how to use attorney-client privilege to further conceal activities described in any non-ephemeral communication channel. Specifically, he developed a training using innocuous legal examples and the "lawyer dog" meme to produce a slide deck that taught the ThreatOps team how to utilize attorney-client privilege to impede discovery.

While the presentation slides themselves did not depict or explain any unethical or illegal practices involving attorney-client privilege, Plaintiff observed Clark's presentation first-hand. During the presentation, Clark verbally coached the participants on how to use attorney-client privilege to ensure sensitive intelligence collection activities would not surface in litigation. Clark also answered specific questions from employees on the minimum standards required to claim privilege for the purpose of shielding information. This "legal training" was particularly noteworthy because it surprisingly bears no Uber-branding; it does not even mention Uber, which is startling in a company with strong branding and adherence to process.

Clark said that Uber needed to "shroud these work products in attorney-client privilege." Accordingly, Clark instructed Jacobs himself and others to address all emails on sensitive intelligence collection to him and ensure the emails were marked as "ATTORNEY-CLIENT PRIVILEGED AND CONFIDENTIAL," to mark any work product as "DRAFT" regardless of its actual status, and, on every communication, to specifically ask a question or request legal advice on some issue—even if no legal advice was needed or warranted. Likewise, he advised that Jacobs and others that they should communicate almost exclusively via phone, video teleconference ("Zoom"), or via the Wickr app, in that order of preference based on the record and audit trail each communications medium creates. Clark explained that the intent was to

8

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 623 -

prevent disclosure of such communications if Jacobs was ever put on legal hold or his communications were ever subject to a preservation of evidence order.

In reality, Jacobs observed that many communications camouflaged as privileged merely contained a pro forma request for Clark's legal advice, even though no legal advice or direction was actually being solicited. For example, between December 14 and 16, 2016, while Uber CEO Travis Kalanick was travelling in ████ SSG collected information from a WhatsApp group "penetration."[4] They learned ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ Jacobs was the only person present with Clark at 555 Market Street, San Francisco, at the time, and he asked Clark if he could share the information directly with Kalanick's protection team in ████ Clark snapped and said to write "double-secret A/C Priv" on the document. Jacobs complied and the information was relayed to Kalanick and other Uber executives in ████ In the end, ████████████████████████████████████

████████████████████████ but Clark's directions plainly demonstrate abuse of privilege.

⁕ ⁕ ⁕ ⁕

In sum, Uber has directly violated the document destruction, concealment, cover-up, and falsifications provisions of Sarbanes-Oxley in an effort to obstruct or impede active and future government investigations through the (1) acquisition and use of ephemeral communications programs; (2) the acquisition and use of non-attributable hardware and software; and (3) the wholesale abuse of attorney-client privilege designations.

Clark and Henley's directives described above specifically implicate ongoing discovery disputes, such as those in Uber's litigation with Waymo. Specifically, Jacobs recalls that Jake Nocon, Nick Gicinto, and Ed Russo went to Pittsburgh, Pennsylvania to educate Uber's Autonomous Vehicle Group on using the above practices with the specific intent of preventing Uber's unlawful schemes from seeing the light of day. Jacobs' observations cast doubt on Uber's representation in court proceedings that no documents evidencing wrongdoing can be found *on Uber's systems* and that other communications are actually shielded by the attorney-client privilege. Aarian Marshall, *Judge in Waymo Dispute Lets Uber's Self-driving Program Live—for*

---

[4] Penetration means unauthorized access, typically through impersonation of a partner-driver or taxi operator.

9

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 624 -

*Now*, wired.com (May 3, 2017 at 8:47 p.m.) ("Lawyers for Waymo also said Uber had blocked the release of 3,500 documents related to the acquisition of Otto on the grounds that they contain privileged information. . . . Waymo also can't quite pin down whether Uber employees saw the stolen documents or if those documents moved anywhere beyond the computer Levandowski allegedly used to steal them. (Uber lawyers say extensive searches of their company's system for anything connected to the secrets comes up nil.)"), *available at* https://www.wired.com/2017/05/judge-waymo-dispute-lets-ubers-self-driving-program-live-now/.

### III.    Illegal Intelligence Gathering

Uber has engaged, and continues to engage, in illegal intelligence gathering on a global scale. This conduct violates multiple laws, including some that are extra-territorial in scope.

#### A.   Theft of Trade Secrets

The Economic Espionage Act of 1996, as amended by the 2016 Defend Trade Secrets Act, makes it unlawful to misappropriate and steal trade secrets. Defend Trade Secrets Act, Pub. L. 114-153, § 2(b)(1), 130 Stat. 376 (2016). This statute is extra-territorial in scope: "Trade secrets" under the Economic Espionage Act, as amended, is broadly defined and includes "all forms and types of financial, business, . . . technical, economic, or engineering information, including patterns, plans, compilations, methods, techniques, processes, procedures, programs, or codes," if the owner (1) has taken reasonable measures to keep such information secret and (2) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information. "Misappropriation" includes but is not limited to "the acquisition of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means." It also includes the disclosure or use of a trade secret of another without express or implied consent by a person who (1) had used improper means to acquire knowledge of the trade secret or (2) had reason to know that the knowledge of the trade secret was derived from a person who had used improper means to acquire the trade secret or from a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret. "Improper means" includes "theft, bribery, *misrepresentation, breach or inducement of a duty to*

10

Adam John Mackintosh—vs—Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 625 -

*maintain secrecy*, or espionage through electronic or other means." These definitions hew closely to other trade secrets laws, including the California Uniform Trade Secrets Act. Cal. Civ. Code § 3426, *et seq*.

The theft of trade secrets is also a criminal violation under federal law. 18 U.S.C. § 1832. One is criminally liable if, among other things, one (1) steals, or *without authorization appropriates*, takes, carries away, or conceals, *or by fraud, artifice, or deception obtains a trade secret*; (2) without authorization *copies, duplicates, downloads* or uploads a trade secret; or (3) *attempts or conspires with one or more persons to commit engage in such conduct*. Like the Uniform Trade Secret Act, the California Uniform Trade Secrets Act prohibits "misappropriation" of trade secrets and provides certain remedies. In addition, California law also allows for criminal penalties for stealing trade secrets. Cal. Civ. Code § 3426, *et seq*; Cal. Penal Code §§ 499c, 502.

Section 3 of the Defend Trade Secrets Act also amended section 1961 under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. The amendment added economic espionage and, particularly pertinent here, theft of trade secrets to the list of predicate offenses that may be considered "racketeering activity" under RICO. Defend Trade Secrets Act, Pub. L. 114-153, § 3(b), 130 Stat. 382 (2016); *see* 18 U.S.C. § 1961(1). RICO applies extraterritorially where the underlying predicate statute is itself extraterritorial. *RJR Nabisco, Inc. v. European Community*, 130 S. Ct. 2090, 2103 (2016). The intracorporate conspiracy doctrine, which holds that a corporation cannot conspire with its own officers while the officers are acting in their official capacity, does not apply to section 1962(c) of RICO. *Cedrick Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 166 (2001) (holding that an employee who conducts his corporation's affairs through illegal acts comes within section 1962(c)'s terms forbidding any "person" to unlawfully conduct an "enterprise"). In any event, it is clear that Uber has conspired with multiple other business entities to participate in a pattern of racketeering activity at home and abroad. *See* 18 U.S.C. § 1962(d).

California prohibits "unlawful, unfair, or fraudulent business acts and practices." California Bus. & Prof. Code § 17200, *et seq*. Uber has violated, and continues to violate, Code § 17200 through its unlawful attainment of trade secrets, and additional unlawful conscribed throughout this letter.

11

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 626 -

Uber's Marketplace Analytics (MA) team, exists expressly for the purpose of acquiring trade secrets, codebase, and competitive intelligence–including deriving key business metrics of supply, demand, and the function of applications–from major ridesharing competitors globally.

Jacobs is aware that the MA team fraudulently impersonates riders and drivers on competitor platforms, hacks into competitor networks, and conducts unlawful wiretapping (each tactic discussed in additional detail below). These tactics are used to obtain trade secrets about:

- the function of competitor's apps;
- vulnerabilities in the app, including performance and function;
- vulnerabilities in app security;
- supply data, including unique driver information;
- pricing structures and incentives.

These tactics were employed clandestinely through a distributed architecture of anonymous servers, telecommunications architecture, and non-attributable hardware and software. This setup allows the MA team to make millions of data calls against competitor and government servers without causing a signature that would alert competitors to the theft. For instance, a sophisticated competitor ▇▇▇▇▇ would set thresholds when they see devices attempting to request rides by the hundreds or thousands in a short period of time. However, if the data calls are diversified across what appear to be multiple devices and a broader time period, filters would not detect the anomaly.

In the summer of 2016, SSG specifically hired Ed Russo to further develop its intelligence program. Russo is a retired government employee Uber identified as having language skills and cultural insights that would be be effective at gathering intelligence for Uber in the ▇▇▇▇▇ region. His official title was Senior Risk and Threat Analyst, but he was actively engage in HUMINT and identifying market penetration opportunities for Uber in ▇▇▇▇ ▇▇▇▇▇) specifically. Part of his role was to enable competitive intelligence and the theft of trade secrets by recruiting sources within competitor organizations. He vetted insiders, and identified those who were willing to provide Uber with competitive trade secrets. Jacobs is aware that Uber used the MA team to steal trade secrets at least from Waymo in the

12

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 627 -

U.S., ███████████████████████████████████████████
███████████████████

### Waymo

Shortly after the Otto "acquisition," Ed Russo presented a "fictionalized" account of SSG's recent contributions to Uber employees, including Jacobs. He asked his audience to consider a situation in which the CEO of a large company sought to acquire a smaller startup with industry-changing technology in the large company's field. Russo boasted that SSG, using ex-CIA field operatives skilled in counter-surveillance, could ensure the secrecy of meetings between the companies' CEOs for months before any acquisition was announced or finalized. Given the timing of this presentation, immediately following Otto's acquisition, when Jacobs and others heard Russo's so-called fictionalized account, they assumed Russo was alluding to the actual events surrounding the Otto acquisition.

Of course, by the time of its acquisition, Otto was just eight months old. Nevertheless, Uber acquired this eight-month-old company at an estimated cost of $680 million. Then, as stated above, shortly after the acquisition and just three weeks before the rollout of Uber's Autonomous Vehicle Group in Pittsburgh, Russo, Gicinto, and Nocon travelled to Pittsburgh and educated the team on using ephemeral communications, non-attributable devices, and false attorney-client privilege designations with the specific intent of preventing the discovery of devices, documents, and communications in anticipated litigation. These facts corroborate Google's legal theory in pending litigation that Otto was simply a shell company whose sole purpose was to dissemble Uber's conspiracy to steal Waymo's intellectual property.



██████████████ Uber worked to unlawfully obtain trade secrets from ███ MA 1) remotely accessed confidential ███ corporate communications and data, 2) impersonated riders and drivers on ██████ platform to derive key functions of ██████ rider and driver apps, 3) stole supply data by identifying possible drivers to boost Uber's market position, and 4) acquired codebase which allowed MA to identify code used by ████ to understand in greater detail how ████ app functioned.

13

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 628 -

By credibly impersonating both riders and drivers, the MA team could request thousands of rides in a given geographic area to study the responsiveness and capability of ███ app, price quotes, and disposition of available drivers. MA further impersonated prospective customers to ascertain the identity of drivers through their names, license plate numbers, and make/model of their vehicles. Uber then used this information to recruit competitors to Uber's platform. MA also obtained key technical details about how ███ would troubleshoot issues in comparison to Uber, and then used that data to develop contingencies to slow or impede ███ business operations.

Not only was Uber able to obtain ███ trade secrets, but used the data it obtained to inflate the ultimate valuation of Uber ████████████████████████████████ ████████████████████████████████████████████████████████

Travis Kalanick explained in a company all-hands meeting that ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ a value that was inflated by data Uber had unlawfully obtained through the tactics described above.

██████████ ████████████████████████████ became the next logical target of MA and SSG activities after the ████████████████████████████████ MA again employed tactics to obtain ███ trade secrets, with a focus on stealing key supply data to boost Uber's pool of drivers, the function of the app and its vulnerabilities, and then used that data to develop an aggressive "counter intelligence" campaign to slow ███ efforts.

████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ Upon arrival, Jacobs delivered the envelope to MA's Senior Manager, Kevin Maher, and subsequently learned that SIM cards within the envelope would be used to collect intelligence on ███ trade secrets. The use of SIM cards ████████████████████████████████████████████████████████ ██████████████████

14

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 629 -

Specifically, the SIM cards were used to fraudulently impersonate customers on ▮▮ rider and driver applications. By credibly impersonating riders and drivers, the MA team could: (i) develop processes to conduct thousands of data calls to reverse engineer products; (ii) identify and recruit supply (i.e. partner drivers); (iii) and derive key competitive business metrics to understand subsidies, available supply, processes for managing surge, and competitive market position. For instance, MA would be able to study key technical details of how ▮▮ had engineered solutions to common problems ride-sharing providers have at scale, and in the context of dense population centers like ▮▮ Uber would then use that data to identify possible improvements, gain competitive advantages, or exploit weaknesses of ▮▮ platform.

One tactic used by Uber to obtain trade secrets was by capturing "virtual walk-ins"—a term for a source who contacts an organization through the Internet to volunteer insider information and is prepared to provide Uber with trade secrets. On at least one occasion in fall 2016, Ed Russo vetted a purported virtual walk-in with information regarding ▮▮ ▮▮ maintains an active HUMINT source in ▮▮ senior leadership team. Here, SSG vetted the virtual walk-in source by sending the intelligence collected to ▮▮ ▮▮ To date, Jacobs is aware Uber still benefits from at least one well-place HUMINT source with access to ▮▮ executives and their collective knowledge of ▮▮ on-going business practices.

▮▮

▮▮ has been the MA and SSG focus in ▮▮ over the past six months. Notably, the MA team identified a vulnerability in ▮▮ and collected comprehensive supply data, including the license, name, and contact information for every single ▮▮ driver around October/November 2016. Similarly, MA targeted not only the supply data from ▮▮ but also key business metrics, business strategy information and basic functionality of ▮▮ and security of their data. Targeting this trade secret data was all aimed to gain unfair advantage for Uber.

▮▮ ▮▮—a senior software engineer on the MA team—delivered these collections directly to Kalanick. In November 2016, ▮▮ continued his competitive

15

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 630 -

intelligence activities on the ground against the ███████████ Like a "scalp" collected, the MA team proudly has a ███████ nailed to the wall in their workplace to signify their successful theft of ███ trade secrets.

██████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████ proposed that if Uber headquarters could hack the database and collect all driver information, it would have a perfect set of possible drivers for Uber's platform and could boost supply by targeting these operators and convert them to drivers for Uber.

Wanting to keep Uber's unlawful tactics under the radar, Clark directed Jacobs to get the initial information over to ████ and the MA team, but not to inform Uber's ██████ team that Uber had an in-house team of engineers capable of conducting this type of work. After initial investigation, ████ advised that the database in question requires users to individually enter the license plate number of a known taxi-driver and enter a Captcha,[6] to access the driver's record. ████ explained that he could program a dispersed architecture of non-attributable servers to conduct the data calls over a period of weeks and extract the information without the website's administrators realizing that Uber had extracted the entire dataset. He was given the "green light" to proceed with his plan.

The data calls needed to be distributed over a network of computers unaffiliated with Uber. It would take approximately four million calls for data to cover the full spectrum of possible ████████ taxi-license variations. ████ also explained that he would need to write or purchase a code to defeat the Captcha on this particular website. Within a few days, ████ had overcome these hurdles and began running the program.

Within approximately two months, Uber had successfully obtained ████████ ████████████ trade secrets with the complete download of its driver database by

_____

[6] A program or system intended to distinguish human from machine input.

16

Adam John Mackintosh—vs—Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 631 -

██████. It contained approximately 35,000 taxi driver records. The database was built into a dashboard to be provided to the ████████ team, but was not immediately delivered. Uber learned of ongoing legal trouble at its ████████ location and concerns about an unexpected visitor (UEV) event—a term describing situations when local authorities might raid an office or show up unexpectedly to request data or seize media—that could expose the hack to government authorities. Consequently, ██████ maintained control of the data stolen from the ████████ taxi website.

### B.   Impersonation

As discussed above, Uber used driver and customer impersonation to steal competitor trade secrets. This conduct not only violated the trade secrets law discussed above, but also wire fraud law at 18 U.S.C § 1343, and California Penal Code § 528.5. Under this section, it is unlawful to knowingly and without consent, credibly impersonate another actual person through the Internet or email, in order to harm, intimidate, threaten, or defraud someone. This conduct further exposes a company to civil liability under Section 528.5(e). This impersonation was intended to fraudulently steal business and was an "unlawful, unfair, or fraudulent business act[] and practice[]." California Bus. & Prof. Code § 1720. It is also in violation of the CFAA and related laws, discussed below in § C.

Along with the theft of trade secrets, Jacobs observed SSG personnel, through their LAT[7] operatives and their vendors, knowingly impersonate actual people over the Internet in order to to keep tabs on competitors and opposition groups by accessing closed social media groups. This impersonation had the purpose of fraudulently stealing business and gaining a competitive advantage.

During the summer of 2016, Jacobs learned that city teams in other locations impersonated partner-drivers or taxi operators to gain access to private WhatsApp group messaging channels. Jacobs further investigated this conduct by searching Uber's internal

---

[7] LAT operatives are CIA-trained case officers fielded by Gicinto. They are capable of collecting foreign intelligence in priority locations for Uber. They are commercially covered, deeply back-stopped business persons with established reasons to travel to high priority locations important to Uber on little notice. They conduct business meetings, but collect intelligence for Uber on the side. Around early-to-mid 2016, they quickly became Uber's stable of non-official cover operatives. These independent contractors were given the meaningless acronym "LAT" to protect discussions about this resource and poke fun at Tal Global, a former vendor who provided intelligence collection support to Uber. LATs were seen as the opposite of Tal, who Uber had discontinued working with due to their low quality work.

17

Adam John Mackintosh —vs— Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.

- 632 -

network, TeamDot. He discovered a playbook created for the [redacted] operations team on how to infiltrate such closed social media groups. Jacobs immediately advised Clark of the documentation, removed the document from TeamDot and admonished the city team not to conduct such activities.

In late October 2016, in a regularly-scheduled Sync (one-on-one) meeting with Clark and Gicinto, Jacobs once again raised concerns about the legality and ethics of using impersonation tactics to gather the data that Uber was utilizing to monitor private groups. In one instance, SSG had begun using a vendor and LAT operative in [redacted] This individual was tasked with penetrating opposition groups, and collecting information about local political figures and parties, including virtual penetrations in WhatsApp. Jacobs reported that infiltrating WhatsApp groups was unlawful and would get Uber kicked out of [redacted] His concerns were ignored.

In another instance, in early January 2017, Jacobs received an email from [redacted] [redacted] This playbook was a guide to combatting regulatory and enforcement activities slowing Uber's operations in [redacted] The presentation—which was shared across [redacted] operations teams—was intended to capitalize on the lessons learned in [redacted] and share practices across the region.

The PowerPoint presentation included a section on "intel gathering," a slide on driver chat group infiltration, and a link to the specific procedures for infiltrating driver-partner chat groups (including the impersonation of actual driver-partners) to collect information on growing discontent and possible opposition activities. Upon receipt, Jacobs disclosed the playbook to Clark, who replied, "Do I want to know what it is?" Jacobs voiced concern as to its legality, noting that it encouraged "intel gathering" and described how to penetrate WhatsApp groups. Clark only replied that "this is happening everywhere and I'm not ready to deal with it." Clark did not investigate the presumed criminal violation.

In late January and early February 2017, as part of SSG's virtual operations capability (VOC), SSG brought in [redacted] [redacted] by posing as a sympathetic protestor interested in participating in actions against Uber. By doing this, [redacted] illegally gained access to closed Facebook groups and chatted with protesters to attempt to understand their nonpublic plans and intentions.

18

Adam John Mackintosh—vs --Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 633 -

To the last point, in mid-March 2017, Jacobs learned through members of his former team that Henley leveraged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to access and investigate closed or private Facebook protest groups in ▮▮▮▮▮▮▮ to understand who might protest against Uber ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This access represents at least a violation of Facebook privacy standards and unethical ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮

## C. Unlawful Surveillance

### 1. Illegal Wiretapping under California Law

During his employment, Jacobs observed conduct that violated the California Penal Code Section 631 and Section 632. Section 632 prevents a person or entity from intentionally using any kind of machine or instrument to tap into or make an unauthorized connection into a telephone line. It also disallows willfully reading or trying to read the contents of any message that has passed over a wire, unless there is permission from all parties to the message. It bars the use, attempted use, or communication of any information gained in this way. And lastly, it makes it illegal to aid or conspire to do any of the above. The California Penal Code Section 632 makes it illegal to intentionally, without the consent of all parties to the communication, use a device to amplify or record a conversation.

Uber's surveillance and collections operations against ▮▮▮▮ executives, discussed below, also apparently violate the federal Wiretap Act. 18 U.S.C. § 2510 *et seq*. Sections 2510 and 2511 prohibits the interception, attempted interception, and use of oral communications—those communications uttered by a person having a reasonable expectation of privacy in the communication.

Over a two-to-three week period beginning early June 2016, Henley, Gicinto, and Sullivan coordinated multiple surveillance and collections operations against ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This included recording of mobile phone video and/or photography during private events in ▮▮▮▮▮▮▮▮▮▮▮▮▮

To do this, multiple surveillance teams infiltrated private-event spaces at hotel and conference facilities that the group of ▮▮▮ executives used during their stay. In at least one instance, the LAT operatives deployed against these targets were able to record and observe

19

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 634 -

private conversations among the executives—including their real time reactions to a press story that Uber would receive $3.4 billion dollars in funding from the Saudi government. Importantly, these collection tactics were tasked directly by Sullivan on behalf of Uber's CEO, Travis Kalanick. Upon information and belief, these two Uber executives, along with other members of Uber's executive team, received live intelligence updates (including photographs and video) from Gicinto while they were present in the "War Room" ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ As proof or perhaps to gloat about the surveillance, Gicinto later showed Jacobs pictures and screen captures from the unlawfully recorded content.

As a part of this surveillance, Gicinto asked Jacobs to develop targeting packages on ████ leaders to improve SSG efforts to collect intelligence on these figures and work to develop a mole or internal source of information among the ████ leadership team. Jacobs had concerns over the legality of this assignment and ultimately chose not to respond to the request. Instead, he began developing his own strategy for intelligence gathering that did not involve tactics which Jacobs believed to be illegal.

Additionally, Uber violated California Penal Code Section 632, and likely the federal Wiretap Act, by improperly recording ████████████ call following allegations of sexual harassment by a former Uber employee. Uber did not tell the participants that the call was being recorded and accordingly had not received permission from the call participants to record it, as required by California law. This was a particularly egregious violation given the sensitive subject of the call and the stated objective to hold anonymous and candid Listening Sessions. Not only did Uber unlawfully record the call, but the Investigations team, ████████████ ████ used the recording, along with other egregious and purposeful violations of personal privacy to identify a ████████████████████████ This employee subsequently separated from Uber.

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.

## 2. Illegal Hacking in violation of Computer Fraud and Abuse Act

The Computer Fraud and Abuse Act (CFAA) outlaws accessing certain computers or computer systems without authorization or in excess of authorization, with the intent to defraud. 18 U.S.C. §1030(a)(4), (e)(2) says:

> (a) Whoever ... (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period ... shall be punished as provided in subsection (c) of this section.... (e) As used in this section ... (2) the term 'protected computer' means a computer – (B) which is used in or affecting interstate or *foreign commerce or communication, including a computer located outside the United States* that is used in a manner that affects interstate or *foreign commerce* or communication of the United States. (Emphasis added.)

Accordingly, the CFAA has extraterritorial reach.

California Penal Code Section 502 bars similar behavior. Part 1 makes it illegal to knowingly access and without permission, alter or use any data or computer system or network, to devise or carry out a plan to defraud, deceive, or extort, or to wrongfully control or obtain money, property, or data. Part 2 makes it illegal to knowingly access and without permission, take or use data from a computer or network, or take any supporting documentation, whether internal or external to a computer or network. Part 3 makes it illegal to knowingly and without permission use computer services or cause them to be used. Part 5 makes it illegal to cause a disruption in service to an authorized user. Part 6 makes it illegal to knowingly and without permission help someone else access a computer in a manner that violates this law. And Part 7 makes it illegal to knowingly and without permission access or cause to be accessed any computer, computer system, or computer network.

As discussed above, Jacobs was aware of many instances where computer hacking tactics were deployed to obtain trade secrets and to infiltrate closed social media groups. Two specific

21

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 636 -

instances are reiterated here to illustrate how the conduct violates the laws discussed in this section.

████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████ Uber's intent in accessing this protected computer database was to lure these drivers away to work for Uber instead. As noted above, the database was protected by "Captcha" to prevent the sort of automated downloading that Uber's MA team intended to carry out. MA was ultimately successful in hacking the system and obtaining the driver database. Because Uber knowingly accessed a protected computer in order to fraudulently capture its valuable contents to gain a competitive advantage, the hack violates the CFAA, as well as California Penal Code Section 502.

███

██████████████████████████████████████████████████████

███████████████████████████████████████ As noted above, Uber used SIM cards████████████████████████████████████████████████████████

█████████████████ The SIM cards allowed Uber to hack into the █████████

████████████ Through Uber's hack it was able to learn how ████ system operated, steal ideas, exploit any identifiable weaknesses and identify drivers in order to recruit them to Uber.

### 3. Unlawful Phone Toll Analysis

At the beginning of July, 2016, SSG, with the support of Clark and the planning of Gicinto, began mobile-phone collections in ███████████████ One of Gicinto's LATs had a "new technical capability" to conduct collections of mobile-phone call records and mobile-phone link analysis on opposition figures, politicians, and government regulators in █████

████ To do this, the LAT operative collected mobile-phone metadata either directly through signal-intercept equipment, hacked mobile devices, or through the mobile network itself. The information eventually shared with Jacobs and others included call logs, with time and date of communications, communicants' phone numbers, call durations, and the identification of the mobile phone subscribers. The subsequent link-analysis of this metadata occurred on U.S. soil

22

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 637 -

and revealed previously unknown, non-public relationships between Uber opposition figures, politicians, and regulators with unfavorable views on Uber and the ride-sharing industry.

At the beginning of September, 2016, Jacobs met with Gicinto and Clark and raised the issue of mobile phone collections in ▮▮▮▮ Specifically, Jacobs challenged Gicinto and Clark on the legality of SSG's intelligence collections, citing the mobile phone collections that occurred in ▮▮▮▮ as a prime example. Clark discounted Jacobs' concerns, claiming that ▮▮▮▮ laws are different. Certainly, such activities were not lawful and violated at least the CFAA.

## VI.    Other Likely Illegal Conduct

During the course of Jacobs' employment he observed Uber engage in targeted business practices aimed at gaining the support of government officials in foreign countries. Many of these efforts involved similar surveillance conduct to that discussed above and likely involve violations of foreign government civil and criminal laws. Its conduct further exposed Uber personnel to personal and professional harm.

### A.  Espionage

▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Specifically, the LAT operative collected details on ▮▮▮▮ including: information on these firms' connections to political and regulatory officials, their data sharing agreement and connection to the ▮▮▮▮▮▮▮▮▮▮▮▮ their efforts to replace Uber in ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and their investments in the taxi sector in ▮▮▮▮ These facts demonstrate that vendors, directed by Uber employees, conducted foreign espionage against a sovereign nation despite Jacobs's objections.

▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 638 -

██████████████████████████████████████████████ SSG wanted to determine which political figures may have been supporting opposition groups in the taxi/transport sector, and those who had issued orders to the ██████████ to begin targeting Uber vehicles for harassment and impoundment.

The intelligence collected identified the political connections of each person or group and detailed the size of their stake in the taxi ████████████████████████████████ ████ Information on their government connections provided insight into whom among the group might have the political clout and motivation to direct aggressive enforcement activity against Uber, and who might be compelled to end costly enforcement activities or partner with Uber to unblock the market and open up the supply of partner-drivers out of shared financial incentive.

████████████

█████████████████████████████████████████████████ was trying to gather threat intelligence on taxi groups, unions, and agitators harassing Uber partner-drivers in the area. To do this, ████ used undercover agents to collect intelligence against the taxi groups and local political figures. The agents took rides in local taxis, loitered around locations where taxi drivers congregated, and leveraged a local network of contacts with connections to police and regulatory authorities.

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████ SSG had collected intelligence on opposition groups in ██████

█████████████████████████████████████████████████████

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 639 -

to attempt to verify threats from taxi union officials against ██████████ ███████ and to investigate arson attacks on Uber partner-driver vehicles.

SSG then tasked a LAT operative, with an active intelligence source network in ████ ████ to begin HUMINT collections on opposition groups, taxi union officials, and government leaders. The goal was to determine the plans and intentions of union groups, the veracity of physical threats to Uber employees, the identification of political leaders who were pushing an anti-Uber agenda, and what political leaders may be persuaded to stop any opposition. SSG used these collections as an opportunity to introduce their LAT virtual operations capacity.

That is, a U.S. based LAT operative impersonated a taxi driver who was sympathetic to Uber opposition in ██████████, established bona fides with the administrator of a private WhatsApp chat group administered by ████████████████████████, and was eventually admitted into the group, through which the LAT could monitor private communications to identify persons involved in Uber opposition, as well as their plans and intentions.

Moreover, between August and November 2016, SSG tasked a LAT operative to collect intelligence on ████████ government officials to determine if a senior political official would be willing to push a ride-sharing agenda through the city or national government. Similarly, between October 2016 and January 2017, ████████ or one of the LAT operatives he managed, maintained access from the U.S. to closed and private ████████ taxi groups and communications channels. This access meant SSG had screenshots of communications, and could interact with drivers through chat. These collections identified the names of taxi operators most adamantly opposed to Uber's operations, included pictures of these individuals, and provided warning of possible incidents and protests.

Worse yet, in January 2017, ████████████████████████████ contacted Jacobs on Wickr and advised they "had a bug in a meeting with transport regulators," and that they "needed help cleaning up the audio." Jacobs immediately contacted Clark and informed him of the unlawful request. Clark instructed Jacobs to tell the city team that Uber did not have the technical capabilities to assist, encourage them not to transmit the audio, and convince them to "make it go away." Clark did not investigate the presumed criminal violation.

25

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 640 -

**B. FCPA – 15 U.S.C. § 78dd-2.**

The Foreign Corrupt Practices Act (FCPA) prohibits an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to any foreign official, or to any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official for the purposes of influencing any act or decision, or to use their influence affect any act or decision of a foreign government.

During the course of his employment, Jacobs heard about the practice of bribing foreign government officials. Based on his knowledge of targeting foreign officials to identify those with influential power, and the rapid insights into new markets without longer-term HUMINT development he observed in several occasions, Jacobs reasonably believed that bribery of foreign officials was taking place. Specifically, he believed this conduct to be going on in multiple areas including ███████████████████████████████████████████████████ ████████████████████████████ Jacobs believes that violations of the FCPA took place and would likely be shown through discoverable evidence. Jacobs was aware that Uber was targeting government officials in order to learn:

- who might be compelled to end costly enforcement activities or partner with Uber to unblock the market;
- what local network of contacts has connections to police and regulatory authorities;
- what political leaders may be persuaded to stop any opposition; and
- if senior political officials would be willing to push a ride-sharing agenda through the city or national government.

Additionally, Jacobs is aware of Uber paying foreign third party vendors inflated wages, the excess of which could be used to purchase information. With this information in mind, we anticipate that discovery will confirm Jacobs' reasonable beliefs bribes were being offered to government officials to benefit Uber.

26

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 641 -

**VII.    Jacobs' Employment Experiences and Uber's Retaliation Against Him**

    **A.  Jacobs Is Quickly Introduced to ThreatOps' Disturbing Corporate Culture but Sets a Positive and Successful Course for Global Intelligence**

Two or three days after he was hired as Uber's Manager of Global Intelligence, Jacobs was called into an unscheduled meeting with



Jacobs declined to participate, artificially chalking up his reticence to being new and not understanding the limits of what was appropriate to pursue. This introduction to Uber's corporate culture within ThreatOps was disturbing to Jacobs.

Nonetheless, Jacobs proceeded to lead the team for which he was responsible, Global Intelligence, in a manner that caused it to grow from a small narrow focus to a much more sophisticated, developed and organized team that effectively worked towards its team goals and provided substantial support to ThreatOps. He was respected by his reports and peers and did not receive any critiques or warnings from any of his managers – until it became clear to Uber that he would not participate in Uber's ongoing illegal schemes.

    **B.  Jacobs Discloses and Objects to Illegal Conduct in the Summer of 2016**

Through the first three months of Jacobs' tenure, he had worked to develop his own intelligence program to distance the intelligence analysis function from SSG's illegal intelligence

27

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 642 -

collections. Jacobs' program was inherently safer than SSG's HUMINT collection mechanisms, because it would employ only reputable, overt, and long-standing vendors. In contract, SSG's growing HUMINT collection capabilities needlessly exposed Uber and its employees to severe risk—including the likely termination of Uber's operations and possible imprisonment of its employees—should capable security services in many overseas locations discover Uber's espionage.

To that end, Intel was developing in ways where it could work with city teams and regional leadership, flesh out intelligence requirements and attempt to resolve these requirements with open source research, or other overt vendor services, limiting the need to use SSG resources. Similar or better results were obtained through enhanced social media analysis, web scraping, improved vendor services in the area of network analysis and geopolitical analysis, and consulting services. Over time, Intel could develop professional networks to benchmark, get ground-truth and produce all-source intelligence analysis without resorting to covert HUMINT collections. This suite of tools and services would lower Uber's overall spend, expedite the delivery of insights, and eliminate risk. Despite these compelling arguments, Jacobs was rebutted at every step and ordered to make use of SSG resources.

On June 15, 2016, Jacobs held a meeting with Henley, Clark, and Kieu Lam—at the time Jacobs' supporting project manager—in San Francisco while Gicinto attended via Zoom. The purpose of the meeting was to discuss the establishment of a central intelligence database to preserve information, intelligence, research, and finished reports. Jacobs emphasized that a central repository of information would enable Uber's analysts to quickly familiarize themselves with previous work done where Uber operates. Jacobs thus advocated for a secure and encrypted database to ensure confidentiality and presented a draft proposal to the group. Discussions broke down immediately as the group objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants. Clark emphasized that this was "exactly what we don't want to do . . . create [a paper trail] that could later be discoverable." Clark highlighted the errors of past collections where Uber was forced to turn over documents. He alluded to the lessons learned from the "Ergo Investigation" and noted that encryption alone was not enough to avoid discovery. Gicinto added his own objections, stating that while his team would be willing to share some details on collections, including sources and methods of

28

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 643 -

collections on the ground in foreign countries, they were not willing to preserve the raw intelligence on Uber's network.

Jacobs then objected and proffered that if what Uber was doing was actually legal, there should be no problem having a central database so long as unauthorized personnel cannot inadvertently access it. However, the other meeting participants were firm in their objections, remained fixed on using HUMINT collection mechanisms, and repeatedly emphasized the requirement for Intel and SSG to work together. Jacobs' idea was effectively gutted. On June 16, 2016, Gicinto, Lam, and Jacobs met to review requirements for the intelligence database in light of the previous day's discussion. Jacobs again raised objections to engaging in activities that were deemed too confidential to document in any way, and noted that without preservation of the raw intelligence there was no need for an intelligence database.

As described above, June of 2016 was also the time when Henley, Gicinto and Sullivan coordinated multiple illegal surveillance and collections operations against ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As proof of his prowess or perhaps to gloat about the surveillance, Gicinto later showed Jacobs pictures and screen captures from the unlawfully recorded content. When Gicinto asked Jacobs to develop targeting packages on ▮▮▮▮ leaders, Jacobs expressed concerns over the legality of this assignment, delayed any response, and ultimately ignored the request.

On June 29, 2016, Jacobs and Pooja Ashok, Sullivan's Chief-of-Staff, had a one-on-one meeting where Jacobs presented his intelligence program strategy, which used ethical, legal, open-source methods. Jacobs' goals were to diversify intelligence vendors, reduce risk and expense by using publicly-available information sources instead of covert intelligence collection, and working threats proactively to provide long-range forecasting instead of tactical responses to existing threats.

Per Henley's instructions, Jacobs' presentation included a slide with blocks representing the different sources of information the Intel team used to conduct analysis. The blocks, which were color-coded from white to black representing overt to covert collection, respectively, depicted two blocks where no specific vendor or capability was named. One represented LAT collections and the other represented mobile phone collections. Ashok asked, "Why do we have vendors we can't even put on a slide deck?" Jacobs used the question as an opening to raise

29

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 644 -

objections about Gicinto's recent surveillance and collection against ██████████ ) Ashok appeared to share those concerns. She asked Jacobs if the ██████ collections were worth the risk, and if they accomplished anything more than "addressing the paranoia of executives." Jacobs replied that it was just paranoia and "we should not be doing it."

On July 5, 2016, emboldened by his earlier discussions with Ashok, Jacobs raised objections regarding unethical and unlawful intelligence collections and further described his outlook for the Intel team to Henley. Jacobs described the changes he would make and how evolution would take Uber into proactive and strategic work that could be handled internally, and would eliminate the need to outsource collections through SSG.

For example, Jacobs explained that his approach would enable Intel to conduct due diligence on potential fleet partners to identify reputable companies who already had constructive relationships with local authorities in foreign countries. This was a way to boost Uber supply in foreign countries, rather than stealing supply data virtually or through HUMINT collections targeting politicians and business persons to identify a similar set of candidate firms. Additionally, Jacobs described how his team could conduct "influencer mapping," to describe for the business how decisions are made in a local context, who truly holds power over the regulatory and enforcement activities affecting Uber, and how Uber should target its engagement strategy for the best long-term success for business growth. This was a legitimate way for Uber to find out who controlled foreign markets and who Uber should negotiate with, instead of getting information through unlawful collection methods.

Discounting Jacobs' approach, Henley only emphasized, "You need to continue working with Nick [Gicinto] as one team." Jacobs heard this response as telling him not to resist Gicinto's illegal methods of collecting information.

### C. Jacobs Discloses and Objects to Illegal Phone Collections and Other Illegal Conduct in the Fall of 2016

On September 1, 2016, Jacobs held a Sync (one-on-one) with Gicinto and Clark and raised the issue of mobile phone collections in ██████ Jacobs had earlier become aware of this conduct and believed it was critical to eliminate or at least limit the Intel team's involvement with anything related to those types of illegal data collections. Specifically, Jacobs questioned the legality of collecting intelligence necessary for the analysis, which targeted ██████ )

30

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 645 -

politicians, regulators, and taxi union officials. Clark offered the excuse that "the laws are different in ███" Discounting Jacobs' concerns, Gicinto suggested that while he and the LAT operatives had conducted espionage in their previous careers they were "all Boy Scouts now."

After raising objections to the legality of these practices, Jacobs was not privy to additional collections of this type. But Clark initiated a weekly one-on-one meeting with Jacobs to "align on legal questions." Jacobs understood this to be a reaction to him questioning the ethics and legality of Uber's practices, and an effort by Clark to ensure he had an adequate pulse on Jacobs' concerns with the work Clark was attempting to keep hidden.

In their first such meeting, Jacobs reiterated the risk of continuing these types of intelligence collections. He further voiced concern with the technical collections as described in ██████████ as well as identical collections undertaken in ███████ against opposition figures and government officials. Clark used the discussion as an opportunity to emphasize the security practices he had developed, specifically around the need to communicate via phone, Zoom or Wickr, and ostensibly abuse attorney-client privilege to protect those practices from disclosure.

On October 27, 2016, in a regularly-scheduled Sync meeting with Clark and Gicinto, Jacobs once again raised concerns about the legality and ethics of the intelligence collection tactics being employed by Uber in ███ as discussed above, specifically, using impersonations to infiltrate private groups. Both Gicinto and Clark responded as they always had, dismissed his concerns, and defended their actions.

### D. Jacobs Discloses and Objects to Illegal Conduct in Early 2017

The new year did not yield a new and more legal approach to the work of ThreatOps. Its teams continued to engage in illegal conduct and Jacobs continued to try to steer the boat another way. In January 2017, Jacobs informed Clark, as discussed above, that a ████████ team member had illegally bugged a meeting. Clark did nothing.

In early January, 2017, Jacobs became aware of the ███████████ discussed above and reported it to Clark. Although it promoted illegal intel gathering Clark dismissed Jacobs' concern and did nothing about it.

31

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 646 -

During a March 8, 2017, meeting between Jacobs and Gicinto, Jacobs questioned the hiring of two additional people who were allocated to the newly-formed Strategic Intelligence team, discussed below. Gicinto said the two positions were intended to support Uber's Autonomous Technology Group ("ATG"), but because of the recent lawsuit by Waymo against Uber, Strategic Intelligence would keep them off the ATG books while litigation was ongoing. Gicinto, working with both Clark and Henley, said this would enable Uber's competitive intelligence efforts to remain hidden and protected from discovery or any legal proceedings. Jacobs understood this to be yet another effort to obscure the actual structure and function of ThreatOps from possible litigation, given that the existence of a team designed to steal competitor data (MA), and human-intelligence experts (SSG) engaging in theft and fraud to access unauthorized data, would be detrimental to any pending litigation.

**E. Uber Retaliates**

On January 19, 2017, during the monthly ThreatOps Leads meeting, Henley publically embarrassed Jacobs by divulging negative feedback (a "B" or one of Jacobs' "Bottom" qualities needing improvement) intended for Jacobs' performance review. Referencing Jacobs' upcoming review, Henley stated, "[Jacobs] hasn't heard this yet, but when I get feedback that there are missteps between ThreatOps and PhySec and we need to improve process, I know we need to work on our communications across security."

To downplay the inappropriateness of Henley's disclosure of this confidential information, Jacobs asked facetiously, "I'm going to assume that's an excerpt of one of my T's (a term used to describe a "Top" quality or favorable attribute of an individual)?" The other leaders at the meeting had no reason to know about Jacobs' performance review, and he experienced the disclosure as retaliation for Jacobs' disclosing of and resistance to engaging in illegal conduct.

On February 14, 2017, Henley and Jacobs met to discuss Jacobs' performance review. He received a rating of Zone 2, which is below meeting expectations. This was a complete shock for Jacobs because nothing negative about his performance had been communicated to him prior to that day. Henley's main criticisms revolved around what he called the "gap" between Intel and SSG. He criticized Jacobs for not working enough with SSG and shielding his team from SSG. Henley cited meetings with customers and stakeholders in ▮▮▮▮▮▮▮▮▮▮▮▮▮

32

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 647 -

█████ ) where Intel did not involve SSG personnel or resources, as a sign of the "gap" which could not continue. Moreover, although Clark was not in Jacobs' direct management chain, he was present at the meeting and was quoted multiple times in the performance review. Henley claimed that Jacobs was not working with legal enough and needed to further "protect information from discovery." Finally, Henley said that Jacobs focused too much on the Threat Map, despite giving Jacobs direction to make this a priority for the last two months of 2016.

Then Henley abruptly demoted Jacobs. He ordered that going forward, all of Jacobs' employees would report directly to Gicinto, who would have direct responsibility for both SSG and Intel, in a claimed realignment of the organization. The new team was named "Strategic Intelligence." Henley then suggested that Jacobs should be removed from management entirely, but left that ultimate decision to Jacobs and Gicinto to work out.

Jacobs expressed that he was "floored" by the negative review and that it was a "gut punch." He repeatedly questioned Henley about why he had not received any previous negative feedback, as it would have been in everyone's interest to give him an opportunity to correct any perceived deficiencies. Further, it would have kept Jacobs' career on-track. Henley's only response was that he shouldn't have to tell Jacobs how he was doing and that the events themselves should have provided that information to him.

Jacobs experienced this review and demotion as pure retaliation for his refusal to buy into the ThreatOps culture of achieving business goals through illegal conduct even though equally aggressive legal means were available to achieve the same end. Jacobs had repeatedly disclosed and objected to this illegal conduct to his supervisors and others with the authority to investigate, discover, or correct the violations of law at issue, but nothing changed. He resisted requests to engage in illegal conduct and directed his team to avoid utilizing SSG whenever possible to protect them from professional and personal harm. Jacobs proposed alternative methods of intelligence collection that were legal and effective. He repeatedly disclosed to Henley, Clark, and Gicinto that SSG's and MA's collection methods were unethical, illegal, costly, time-consuming, and risky to the company's personnel and reputation. Their primary response—work more closely with Gicinto and his SSG team. In other words, Uber would allow no "gap" between Jacobs and ThreatOps' illegal conduct, and when Jacobs resisted, he was punished.

33

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 648 -

At the end of Jacobs' performance review meeting, Henley had said he was open to a follow-up session to discuss options for Jacobs. That said, Henley subsequently cancelled two separate meetings to further discuss Jacobs' performance, without explanation. It was thus left to Gicinto's to determine what Jacobs' new role would be, if any.

The following day on February 15, 2017, Gicinto met with Jacobs to discuss the organizational changes. Jacobs asked Gicinto—in this meeting and two subsequent meetings— why Henley and Sullivan felt this change was needed, what the objectives of the change were, and what exactly Uber was trying to remedy. Gicinto replied that he was not told the purpose behind the organizational change. Likewise, Jacobs attempted to discuss what his new role would be at the company. Gicinto said that was between Jacobs and Henley. Jacobs explained that Henley told him the exact opposite; and that he and Gicinto were supposed to work out his new responsibilities.

Within about three days, Jacobs received a Wickr message from Gicinto explaining that he had spoken with Henley and still did not have any clarity on what Jacobs' role should be. Further, he did not know what the objectives of the newly-formed "Strategic Intelligence" team were, but that for the "foreseeable future everyone will be reporting to me."

On February 16, 2017, Henley emailed Jacobs regarding how to best notify Jacobs' team of the structural changes. Henley stressed that he "supported" Jacobs and did not want to "step on [Jacobs'] message." Jacobs did his best to remain positive and supportive, stating that he wanted to "cause as little disruption for the team as possible." However, Jacobs said that he could not deliver a message to his former team without first knowing the details of his new role. Henley replied that the main decision was whether Jacobs would be okay with his role as a non-manager and stated: "If you're not wanting that role, we should talk about what's next whether that's looking for other opportunities within Security, Uber, or elsewhere." Jacobs replied that he would accept a new role if it gave him the "opportunity to excel and is messaged in a way that enables [him] to be effective." Henley never replied.

Contrary to his previous representations, Henley announced the changes to ThreatOps without any input from Jacobs. On February 27, 2017, during a ThreatOps all-hands meeting with at least 30 attendees, Henley explained the new organizational structure. He highlighted that "[Jacobs] takes the hit here seeing the color of his bubble change," effectively making it clear to

34

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 649 -

all present that Jacobs was being demoted and sending a message about the consequences of resisting ThreatOps' corporate culture.

On March 8, 2017, Jacobs and Gicinto had a one-on-one meeting where Jacobs described a possible future role for himself since maintaining his management role was not an option. Jacobs first detailed this possible role and his objections in email. In an email that day, Jacobs wrote, "Hi Nick, I've been thinking about a job description for my role in Strategic Intelligence, and would like to discuss during our 1:1 today, time permitting. My preference is to remain the global intel manager and evolve the program to align with the new objectives Joe has for our team, in partnership with you. Understanding that may not be allowable, below is an outline of where I can contribute as an IC (individual contributor)." Jacobs proposed a job description followed with a newly-proposed title of Manager, Strategic Analysis. Gicinto and Henley consulted with HR and later explained that the title would not be acceptable. Instead, they assigned Jacobs the title of Senior Analyst for Strategic Intelligence.

Demoted, effectively ostracized, and unable to continue working Jacobs sent his constructive termination letter to Uber on April 14, 2017. You have seen the letter. Directed to members of Uber's A-team, it details various instances of unlawful conduct and pleads for constructive change at the company. Since his termination, Jacobs has learned that, rather than conduct a legitimate investigation, CEO Travis Kalanick informed several of the implicated parties about Jacobs' claims prior to any legitimate investigation. This is largely the reason that Jacobs does not feel Uber has acted in good faith, and why he does not wish to sit down for a formal interview.

Jacobs' demotion and constructive discharge violated California Labor Code section 1102.5, which prohibits retaliation when an employee discloses or opposes information that he reasonably believes violates state or federal statute, or local, state, or federal rules or regulations. See Cal. Labor Code § 1102.5. Based on the laws identified above and the conduct he observed, Jacobs had reasonable cause to believe he was disclosing and opposing violations of law in every instance described above. In fact, the activities he disclosed and opposed as illegal were actual violations of law, so his reasonable belief was also true.

35

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 650 -

Jacobs' protected activities individually and collectively constituted a substantial motivating factor in Uber's decision to take adverse employment actions against him, ultimately causing his constructive termination.

This is also a case where punitive damages are appropriate and will be sought. We do not hesitate in believing that clear and convincing evidence will show that Uber's treatment of Jacobs subjected him to oppression and malice.

## F.  Impact of Retaliation on Jacobs

Jacobs had high expectations of himself and believed he was making substantial contributions to Uber, even though the conflicts regarding illegal activity created significant stress in his life. His demotion and construction termination brutally undercut the objective evidence of his success in developing the Global Intelligence team, causing emotional distress and serious reputational harm that are ongoing.

Jacobs is also experiencing economic damages, including lost wages and benefits, limited job growth and future earnings potential based on the stark and cruel demotion from directing a successful team to individual contributor.

Jacobs' base salary was $130,000. His initial equity grant was 4,098 restricted stock units ("RSUs"), of which one quarter would vest on Jacobs' anniversary and then 1/36 per month until he was fully vested at four years. At the time of Jacobs' hire, Uber explained to him that the value of those RSUs was $48 per unit, or $196,704, bringing Jacobs' annual compensation to $179,176 assuming full vesting and no further equity grants.

In addition, Jacobs was eligible for an annual performance bonus. In his offer letter, the bonus was described as up to $270,000 for the highest performers. That value would again be given in equity. However, based on feedback from his colleagues, Jacobs believes that, for 2017, the highest bonus available to employees performing at "Zone 6" is $360,000. Furthermore, Uber's Senior Recruiting Lead Andrew Cesarz told Jacobs at the time of his hire that the "top tier bonus paid in 2015 at your level is now worth $1,000,000."

Certainly, the compensation was one reason why Jacobs accepted the position at Uber, ultimately to his detriment. Instead of receiving anything remotely amounting to the above, Jacobs' annual bonus after his demotion was $12,000, which was paid 20% cash and 80% RSUs

36

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 651 -

vested over 36 months. Effectively, he only received $2,400 in cash and one bonus equity vesting of 7 RSUs after completing his thirteenth month at Uber.

The demotion in title also affects Jacobs' earning potential and competitiveness in applying for other positions. In addition to the public humiliation he experienced, Jacobs remains out of work and has been unsuccessful in attaining comparable future employment.

**VI. Next Steps**

This letter was prepared to respond to your request for more detailed information about the illegal conduct Jacobs observed during his employment and the retaliation he experienced at Uber. While long, this letter does provide what we believe is useful information that will allow Uber to investigate Jacobs' allegations.

In his termination letter Jacobs wrote: "While working conditions have become intolerable for me, my hope with this letter is to effect useful change within the company culture, end these illegal practices, and assure reassignment of my former team to work under better leadership." He offers the information in this letter with the same hope and purpose.

Once you have discussed this communication with your client, please let us know how Uber would like to proceed.

Very truly yours,

HALUNEN LAW

Clayton D. Halunen

CDH/cam

37

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 652 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**36. UBER HAS NOT LEARNED THEIR LESSON, REPEATING HISTORY -**

**CAUSING DEATH, INCREASING MORTALITY RATES AND HARMING**

**INNOCENT LIVES IN HEALTHCARE, INCLUDING PLAINTIFF'S WIFE**

1514.   Plaintiff asserts Business Insider's timeline of scandalous events in 2017. Whereas in this

Complaint, the scandalous behavior by all Defendants, is outrageous, greedy, unlawful

and killed an innocent life through the autonomous vehicle program at Uber, and

continues to endanger innocent lives in healthcare.

## A TIMELINE OF UBER'S SCANDALS

● **Departure**   ● **New hire/position**   ○ **Scandal**

**FEB**

**Feb 19**: Former engineer Susan Fowler publishes
details of the sexual harassment and gender bias
she experience at the company. Uber immediately
launches an investigation.

**Feb 23**: Investors, Freada and Mitch Kapor,
blast the company for failing to change; Google
spinout Waymo sues Uber for alleged intellectual
property theft.

**Feb 27: Amit Singhal, SVP of Engineering**

**Feb 28**: A dashcam video catches CEO Travis
Kalanick in a heated argument over prices. He
apologizes and says he'll seek leadership help.



**MAR**

**Mar 3**: The NYTimes reveals Uber has
been deceiving authorities for years
with a tool called "Greyball."

**Mar 3: Ed Baker, VP of Product
and Growth**



**Mar 7**: Uber launches a search for
COO after Kalanick admits he needs
leadership help.

**Mar 8: Gary Marcus, Head of Uber AI Labs**

**Mar 19: Jeff Jones, President of Ridesharing**

**Mar 25**: After a crash in Arizona, Uber temporarily
suspends it self-driving car program. The
Information reveals Kalanick and other Uber
exec's visit to Seoul-escort karaoke bar.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 653 -

**Mar 28:** Uber releases its diversity numbers, which show it's in the middle of the pack when compared to other tech companies.

**APR**

**Apr 17: Sherif Marakby, VP of Global Vehicle Programs**

**Mar 28: Brian McClendon, VP of Maps and Business Platform**

**Apr 11: Rachel Whetstone, SVP of Communications and Policy**

**Apr 23:** Details of a meeting between Apple's CEO and Kalanick leak. Tim Cook personally warned Uber that it would pull the Uber app from the app store if Uber kept violating Apple's policies.

**MAY**

**May 4:** US Justice Department opens a criminal investigation into Uber's use of the "Greyball" tool.

**May 15:** The judge issues a preliminary injunction against Uber, blocking its former head of self-driving cars from working on certain technology.

**May 11:** A judge denies Uber's bid to avoid a trial with Waymo and refers the case to US prosecutors for a possible criminal investigation.

**May 18: Salle Yoo, promoted to Chief Legal Officer**

**May 23:** Uber tells NYC drivers it will pay "tens of millions" owed to them because of an accounting error that underpaid them for years

**May 30: Anthony Levandowski, former Head of Uber Advanced Technologies Group**

**May 30: Josh Mohrer, GM of New York City**

**May 31:** Uber announces it lost $700 million in Q1.

**May 31: Gautam Gupta, Head of Finance**

**JUNE**

**June 5: Frances Frei, SVP Leadership/Strategy**

**June 6:** Uber says it fired over 20 employees after a workplace investigation turned up 215 claims of harassment and other bad behavior.

**June 6: Bozoma Saint John, Chief Brand Officer**

**June 8:** A 2013 email, dubbed the "Miami Letter," is published by Recode. In the email, Kalanick told employees how to handle sex, drinking, and throwing kegs at a company party.

**June 7: Eric Alexander, Head of Asia Business**

**June 12: Emil Michael, SVP of Business**

**June 13:** Uber agrees to a set of 47 wide-ranging recommendations that stem from the investigation launched in February. Kalanick announces he's taking a leave of absence, and a board member is forced to resign after making a sexist joke during the company's meeting.

**June 20: Kalanick resigns as CEO after investors revolt.**

**BUSINESS INSIDER**

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 654 -

## 37. EVIDENCE UBER AND LYFT ENDANGER LIFE IN HEALTHCARE

1515.   Plaintiff has established a preponderance of evidence as exhibited herein, and through all proceeding paragraphs of this Complaint. Plaintiff wishes to make a final point regarding Uber and Lyft's knowledge of its recklessness in healthcare.

1516.   After Lyft and Uber were aware their drivers consistently cancel on riders, they continued pushing into healthcare after misappropriating Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity, failing to execute properly.

1517.   By canceling on healthcare patients who have cancer, who need blood transfusions, who miss their medical appointments as a result of Defendants drivers, it progresses innocent people's hereditary disease, mortality rate sand causes death.

1518.   Pictured on the next page, Lyft is aware drivers cancel on riders.

1519.   As proven herein, Uber and Lyft are synonymous, and Uber is aware of the cancelled rides.

1520.   Plaintiff further argues Defendants anticompetitive tactics, cause drivers to cancel on patients. **It's un-American**.

///

///

///

///

///

///

///

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 655 -



We have received numerous reports from passengers that you are not showing up to pick them up -- thus causing them to cancel their rides, and incurring cancelation costs. Passengers rely on drivers to provide a dependable service, and it's important that you're there for them.

Furthermore, we have deducted a total of $982.00 from your future earnings. Please note, under the Terms of Service, Lyft reserves the right to withhold all or a portion of Ride Fees if it believes that you have attempted to defraud or abuse Lyft or Lyft's payment systems.

Moving forward, any attempt to defraud Lyft or Riders on the Lyft Platform or in connection with your provision of Services could put your account at risk of deactivation.

Regards,


Ciara

Lyft Support Representative

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 656 -

## 38. CEASE AND DESIST FROM ALL ENGAGEMENT

1521.  Plaintiff argues Defendants do not, and will not care about cease and desists as it's
instilled in their culture as seen through all proceeding paragraphs of this Complaint.

1522.  This behavior is grassroots and genuine as freely and casually admitted by John
Zimmer, Co-Founder, and CEO of Lyft, in a YouTube video.



1523.  Video evidence:

https://www.dropbox.com/s/w0esvu4z1zizlul/Be_Fearless_Startups_tips_from_the_C
o-Founder_of_Lyft_%20Lyft_President_John%20Zimmer.mp4?dl=0

1524.  This behavior is grassroots and genuine confirmed by Joe creating a fake accent, and
stating he moved out of state to evade and disregard iHug's and Plaintiff's cease and
desist.

1525.  This behavior is grassroots and genuine confirmed by Ben refusing to be served with
court documents, and declining to identify himself.

1526.  This behavior is grassroots and genuine confirmed by Logan unsubscribing to
Plaintiff's settlement demand for damages to Plaintiff, his Wife, and iHug.

1527.  This behavior is grassroots and genuine confirmed by Jerry avoiding and refusing
documents at his place of business and home.

1528.  This behavior is grassroots and genuine confirmed by Louis refusing to open emails,

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 657 -

and hiding from Plaintiff.

1529. This behavior is grassroots and genuine confirmed by Dara reading Plaintiff's settlement demand letter four times and ignoring it, failing to advise Uber's legal team of such liability.

1530. This behavior is grassroots and genuine confirmed by Lyft's legal team and/or counsel to reply and acknowledge receipt of Plaintiff's settlement demand.

1531. This behavior is grassroots and genuine confirmed by Uber's legal team and/or counsel to reply and acknowledge receipt of Plaintiff's settlement demand.

1532. Plaintiff motions the court to use this intentional behavior, to re-enforce, and use as support, and grant Plaintiff's Ex Parte Application, Injunctions, Preemptive Motions and all other requests, forcing Defendants to cease and desist.

1533. Plaintiff prays that an Honorable Judge place strict restraining orders, and impose stiff fines, penalties including prison time if any of the Defendants, and/or affiliated person(s), and/or entities continue to engage in any activity that's aimed at Plaintiff, his Wife, iHug, and any friends, family or affiliated parties to Plaintiff, his Wife and iHug.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 658 -

## 39. *EX PARTE* APPLICATION FOR PERMANENT INJUNCTION ORDER AND ORDER TO SHOW CAUSE

1534.   Pursuant to Sections 525, 526, and 527 of the Code of Civil Procedure, Plaintiff hereby applies *ex parte* for a Permanent Injunction Order and Order to Show Cause why a Permanent Injunction should issue enjoining Defendants from competing in healthcare as their anticompetitive taxi tactics endanger life in healthcare, and should issue enjoining Defendants from retaining, making any use of, continuing to unjustly enrich themselves, or otherwise disclosing or distributing confidential and proprietary information belonging to Plaintiff amongst themselves. In particular, order Uber and Lyft to integrate iHug into all pathways in healthcare, allowing iHug to responsibility build out the Rideshare for Healthcare, a model that was misappropriated by Defendants.

1535.   This Application is made on the following grounds:

(1) Plaintiff will suffer irreparable injury, if Defendants are not immediately enjoined from retaining, and continuing to make any use of or otherwise disclosing or distributing Plaintiff's confidential and proprietary information without 100% royalty allowing Plaintiff to oversee the operation of his $1,200,000,000,000 trillion-dollar healthcare opportunity to ensure proper execution, preventing the endangerment of life;

(2) The balance of harms tips sharply in favor of Plaintiff given the nature of the Amended Complaint and the injuries sustained, and that the information Defendants misappropriated has otherwise remained confidential; And

(3) there is a high likelihood that Plaintiff will be successful in establishing that Defendants misappropriated Plaintiff's confidential and proprietary information, and in violation of the following but not limited Intellectual Property California Civil Code § §

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 659 -

3426-3426.11, California Uniform Trade Secret Act California Civil Code § § 3426-3426.11, Defense of Trade Secrets Act, California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), California Penal Code § 502 of Corporate Espionage 18 U.S.C. § 1832 (a), (5), (b) The California Invasion of Privacy Act, and mutual non-disclosures, non-disclosure, contingent employee Invention Assignment and Confidentiality Agreement and applicable law, and that Defendants' wrongful activities should be enjoined.

(4) Enjoin Defendants from operating in healthcare, and all healthcare related fields as Defendants through the natural course of their anticompetitive taxi tactics to incentivize its Drivers not to drive for the other competitor, canceling on dialysis, cancer and other terminally-ill patient's medical appointments. When this occurs, in particular, a dialysis patients blood toxins can escalate, causing the person to be very ill, and lead to a fatality. In the event a healthcare patient stops breathing, has a stroke, or heart attack, Defendants drivers are not CPR or Basic Life Support certified, much less equipped for such operation, which will have an adverse outcome and place harm on the healthcare patient in the event of such occurrence, thus endangering life in healthcare. Whereas Plaintiff's Rideshare for Healthcare model required CPR and Basic Life Support Certification, and required Drivers to carry a first aid kit in their vehicle which included a CPR mouth piece. Defendants should immediately put iHug at the forefront of the healthcare markets to ensure proper execution of his $1,200,000,000,000 trillion-dollar healthcare opportunity, ensuring lifesaving healthcare tools, quite the contrary to Defendants current operations in healthcare. For the reasons mentioned herein, and Plaintiff's point to put life first,

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 660 -

outweighs any fathomable argument made by Defendants and/or their Legal Counsel.

(5) Plaintiff continues to respectfully make the point that in 1776, the United States Declaration of Independence declared that "all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. Maintaining, these innocent healthcare patients are being harmed when cancelled on, as a result of Defendants aggressive anticompetitive tactics. Thus, infringing on people's right to life. For the reasons mentioned herein, and Plaintiff's point to put life first, outweighs any fathomable argument made by Defendants.

1536. This Application is being made *ex parte* because impermissible use, disclosure or distribution of Plaintiff's confidential and proprietary information is occurring and may occur immediately.

1537. As outlined by Plaintiff in section 16. PREEMPTIVE MOTION TO STRIKE 1: TO PREVENT LOSS OF LIFE, in the Amended Complaint, people's lives are infringed on if Defendants are allowed to continue to operate in healthcare without handing back all healthcare operations that were built based on Plaintiff's misappropriated corporate secrets, in particular $1,200,000,000,000 trillion-dollar healthcare opportunity, allowing iHug to lead the way in healthcare to act responsibly, safely, and to protect our God given right to life, supported by the Declaration of Independence. Plaintiff's healthcare opportunity that was misappropriated by Uber and Lyft, is a system that's to save lives, and offers lifesaving healthcare tools, whereas if Defendants continue to improperly execute on such plans, they will continue to endanger life. Whereas, Plaintiff maintains, iHug should rightfully take over Uber and Lyft's Healthcare Divisions that was built based on his misappropriated plans, to prevent such loss of life, as iHug is entitle based on Uber and Lyft's

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 661 -

willful and malicious violations of laws, and strict Mutual Non-Disclosure signed and approved by Uber Headquarters.

1538.   This Application is based on the Amended Complaint in this action; the attached Memorandum of Points and Authorities listed in the table of contents; the accompanying Declarations of the Plaintiff in Support of a Temporary Restraining Order; and such other evidence and argument as may be called to the attention of the Court at or before the *ex parte* hearing.

1539.   Pursuant to California Rule of Court 3.1204, notice of this application will be provided to Defendants through a service processor.

1540.   Pursuant to California Rule of Court 3.1202(a), Plaintiff states that he is not aware of any attorney representing Defendants, and further states that Defendants' current contact information is:

- Lyft, Inc.

  185 Berry St #5000, San Francisco, CA 94107

- Uber Technologies, Inc.

- Uber Health, LLC. - 1455 Market St #400, San Francisco, CA 94103

1541.   Respectfully submitted and executed on July, 4, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 662 -

## 15AA. MEMORANDUM OF POINTS AND AUTHORITIES

## 15BA. INTRODUCTION

1542.   Plaintiff has direct evidence from a whistleblower, affirming Uber and Lyft use cash, brand power and other incentive to induce drivers to engage in unlawful misappropriation of proprietary and highly sensitive business information, and corporate secrets from competition that has allowed Defendants to grow at astronomical rates. *Id.* ¶ 51. *Id.*

1543.   Plaintiff has direct testimonial evidence from a Lyft and Uber driver admitting Defendants orchestrated the unlawful conduct contained in this Complaint. In particular, Uber, Joe, Louis and Does have signed a written Mutual Non-Disclosures, Confidentiality, Non-Disclosure, Non-Compete, Contingent Employment Agreement and other legal Agreements which are still in full effect, confirming their commitment to protect and maintain as confidential – Plaintiff's proprietary, highly sensitive, and secretive business information. *Id.* ¶ 52.

1544.   While Plaintiff and his Wife were under duress and corporate attack, Joe announced in November of 2017, he was resigning from iHug, Plaintiff's Company, and on multiple occasions between December, 2017 to April of 2018, leading up to his exit. Plaintiff believes Joe misled him in order to continue to gather intelligence for Defendants, while exposing such intelligence to Defendants and providing confidential login details to iHug systems. Throughout this time, Joe, Louis and Does colluded in private, at meetings and in person at iHug's office and other locations. On multiple occasions Joe, Louis and Does met with Lyft, and Uber Executives, while "driving" for Defendants' platforms in San Francisco, California with iHug's internal systems loaded on their personal and burner phones, and other devices, to leak highly confidential corporate secrets to Lyft, Uber and Andreessen Executives at will. *Id.* ¶ 53. *Id.*

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 663 -

1545.   Joe, Louis and Does involvement with iHug required them to synchronize their corporate emails on a mobile device, giving them access to internal communication, and other systems, assigned to them by iHug.

1546.   After the synchronization, the devices contained thousands of artifacts (files and folders) belonging to iHug, including but not limited to, iHug's financial, competitive, and corporate secrets including Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity. *Id.* ¶ 54. Joe Louis and Does had access to iHug's internal systems from any computer in the world simply by providing his login credentials.

1547.   Even after Plaintiff had these credentials blocked, Joe, Louis and Does continued to obtain other login credentials and system admins login credentials to misappropriate proprietary information and internal operations.

1548.   Such a breach has allowed Defendants to unjustly enrich themselves pre-and-post their initial public offering. *Id.* ¶ 55.

1549.   Plaintiff continues to see his non-public, confidential information, proprietary, documented features and services emerge on Defendants platform. *Id.* ¶ 56.

1550.   In recent events, Defendants hired a highly-experienced healthcare employee from McKesson, who has unlimited connections in healthcare to accelerate Uber and Lyft's healthcare growth, whereas they used Plaintiff's corporate secrets to allow such growth, in particular grocery pick up and drop off, healthcare monitoring, checkups and other innovative healthcare services integrated in a transportation app, Plaintiff's original Rideshare for Healthcare model. *Id.* ¶ 57. *Id.*

1551.   Where it's believed, Defendants are deploying Plaintiff's corporate secrets, ideas, and proprietary healthcare models into their existing business, evolving their business, exponentially

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 664 -

growing revenues, unjustly enriching themselves without legal entitlement. *Id.* ¶ 58. Plaintiff legally

through written and signed contract, said violations of Unjust Enrichment and Trade Secrets Laws

that were designed to protect the rightful owners of their proprietary and confidential intellectual

property. *Id.*

*Id.,* ¶ 51 – 58 (emphasis added)

**15BAA. GROUNDS FOR PERMANENT INJUNCTION POST-JUDGEMENT**

1552.  NOW COMES Plaintiff, who's left with no other choice, Plaintiff will set the

grounds to grant permanent injunction post-judgement.

Factual Events:

- Uber filed its Limited Liability Company, Uber Health, LLC on 4/20/2017, *6 months after Id* ¶ 59. Plaintiff's truck was broken into. *Id.*

- Uber formed the Limited Liability Company, *6 months after Id* ¶ 60. *Id,* Plaintiff's life was threatened if he pursued iHug.

- The truck had an alarm system that was professionally disabled. The wires were cut from underneath his dashboard.

- The commercial grade 1 gauge wires were sliced that ran from the back of Plaintiff's truck generator to Plaintiff's trailer. It carried electricity so Plaintiff could keep his laptop, iPad and other electronics powered so he could continue pursuing iHug. *Id* ¶ 61.

- Plaintiff's Corporate Secrets were located on his laptop. Pictured below and the proceeding pages indisputably proving Plaintiff was a target for his intellectual property that has evolve Uber and Lyft. Plaintiff's vehicles and

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 665 -

personal property had forced entry where Plaintiff's laptops, iPads, hard drives, thumb drivers and other storage devices stolen, exposing his New Digital Ai Healthcare System. Defendants are engaging in unlawfully activity, as described in Jacobs Letter, unlawful gathering of intelligence. *Id* ¶ 62. Pictured below atop, Exhibit A101, Exhibit B102 below in the same picture.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 666 -

- Pictured below, Exhibit C103.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 667 -

- Pictured below, Exhibit D104.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 668 -

- Pictured below, Exhibit E105.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 669 -

- Pictured below, Exhibit F106.



Adam John Mackintosh---vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 670 -

- Pictured below, Exhibit G107.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 671 -

1553.   Not only will Plaintiff seek cease and desist by way of preliminary and permanent injunction, specifically, Lyft, and Uber from any further unauthorized possession, use, or disclosure of Plaintiff's confidential and proprietary information and unjust enrichment, including Uber and Lyft's Healthcare API *Id* ¶ 63. The Healthcare API created and launched by Uber and Lyft at the same time in March 2018 *Id* ¶ 12, were done so at their own peril, just six months after violating Unjust Enrichment in Trade Secret Misappropriation California Civil Code – CIV § 3426, using Plaintiff's Healthcare API that allowed for variable *Id* ¶ 64 healthcare services through a medical transportation app.

1554.   As Ben Horowitz of Andreessen Horowitz unlawfully and without entitlement received Plaintiff's confidential information, Ben later proceeded to unlawfully use said confidential information, unjustly enriching himself.

1555.   Pictured below, Darren's email to Ben, where the confidentiality email clause was purposefully removed. *Id* ¶ 65 Pictured below, Exhibit H108.

From: **Darren** (███████████████████ith.com>
Date: Mon, Oct 16, 2017 at 11:16 PM
Subject: **iHug Healthcare - Seeking $5-10MM Investment**
To: ████a16z.com

**Hi Ben,**

**My name is Darren, I am the acting CFO and an Advisory Board member of iHug. We hope you may consider a capital**

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 672 -

1556.   Darren signs a non-disclosure, approximately *45 days prior* to intentionally sending Ben, Plaintiff's $1,200,000,000,000 trillion-dollar healthcare opportunity. ¶ 66. *Id* Pictured below, Exhibit I109.



1557.   Pictured below, a snippet from Darren's non-disclosure agreement, excluding Ben ¶ 16. *Id*, Defendants from using Plaintiff's $1,200,000,000,000 trillion-dollar opportunity. Pictured below, Exhibit J110.

(c) Recipient acknowledges that monetary damages may not be a sufficient remedy for damages resulting from the unauthorized disclosure of Confidential Information and that the Company shall be entitled, without waiving any other rights or remedies, to seek such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction. In the event any third-party who has direct or indirect connection with Recipient involved in monetary damages that are a result of continuing to disclose unauthorized Confidential Information, the Company shall have the full rights and entitlement to seek such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction.

4. Miscellaneous

(a) All Confidential Information and Confidential Materials are and shall remain the sole and exclusive property of the Company. By disclosing information to Recipient, the Company does not grant any express or implied right to Recipient to or under the Company patents, copyrights, trademarks, or trade secret information. Any information that's given, disclosed, communicated or otherwise expressed by Recipient that shape, enhance, evolves or otherwise shall remain the sole and exclusive property of the Company.

Adam John Mackintosh—vs --Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 673 -

1558.   In particular, Uber and Lyft, with the assistance from Benchmark Venture Partner

who threatened people to unlawfully commit acts that gathered iHug's Intellectual Property

pertaining to a Healthcare API, and unlawfully obtained said confidential information, and corporate

secrets. *Id.* ¶ 67 *Id.*

1559.   As seen below, an <u>unauthorized device login was made from Uber Headquarters,</u>

<u>in San Francisco, California.</u> As seen herein, unarguable geolocation evidence, establishes an

unauthorized login to iHug's systems, within a 200-foot radius from Uber's H.Q ¶ 68. *Id.* Pictured

below, Exhibit K111.



1560.   As seen herein, Zendesk sent Plaintiff internet protocol identification, establishing

the login within a 200-foot radius from Uber's Headquarters, ¶ 69. *Id,* where more corporate secrets

were stolen. Pictured below, Exhibit L112.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 674 -

1561.   Pictured below, Exhibit M113.



Geolocation data: (███████████ API, real-time)

| IP Address | Country | Region | City |
|---|---|---|---|
| ████████ | United States 🇺🇸 | California | San Francisco |

1562.   As seen herein, a description of iHug's Artificial Intelligence Healthcare API, and

verticals in healthcare through transportation segue, in which Uber and Lyft are currently unjustly

enriching themselves ¶ 70. *Id.* The plans were drafted by Plaintiff as early as 2012 through 2019.

Pictured below, Exhibit N114, pictured on the next two page are blown up versions of Exhibit N114,

which are more legible.

iHug                                                    Healthcare for Everyone, Anywhere©

## Real Time Rideshare for Healthcare: Automated Match Making

- Abundance of availability through AI screening, certified providers/rideshare drivers and non-commercial vehicles for transport
- Shares the same vehicle and destination
- Pairs passengers and drivers who are heading in the same direction / heading to the same destination
- ███████████████████
- Uses latest GPS AI technologies to optimize routes to conserve gas
- Uses location base technologies on smartphones for efficiency
- ███████████████████
- Facility-to-facility, medical provider-to-medical provider enables maximum routing efficiencies for reoccurring routes
- Geared towards profit / commercial gain and savings for patients

Admin Panel    AI Backend API    Secure Database    Payment Manager    Provider Scheduling

www.ihug.healthcare                                                      14

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 675 -

1563.   Pictured below, Exhibit O115, clearly outlining the importance of an API for

Healthcare ¶ 71. *Id.*



# Real Time Rideshare for Healt





                    

Admin Panel    Ai Backend    Secure    Payment    Provider
API    Database    Manager    Scheduling

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 676 -

1564. Pictured below, Exhibit P116, clearly outlining technologies, processes, software, and in particular, saving patients from excessive spending in healthcare which can be burdensome on families and our lives ¶ 72. *Id.*

Healthcare for Everyone, Anywhere®

# ealthcare: Automated Match Making

- Abundance of availability through Ai screening, certified providers/rideshare drivers and non-commercial vehicles for transport
- Shares the same vehicle and destination
- Pairs passengers and drivers who are heading in the same direction / heading to the same destination
- ███████████████████████████████
- Uses latest GPS Ai technologies to optimize routes to conserve gas
- Uses location base technologies on smartphones for efficiency
- ███████████████████████████████
- Facility-to-facility, medical provider-to-medical provider enables maximum routing efficiencies for reoccurring routes
- Geared towards profit / commercial gain and savings for patients

www.ihug.healthcare                                                        14

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 677 -

1565.   Pictured below, Exhibit Q117, pictured on the next two page are blown up versions of Exhibit Q, which are more legible.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 678 -

1566.   Pictured below, Exhibit R118.



iHug

# Client Base: Distribution Chan

iHug Rideshare Builds a customer base ripe for cross-sellin

**iHug All-Age-Care - $30 per request**
- Delivery of small grocery needs
-
- Companionship
-

**iHug Telehealth - $60 per request**
-
-
-

Adam John Mackintosh —vs — Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 679 -

1567.   Pictured below, Exhibit S119.



Healthcare for Everyone, Anywhere®

**nel for Incremental Services**

g of additional services

**iHug In-Home Care - $50 per request**

**iHug Preventative Care - $100/month**

Hearing, dental and vision insurance options in-app

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 680 -

1568.   Pictured below, Exhibit T120, a description of iHug's partnership details that outlined vehicle safety and compliance, including vehicle lease programs in healthcare. Pictured on the next page, Exhibit U121, a full description outlining innovative and confidential ideas and the plan of action of iHug to prevent injury, and provide the world's safest ride.



**NEMT Market Takeover Partnership**

**U.S. Market**

2019 iHug® Inc. All Rights Reserved | iHug Software™ | iHug Healthcare™ | The Official Rideshare for Healthcare™ | iHug logos and all other marks, patent features, ideas and artwork contained herein are Intellectual Property of iHug, and its Affiliated and Subsidiaries Companies.
INTERNAL DOCUMENT – HIGHLY CONFIDENTIAL

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 681 -

## Executive Summary
### *NEMT Market Takeover Partnership*

February 6, 2019

iHug is seeking a mutually beneficial partnership with Uber prior to an initial public offering (IPO). The partnership will provide intellectual property (IP) giving Uber a leapfrog product and a permanent competitive advantage and differentiation over Lyft. The partnership will also integrate Uber drivers into iHug's healthcare portal and mobile apps, serving approximately 11 million new patients from current, developing and future iHug healthcare partners. Thus, compounding rideshare saturation for Uber in 43 states in healthcare. This partnership will provide Wall Street investors with evidence to invest long-term in Uber post IPO maximizing return on investment for all.

The intellectual property allows Uber to scale its fleet of independent contractors into a hybrid of rideshare and NEMT drivers. A segment of Uber drivers will have a tangible leapfrog product which will deliver the world's safest ride, outcompeting everyone in all markets. We believe this element alone will provide a successful roadmap into healthcare. The partnership will also provide a high monetary value through an on-demand sedan revenue-share model, vehicle leasing revenue, and NEMT broker revenue-share.

This is all possible through intellectual property owned by the founder of iHug. The growth of iHug includes healthcare relationships with NEMT companies, ambulance companies, senior living, and HMO's such as Kaiser Permanente, DaVita, UC Davis, and other healthcare organizations. iHug is targeting the entire NEMT market that is expected to grow to $42Bn by 2024, from $10Bn, currently. Subverting this market is not without a few roadblocks, which can be remedied with a touch of innovation, intellectual property, and creative partnerships.

Our partnership will reduce and eliminate chances of patient injury and liability such as wheelchair-bound patient tip and fall, patient trip and fall, and other harmful circumstances that currently exist in NEMT and healthcare in general. The IP will create major in-road opportunities, from nationwide NEMT bid submissions, full utilization of Uber's drivers, personnel and safety compliance training, to a tangible and viable product. This would establish our partner as being the safest and preferred healthcare transport solution around the world. Having IP over the competition that eliminates liability and risk to the patients and drivers, separates Uber from Lyft and all other competitors. The IP also drives down customer acquisition costs into a net positive growth and drive up long-term value.

iHug has established a well-versed and highly competent team of healthcare executives, who will capitalize on all horizontal growth opportunities in this partnership. We have a former 16-year Logisticare Platform Expansion and Compliance Officer, who grew the largest NEMT broker in the U.S. from 3 states to 36; A former Chief Executive Officer of Sutter Health who understands hospital operations, compliance and patient care; A VP of Sales who has extensive experience in handling Uber and Lyft driver background checks, compliance and eligibility requirements, as well as others in the healthcare vertical.

In closing, iHug understands time is of the essence, and we must disclose that we are in communication with Lyft and starting conversations with other like-minded companies. We're aiming to select our partner by the end of the first quarter 2019 in an effort to build the world's safest on-demand healthcare transport network. Together we will set new standards in healthcare transportation, safety and compliance, making mobility more accessible, grow market share, revenue share, and innovate through intellectual property. We look forward to establishing a genuine and meaningful partnership that has a 20-50 year forward thinking vision.

2019 iHug® Inc. All Rights Reserved | iHug Software™ | iHug Healthcare™ | The Official Rideshare for Healthcare™ | iHug logos and all other marks, patent features, ideas and artwork contained herein are Intellectual Property of iHug, and its Affiliated and Subsidiaries Companies.
INTERNAL DOCUMENT – HIGHLY CONFIDENTIAL

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 682 -

1    1569.   Pictured below on the left, Exhibit V122, and on the right, Exhibit W123, iHug's

2   Healthcare API launched in 2016. Plaintiff had been conceptualizing the API for decades on how he

3   would help people in healthcare. Pictured below on the left, Exhibit X124, and on the right, Exhibit

4   Y125, in March of 2018, Uber and Lyft copied, and integrated a healthcare API into their Platform,

5   
6   unjustly enriching themselves. This API has allowed Lyft and Uber to double it's billion-dollar run

7   rate in healthcare. ¶ 73. *Id*









Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 683 -

1570.   Pictured below, Exhibit Z126, Uber and Lyft are growing in healthcare as a result of the misappropriation of Plaintiff's intelligence in form of corporate secrets, unjustly enriching themselves without legal entitlement whatsoever ¶ 74. *Id*



# Uber and Lyft Are Officially Part of the Healthcare System

Lyft, Uber and other rideshare companies say they can save our healthcare system lots of money. But at what cost?

By **Ankita Rao**

Feb 25 2019, 8:55am   Share   Tweet

1571.   Plaintiff also seeks to recover the confidential and proprietary information that

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 684 -

Defendants retained, contrary to Joe, Louis, Jerry and Does obligations under the Confidentiality,

Non-Disclosure, Non-Compete, Contingent Employment Agreement and other legal Agreement.

Without immediate injunctive relief, healthcare patients, Plaintiff, Plaintiff's Wife, and iHug continue

to suffer irreparable harm and permanent damage to his Company.

*Id. Ex. A101, Ex. B102., Ex. C103, Ex. D104, Ex. E105, Ex. F106, Ex. G107, Ex. H108, Ex. I109, Ex.*

*J110, Ex. K111, Ex. L112, Ex. M113, Ex. N114, Ex. O115, Ex. P116, Ex. Q117, Ex. R118, Ex. S119,*

*Ex. T120, Ex. U121, Ex. V122, Ex. W123, Ex. X124, Ex. Y125, Ex. Z126, ¶ ¶ 59 – 74 (emphasis*

added)

## 15CA. FACTUAL BACKGROUND

### SUB-AA: Plaintiff and His Company

1572.   iHug is a software provider that empowers business owners with a single point of

sale, operation, logistics and tracking, using mobile based applications, headquartered in Sacramento,

California.

1573.   iHug offers its software in over 3,000 cities nationwide, offering telehealth

symptom checkers, insurance plans, market places, advertisement options and other highly profitable

operations. *Id.* ¶ 75

1574.   Plaintiff has invested over a decade of his life in developing and protecting his

confidential and proprietary information related to his product and service offerings. *Id.* ¶ 76 *Id.*

1575.   This confidential and proprietary information includes documents outlining

Plaintiff's marketing and product plans, current and future financial data and projections,

forecasts, customer lists and data, and personnel information. Plaintiff has always taken affirmative

steps to protect this information by, among other things, requiring any and all person(s), and/or

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 685 -

1   entities to sign a non-disclosure containing a confidentiality provision (or separate agreement),

2   nondisclosure is paramount. The confidentiality provision (or separate agreement) ensures that

3   Plaintiff and his Company, iHug's proprietary information is not revealed by any person(s), and/or

4   entities who, especially competitors. *Id.* ¶ 77 *Id.* All contingent employees, executives, independent

5

6   contractors and board members

7   must sign confidentiality agreements before engaging with Plaintiff and his Company, iHug. *Id.* ¶ 78

8   *Id.*

9   1576.   Beyond the protection afforded by the confidentiality agreement, Plaintiff took

10  further steps to ensure the security of his proprietary information, such as requiring all visitors to its

11

12  corporate headquarters to read and sign a non-disclosure agreement before proceeding past the

13  reception desk and while on-boarding to drive for iHug; requiring all employees and or independent

14  advisors and or investors, and others to sign iHug's sign-in sheet, and private documents which

15  describes in detail each party's obligations regarding conflicts of interest, technology use and

16  security, and protection of Plaintiff and his Company, iHug's confidential and proprietary

17  information; Requiring all parties to enable two-step verification for Google Apps (which iHug uses

18

19  to host its corporate email and calendar); And limiting access to iHug's storage accounts to only a

20  select few parties involved at iHug. *Id.* ¶ 79 *Id.*

21  1577.   Plaintiff also made every physical effort beyond the protection of an originally

22  manufactured equipment (OEM) trailer door lock, to secure his highly secretive six patent books

23

24  relating to his digital Ai healthcare system.

25  1578.   Plaintiff spent two days welding and constructing a military grade locking system

26  containing the following steel elements making it nearly impossible for any common criminal

27

28

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 686 -

to break into:

- 1" inch stainless steel plated locking system on his trailer door

- 1" inch steel plate on each side of the trailer door

- 6 stainless steel bolts

- 6 self-locking nuts

- LOCTITE® Thread locker

- 1" inch stainless steel latch

- A maximum-security lock, with tough-cut octagonal

  boron-carbide shackle stainless steel.

1579.  Pictured below, Exhibit A1 – A7A, Plaintiff's custom "military grade" locking system.

Maximum security lock                    1" inch thick steel plating and bolts.

  

  

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 687 -

  

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 688 -

1    1580.   Pictured below, Exhibit A7A, not only did Plaintiff secure his corporate secrets and

2    encrypted his data, he bought a 300lb highly secure safe. The only individuals who had access to the

3    safe were Joe iHug's COO, Jim iHug's VP of IT, Alanna Plaintiff's Wife, and Plaintiff himself.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 689 -

1581.   Pictured below, Exhibit A7B, not only did Plaintiff secure his corporate secrets and encrypted his data, he bought a 300lb highly secure safe. The only individuals who had access to the safe were Joe iHug's COO, Jim iHug's VP of IT, Alanna Plaintiff's Wife, and Plaintiff himself.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 690 -

1     1582.   Pictured below, Exhibit A7C, not only did Plaintiff secure his corporate secrets and

2   encrypted his data, he bought a 300lb highly secure safe. The only individuals who had access to the

3   safe were Joe iHug's COO, Jim iHug's VP of IT, Alanna Plaintiff's Wife, and Plaintiff himself.



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 691 -

1583. Pictured below, Exhibit A7D, not only did Plaintiff secure his corporate secrets and encrypted his data, he bought a 300lb highly secure safe. The only individuals who had access to the safe were Joe iHug's COO, Jim iHug's VP of IT, Alanna Plaintiff's Wife, and Plaintiff himself.



*Id. Ex. A1, Ex. A2., Ex. A3, Ex. A4, Ex. A5, Ex. A6, Ex. A7, Ex. A7A, Ex. A7B, Ex. A7C, Ex. A7D ¶¶ 75 – 79 (emphasis added)*

Adam John Mackintosh—-vs —-Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 692 -

**SUB-BA: Uber, Joe, Louis, Jerry, Nicole and Does Hiring and Confidentiality Agreement, and Mutual Non-Disclosure Documents.**

1584.   iHug contracted with and signed contingent employment Agreements with Joe, Louis and Does throughout the year from 2015 to present. All new independent contractors, advisory board members, investors, and contingent employees, signed a confidentiality agreement as a condition of any involvement with iHug and Plaintiff. *Id.* ¶ 80 *Id.*

1585.   As pictured on the next two pages, Exhibit A8, Exhibit A9 and Exhibit A10 on the following two pages are the signed contingent employment Agreements by Joe, Louis and Does. Each provision protects Plaintiff's God given rights, in particular, the pursuit of Happiness, allowing him to engage in business to enrich the lives of people without unlawful obstruction:

---

**3. Confidential Information.**

    (a) **Company Information.** I agree at all times during the term of my Relationship with the Company and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company to the extent necessary to perform my obligations to the Company under the Relationship, or to disclose to any person, firm, corporation or other entity without written authorization of the Board of Directors of the Company, any Confidential Information of the Company which I obtain or create. I further agree not to make copies of such Confidential Information except as authorized by the Company. I understand that "Confidential Information" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, suppliers, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the Relationship), prices and costs, markets, software, developments, inventions, laboratory notebooks, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, licenses, finances, budgets or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment or created by me during the period of the Relationship, whether or not during working hours. I understand that Confidential Information includes, but is not limited to, information pertaining to any aspect of the Company's business, which is either information not known by actual or potential competitors of the Company or other third parties not under confidentiality obligations to the Company, or is otherwise proprietary information of the Company or its customers or suppliers, whether of a technical nature or otherwise. I further understand that Confidential

---

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
-693 -

Information does not include any of the foregoing items which has become publicly and widely known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

(b) **Prior Obligations.** I represent that my performance of all terms of this Agreement as an employee or consultant of the Company has not breached and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me prior or subsequent to the commencement of my Relationship with the Company, and I will not disclose to the Company or use any inventions, confidential or non-public proprietary information or material belonging to any current or former client or employer or any other party. I will not induce the Company to use any inventions, confidential or non-public proprietary information, or material belonging to any current or former client or employer or any other party. I acknowledge and agree that I have listed on Exhibit A all agreements (e.g., non-competition agreements, non-solicitation of customers agreements, non-solicitation of employees agreements, confidentiality agreements, inventions agreements, etc.) with a current or former employer, or any other person or entity, that may restrict my ability to accept employment with the Company or my ability as an employee or consultant to recruit or engage customers or service providers on behalf of the Company, or otherwise relate to or restrict my ability to perform my duties as an employee of the Company or any obligation I may have to the Company.

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 694 -

9. **General Provisions.**

    (a) **Governing Law.** The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of California, without giving effect to the principles of conflict of laws.

    (b) **Entire Agreement.** This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by both parties. Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.

    (c) **Severability.** If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

    (d) **Successors and Assigns.** This Agreement will be binding upon my heirs, executors, administrators and other legal representatives, and my successors and assigns, and will be for the benefit of the Company, its successors, and its assigns.

    (e) **Survival.** The provisions of this Agreement shall survive the termination of the Relationship and the assignment of this Agreement by the Company to any successor in interest or other assignee.

    (f) **Remedies.** I acknowledge and agree that violation of this Agreement by me may cause the Company irreparable harm, and therefore agree that the Company will be entitled to seek extraordinary relief in court, including but not limited to temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security and in addition to and without prejudice to any other rights or remedies that the Company may have for a breach of this Agreement.

    (g) **ADVICE OF COUNSEL.** I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

*Id. Ex. A8, Ex. A9., Ex. A10.* ¶ ¶ 80 (emphasis added)

///

///

///

///

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 695 -

**SUB-CA: Documents misappropriated and retained by Defendants are Proprietary,**

**Confidential, and Critical to Plaintiff's Future and the success of his Company, iHug.**

1586.   After Joe, Louis and Does' departure, Plaintiff sought assurance that Joe, Louis

and Does had complied with their confidentiality obligations to Plaintiff and his Company, iHug. He

sent multiple cease and desists, blocked access and ensured all systems were secure from Defendants.

*Id.* ¶ 81 *Id.*

1587.   Plaintiff launched his new Company, iHug Software, after Defendants' tortious

interference and other actions permanently damaged Plaintiff's transportation operation. He was

seeking sales executives to assist him with sales. Defendants planted a mole, much like Joe, Louis

and Does. Nicole used Lyft and Uber's brand power. *Id.* ¶ 82. *Id.*

1588.   Nicole proclaimed she knew "high-up" Uber and Lyft executives. She also

asserted she used to run all background checks on Uber and Lyft drivers for Defendants. This nature

to use Lyft and Uber's brand power, was a similar pattern to Joe, Louis and Does before they

engaged in unlawful conduct to infiltrate iHug. Based on this single fact, it substantiates Joe, Louis,

Jerry, Nicole, and Does were instructed to tell Plaintiff whatever he needed to hear, to get his ideas

and corporate secrets.

1589.   As promising as it sounds, Plaintiff avers Nicole was planted by Defendants to use,

in order to gather intelligence, using methods and practices that mimicked Joe, Jerry, Louis and Does.

She infiltrated Plaintiff's new Company, iHug Software, breaching fiduciary duty, having provided

login credentials to Defendants where multiple logins were made from unrecognized devices, a

similar pattern to Jerry, Joe, Louis and Does. *Id.* ¶ 83. *Id.*

1590.   The forensic analysis revealed logins were made throughout The United States

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 696 -

including but not limited to, cities spanning across San Francisco, California to Washington D.C. to New York City. *Id.* ¶ 84. *Id.*

1591.   Defendants successfully infiltrated iHug, **yet again**, extracting thousands of documents from iHug's internal systems from his new business, including but not limited to, Plaintiff's new patent-pending, revolutionary healthcare vehicle designs, that would provide the world's safest ride through physics.

1592.   Pictured on the next page Exhibit A11, and on the pages following Exhibit A12, and Exhibit A13, are slides from Plaintiff's patent-pending slide deck. This slide deck was misappropriated by Dan at Uber, and handed off to Lyft Executives.

1593.   The slide decks contained invaluable designs, partnership details and other competitive secrets, that Defendants have since started engaging in, after unlawfully obtaining Plaintiff's knowledge, business plans, corporate trade secrets, corporate secrets, secured non-public particulars, including but not limited to, invention processes, schematics using physics, design, engineering, creativity and vision, research, product plans, technical data, know-how, services, suppliers, in particular, prices and costs, markets, software, developments, formulas, technology, drawings, engineering, hardware configuration information, budgets and other business information that gives Plaintiff and his Company, iHug, a competitive advantage and path to profitability. *Id.* ¶ 85. *Id.*

///

///

///

///

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 697 -





Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 698 -

1594.   The forensic analysis included a review of the Internet browser history, login session details and internet protocol details contained in Nicole's iHug email account. Google-related geolocation services, and products, including but not limited to, Google Apps, and specifically Gmail, that iHug hosts its company email, revealed the multiple logins.

1595.   Pictured below are the unauthorized logins. One session reveals a login was made using a non-attributable device, meaning "masked" device details, denying Google to decipher and identify the device and user account, where Google's systems low order bit and labeling system marked it "Unknown." This was during a time Nicole had no involvement at iHug anymore, where she made herself unavailable after meeting with Uber's, Dan Trigub. Yet multiple logins were actively being made, accessing her iHug account. Substantiating Defendants were able to successfully infiltrate yet again.

| Recent activity: | | |
|---|---|---|
| Access Type [ ? ] (Browser, mobile, POP3, etc.) | Location (IP address) [ ? ] | Date/Time (Displayed in your zone) |
| Browser (Chrome) Show details | * United States (CA) ⬛⬛⬛c) | 10:15 am (0 minu ago) |
| Browser (Chrome) Show details | United States (CA) ⬛⬛⬛c) | 1:42 am (8 hours |
| Unknown | United States (CA) ⬛⬛⬛c) | 1:25 am (8 hours |
| Browser (Chrome) Show details | United States (CA) ⬛⬛⬛5) | Apr 13 (4 days a |
| Unknown | United States (CA) ⬛⬛⬛5) | Apr 13 (4 days a |

*Id. Ex. A11, Ex. A12, Ex. A13,* ¶ ¶ 81 – 85 (emphasis added)

///

///

///

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 699 -

**SUB-DA: Documents retained by Defendants are Proprietary, Confidential, and Critical**

**to Plaintiff Future and the success of his company iHug**

1596.   The documents possessed by Defendants have already caused irreparable damages,

including but not limited to, grocery delivery for healthcare, Medicare and Medicaid billing, delivery

and other forwarding thinking features, services and products are emerging on Defendants platform,

unjustly enriching Defendants without legal entitlement. *Id.* ¶ 86. *Id.*

1597.   Plaintiff asserts as per signed non-disclosure, the following is enforceable:

*Recipient acknowledges that monetary damages may not be a sufficient remedy for damages*

*resulting from the unauthorized disclosure of confidential information and that the Company*

*shall be entitled, without waiving any other rights or remedies, to seek such injunctive or*

*equitable relief as may be deemed proper by a court of competent jurisdiction. Id. ¶ 87. Id.*

*In the event, any third-party who has direct or indirect connection with Recipient involved in*

*monetary damages that are as result of continuing to disclose unauthorized confidential*

*information Id. ¶ 88., the Company shall have the full rights and entitlement to seek such*

*injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction. "*

*and "All confidential information and confidential materials are and shall remain the sole*

*and exclusive property of the Company. Id.*

*By disclosing information to Recipient, the Company does not grant any express or implied*

*right to recipient to or under the Company patents, copyrights, trademarks, or trade secret*

*information. Id. ¶ 89. Id. Any information that's given, disclosed, communicated or otherwise*

*expressed by Recipient that shape, enhance, evolves or otherwise shall remain the sole and*

*exclusive property of the Company." Id. ¶ 90. Id.*

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 700 -

**Marketing and Product Plans**

1598.   iHug's internal flyers, business promotional cards, and other ideas were kept in iHug's office amongst iHug's team members, advisors, contractors and others who signed non-disclosures. The marketing and product materials, included the following but not limited to, medical appointment transportation, patient discharge services, grocery and shopping services, medicine pick-up and other non-existent services on rideshare platforms, that have since started to emerge on Defendants platform. *Id.* ¶ 91. *Id.*

**Medical Drone Delivery of Prescription and Other Medical Durable Products**

1599.   Plaintiff's vision of a new digital Ai healthcare system, included among other innovations that would sprawl civilization into the future, includes but not limited to, a drop-delivery system, powered by drones.

1600.   In particular, the drone would drop-deliver small prescription bottles, medical tools, products, and other lifesaving health products, that would be delivered to anyone, especially those without transportation, at little, to no cost.

1601.   Whereas Defendants omitted from their SEC S1 Filing and to investors ¶ 92. *Id.* This brilliant and extremely innovative and profitable business plan, as a result of their knowledge that the corporate secret was misappropriated from Plaintiff.

1602.   After Defendants IPO, they have since launched drone delivery services, in particular "Food Services," ¶ 93. *Id.* where Plaintiff alleges Defendants launched drones into a separate market ¶ 94. *Id.* to obfuscate.

1603.   Pictured on the next page atop, Exhibit A14, is one of Plaintiff's sub-file systems,

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 701 -

1   not including the stolen hard-drives from his trailer, that included drone patent ideas and other patent

2   drafts.

3      1604.   Pictured on the next page below, Exhibit A15, Defendants are continuing to evolve

4   their drone program, which will eventually include healthcare drop-deliveries using Plaintiff's

5   misappropriated corporate secrets. ¶ 95. *Id.*

6

7   ///

8   ///

9   ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

28

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 702 -

1605.   Plaintiff's sub-file system:



1606.   Defendant's evolving drop service using Plaintiff's corporate secrets:



UBER AIR: Delivering Uber Eats with Drones | Uber Elevate | Uber

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 703 -

1

2      1607.   Healthcare vehicles, planes, helicopters and other modes of transportation would

3   provide transport to a variety of healthcare patients based on their health condition, in particular as an

4

5   example, pregnant mothers who can't drive themselves to the hospital when going into labor, who are

6   at least able to climb into the vehicle. ¶ 96. *Id.*

7      1608.   The vehicle would use Ai to determine geolocation, time, distance, medical

8   conditions, biometrics and other healthcare-related data sets, that would put pregnant women and

9   their expected babies, in safe and urgent transport at little to no cost to them. ¶ 97. *Id.*

10      1609.   As shown in Exhibit A16, on the next page, is a page from Plaintiff's patent book

11   that was misappropriated be Defendants. It outlines different types of transportation modes.

12

13      1610.   As shown below in Exhibit A17, on the page after, Defendants Air Transportation

14   vehicle.

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27

28

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 704 -



**Fig. 68**

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 705 -



India

# Uber May Be Flying Air Taxis In India Soon

By **Staff Reporter** - September 7, 2018            👁 569    💬 0

Minister of State for Civil Aviation Jayant Sinha is optimistic about the easier air taxi operation in India in really near future because of the latest drone policy.

On Thursday, he tweeted about his optimism. This tweet came just after his meeting with a delegation from Uber. Uber is planning aerial taxi service in India.

The Minister tweeted, "Met with @Uber Elevate team. India offers an encouraging and responsive regulatory framework to solve the challenge of urban transportation. With our progressive drone policies, we want to see air taxis becoming a reality soon!"

HIGHLY CONFIDENTIAL AND SECRETIVE *Id.* ¶ 98. *Id.*

$25,800,000,000,000 Trillion-Dollar Healthcare Opportunity, in particular, Healthcare.

HIGHLY CONFIDENTIAL AND SECRETIVE *Id.* ¶ 99. *Id.*

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 706 -

$1,200,000,000,000 Trillion-Dollar Healthcare Opportunity, in particular, Transportation. HIGHLY CONFIDENTIAL AND SECRETIVE *Id.* ¶ 100. *Id.*

**Financial Information**

1611.   Darren, iHug's acting Chief Financial Officer, who was under a non-disclosure, sent Defendants execution strategies, as well as financial projections that outlined iHug's rapid growth to over $1,200,000,000 billion-dollar and in excess of $1,200,000,000,000 trillion-dollars at full scale. ¶ 101. *Id.* It entailed projected income statements, care provider's costs, marketing, research and development, EBITDA, Cash Flow Statements, Balance Sheets, Key Balance Sheet Statistics, Working Capital, Income Statement Assumptions, Total Addressable Market (TAM) – Sacramento, Hospitals, Senior Living Facilities, Homecare, Dialysis, Urgent Care and other details.

**Customer Lists and Data**

1612.   iHug's customer lists and data were extracted by Joe, Louis, Jerry and Does, from iHug's internal systems. After the misappropriation, iHug's customers stopped engaging with iHug. – — *Id. Ex. A14, Ex. A15, Ex. A16, Ex. A17,* ¶¶ 86 – 101 (emphasis added)

**SUB-EA: Defendants Evolved Their Business and Profits With Plaintiff's Intellectual Property, Corporate Secrets, Patent Books**

1613.   Plaintiff managed to retain one trade secret book, out of the many that were stolen from his trailer by Defendants. Not only were Plaintiff's trade secret books stolen, Defendants misappropriated his thumb drives, sketches, schematics and other future particulars that have and will continue to unjustly enrich Defendants without legal entitlement. Such enrichment should be paid to Plaintiff in reasonable royalty, and other forms allowed by an Honorable Judge.

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 707 -

# ARGUMENT

## SUB-FA: Legal Standard for Injunctive Relief

1614.   An injunction may be granted "[w]hen it appears by the Complaint that the commission or continuance of some act during the litigation would produce, waste, or great or irreparable injury, to a party to the action...." Cal. Civ. Proc. Code § 526(a)(2). ¶ 102 "The law is well settled that the decision to grant a preliminary injunction rests within the sound discretion of the trial court." IT Corp. v. County of Imperial, 35 Cal. 3d 63, 69 (Cal. 1983). In exercising that discretion, courts generally consider two related questions in deciding whether to issue an injunction: 1) "are the plaintiffs likely to suffer greater injury from a denial of the injunction than the defendants are likely to suffer from its grant"; and 2) "is there a reasonable probability that the plaintiffs will prevail on the merits...." Heckmann v. Ahmanson, 168 Cal. App. 3d 119, 125 (1985); accord Hunt v. Superior Court, 21 Cal. 4th 984, 999 (1999). The court must exercise its discretion "in favor of the party most likely to be injured.... ¶ 103 If the denial of an injunction would result in great harm to the plaintiff, and the defendants would suffer little harm if it were granted, then it is an abuse of discretion to fail to grant the preliminary injunction." Robbins v. Superior Court, 38 Cal. 3d 199, 205 (1985) (internal citations omitted). A moving party need only show a reasonable probability of success. Heckmann, 168 Cal. App. 3d at 128. —— Id. ¶ 102 – 103 (emphasis added)

## SUB-GA: The Confidentiality Agreement Provides for Injunctive Relief

1615.   By its terms, the Confidentiality Agreement acknowledges the need for injunctive relief See Ex. A., Ex. B. ¶ 104 The Confidentiality Agreement provides that:

> "in the event of a — breach or threatened breach of this Agreement by Defendants the
>
> Company may suffer irreparable harm and will therefore be entitled to extraordinary

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 708 -

*relief, including injunctive relief to enforce this Agreement." Id.*

1616.   As such, Defendants were on notice that injunctive relief would be sought and enforced if Defendants breached or threatened breach, of the Confidentiality Agreement. Moreover, Plaintiff, and his Company, iHug, specifically contracted, and gave consideration for injunctive relief, in the event Defendants breached or threatened to breach the Confidentiality Agreement ¶ 105 when it contracted Defendants. Courts have held that such a provision is sufficient to show irreparable harm and warrant injunctive relief. See, e.g., Martin Marietta Materials, Inc. v. Vulcan Materials Co., 56 A.3d 1072, 1145 (Del. Ch. 2012) ("[P]arties can agree contractually on the existence of requisite elements of a compulsory remedy, such as the existence of irreparable harm in the event of a party's breach, and... such a stipulation is typically sufficient to demonstrate irreparable harm."). ¶ 106 As set forth above, Defendants breached the Confidentiality Agreement by disclosing login credentials to Uber and Lyft, exposing proprietary and confidential information during and after their relationship with the Plaintiff, and his Company, iHug. *Id.*

1617.   Plaintiff, iHug and healthcare patients have suffered and will continue to suffer irreparable damage to life, and cause financial harm as a result of Defendants breach, if Defendants are not enjoined from using or disclosing the information immediately, and Uber and Lyft's participation in healthcare. ¶ 107

1618.   Whereas, Plaintiff argues the very existence of life and the protection of our God given right to life, outweighs any fathomable argument and pleading to the continuation of Uber and Lyft's involvement in healthcare, and continued unjust enrichment, where it's proven through medical, SWOT analysis, and forensic evidence, Defendants endanger lives in healthcare through reckless misconduct, improper licensing and insurance. Monetary damages would not provide

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 709 -

1  adequate relief for healthcare Patients, Plaintiff, his Wife, and iHug because of the nature of this

2  irreparable harm. Whereas Plaintiff maintains, Defendants have improperly executed on his

3  "Rideshare for Healthcare" model. Injunctive relief is therefore necessary and appropriate. *Id.* ¶ 104 –

4  107 (emphasis added)

6  **SUB-HA: The Confidentiality Agreement Provides for Injunctive Relief**

7  1619.  By its terms, the Confidentiality Agreement acknowledges the need for injunctive

8  relief See Ex. J. *Id.* ¶ 108.

9  1620.  Pictured on the next two pages, Exhibit A18, Exhibit A19, Exhibit A20, Exhibit

10 A21, Exhibit A22 a Mutual Non-Disclosure signed by Uber's Head of Healthcare, and Plaintiff,

12 Chief Executive Officer of iHug, Inc. Aaron Crowell, party to said Mutual Non-Disclosure

13 Agreement has since *cut ties*, for unknown reasons.

# UBER

## MUTUAL NON-DISCLOSURE AGREEMENT

This Mutual Non-Disclosure Agreement (this "**Agreement**") is made as of January 29th, 2019 ("**Effective Date**") between Uber Health, LLC, a Delaware limited liability company, and Uber Technologies Inc., a Delaware corporate located at 1455 Market Street, Suite 400, San Francisco, CA 94103 ("**Uber**"), and iHug, Inc., a Delaware Corporation, located at One Embarcadero Center, San Francisco, CA 94111 ("**Company**"). In order to pursue a mutually beneficial potential business opportunity ("**Purpose**"), Company and Uber recognize a need to disclose certain confidential information, and to protect such information from unauthorized use and disclosure. The parties agree:

Adam John Mackintosh—vs —-Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 710 -

1. **"Confidential Information"** means any non-public information of a party or its affiliates that is disclosed or otherwise made available by or on behalf of such party or its affiliates ("**Disclosing Party**") to the other party ("**Receiving Party**"), before or after the Effective Date and whether orally, visually, in writing or in any other form, including, without limitation, the existence and terms of this Agreement and information about the Disclosing Party's technology, products, properties, employees, finances, businesses and operations. Confidential Information includes all notes, analyses, compilations, interpretations or other documents prepared by or for the Receiving Party, to the extent they contain, reflect or are based upon the Disclosing Party's Confidential Information. "**Representative**" means a Receiving Party, its controlled subsidiaries, and their respective officers, directors, employees, consultants and agents. Neither Party shall disclose or otherwise make available any personally identifiable information or protected health information under this Agreement.

5. ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS". All Confidential Information remains the Disclosing Party's sole and exclusive property. Each Receiving Party acknowledges and agrees that nothing in this Agreement will be construed as granting any rights (including, without limitation, any patent, copyright or other intellectual property or proprietary right) to the Receiving Party, by license or otherwise, in or to any of the Disclosing Party's Confidential Information, except as expressly set forth in this Agreement. Neither party shall reverse engineer, disassemble or decompile any prototypes, software or other tangible objects or ideas that embody the other party's Confidential Information and that are provided to a Recipient under this Agreement.

**UBER**

IN WITNESS WHEREOF, the parties hereto have executed this Mutual Non-Disclosure Agreement by their duly authorized officers or representatives.

Uber Health, Aaron Crowell Technologies Inc.

By: _____
       ~~Aaron Crowell~~

Printed Name: _____

Title: _____ Head of Uber Health

iHug, Inc.

By: _____

Printed Name: Adam John

Title: Chief Executive Officer

Adam John Mackintosh —vs — Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 711 -

1621.   Plaintiff seeks to exercise his legal rights under the signed Mutual Non-Disclosure between Uber Health, LLC, Uber Technologies, Inc. and iHug, Inc. with Plaintiff as being the authorized signer, in particular, Section 1: **"Confidential Information" means any non-public information of a party** *Id.* ¶ 109. or its affiliates that is disclosed or otherwise made available by or on behalf of such party or its affiliates ("Disclosing Party") to the other party ("Receiving Party"), before or after the Effective Date and Whether orally, visually, in writing or in any other form, including, without limitation, the existence and terms of this Agreement and information about the Disclosing Parties technology, products, properties, employees, finances, businesses and operations.

1622.   Plaintiff seeks to exercise his legal rights under the signed Non-Disclosure, in particular, Section 5: "ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS". All 5.ALL CONFIDENTIALINFORMATION IS PROVIDED "AS IS". All Confidential Information remains the Disclosing Party's sole and exclusive property. Each Receiving Party acknowledges and agrees that nothing in this Agreement will be construed as granting any rights *Id.* ¶ 110. (including, without limitation, any patent, copyright or other intellectual property or proprietary right) to the Receiving Party, by license or otherwise, in or to any of the Disclosing Party's Confidential Information *Id.* ¶ 62., except as expressly set forth in this Agreement. *Id.* ¶ 111. Neither party shall reverse engineer, *Id.* ¶ 112. disassemble or decompile any prototypes *Id.* ¶ 113., software or other tangible objects or ideas that embody the other party's Confidential Information *Id.* ¶ 114. and that are provided to a Recipient under this Agreement. Plaintiff motions the court, ordering Defendants to transfer any and all patents and intellectual property from 2015 to present to Plaintiff that resemble Plaintiff's $25,800,000,000,000 trillion-dollar new digital healthcare Ai system and healthcare opportunity.

1623.   Plaintiff asserts as a result of Uber, signing the Mutual Non-Disclosure, iHug's

Adam John Mackintosh---vs ---Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 712 -

Real Time Healthcare API, and all incremental services are rightfully owned by Plaintiff and iHug, and therefore, iHug and Plaintiff own all monetary gains back-dated to the approximately date of March 18, 2018. Furthermore, to further establish Defendants are continuing to unjustly enrich themselves without legal entitlement whatsoever, pictured below on the next page atop, Megan Callahan, Lyft's VP of Healthcare, admits Lyft is getting into more "incremental healthcare services. Both Uber and Lyft have blatantly unjustly enriched themselves synonymously as they have disclosed to one another Plaintiff's corporate secrets *Id.* ¶ 115. *Id. Ex. A18, Ex. A19, Ex. A20, Ex. A21, Ex. A22* ¶ ¶ 108 – 115 (emphasis added)



Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 713 -

**SUB-IA: Defendants Possessed, Extracted, and Destroyed Plaintiff's Confidential, and Proprietary Corporate Secrets that Evolved Defendants Business into Profitability**

1624.   The iHug documents and information Joe, Jerry, Louis, Nicole and Does possesses are confidential and proprietary. When determining whether certain information meets the definition of "proprietary" information within the terms of a contract, Courts rely on the terms of the contract itself. *See Ajaxo Inc. v. E\*Trade Group, Inc., 135 Cal. App. 4th 21, 28 (2005)* (relying on the definition of proprietary information provided in the non-disclosure at issue in the case to determine liability.) Defendants had in possession and extracted intelligence, and the vision from Plaintiff's well-guarded and physically locked down Secret Documents and Proprietary Data. ¶ 116 *Id.*

1625.   Plaintiff maintains the following equation, which will explain his reasoning as to the granting of such injunctive relief.

1626.   Each and every corporation is a "collective cybernetic organism," whereas when human intellect is acquired and entered into the corporation through computational machines, the sum of the collective effort produces products, services, and profits. A vision Steve Jobs, Steve Wozniak, Bill Gates, Larry Ellison and others have bestowed upon future generations, Plaintiff being in that future generation. Where any human with capability can input their imaginative thought into a computational machine, and on the other end, a result occurs. ¶ 117 *Id.*

1627.   Whereas, in this Complaint, iHug, Lyft, and Uber were evolving separately in parallel organically, in separate markets, Uber and Lyft in the Taxi Industry, and iHug in Healthcare Transportation, between 2016 to present. ¶ 118. Plaintiff established Uber and Lyft then crossed-lines, penetrating healthcare, while using Plaintiff's intelligence. This allowed Uber and Lyft to evolve their corporations "collective cybernetic organism" organically, while tortiously interfering

Adam John Mackintosh —vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 714 -

with iHug's organic growth, that endangers life of healthcare patients, through misconduct, causing irreparable damages to Plaintiff and his company, iHug. *Id.*

1628.   Joe, Louis, Jerry, Nicole, and Does possessed documents that fit within all categories of proprietary information and intelligence from Plaintiff, all of which are highly sensitive and critical to Plaintiff's future, his Company, iHug's future, and the future for civilization. ¶ 119 *Id.*

1629.   Moreover, any and all documents of Plaintiff, and his Company, iHug, remains confidential through Plaintiff's consistent protection efforts. They should remain protected from any further possession, use, or disclosure by Defendants. *Id.,* ¶ 116 – 119 (emphasis added)

**SUB-JA: Courts Regularly Grant Injunctive Relief Under These Circumstances**

1630.   Courts regularly enjoin Defendants from maintaining, using, disclosing, or otherwise distributing misappropriated confidential and proprietary information, including unjust enrichment, and require that Defendants promptly return the information to the company and pay royalty. See, e.g., W. Directories, Inc. v. Golden Guide Directories, Inc., No. C 09-1625 CW, 2009 U.S. Dist. LEXIS 52023, at *22 (N.D. Cal. June 8, 2009) (enjoining company's founder, who later founded a competing business, from "accessing any database or other electronic file originating from a computer or served owned by [plaintiff]... or accessing any physical records originated from files owned by [plaintiff]," and requiring defendant to return all such business information to plaintiff); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung, No. CV 01-00659 CBM (RCx), 2001 U.S. Dist. LEXIS 3248, at *19-20 (C.D. Cal. Feb. 2, 2001) (enjoining former employees who copied and removed former employer's information before leaving the company from "using, disclosing, or transmitting for any purpose, including the solicitation of business or account transfers, the information contained in the records of [former employer]," and requiring "that all original records

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 715 -

and copies and/or other reproductions thereof, in whatever form, be returned to [former employer] immediately"); Courtesy Temp. Serv., Inc. v. Camacho, 222 Cal. App. 3d 1278, 1292 (1990) (enjoining former a employees from using confidential customer lists and related information that they had misappropriated from former employer); Greenly v. Cooper, 77 Cal. App. 3d 382, 385-86, 395 (1978) (enjoining defendant's former employees from "using or copying certain lists of customers obtained from plaintiff by defendants while employed by plaintiff" and "using or copying certain of plaintiffs business forms and records"); see also ReadyLink Healthcare v. Cotton, 126 Cal. App. 4th 1006, 1010-11 (2005). The relief sought through this Application is reasonable and necessary.

### SUB-KA: The Other Requirements for Injunctive Relief Are Met

### 4.   The Balance of Hardships Weighs Decidedly in Plaintiff's Favor

1631.   Plaintiff, his Company iHug, and healthcare patients are being severely and irreparably harmed by Defendants, who are using Plaintiff's plans and improperly operating in healthcare.

1632.   Joe, Louis, Nicole, Jerry and Does actions to communicate directly and/or indirectly with Uber, Andreessen and Lyft, while providing login credentials into iHug's internal systems, was a real threat that harmed Plaintiff, and his Company, iHug. Defendants improperly executed on his plans, causing the endangerment of life in healthcare. Defendants should be enjoined from operating in healthcare, as it endangers life in healthcare, and continues to use, evolve and profit without legal entitlement from Plaintiff's intelligence. Patients in healthcare, Plaintiff, and his Company, iHug, will suffer risk, and severe and irreparable harm. ¶ 120 *Id.*

1633.   In contrast, any risk of harm that may be suffered by Defendants from issuance of

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 716 -

1    an injunction will be extremely remote and modest, and even then, entirely of Defendants own doing.

2    It is well established in balancing the relative hardships that the Court must ignore any harm that a

3    Defendant has brought on themselves by their unlawful conduct. Morgan v. Veach, 59 Cal. App. 2d

4    1634.   Here, Defendants have no legitimate right to possess, use, or disclose Plaintiff's

5    and iHug's confidential and proprietary information.

6

7    1635.   Here, Defendants have no legitimate right to continue to evolve unjustly enriching

8    themselves, without reasonable royalty payment to Plaintiff.

9    1636.   Moreover, Defendants are fully aware that this type of breach of the

10   Confidentiality Agreement would necessitate immediate injunctive relief, see Exhibit A8, Exhibit A9,

11   Exhibit A10, and A18, Exhibit A, Exhibit B, Exhibit I109, Exhibit J110, Exhibit J, Exhibit K, Lyft

12   Sues Former Employee for "Breach of Written Contract, -- Confidentiality Agreement, and Breach of

13   Fiduciary Duty" ¶ 121. *Id*

14

15   1637.   Pictured on the next page and proceeding page, see Exhibit A23 on the next page, and

16   Exhibit A24 shows a complaint filed by Latham & Watkins, LLC, based in San Francisco, California

17   at 505 Montgomery Street, Suite 2000, with the Superior Court of California County of San

18   Francisco, November 5, 2014 filed by the Clerk of the Court Mary Moran, Deputy Clerk, outlining

19   the same allegations made herein against Defendants, Defendants claim against a former employer,

20   substantiating Defendants have knowledge of their actions.

21

22   ///

23   ///

24   ///

25   ///

26

27

28

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 717 -

LATHAM & WATKINS LLP
James K. Lynch, Bar No. 178600
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
(415) 391-0600 / (415) 395-8095 Fax
*jim.lynch@lw.com*

Jennifer L. Barry, Bar No. 228066
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400 / (858) 523-5450 Fax
*jennifer.barry@lw.com*

John M. Pierce, Bar No. 250443
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234 / (213) 891-8763 Fax
*john.pierce@lw.com*

Attorneys for Plaintiff
LYFT, INC.

**F I L E D**
Superior Court of California
County of San Francisco

**NOV 05 2014**

**CLERK OF THE COURT**
BY: _Mary Ann Moran_
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN FRANCISCO

**CGC - 14 - 542554**

| | |
|---|---|
| LYFT, INC., | CASE NO. |
| Plaintiff, | |
| v. | **COMPLAINT FOR:** |
| TRAVIS VANDERZANDEN and DOES 1-10, | **(1) BREACH OF WRITTEN CONTRACT – CONFIDENTIALITY AGREEMENT; and** |
| Defendants. | **(2) BREACH OF FIDUCIARY DUTY** |

Adam John Mackintosh —vs — Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 718 -



14    6.    For a preliminary and permanent injunction enjoining VanderZanden from any

15 further breaches of fiduciary duties;

16    7.    For expedited discovery to allow Lyft to ascertain what confidential and

17 proprietary information VanderZanden has in his possession;

18    8.    For damages in an amount to be determined at trial, including: actual damages,

19 compensatory damages, incidental damages, nominal damages and exemplary damages;

20    9.    For an award of lost profits, VanderZanden's ill-gotten gains or profits,

21 disgorgement, restitution, and/or damages to be determined at trial;

22    10.    For prejudgment interest; and

23    11.    For such other relief as the Court may deem just and proper.

24 ///

25 ///

26 ///

27 ///

28 ///

LATHAM•WATKINS⸗
ATTORNEYS AT LAW
SAN FRANCISCO

24

COMPLAINT FOR BREACH OF
CONFIDENTIALITY AGREEMENT AND
BREACH OF FIDUCIARY DUTY

1  Dated: November 5, 2014

2

3

4

5

6

7

8

LATHAM & WATKINS LLP
James K. Lynch
Jennifer L. Barry
John M. Pierce

By:
  James K. Lynch
  Attorneys for Plaintiff
  Lyft, Inc.

1638.   To further and respectfully lay the foundation for injunctive relief, Plaintiff asserts

as a result of Defendants knowledge of their unlawful conduct, Defendants preemptively ordered

their legal counsel to write disclaimers in their SEC S1 Filing, in anticipation of this this amended

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 719 -

Complaint, stating:

> *If we are unable to protect our intellectual property, or if third parties are successful in claiming that we are misappropriating the intellectual property of others, we may incur significant expense and our business may be adversely affected.* ¶ 122

> **Further disclaiming:** *Companies in the Internet and technology industries, and other patent and trademark holders, including [*"non-practicing entities,"* ¶ 123 (iHug's halted operations)] seeking to profit from royalties in connection with grants of licenses or seeking to obtain injunctions, ¶ 124 own large numbers of patents, copyrights, trademarks, and trade secrets and frequently enter into litigation based on allegations of infringement or other violations of intellectual property rights. We have and may in the future continue to receive notices that claim we have misappropriated, misused, or infringed upon other parties' intellectual property rights. ¶ 125 Furthermore, from time to time we may introduce or acquire new products, including in areas in which we historically have not operated, which could increase our exposure to patent and other intellectual property claims. In addition, we have been sued, and we may in the future be sued, for allegations of intellectual property infringement or threats of trade secret misappropriation. Id.*

> **Further disclaiming:** *"For example, in February 2017, Waymo filed a lawsuit against us alleging, among other things, theft of trade secrets and patent infringement arising from our acquisition of Ottomotto LLC. In February 2018, we entered into a settlement agreement with Waymo."*

> *Id. Ex. A23, Ex. A24* ¶¶ 120 – 125 (emphasis added)

///

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 720 -

5.     **Plaintiff Has a Reasonable Probability of Prevailing on the Merits**

1639.   Defendants have no basis for claiming any harm. Plaintiff and his Company, iHug have a Reasonable Probability of Prevailing on the Merits. If Defendant's wrongful actions are not enjoined, Defendants will continue to benefit from their wrongdoing, continuing to unfairly compete, using Plaintiff's competitive advantages against him, suppressing competition, that causes the reckless endangerment of life in healthcare and evolve their businesses using Plaintiff's intelligence. "No one can take advantage of his their own wrong." Civil Code § 3517. Because Plaintiff has established a reasonable probability that he will prevail on each of the claims alleged in the Complaint, Defendants wrongful actions should immediately be enjoined.

6.     **Healthcare Patients, Plaintiff, and iHug Will Suffer Irreparable Harm if an Injunction Is Not Issued**

1640.   Defendants used Plaintiff's corporate secrets to evolve their businesses. The unlawful actions taken by Defendants, fundamentally transformed their businesses organically, which has allowed the evolution of new ideas, business models, and a clear path to profitability.

1641.   Defendants continue to threaten to cause, and has indisputably caused, irreparable harm to Plaintiff, and his Company, iHug.

**CONCLUSION**

1642.   Notwithstanding Plaintiff's repeated actions to protect his highly secret proprietary information and plausibly, feasible and viable futuristic digital Ai healthcare system is evident.

1643.   Defendants conduct creates the very strong inference Defendants are still unjustly enriching themselves while attempting to deport Plaintiff's Wife and wrongfully imprison Plaintiff.

1644.   The unlawful conduct and vile actions taken against Plaintiff and his Wife, who

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 721 -

1     nearly committed suicide are grounds to respectfully request such injunction and future injunctions.

2        1645.   NOW COMES Plaintiff, setting the final cornerstone, laying the grounds for granting a

3     permanent injunction. Plaintiff will fully exercise the Mutual Non-Disclosure Contract signed by and

4     between Uber Health, LLC, Uber Technologies Inc. ("Uber") and iHug, Inc. and Plaintiff under

5
      California Law, in particular, Section 1., ¶ *Id* 126. Plaintiff had secured his confidential information
6
7     using military grade locking systems; Section 1., Any confidential and non-public "**before**" ¶ *Id* 127

8     or "after" the "*Effective Date*" ¶ *Id* 128 and whether orally, visually, in writing or "**in any other**

9     **form,** (misappropriation)" Section 5., ¶ *Id* 129. Plaintiff did not grant Uber, much less any other party

10
      to use Plaintiff's confidential information, Section 5., ¶ *Id* 130. Uber agreed it would not reverse
11
12    engineer, disassemble or decompile any prototypes, software or other tangible objects or ideas that

13    embody iHug's non-public confidential information, Section 6., ¶ *Id* 131. Uber agreed any

14    unauthorized use or disclosure of such confidential information will cause iHug, Inc. and Plaintiff

15    irreparable harm and significant damages, Section 6., ¶ *Id* 132. Plaintiff may seek equitable relief, in

16
      addition to any other rights and remedies at law or otherwise, furthermore, it's been indisputably
17
18    established and substantiated, Lyft, Inc. misappropriated Plaintiff's $1,200,000,000,000 trillion-dollar

19    healthcare opportunity ¶ *Id* 133. Plaintiff is in whole entitled to damages ¶ *Id* 134, and granting

20    permanent injunction ¶ *Id* 135, paying Plaintiff all revenue generated ¶ *Id* 136 from Uber and Lyft's

21    Healthcare Operation since March 2018 ¶ *Id* 137, to ensure the endangerment of life stops and

22
      innocent healthcare patients and our loved ones are treated with dignity and respect. ¶ *Id* 138.
23
24    Pictured on the next page, Exhibit A25, Plaintiff is appalled, that Uber and Lyft not only

25    misappropriated his "Rideshare for Healthcare" plans, and $1,200,000,000,000 trillion-dollar

26    healthcare opportunity ("confidential and secure information"), and tortiously interfered, they have

27
28
Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 722 -

completely and with incompetence in healthcare, failed to execute on Plaintiff's confidential and

secure information. They have allowed unfit and untrained drivers to disrespect, and rudely insult

innocent people who are in their most vulnerable state in their life in healthcare. People who are

discharged from the hospital who need extra care, and attention, even assistance. iHug was built to

care for these patients. Whereas Defendants have destroyed iHug for greed. This further establishes

the very reason Uber and Lyft should be ordered by the court to hand over 100% of their healthcare

operations to Plaintiff, allowing iHug to take the driver seat to prevent loss of life, and destruction of

morale of innocent healthcare patients. Finally, the Mutual Non-Disclosure allows the courts to make

such an order as Uber is in full breach of signed contract. Ex. A25, ¶ ¶ 126 – 138 (emphasis added)

> On Uber had a pickup, as I sat waiting for the pax I received a text from a doctors office asking if the passenger had came yet. I was instructed to deliver them to the emergency room. This place was a dump! I couldn't wait to get to the 5 minute mark and split with my cancellation fee, but not before sending back a message to the doctors office explaining she didn't make it and suggested they call a ambulance. I'm not prepared to trade a few bucks for a passenger leaking all over my car.

1646.   Respectfully submitted and executed on July, 4, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission *pro hac vice, in pro per*)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 723 -

## 40. MOTION TO COMPEL FOR INVESTIGATION

## POST JUDGEMENT FOR ADDITIONAL CAUSES OF ACTION 13 - 19

1647.   Plaintiff, respectfully requests to move this court for an order to have the Sacramento

District Attorney's office review the case for an investigation involving Defendants and Does, post

judgement, as Plaintiff has acquired adequate, direct and circumstantial evidence to grant all motions.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

Adam John Mackintosh—–vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 724 -

## 41. CAUSE OF ACTION 13 – COUNT 13

## MOTION TO COMPEL SACRAMENTO DISTRICT ATTORNEY

## FOR INVESTIGATION

## FALSE REPORTING TO A POLICE OFFICER

## (CALIFORNIA PENAL CODE SECTION § 148.5 PC)

**Brought by Plaintiff**

1648.   Plaintiff, respectfully requests to move this court for an order to have the Sacramento District Attorney review the motion, post judgement.

1649.   After a civil pre-discovery period, Plaintiff has acquired adequate direct and circumstantial evidence to the court to grant Plaintiff's motion False reporting:

(b) Every person who reports to any other peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, that a felony or misdemeanor has been committed, knowing the report to be false, is guilty of a misdemeanor if: (1) the false information is given while the peace officer is engaged in the performance of his or her duties as a peace officer and; or (2) the person providing the false information knows or should have known that the person receiving the information is a peace officer.

1650.   Joe fabricated a story and falsely accused Plaintiff of grand theft auto.  Joe then called 911 to dispatch the Sacramento Police Department to Plaintiff's office. Amy fabricated a story and falsely accused Plaintiff of assault, alleging the assault took place while Plaintiff was with his Wife in their room, peacefully living their lives. Joe and Amy used the police officers as a tool in an attempt to wrongfully arrest Plaintiff, in order to permanently deprive Plaintiff of the vehicle and home after Plaintiff paid them cash, has a bill of sale and contract in hand, and proof of payment for rent.

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 725 -

## 42. CAUSE OF ACTION 14 – COUNT 14
## MOTION TO COMPEL SACRAMENTO DISTRICT ATTORNEY FOR INVESTIGATION
## <u>CALIFORNIA VEHICLE REGISTRATION FRAUD</u>
## <u>(CALIFORNIA VEHICLE CODE § 4463 VC)</u>

### Brought by Plaintiff

1651.  Plaintiff, respectfully requests to move this court for an order to have the Sacramento District Attorney review the motions in the proceeding paragraphs, post judgement.

1652.  After a civil pre-discovery period, Plaintiff has acquired adequate direct and circumstantial evidence to the court to grant Plaintiff's motion.

1653.  SMOG check fraud:

- o **Clean Plugging** - The illegal practice of obtaining engine computer data (OBD II Data) from a passing vehicle as a substitute for the actual vehicle being tested.
    (1) Joe admitted to paying a California Certified SMOG technician
        to unlawfully pass SMOG.
    (2) Joe was able to successfully transfer the title into his name after the test.
    (3) The engine needed an overhaul, Joe never had an engine overhaul.
    (4) Joe's actions were intentional.

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 726 -

# 43. CAUSE OF ACTION 15 – COUNT 15
## MOTION TO COMPEL SACRAMENTO DISTRICT
## ATTORNEY FOR INVESTIGATION
## <u>TRESPASSING</u>
## (CALIFORNIA PENAL CODE SECTION § 602)

**Brought by Plaintiff**

1654.    Pictured below, Plaintiff's office sign, warning violators of trespassing will be prosecuted.





---

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 727 -

- o  Joe and his accomplices entered onto private property (Adam's office)
- o  Joe and his accomplices did not receive Adam's consent to enter into the property
- o  Joe intended to permanently deprive Adam of the vehicle
- o  Joe and his accomplices had no right to be on the property
- o  Joe and his accomplices obstructed and interfered with Adam's business
- o  The private property had signs indicated trespassing laws and warnings

1655.  I declare under penalty of perjury under the laws of the State of California that the foregoing facts and evidence is true and correct, that I can competently testify thereto if called upon to do so.

1656.  Executed on June, 28, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission In Pro Per)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 728 -

## 44. CAUSE OF ACTION 16 – COUNT 16
## MOTION TO COMPEL SACRAMENTO DISTRICT
## ATTORNEY FOR INVESTIGATION
## <u>GRAND THEFT AUTO</u>
## <u>(CALIFORNIA PENAL CODE § 487(d)(1)</u>
### Brought by Plaintiff

- o   Joe took or drove Adam's vehicle without consent
- o   Joe intended to permanently deprive Adam of the vehicle
- o   Joe misappropriated more than $950 from Adam for the vehicle
- o   The property was worth more than $950 in value
- o   Adam put thousands of dollars into the vehicle to fix it up

1657.   I declare under penalty of perjury under the laws of the State of California that the foregoing facts and evidence is true and correct, that I can competently testify thereto if called upon to do so.

1658.   Executed on June, 28, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission In Pro Per)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 729 -

**45. CAUSE OF ACTION 17 – COUNT 17**

**MOTION TO COMPEL SACRAMENTO DISTRICT**

**ATTORNEY FOR INVESTIGATION**

**TWO PARTY CONSENT RULE**

**CALIFORNIA PENAL CODE SECTION § 18 U.S.C. 2511(2)(d)**

**Brought by Plaintiff**

- o  Joe's accomplice, Thomas Michael Kim recorded Adam on private property while in the act of trespassing
- o  The Android phone was capable of recording
- o  Video was actually recorded of Plaintiff without consent
- o  The private property had signs that indicated trespassing laws and warnings

1659.   I declare under penalty of perjury under the laws of the State of California that the foregoing facts and evidence is true and correct, that I can competently testify thereto if called upon to do so.

1660.   Executed on June, 28, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission In Pro Per)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 730 -

### 46. CAUSE OF ACTION 18 – COUNT 18

### MOTION TO COMPEL SACRAMENTO DISTRICT

### ATTORNEY FOR INVESTIGATION

### <u>GRAND THEFT CALIFORNIA PENAL CODE § 487</u>

**Brought by Plaintiff**

- o Amy attempted to commit Grand Theft through a rental scheme
- o Joe misappropriated $950 or more in cash property from Adam
- o Joe's actions were methodical in nature
- o Joe permanently deprived Adam of cash property
- o Joe had full intent of taking Adam's cash property
- o Joe knowingly had $8,901 in his bank, and still misappropriated cash through false pretense
- o Pictured on the next page, forensic evidence indisputably establishes Joe was in San Francisco meeting with Uber, and Lyft "[**represented in a rectangular black box**,]" all other days, in criminal fashion, Joe and others were causing financial harm on Plaintiff in Sacramento, California.

1661.   I declare under penalty of perjury under the laws of the State of California that the foregoing facts and evidence is true and correct, that I can competently testify thereto if called upon to do so. Executed on July, 4, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission In Pro Per)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 731 -

Joe Money, Family &
~~Cash~~ Tally   Stress Tally

Louis + Lyft John
7-22-17
12-14-17

3 - 25 - 18 -
3 - 24 - 18 -
3 - 20 - 18 -
~~3 - 26 - 16    $260~~
3 - 19 - 18
3 - 16 - 18
3 - 12 - 18
3 - 9 - 18
3 - 8 - 18
3 - 5 - 18
3 - 3 - 18
3 - 2 - 18
2 - 26 - 18 - $260 "borrow"

Joe in SF
• 2 - 14 - 18
• 2 - 7 - 18
1 - 30 - 18
• 1 - 19 - 18
~~1-14-18~~
12-28-17  12 - 29 - 17
12 - 9 - 17
12 - 8 - 17 (Dublin)
12 - 7 - 17
12 - 2 - 17    Lyft HQ
12 - 1 - 17
(10 - 5 - 17)

2 - 19 - 18
2 - 17 - 18
2 - 6 - 18
1 - 30 - 18
1 - 29 - 18
1 - 27 - 18
1 - 24 - 18
1 - 23 - 18
1 - 15 - 18
1 - 14 - 18
1 - 13 - 18
1 - 12 - 18
1 - 11 - 18
1 - 4 - 18
1 - 1 - 18

12-31-17
12-29-17
12-28-17
12-27-17
12-8-17
12-17-17
12 - 8 - 17
12 - 7 - 17 (Empathy)
11 - 12 - 17
11 - 3 - 17
11 - 1 - 17
10 - 28 - 17
(10 - 5 - 17)

Jan 29th
- Joe asking about Tom news.

• 12-16-17 - Juan upset

• 11-28-17 - Adam told Joe to stop Lou + Juan in office.

- 11-15-17 - Joe reset his phone

• 10-25-17 Louis adds Lyft to LinkedIn.

12-29-17
"threw a lot of psychology stuff at them"

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 732 -

## 47. CAUSE OF ACTION 19 – COUNT 19

## MOTION TO COMPEL SACRAMENTO DISTRICT

## ATTORNEY, SEC, FBI, DOJ, AND OTHER

## GOVERNMENT RELATED ENTITIES FOR INVESTIGATION

## <u>CONSPIRACY</u>

## <u>CALIFORNIA PENAL CODE § 182 PC</u>

### Brought by Plaintiff

- o Joe has a direct connection with Shahla, Louis, Malcolm, Thomas and Does
- o Joe intended to permanently deprive Adam of the vehicle
- o Joe, Shahla, Louis, Malcolm, Thomas and Does falsely accused Adam of stealing the vehicle
- o Joe misappropriated more than $950 from Adam for the vehicle
- o The property was worth more than $950 in value
- o Adam put thousands of dollars into the vehicle to fix it up, in order to have reliable transportation
- o Amy called the Sacramento Police Department to claim Plaintiff of assault with knowledge of its falsity.
- o Plaintiff's Employer attempted to induce Plaintiff to order a third bonus check after over paying him, in an attempt to wrongfully imprison him
- o Nicole sent Plaintiff thousands of corporate customers in an attempt to wrongfully imprison him
- o Joe, Amy, BBB, Louis, Malcolm slandered Plaintiff
- o Joe Trespassed onto Plaintiff's private office with is accomplices
- o Sacramento Police Department will not allow Plaintiff to prosecute wrongdoing failing to give Plaintiff a police report after 6 months of requesting one

Adam John Mackintosh—-vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 733 -

- Shahla attempted to deport Plaintiff Wife using Government resources for civil matters, including FBI, DOJ
- Other unlawful activities which will be brought to surface and open to interpretation upon further prosecution stages allowable by law

1662.  Names of Suspects:

- Shahla Qudus
- Danny Trask
- Ethelyne Acebedo
- Joseph Tigner
- Jet Carreon
- Louis Pritchett
- Veronica Espinoza
- Malcolm Russell
- Colon Gamaliar
- Thomas Michael Kim
- Lisa Thao
- Diane Goode
- Jerry Wang
- John Zimmer
- Logan Green
- BBB
- Sacramento Police Department
- Private Investigators (Pending Subpoena)
- Ben Horowitz

- Uber, Lyft, Benchmark, Andreessen Horowitz and others who sit on these boards, Matt Cohler, Arianna Huffington
- Any investor in Lyft, Uber, Andreessen, Benchmark and other related parties and or entities
- Investors in all parties, past, and current employees of all entities named herein
- Nora Hamilton
- Betty Hino
- David Tilton
- All Uber and Lyft Drivers
- Thomas Croley
- Nicole Berryman
- Daryn Kumar
- Darren Gacicia
- Dara Khosrowshahi
- And Does

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 734 -

1663.   I declare under penalty of perjury under the laws of the State of California that the names being compiled and used in this case have merit. Who are individuals that have a relational connection to Defendant, who could be an accessory to the allegation presented in each motion. I can competently testify thereto if called upon to do so.

1664.   Executed on June, 28, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission In Pro Per)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 735 -

## 48. MOTION TO COMPEL ADMISSION

## OF AUDIO EVIDENCE

## EVIDENCE CODE SECTION, 100 – 260

### Brought by Plaintiff

1665.  Not only does Plaintiff and other undisclosed parties possess permission evidence through a legal contract with Joe, and other parties to play any and all audio recordings, Plaintiff respectfully moves to compel the court to admit audio testimonial evidence made by Defendant and other parties, which establishes and substantiates all allegation stated herein.

1666.  Per evidence code section states the following:

> 100.  Unless the provision or context otherwise requires, these definitions govern the construction of this code.

> 110.  "Burden of producing evidence" means the obligation of a party to introduce evidence sufficient to prove allegations in favor of one party or another's ruling.

1667.  Defendant signed a legal document which states the following allowing a motion to admit audio evidence: Company Property;

*Returning Company Documents. I acknowledge and agree that I have no expectation of privacy with respect to the Company's telecommunications, networking or information processing systems (including, without limitation, stored company files, e-mail messages and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored at any time without notice.*

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition
Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 736 -

1668.   I declare under penalty of perjury under the laws of the State of California that the foregoing facts and evidence is true and correct, that I can competently testify thereto if called upon to do so.

1669.   Executed on June, 28, 2019 in Sacramento, California.

**Adam John Mackintosh,**

*/s/ Adam John Mackintosh //*

Adam John Mackintosh (will seek admission In Pro Per)

Adam John Mackintosh—vs —Lyft, Uber, Andreessen Horowitz, and Defendants
Complaint for Unjust Enrichment, Endangerment of Life, Corporate Sabotage through Espionage, Unfair Competition Practices, Tortious Interference, Trade Secret Misappropriation, Breach of Contract, Defamation and Slander.
- 737 -