UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM JOHN MACKINTOSH,<br><br>Plaintiff,<br><br>v.<br><br>LYFT, INC., et al.,<br><br>Defendants. | No. 2:19-cv-1849-MCE-KJN PS<br><br>FINDINGS AND RECOMMENDATIONS ON MOTIONS TO DISMISS, MOTIONS TO STRIKE, MOTION TO REMAND, AND MOTION FOR SANCTIONS; ORDER<br><br>(ECF Nos. 5, 7, 8, 9, 11, 14, 15, 16, 17, 18, 20, 23, 34, and 50) |

Plaintiff Adam John Mackintosh, who proceeds without counsel, asserts he invented a healthcare–rideshare program that was misappropriated. Plaintiff filed an action in California Superior Court against Defendants Lyft, John Zimmer, Logan Green, Uber Health, Uber Technologies, AH Capital Management, Ben Horowitz, two Benchmark Capital entities, Matt Cohler, Josef Arvin Acebedo, Louis Darnell Pritchett, Jerry Wang, Amy Biddle, and the Better Business Bureau. (ECF No. 1–2.) Plaintiff's 738–page Complaint lists twenty–nine federal and state law claims, as alleged against all Defendants. (Id. at pp. 88–825.)

Defendants filed a notice of removal. (ECF No. 1.) Thereafter, multiple Defendants moved to strike portions of the Complaint and moved to dismiss – alleging the Complaint fails to notify each Defendant of the claims against them. (ECF Nos. 5, 7, 8, 9, 11, 20.) Plaintiff opposed, moved to strike each of Defendants' motions, sought remand back to California Superior Court, requested sanctions for Defendants' "bad faith" removal and moved for default against four defendants. (ECF Nos. 23, 34, 50.) A hearing was held. (See ECF No. 64.)

For the reasons that follow, the Court recommends dismissal with leave to amend.

1

**Parties' Arguments**[1]

I.      Arguments re: Removal/Remand (and Associated Sanctions)

Plaintiff moves to remand this action back to California Superior Court, asserting numerous arguments for why jurisdiction does not lie and why the removal was procedurally improper.  (ECF No. 23.)  Additionally, Plaintiff requested sanctions for Defendants' alleged "bad faith removal" from superior court.  (Id. at p. 20.)

Defendants oppose, asserting that the jurisdictional and procedural prerequisites have been met, and no basis for sanctions exist.  (ECF Nos. 49, 51, 52, 53, 54.)

II.     Arguments re: Dismissal/More Definite Statement/Striking Portions of the Complaint

Defendants Lyft/Zimmer/Green, Benchmark/Cohler, Uber Tech/Uber Health, AH Capital/Horowitz, and the Better Business Bureau ("BBB") each moved to dismiss Plaintiff's complaint for failure to file a short and plain statement.  (ECF Nos. 5, 7, 8, 11, 20.)  The Defendants cite to Plaintiff's 700+ page Complaint, noting the inconsistency in the number of counts (somewhere between twelve and twenty–nine claims) as well as the shotgun pleading style – that all Defendants violated every claim raised (despite a lack of facts linking the acts of each Defendant to the particular claim raised).  Thus, Defendants aver they cannot possibly respond to Plaintiff's Complaint, and request either dismissal or a more definite statement.  Additionally, some Defendants assert the Complaint fails to state facts supporting certain claims, while others moved to strike the "redundant, immaterial, impertinent, [or] scandalous" portions of Plaintiff's Complaint.  (ECF Nos. 5, 8, 9, 11, 20).

Plaintiff filed a "motion to strike" citing to each and every one of Defendants' motions to dismiss, and also filed an opposition to each motion to dismiss.  (ECF Nos. 34, 41, 55.)  Therein, Plaintiff reasserts many of his statements from the Complaint, inserts more documentary evidence, contends Defendants ignored the California Superior Court's scheduling order, and lodges ad hominem attacks against certain individual Defendants.  The Court construes these filings as Plaintiff's opposition to Defendants' motions.

---

[1] This action proceeds before the undersigned per Local Rule 302(c)(21).  The findings and recommendations are submitted to the District Judge after the expiration of the objection period.

2

## I.    Plaintiff's Motion to Remand and Motion for Sanctions

A defendant may remove to federal court a claim filed in state court that also could have initially been brought in federal court. 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over the removed claims], the case shall be remanded."  28 U.S.C. § 1447(c); Gibson v. Chrysler Corp., 261 F.3d 927, 932 (9th Cir. 2001).  The removal statute is strictly construed against removal jurisdiction.  Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010).  It is presumed that a case lies outside the limited jurisdiction of the federal courts, and the burden of establishing the contrary rests upon the party asserting jurisdiction.  Id. at 1106-07.

Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Further, a federal court may exercise supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. §1367.

Here, the caption to Plaintiff's Complaint states that he is bringing claims under, among other sources of law, the "Computer Fraud and Abuse Act" (18 U.S.C. § 1830) and "The Defense of Trade Secrets Act" (18 U.S.C. § 1836).  Plaintiff refers to these statutes at various points in the Complaint.  (See, e.g., ECF No. 1–2 at ¶¶ 188, 189, 216, 233, 258, 285, 481.)  Because some of Plaintiff's rights are created by these federal statutes, Defendants have adequately demonstrated why the Court has "federal question" jurisdiction over this matter.[2]  28 U.S.C. § 1331; Ryan v. Salisbury, 380 F. Supp. 3d 1031, 1047 (D. Haw. 2019) ("Federal question jurisdiction exists when a complaint facially presents a federal question.") (citing Holman v. Laulo-Rowe Agency,

---

[2] Plaintiff also appears to attempt formulating complaints under 18 U.S.C. § 1831 and § 1832, 18 U.S.C. § 1512, 15 U.S.C. § 78dd–2, 18 U.S.C. § 371, and 18 U.S.C. § 1341.  However, as discussed below, these particular claims are frivolous and therefore provide no basis for a federal jurisdiction.  See Tijerino v. Stetson Desert Project, LLC, 934 F.3d 968, 975 (9th Cir. 2019) ("There is no federal question jurisdiction where the federal claim asserted is "too insubstantial, defined as so patently without merit that the claim requires no meaningful consideration.") (cleaned up).  Thus, the Court has disregarded them when examining jurisdiction.

994 F.2d 666, 668 (9th Cir. 1993)); see also e.g., Creative Computing v. Getloaded.com LLC, 386 F.3d 930, 931 (9th Cir. 2004) (reviewing a Computer Fraud and Abuse Act claim in federal court). Additionally, Plaintiff's numerous state–law claims appear to arise out of the same nucleus of facts as his federal claims, and so the Court maintains supplemental jurisdiction over the state–law claims. 28 U.S.C. §1367; see also, e.g., WeRide Corp. v. Kun Huang, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019) (federal court reviewing a plaintiff's trade secret misappropriations brought under both the Defense of Trade Secrets Act and the California Uniform Trade Secrets Act).

Plaintiff asserts numerous arguments why he believes removal was improper. (ECF No. 29.) He asserts the removing defendants "cherry picked" a few laws in its notice of removal. However, just because Plaintiff also appears to assert numerous state law claims does not obviate this Court's jurisdiction. Federal courts often maintain jurisdiction over claims that might also be brought in state court, so long a jurisdiction lies in this court. Hansen v. Grp. Health Coop., 902 F.3d 1051, 1056 (9th Cir. 2018) ("[I]f these claims give rise to concurrent jurisdiction, the plaintiff may choose to file in either state or federal court. But if the plaintiff elects state court, the defendant then has the option of removing the case from state court to federal court under the general removal statute . . . .").

Plaintiff also asserts removal was improper because a case management order was issued by the Superior Court Judge prior to removal. However, 28 U.S.C. § 1446 allows for removal, despite this pending case–management order, so long as the notice was filed within 30 days of service of the pleadings. Here, Defendants Lyft, Zimmer, and Green did so file their notice of removal within the allotted timeframe, and indicated they concurrently notified the Superior Court of the removal. (See ECF No. 1.) Thus, the Superior Court was deprived of further jurisdiction over the matter, and its case management order was no longer of consequence. Resolution Tr. Corp. v. Bayside Developers, 43 F.3d 1230, 1238 (9th Cir. 1994), as amended (Jan. 20, 1995) ("After removal, 28 U.S.C. § 1446(d) prohibits any proceedings in the state court unless and until the case is remanded.").

///

4

The Court does note Plaintiff's concern that two of the named Defendants, Jerry Wang and the BBB, did not sign a consent form joining in with the other Defendants' notice of removal. (See ECF No. 29, citing ECF No. 1–3.)  However, the BBB timely filed a motion to dismiss in this case, and thus has implicitly consented to removal.  See, e.g., Hafiz v. Greenpoint Mortg. Funding, 409 F. App'x 70, 72 (9th Cir. 2010) (consent to removal was shown where party joined with other defendants in moving to dismiss).  Further, it appears from the service documents submitted by Plaintiff that Mr. Wang may not have been personally served yet, mooting any issue with his consent.  See, e.g., Walker v. Los Angeles Cty., 2008 WL 4447011, at *3 (D. Ariz. Oct. 1, 2008) (finding that joinder of all defendants was not required where the absent defendants had yet to receive proper service of process) (citing Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 (9th Cir. 1988) for the proposition that the joinder requirement "only applies to Defendants who have been properly served in the action.").  As for the remainder of Plaintiff's concerns regarding the removal process,[3] the Court notes that the Ninth Circuit takes a flexible position regarding a party's joining in on removal.  See Destfino v. Reiswig, 630 F.3d 952, 956–57 (9th Cir. 2011) ("All defendants who have been properly served in the action must join a petition for removal.  If this is not true when the notice of removal is filed, the district court may allow the removing defendants to cure the defect by obtaining joinder of all defendants prior to the entry of judgment.")  Thus, Defendants have time to make any technical corrections that may be required.

For these reasons, Plaintiff's motion to remand (ECF No. 23) is denied.  Further, none of Defendants' actions in removing this case to federal court appear to have been in "bad faith," as Plaintiff contends.  Accordingly, Plaintiff's motion for Rule 11[4] sanctions (ECF No. 23 at p. 20) is also denied.

---

[3] Plaintiff takes issue with the following: that Defendants were "writing the incorrect case number" on certain filings, that two defendants failed to note the exact date of their consent signature (though the month of August is represented), that Defendant Pritchett's electronically–drawn signature does not match his handwritten signature, and that an additional defendant—Lyft Healthcare LLC—should be joined.

[4] Cases filed in state court that are removed to federal court are thereafter subject to the Federal Rules of Civil Procedure (the "Rule(s)").  Fed. R. Civ. P. 81(c)(1).

## II. Defendants' Motions to Dismiss and Strike the Complaint

Federal Rule of Civil Procedure 8(a) requires that a pleading be "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Each allegation must be simple, concise, and direct. Rule 8(d)(1); see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (overruled on other grounds) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."). The practice of "incorporat[ing] each preceding paragraph, regardless of relevancy [has] been harshly criticized as a form of 'shotgun pleading' that violates Rule 8's requirement of a 'short and plain statement' and interferes with the court's ability to administer justice." Destfino v. Kennedy, 2008 WL 4810770, at *3 (E.D.Cal. Nov. 3, 2008). A complaint must not contain lengthy introductions, argument, speeches, explanations, stories, griping, evidence, summaries, charts, notes, e-mails, and the like. See McHenry v. Renne, 84 F.3d 1172, 1176-78 (9th Cir. 1996). This requirement is because documentary evidence may be presented at a later point in the case. See Id.

The court must construe a pro se pleading liberally to determine if it states a claim. Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (courts continue to construe pro se filings liberally even post–Iqbal). Prior to dismissal, the court is to tell a plaintiff of deficiencies in the complaint and give the plaintiff an opportunity to cure them if it appears at all possible the defects can be corrected. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if amendment would be futile, no leave need be given. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of dismissal, it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, See, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

In McHenry, Plaintiff's thirty–seven page complaint alleged multiple variations of a civil rights claim against numerous defendants. 84 F.3d at 1174. The district court dismissed for plaintiff's failure to provide a short and plain statement, as required by Rule 8. Id. The district

court reasoned that, because of how the complaint was drafted, it was impossible to "figure[] out which defendants were allegedly liable for which wrongs." Id. at 1175. The court allowed for plaintiff to amend, outlining some of the issues for plaintiff to consider upon amendment. Id. Plaintiff's final amended complaint was fifty–three pages long and contained 122 paragraphs of allegations. Id. The district court again dismissed, describing the complaint as mostly "narrative ramblings" and "storytelling or political griping." Id. at 1176. Importantly, the court found that plaintiff had failed to obey the court's instructions that a complaint must state "clearly how each and every defendant is alleged to have violated plaintiff's legal rights" by "linking their factual allegations to actual legal claims." Id. After some further legal analysis, the case was dismissed under Rule 41(b) and the case was closed. Id. at 1177.

The Ninth Circuit affirmed the district court's dismissal without leave to amend, agreeing that the final complaint was "argumentative, prolix, replete with redundancy, and largely irrelevant." Id. The court stated: "[d]espite all the pages, requiring a great deal of time for perusal, one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery." Id. at 1178. As to the harshness of disallowing further amendment, the Ninth Circuit agreed that this was the appropriate conclusion, given the plaintiff's persistent inability to identify "which wrongs were committed by which defendants" as well as his failure to obey the court's order regarding the appropriate level of detail. Id. at 1179.

Here, Plaintiff's Complaint is over 700 pages long, with 1664 paragraphs of allegations, sorted between headings, sub–headings, and sub–sub–headings. (ECF No. 1–2.) The Complaint's first two pages appears to assert twenty–nine causes of action, but the body of the Complaint is inconsistent with this list. When Plaintiff does discuss a particular claim, he often "incorporates all of the preceding paragraphs"—of which there are hundreds—and often asserts these claims against all of the Defendants. The Complaint is also rife with pictures, emails, excerpts from documents, and hand–drawn notes from Plaintiff and his wife—none of which belong in a complaint. As with McHenry, the Complaint is not a short and plain statement of Plaintiff's claims and is subject to dismissal on that basis. McHenry, 84 F.3d 1172. This dismissal is effective for the moving Defendants (Lyft, Zimmer, Green, Uber Health, Uber Tech.,

AH Capital, Horowitz, the two Benchmark Capital entities, Cohler, and the BBB), as well as non–moving Defendants (Biddle, Acebedo, Pritchett, and Wang).  See Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."); see also Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995) (approving dismissal of a party who has yet to appear where other defendants appeared, moved to dismiss, and similar grounds existed to dismiss absent defendants); Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987) ("Such a dismissal may be made without notice where the [plaintiff] cannot possibly win relief.")

Given that Plaintiff proceeds pro se, the Court will provide an outline for Plaintiff's consideration upon amendment.  The outline is based on the twenty–nine claims listed on the first two pages of the Complaint:  (A) the first set are claims that Plaintiff may amend, should he choose to do so; (B) the second set are those claims that are frivolous on their face and may not be amended; and (C) the Court will provide general principles for Plaintiff to consider.

**A.  Claims listed that may be facially viable if properly pleaded**

The following are claims that Plaintiff referenced in his Complaint.  The Court makes no comment as to the viability of whether Plaintiff's claims can actually survive any substantive motion to dismiss.  Further, Plaintiff should not construe these statements as the entirety of the law for each claim.  Rather, these are merely the claims he listed that are not barred on their face, and the outline is presented merely to provide context for Plaintiff on the claims he listed.

*Civil claims under the Computer Fraud and Abuse Act (18 U.S.C. § 1830, the "CFAA") and  Cal. Penal Code § 502 (Unauthorized Computer Access, Cal Comprehensive Computer Data Access and Fraud Act)*

"The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data."  LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1131 (9th Cir. 2009); see 18 U.S.C. § 1030(a)(1)–(7) (detailing seven separate violations, and the elements required under

each).  Section 1030(g) authorizes a civil action for a person who suffers damage or loss under the act, and also requires the offence to have caused one of six specific harms.  See 18 U.S.C. § 1030(c)(4)(A).  Thus, for an individual to state a claim under the CFAA, a plaintiff must allege facts indicating how a particular defendant violated of one of the seven subsections under (a)(1)–(7), and allege facts indicating that the particular defendant's act(s) resulted in one of the six specific harms under subsection (c)(4)(A).  See, e.g., Way.com, Inc. v. Singh, 2018 WL 6704464, at *5 (N.D. Cal. Dec. 20, 2018) (detailing how the plaintiff stated sufficient facts indicating what act the defendant took and what harm resulted).

Cal. Penal Code § 502 contemplates civil remedies for an individual damaged by any one of fourteen separate violations of the statute.  See Cal. Pen. Code § 502(e)(1) (citing sub. (c)(1–14)).  Thus, to properly state a claim, a plaintiff must plead facts indicating how a defendant violated one of the fourteen rights provided by Section 502(c).  In re Facebook Internet Tracking Litig., 263 F. Supp. 3d 836, 843 (N.D. Cal. 2017).  As with each cause of action pleaded in federal court, the complaint should clearly indicate which defendant allegedly violated which particular section of sub. (c).

*Civil claims under the Federal Defense of Trade Secrets Act (18 U.S.C. § 1836, the "DTSA") and the California Uniform Trade Secret Act (Cal. Civ. Code §§ 3426, et seq., the "CUTSA")*

"The elements of misappropriation under the DTSA are similar to those under the CUTSA."  See Space Data Corp. v. X, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017) (citing 18 U.S.C. § 1839(5) in comparison to Cal. Civ. Code § 3426.1(b))  Simply, these statutes enable a private individual who owns a trade secret to bring a civil action against an alleged mis–appropriator.[5]  To state a claim for trade secret misappropriation under these acts, a plaintiff must allege: "(1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret."  Sun Distrib. Co., LLC v. Corbett, 2018 WL 4951966, at *3 (S.D. Cal. Oct. 12, 2018).

---

[5] A properly–pleaded DTSA claim also requires facts indicating the trade secret was intended for use in interstate commerce, and the alleged misappropriation occurred on or after the date of the DTSA's enactment—May 11, 2016.  See AllCells, LLC v. Zhai, 2017 WL 2929380, at *1 (N.D. Cal. Mar. 27, 2017) (finding DTSA applicable where alleged copying occurred before May 2016, but where defendants allegedly continued to use the trade secret after that date).

Regarding the "existence of a trade secret," a plaintiff "need not spell out the details of the trade secret," but must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." Vendavo, Inc. v. Price f(x) AG, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (cleaned up). The statutes also contemplate pleading how the information "derives independent economic value, actual or potential, from not being generally known . . . ." 18 U.S.C. 1839(3); Cal. Civ. Code § 3426.1(d). Further, a plaintiff must also allege the "reasonable measures [taken] to keep such information secret." Id.; 18 U.S.C. 1836(b)(1). This requirement is because once "an individual discloses his trade secrets to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." Siegler v. Sorrento Therapeutics, Inc., 2019 WL 3532294, at *12 (S.D. Cal. Aug. 2, 2019). For misappropriation, the text of the DTSA contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use. Cave Consulting Grp., Inc. v. Truven Health Analytics Inc., 2017 WL 1436044, at *3 (N.D. Cal. Apr. 24, 2017) (citing 18 U.S.C. § 1839(5)). A plaintiff must plead facts indicating which of these three theories is asserted against which defendants.

*Claims under California's Unfair Competition Law (Cal. Bus. Code. § 17200, the "UCL")*

The UCL "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003). "Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." Id. If a UCL claim is based on another statute, this should be specifically pleaded. See, e.g., Avedisian v. Mercedes-Benz USA, LLC, 43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014). Where a plaintiff bases a UCL claim on fraud, the pleading as a whole must satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). Bias v. Wells Fargo & Co., 2013 WL 1787158, at *9 (N.D. Cal. Apr. 25, 2013) (citing Yess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Rule 9(b) simply requires a plaintiff to 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" Salameh v.

10

1    Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013).

2          Importantly, the Court notes that for any allegations of trade–secret misappropriation, the

3    California Uniform Trade Secrets Act provides the exclusive civil remedy for conduct falling

4    within its terms and supersedes other civil remedies—including § 17200 claims—based upon

5    misappropriation of a trade secrets.  See Alta Devices, Inc. v. LG Electronics, Inc., 343 F.Supp.3d

6    868, 888 (N.D. Cal. 2018).  Thus, for pleading a UCL claim, the plaintiff must strip facts

7    supporting trade secret misappropriation from the UCL allegations and base any UCL claim on

8    other independent acts.  See Id.  Further, while "the scope of conduct covered by the UCL is

9    broad, its remedies are limited."  Korea Supply Co., 29 Cal. 4th at 1144.  "A UCL action is

10   equitable in nature; damages cannot be recovered."  Id.  As such, "prevailing plaintiffs are

11   generally limited to injunctive relief and restitution."  Id.

12   *Claims for Breach of Contract*

13         "A cause of action for breach of contract requires proof of the following elements:

14   (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance;

15   (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  CDF Firefighters

16   v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).  "A written contract may be pleaded either

17   by its terms – set out verbatim in the complaint or a copy of the contract attached to the complaint

18   and incorporated therein by reference – or by its legal effect.  In order to plead a contract by its

19   legal effect, plaintiff must allege the substance of its relevant terms."  Frontier Contracting, Inc. v.

20   Allen Engineering Contractor, Inc., 2012 WL 1601659, at *4 (E.D. Cal. May 7, 2012) (citing

21   McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1489 (2006).

22         The CUTSA expressly states that it "does not affect (1) contractual remedies, whether or

23   not based upon misappropriation of a trade secret . . . ." Cal. Civ. Code § 3426.7; see Loop AI

24   Labs Inc. v. Gatti, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015).  However, the CUTSA

25   may supersede certain claims "where the wrongdoing alleged in connection with such claims is

26   the misappropriation of trade secrets."  See SunPower Corp. v. SolarCity Corp., 2012 WL

27   6160472, at *3 (N.D. Cal. Dec. 11, 2012) (collecting cases).  The distinction appears to be

28   whether the contract claim has "some other basis in fact or law [than misappropriation] on which

to predicate the requisite property right."  <u>Sun Distrib</u>, 2018 WL 4951966 at *7 (collecting cases).

<u>*Intentional Interference with Contract; Tortious Interference with Actual Economic Advantage*</u>

Under California law, the elements for the tort of intentional interference with contractual relations are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  <u>CRST Van Expedited, Inc. v. Werner Enterprises, Inc.</u>, 479 F.3d 1099, 1105 (9th Cir. 2007) (citing <u>Quelimane Co. v. Stewart Title Guar. Co</u>., 19 Cal. 4th 26, 55 (1998)). The elements of interference with prospective economic advantage resemble those of intentional interference with contract.  <u>Id</u>. at 1107–08 (replacing "contract" with "economic relationship . . . with the probability of future economic benefit") (citing <u>Korea Supply</u>, 29 Cal. 4th at 1143).

Importantly, the Court notes that for any allegations of trade–secret misappropriation, the California Uniform Trade Secrets Act provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies—including interference with contractual relations.  See <u>Bus. Sols., LLC v. Ganatra</u>, 2019 WL 926351, at *8 (C.D. Cal. Jan. 7, 2019) (dismissing "inducement of breach of contract" claim where the defendants allegedly solicited the breach by misappropriating plaintiff's trade secrets); <u>see</u> also <u>K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.</u>, 171 Cal. App. 4th 939, 958 (2009) ("[CUTSA] preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.").  Thus, for pleading any contractual interference claims, the plaintiff must strip facts supporting trade secret misappropriation from any of his contract allegations and base any contract claims on <u>other</u> <u>independent</u> acts.  See <u>Alta Devices</u>, 343 F.Supp.3d at 888.

<u>*Claims under the Electronic Communication Privacy Act and the Cal. Invasion of Privacy Act*</u>

Title 18 U.S.C.§ 2520 provides for civil damages for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter . . . ."  California Penal Code § 637.2 provides a private right of action for violations of chapter 1.5 of the Penal Code (Invasion of Privacy).  These statutes are multifaceted, requiring facts supporting a particular section.  For example, § 637.2 details—over seven separate sections,

12

each with subsections—particular situations that constitute an invasion of privacy. Id. at §§ 632–638.

Here, Plaintiff lists these two statutes on the front page of his Complaint, but does not appear to discuss them at any length in the body (as far as the Court can tell). Thus, it would be inappropriate for the Court to comment further on any substance on these points of law. Should Plaintiff amend these claims, he should review the pleading standards for each statute, provide plausible facts indicating a specific subsection is implicated as to any particular Defendant; providing a cite to that section is also helpful to the Court. Conversely, conclusory statements such as "defendants invaded my privacy" do nothing to indicate a particular defendant may be liable under a particular subsection.[6]

*Claims for Defamation and Slander (Cal. Civ. Code. § 44–46)*

Plaintiff cites to Cal. Civ. Code § 45 for alleged defamation and slander claims. Section 44 defines defamation as either "libel" (written) or "slander" (oral).

Under Section 45, Libel requires a plaintiff to allege (1) a publication that is (2) false, (3) defamatory, and (4) unprivileged, and that (5) has a natural tendency to injure or that causes special damage. Bowen v. M. Caratan, Inc., 142 F. Supp. 3d 1007 (E.D. Cal. 2015). To state a claim for libel, a plaintiff must plead the alleged libelous words made by a particular defendant. Scott v. Solano County Health and Social Services Dept., 459 F. Supp. 2d 959 (E.D. Cal. 2006).

As for slander (§ 46), the statute provides that allegations must indicate "a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means." Cal. Civ. Code § 46. The statute also indicates the publication must concern one of five particular kinds of circumstances, which under the federal rules should be clearly pleaded so as to notify a defendant that the claim is being alleged against him/her. Compare, e.g., Gould v. Maryland Sound Industries, Inc. 31 Cal. App. 4th 1137 (1995) (finding a statement imputing

---

[6] The Court is aware that at times Plaintiff states that "Hell Programs" were used to invade his privacy. However, the Court is concerned as to the plausibility of such allegations, as Plaintiff provides no definition of what a "Hell Program" is—despite the Complaint being over 700 pages. Further, Plaintiff often refers to these "Hell Programs" as being used by all "Defendants," which is again a textbook example of a shotgun pleading that provides no notice to each individual Defendant about the allegations.

employee's incompetence in his trade to be sufficient to allege injury to his "profession, trade or business," as the pleading was susceptible to proof or refutation by reference to concrete, provable data); with Polygram Records, Inc. v. Superior Court 170 Cal. App. 3d 543 (1985) (false statements indicating wine producer's business goods were of inferior quality were not defamatory as trade libel, as statements did not accuse producer of dishonesty, lack of integrity or incompetence nor even imply any reprehensible personal characteristic).

*Bane Act Claims (Cal. Civ. Code § 52.1)*

Plaintiff lists "Claims under the Civil Rights for Individuals and Advocates" on his cover page, and cites to the Bane Act in the body of his complaint. A plaintiff bringing a claim pursuant to the Bane Act must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion. Scalia v. County of Kern, 308 F.Supp.3d 1064 (E.D. Cal. 2018). "The essence of a Bane Act claim, under California law, is that the defendant, by the specified improper means, tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law. Lawman v. City and County of San Francisco, 159 F. Supp. 3d 1130 (N.D. Cal. 2016).

Plaintiff's Complaint cites to Cal. Civ. Code § 43 for the basis of the legal right, which is labeled "General Personal Rights." This statute states that "every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations." Plaintiff then goes on to detail thirty–three separate paragraphs concerning his wife's status as a public figure, and the alleged harm she suffered. However, as noted above, if Plaintiff's wife wishes to bring claims, she must do so on her own behalf. The law of coverture has long since been abolished, and a plaintiff must allege his or her own injury in order to have standing to bring a claim. Further, Plaintiff's shotgun approach to asserting liability is of no help, as he continually claims "each Defendant" is responsible his wife's injuries. (ECF No. 1–2.) For example, Plaintiff states all Defendants stole his car (¶ 1057), "compromised [plaintiff's] friend calling the

14

1    Sacramento Police Department alleging Plaintiff assaulted her" (¶ 1059), and "buil[t] a wrongful

2    case based on false accusations in order to wrongfully arrest and imprison him" (¶ 1061).

3    Plaintiff also appears to allege events disconnected from Defendants, but then purportedly asserts

4    the damage done in those events are the fault of Defendants.  (See ¶ 1065, contending all

5    Defendants were responsible for Plaintiff and his wife experiencing an "unfair and tough

6    immigration process" that immigration officers considered a "fraud case"—though Defendants

7    are all private companies and individuals disconnected from immigration enforcement).

8         Plaintiff's allegations fail to state Bane Act claims as required by the Federal Rules of

9    Civil Procedure.  Should an amended complaint be provided, Plaintiff shall endeavor to notify

10   each Defendant of how an act led to the alleged harm by stating plausible facts indicating relief is

11   warranted.  McHenry, 84 F.3d 1172.

12   *Claims for Intentional Infliction of Emotional Distress*

13        Finally, the Court notes that buried halfway into the Complaint appears to be a claim for

14   "Intentional Infliction of Emotional Distress"—though it is not listed on the cover page of the

15   Complaint.  (See ECF No. 1–2 at pp. 457–460.)  Under California law, "the elements of the tort

16   of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the

17   defendant with the intention of causing, or reckless disregard of the probability of causing,

18   emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual

19   and proximate causation.  Whitlock v. Pepsi Americas, 681 F. Supp. 2d 1116, 1120 (N.D. Cal.

20   2010).  The facts must show severe and emotional distress resulting from a particular defendant's

21   conduct.  Mason v. Cty. of Orange, 2008 WL 11411827, at *6 (C.D. Cal. Dec. 24, 2008).

22        As with his other claims, Plaintiff's IIED claim incorporates the preceding 1085

23   paragraphs, and makes general aspersions against "each Defendant."  This pleading does not meet

24   Rule 8.  See Strickland v. City of Inglewood, 2008 WL 11338425, at *3 (C.D. Cal. May 7, 2008)

25   (dismissing IIED claim under Rule 8 where the plaintiff failed to specify what conduct

26   constituted "various forms of degradation, including gender remarks, gender persecution,

27   derogatory statements, racial discrimination, retaliation, verbal assaults and insolent and rude

28   behavior.").  Further, as discussed below, any claims Plaintiff's wife might have must be brought

15

1    on her own accord as a named Plaintiff.

2                    **B.  Claims that may not be amended**

3           Plaintiff's first two pages of his Complaint indicates he is attempting to bring causes of

4    action under the following sections of the U.S. Code or California Penal Code: 18 U.S.C.

5    § 1831(1) ("Economic Espionage"); 18 U.S.C. § 1832 ("Theft of Trade Secrets"); 18 U.S.C.

6    § 1512 ("Tampering with a Witness") 15 U.S.C. § 78dd–2 ("Foreign Corrupt Practices Act"); 18

7    U.S.C. § 371 ("Conspiracy to Defraud the United States"); Cal. Pen. Code. § 140 ("Threatening a

8    Witness"); Cal. Pen. Code. § 186.10 ("Money Laundering"); Cal. Pen. Code. § 487 and 503

9    ("Grant Theft Embezzlement"); 18 U.S.C. § 1341 (errantly cited as "Cal. Pen Code. § 1341 "Wire

10   Fraud"); and Cal. Ins. Code § 1871.4 ("Cal. Insurance Code").

11          Many of these statutes define the criminal penalties for violating the proscribed acts.  See,

12   e.g., 18 U.S.C. § 1831(a), (providing that violations of this section shall be "fined not more than

13   $5,000,000 or imprisoned not more than 15 years, or both."); 18 U.S.C. § 1832 (similarly

14   providing for fines or imprisonment as the remedy for "theft of trade secrets").  There is no

15   private right of action for violations of criminal statutes without specific authority from the

16   legislature.  Allen v. Gold Country Cascino, 464 F.3d 1044, 1048 (9th Cir. 2006); see also, e.g.,

17   Kingsley v. Ashworth, 139 F.3d 905 (9th Cir. 1998) (affirming dismissal of plaintiff's federal

18   wire fraud claim "as 18 U.S.C. § 1343 does not give rise to a private cause of action."); Lamb v.

19   Phillip Morris, Inc., 915 F.2d 1024, 1027 (6th Cir. 1990) (Foreign Corrupt Practices Act does not

20   create implied private right of action); Minor v. Fedex Office & Print Servs., Inc., 182 F. Supp.

21   3d 966, 977 (N.D. Cal. 2016) ("[A] review of California Insurance Code § 1871.4 does not reveal

22   an express private right of action."); Bielma v. Bostic, 2016 WL 29624, at *8 (S.D. Cal. Jan. 4,

23   2016) (recognizing that no civil remedy exists for a violation of Cal. Pen. Code § 140); Vann v.

24   Wells Fargo Bank, 2012 WL 1910032, at *5 (N.D. Cal. May 24, 2012) (Cal. Pen. Code § 186.10

25   is "based on criminal statutes having no private right of action."); Hamrick v. Gottlieb, 416 F.

26   Supp. 2d 1, 5 (D.D.C. 2005) ("18 U.S.C. § 1512 is part of a comprehensive legislative scheme,

27   and, thus, there is a presumption that absent a specific civil remedy, Congress did not intend for

28   the courts to imply such a remedy."); Exec. Comm. Representing Signing Petitioners of

1  <u>Archdiocese of W. U.S. v. Kaplan</u>, 2004 WL 6084228, at *7 (C.D. Cal. Sept. 17, 2004)

2  ("Embezzlement is a crime, not a tort, and so cannot be maintained as a private cause of action.");

3  <u>Rockefeller v. U.S. Court of Appeals Office, for Tenth Circuit Judges</u>, 248 F. Supp. 2d 17, 23

4  (D.D.C. 2003) (no private right of action under 18 U.S.C. § 371).

5      Plaintiff also lists the following as sources of law supporting alleged claims against

6  Defendants: the "U.S. Dept. of Health and Human Services Civil Rights Laws and Regulations,"

7  the "Securities Act of 1933," "Federal Trade Commission Act Anticompetitive Practices," the

8  "Centers for Medicare and Medicaid Services Accessibility & Nondiscrimination for Individuals

9  with Disabilities and ADA." The Court is not certain what Plaintiff's intent is by listing these

10  sources of law. However, the same principles apply regarding private rights from regulations as

11  with statutes: if Congress did not provide for a remedy, none is available. Thus, to the extent that

12  Plaintiff intends to assert claims based on federal regulations, he should provide the specific

13  source. <u>See</u>, <u>e.g.</u>, <u>Lonberg v. City of Riverside</u>, 571 F.3d 846, 849 (9th Cir. 2009) (examining the

14  regulation and its source when determining that a particular DOJ regulation created no private

15  right of action). Further, Plaintiff's only citation to the Americans with Disabilities Act appears

16  to be in the context of other cases brought against Uber and Lyft for violations of that law, along

17  with a self–serving promotional statement concerning his alleged company. (See ECF No. 1–2 at

18  p. 33.) <u>See Chapman v. Pier 1 Imports (U.S.) Inc.</u>, 631 F.3d 939, 946 (9th Cir. 2011)

19  (recognizing that under the ADA, a plaintiff must demonstrate standing by alleging he himself

20  has "suffered an injury-in-fact," and that "to establish standing to pursue injunctive relief, which

21  is the only relief available to private plaintiffs under the ADA, he must demonstrate a real and

22  immediate threat of repeated injury in the future.").

23      Finally, the Court is not sure what Plaintiff's reference to "Reckless Endangerment of

24  Life, Cal. Civ. Code. § 1714" indicates. California Civil Code § 1714 is entitled "Responsibility

25  for willful acts and negligence; furnishing alcoholic beverages; legislative intent; liability of

26  social hosts; liability of parents, guardians, or adults who furnish alcoholic beverages to minors."

27  The Complaint (though 700+ pages in length) does not appear to have anything to do with any

28  Defendant's liability as a social host. The Court does note a reference to Civil Code § 1714.10

(see ECF 1–2 at p. 461), but this section concerns allegations of a civil conspiracy between an attorney and client.  Thus, the Court is perplexed as to Plaintiff's intent, and cautions Plaintiff to only allege causes of action for which he has supporting facts.  Additionally, Plaintiff references the Consumer Protection Act ("CPA") in his list of claims.  The Court is not sure specifically what Plaintiff intends to allege by noting this piece of legislation.  California's Consumer Privacy Act of 2018 has an effective date of January 1, 2020.  Thus, no claim can be stated under this act.[7]

Because these claims cannot be cured by improved pleading or additional factual allegations, the court concludes that leave to amend for these claims would be futile.  See Cahill, 80 F.3d at 339.

### C. General principles regarding amendment of the complaint

If Plaintiff elects to amend, the new complaint shall:

i.    be captioned "Second Amended Complaint";
ii.   be limited to 25 pages (excluding any contracts appended as exhibits), with text utilizing a font size of 12 Times New Roman or equivalent and double spacing (*pages exceeding the 25-page limit will be summarily stricken and will not be considered part of plaintiff's operative pleading*);
iii.  use numbered paragraphs;
iv.   set forth his various claims in separate sections and clearly identify which Defendants are allegedly at fault for each claim (e.g., Claim I against Defendants X, Y, and Z, Claim II against Defendants R and S, etc.);
v.    under each section, list the factual allegations supporting that particular claim (for brevity, Plaintiff may refer to specific prior paragraphs [i.e. "See ¶¶ 25, 34, and 42"], but in no case shall Plaintiff "incorporate all preceding paragraphs" for any of his claims);
vi.   include a general background facts section to orient the reader only as necessary;
vii.  include his statements for jurisdiction, venue, and relief sought as is necessary;
viii. omit exhibits, documents, photos, or other such "evidence" of his claims (except for any contracts on which he bases any breach of contract claim);
ix.   refrain from alleging redundant, immaterial, impertinent, or scandalous matters;

---

[7] Plaintiff cites to two cases related to a "Consumer Protection Act" issue, but these cases are inapposite.  Tecson v. Lyft, Inc., 18-CV-06782-YGR, is a case construing portions of the "Telephone Consumer Protection Act" for alleged violation of automated calls to plaintiff's cell phone without authorization, which does not appear applicable here.  2019 WL 1903263, at *1 (N.D. Cal. Apr. 29, 2019).  Wright v. Lyft, Inc., #94162–9, is a case from the Washington State Supreme Court interpreting that state's consumer protection law; as such, it has no effect on these proceedings.  189 Wash. 2d 718, 721, (2017).  Plaintiff's attempts to allege what appear to be causes of action raised in other suits involving Uber and Lyft—that have no apparent connection to his case—is not well taken.

18

x.     address any other pleading deficiencies outlined above; and

xi.     be filed within 21 days after the district judge has issued an order on these F&Rs.

Given the apparent complexity of Plaintiff's allegations, Plaintiff may request more time to amend should he, for instance, endeavor to retain the services of an attorney prior to offering any amended pleading.  (See ECF No. 42.)  If this is the case, Plaintiff may file a request for extension of time, offering  reasons for why "good cause" exists to grant such an extension.

Plaintiff is informed that the Court cannot refer to a prior complaint or other filing in order to make Plaintiff's second amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint, and once the first amended complaint is filed, the original complaint no longer serves any function in the case.

Further, the Court notes that throughout his current Complaint, Plaintiff states he is bringing claims on behalf of other individuals, and often refers to harms allegedly done to his wife.  Plaintiff has no right to allege harms on behalf of other individuals, including his wife.  "[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."  Whitmore v. Arkansas, 495 U.S. 149, 154 (1990).  In order to have standing, "the plaintiff generally must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties."  Warth v. Seldin, 422 U.S. 490, 499 (1975).  Thus, should Plaintiff's wife (or any other individuals) wish to assert similar or related claims against these Defendants, they must do so on their own behalf by joining as a named plaintiff.  The same rules (concerning the "short and plain statement" requirement, linking of specific harms to specific defendants, and the like) apply to any other named plaintiffs.

In light of the Court's conclusion that the Complaint should be dismissed, it is unnecessary to address the specific portions of Defendants' pending motions to strike.  Thus, they are denied without prejudice as moot.  However, if Plaintiff chooses to amend, he should refrain from including any "redundant, immaterial, impertinent, or scandalous matters."  See Rule 12(f).

This includes refraining from including any public–relations–type phrases concerning his business entities, any phrases concerning the religious or spiritual aspects of these entities, and of course any pictures, pamphlets, emails, texts, or links to other evidence.

Finally, nothing in this order requires Plaintiff to file a second amended complaint. If Plaintiff determines that he is unable to amend her complaint to state a viable claim in accordance with his obligations under Federal Rule of Civil Procedure 11, he may alternatively file a notice of voluntary dismissal of his claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) within 21 days of this order. However, if Plaintiff elects to proceed with this action in federal court, he is encouraged to familiarize himself with this court's Local Rules (available at http://www.caed.uscourts.gov/caednew/index.cfm/rules/local-rules/) and the Federal Rules of Civil Procedure. Although the court is sympathetic to the difficulties faced by pro se litigants in litigating their cases in federal court, and liberally construes their pleadings, pro se litigants are expected to comply with all procedural rules and court orders.

**D. Additional Moving and Non–Moving Defendants**

On October 31, 2019, the Court held a hearing on Plaintiff's pending motions and the motions submitted by Defendants Green, Lyft Inc., Zimmer, AH Capital, Horowitz, the two Benchmark entities, Cohler, and the BBB. (ECF Nos. 8, 11, 14, 20, 23.) Currently, Defendants Uber Tech and Uber Health have their motion to dismiss and motion to strike set for November 14, 2019, before the undersigned. (ECF Nos. 7, 9.) Finally, Defendant Biddle just entered her appearance, and Defendants Wang, Acebedo, and Pritchet have yet to appear. This order resolves all issues raised against the Uber entities and the absent Defendants in the same fashion as those appearing at the October 31 hearing.

"A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981). "Such a dismissal may be made without notice where the [plaintiffs] cannot possibly win relief." Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987). The court's authority in this regard includes sua sponte dismissal as to

defendants who have not been served and defendants who have not yet answered or appeared. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995) ("We have upheld dismissal with prejudice in favor of a party which had not yet appeared, on the basis of facts presented by other defendants which had appeared"); see also Bach v. Mason, 190 F.R.D. 567, 571 (D. Idaho 1999); Ricotta v. California, 4 F. Supp. 2d 961, 978-79 (S.D. Cal. 1998). Here, all Defendants are similarly situated, as the Court's Rule 8 logic is applicable to each and every Defendant—whether appearing or not. Further, it appears all of Plaintiff's claims are integrally related, as the entire complaint pertains to the same dispute over Plaintiff's company. (See generally ECF No. 1–2.) Therefore, dismissal is appropriate as to all Defendants.

## ORDER

Accordingly, the hearing on Defendant Uber's Motion to Dismiss and Motion to Strike (ECF Nos. 7, 9) is VACATED, and the matters at issue therein are taken under submission as of today's date.

## RECOMMENDATIONS

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion to remand and motion for sanctions (ECF No. 23) be DENIED;

2.  Defendants' motions to dismiss for violations of the "short and plain statement" rule (ECF Nos. 5, 7, 8, 9, 11, 14, 15, 16, 17, 18, and 20) be GRANTED;

3.  Defendants' motions to strike portions of the complaint (ECF Nos. 9, 14, 17, 18, 20) and Plaintiff's motion for default judgment (ECF No. 50) be DENIED AS MOOT;

4.  Plaintiff's motion to strike the motions to dismiss (ECF No. 34) is resolved alongside the motions to dismiss, and insomuch as it must be ruled upon, it should be DENIED;

5.  Plaintiff's complaint be DISMISSED with leave to amend;

6.  Within 21 days of the district judge's order (which will come after the expiration of the objection period and after the final ruling by the district judge on these F&Rs), Plaintiff be ordered file either (a) a second amended complaint in compliance with this order or (b) a request for voluntary dismissal of the action without prejudice; and

7.  Plaintiff be informed that failure to timely comply with these recommendations and

the district court's order may result in dismissal of the action with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated:  October 31, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE